> vis general creditors; *Congress also made the decision to subordinate based on risk allocation. Consequently, when Congress amended § 510(b) to add reimbursement and contribution claims, it was not radically departing from an equityholder claimant treatment provision, as NatWest suggests; it simply added to the subordination treatment new classes of persons and entities involved with the securities transactions giving rise to the rescission and damage claims.* The 1984 amendment to § 510(b) is a logical extension of one of the rationales for the original section — *because Congress intended the holders of securities law claims to be subordinated, why not also subordinate claims of other parties (e.g., officers and directors and underwriters) who play a role in the purchase and sale transactions which give rise to the securities law claims?* As I view it, in 1984 Congress made a legislative judgment that claims emanating from tainted securities law transactions should not have the same priority as the claims of general creditors of the estate. [emphasis added]
>
> [...]
>
> 25. Further, the U.S. courts have held that the degree of culpability of the respective parties is a non-issue in the disallowance of claims for indemnification of underwriters; the equities are meant to benefit the debtor's direct creditors, not secondarily liable creditors with contingent claims.
> *In re Drexel Burnham Lambert Group*, 148 B.R. 982, 1992 Bankr. LEXIS 2023 (Bankr. S.D.N.Y. 1992) [...]

[70]    Counsel submits that there is no principled basis for treating indemnification claims of auditors differently than those of underwriters.

**Analysis**

**Is it Premature to Determine the Issue?**

[71]    The class action litigation was commenced prior to the CCAA Proceedings. It is clear that the claims of shareholders as set out in the class action claims against SFC are "equity claims" within the meaning of the CCAA.

[72]    In my view, this issue is not premature for determination, as is submitted by the Underwriters.

[73]    The Class Action Proceedings preceded the CCAA Proceedings. It has been clear since the outset of the CCAA Proceedings that this issue – namely, whether the claims of E&Y, BDO and the Underwriters as against SFC, would be considered "equity claims" – would have to be determined.

[74] It has also been clear from the outset of the CCAA Proceedings, that a Sales Process would be undertaken and the expected proceeds arising from the Sales Process would generate proceeds insufficient to satisfy the claims of creditors.

[75] The Claims Procedure is in place but, it seems to me that the issue that has been placed before the court on this motion can be determined independently of the Claims Procedure. I do not accept that any party can be said to be prejudiced if this threshold issue is determined at this time. The threshold issue does not depend upon a determination of quantification of any claim. Rather, its effect will be to establish whether the claims of E&Y, BDO and the Underwriters will be subordinated pursuant to the provisions of the CCAA. This is independent from a determination as to the validity of any claim and the quantification thereof.

**Should the Equity Claims Order be Granted?**

[76] I am in agreement with the submission of counsel for the Ad Hoc Noteholders to the effect that the characterization of claims for indemnity turns on the characterization of the underlying primary claims.

[77] In my view, the claims advanced in the Shareholder Claims are clearly equity claims. The Shareholder Claims underlie the Related Indemnity Claims.

[78] In my view, the CCAA Amendments have codified the treatment of claims addressed in pre-amendment cases and have further broadened the scope of equity claims.

[79] The plain language in the definition of "equity claim" does not focus on the identity of the claimant. Rather, it focuses on the nature of the claim. In this case, it seems clear that the Shareholder Claims led to the Related Indemnity Claims. Put another way, the inescapable conclusion is that the Related Indemnity Claims are being used to recover an equity investment.

[80] The plain language of the CCAA dictates the outcome, namely, that the Shareholder Claims and the Related Indemnity Claims constitute "equity claims" within the meaning of the CCAA. This conclusion is consistent with the trend towards an expansive interpretation of the definition of "equity claims" to achieve the purpose of the CCAA.

[81] In *Return on Innovation*, Newbould J. characterized the contractual indemnification claims of directors and officers as "equity claims". The Court of Appeal denied leave to appeal. The analysis in *Return on Innovation* leads to the conclusion that the Related Indemnity Claims are also equity claims under the CCAA.

[82] It would be totally inconsistent to arrive at a conclusion that would enable either the auditors or the Underwriters, through a claim for indemnification, to be treated as creditors when the underlying actions of the shareholders cannot achieve the same status. To hold otherwise would indeed provide an indirect remedy where a direct remedy is not available.

[83] Further, on the issue of whether the claims of E&Y, BDO and the Underwriters fall within the definition of equity claims, there are, in my view, two aspects of these claims and it is necessary to keep them conceptually separate.

[84]     The first and most significant aspect of the claims of E&Y, BDO and the Underwriters constitutes an "equity claim" within the meaning of the CCAA. Simply put, but for the Class Action Proceedings, it is inconceivable that claims of this magnitude would have been launched by E&Y, BDO and the Underwriters as against SFC. The class action plaintiffs have launched their actions against SFC, the auditors and the Underwriters. In turn, E&Y, BDO and the Underwriters have launched actions against SFC and its subsidiaries. The claims of the shareholders are clearly "equity claims" and a plain reading of s. 2(1)(e) of the CCAA leads to the same conclusion with respect to the claims of E&Y, BDO and the Underwriters. To hold otherwise, would, as stated above, lead to a result that is inconsistent with the principles of the CCAA. It would potentially put the shareholders in a position to achieve creditor status through their claim against E&Y, BDO and the Underwriters even though a direct claim against SFC would rank as an "equity claim".

[85]     I also recognize that the legal construction of the claims of the auditors and the Underwriters as against SFC is different than the claims of the shareholders against SFC. However, that distinction is not, in my view, reflected in the language of the CCAA which makes no distinction based on the status of the party but rather focuses on the substance of the claim.

[86]     Critical to my analysis of this issue is the statutory language and the fact that the CCAA Amendments came into force after the cases relied upon by the Underwriters and the auditors.

[87]     It has been argued that the amendments did nothing more than codify pre-existing common law. In many respects, I accept this submission. However, I am unable to accept this submission when considering s. 2(1) of the CCAA, which provides clear and specific language directing that "equity claim" means a claim that is in respect of an equity interest, including a claim for, among other things, "(e) contribution or indemnity in respect of a claim referred to in any of paragraphs (a) to (d)".

[88]     Given that a shareholder claim falls within s. 2(1)(d), the plain words of subsections (d) and (e) lead to the conclusions that I have set out above.

[89]     I fail to see how the very clear words of subsection (e) can be seen to be a codification of existing law. To arrive at the conclusion put forth by E&Y, BDO and the Underwriters would require me to ignore the specific words that Parliament has recently enacted.

[90]     I cannot agree with the position put forth by the Underwriters or by the auditors on this point. The plain wording of the statute has persuaded me that it does not matter whether an indemnity claim is seeking no more than allocation of fault and contribution at common law, or whether there is a free-standing contribution and indemnity claim based on contracts.

[91]     However, that is not to say that the full amount of the claim by the auditors and Underwriters can be characterized, at this time, as an "equity claim".

[92]     The second aspect to the claims of the auditors and underwriters can be illustrated by the following hypothetical: if the claim of the shareholders does not succeed against the class action defendants, E&Y, BDO and the Underwriters will not be liable to the class action plaintiffs. However, these parties may be in a position to demonstrate that they do have a claim against

JUL-27-2012 16:28 13-10361-mg Doc 4-6 Filed 02/04/13 Entered 02/04/13 23:49:31 Exhibit A - Part 6 Pg 4 of 6 4163276228 P.017

771

- Page 16 -

SFC for the costs of defending those actions, which claim does not arise as a result of "contribution or indemnity in respect of an equity claim".

[93] It could very well be that each of E&Y, BDO and the Underwriters have expended significant amounts in defending the claims brought by the class action plaintiffs which, in turn, could give rise to contractual claims as against SFC. If there is no successful equity claim brought by the class action plaintiffs, it is arguable that any claim of E&Y, BDO and the Underwriters may legitimately be characterized as a claim for contribution or indemnity but not necessarily in respect of an equity claim. If so, there is no principled basis for subordinating this portion of the claim. At this point in time, the quantification of such a claim cannot be determined. This must be determined in accordance with the Claims Procedure.

[94] However, it must be recognized that, by far the most significant part of the claim, is an "equity claim".

[95] In arriving at this determination, I have taken into account the arguments set forth by E&Y, BDO and the Underwriters. My conclusions recognize the separate aspects of the Related Indemnity Claims as submitted by counsel to the Underwriters at paragraph 40 of their factum which reads:

> ...it must be recognized that there are, in fact, at least two different kinds of Related Indemnity Claims:
>
> (a) indemnity claims against SFC in respect of Shareholder Claims against the auditors and the Underwriters; and
>
> (b) indemnity claims against SFC in respect of the defence costs of the auditors and the Underwriters in connection with defending themselves against Shareholder Claims.

**Disposition**

[96] In the result, an order shall issue that the claims against SFC resulting from the ownership, purchase or sale of equity interests in SFC, including, without limitation, the claims by or on behalf of current or former shareholders asserted in the proceedings listed in Schedule "A" are "equity claims" as defined in s. 2 of the CCAA, being claims in respect of monetary losses resulting from the ownership, purchase or sale of an equity interest. It is noted that counsel for the class action plaintiffs did not contest this issue.

[97] In addition, an order shall also issue that any indemnification claim against SFC related to or arising from the Shareholders Claims, including, without limitation, by or on behalf of any of the other defendants to the proceedings listed in Schedule "A" are "equity claims" under the CCAA, being claims for contribution or indemnity in respect of a claim that is an equity claim. However, I feel it is premature to determine whether this order extends to the aspect of the Related Indemnity Claims that corresponds to the defence costs of the Underwriters and the auditors in connection with defending themselves against the Shareholder Claims.

JUL-27-2012 18:28        13-10361-mg    Doc 4-6    Filed 02/04/13    Entered 02/04/13 23:49:31    Exhibit A - Part
                                              MAG                6    Pg 5 of 6                              416527828        P.018

772

- Page 17 -

[98]   A direction shall also issue that these orders are made without prejudice to SFC's rights to apply for a similar order with respect to (i) any claims in the statement of claim that are in respect of securities other than shares and (ii) any indemnification claims against SFC related thereto.

MORAWETZ J.

Date:   July 27, 2012

## SCHEDULE "A" – SHAREHOLDER CLAIMS

1. *Trustees of the Labourers' Pension Fund of Central and Eastern Canada et al. v. Sino-Forest Corporation et al.* (Ontario Superior Court of Justice, Court File No. CV-11-431153-00CP)

2. *Guining Liu v. Sino-Forest Corporation et al.* (Quebec Superior Court, Court File No.: 200-06-000132-111)

3. *Allan Haigh v. Sino-Forest Corporation et al.* (Saskatchewan Court of Queen's Bench, Court File No. 2288 of 2011)

4. *David Leapard et al. v. Allen T.Y. Chan et al.* (District court of the Southern District of New York, Court File No. 650258/2012)