**<u>Exhibit H</u>**
***<u>Fifteenth Report of the Monitor</u>* <u>dated January 28, 2013</u>**

**Court File No. CV-12-9667-00CL**

# Sino-Forest Corporation

## FIFTEENTH REPORT OF THE MONITOR

**January 28, 2013**



**Court File No. CV-12-9667-00CL**

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
SINO-FOREST CORPORATION

Court File No.:  CV-11-431153-00CP

*ONTARIO*
SUPERIOR COURT OF JUSTICE

B E T W E E N :

THE TRUSTEES OF THE LABOURERS' PENSION FUND OF CENTRAL AND EASTERN
CANADA, THE TRUSTEES OF THE INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL 793 PENSION PLAN FOR OPERATING ENGINEERS IN ONTARIO,
SJUNDE AP-FONDEN, DAVID GRANT and ROBERT WONG

Plaintiffs

- and –

SINO-FOREST CORPORATION, ERNST & YOUNG LLP, BDO LIMITED (formerly
known as BDO MCCABE LO LIMITED), ALLEN T.Y. CHAN, W. JUDSON MARTIN,
KAI KIT POON, DAVID J. HORSLEY, WILLIAM E. ARDELL, JAMES P. BOWLAND,
JAMES M.E. HYDE, EDMUND MAK, SIMON MURRY, PETER WANG, GARRY J.
WEST, PÖYRY (BEIJING) CONSULTING COMPANY LIMITED, CREDIT SUISSE
SECURITIES (CANADA), INC., TD SECURITIES INC., DUNDEE SECURITIES
CORPORATION, RBC DOMINION SECURITIES INC., SCOTIA CAPITAL INC., CIBC
WORLD MARKETS INC., MERRILL LYNCH CANADA INC., CANACCORD
FINANCIAL LTD., MAISON PLACEMENTS CANADA INC., CREDIT SUISSE
SECURITIES (USA) LLC and MERRILL LYNCH, PIERCE, FENNER & SMITH
INCORPORATED (successor by merger to Banc of America Securities LLC)

Defendants

**FIFTEENTH REPORT TO THE COURT**
**SUBMITTED BY FTI CONSULTING CANADA INC.,**
**IN ITS CAPACITY AS MONITOR**



**INTRODUCTION**

1.  On March 30, 2012 (the "**Filing Date**"), Sino-Forest Corporation (the "**Company**" or "**SFC**") filed for and obtained protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**").  Pursuant to the Order of this Honourable Court dated March 30, 2012 (the "**Initial Order**"), FTI Consulting Canada Inc. was appointed as the Monitor of the Company (the "**Monitor**") in the CCAA proceedings.  By Order of this Court dated April 20, 2012, the powers of the Monitor were expanded in order to, among other things, provide the Monitor with access to information concerning the Company's subsidiaries.

2.  On December 10, 2012, the Court granted an Order (the "**Sanction Order**") approving the Company's Plan of Compromise and Reorganization dated December 3, 2012 (the "**Plan**").

3.  The following appendices have been attached to this Fifteenth Report:

    (a)     Appendix A - the Minutes of Settlement (as defined below);

    (b)     Appendix B - the Plan;

    (c)     Appendix C - the Monitor's Thirteenth Report dated November 22, 2012 (the "**Thirteenth Report**") (without appendices);

    (d)     Appendix D - the Monitor's Supplemental Report to the Thirteenth Report dated December 4, 2012 (the "**Supplemental Report**") (without appendices);

    (e)     Appendix E - the Monitor's Second Supplemental Report to the Thirteenth Report dated December 6, 2012 (the "**Second Supplemental Report**") (without appendices);

    (f)     Appendix F - the Claims Procedure Order;

    (g)     Appendix G - the Mediation Order;

    (h)     Appendix H - the Meeting Order;

(i)      Appendix I - Notice of Appearance of Kim Orr;

(j)      Appendix J - the Sanction Order;

(k)      Appendix K - Endorsement of Justice Morawetz re Sanction Hearing;

(l)      Appendix L - Notice of Motion re Leave to Appeal the Sanction Order;

(m)      Appendix M - (i) letter from Bennett Jones to Kim Orr dated January 3, 2013; (ii) letter from Kim Orr to Bennett Jones dated January 3, 2013; (iii) letter from Lenczner Slaght to Kim Orr dated January 3, 2013;

(n)      Appendix N - E&Y Notice Order (as defined below);

(o)      Appendix O - Company's press release dated January 24, 2013; and

(p)      Appendix P - (i) letter from Gowling Lafleur Henderson dated January 11, 2013 regarding the addition of Allen Chan and Kai Kit Poon as Named Third Party Defendants; (ii) letter from Gowling Lafleur Henderson dated January 21, 2013 regarding the addition of David Horsley as a Named Third Party Defendant.

4.      The objections received to the Ernst & Young Settlement up to January 21, 2013 have been filed separately in the Monitor's fourteenth report dated January 22, 2013 (the "**Fourteenth Report**"). Any subsequent Notices of Objection or other correspondence expressing objections have or will be attached in a supplement or supplements to the Fourteenth Report.

5.      The proceedings commenced by the Company under the CCAA will be referred to herein as the "**CCAA Proceedings**".

6.      The purpose of this Fifteenth Report is to report on certain matters relating to the Ernst & Young Settlement.

7.      In preparing this Fifteenth Report, the Monitor has relied upon unaudited financial information of Sino-Forest, Sino-Forest's books and records, certain financial information prepared by Sino-Forest, the Reports of the Independent Committee of the

Company's Board of Directors dated August 10, 2011, November 13, 2011, and January 31, 2012, and discussions with Sino-Forest's management.  The Monitor has not audited, reviewed or otherwise attempted to verify the accuracy or completeness of the information.  In addition, the Monitor notes that on January 10, 2012, the Company issued a press release cautioning that the Company's historic financial statements and related audit reports should not be relied upon.  Accordingly, the Monitor expresses no opinion or other form of assurance on the information contained in this Fifteenth Report or relied on in its preparation.  Future oriented financial information reported or relied on in preparing this Fifteenth Report is based on management's assumptions regarding future events; actual results may vary from forecast and such variations may be material.

8.      Unless otherwise stated, all monetary amounts referred to herein are expressed in CDN Dollars.

9.      The term "**Sino-Forest**" refers to the global enterprise as a whole but does not include references to Greenheart (as defined in the Plan).  "Sino-Forest Subsidiaries" refers to all of the direct and indirect subsidiaries of the Company, but does not include references to Greenheart.

10.     Capitalized terms used herein and not otherwise defined have the meaning given to them in the Plan, the Thirteenth Report, the Supplemental Report and/or the Second Supplemental Report.[1]

---

[1] See Appendices B, C, D and E for copies of the Plan, the Thirteenth Report, the Supplemental Report and the Second Supplemental Report.

**BACKGROUND**

*Overview of the CCAA Proceedings*

11.     The description of the Company's business as well as the background to these proceedings has all been set out in previous reports of the Monitor as well as affidavits filed by the Company in connection with the CCAA Proceedings and is therefore not repeated herein.

12.     A brief chronology of certain of the significant events in the CCAA Proceedings to date is as follows:

(a)     On March 30, 2012, the Company sought and the Court granted the Initial Order the terms of which included a stay of proceedings (the "**Stay**") against the Company, its directors and officers and the Sino-Forest Subsidiaries.  The Stay has been extended from time to time and is currently extended through to February 1, 2013.

(b)     As part of its application for the Initial Order, the Company advised that it had entered into the RSA which provided for the terms on which certain Initial Consenting Noteholders would consent to a restructuring transaction.

(c)     On the same day, the Court granted the Sale Process Order pursuant to which the Company was authorized to conduct a sale process, in part, as a market test of the transactions contemplated under the RSA.

(d)     On April 20, 2012, the Court granted an Order expanding the Monitor's powers in these proceedings.

(e)     On May 8, 2012, on a motion by the Company (the "**Third Party Stay Motion**"), the Court granted an Order confirming that the Stay extended to the Third Party Defendants (as defined below) in the Class Actions.

(f)     On May 14, 2012, the Court granted the Claims Procedure Order which provided for the calling of claims against the Company, its directors and officers and the Sino-Forest Subsidiaries and established a claims bar date.

(g)     On June 26, 2012 the Company brought a motion relating to a determination on "equity claims" and on July 27, 2012, the Court granted the motion and issued the Equity Claims Order.  An appeal from the Equity Claims Order was dismissed by the Ontario Court of Appeal on November 23, 2012.

(h)     On July 25, 2012, the Monitor sought and the Court granted the Mediation Order, directing a mediation of the Class Action Claims against the Company and the Third Party Defendants.  The Mediation took place over the course of September 4 and 5, 2012.   While no settlements were reached during the Mediation, settlement discussions among parties to the Mediation continued following the Mediation.

(i)     On August 31, 2012, the Company sought and the Court granted the Meeting Order which provided for the filing of the Plan and the calling of a meeting of creditors.

(j)     On October 28, 2012, the Ontario Class Action Plaintiffs brought a motion seeking a lifting of the stay against Ernst & Young, BDO, the Underwriters, Allen Chan and Kai Kit Poon. The motion was not opposed by the Company or the Monitor.  In an endorsement released on November 6, 2012, the Court dismissed the motion without prejudice to the Ontario Class Action Plaintiffs to renew their request on December 10, 2012 (which was the scheduled date for the Sanction Hearing).

(k)     On December 3, 2012, the Meeting took place at which time the Plan was approved by the Required Majority (also discussed in more detail below).

(l)     On December 7, 2012, the Company sought the Sanction Order, which was granted by the Court on December 10, 2012.  A notice of motion for leave to appeal the Sanction Order has been served by counsel to a group of shareholders

("**Kim Orr**").  To date, Kim Orr has not perfected its leave motion nor has leave
been granted by the Ontario Court of Appeal.

(m)    On December 21, 2012, the Court granted an Order approving the notice process
for the approval of the Ernst & Young Settlement.

13.    As of the date of this Fifteenth Report, the Company is continuing to work towards the
implementation of the Plan, the details of which are discussed in more detail below.

## THE CLAIMS PROCESS, MEDIATION AND PARTICIPATION OF THE CLASS ACTION PLAINTIFFS IN THE CCAA PROCEEDINGS

*Claims, the Class Actions and the Mediation*

14.    From the outset of the CCAA Proceedings, it was apparent that addressing the contingent
claims against the Company (and related claims against the Sino-Forest Subsidiaries)
would be important given the extent of the litigation against the Company and resulting
indemnification claims from others named in the Class Actions.  To further that process,
on May 14, 2012, the Company obtained the Claims Procedure Order,[2] which provided
for the calling of claims against the Company, its directors and officers and its
subsidiaries.  The call for Claims included a call for "equity claims".  Claims (other than
Restructuring Claims) and D&O Claims (as such terms are defined in the Claims
Procedure Order) were to be filed prior to June 20, 2012 (the "**Claims Bar Date**"). Any
Claim not filed by the Claims Bar Date is now forever barred.

15.    In developing the terms of the Claims Procedure Order, the Company and the Monitor
were both cognizant of the relatively unique nature of the claims that were anticipated to
be asserted in the claims process.  As set out above, as a holding company, unlike many
CCAA debtors, the Company does not have many, if any, trade creditors.  Instead, aside
from the claims in respect of the Notes, it was anticipated that most or all of the
remaining claims filed would be in connection with the Class Actions either directly by

[2] See Appendix F for a copy of the Claims Procedure Order.

the plaintiffs in the Class Actions or by way of indemnity claims from the Third Party
Defendants.

16.     In that regard, the Company and the Monitor had extensive discussions with class action
        counsel for the Ontario Class Action Plaintiffs and the Quebec Class Action Plaintiffs
        (collectively, the "**Canadian Plaintiffs**") (among others) as to certain terms of the
        Claims Procedure Order.   Ultimately, numerous changes were made to the Claims
        Procedure Order that was proposed to the Court including paragraphs ordering that the
        Canadian Plaintiffs were entitled to file representative Proofs of Claim and D&O Proofs
        of Claim (as both terms are defined in the Claims Procedure Order) in respect of the
        substance of the Ontario Class Action and the Quebec Class Action, respectively
        (collectively, the "**Canadian Class Actions**").[3]

17.     On June 26, 2012, the Company brought a motion seeking a direction that Claims by the
        plaintiffs in the Class Actions in respect of the purchase of securities[4] and resulting
        indemnification claims by the Third Party Defendants constituted "equity claims"
        pursuant to section 2(1) of the CCAA.   The motion as opposed by Ernst & Young, BDO
        and the Underwriters.   The motion was not opposed by the Canadian Plaintiffs who
        conceded that their Class Action claims in respect of the purchase of securities were
        "equity claims".[5]

18.     On July 27, 2012, the Court issued its decision determining that such claims did
        constitute "equity claims" under section 2(1) of the CCAA (the "**Equity Claims
        Decision**").   The Equity Claims Decision was appealed by Ernst & Young, BDO and the
        Underwriters.   The appeal was heard by the Ontario Court of Appeal on November 13,
        2012.   On November 23, 2012, the Ontario Court of Appeal issued its reasons and
        dismissed the appeal.   The Equity Claims Decision was not appealed to the Supreme
        Court of Canada.

---

[3] See paragraphs 27 and 28 of the Claims Procedure Order.
[4] The motion did not deal with claims in respect of the purchase of debt securities.
[5] Kim Orr did not appear at or in any way oppose the motion on the Equity Claims Decision.

19.    Early in the CCAA Proceedings, it became apparent to the Monitor that the nature,
complexity and number of parties involved in the litigation claims surrounding the
Company had the potential to cause extensive delay and additional costs in the CCAA
Proceedings.    As such, it was the view of the Monitor (with the agreement of the
Company) that there was merit in a global resolution of not only the Class Action Claims
against the Company, but also against the other defendants named in the Class Actions
other than Pöyry Beijing (the "**Third Party Defendants**").[6]

20.    On July 25, 2012 the Court granted an order (the "**Mediation Order**"), directing a
mediation (the "**Mediation**") of the class action claims against the Company and the
Third Party Defendants.[7]    The parties directed to participate in the mediation were the
Company, the Canadian Plaintiffs, the Third Party Defendants, the Monitor, the Initial
Consenting Noteholders and relevant insurers. The Monitor is aware and believes that the
parties took the Mediation seriously and relied on the ability of those in attendance to
bind their respective constituents as was required by the Mediation Order.    The Mediation
was conducted on September 4 and 5, 2012.    No settlements were reached during the
Mediation.

21.    Although no settlements were reached during the Mediation, the Monitor was aware that
many of the Third Party Defendants remained focused on determining whether a
resolution within the CCAA Proceedings was possible. Specifically, the Monitor notes
the description of the ongoing settlement discussions between the Canadian Plaintiffs and
Ernst & Young in the affidavit of Charles Wright sworn January 10, 2013 (the "**Wright
Affidavit**"), which ultimately resulted in the Ernst & Young Settlement.

---

[6] The Third Party Defendants are: EY, BDO, the Underwriters, Allen Chan, Judson Martin, Kai Kit Poon, David
Horsley, William Ardell, James Bowland, James Hyde, Edmund Mak, Simon Murray, Peter Wang and Garry West.
[7] See Appendix G for a copy of the Mediation Order.

## THE PLAN, MEETING OF CREDITORS AND SANCTION ORDER

*The Plan and the Plan Filing and Meeting Order*

22.     On August 14, 2012, the Company announced that it had filed a draft plan of compromise and reorganization (the "**August 14 Draft Plan**") with the Court.[8]  On August 15, 2012, the Company filed a draft information circular with the Court. In connection with the filing of the August 14 Draft Plan, the Company also brought a motion seeking approval of a plan filing and meeting order (the "**Meeting Order**") which, among other things, provided for the calling of a meeting of creditors (the "**Meeting**").[9]  It was agreed that the Meeting Date would be subsequent to the completion of the Mediation.

23.     The motion for the Meeting Order was returnable on August 28, 2012.  Due to concerns raised by certain of the Third Party Defendants, the motion was postponed to determine whether the parties could agree to changes that would result in a mutually satisfactory proposed order, which was ultimately achieved.  On August 31, 2012, the Court granted the Meeting Order.

24.     On October 19, 2012, the Company filed a revised plan of compromise and reorganization and information statement. Further revised versions of the Plan were filed on November 28, 2012 and December 3, 2012.  The December 3, 2012 version of the Plan (being the final version of the Plan that was put to creditors at the Meeting and the Court at the Sanction Hearing) included amendments relating to the Third Party Defendants including the new Article 11.1 which provided for a mechanism through which the release contemplated by the Ernst & Young Settlement could be achieved.[10]

*The Meeting*

25.     The details regarding the calling of the Meeting as well as the conduct of the Meeting are set out in detail in the Supplemental Report and therefore not repeated herein. Briefly, the Meeting Order provided for:

---

[8] A further draft of the Plan dated August 27, 2012 was filed prior to the return of the motion for the Meeting Order.
[9] See Appendix H for a copy of the Meeting Order.
[10] See Appendix B for a copy of the Plan.

(a)     notice and mailing of the Company's plan, supplements and amendments thereto;

(b)     the solicitation of proxies;

(c)     the calling of a meeting of creditors; and

(d)     those Persons who were entitled to attend and vote on the plan at the meeting – specifically, holders of equity claims were not (in such capacity) entitled to attend the Meeting, nor were they entitled to vote on the Plan.

26.     The Meeting was held at Gowlings' office on December 3, 2012, starting shortly after 10am. By the time the Meeting was conducted, the Company (with the assistance of others) had made considerable progress in obtaining support for its Plan.  Notably, with those holding Voting Claims, there were only three (3) votes against the Plan (representing approximately .03% in value) and there was only one vote against the Plan in respect of Unresolved Claims (namely, BDO).

27.     In accordance with the Meeting Order, persons who were entitled to vote submitted their proxies which were used to vote on the Plan in the form presented at the Meeting.  As a result, the Plan received overwhelming approval by creditors with Voting Claims who voted in person or by proxy (99.96% in value and 98.81% in number) and even if the results of the votes on the Unresolved Claims counted towards the Required Majority, the Plan still would have received overwhelming approval (90.72% in value and 98.5% in number).[11]   Further, as discussed below, subsequent to the Meeting and prior to the Sanction Hearing, BDO (the only party with Unresolved Claims that voted "no"), became a Named Third Party Defendant under the Plan and supported approval of the Plan at the Sanction Hearing.  Lastly, as set out above, holders of equity claims (including the Canadian Plaintiffs) were not entitled to attend the Meeting or vote on the Plan.

*The Sanction Order*

28.     The Sanction Hearing was held on December 7, 2012.  At the Sanction Hearing, there were no claimants who filed Claims, D&O Claims or D&O Indemnity Claims (all as

---

[11] See paragraph 31 of the Supplemental Report (Appendix D) for a full summary of the voting results.

defined in the Claims Procedure Order) under the Claims Procedure Order and/or who voted at the Meeting who opposed the sanctioning of the Plan. Specifically, the following parties were supportive of the Plan:

(a)      the Company;

(b)      the Company's board of directors;

(c)      the Monitor;

(d)      the Initial Consenting Noteholders;

(e)      Ernst & Young;

(f)      the Underwriters; and

(g)      BDO.

29.      There were also a number of parties, including counsel for the Canadian Plaintiffs and the U.S. Plaintiffs, who did not oppose the sanctioning of the Plan.  The only parties who expressed any opposition to the sanctioning of the Plan were three shareholders of the Company, Invesco Canada Ltd., Northwest & Ethical Investments L.P. and Comité Syndical National De Retraite Batirente Inc. (collectively, the "**Objecting Shareholders**"), which were represented by Kim Orr, who served a notice of appearance on December 6, 2012, one (1) day prior to the Sanction Hearing in these CCAA Proceedings.[12]  Notwithstanding the fact that Kim Orr acknowledged during the Sanction Hearing that it had been monitoring the CCAA Proceedings on behalf of its clients, none of the Objecting Shareholders had previously objected to the Claims Procedure Order, the Mediation Order, nor did any of them file Claims or D&O Claims under the Claims Procedure Order independent of the representative Claims and D&O Claims that were filed by the Canadian Plaintiffs as authorized by paragraphs 27 and 28 of the Claims

---

[12] See Appendix I for a copy of the notice of appearance of Kim Orr.

Procedure Order.  The Court issued its endorsement on the Sanction Hearing and the Sanction Order was granted on December 10, 2012.[13]

30.     A notice of motion for leave to appeal the Sanction Order has been served by Kim Orr.[14] However, in an exchange of correspondence between the Company and Kim Orr, Kim Orr confirmed that they did not intend to seek a stay of the implementation of the Plan pending appeal.[15]

*Plan Implementation*

31.     Since the granting of the Sanction Order, the Company, with the assistance of the Monitor and the Initial Consenting Noteholders, has worked towards fulfilling all of the conditions precedent to the implementation of the Plan.  On January 24, 2013, the Company announced that it anticipated that the Plan Implementation Date will occur on or about January 29, 2013 and, in any event, prior to the end of January 2013.[16]

32.     Subsequent to the Sanction Order being granted,

(a)     Allen Chan, Kai Kit Poon and David Horsley have been added as "Named Third Party Defendants" to the Plan which means, among other things, that none of those three individuals will be entitled to receive any distributions under the Plan;[17]

(b)     As a result of the addition of Mr. Chan, Mr. Poon and Mr. Horsley as Named Third Party Defendants to the Plan, the Unresolved Claims Reserve was reduced from Plan consideration sufficient to address $162.5 million of Unresolved Claims to Plan consideration sufficient to address $1.2 million of Unresolved Claims;

---

[13] See Appendices J and K for copies of the Sanction Order the Court's endorsement.
[14] See Appendix L for a copy of the notice of motion seeking leave to appeal the Sanction Order.
[15] See Appendix M copies of correspondence from Bennett Jones to Kim Orr; a responding letter from Kim Orr to Bennett Jones; and a responding letter from Lenczner Slaght to Kim Orr all dated January 3, 2013.
[16] See Appendix O for a copy of the Company's press release announcing that it anticipates that Plan implementation will occur on or about January 29, 2013.
[17] See Appendix P for letters dated January 11, 2013 and January 21, 2013.

(c)     On January 15, 2013, the Company obtained an Order of the Court with respect to certain document retention matters (the "**Document Retention Protocol Order**"); and

(d)     On January 21, 2013, the Company obtained an Order to approve certain administrative changes to the Plan including providing for the creation of an additional escrow to be maintained by the Monitor in connection with certain Hong Kong stamp duty matters.

## THE ERNST & YOUNG SETTLEMENT

*The Ernst & Young Settlement and Article 11 of the Plan*

33.     As set out above, Ernst & Young is one of the Third Party Defendants named in the Canadian Class Actions (as well as the class action proceeding commenced in the U.S.). In turn, in connection with the claims process conducted pursuant to the Claims Procedure Order, Ernst & Young filed both Claims and D&O Claims against the Company, the Sino-Forest Subsidiaries and numerous individuals for indemnity, contractual damages and other matters.  The Monitor notes that the Proof of Claim and D&O Proof of Claim (each as defined in the Claims Procedure Order) filed by Ernst & Young are attached as Exhibits C and D to the affidavit of Mike P. Dean sworn January 11, 2013.

34.     Prior to the Meeting, the Canadian Plaintiffs reached a settlement with Ernst & Young pursuant to certain minutes of settlement dated November 29, 2012 (the "**Minutes of Settlement**").[18]  The Minutes of Settlement provided for the settlement of all claims against Ernst & Young and, in turn, resulted in amendments to the Plan and, in that context, Ernst & Young agreed, among other things, that it would not receive any consideration under the Plan, waived all rights to appeal and also resulted in Ernst & Young being supportive of and voting in favour of the Plan.

---

[18] See Appendix A for a copy of the Minutes of Settlement.

35.     A detailed outline of the Ernst & Young Settlement is set out in the affidavit of Charles Wright sworn January 10, 2013 and therefore not repeated herein.  In general terms, the Ernst & Young Settlement provides for the payment by Ernst & Young to a settlement trust of a $117 million settlement amount (the "**Settlement Fund**") upon the satisfaction of certain conditions including: (a) approval of the court of the Ernst & Young Settlement (the "**Ernst & Young Settlement Approval Order**"); and (b) recognition by the U.S. court of the Ernst & Young Settlement Approval Order pursuant to chapter 15 of title 11 of the United States Code.

36.     In exchange for payment of the Settlement Fund, the Minutes of Settlement provide for the requirement that Ernst & Young receive a full release of all claims against it to be effected pursuant through the CCAA Plan mechanism.  As such, amendments to the November 28 Plan were required in order to incorporate this structure.  Details of the changes to the Plan relating to Ernst & Young are set out in the Supplemental Report.  A brief description is as follows:

(a)     Any and all indemnification rights and entitlements of Ernst & Young and any indemnification agreement between Ernst & Young and the Company shall be deemed to be valid and enforceable in accordance with their terms for the purposes of determining whether the Claims of Ernst & Young for indemnification in respect of the Noteholder Class Action Claims are valid and enforceable within the meaning of section 4.4(b) the Plan.[19]

(b)     Ernst & Young shall not be entitled to any distributions under the Plan.

(c)     The Sanction Order shall contain a stay against Ernst & Young between the Plan Implementation Date and the earlier of the Ernst & Young Settlement Date (as defined in the Plan) or such other date as may be ordered by the Court on a motion to the Court.

---

[19] Section 4.4(b) of the Plan, among other things, establishes the Indemnified Noteholder Class Action Limit.

(d)     Section 11.1 of the Plan contains provisions that provide a framework pursuant to which a release of the Ernst & Young Claims[20] under the Plan would happen if several conditions were met.  That release will only be granted if all conditions are met including further court approval. A summary of those terms is as follows:

(i)     Notwithstanding anything to the contrary in the Plan, subject to (A) the granting of the Sanction Order; (B) the issuance of the Settlement Trust Order (as may be modified in a manner satisfactory to the parties to the Ernst & Young Settlement and the Company (if occurring on or prior to the Plan Implementation Date), the Monitor and the Initial Consenting Noteholders, as applicable, to the extent, if any, that such modifications affect the Company, the Monitor or the Initial Consenting Noteholders, each acting reasonably); (C) the granting of an Order under Chapter 15 of the United States Bankruptcy Code recognizing and enforcing the Sanction Order and the Settlement Trust Order in the United States; (D) any other order necessary to give effect to the Ernst & Young Settlement (the orders referenced in (C) and (D) being collectively the "**Ernst & Young Orders**"); (E) the fulfillment of all conditions precedent in the Ernst & Young Settlement and the fulfillment by the Ontario Class Action Plaintiffs of all of their obligations thereunder; and (F) the Sanction Order, the Settlement Trust Order and all Ernst & Young Orders being final orders and not subject to further appeal or challenge, Ernst & Young shall pay the settlement amount as provided in the Ernst & Young Settlement to the trust established pursuant to the Settlement Trust Order (the "**Settlement Trust**");

(ii)     Upon receipt of a certificate from Ernst & Young confirming it has paid the settlement amount to the Settlement Trust in accordance with the Ernst & Young Settlement and the trustee of the Settlement Trust confirming

---

[20] "Ernst & Young Claims" has the definition given to it in the Plan and does not include any proceedings or remedies that may be taken against Ernst & Young by the Ontario Securities Commission or by staff of the Ontario Securities Commission and the jurisdiction of the Ontario Securities Commission is expressly preserved.

receipt of such settlement amount, the Monitor shall deliver to Ernst & Young the Monitor's Ernst & Young Settlement Certificate. The Monitor shall thereafter file the Monitor's Ernst & Young Settlement Certificate with the Court;

(iii)    Notwithstanding anything to the contrary in the Plan, upon receipt by the Settlement Trust of the settlement amount in accordance with the Ernst & Young Settlement: (A) all Ernst & Young Claims shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled, barred and deemed satisfied and extinguished as against Ernst & Young; (B) section 7.3 of the Plan shall apply to Ernst & Young and the Ernst & Young Claims *mutatis mutandis* on the Ernst & Young Settlement Date; and (C) none of the plaintiffs in the Class Actions shall be permitted to claim from any of the other Third Party Defendants that portion of any damages that corresponds to the liability of Ernst & Young, proven at trial or otherwise, that is the subject of the Ernst & Young Settlement; and

(iv)    In the event that the Ernst & Young Settlement is not completed in accordance with its terms, the Ernst & Young Release will not become effective (and any claims against Ernst & Young will be assigned to the Litigation Trust).

37.    The focus of Kim Orr's objections at the Sanction Hearing related to the inclusion of Article 11.1 relating to the Ernst & Young Settlement.  At the Sanction Hearing, it was made clear by all parties that approval of the Ernst & Young Settlement (including the potential for a release under Article 7 of the Plan) was not being sought on that date and would be the subject of a further motion.   However, the Company (and others) did take the view that the Plan, as a whole (not in part), was being considered for Court approval. Ultimately, the Court, in the Sanction Order, approved the Plan, in its entirety.   In his endorsement, Justice Morawetz notes:

The Plan was presented to the meeting with Article 11 in place.  This was the Plan that was subject to the vote and this is the Plan that is the subject

of this motion. The alternative proposed by the Funds was not considered at the meeting and, in my view, it is not appropriate to consider such an alternative on this motion.

38.   The Monitor participated in the development of the Plan as a whole and is of the view that it is clearly reflected in the Court's endorsement that the Plan, as a whole, be approved.

*The E&Y Notice Order*

39.   The parties took the view that this Court was the appropriate court for hearing the motion to approve the Ernst & Young Settlement. Upon direction from the Regional Senior Justice on December 13, 2012, it was determined that the Court would hear the motion for approval of the Ernst & Young Settlement. On December 21, 2012, the Court granted an order (the "**E&Y Notice Order**") approving the notice process regarding the approval of the Ernst & Young Settlement and scheduled the motion date for the Ernst & Young Settlement Motion to be February 4, 2013.[21]

40.   The E&Y Notice Order set out the required methods for providing notice of the Ernst & Young Settlement as well as an objection process pursuant to which any person wishing to object to the approval of the Ernst & Young Settlement at the Ernst & Young Settlement Motion was required to file a notice of objection in the prescribed form on or prior to January 18, 2013. The Monitor was also required to attach all objections received to a report to court.

41.   The Monitor has filed its Fourteenth Report that contained all Notices of Objections or other correspondence expressing objections received up to the date of the Fourteenth Report. The Monitor has or will provide any further Notices of Objection or other correspondence expressing objections in further supplements to the Fourteenth Report.

*The Benefits of Ernst & Young Settlement to the Company and the CCAA Proceedings*

---

[21] See Appendix N for a copy of the E&Y Notice Order.

42.    Although the Ernst & Young Settlement resolves class action litigation claims against
Ernst & Young, the settlement was reached in the context of the Company's CCAA
Proceedings and has provided a benefit to the Company, the Plan and the CCAA
Proceedings for the following reasons.  In particular:

(a)    It eliminated the chance that Ernst & Young would seek leave to appeal the
Equity Claims Decision to the Supreme Court of Canada which might have been
costly and time consuming;

(b)    Given that the Equity Claims Decision did not address the entirety of Ernst &
Young's indemnity claims, the settlement results in the elimination of further
litigation relating to the acceptance, disallowance or revision of the Claim and
D&O Claim filed by Ernst & Young, which litigation could have been extensive,
lengthy and costly;

(c)    Ernst & Young has agreed to forego any distributions under the Plan which; and

(d)    It eliminated the possibility that Ernst & Young would vote against the Plan,
object to the Sanction Hearing and appeal the Sanction Order which could have
caused delay in implementing the Plan and result in significant additional cost to
the estate.

43.    Further, the Monitor has consistently recognized the potential benefit of settlement within
the CCAA Proceedings of the litigation claims surrounding the Company, including those
against the Third Party Defendants.  This view was evident not only in the Monitor's
Reports but also through the Monitor's support of the Third Party Stay Motion as well as
the bringing of the motion for Mediation.  The Monitor has, throughout, encouraged the
settlement of these claims within the CCAA framework which, in the Monitor's view,
provides for an efficient legal regime through which such settlements may be effected.

44.    The Monitor has also consistently expressed its views regarding urgency in the CCAA
Proceedings and is of the view that the Ernst & Young Settlement has assisted in
eliminating a potential delay in the implementation of the Plan.

**MONITOR'S RECOMMENDATION**

45.     For the reasons set out above, the Monitor recommends approval of the Ernst & Young
        Settlement including the granting of the proposed release as set out in Articles 7 and 11
        of the Plan.

Dated this 28th day of January, 2013.

FTI Consulting Canada Inc.
In its capacity as Monitor of
Sino-Forest Corporation, and not in its personal capacity

Greg Watson
Senior Managing Director

Jodi Porepa
Managing Director



## APPENDIX "A" - THE MINUTES OF SETTLEMENT

*(See Attached)*



IN THE MATTER OF
SINO-FOREST CORPORATION

B E T W E E N:

The Trustees of the Labourers' Pension Fund of Central and Eastern Canada,
The Trustees of the International Union of Operating Engineers Local 793 Pension Plan for
Operating Engineers in Ontario, Sjunde AP-Fonden, David Grant, Robert Wong, Guining Liu,
and any other proposed representative plaintiffs in Ontario Superior Court Action No. CV-11-
431153-00CP and in Quebec Superior Court No. 200-06-000132-111,

in their personal and proposed representative capacities (the "Plaintiffs")

-and-

Ernst & Young LLP, on behalf of itself and Ernst & Young Global Limited and all member firms
thereof ("EY", together with the Plaintiffs the "Parties")

## MINUTES OF SETTLEMENT

1.  These Minutes of Settlement represent the agreement between the Plaintiffs and EY
    reached on November 28, 2012 to resolve in accordance with the terms more particularly
    set out herein the actions, causes of action, claims and/or demands, on all counts
    howsoever arising and in all jurisdictions, made against EY or which could have been
    made concerning any claims related to Sino-Forest Corporation and its affiliates and
    subsidiaries, whether or not captured by the "Class" or the "Class Period", as variously
    defined, including the actions (the "Actions") listed on Schedule "A" hereto (the
    "Claims");

2.  The terms of these Minutes of Settlement are binding on the Parties;

3.  These Minutes of Settlement are and shall remain confidential, and neither party shall
    publicly disclose or include in a court filing the terms hereof without the prior written
    consent of the other;

4.  EY makes no admissions of liability and waives no defences available to it with respect
    to the Claims or otherwise;

5.  A settlement amount of CDN $117,000,000 (the "Settlement Fund") shall be paid by EY
    in accordance with the applicable orders of the courts (Ontario Superior Court of Justice,
    Ontario Superior Court of Justice Commercial List (supervising CCAA judge), Province
    of Quebec Superior Court, United States District Court and the United States Bankruptcy
    Court) ("Courts") on the Effective Date (save for any amounts payable in advance of the
    Effective Date as set out in paragraph 7), being the date that all requisite approvals and
    orders are obtained from the Courts and are final and non-appealable;

- 2 -

6.    The Settlement Fund represents the full monetary contribution or payment of any kind to
      be made by EY in settlement of the Claims, inclusive of Claims, costs, interest, legal fees,
      taxes (inclusive of any GST, HST, or any other taxes which may be payable in respect of
      this settlement), any payments to Claims Funding International, all costs associated with
      the distribution of benefits, all costs of any necessary notice, all costs associated with the
      administration of the settlement and any other monetary costs or amounts associated with
      the settlement or otherwise;

7.    No payment of the Settlement Fund shall be made by EY until all conditions herein and
      set out in Schedule B hereto have been met. However, with respect to notice and
      administration costs which are incurred in advance of the Effective Date, as a result of an
      Order of the Court, the Plaintiffs will incur and pay such costs up to $200,000 (the
      "Initial Plaintiffs Costs"), which costs are to be immediately reimbursed from the
      Settlement Fund after the Effective Date.   EY will incur and pay such notice and
      administration costs which are incurred in advance of the Effective Date, as a result of an
      Order of the Court, over and above the Initial Plaintiffs Costs up to a further $200,000
      (the "Initial EY Costs"). The Initial EY Costs shall be deducted from the amount of the
      Settlement Fund payable to the Plaintiffs.  Should any costs in excess of the cumulative
      amount of the Initial Plaintiffs Costs and the Initial EY Costs, being a total of $400,000,
      in respect of notice and administration be incurred prior to the Effective Date, as a result
      of an Order of the Court, such amounts are to be borne equally between the Plaintiffs and
      EY, which amounts are to be reimbursed or deducted as the case may be from the
      Settlement Fund, on the terms set out above in this section.  Should the settlement not
      proceed, the Parties shall bear their respective costs paid to that time;

8.    No further proceedings shall be commenced or continued by the Plaintiffs or their
      counsel against EY in respect of any Claims, other than as necessary to complete the
      settlement herein;

9.    The Plaintiffs agree not to claim from the non-settling defendants in the Actions, that
      portion of any damages that corresponds to the proportionate share of liability of EY,
      proven at trial or otherwise, such that EY is not further exposed to the Claims;

10.   It is the intention of the Parties that this settlement shall be approved and implemented in
      the Sino-Forest Corporation CCAA proceedings.  The settlement shall be conditional
      upon full and final releases and claims bar orders in favour of EY and which satisfy and
      extinguish all Claims against EY, and without opt-outs, and as contemplated by the
      additional terms attached hereto as Schedule B hereto and incorporated as part of these
      Minutes of Settlement;

11.   This settlement is conditional upon obtaining appropriate orders from the Ontario
      Superior Court of Justice Commercial List (supervising CCAA judge) and the United
      States Bankruptcy Court that provide that the payment of the Settlement Fund is in full
      satisfaction of any and all claims that could be brought in connection with the claims of
      any security holder or creditor of Sino-Forest Corporation, including claims over for
      contribution and indemnity or otherwise, howsoever arising in Canada and the United
      States;



- 3 -

12.    The releases in the Sino-Forest Corporation CCAA proceedings shall include Ernst &
       Young LLP (Canada) and Ernst & Young Global Limited and all member firms thereof,
       and all present and former affiliates, partners, associates, employees, servants, agents,
       contractors, directors, officers, insurers and successors, administrators, heirs and assigns
       of each, but does not include any non-settling defendants in the Actions or their
       respective present or former affiliates, partners, associates, employees, servants, agents,
       contractors, directors, officers, insurers or successors, administrators, heirs and assigns of
       each in their capacity as officers or directors of Sino-Forest Corporation ("EY Global").
       The releases to be provided to EY by the Plaintiffs shall include EY Global and will
       release all Claims of the Plaintiffs' counsels' clients in all jurisdictions;

13.    It is the intention of the Parties that the Settlement Fund shall be distributed in a claims
       process satisfactory to the CCAA Court, with a prior claims bar order;

14.    The Parties shall use all reasonable efforts to obtain all Court approvals and/or orders
       necessary for the implementation of these Minutes of Settlement, including an order in
       the CCAA proceedings granting the plaintiffs appropriate representative status to effect
       the terms herein;

15.    If the settlement between the Parties or any terms hereof are not approved by order(s) of
       the applicable Courts fulfilling all conditions precedent in paragraph 10 hereto the
       settlement between the Parties and these Minutes of Settlement are null and void;

16.    These terms shall be further reduced to a written agreement reflecting the terms of the
       agreement between the Parties hereto with such additional terms agreed to by the Parties
       consistent herewith or as agreed to give efficacy in Quebec and the United States. Should
       the Parties be unable to agree on the form of written agreement, the Parties agree to
       appoint Clifford Lax as mediator/arbitrator to assist the Parties and his decision as
       arbitrator shall be final and binding on the Parties, in accordance with the terms herein
       but subject to the terms of Schedule B hereof, and not subject to appeal;

17.    The Parties will agree on a level of disclosure by EY for the purposes of reasonably
       assisting in the approval process of the applicable Courts, consistent with the Parties'
       obligations under the relevant class proceedings legislation. Should the Parties be unable
       to agree on the level of disclosure after good faith efforts to do so, the Parties agree to
       appoint Clifford Lax as mediator to assist the Parties. If the Parties after mediation are
       still unable to reach an agreement, then either Party may terminate the settlement;

18.    Pending the implementation of this settlement, including the distribution of the
       Settlement Fund, EY shall advise the plaintiffs of any agreements reached by it with the
       Ad Hoc Committee of Noteholders, Sino-Forest, the Litigation Trustee, or counsel or
       representatives of any of these parties, to pay any monetary consideration to any of them.

**SIGNATURE LINES ON NEXT PAGE**

- 4 -

Date: Nov 29 / 2012

_Cuw for Koskie Minsky LLP_

**KOSKIE MINSKY LLP**
Lawyers for the Plaintiffs


Date: Nov 29, 2012

_Cuw for Siskinds LLP_

**SISKINDS LLP**
Lawyers for the Plaintiffs


Date: Nov 29, 2012

_Cuw for PRRR LLP._

**PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP**
Lawyers for the Plaintiffs


Date: November 29, 2012

**LENCZNER SLAGHT ROYCE SMITH
GRIFFIN LLP**
Lawyers for Ernst & Young LLP, and on behalf
of Ernst & Young Global Limited and all
member firms thereof

## SCHEDULE "A"

1.  The Trustees of The Labourers' Pension Fund of Central and Eastern Canada, et al. v. Sino-Forest Corporation, et al., Ontario Superior Court of Justice, Court File No. CV-11-431153-00CP

2.  Guining Liu v. Sino-Forest Corporation, et al., Province of Quebec Superior Court, File No. 200-06-000132-111

3.  David Leapard, et al. v. Allen T.Y. Chan, et al., United States New York Southern District Court, Case Number 1:2012-cv-01726-VM



## SCHEDULE "B"

## Terms and Conditions of any Ernst & Young LLP (Settlement with Class Action Plaintiffs

A settlement unilaterally with E&Y will be conditional upon such settlement being made to a resolution that:

a) is a settlement of all Claims, proceedings and potential claims against E&Y in all jurisdictions;

b) reflects approval of appropriate Courts in relevant jurisdictions as described below; and

c) accordingly must reflect the following elements in a form satisfactory to E&Y in its sole discretion, without which E&Y is at liberty to reject the settlement at any time:

I.     **Court Proceedings**

    (A)   *CCAA*

        (i)    Plan of Arrangement (in form consented to);

        (ii)   Final Sanction Order;

        (iii)  Both Plan and Sanction Order to include:

            (a)    a release of E&Y, and all affiliate firms, partners, staff, agents and assigns for any and all Claims (including cross-claims and third-party claims), and

            (b)    a claims bar (must expressly exclude all claims against all Pöyry entities).

    (B)   Ontario Class Action

        (i)    Final Order approving settlement containing satisfactory Pieringer terms and structure and dismissing action;

        (ii)   i) above requires:

            (a)    certification for settlement purposes with i) class definition agreeable to E&Y; ii) notice in all relevant jursidictions

- 2 -

        (including Canada, U.S., Hong Kong, Singapore and PRC); and iii) opt-out threshold agreeable to E&Y;

      (b)    fairness hearing having been held to result in (i).

(C)    Quebec Class Action

    (i)    Final order approving settlement containing satisfactory Pieringer terms and structure and dismissing action;

    (ii)    certification and settlement approval as in (B).

(D)    U.S. Proceedings including Class Action

    (i)    Final order approving settlement containing satisfactory Pieringer terms and structure and dismissing action;

    (ii)    certification and settlement approval as in (B).

    (iii)    Undertaking of Company (Applicant) to bring Chapter 15 proceeding to enforce Canadian *CCAA* order;

    (iv)    final U.S. order, in compliance with U.S. laws, recognizing *CCAA* order.

## II.    Releases and Undertakings

(A)    Full and Final Release and Claims Bar in both *CCAA* Plan and final Sanction Order;

(B)    Full and Final Release from Ontario Class Action Representative Plaintiffs on their own behalf and in their representative capacities, including an agreement not to consult or cooperate with any other party in advancing Claims against E&Y;

(C)    Full and Final Release from Company, directors and officers, noteholders and others on satisfactory Pieringer terms and language;

(D)    Agreement from Ontario class counsel and from noteholders' counsel to not act for or consult with or assist any plaintiff/representative plaintiff/claimant in respect of any Claim or potential Claim against E&Y in any jurisdiction;

(E)    Full and Final Release from Quebec Class Action Representative Plaintiffs on their own behalf and in their representative capacities, including an agreement not to consult or cooperate with any other party in advancing Claims against E&Y;



- 3 -

(F)     Agreement from Quebec class counsel to not act for or consult with or assist any plaintiff/representative plaintiff in any jurisdiction;

(G)     Full and Final Release from U.S. Class Action Representative Plaintiffs on their own behalf and in their representative capacities including an agreement not to consult or cooperate with any other party advancing Claims against E&Y; and

(H)     Agreement from U.S. class counsel to not act for or consult with or assist any plaintiff/representative plaintiff/claimant in respect of any Claim or potential Claim against E&Y in any jurisdiction.



# APPENDIX "G" - THE MEDIATION ORDER

*(See Attached)*



Court File No. CV-12-9667-00CL

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE
## COMMERCIAL LIST

| THE HONOURABLE MR. | ) | WEDNESDAY, THE 25th |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF JULY, 2012 |

IN THE MATTER OF THE *COMPANIES' CREDITORS
ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE AND
ARRANGEMENT OF SINO-FOREST CORPORATION

### ORDER
### (Mediation)

THIS MOTION, made by FTI Consulting Canada Inc. in its capacity as monitor (the "**Monitor**") of Sino-Forest Corporation (the "Applicant") for a consent order concerning mediation and related relief was heard this day at 330 University Avenue, Toronto, Ontario.

ON READING the Monitor's Notice of Motion dated July 13, 2012 and the Fifth Report of the Monitor dated July 13, 2012 (the "**Fifth Report**"), the Responding Motion Record of the Applicants and the Responding Motion Record of Pöyry Beijing (as defined below), and on hearing the submissions of counsel for the Applicant, the Monitor, the ad hoc committee of Noteholders (the "**Ad Hoc Noteholders**"), the ad hoc group of purchasers of the Applicant's securities (the "**Plaintiffs**") and the other defendants in the Ontario Class Action and the Quebec Class Action (the "**Third Party Defendants**") and those other parties present, no one appearing for any of the other parties served with the Monitor's Motion Record, although duly served as appears from the affidavit of service of Alma Cano sworn July 13, 2012, filed.

## SERVICE AND INTERPRETATION

1.       THIS COURT ORDERS that the time for service of the Notice of Motion and the Motion
Record, including the Fifth Report, is hereby abridged and validated such that this Motion is
properly returnable today and hereby dispenses with further service thereof.

2.       THIS COURT ORDERS that capitalized terms used herein and not otherwise defined
shall have the meaning given to them in the Fifth Report.

## MEDIATION

3.       THIS COURT ORDERS that the parties eligible to participate in the Mediation pursuant
to paragraph 5 of this Order are the Applicant, the Plaintiffs, the Third Party Defendants (which
shall be read to exclude Pöyry (Beijing) Consulting Company Limited ("**Pöyry Beijing**")), the
Monitor, the Ad Hoc Noteholders and any insurers providing coverage in respect of the
Applicant and the Third Party Defendants (collectively, the "**Mediation Parties**").

4.       THIS COURT ORDERS that the subject matter of the Mediation shall be the resolution
of the claims of the Plaintiffs against the Applicant and the Third Party Defendants as set out in
the statements of claim in the Ontario Class Action and the Quebec Class Action and any and all
related claims (the "**Subject Claims**"), provided that for the purpose of the Mediation, the
Plaintiffs shall not seek contribution from any of the Mediation Parties with respect to amounts
that could have been sought by the Plaintiffs from Pöyry Beijing had the Plaintiffs not reached a
settlement with Pöyry Beijing (the "**Pöyry Settlement**") and provided that the Plaintiffs shall
provide to the Mediation Parties, within 10 days of the date of this Order or such further time as
this Court may direct, a written summary of evidence proffered by Pöyry Beijing pursuant to the
Pöyry Settlement, which summary shall be treated in the same manner as material in the Data
Room (as defined below) pursuant to this Order.

5.       THIS COURT ORDERS that, where practicable, the Mediation Parties shall participate
in the Mediation in person and with representatives present with full authority to settle the
Subject Claims (including any insurer providing coverage), provided that, where not practicable,
the Mediation Parties may participate in the Mediation through counsel or other representatives,
subject to those counsel or other representatives having access to representatives with full

authority and undertaking to promptly pursue instructions with respect to any proposed agreements that arise from the Mediation.

6.       THIS COURT ORDERS that parties in addition to the Mediation Parties shall only have standing to participate in the Mediation on consent of the Applicant and the Monitor, acting reasonably, or by further Order of this Court.

## DATA ROOM

7.       THIS COURT ORDERS that in connection with the Mediation, as soon as practicable, but in any event no later than August 3, 2012, the Applicant shall provide access to the Mediation Parties to the existing data room maintained by Merrill (the "**Data Room**"), provided however that prior to access to the Data Room, all participants (other than the Applicant, the incumbent directors of the Applicant and the Monitor) shall have entered into a confidentiality agreement with the Applicant on terms reasonably acceptable to the Applicant and the Monitor.

8.       THIS COURT ORDERS that any Mediation Parties who enter into a confidentiality agreement as contemplated by paragraph 7 of this order shall comply with the terms of such confidentiality agreement.

9.       THIS COURT ORDERS that the Applicant, its subsidiaries and affiliates, and their directors, officers, employees, agents and advisors, shall incur no liability in connection with causing, effecting or acquiescing in the establishment of the Data Room or disclosure in respect of such materials and the information contained therein in accordance with this Order. The materials in the Data Room shall be made available without any representation as to the truth of their contents or their completeness, and persons relying on those materials shall do so at their own risk. The disclosure of such materials and the information contained therein in accordance with this Order is not and shall not be public disclosure in any respect. Nothing in this paragraph affects any rights or causes of action that any person may have in relation to the prior disclosure of any of the contents of the Data Room, insofar as such rights or causes of action are independent from and not related to the provision of materials and information in accordance with this Order.

**MEDIATION SCHEDULE**

10.   THIS COURT ORDER THAT, the schedule for the Mediation shall be as follows:

   (a)   the Mediation shall be conducted on September 4th and 5th, and if a third day is
         required, on September 10th, 2012 (the **"Mediation Dates"**);

   (b)   additional Mediation dates shall only be added, and any adjournments of any
         mediation dates shall only be accepted, with the prior written consent of all
         Mediation Parties;

   (c)   the Mediation shall be conducted at a location to be determined by the Mediator
         (as defined below); and

   (d)   the Applicant, the Plaintiffs and the Third Party Defendants shall deliver their
         respective written position statements to each other and to the other Mediation
         Parties on or before August 27, 2012.

**APPOINTMENT OF THE MEDIATOR**

11.   THIS COURT ORDERS that the Honourable Justice Newbould shall be appointed
mediator (the **"Mediator"**).

12.   THIS COURT ORDERS that, prior to the commencement of the Mediation, the Mediator
shall have the right to communicate with this Court and the Monitor from time to time as deemed
necessary or advisable by the Mediator in their sole discretion.

**TERMINATION OF THE MEDIATION**

13.   THIS COURT ORDERS that the Mediation process shall be terminated under any of the
following circumstances:

   (a)   by declaration by the Mediator that a settlement has been reached;

   (b)   by declaration by the Mediator that further efforts at mediation are no longer
         considered worthwhile;

(c)     for any other reason determined by the Mediator;

(d)     mutual agreement by the Mediation Parties; or

(e)     further Order of this Court,

provided that, the Mediation shall in any event terminate on September 10, 2012, unless
extended with the prior written consent of all Mediation Parties.

## NO IMPACT ON OTHER PROCEEDINGS

14.     THIS COURT ORDERS that all offers, promises, conduct statements, whether written or
oral, made in the course of the Mediation are inadmissible in any arbitration or court proceeding.
No person shall subpoena or require the Mediator to testify, produce records, notes or work
product in any other existing or future proceedings, and no video or audio recording will be
made of the Mediation. Evidence that is otherwise admissible or discoverable shall not be
rendered inadmissible or non-discoverable as a result of its use in the Mediation. In the event
that the Mediation Parties (or any group of them) do reach a settlement, the terms of that
settlement will be admissible in any court or other proceeding required to enforce it, unless the
Mediation Parties agree otherwise. Information disclosed to the Mediator by any Mediation
Party at a private caucus during the Mediation shall remain confidential unless such Mediation
Party authorizes disclosure.

15.     THIS COURT ORDERS that nothing in this Order nor the participation of any party in
the Mediation shall provide such party with rights within these proceedings than such party may
otherwise have.

16.     THIS COURT ORDERS that, subject to any applicable stay of proceedings, nothing in
this Order shall prevent the Applicant, the Monitor or any other party of standing from otherwise
pursuing the resolution of claims under the Claims Procedure Order granted by this Court on
May 14, 2012, or any other matter in these CCAA proceedings, including without limitation, the
filing and advancement of the Meetings Order and a Plan.

## CONFIDENTIALITY

17.    THIS COURT ORDERS that any mediation briefs or other documents filed by the
Mediation Parties shall be used only in the context of the Mediation and for no other purpose and
shall be kept confidential by all such parties irrespective of whether such Mediation Parties sign
a confidentiality agreement.

18.    THIS COURT ORDERS that any mediation briefs or other documents filed by the
Mediation Parties that contain information obtained from the Data Room may not be shared with
or otherwise disclosed to any person or entity that has not signed a confidentiality agreement,
other than the Applicant, the incumbent directors of the Applicant, the Monitor and Mediator.

## MISCELLANEOUS

19.    THIS COURT ORDERS that the terms of this Order may only be varied by further Order
of this Court, which may be sought on an ex parte basis on consent of the Mediation Parties.

ENTERED AT / INS     IN A TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:
TOR_LAW\ 7922234\10
                    JUL 3 0 2012

PER/PAR:

259

Court File No. CV-12-9667-00-CL

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF SINO-FOREST CORPORATION

|  | *ONTARIO*<br>SUPERIOR COURT OF JUSTICE<br>(COMMERCIAL LIST)<br><br>(PROCEEDING COMMENCED AT TORONTO) |
|---|---|
|  | **ORDER**<br>**(Mediation)** |
|  | GOWLING LAFLEUR HENDERSON LLP<br>Barristers and Solicitors<br>1 First Canadian Place<br>100 King Street West, Suite 1600<br>TORONTO, Ontario<br>M5X 1G5<br><br>**Derrick Tay / Clifton Prophet / Jennifer Stam**<br>**LSUC Nos.: 21152A / 34345K / 46735J**<br><br>Telephone: (416) 862-7525<br>Facsimile: (416) 862-7661<br><br><br>Lawyers for FTI Consulting Canada Inc.,<br>in its capacity as Monitor of the Applicant |

## APPENDIX "H" - THE MEETING ORDER

*(See Attached)*



Court File No. CV-12-9667-00CL

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

THE HONOURABLE MR.                          )          ~~FRIDAY~~    FRIDAY   31
                                            )          ~~TUESDAY~~, THE ~~4th~~ DAY
JUSTICE MORAWETZ                            )          August
                                            )          OF ~~SEPTEMBER~~, 2012

IN THE MATTER OF THE *COMPANIES' CREDITORS
ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF SINO-FOREST CORPORATION

## PLAN FILING AND MEETING ORDER

THIS MOTION, made by Sino-Forest Corporation (the "**Applicant**" or "**SFC**") for an
order, *inter alia*, (a) accepting the filing of the Plan, (b) authorizing the classification of creditors
for purposes of voting on the Plan, (c) authorizing and directing the Applicant to call, hold and
conduct a meeting of Affected Creditors to consider and vote on a resolution to approve the Plan,
(d) authorizing and directing the mailing and distribution of the Meeting Materials, (e) approving
the procedures to be followed with respect to the meeting of Affected Creditors, (f) setting a date
for the hearing of the Applicant's motion for Court approval of the Plan and (g) amending the
Claims Procedure Order to call for monetary Claims of the Ontario Securities Commission, was
heard this day at 330 University Avenue, Toronto, Ontario.

ON READING the Applicant's Notice of Motion, the affidavit of W. Judson Martin
sworn on August 14, 2012, the affidavit of Audra Hawkins sworn on August 15, 2012, the
affidavit of Elizabeth Fimio sworn on August 27, 2012 and the Seventh Report of FTI
Consulting Canada Inc. (the "**Monitor**") dated August 17, 2012 (the "**Monitor's Seventh
Report**"), and on hearing the submissions of counsel for the Monitor, no one appearing for the
other parties served with the Applicant's Motion Record, although duly served as appears from
the affidavit of service, filed;

AND FURTHER TO the endorsement of this Honourable Court made August 31, 2012 (the **"Endorsement"**):

## SERVICE

1. THIS COURT ORDERS that the time for service of the Notice of Motion, the Applicant's Motion Record and the Monitor's Seventh Report is hereby abridged and validated such that this Motion is properly returnable today and service upon any interested party other than those parties served is hereby dispensed with.

## MONITOR'S ROLE

2. THIS COURT ORDERS that the Monitor, in addition to its prescribed rights and obligations under (i) the CCAA, (ii) the Initial Order, (iii) the Order of this Court dated April 20, 2012 expanding the powers of the Monitor and (iv) the Claims Procedure Order, is hereby directed and empowered to take such other actions and fulfill such other roles as are authorized by this Meeting Order.

3. THIS COURT ORDERS that: (i) in carrying out the terms of this Meeting Order, the Monitor shall have all the protections given to it by the CCAA, the Initial Order, the Order of this Court dated April 20, 2012 expanding the powers of the Monitor, or as an officer of the Court, including the stay of proceedings in its favour; (ii) the Monitor shall incur no liability or obligation as a result of carrying out the provisions of this Meeting Order, save and except for any gross negligence or wilful misconduct on its part; (iii) the Monitor shall be entitled to rely on the books and records of the Applicant and any information provided by the Applicant without independent investigation; and (iv) the Monitor shall not be liable for any claims or damages resulting from any errors or omissions in such books, records or information.

4. THIS COURT ORDERS that the Monitor and the Applicant, with the consent of the Monitor, are hereby authorized to retain such agents as they deem to be advisable to assist them in connection with calling and conducting the Meeting, including with respect to the distribution of Meeting Materials, the identification of the applicable Ordinary Affected Creditors and Noteholders, and the solicitation of proxies from Persons entitled to vote at the Meeting.

## DEFINITIONS

5. THIS COURT ORDERS that any capitalized terms used herein but not otherwise defined herein have the meanings ascribed thereto in the Plan.

6. THIS COURT ORDERS that for the purposes of this Meeting Order, in addition to the terms defined elsewhere in this Meeting Order or in the Plan, the following terms shall have the following meanings:

(a) "**Affected Creditor**" means a Person with an Affected Creditor Claim, but only with respect to and to the extent of such Affected Creditor Claim;

(b) "**Affected Creditor Claim**" means any Ordinary Affected Creditor Claim or Noteholder Claim;

(c) "**Beneficial Noteholder**" means a beneficial owner of any Notes as at the Voting Record Date (or, if applicable, an investment advisor, manager or representative with voting discretion over the Notes owned by such beneficial owners), regardless of whether such beneficial owner is a Registered Noteholder or an Unregistered Noteholder;

(d) "**DTC**" means The Depository Trust Company, or any successor thereof;

(e) "**Equity Claim**" means a Claim that meets the definition of "equity claim" in section 2(1) of the CCAA and, for greater certainty, includes any claim that has been determined to be an Equity Claim by the Court in these proceedings;

(f) "**Equity Claimant**" means any Person having an Equity Claim, but only with respect to and to the extent of such Equity Claim;

(g) "**Equity Claims Order**" means the Order of this Court dated July 27, 2012, in respect of Shareholder Claims and Related Indemnity Claims against SFC, as such terms are defined therein;

(h)  "**Information Circular**" means the information circular in respect of the Plan and the Meeting substantially in the form filed by the Applicant prior to the date hereof, as the same may be amended, supplemented or restated from time to time;

(i)  "**Instructions to Ordinary Affected Creditors**" means the instructions substantially in the form attached as Schedule "C" hereto;

(j)  "**Instructions to Participant Holders**" means the instructions substantially in the form attached as Schedule "B" hereto;

(k)  "**Instructions to Registered Noteholders**" means the instructions substantially in the form attached as Schedule "D" hereto;

(l)  "**Instructions to Unregistered Noteholders**" means the instructions substantially in the form attached as Schedule "E" hereto;

(m)  "**Mailing Date**" means the date to be selected by the Monitor (in consultation with the Applicant and counsel to the Initial Consenting Noteholders) on which the Monitor shall make the mailings contemplated by paragraphs 18 and 20 of this Meeting Order, which date shall be within twenty (20) days of the date of this Meeting Order (unless extended with the consent of the Applicant and counsel to the Initial Consenting Noteholders);

(n)  "**Meeting**" means the meeting of Affected Creditors, and any extension or adjournment thereof, that is called and conducted in accordance with this Meeting Order for the purpose of considering and voting on the Plan;

(o)  "**Meeting Date**" means the date and time for the Meeting to be selected by the Monitor (in consultation with the Applicant and counsel to the Initial Consenting Noteholders), which date shall be within thirty (30) days of the Mailing Date (unless extended with the consent of the Applicant and counsel to the Initial Consenting Noteholders);

(p)  "**Meeting Materials**" means the Noteholder Meeting Materials and the Ordinary Affected Creditor Meeting Materials;

(q)  "**Meeting Order**" means this Order, as it may be amended by any further Order
of the Court;

(r)  "**Noteholder Claim**" means any Claim by a Beneficial Noteholder (or a Trustee
or other representative on such Beneficial Noteholder's behalf) in respect of or in
relation to Notes, including all principal, Accrued Interest and any amounts
payable pursuant to the Notes or the Note Indentures;

(s)  "**Noteholder**" means, as at the Voting Record Date, any Registered Noteholder,
Unregistered Noteholder, Participant Holder or Beneficial Noteholder, as the
context requires, in such capacity;

(t)  "**Noteholder Meeting Materials**" means copies of:

   (i)    the Notice to Affected Creditors;

   (ii)   the Plan;

   (iii)  the Information Circular;

   (iv)   the Meeting Order and Endorsement;

   (v)    a blank form of the Noteholders' Proxy;

   (vi)   the Instructions to Registered Noteholders; and

   (vii)  the Instructions to Unregistered Noteholders;

(u)  "**Noteholders' Proxy**" means a proxy substantially in the form of Schedule "F",
to be submitted to the Monitor by any Beneficial Noteholder that wishes to vote
by proxy at the Meeting;

(v)  "**Notes**" means, collectively, the 2013 Notes, the 2014 Notes, the 2016 Notes and
the 2017 Notes;

(w)  "**Notice to Affected Creditors**" means the notice to Affected Creditors
substantially in the form attached as Schedule "A" hereto;

(x)   **"Ordinary Affected Creditor"** means a Person with an Ordinary Affected
Creditor Claim;

(y)   **"Ordinary Affected Creditor Claim"** means a Claim that is not: an Unaffected
Claim; a Noteholder Claim; an Equity Claim; a Subsidiary Intercompany Claim; a
Noteholder Class Action Claim; or a Class Action Indemnity Claim (other than a
Class Action Indemnity Claim by any of the Third Party Defendants in respect of
the Indemnified Noteholder Class Action Claims);

(z)   **"Ordinary Affected Creditor Meeting Materials"** means copies of:

(i)    the Notice to Affected Creditors;

(ii)   the Plan;

(iii)  the Information Circular;

(iv)   the Meeting Order and Endorsement;

(v)    a blank form of the Ordinary Affected Creditors' Proxy; and

(vi)   the Instructions to Ordinary Affected Creditors;

(aa)  **"Ordinary Affected Creditors' Proxy"** means a proxy substantially in the form
attached as Schedule "G" hereto, to be submitted to the Monitor by any Ordinary
Affected Creditor who wishes to vote by proxy at the Meeting;

(bb)  **"Participant Holder"** means a Person whose name appears on any of the
Participant Holders Lists as at the Voting Record Date but who is not a Beneficial
Noteholder;

(cc)  **"Participant Holders Lists"** means the lists of DTC participant holders of Notes
as at the Voting Record Date to be provided to the Monitor by DTC or any similar
depository or trust company with respect to each series of Notes in accordance
with paragraph 23 of this Meeting Order;

(dd)  **"Plan"** means the plan of compromise and reorganization proposed by the
Applicant as described in the Martin Affidavit and attached as Exhibit "B" to the

affidavit of Elizabeth Fimio, as such plan of compromise and reorganization may
be amended from time to time in accordance with its terms;

(ee)   **"Plan Supplement"** means the supplement(s) to the Plan, which shall contain
draft copies of the Litigation Trust Agreement, relevant documents concerning
Newco (including the terms of the Newco Shares and the Newco Notes) and such
other documents as the Applicant and the Monitor may consider appropriate or
necessary for purposes of the Meeting and voting on the Plan;

(ff)   **"Proof of Claim"** means the "Proof of Claim" referred to in the Claims Procedure
Order, substantially in the form attached to the Claims Procedure Order;

(gg)   **"Registered Noteholder"** means a Noteholder who is the legal owner or holder
of one or more Notes and whose name appears on any Registered Noteholder
List;

(hh)   **"Registered Noteholder List"** means each list of Registered Noteholders as at
the Voting Record Date provided by the Trustees to the Monitor in accordance
with paragraph 21 of this Meeting Order;

(ii)   **"Required Majority"** means a majority in number of Affected Creditors with
Voting Claims, and two-thirds in value of the Voting Claims held by such
Affected Creditors, in each case who vote (in person or by proxy) on the Plan at
the Meeting;

(jj)   **"Sanction Hearing Date"** means the date to be selected by the Monitor for the
Sanction Hearing (in consultation with the Applicant and counsel to the Initial
Consenting Noteholders), which date shall be within seven (7) days of the
Meeting Date (or such other date on or after the Meeting Date as may be set by
the Monitor or the Court);

(kk)   **"Shareholder Claims"** has the meaning ascribed thereto in the endorsement of
this Court dated July 27, 2012 in these proceedings;

(ll)   "**Unregistered Noteholder**" means a Noteholder whose name does not appear on
any Registered Noteholder List;

(mm)   "**Unresolved Claim**" means an Affected Creditor Claim in respect of which a
Proof of Claim has been filed in a proper and timely manner in accordance with
the Claims Procedure Order but that, as at any applicable time, has not been (i)
determined to be a Voting Claim or (ii) finally disallowed;

(nn)   "**Voting Claim**" means an Affected Creditor Claim to the extent that such
Affected Creditor Claim has been accepted by the Monitor solely for purpose of
voting on the Plan (which acceptance for the purpose of voting shall have no
effect on whether such Claim is a Proven Claim for purposes of the Plan), in each
case in accordance with the provisions of the Claims Procedure Order or any
other Order, as applicable;

(oo)   "**Voting Record Date**" means the date of this Meeting Order; and

(pp)   "**Website**" means the website maintained by the Monitor in respect of the CCAA
proceedings pursuant to the Initial Order at the following web address:
http://cfcanada.fticonsulting.com/sfc/.

7.      THIS COURT ORDERS that all references to time herein shall mean local time in
Toronto, Ontario, Canada, and any reference to an event occurring on a Business Day shall mean
prior to 5:00 P.M. on such Business Day unless otherwise indicated herein.

8.      THIS COURT ORDERS that all references to the word "including" shall mean
"including without limitation".

9.      THIS COURT ORDERS that, unless the context otherwise requires, words importing the
singular shall include the plural and *vice versa*, and words importing any gender shall include all
genders.

## THE PLAN

10. THIS COURT ORDERS that the Plan is hereby accepted for filing, and the Applicant is hereby authorized and directed to call and hold a meeting of Affected Creditors to vote on the Plan in the manner set forth herein.

11. THIS COURT ORDERS that the Applicant may, at any time and from time to time prior to or at the Meeting, amend, restate, modify and/or supplement the Plan, subject to the terms of the Plan, provided that: (i) the Monitor, the Applicant or the Chair shall communicate the details of any such amendments, restatements, modifications and/or supplements to Affected Creditors present at the Meeting prior to any vote being taken at the Meeting; (ii) the Applicant shall forthwith provide notice to the service list of any such amendments, restatements, modifications and/or supplements and shall file a copy thereof with this Court forthwith and in any event prior to the Sanction Hearing; and (iii) the Monitor shall post an electronic copy of any such amendments, restatements, modifications and/or supplements on the Website forthwith and in any event prior to the Sanction Hearing.

12. THIS COURT ORDERS that the Applicant shall serve and file the Plan Supplement, and the Monitor shall post the Plan Supplement on the Website, no later than seven (7) days prior to the Meeting. Thereafter, the Applicant may, at any time and from time to time prior to or at the Meeting, amend, restate, modify and/or supplement the Plan Supplement, subject to the terms of the Plan, provided that: (i) the Monitor, the Applicant or the Chair shall communicate the details of any such amendments, restatements, modifications and/or supplements to Affected Creditors present at the Meeting prior to any vote being taken at the Meeting; (ii) the Applicant shall forthwith provide notice to the service list of any such amendments, restatements, modifications and/or supplements and shall file a copy thereof with this Court forthwith and in any event prior to the Sanction Hearing; and (iii) the Monitor shall post an electronic copy of any such amendments, restatements, modifications and/or supplements on the Website forthwith and in any event prior to the Sanction Hearing.

## FORMS OF DOCUMENTS

13. THIS COURT ORDERS that the forms of Information Circular, Notice to Affected Creditors, Ordinary Affected Creditors' Proxy, Noteholders' Proxy, Instructions to Ordinary Affected Creditors, Instructions to Registered Noteholders, Instructions to Unregistered Noteholders and Instructions to Participant Holders are hereby approved. The Applicant, with the consent of the Monitor, may (x) make any changes to such materials as are necessary or desirable to conform the content thereof to the terms of the Plan or this Meeting Order, and (y) at any time and from time to time prior to or at the Meeting, amend, restate, modify and/or supplement any of such materials, subject to the terms of the Plan, provided that: (i) the Monitor, the Applicant or the Chair shall communicate the details of any such amendments, restatements, modifications and/or supplements to Affected Creditors present at the Meeting prior to any vote being taken at the Meeting; (ii) the Applicant shall forthwith provide notice to the service list of any such amendments, restatements, modifications and/or supplements and shall file a copy thereof with this Court forthwith and in any event prior to the Sanction Hearing; and (iii) the Monitor shall post an electronic copy of any such amendments, restatements, modifications and/or supplements on the Website forthwith and in any event prior to the Sanction Hearing.

## VOTING BY CREDITORS

14. THIS COURT ORDERS that, the Affected Creditors shall constitute a single class, the "**Affected Creditors Class**", for the purposes of considering and voting on the Plan.

15. [Intentionally deleted]

16. [Intentionally deleted]

## NOTICE TO ORDINARY AFFECTED CREDITORS

17. THIS COURT ORDERS that the Monitor shall, no later than three (3) Business Days following the date of this Meeting Order, post an electronic copy of the Notice to Affected Creditors, the Plan and the Information Circular (in the form provided by the Applicant as at the date of this Meeting Order) on the Website.

18.    THIS COURT ORDERS that the Monitor shall, on the Mailing Date, deliver the Ordinary Affected Creditor Meeting Materials by courier, personal delivery or email to each Ordinary Affected Creditor with a Voting Claim and/or an Unresolved Claim at the address set out in such Ordinary Affected Creditor's Proof of Claim (or in any other written notice that has been received by the Monitor in advance of such date regarding a change of address for an Ordinary Affected Creditor).

**NOTICE TO NOTEHOLDERS**

19.    THIS COURT ORDERS that, no later than three (3) Business Days following the date of this Meeting Order, the Monitor shall post an electronic copy of the Notice to Affected Creditors, the Plan and the Information Circular (in the form provided by the Applicant as at the date of this Meeting Order) on the Website.

20.    THIS COURT ORDERS that the Monitor shall, on the Mailing Date, deliver the Noteholder Meeting Materials by courier, personal delivery or email to the Trustees and DTC.

21.    THIS COURT ORDERS that, no later than four (4) Business Days following the date of this Meeting Order, each of the Trustees shall provide to the Applicant and the Monitor a Registered Noteholder List for each series of Notes in respect of which such Trustee acts as trustee, each of which Registered Noteholder Lists shall list the Registered Noteholders of the applicable series of Notes as at the Voting Record Date and their respective addresses, telephone numbers, fax numbers and email addresses, to the extent available.

22.    THIS COURT ORDERS that, on the later of (i) the Mailing Date and (ii) the date upon which the Monitor receives a Registered Noteholder List from any Trustee as provided for in paragraph 21, the Monitor shall send the Noteholder Meeting Materials to each Person listed on the Registered Noteholder List.

23.    THIS COURT ORDERS that: (i) no later than four (4) Business Days following the date of this Meeting Order, DTC shall provide to the Applicant and the Monitor a Participant Holders List in respect of the Notes; and (ii) as soon as practicable following the date of this Meeting Order and in any event within four (4) Business Days of receiving notice from the Monitor of this Meeting Order, any other Registered Noteholder (if any) who holds Notes on behalf of one

or more Participant Holders shall provide to the Applicant and the Monitor a Participant Holders List in respect of the Notes. In each case the Participant Holder List so provided shall list the Participant Holders as at the Voting Record Date and their respective addresses and telephone numbers, fax numbers and email addresses, to the extent available.

24.      THIS COURT ORDERS that, upon receipt by the Monitor of the Participant Holders Lists, the Monitor shall contact each Participant Holder listed thereon to determine the number of copies of the Noteholder Meeting Materials such Participant Holder requires in order to provide one copy of the Noteholder Meeting Materials to each of its customers or principals who are Unregistered Noteholders as at the Voting Record Date, and each Participant Holder shall provide the Monitor with a response as to the number of copies of the Noteholder Meeting Materials required within two (2) Business Days of being so contacted by the Monitor.

25.      THIS COURT ORDERS that on the later of (i) the Mailing Date, and (ii) the date upon which the Monitor receives the information referred to in paragraph 24, the Monitor shall deliver by courier, personal delivery or email to such Participant Holder a copy of the Instructions to Participant Holders together with that number of copies of the Noteholder Meeting Materials required by such Participant Holder for distribution to the Unregistered Noteholders that are its customers or principals.

26.      THIS COURT ORDERS that, within five (5) Business Days of any Participant Holder's receipt of the Noteholder Meeting Materials from the Monitor pursuant to paragraph 25, such Participant Holder shall: (i) complete and sign the applicable section of the Noteholders' Proxy relating to Participant Holders for each Unregistered Noteholder that has an account (directly or through an agent or custodian) with such Participant Holder; and (ii) deliver by courier or personal delivery to each such Unregistered Noteholder the Noteholders' Proxy as so completed and signed together with one copy of the Noteholder Meeting Materials. Each Participant Holder shall take any other action reasonably required to enable any Unregistered Noteholder that has an account (directly or through an agent or custodian) with such Participant Holder to provide a Noteholders' Proxy to the Monitor with respect to the Notes owned by or held for the benefit of such Unregistered Noteholder.

27.     THIS COURT ORDERS that where: (i) a Participant Holder or its agent has a standard
practice for distribution of meeting materials to Unregistered Noteholders and for the gathering
of information and proxies or voting instructions from Unregistered Noteholders; (ii) the
Participant Holder has discussed such standard practice in advance with the Applicant, the
Monitor and counsel to the Initial Consenting Noteholders; and (iii) such standard practice is
acceptable to the Applicant, the Monitor and counsel to the Initial Consenting Noteholders, such
Participant Holder or its agent may, in lieu of following the procedure set out in paragraph 26
above, follow such standard practice provided that all applicable proxies or voting instructions
are received by the Monitor no later than 5:00 P.M. on the third Business Day before the
Meeting.

## NOTICE, SERVICE AND DELIVERY

28.     THIS COURT ORDERS that the Monitor's fulfillment of the notice, delivery and
Website posting requirements set out in this Meeting Order shall constitute good and sufficient
notice, service and delivery thereof on all Persons who may be entitled to receive notice, service
or delivery thereof or who may wish to be present or vote (in person or by proxy) at the Meeting,
and that no other form of notice, service or delivery need be given or made on such Persons and
no other document or material need be served on such Persons.

## CONDUCT OF MEETING AND DELIVERY OF PROXIES

29.     THIS COURT ORDERS that the Applicant is hereby authorized and directed to call the
Meeting and to hold and conduct the Meeting on the Meeting Date at the offices of Bennett
Jones LLP, 3400 One First Canadian Place, Toronto, Ontario, for the purpose of seeking
approval of the Plan by the Affected Creditors with Voting Claims at the Meeting in the manner
set forth herein. In the event that the Meeting Date is extended after the Mailing Date, the
Monitor shall post notice of the extension of the Meeting Date on the Website and provide notice
of the extension of the Meeting Date to the service list.

30.     THIS COURT ORDERS that Greg Watson or another representative of the Monitor,
designated by the Monitor, shall preside as the chair of the Meeting (the "**Chair**") and, subject to

this Meeting Order or any further Order of the Court, shall decide all matters relating to the conduct of the Meeting.

31.     THIS COURT ORDERS that the Monitor may appoint scrutineers for the supervision and tabulation of the attendance at, quorum at and votes cast at the Meeting (the "**Scrutineers**"). A person designated by the Monitor shall act as secretary of the Meeting (the "**Secretary**").

32.     THIS COURT ORDERS that the quorum required at the Meeting shall be one Affected Creditor with a Voting Claim present at the Meeting (in person or by proxy).

33.     THIS COURT ORDERS that if the requisite quorum is not present at the Meeting, or if the Meeting is postponed by the vote of a majority in value of Voting Claims of the Affected Creditors present at the Meeting (in person or by proxy), then the Meeting shall be adjourned by the Chair to a later date, time and place as designated by the Chair. The Chair shall be entitled to adjourn and further adjourn the Meeting at the Meeting or at any adjourned Meeting. Any adjournment or adjournments described in this paragraph 33 shall be for a period of not more than thirty (30) days in total unless otherwise agreed to by the Applicant, the Monitor and counsel to the Initial Consenting Noteholders. In the event of any adjournment described in this paragraph 33, no Person shall be required to deliver any notice of the adjournment of the Meeting or adjourned Meeting, provided that the Monitor shall: (i) announce the adjournment at the Meeting or adjourned Meeting, as applicable; (ii) post notice of the adjournment at the originally designated time and location of the Meeting or adjourned Meeting, as applicable; (iii) forthwith post notice of the adjournment on the Website; and (iv) provide notice of the adjournment to the service list forthwith. Any Ordinary Affected Creditor Proxies and Noteholder Proxies validly delivered in connection with the Meeting shall be accepted as proxies in respect of any adjourned Meeting.

34.     THIS COURT ORDERS that the only Persons entitled to attend and speak at the Meeting are: (i) the Affected Creditors entitled to vote at the Meeting (or, if applicable, any Person holding a valid Ordinary Creditors' Proxy or Noteholders' Proxy on behalf of one or more such Affected Creditors) and any such Affected Creditor's or valid proxyholder's legal counsel and financial advisors; (ii) the Chair, the Scrutineers and the Secretary; (iii) one or more representatives of the Monitor and the Monitor's legal counsel; (iv) one or more representatives

of the current board of directors and/or senior management of Applicant, as selected by the Applicant, and the Applicant's legal counsel and financial advisors; (v) counsel to the Directors and Officers; (vi) one or more representatives of the Initial Consenting Noteholders and the Initial Consenting Noteholders' legal counsel and financial advisors; and (vii) the Trustees and their respective legal counsel. Any other person may be admitted to the Meeting on invitation of the Chair.

35.     THIS COURT ORDERS that the Monitor may, with the consent of the Applicant, waive in writing the time limits imposed on Affected Creditors as set out in this Meeting Order (including the schedules hereto), generally or in individual circumstances, if the Monitor deems it advisable to do so.

## ASSIGNMENT OF AFFECTED CLAIMS PRIOR TO THE MEETING

36.     THIS COURT ORDERS that, subject to any restrictions contained in Applicable Laws, an Ordinary Affected Creditor may transfer or assign the whole of its Ordinary Affected Creditor Claim prior to the Meeting (or any adjournment thereof), provided that neither the Applicant nor the Monitor shall be obliged to deal with any transferee or assignee thereof as an Ordinary Affected Creditor in respect of such Ordinary Affected Creditor Claim, including allowing such transferee or assignee to attend or vote at the Meeting, unless and until actual notice of the transfer or assignment, together with satisfactory evidence of such transfer or assignment, has been received and acknowledged by the Applicant and the Monitor, which receipt and acknowledgment must have occurred on or before 5 p.m. (Toronto time) on the date that is seven (7) days prior to the date of the Meeting (or any adjournment thereof), failing which the original transferor shall have all applicable rights as the "Ordinary Affected Creditor" with respect to such Ordinary Affected Creditor Claim as if no transfer of the Ordinary Affected Creditor Claim had occurred. If such receipt and acknowledgment by the Applicant and the Monitor have occurred on or before 5 p.m. (Toronto time) on the date that is seven (7) days prior to the date of the Meeting (or any adjournment thereof): (i) the transferor of the applicable Ordinary Affected Creditor Claim shall no longer constitute an Ordinary Affected Creditor in respect of such Ordinary Affected Creditor Claim; and (ii) the transferee or assignee of the applicable Ordinary Affected Creditor Claim shall, for all purposes in accordance with this Meeting Order, constitute

an Ordinary Affected Creditor in respect of such Ordinary Affected Creditor Claim and shall be bound by any and all notices previously given to the transferor or assignor in respect thereof and shall be bound by any Ordinary Creditors' Proxy duly submitted to the Monitor in accordance with this Meeting Order. For greater certainty, the Applicant and the Monitor shall not recognize partial transfers or assignments of Ordinary Affected Creditor Claims.

37.    THIS COURT ORDERS that only those Beneficial Noteholders that have beneficial ownership of one or more Notes as at the Voting Record Date shall be entitled to vote at the Meeting (whether in person or by proxy). Nothing in this Meeting Order restricts the Beneficial Noteholders from transferring or assigning such Notes prior to or after the Voting Record Date, provided that if such transfer or assignment occurs after the Voting Record Date, only the original Beneficial Noteholder of such Notes as at the Voting Record Date (and not any transferee) shall be treated as a Beneficial Noteholder for purposes of this Meeting Order and the Meeting.

## VOTING PROCEDURE

38.    THIS COURT ORDERS that at the Meeting, the Chair shall direct a vote, by written ballot, on a resolution to approve the Plan and any amendments thereto.

39.    THIS COURT ORDERS that, subject to paragraph 49, the only Persons entitled to vote at the Meeting (whether in person or by proxy) are: (i) Beneficial Noteholders with Voting Claims that have beneficial ownership of one or more Notes as at the Voting Record Date (or any such Beneficial Noteholder's validly appointed holder of its Noteholders' Proxy); and (ii) Ordinary Affected Creditors with Voting Claims as at the Voting Record Date (which, for greater certainty, includes any transferee of an Ordinary Affected Creditor Claim that is a Voting Claim, provided that such transferee has been recognized as an Ordinary Affected Creditor in respect of such transferred Ordinary Affected Creditor Claim in accordance with paragraph 36) (or any such Ordinary Affected Creditor's validly appointed holder of its Ordinary Affected Creditors' Proxy).

40. THIS COURT ORDERS that each Ordinary Affected Creditor with a Voting Claim shall be entitled to one vote as a member of the Affected Creditors Class, which vote shall have a value equal to the dollar value of such Ordinary Affected Creditor's Voting Claim.

41. THIS COURT ORDERS that each Beneficial Noteholder with a Voting Claim shall be entitled to one vote as a member of the Affected Creditors' Class, which vote shall have a value equal to the principal and Accrued Interest owing under the Notes owned by such Beneficial Noteholder as at the Voting Record Date. For greater certainty, with respect to voting by Beneficial Noteholders, only the Beneficial Noteholders, and not Registered Noteholders or Participant Holders (unless any such Registered Noteholder or Participant Noteholder is itself a Beneficial Noteholder), shall be entitled to vote on the Plan as provided for in this Meeting Order.

42. THIS COURT ORDERS that for the purpose of calculating the two-thirds majority in value of Voting Claims, the aggregate amount of Voting Claims held by all Affected Creditors that vote in favour of the Plan (in person or by proxy) shall be divided by the aggregate amount of all Voting Claims held by all Affected Creditors that vote on the Plan (in person or by proxy). For the purpose of calculating a majority in number of Affected Creditors voting on the Plan, (i) each Ordinary Affected Creditor that votes on the Plan (in person or by proxy) shall only be counted once, without duplication; and (ii) each individual Beneficial Noteholder that votes on the Plan (in person or by proxy) shall only be counted once, without duplication, even if that Beneficial Noteholder holds Notes through more than one Registered Noteholder or Participant Holder.

43. THIS COURT ORDERS that, for purposes of tabulating the votes cast on any matter that may come before the Meeting, the Chair shall be entitled to rely on any vote cast by a holder of an Ordinary Affected Creditors' Proxy and/or a Noteholders' Proxy that has been duly submitted to the Monitor in the manner set forth in this Meeting Order.

44. THIS COURT ORDERS that any Ordinary Affected Creditor or Beneficial Noteholder that is entitled to vote at the Meeting and that wishes to vote at the Meeting in person must: (i) duly complete and sign an Ordinary Creditors' Proxy or a Noteholders' Proxy, as applicable; (ii) identify itself in the Ordinary Creditors' Proxy or a Noteholders' Proxy, as applicable, as the

Person with the power to attend and vote at the Meeting on behalf of such Ordinary Affected
Creditor or Beneficial Noteholder, as the case may be; and (iii) deliver such Ordinary Affected
Creditors' Proxy or Noteholders' Proxy, as the case may be, to the Monitor so that it is received
on or before 5:00 p.m. on the third Business Day before the Meeting (or any adjournment
thereof), and such delivery must be made in accordance with the instructions accompanying such
Ordinary Affected Creditors' Proxy or Noteholders' Proxy.

45.     THIS COURT ORDERS that any Ordinary Affected Creditor or Beneficial Noteholder
that is entitled to vote at the Meeting and that wishes to appoint a nominee to vote on its behalf at
the Meeting must: (i) duly complete and sign an Ordinary Creditors' Proxy or a Noteholders'
Proxy, as applicable; (ii) identify its desired nominee in the Ordinary Creditors' Proxy or a
Noteholders' Proxy, as applicable, as the Person with the power to attend and vote at the Meeting
on behalf of such Ordinary Affected Creditor or Beneficial Noteholder, as the case may be; and
(iii) deliver such Ordinary Affected Creditors' Proxy or Noteholders' Proxy, as the case may be,
to the Monitor so that it is received on or before 5:00 p.m. on the third Business Day before the
Meeting (or any adjournment thereof), and such delivery must be made in accordance with the
instructions accompanying such Ordinary Affected Creditors' Proxy or Noteholders' Proxy.

46.     THIS COURT ORDERS that, in order to be effective, any Noteholders' Proxy must
clearly state the name and contain the signature of the applicable Participant Holder, the
applicable account number or numbers of the account or accounts maintained by the applicable
Beneficial Noteholder with such Participant Holder, and the principal amount of Notes
(excluding any pre-or post-filing interest) that such Beneficial Noteholder holds in each such
account or accounts. Where a Beneficial Noteholder holds Notes through more than one
Participant Holder, its Noteholders' Proxy is required to be executed by only one of those
Participant Holders, provided that the Beneficial Noteholder shall provide the information
required in its Noteholders' Proxy with respect to its Notes held with all Participant Holders to
allow the Monitor to verify the aggregate amount of Notes held by such Beneficial Noteholder
for the purposes of voting on the Plan.

47.     THIS COURT ORDERS that notwithstanding anything in paragraphs 44, 45  or 46 or
any minor error or omission in any Ordinary Affected Creditors' Proxy or Noteholders' Proxy

that is submitted to the Monitor, the Chair shall have the discretion to accept for voting purposes any Ordinary Affected Creditors' Proxy or Noteholders' Proxy submitted to the Monitor in accordance with the Meeting Order.

48.     THIS COURT ORDERS that if there is any dispute as to the principal amount or number of Notes held by any Beneficial Noteholder, the Monitor will request the Participant Holder, if any, who maintains book entry records or other records evidencing such Beneficial Noteholder's ownership of Notes, to confirm with the Monitor the information provided by such Beneficial Noteholder. If any such dispute is not resolved by such Beneficial Noteholder and the Monitor by the date of the Meeting (or any adjournment thereof), the Monitor shall tabulate the vote for or against the Plan in respect of the disputed principal amount of such Beneficial Noteholder's Notes separately. If: (i) any such dispute remains unresolved as of the date of the Sanction Hearing; and (ii) the approval or non-approval of the Plan would be affected by the votes cast in respect of such disputed principal amount of Notes, then such result shall be reported to the Court at the Sanction Hearing and, if necessary, the Monitor may make a request to the Court for directions.

**VOTING OF UNRESOLVED CLAIMS**

49.     THIS COURT ORDERS that notwithstanding anything to the contrary herein or in the Plan, each Affected Creditor with an Unresolved Claim as at the Voting Record Date shall be entitled to attend the Meeting and shall be entitled to one vote at the Meeting in respect of such Unresolved Claim. Any vote cast in respect of an Unresolved Claim shall be dealt with in accordance with paragraph 50, unless and until (and then only to the extent that) such Unresolved Claim is ultimately determined to be: (i) a Voting Claim, in which case such vote shall have the dollar value attributable to such Voting Claim; or (ii) disallowed, in which case such vote shall not be counted for any purpose.

50.     THIS COURT ORDERS that the Monitor shall keep a separate record of votes cast by Affected Creditors with Unresolved Claims and shall report to the Court with respect thereto at the Sanction Hearing. If approval or non-approval of the Plan by Affected Creditors would be altered by the votes cast in respect of Unresolved Claims: (i) such result shall be reported to the Court as soon as reasonably practicable after the Meeting; (ii) if a deferral of the Sanction

Hearing is deemed to be necessary or advisable by the Monitor (in consultation with the Applicant and counsel to the Initial Consenting Noteholders), the Monitor shall request an appropriate deferral of the Sanction Hearing; and (iii) the Monitor may make a request to the Court for directions.

51.     THIS COURT ORDERS that each of the Third Party Defendants shall be entitled to one vote as a member of the Affected Creditors Class in respect of any Class Action Indemnity Claim that it has properly filed in respect of the Indemnified Noteholder Class Action Claims, provided that the aggregate value of all such Class Action Indemnity Claims shall, for voting purposes, be deemed to be limited to the amount of the Indemnified Noteholder Class Action Limit in the event that such Indemnified Noteholder Class Action Limit is in place at the time of voting. The Monitor shall keep a separate record of votes cast by the Third Party Defendants in respect of such Class Action Indemnity Claims, and the Monitor shall report to the Court with respect thereto at the Sanction Hearing, including as to whether or not a vote in favour of the Plan or against the Plan by the Third Party Defendants would have had any effect on the approval of the Plan by the Required Majority.

52.     THIS COURT ORDERS that the Applicant and the Monitor shall have the right to seek the assistance of the Court at any time in valuing any Unresolved Claim if required to ascertain the result of any vote on the Plan.

53.     THIS COURT ORDERS that, pursuant to the Order of this Court dated July 27, 2012 in these proceedings, any Claims that have been properly filed by any of the Third Party Defendants against the Applicant in respect of defence costs incurred or to be incurred by the Third Party Defendants in connection with defending themselves against the Shareholder Claims ("**Defence Costs Claims**") shall be treated as Unresolved Claims for purposes of this Meeting Order and voting at the Meeting.

## PERSONS NOT ENTITLED TO VOTE

54.     THIS COURT ORDERS that, for greater certainty, the following Persons, in such capacity, shall have no right to, and shall not, vote at the Meeting: Unaffected Creditors; Noteholder Class Action Claimants; Equity Claimants; any Person with a D&O Claim; any