Person with a D&O Indemnity Claim (other than a D&O Indemnity Claim in respect of Defence Costs Claims or in respect of the Indemnified Noteholder Class Action Claims); any Person with a Subsidiary Intercompany Claim; and any other Person asserting Claims against the Applicant whose Claims do not constitute Affected Creditor Claims on the Voting Record Date.

## CLAIMS OF THE ONTARIO SECURITIES COMMISSION

55.   THIS COURT ORDERS that the Ontario Securities Commission (the "**OSC**") shall (i) advise the Applicant and the Monitor as to whether it will pursue any rights or claims against the Applicant or the Directors or Officers that have or could give rise to a monetary administrative or other monetary penalty or claim ("**OSC Monetary Claims**") on or prior to September 13, 2012, which date shall serve in effect as a claims bar date for purposes of any OSC Monetary Claims that may be asserted by the OSC as against the Applicant or any Director or Officer, and (ii) with respect to any OSC Monetary Claims that the OSC may so assert, shall in each case specify the quantum of each such OSC Monetary Claim.

56.   THIS COURT ORDERS that, in the event that the Applicant and the Monitor are advised of any OSC Monetary Claims pursuant to and in accordance with paragraph 55, the Monitor shall within three (3) Business Days of being so advised, deliver the Ordinary Affected Creditor Meeting Materials by courier, personal delivery or email to the OSC (or to counsel for the OSC as appears on the service list).

## RESTRUCTURING CLAIMS

57.   THIS COURT ORDERS that the Monitor shall, no later than three (3) Business Days following the receipt of a Proof of Claim from any Person asserting a Restructuring Claim, deliver the Ordinary Affected Creditor Meeting Materials by courier, personal delivery or email to such Person at the address set out in any such Proof of Claim.

## APPROVAL OF THE PLAN

58.   THIS COURT ORDERS that the Plan must receive an affirmative vote of the Required Majority in order to be approved by the Affected Creditors.

59.    THIS COURT ORDERS that the result of any vote at the Meeting shall be binding on all
Affected Creditors, regardless of whether such Affected Creditor was present at or voted at the
Meeting.

## PLAN SANCTION

60.    THIS COURT ORDERS that the Monitor shall report to the Court the results of any
votes taken at the Meeting as soon as reasonably practicable after the Meeting (or any
adjournment thereof). If the Plan is approved by the Required Majority, the Applicant may
apply to the Court at 10:00 A.M. on the Sanction Hearing Date for the Sanction Order (the
"**Sanction Hearing**").

61.    THIS COURT ORDERS that service of this Meeting Order by the Monitor or the
Applicant to the parties on the service list shall constitute good and sufficient service of notice of
the Sanction Hearing on all Persons entitled to receive such service and no other form of notice
or service need be made and no other materials need be served in respect of the Sanction
Hearing, except that any party shall also serve the service list with any additional materials that it
intends to use in support of the Sanction Hearing.

62.    THIS COURT ORDERS that any Person who wishes to oppose the Sanction Hearing
shall serve on the Applicant, the Monitor and the service list a notice setting out the basis for
such opposition and a copy of the materials to be used to oppose the Sanction Hearing at least
four (4) days before the date set for the Sanction Hearing.

## MISCELLANEOUS

63.    THIS COURT ORDERS that nothing in this Meeting Order (including the acceptance or
determination of any Claim, or any part thereof, as a Voting Claim in accordance with this
Meeting Order) has the effect of determining Proven Claims for purposes of the Plan.

64.    THIS COURT ORDERS that, for the purposes of this Meeting Order (including the
calculation of the Required Majority), all Affected Creditor Claims shall be deemed to be
denominated in Canadian dollars and any Affected Creditor Claims denominated in a foreign
currency shall be deemed to be converted to Canadian dollars using the Reuters closing rate on

the Filing Date (as found at http://www.reuters.com/finance/currencies), without prejudice to a different exchange rate being proposed in the Plan.

65.     THIS COURT ORDERS that the Applicant or the Monitor may from time to time apply to this Court for advice and directions in the discharge of their powers and duties hereunder.

ENTERED AT / INSCRIT A TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

SEP 4 - 2012

## SCHEDULE "A"

## NOTICE TO AFFECTED CREDITORS OF SINO-FOREST CORPORATION

NOTICE IS HEREBY GIVEN that a plan of compromise and reorganization (as amended from time to time, the "**Plan**") has been filed with the Ontario Superior Court of Justice (Commercial List) (the "**Court**") in respect of Sino-Forest Corporation (the "**Applicant**") pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**").

A copy of the Plan is set out as a schedule to the information circular dated ● (the "**Circular**") for the Meeting (as defined below).

NOTICE IS ALSO HEREBY GIVEN that a meeting of Affected Creditors (the "**Meeting**") will be held at 10:00 a.m. on ●, 2012 (or such other date as may be set and announced in accordance with the Meeting Order) at the offices of Bennett Jones LLP, 3400 One First Canadian Place, Toronto, Ontario, for the purpose of considering and, if thought advisable, passing, with or without variation, a resolution to approve the Plan (the full text of which resolution is set out as a schedule to the Circular) and to transact such other business as may properly come before the Meeting (or any adjournment thereof). The Meeting is being held pursuant to the Order of the Court made on ● (the "**Meeting Order**") and the endorsement of the Court made on August 31, 2012 (the "**Endorsement**"). Copies of the Meeting Order and the Endorsement are set out as schedules to the Circular. Capitalized terms used but not otherwise defined in this notice have the meaning ascribed to them in the Meeting Order.

The Plan must receive an affirmative vote of the Required Majority in order to be approved by the Affected Creditors. The Required Majority is a majority in number of Affected Creditors with Voting Claims, and two-thirds in value of the Voting Claims held by such Affected Creditors, in each case who vote (in person or by proxy) on the Plan at the Meeting. The Plan must also be sanctioned by a final order of the Court (the "**Sanction Order**") pursuant to the CCAA. Notice is also hereby given that, if the Plan is approved by the Required Majority at the Meeting, the Sanction Order will be sought in an application before the Court at 10:00 a.m. on ●, 2012 (or such other date after the Meeting as may be set by the Court), to seek approval of the Plan. If the Plan is approved by the Requisite Majority and sanctioned by the Court, then,

subject to the satisfaction or waiver of the conditions to implementation of the Plan, all Persons
referred to in the Plan (including the Affected Creditors) will receive the treatment set out in the
Plan.

## AMENDMENTS TO THE PLAN

The Applicant may, at any time and from time to time prior to or at the Meeting, amend, restate,
modify and/or supplement the Plan, subject to the terms of the Plan, provided that: (i) the
Monitor, the Applicant or the Chair shall communicate the details of any such amendment,
restatement and/or supplement to all Affected Creditors present at the Meeting prior to any vote
being taken at the Meeting; (ii) the Applicant shall provide notice to the service list of any such
amendment, restatement and/or supplement and shall file a copy thereof with this Court
forthwith and in any event prior to the Sanction Hearing; and (iii) the Monitor shall post an
electronic copy of any such amendment, restatement and/or supplement on the Website forthwith
and in any event prior to the Sanction Hearing.

## COMPLETION OF PROXIES

Any Affected Creditor who is entitled to vote at the Meeting and that wishes to vote at the
Meeting must complete, sign and return the applicable form of proxy enclosed in the Circular in
the return envelope provided or by fax at the fax number below or by email in PDF format at the
email address below. In order to be effective, a proxy must be deposited with the Monitor, at the
address, fax or email below, at any time prior to 5:00 p.m. on the third Business Day before the
Meeting (or any adjournment thereof).

The Monitor's contact information for the purpose of filing forms of proxy and for obtaining any
additional information or materials related to the Meeting is:

> FTI Consulting Canada Inc.
> TD Waterhouse Tower
> 79 Wellington Street West, Suite 2010
> P.O. Box 104
> Toronto, Ontario  M5K 1G8
>
> Attention: Jodi Porepa
> Email: sfc@fticonsulting.com

Fax: (416) 649-8101

This notice is given by the Monitor pursuant to the Meeting Order.

You can also view copies of documents relating to this process on the following website http://cfcanada.fticonsulting.com/sfc/.

Dated at Toronto, Ontario this ● day of ●, 2012.

## SCHEDULE "B"

## INSTRUCTIONS TO PARTICIPANT HOLDERS

## URGENT – IMMEDIATE ACTION REQUIRED

●, 2012

TO:    PARTICIPANT HOLDERS OF SINO-FOREST CORPORATION'S:

   (i)     **US$345,000,000 5.00% CONVERTIBLE SENIOR NOTES DUE 2013 (Rule 144A CUSIP No. 82934HAB7/Regulation S CUSIP No. C83912AB8);**

   (ii)    **US$399,517,000 10.25% GUARANTEED SENIOR NOTES DUE 2014 (Rule 144A CUSIP No. 82934HAC5/Regulation S CUSIP No. C83912AC6);**

   (iii)   **US$460,000,000 4.25% CONVERTIBLE SENIOR NOTES DUE 2016 (Rule 144A CUSIP No. 82934HAD3/Regulation S CUSIP No. C83912AD4); and**

   (iv)    **US$600,000,000 6.25% GUARANTEED SENIOR NOTES DUE 2017 Rule 144A CUSIP No. 82934HAF8/Regulation S CUSIP No. C83912AF9),**

   (collectively, the "**Notes**")

**Re:    Meeting of Affected Creditors of Sino-Forest Corporation to vote on the Plan of Compromise and Reorganization pursuant to the *Companies' Creditors Arrangement Act* (the "Plan")**

According to the records of The Depository Trust Company ("**DTC**") or the applicable note indenture trustee, you are the holder or custodian (the "**Participant Holder**") on behalf of an unregistered holder of one or more of the Notes (an "**Unregistered Noteholder**"). You (or your agent) are required by paragraph 26 of the enclosed Court Order (the "**Meeting Order**") to complete and sign the applicable part of an enclosed Noteholders' Proxy (the box on page 2) for each Unregistered Noteholder for whom you act as Participant Holder and to mail it directly to each such applicable Unregistered Noteholder **within five (5) Business Days**.

We enclose Noteholder Meeting Materials to be forwarded by you or your agent (together with an appropriately completed and signed Noteholders' Proxy) to each of the Unregistered Noteholders recorded in your account records or book entry records. We enclose one additional copy of these materials for your use. **THE MATERIALS ARE TIME SENSITIVE AND MUST BE FORWARDED TO EACH OF THE UNREGISTERED NOTEHOLDERS TOGETHER WITH THE NOTEHOLDERS' PROXY COMPLETED BY YOU FOR THAT UNREGISTERED NOTEHOLDER WITHOUT DELAY.**

THE TOTAL AMOUNT OF ALL NOTEHOLDER CLAIMS HAS BEEN FILED BY THE NOTE INDENTURE TRUSTEES. THEREFORE YOU DO NOT HAVE TO PROVIDE A PROOF OF CLAIM.

The Noteholders' Proxy is to be completed and signed by you or your agent and by the Unregistered Noteholder and is to be provided by the Unregistered Noteholder directly to Sino-Forest's Monitor, FTI Consulting Canada Inc., in the enclosed envelope or by facsimile transmission or email.

**PLEASE INSTRUCT UNREGISTERED NOTEHOLDERS TO DELIVER THEIR PROXIES DIRECTLY TO FTI CONSULTING CANADA INC. IN ACCORDANCE WITH THE INSTRUCTIONS TO UNREGISTERED NOTEHOLDERS. PROXIES MUST BE RECEIVED BY FTI CONSULTING CANADA INC. PRIOR TO THE DEADLINE OF 5:00 P.M. ON THE THIRD BUSINESS DAY BEFORE THE MEETING (OR ANY ADJOURNMENT THEREOF).**

Before sending the Noteholders' Proxy and the other materials to an Unregistered Noteholder, please:

1.  insert in the Noteholders' Proxy in the appropriate spaces (in the box on page 2) the name of the applicable Unregistered Noteholder, your organization's name as Participant Holder, the applicable account number and the principal amount of the Notes held in such account; and

2.  sign the Noteholders' Proxy as Participant Holder where indicated.

We request that you provide any assistance that an Unregistered Noteholder may require in completing its Noteholders' Proxy. You are required by the Meeting Order to complete and forward such Noteholders' Proxies and the other materials to the applicable Unregistered Noteholders as specified in these instructions.

If you have a standard practice for distribution of meeting materials to Unregistered Noteholders and for the gathering of information and proxies or voting instructions from Unregistered Noteholders that differs from the process described above, **please contact the Monitor immediately** to determine whether you are able to use such standard practice as an alternative to the process described above.

If you have any questions regarding your obligations or the process, or require additional copies of any materials, please contact the Monitor at the following address:

> FTI Consulting Canada Inc., the Court-appointed
> Monitor of Sino-Forest Corporation
> TD Waterhouse Tower
> 79 Wellington Street West, Suite 2010
> P.O. Box 104
> Toronto, Ontario M5K 1G8

> Attention: Jodi Porepa
> Email: sfc@fticonsulting.com
> Fax: (416) 649-8101

You can also view copies of documents relating to this process on the following website http://cfcanada.fticonsulting.com/sfc/.

## SCHEDULE "C"

## INSTRUCTIONS TO ORDINARY AFFECTED CREDITORS

### URGENT – IMMEDIATE ACTION REQUIRED

●, 2012

TO:    ORDINARY AFFECTED CREDITORS OF SINO-FOREST CORPORATION

Re:    **Meeting of Affected Creditors of Sino-Forest Corporation to vote on the Plan of
       Compromise and Reorganization pursuant to the** *Companies' Creditors
       Arrangement Act* **(the "Plan")**

We enclose in this package the following documents for your review and consideration:

1. Notice to Affected Creditors;

2. the Plan proposed in respect of Sino-Forest Corporation;

3. an Information Circular in respect of Sino-Forest Corporation and the Plan;

4. copy of the Meeting Order of the Ontario Superior Court of Justice dated ● (the
   "**Meeting Order**");

5. copy of the endorsement of the Ontario Superior Court of Justice made on August 31,
   2012 (the "**Endorsement**"); and

6. blank form of Ordinary Affected Creditors' Proxy, completion instructions and a return
   envelope.

The purpose of these materials is to enable you to consider the Plan and vote to accept or reject
the resolution to approve the Plan at the Meeting of Affected Creditors of Sino-Forest
Corporation to be held at 10:00 a.m. on ●, 2012 (or such other date as may be set and announced
in accordance with the Meeting Order) at the offices of Bennett Jones LLP, 3400 One First
Canadian Place, Toronto, Ontario (the "**Meeting**").

## PROXIES

Ordinary Affected Creditors who wish to vote at the Meeting must complete the enclosed
Ordinary Affected Creditors' Proxy and provide it to the Monitor, using the enclosed envelope,
or by sending it to the Monitor by facsimile transmission at the fax number noted below or by
email (in PDF format) at the email address below, so that it is received by the Monitor no later
than 5:00 p.m. (Toronto time) on the third Business Day before the Meeting (or any adjournment
thereof). Any Ordinary Affected Creditor must provide the Ordinary Affected Creditors' Proxy
to the Monitor by this deadline to vote at the Meeting of Affected Creditors.

## FURTHER INFORMATION

If you have any questions regarding the process or any of the enclosed forms, please contact FTI
Consulting Canada Inc. at the following address:

> FTI Consulting Canada Inc., the Court-appointed
> Monitor of Sino-Forest Corporation
> TD Waterhouse Tower
> 79 Wellington Street West, Suite 2010
> P.O. Box 104
> Toronto, Ontario  M5K 1G8
>
> Attention: Jodi Porepa
> Email: sfc@fticonsulting.com
> Fax: (416) 649-8101

You can also view copies of documents relating to this process on the following website
http://cfcanada.fticonsulting.com/sfc/.

## SCHEDULE "D"

## INSTRUCTIONS TO REGISTERED NOTEHOLDERS

### URGENT – IMMEDIATE ACTION REQUIRED

●, 2012

TO:    REGISTERED HOLDERS OF SINO-FOREST CORPORATION'S:

- (i)    **US$345,000,000 5.00% CONVERTIBLE SENIOR NOTES DUE 2013 (Rule 144A CUSIP No. 82934HAB7/Regulation S CUSIP No. C83912AB8);**

- (ii)   **US$399,517,000 10.25% GUARANTEED SENIOR NOTES DUE 2014 (Rule 144A CUSIP No. 82934HAC5/Regulation S CUSIP No. C83912AC6);**

- (iii)  **US$460,000,000 4.25% CONVERTIBLE SENIOR NOTES DUE 2016 (Rule 144A CUSIP No. 82934HAD3/Regulation S CUSIP No. C83912AD4); and**

- (iv)   **US$600,000,000 6.25% GUARANTEED SENIOR NOTES DUE 2017 Rule 144A CUSIP No. 82934HAF8/Regulation S CUSIP No. C83912AF9),**

(collectively, the "**Notes**")

**Re:    Meeting of Affected Creditors of Sino-Forest Corporation to vote on the Plan of Compromise and Reorganization pursuant to the *Companies' Creditors Arrangement Act* (the "Plan")**

We enclose in this package the following documents for your review and consideration:

- 1.    Notice to Affected Creditors;

- 2.    the Plan proposed in respect of Sino-Forest Corporation;

- 3.    an Information Circular with respect to Sino-Forest Corporation and the Plan;

4.    copy of the Meeting Order of the Ontario Superior Court of Justice dated ● (the **"Meeting Order"**);

5.    copy of the endorsement of the Ontario Superior Court of Justice made on August 31, 2012 (the **"Endorsement"**); and

6.    blank form of Noteholders' Proxy, completion instructions and return envelope.

The purpose of these materials is to provide you with the documents required for dissemination to Beneficial Noteholders to enable Beneficial Noteholders to consider the Plan and to cast their vote to accept or reject the resolution to approve the Plan at the meeting of the Affected Creditors to be held at 10:00 a.m. on ●, 2012 (or such other date as may be set and announced in accordance with the Meeting Order) at the offices of Bennett Jones LLP, 3400 One First Canadian Place, Toronto, Ontario (the **"Meeting"**).

**IF YOU HOLD NOTES FOR ANOTHER PERSON PROXIES ARE TO BE FILED ONLY BY BENEFICIAL NOTEHOLDERS. IF YOU ARE A TRUST COMPANY, DEPOSITORY, A BROKER, A BOOK ENTRY SYSTEM, AN AGENT, A CUSTODIAN OR ANY OTHER ENTITY WHICH HOLDS NOTES FOR ANOTHER PERSON, PLEASE IMMEDIATELY CONTACT FTI CONSULTING CANADA INC. (THE "MONITOR") AT THE ADDRESS BELOW TO SO ADVISE IT. THE MONITOR WILL THEN SEND YOU THE MATERIALS SET OUT IN SCHEDULE "B" OF THE MEETING ORDER WHICH HAVE BEEN PREPARED TO ADDRESS YOUR SITUATION.**

## CLAIM

THE TOTAL AMOUNT OF ALL NOTEHOLDER CLAIMS HAS BEEN FILED BY THE NOTE INDENTURE TRUSTEES. THEREFORE YOU DO NOT HAVE TO PROVIDE A PROOF OF CLAIM.

## IF YOU ARE A BENEFICIAL NOTEHOLDER

If you are a Beneficial Noteholder (*i.e.*, you own Notes beneficially yourself and do not hold such Notes for the benefit of another person) and you wish to vote at the Meeting, you must

complete the enclosed Noteholders' Proxy and provide it to the Monitor using the enclosed
envelope, or by sending it to the Monitor by facsimile transmission at the fax number noted
below or by email (in PDF format) at the email address below, so that it is received by the
Monitor no later than 5:00 p.m. (Toronto time) on the third Business Day before the Meeting or
any adjournment thereof. Beneficial Noteholder must provide the Noteholders' Proxy to the
Monitor by this deadline in order to vote at the Meeting of Affected Creditors.

## FURTHER INFORMATION

If you have any questions regarding the process or any of the enclosed forms, please contact FTI
Consulting Canada Inc. at the following address:

> FTI Consulting Canada Inc., the Court-appointed
> Monitor of Sino-Forest Corporation
> TD Waterhouse Tower
> 79 Wellington Street West, Suite 2010
> P.O. Box 104
> Toronto, Ontario M5K 1G8

> Attention: Jodi Porepa
> Email: sfc@fticonsulting.com
> Fax: (416) 649-8101

You can also view copies of documents relating to this process on the following website
http://cfcanada.fticonsulting.com/sfc/.

## SCHEDULE "E"

## INSTRUCTIONS TO UNREGISTERED NOTEHOLDERS

### URGENT – IMMEDIATE ACTION REQUIRED

●, 2012

TO:   UNREGISTERED HOLDERS OF SINO-FOREST CORPORATION'S:

   (i)   **US$345,000,000 5.00% CONVERTIBLE SENIOR NOTES DUE 2013 (Rule
         144A CUSIP No. 82934HAB7/Regulation S CUSIP No. C83912AB8);**

   (ii)  **US$399,517,000 10.25% GUARANTEED SENIOR NOTES DUE 2014 (Rule
         144A CUSIP No. 82934HAC5/Regulation S CUSIP No. C83912AC6);**

   (iii) **US$460,000,000 4.25% CONVERTIBLE SENIOR NOTES DUE 2016 (Rule
         144A CUSIP No. 82934HAD3/Regulation S CUSIP No. C83912AD4); and**

   (iv)  **US$600,000,000 6.25% GUARANTEED SENIOR NOTES DUE 2017 Rule
         144A CUSIP No. 82934HAF8/Regulation S CUSIP No. C83912AF9),**

   (collectively, the "**Notes**")

**Re:   Meeting of Affected Creditors of Sino-Forest Corporation to vote on the Plan of
Compromise and Reorganization pursuant to the *Companies' Creditors
Arrangement Act* (the "Plan")**

You are considered an Unregistered Noteholder if your Notes are shown by the books and
records of the applicable indenture trustee to be held by your broker, DTC or another similar
holder (a "**Participant Holder**") on your behalf. If your Notes are held by a Participant Holder,
these instructions apply to you.

We enclose in this package the following documents for your review and consideration:

   1.   Notice to Affected Creditors;

2.      the Plan proposed in respect of Sino-Forest Corporation;

3.      an Information Circular with respect to Sino-Forest and the Plan;

4.      copy of the Meeting Order of the Ontario Superior Court of Justice dated ● (the
        "**Meeting Order**"), 2012;

5.      copy of the endorsement of the Ontario Superior Court of Justice made on August
        31, 2012 (the "**Endorsement**"); and

6.      blank form of Noteholders' Proxy, completion instructions and return envelope.

The purpose of these materials is to provide you with the documents required to enable you to
consider the Plan and to cast your vote to accept or reject the resolution to approve the Plan at
the meeting of the Affected Creditors to be held at 10:00 a.m. on ●, 2012 (or such other date as
may be set and announced in accordance with the Meeting Order) at the offices of Bennett Jones
LLP, 3400 One First Canadian Place, Toronto, Ontario (the "**Meeting**").

## CLAIM

THE TOTAL AMOUNT OF ALL THE NOTEHOLDER CLAIMS HAS BEEN FILED BY
THE NOTE INDENTURE TRUSTEES. THEREFORE, <u>YOU DO NOT HAVE TO PROVIDE
A PROOF OF CLAIM</u>. **HOWEVER IF YOU WISH TO VOTE ON THE PLAN, YOU
MUST COMPLETE THE ENCLOSED NOTEHOLDERS' PROXY IN ACCORDANCE
WITH THE INSTRUCTIONS SET OUT THEREIN AND RETURN IT TO THE
MONITOR PRIOR TO 5:00 P.M. (TORONTO TIME) ON THE THIRD BUSINESS DAY
BEFORE THE MEETING OR ANY ADJOURNMENT THEREOF.**

## PROXY

The box on page 2 of your proxy should have been completed and signed by your Participant
Holder to indicate the principal amount of Notes held by the Participant Holder on your behalf as
at the Voting Record Date of ●. <u>If it has not been completed and signed, please contact your
Participant Holder immediately to arrange for it to be completed and signed.</u> You must complete
your portion of the enclosed Noteholders' Proxy (including paragraph 1 of the proxy) and

provide it to FTI Consulting Canada Inc. (the "**Monitor**"), using the enclosed envelope, or by
sending to the Monitor by facsimile transmission at the fax number noted below or by email (in
PDF format) at the email address below, so that it is received by the Monitor no later than 5:00
p.m. (Toronto time) on the third Business Day before the Meeting or any adjournment thereof.
You must provide the completed proxy to the Monitor by this deadline if you wish to cast your
vote at the Meeting of Affected Creditors.

YOU SHOULD NOT SEND THE PROXY TO YOUR PARTICIPANT HOLDER. YOUR
PROXY SHOULD BE SENT DIRECTLY TO FTI CONSULTING CANADA INC. IN THE
ENVELOPE PROVIDED OR BY FACSIMILE OR EMAIL.

If you have any questions regarding your obligations or the process, or require additional copies
of any materials please contact the Monitor at the following address:

> The Monitor
> FTI Consulting Canada Inc., the Court-appointed
> Monitor of Sino-Forest Corporation
> TD Waterhouse Tower
> 79 Wellington Street West, Suite 2010
> P.O. Box 104
> Toronto, Ontario M5K 1G8
>
> Attention: Jodi Porepa
> Email: sfc@fticonsulting.com
> Fax: (416) 649-8101

You can also view copies of documents relating to this process on the following website
http://cfcanada.fticonsulting.com/sfc/.

## SCHEDULE "F"

## NOTEHOLDERS' PROXY

### For Use by Beneficial Owners of Sino-Forest Corporation's Notes

## MEETING OF AFFECTED CREDITORS OF SINO-FOREST CORPORATION

to be held pursuant to an Order of the Ontario Superior Court of Justice (**the "Meeting Order"**)

in connection with the Plan of Compromise and Reorganization (the "**Plan**")

under the *Companies' Creditors Arrangement Act* (Canada) in respect of

Sino-Forest Corporation ("**Sino-Forest**")

on ● , 2012 at 10:00 a.m.

(or such other date as may be set and announced in accordance with the Meeting Order)

at:

Bennett Jones LLP, 3400 One First Canadian Place

Toronto, Ontario

and at any adjournment thereof.

*Before completing this Proxy, please read carefully the instructions accompanying this Proxy for*
*information respecting the proper completion and return of this Proxy.*

**THIS PROXY MUST BE COMPLETED AND SIGNED BY THE PARTICIPANT**
**HOLDER AND THE UNREGISTERED NOTEHOLDER AND MUST BE PROVIDED**
**TO THE MONITOR, FTI CONSULTING CANADA INC., PRIOR TO 5:00 P.M.**
**TORONTO TIME ON THE THIRD BUSINESS DAY BEFORE THE MEETING (OR**
**ANY ADJOURNMENT THEREOF).**

**TO BE COMPLETED AND SIGNED BY THE <u>PARTICIPANT HOLDER</u> PRIOR TO
SENDING THIS PROXY TO THE BENEFICIAL OWNER OF NOTES**

Name of Unregistered Noteholder

(Client or Principal for whom Notes are held):

_____

Name of Participant Holder for this Unregistered

Noteholder's Notes:                    _____

Account Number:                       _____

Principal Amount of Notes

Held for this Unregistered Noteholder by series:_____

**Participant Holder Signature:**        _____

                                        (Print Name of Contact at Participant Holder)

Phone Number of Participant Holder:     By:

_____             _____

                                        (Signature of authorized signing officer of

                                        Participant Holder)

Email Address of Participant Holder:

_____

## REMAINDER OF PROXY TO BE COMPLETED BY <u>BENEFICIAL OWNER</u>

**THE UNDERSIGNED UNREGISTERED NOTEHOLDER** hereby revokes all proxies previously given and nominates, constitutes and appoints _____ or, if no person is named, Robert J. Chadwick of Goodmans LLP (or his designee), as nominee of the Unregistered Noteholder, with power of substitution, to attend on behalf of and act for the Unregistered Noteholder at the Meeting of Affected Creditors of Sino-Forest Corporation to be held in connection with the Plan and at any and all adjournments thereof, and to vote the Unregistered Noteholder's claims in respect of the Notes beneficially owned by it as follows:

A.   (mark one only)

☐  VOTE FOR approval of the Plan; or

☐  VOTE AGAINST approval of the Plan;

- and -

B.   vote at the nominee's discretion and otherwise act for and on behalf of the undersigned Unregistered Noteholder with respect to any amendments or variations to the Plan and to any other matters that may come before the Meeting of the Affected Creditors of Sino-Forest Corporation or any adjournment thereof.

If you do not indicate your vote in part "A" above and Robert J. Chadwick of Goodmans LLP (or his designee) is your nominee, he will vote this proxy FOR approval of the Plan.

Please provide below: (i) the Name of each Participant Holder through which the Unregistered Noteholder holds Notes; (ii) the Unregistered Noteholder's account number with each such Participant Noteholder; and (iii) the principal amount of all Notes held on behalf of the Unregistered Noteholder by each Participant Holder.

| NAME AND PHONE # OF PARTICIPANT HOLDER (Please list all Participants Holders through which you hold Notes) | ACCOUNT NUMBER | PRINCIPAL AMOUNT OF NOTES AND SERIES (Please identify the series of Notes) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

(If additional space is required, please attach a separate page)

The Unregistered Noteholder hereby authorizes FTI Consulting Canada Inc. to contact any Participant Holder named above to confirm that the information set out above conforms to the information contained in the records of the Participant Holder.

DATED this _____ day of _____, 2012.

| | |
|---|---|
| | (Print Name of Unregistered Noteholder) |
| | |
| | (Signature of Unregistered Noteholder or, if the Unregistered Noteholder is a corporation, signature of an authorized signing officer of the corporation and such officer's title) |
| | |
| | Phone Number of Unregistered Noteholder |

## INSTRUCTIONS FOR COMPLETION OF PROXY

1.  Each Unregistered Noteholder has the right to appoint a person (who need not be a Noteholder) to attend, act and vote for and on the Unregistered Noteholder's behalf and such right may be exercised by inserting in the space in paragraph 1 the name of the person to be appointed. An individual Unregistered Noteholder wishing to attend and vote in person at the Meeting of Affected Creditors of Sino-Forest Corporation should insert the Unregistered Noteholder's own name in the space provided. **If no name has been inserted in the space provided, the Unregistered Noteholder will be deemed to have appointed Robert J. Chadwick of Goodmans LLP (or his designee) as the Unregistered Noteholder's proxyholder.**

2.  **If Robert J. Chadwick of Goodmans LLP (or his designee) is appointed or deemed to be appointed as proxyholder and the Unregistered Noteholder fails to indicate on this Proxy a vote for or against the approval of the Plan, this Proxy will be voted FOR approval of the Plan.**

3.  The Unregistered Noteholder should insert the principal amount of each series of Notes owned by the Unregistered Noteholder, specifying in each case the applicable Participant Holder and the series of Notes, in the space provided on page 4.

4.  If this Proxy is not dated in the space provided, it will be deemed to bear the date on which it is received by the Monitor.

5.  This Proxy must be signed by the Beneficial Owner of the applicable Notes or by his or her attorney duly authorized in writing or, if the Unregistered Noteholder is a corporation, by a duly authorized officer or attorney of the corporation specifying the title of such officer or attorney.

6.  The Participant Holder must complete and sign the applicable portion of the Proxy (in the box on page 2) PRIOR to sending the Proxy to the Beneficial Owner.

7. Valid proxies bearing or deemed to bear a later date will revoke this Proxy. If more than one valid proxy for the same Unregistered Noteholder and bearing or deemed to bear the same date are received with conflicting instructions, such proxies will be treated as disputed proxies and will not be counted.

8. This Proxy must be received by the Monitor by no later than 5:00 p.m. (Toronto time) on the third Business Day before the Meeting or any adjournment thereof, at the address set out below:

   FTI Consulting Canada Inc., the Court-appointed Monitor of Sino-Forest Corporation

   TD Waterhouse Tower
   79 Wellington Street West, Suite 2010
   P.O. Box 104
   Toronto, Ontario M5K 1G8

   Attention: Jodi Porepa
   Email: sfc@fticonsulting.com
   Fax: (416) 649-8101

## SCHEDULE "G"

## ORDINARY AFFECTED CREDITORS' PROXY

### For Use by Ordinary Affected Creditors of Sino-Forest Corporation

## MEETING OF AFFECTED CREDITORS OF SINO-FOREST CORPORATION

to be held pursuant to an Order of the Ontario Superior Court of Justice (the "**Meeting Order**")

in connection with the Plan of Compromise and Reorganization (the "**Plan**")

under the *Companies' Creditors Arrangement Act* (Canada) in respect of

Sino-Forest Corporation ("**Sino-Forest**")

on ●, 2012 at 10:00 a.m.

(or such other date as may be set and announced in accordance with the Meeting Order)

at:

Bennett Jones LLP, 3400 One First Canadian Place

Toronto, Ontario

and at any adjournment thereof.

*Before completing this Proxy, please read carefully the instructions accompanying this Proxy for
information respecting the proper completion and return of this Proxy.*

IN ORDER TO VOTE ON THE PLAN, THIS PROXY MUST BE COMPLETED AND
SIGNED BY THE ORDINARY AFFECTED CREDITOR AND PROVIDED TO THE
MONITOR, FTI CONSULTING CANADA INC., PRIOR TO 5:00 P.M. TORONTO
TIME ON THE THIRD BUSINESS DAY BEFORE THE MEETING OR ANY
ADJOURNMENT THEREOF.

**THE UNDERSIGNED ORDINARY AFFECTED CREDITOR** hereby revokes all proxies previously given and nominates, constitutes and appoints _____ or, if no person is named, **[insert representative of the Monitor]** (or his/her designee), as nominee of the Ordinary Affected Creditor, with power of substitution, to attend on behalf of and act for the Ordinary Affected Creditor at the Meeting of Affected Creditors of Sino-Forest Corporation to be held in connection with the Plan and at any and all adjournments thereof, and to vote the Ordinary Affected Creditor's Claim as follows:

A.   (mark one only)

❑  VOTE FOR approval of the Plan; or

❑  VOTE AGAINST approval of the Plan;

- and -

B.   vote at the nominee's discretion and otherwise act for and on behalf of the undersigned Ordinary Affected Creditor with respect to any amendments or variations to the Plan and to any other matters that may come before the Meeting of the Affected Creditors of Sino-Forest Corporation or any adjournment thereof.

If you do not indicate your vote in part "A" above and **[insert representative of the Monitor]** or his/her designee is your nominee, and he/she will vote this proxy FOR approval of the Plan.

Dated this _____ day of _____, 2012.

| | |
|---|---|
| | (Print Name of Ordinary Affected Creditor) |
| | (Signature of Ordinary Affected Creditor or, if the Voting Affected Creditor is a corporation, signature of an authorized signing officer of the corporation and such officer's name and title) |
| | Phone Number of Ordinary Affected Creditor |

- 4 -

## INSTRUCTIONS FOR COMPLETION OF PROXY

1. Each Ordinary Affected Creditor has the right to appoint a person (who need not be a Ordinary Affected Creditor) to attend, act and vote for and on the Ordinary Affected Creditor's behalf and such right may be exercised by inserting in the space provided the name of the person to be appointed. An individual Ordinary Affected Creditor wishing to attend and vote in person at the Meeting of Affected Creditors of Sino-Forest Corporation should insert the Ordinary Affected Creditor's own name in the space provided. **If no name has been inserted in the space provided, the Ordinary Affected Creditor will be deemed to have appointed [insert representative of Monitor] (or his/her designee) as the Ordinary Affected Creditor's proxyholder.**

2. **If [insert representative of Monitor] (or his/her designee) is appointed or deemed to be appointed as proxyholder and the Ordinary Affected Creditor fails to indicate on this Proxy a vote for or against the approval of the Plan, this Proxy will be voted FOR approval of the Plan.**

3. If this Proxy is not dated in the space provided, it will be deemed to bear the date on which it is received by the Monitor.

4. This Proxy must be signed by the Ordinary Affected Creditor or by the Ordinary Affected Creditor's attorney duly authorized in writing or, if the Ordinary Affected Creditor is a corporation, by a duly authorized officer or attorney of the corporation specifying the title of such officer or attorney.

5. Valid proxies bearing or deemed to bear a later date will revoke this Proxy. If more than one valid proxy for the same Ordinary Affected Creditor and bearing or deemed to bear the same date are received with conflicting instructions, such proxies will be treated as disputed proxies and will not be counted.

6. This Proxy must be received by the Monitor by no later than 5:00 p.m. (Toronto time) on the third Business Day before the Meeting or any adjournment thereof, at the address set out below:

FTI Consulting Canada Inc., the Court-appointed Monitor of Sino-Forest
Corporation

TD Waterhouse Tower
79 Wellington Street West, Suite 2010
P.O. Box 104
Toronto, Ontario  M5K 1G8

Attention: Jodi Porepa
Email: sfc@fticonsulting.com
Fax: (416) 649-8101

\6103439

TOR_LAW\ 7988452\3

Court File No.: CV-12-9667-00CL

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF SINO-FOREST CORPORATION

|  | |
|---|---|
|  | ***ONTARIO*** <br> **SUPERIOR COURT OF JUSTICE** <br> (Commercial List) <br><br> (PROCEEDING COMMENCED IN TORONTO) |
|  | **PLAN FILING AND MEETING ORDER** |
|  | **BENNETT JONES** LLP <br> Barristers and Solicitors <br> One First Canadian Place <br> Suite 3400, P.O. Box 150 <br> Toronto ON <br> M5X 1A4 <br><br> Robert W. Staley (LSUC #27115J) <br> Kevin Zych (LSUC #33129T) <br> Derek J. Bell (LSUC #43420J) <br> Raj Sahni (LSUC#42942U) <br> Jonathan Bell (LSUC #55457P) <br> Tel: 416-863-1200 <br> Fax: 416-863-1716 <br><br> Lawyers for the Applicant |

## APPENDIX "I" - NOTICE OF APPEARANCE OF KIM ORR

*(See Attached)*



Court File No. CV-12-9667-00CL

**ONTARIO
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST**

IN THE MATTER OF THE *COMPANIES' CREDITORS
ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF SINO-FOREST CORPORATION

**NOTICE OF APPEARANCE**

The Respondents, Invesco Canada Ltd., Northwest & Ethical Investments L.P., and Comité Syndical

National de Retraite Bâtirente Inc. intend to respond to this application.

December 6, 2012

        **KIM ORR BARRISTERS P.C.**
        19 Mercer Street, 4th Floor
        Toronto, Ontario
        M5V 1H2

        Won J. Kim (LSUC #32918H)
        James C. Orr (LSUC #23180M)
        Michael C. Spencer (LSUC #59637F)
        Megan B. McPhee (LSUC #48351G)

        Tel: (416) 596-1414
        Fax: (416) 598-0601

        Lawyers for Invesco Canada Ltd., Northwest & Ethical
        Investments L.P., and Comité Syndical National de Retraite
        Bâtirente Inc.

TO:      THE SERVICE LIST

Court File No.: CV-12-9667-00cl

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF SINO-FOREST CORPORATION

|  |  |
|---|---|
|  | *ONTARIO*<br>SUPERIOR COURT OF JUSTICE<br>COMMERCIAL LIST<br><br>Proceeding commenced at Toronto |
|  | NOTICE OF APPEARANCE |
|  | **KIM ORR BARRISTERS P.C.**<br>19 Mercer Street<br>4th Floor<br>Toronto, Ontario  M5V 1H2<br><br>**Won J. Kim** (LSUC #32918H)<br>**James C. Orr** (LSUC #23180M)<br>**Michael C. Spencer** (LSUC #59637F)<br>**Megan B. McPhee** (LSUC #48351G)<br><br>Tel:  (416) 596-1414<br>Fax: (416) 598-0601<br><br>Lawyers for Invesco Canada Ltd., Northwest &<br>Ethical Investments L.P. and Comité Syndical<br>National de Retraite Bâtirente Inc. |

# APPENDIX "J" - THE SANCTION ORDER

*(See Attached)*



Court File No. CV-12-9667-00CL

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

THE HONOURABLE MR.   )   MONDAY, THE 10th DAY

             )

JUSTICE MORAWETZ    )   OF DECEMBER, 2012

IN THE MATTER OF THE *COMPANIES' CREDITORS
ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF SINO-FOREST CORPORATION

### PLAN SANCTION ORDER

**THIS MOTION**, made by Sino-Forest Corporation ("**SFC**"), for an order (i) pursuant to
the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**"),
sanctioning the plan of compromise and reorganization dated December 3, 2012 (including all
schedules thereto), which Plan is attached as Schedule "A" hereto, as supplemented by the plan
supplement dated November 21, 2012 previously filed with the Court, as the Plan may be further
amended, varied or supplemented from time to time in accordance with the terms thereof (the
"**Plan**"), and (ii) pursuant to the section 191 of the *Canada Business Corporations Act*, R.S.C.
1985, c. C-44, as amended (the "**CBCA**"), approving the Plan and amending the articles of SFC
and giving effect to the changes and transactions arising therefrom, was heard on December 7,
2012 at 330 University Avenue, Toronto, Ontario.

**ON READING** the Notice of Motion, the Affidavit of W. Judson Martin sworn
November 29, 2012 (the "**Martin Affidavit**"), the Thirteenth Report of FTI Consulting Canada
Inc. in its capacity as monitor of SFC (the "**Monitor**") dated November 22, 2012 (the
"**Monitor's Thirteenth Report**"), the supplemental report to the Monitor's Thirteenth Report
(the "**Supplemental Report**"), and the second supplemental report to the Monitor's Thirteenth
Report (the "**Second Supplemental Report**") and on hearing the submissions of counsel for

SFC, the Monitor, the *ad hoc* committee of Noteholders (the **"Ad Hoc Noteholders"**), and such other counsel as were present, no one else appearing for any other party, although duly served with the Motion Record as appears from the Affidavit of Service, filed.

## DEFINED TERMS

1.    **THIS COURT ORDERS** that any capitalized terms not otherwise defined in this Plan Sanction Order shall have the meanings ascribed to such terms in the Plan and/or the Plan Filing and Meeting Order granted by the Court on August 31, 2012 (the **"Plan Filing and Meeting Order"**), as the case may be.

## SERVICE, NOTICE AND MEETING

2.    **THIS COURT ORDERS** that the time for service of the Notice of Motion, the Motion Record in support of this motion, the Monitor's Thirteenth Report, the Supplemental Report and the Second Supplemental Report be and are hereby abridged and validated so that the motion is properly returnable today and service upon any interested party other than those parties served is hereby dispensed with.

3.    **THIS COURT ORDERS AND DECLARES** that there has been good and sufficient notice, service and delivery of the Plan Filing and Meeting Order and the Meeting Materials (including, without limitation, the Plan) to all Persons upon which notice, service and delivery was required.

4.    **THIS COURT ORDERS AND DECLARES** that the Meeting was duly convened and held, all in conformity with the CCAA and the Orders of this Court made in the CCAA Proceeding, including, without limitation, the Plan Filing and Meeting Order.

5.    **THIS COURT ORDERS AND DECLARES** that: (i) the hearing of the Plan Sanction Order was open to all of the Affected Creditors and all other Persons with an interest in SFC and that such Affected Creditors and other Persons were permitted to be heard at the hearing in respect of the Plan Sanction Order; and (ii) prior to the hearing, all of the Affected Creditors and all other Persons on the Service List in respect of the CCAA Proceeding were given adequate notice thereof.

**SANCTION OF THE PLAN**

6.    **THIS COURT ORDERS** that the relevant class of Affected Creditors of SFC for the purposes of voting to approve the Plan is the Affected Creditors Class.

7.    **THIS COURT ORDERS AND DECLARES** that the Plan, and all the terms and conditions thereof, and matters and transactions contemplated thereby, are fair and reasonable.

8.    **THIS COURT ORDERS** that the Plan is hereby sanctioned and approved pursuant to section 6 of the CCAA.

**PLAN IMPLEMENTATION**

9.    **THIS COURT ORDERS AND DECLARES** that the Plan and all associated steps, compromises, releases, discharges, cancellations, transactions, arrangements and reorganizations effected thereby are approved and shall be deemed to be implemented, binding and effective in accordance with the provisions of the Plan as of the Plan Implementation Date at the Effective Time, or at such other time, times or manner as may be set forth in the Plan, and shall enure to the benefit of and be binding upon SFC, the other Released Parties, the Affected Creditors and all other Persons and parties named or referred to in, affected by, or subject to the Plan, including, without limitation, their respective heirs, administrators, executors, legal representatives, successors, and assigns.

10.    **THIS COURT ORDERS** that each of SFC and the Monitor are authorized and directed to take all steps and actions, and to do all things, necessary or appropriate to implement the Plan in accordance with its terms and to enter into, execute, deliver, complete, implement and consummate all of the steps, transactions, distributions, deliveries, allocations, instruments and agreements contemplated pursuant to the Plan, and such steps and actions are hereby authorized, ratified and approved. Furthermore, neither SFC nor the Monitor shall incur any liability as a result of acting in accordance with terms of the Plan and the Plan Sanction Order.

11.    **THIS COURT ORDERS** that SFC, the Monitor, Newco, the Litigation Trustee, the Trustees, DTC, the Unresolved Claims Escrow Agent, all Transfer Agents and any other Person required to make any distributions, deliveries or allocations or take any steps or actions related

thereto pursuant to the Plan are hereby directed to complete such distributions, deliveries or allocations and to take any such related steps and/or actions in accordance with the terms of the Plan, and such distributions, deliveries and allocations, and steps and actions related thereto, are hereby approved.

12.    **THIS COURT ORDERS** that upon the satisfaction or waiver, as applicable, of the conditions precedent set out in section 9.1 of the Plan in accordance with the terms of the Plan, as confirmed by SFC and Goodmans LLP to the Monitor in writing, the Monitor is authorized and directed to deliver to SFC and Goodmans LLP a certificate substantially in the form attached hereto as Schedule "B" (the "**Monitor's Certificate**") signed by the Monitor, certifying that the Plan Implementation Date has occurred and that the Plan and this Plan Sanction Order are effective in accordance with their terms. Following the Plan Implementation Date, the Monitor shall file the Monitor's Certificate with this Court.

13.    **THIS COURT ORDERS AND DECLARES** that the steps, compromises, releases, discharges, cancellations, transactions, arrangements and reorganizations to be effected on the Plan Implementation Date are deemed to occur and be effected in the sequential order contemplated in the Plan, without any further act or formality, beginning at the Effective Time.

14.    **THIS COURT ORDERS** that SFC, the Monitor and the Initial Consenting Noteholders are hereby authorized and empowered to exercise all such consent and approval rights in the manner set forth in the Plan, whether prior to or after implementation of the Plan.

15.    **THIS COURT ORDERS** that from and after the Plan Implementation Date, and for the purposes of the Plan only, (i) if SFC does not have the ability or the capacity pursuant to Applicable Law to provide its agreement, waiver, consent or approval to any matter requiring SFC's agreement, waiver, consent or approval under this Plan, such agreement, waiver consent or approval may be provided by the Monitor; and (ii) if SFC does not have the ability or the capacity pursuant to Applicable Law to provide its agreement, waiver, consent or approval to any matter requiring SFC's agreement, waiver, consent or approval under this Plan, and the Monitor has been discharged pursuant to an Order, such agreement, waiver consent or approval shall be deemed not to be necessary.

**COMPROMISE OF CLAIMS AND EFFECT OF PLAN**

16.     **THIS COURT ORDERS AND DECLARES** that, pursuant to and in accordance with the terms of the Plan, on the Plan Implementation Date, any and all Affected Claims shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred, subject only to the right of the applicable Persons to receive the distributions and interests to which they are entitled pursuant to the Plan.

17.     **THIS COURT ORDERS AND DECLARES** that, pursuant to and in accordance with the terms of the Plan, on the Plan Implementation Date and at the time specified in Section 6.4 of the Plan, all accrued and unpaid interest owing on, or in respect of, or as part of, Affected Creditor Claims (including any Accrued Interest on the Notes and any interest accruing on the Notes or any Ordinary Affected Creditor Claim after the Filing Date) shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred for no consideration and no Person shall have any entitlement to any such accrued and unpaid interest.

18.     **THIS COURT ORDERS AND DECLARES** that, on the Plan Implementation Date, the ability of any Person to proceed against SFC or the Subsidiaries in respect of any Released Claims shall be forever discharged, barred and restrained, and all proceedings with respect to, in connection with, or relating to any such matter shall be permanently stayed.

19.     **THIS COURT ORDERS** that each Affected Creditor is hereby deemed to have consented to all of the provisions of the Plan, in its entirety, and each Affected Creditor is hereby deemed to have executed and delivered to SFC all consents, releases, assignments and waivers, statutory or otherwise, required to implement and carry out the Plan in its entirety.

20.     **THIS COURT ORDERS** that, on the Plan Implementation Date and at the time specified in Section 6.4 of the Plan, the SFC Assets (including for greater certainty the Direct Subsidiary Shares, the SFC Intercompany Claims and all other SFC Assets assigned, transferred and conveyed to Newco and/or Newco II pursuant to section 6.4 of the Plan) shall vest in the Person to whom such assets are being assigned, transferred and conveyed, in accordance with the terms of the Plan, free and clear of and from any and all Charges, Claims (including, notwithstanding anything to the contrary herein, any Unaffected Claims), D&O Claims, D&O Indemnity Claims, Section 5.1(2) D&O Claims, Conspiracy Claims, Continuing Other D&O

Claims, Non-Released D&O Claims, Affected Claims, Class Action Claims, Class Action Indemnity Claims, claims or rights of any kind in respect of the Notes or the Note Indentures, and any right or claim that is based in whole or in part on facts, underlying transactions, Causes of Action or events relating to the Restructuring Transaction, the CCAA Proceedings or any of the foregoing, and any guarantees or indemnities with respect to any of the foregoing. Any Encumbrances or claims affecting, attaching to or relating to the SFC Assets in respect of the foregoing are and shall be deemed to be irrevocably expunged and discharged as against the SFC Assets, and no such Encumbrances or claims shall be pursued or enforceable as against Newco, Newco II or any other Person.

21.    **THIS COURT ORDERS** that any securities, interests, rights or claims pursuant to the Plan, including the Newco Shares, the Newco Notes and the Litigation Trust Interests, issued, assigned, transferred or conveyed pursuant to the Plan will be free and clear of and from any and all Charges, Claims (including, notwithstanding anything to the contrary herein, any Unaffected Claims), D&O Claims, D&O Indemnity Claims, Affected Claims, Section 5.1(2) D&O Claims, Conspiracy Claims, Continuing Other D&O Claims, Non-Released D&O Claims, Class Action Claims, Class Action Indemnity Claims, claims or rights of any kind in respect of the Notes or the Note Indentures, and any right or claim that is based in whole or in part on facts, underlying transactions, causes of action or events relating to the Restructuring Transaction, the CCAA Proceedings or any of the foregoing, and any guarantees or indemnities with respect to any of the foregoing.

22.    **THIS COURT ORDERS** that the Litigation Trust Agreement is hereby approved and deemed effective as of the Plan Implementation Date, including with respect to the transfer, assignment and delivery of the Litigation Trust Claims to the Litigation Trustee which shall, and are hereby deemed to, occur on and as of the Plan Implementation Date. For greater certainty, the Litigation Trust Claims transferred, assigned and delivered to the Litigation Trustee shall not include any Excluded Litigation Trust Claims and all Affected Creditors shall be deemed to have consented to the release of any such Excluded Litigation Trust Claims pursuant to the Plan.

23.    **THIS COURT ORDERS** that section 36.1 of the CCAA, sections 95 to 101 of the BIA and any other federal or provincial Law relating to preferences, fraudulent conveyances or transfers at undervalue, shall not apply to the Plan or to any payments, distributions, transfers,

allocations or transactions made or completed in connection with the restructuring and recapitalization of SFC, whether before or after the Filing Date, including, without limitation, to any and all of the payments, distributions, transfers, allocations or transactions contemplated by and to be implemented pursuant to the Plan.

24.    **THIS COURT ORDERS** that the articles of reorganization to be filed by SFC pursuant to section 191 of the CBCA, substantially in the form attached as Schedule "C" hereto, are hereby approved, and SFC is hereby authorized to file the articles of reorganization with the Director (as defined in the CBCA).

25.    **THIS COURT ORDERS** that on the Equity Cancellation Date, or such other date as agreed to by the Monitor, SFC and the Initial Consenting Noteholders, all Existing Shares and other Equity Interests shall be fully, finally and irrevocably cancelled.

26.    **THIS COURT ORDERS AND DECLARES** that the Newco Shares shall be and are hereby deemed to have been validly authorized, created, issued and outstanding as fully-paid and non-assessable shares in the capital of Newco as of the Effective Time.

27.    **THIS COURT ORDERS AND DECLARES** that upon the Plan Implementation Date the initial Newco Share in the capital of Newco held by the Initial Newco Shareholder shall be deemed to have been redeemed and cancelled for no consideration.

28.    **THIS COURT ORDERS AND DECLARES** that it was advised prior to the hearing in respect of the Plan Sanction Order that the Plan Sanction Order will be relied upon by SFC and Newco as an approval of the Plan for the purpose of relying on the exemption from the registration requirements of the *United States Securities Act of 1933*, as amended, pursuant to section 3(a)(10) thereof for the issuance of the Newco Shares, Newco Notes and, to the extent they may be deemed to be securities, the Litigation Trust Interests, and any other securities to be issued pursuant to the Plan.

**STAY OF PROCEEDINGS**

29.    **THIS COURT ORDERS** that all obligations, agreements or leases to which (i) SFC remains a party on the Plan Implementation Date, or (ii) Newco and/or Newco II becomes a party as a result of the conveyance of the SFC Assets to Newco and the further conveyance of

the SFC Assets to Newco II on the Plan Implementation Date, shall be and remain in full force
and effect, unamended, as at the Plan Implementation Date and no party to any such obligation,
agreement or lease shall on or following the Plan Implementation Date, accelerate, terminate,
refuse to renew, rescind, refuse to perform or otherwise disclaim or resiliate its obligations
thereunder, or enforce or exercise (or purport to enforce or exercise) any right or remedy under
or in respect of any such obligation, agreement or lease, (including any right of set-off, dilution
or other remedy), or make any demand against SFC, Newco, Newco II, any Subsidiary or any
other Person under or in respect of any such agreement with Newco, Newco II or any Subsidiary,
by reason:

(a)    of any event which occurred prior to, and not continuing after, the Plan
        Implementation Date, or which is or continues to be suspended or waived under the
        Plan, which would have entitled any other party thereto to enforce those rights or
        remedies;

(b)    that SFC sought or obtained relief under the CCAA or by reason of any steps or
        actions taken as part of the CCAA Proceeding or this Plan Sanction Order or prior
        orders of this Court;

(c)    of any default or event of default arising as a result of the financial condition or
        insolvency of SFC;

(d)    of the completion of any of the steps, actions or transactions contemplated under the
        Plan, including, without limitation, the transfer, conveyance and assignment of the
        SFC Assets to Newco and the further transfer, conveyance and assignment of the SFC
        Assets by Newco to Newco II; or

(e)    of any steps, compromises, releases, discharges, cancellations, transactions,
        arrangements or reorganizations effected pursuant to the Plan.

30.    **THIS COURT ORDERS** that from and after the Plan Implementation Date, any and all
Persons shall be and are hereby stayed from commencing, taking, applying for or issuing or
continuing any and all steps or proceedings, including without limitation, administrative hearings
and orders, declarations or assessments, commenced, taken or proceeded with or that may be
commenced, taken or proceed with to advance any Released Claims.

31.    **THIS COURT ORDERS** that between (i) the Plan Implementation Date and (ii) the
earlier of the Ernst & Young Settlement Date or such other date as may be ordered by the Court
on a motion to the Court on reasonable notice to Ernst & Young, any and all Persons shall be and
are hereby stayed from commencing, taking, applying for or issuing or continuing any and all
steps or proceedings against Ernst & Young (other than all steps or proceedings to implement the
Ernst & Young Settlement) pursuant to the terms of the Order of the Honourable Justice
Morawetz dated May 8, 2012, provided that no steps or proceedings against Ernst & Young by
the Ontario Securities Commission or by staff of the Ontario Securities Commission under the
*Securities Act* (Ontario) shall be stayed by this Order.

## RELEASES

32.    **THIS COURT ORDERS** that, subject to section 7.2 of the Plan, all of the following
shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and
barred on the Plan Implementation Date at the time or times and in the manner set forth in
section 6.4 of the Plan:

(a)    all Affected Claims, including, without limitation, all Affected Creditor Claims,
Equity Claims, D&O Claims (other than Section 5.1(2) D&O Claims, Conspiracy
Claims, Continuing Other D&O Claims and Non-Released D&O Claims), D&O
Indemnity Claims (except as set forth in section 7.1(d) of the Plan) and Noteholder
Class Action Claims (other than the Continuing Noteholder Class Action Claims);

(b)    all Claims of the Ontario Securities Commission or any other Governmental Entity
that have or could give rise to a monetary liability, including, without limitation,
fines, awards, penalties, costs, claims for reimbursement or other claims having a
monetary value;

(c)    all Class Action Claims (including, without limitation, the Noteholder Class Action
Claims) against SFC, the Subsidiaries or the Named Directors or Officers of SFC or
the Subsidiaries (other than Class Action Claims that are Section 5.1(2) D&O Claims,
Conspiracy Claims or Non-Released D&O Claims);

(d)    all Class Action Indemnity Claims (including, without limitation, related D&O
Indemnity Claims), other than any Class Action Indemnity Claim by the Third Party

Defendants against SFC in respect of the Indemnified Noteholder Class Action
Claims (including, without limitation, any D&O Indemnity Claim in that respect),
which shall be limited to the Indemnified Noteholder Class Action Limit pursuant to
the releases set out in section 7.1(f) of the Plan and the injunctions set out in section
7.3 of the Plan;

(e)     any portion or amount of liability of the Third Party Defendants for the Indemnified
        Noteholder Class Action Claims (on a collective, aggregate basis in reference to all
        Indemnified Noteholder Class Action Claims together) that exceeds the Indemnified
        Noteholder Class Action Limit;

(f)     any portion or amount of liability of the Underwriters for the Noteholder Class Action
        Claims (other than any Noteholder Class Action Claims against the Underwriters for
        fraud or criminal conduct) (on a collective, aggregate basis in reference to all such
        Noteholder Class Action Claims together) that exceeds the Indemnified Noteholder
        Class Action Limit;

(g)     any portion or amount of, or liability of SFC for, any Class Action Indemnity Claims
        by the Third Party Defendants against SFC in respect of the Indemnified Noteholder
        Class Action Claims (on a collective, aggregate basis in reference to all such
        Noteholder Class Action Claims together) to the extent that such Class Action
        Indemnity Claims exceed the Indemnified Noteholder Class Action Limit;

(h)     any and all Excluded Litigation Trust Claims;

(i)     any and all Causes of Action against Newco, Newco II, the directors and officers of
        Newco, the directors and officers of Newco II, the Noteholders, members of the *ad
        hoc* committee of Noteholders, the Trustees, the Transfer Agent, the Monitor, FTI
        Consulting Canada Inc., FTI HK, counsel for the current Directors of SFC, counsel
        for the Monitor, counsel for the Trustees, the SFC Advisors, the Noteholder Advisors,
        and each and every member (including, without limitation, members of any
        committee or governance council), partner or employee of any of the foregoing, for or
        in connection with or in any way relating to: any Claims (including, without
        limitation, notwithstanding anything to the contrary herein, any Unaffected Claims);

Affected Claims; Section 5.1(2) D&O Claims; Conspiracy Claims; Continuing Other D&O Claims; Non-Released D&O Claims; Class Action Claims; Class Action Indemnity Claims; any right or claim in connection with or liability for the Notes or the Note Indentures; any guarantees, indemnities, claims for contribution, share pledges or Encumbrances related to the Notes or the Note Indentures; any right or claim in connection with or liability for the Existing Shares, Equity Interests or any other securities of SFC; any rights or claims of the Third Party Defendants relating to SFC or the Subsidiaries;

(j)   any and all Causes of Action against Newco, Newco II, the directors and officers of Newco, the directors and officers of Newco II, the Noteholders, members of the *ad hoc* committee of Noteholders, the Trustees, the Transfer Agent, the Monitor, FTI Consulting Canada Inc., FTI HK, the Named Directors and Officers, counsel for the current Directors of SFC, counsel for the Monitor, counsel for the Trustees, the SFC Advisors, the Noteholder Advisors, and each and every member (including, without limitation, members of any committee or governance council), partner or employee of any of the foregoing, based in whole or in part on any act, omission, transaction, duty, responsibility, indebtedness, liability, obligation, dealing or other occurrence existing or taking place on or prior to the Plan Implementation Date (or, with respect to actions taken pursuant to the Plan after the Plan Implementation Date, the date of such actions) in any way relating to, arising out of, leading up to, for, or in connection with the CCAA Proceeding, RSA, the Restructuring Transaction, the Plan, any proceedings commenced with respect to or in connection with the Plan, or the transactions contemplated by the RSA and the Plan, including, without limitation, the creation of Newco and/or Newco II and the creation, issuance or distribution of the Newco Shares, the Newco Notes, the Litigation Trust or the Litigation Trust Interests, provided that nothing in this paragraph shall release or discharge any of the Persons listed in this paragraph from or in respect of any obligations any of them may have under or in respect of the RSA, the Plan or under or in respect of any of Newco, Newco II, the Newco Shares, the Newco Notes, the Litigation Trust or the Litigation Trust Interests, as the case may be;

(k)     any and all Causes of Action against the Subsidiaries for or in connection with any Claim (including, without limitation, notwithstanding anything to the contrary herein, any Unaffected Claim); any Affected Claim (including, without limitation, any Affected Creditor Claim, Equity Claim, D&O Claim, D&O Indemnity Claim and Noteholder Class Action Claim); any Section 5.1(2) D&O Claim; any Conspiracy Claim; any Continuing Other D&O Claim; any Non-Released D&O Claim; any Class Action Claim; any Class Action Indemnity Claim; any right or claim in connection with or liability for the Notes or the Note Indentures; any guarantees, indemnities, share pledges or Encumbrances relating to the Notes or the Note Indentures; any right or claim in connection with or liability for the Existing Shares, Equity Interests or any other securities of SFC; any rights or claims of the Third Party Defendants relating to SFC or the Subsidiaries; any right or claim in connection with or liability for the RSA, the Plan, the CCAA Proceedings, the Restructuring Transaction, the Litigation Trust, the business and affairs of SFC and the Subsidiaries (whenever or however conducted), the administration and/or management of SFC and the Subsidiaries, or any public filings, statements, disclosures or press releases relating to SFC; any right or claim in connection with or liability for any indemnification obligation to Directors or Officers of SFC or the Subsidiaries pertaining to SFC, the Notes, the Note Indentures, the Existing Shares, the Equity Interests, any other securities of SFC or any other right, claim or liability for or in connection with the RSA, the Plan, the CCAA Proceedings, the Restructuring Transaction, the Litigation Trust, the business and affairs of SFC (whenever or however conducted), the administration and/or management of SFC, or any public filings, statements, disclosures or press releases relating to SFC; any right or claim in connection with or liability for any guaranty, indemnity or claim for contribution in respect of any of the foregoing; and any Encumbrance in respect of the foregoing;

(l)     all Subsidiary Intercompany Claims as against SFC (which are assumed by Newco and then Newco II pursuant to the Plan);

(m)     any entitlements of Ernst & Young to receive distributions of any kind (including, without limitation, Newco Shares, Newco Notes and Litigation Trust Interests) under this Plan;

(n)    any entitlements of the Underwriters to receive distributions of any kind (including, without limitation, Newco Shares, Newco Notes and Litigation Trust Interests) under this Plan; and

(o)    any entitlements of the Named Third Party Defendants to receive distributions of any kind (including, without limitation, Newco Shares, Newco Notes and Litigation Trust Interests) under this Plan.

33.    **THIS COURT ORDERS** that nothing in the Plan nor in this Plan Sanction Order shall waive, compromise, release, discharge, cancel or bar any of the claims listed in section 7.2 of the Plan.

34.    **THIS COURT ORDERS** that, for greater certainty, nothing in the Plan nor in this Plan Sanction Order shall release any obligations of the Subsidiaries owed to (i) any employees, directors or officers of those Subsidiaries in respect of any wages or other compensation related arrangements, or (ii) to suppliers and trade creditors of the Subsidiaries in respect of goods or services supplied to the Subsidiaries.

35.    **THIS COURT ORDERS** that any guarantees, indemnities, Encumbrances or other obligations owing by or in respect of SFC relating to the Notes or the Note Indentures shall be and are hereby deemed to be released, discharged and cancelled.

36.    **THIS COURT ORDERS** that the Trustees are hereby authorized and directed to release, discharge and cancel any guarantees, indemnities, Encumbrances or other obligations owing by or in respect of any Subsidiary relating to the Notes or the Note Indentures.

37.    **THIS COURT ORDERS** that any claims against the Named Directors and Officers in respect of Section 5.1(2) D&O Claims or Conspiracy Claims shall be limited to recovery from any insurance proceeds payable in respect of such Section 5.1(2) D&O Claims or Conspiracy Claims, as applicable, pursuant to the Insurance Policies, and Persons with any such Section 5.1(2) D&O Claims against Named Directors and Officers or Conspiracy Claims against Named Directors and Officers shall have no right to, and shall not, make any claim or seek any recoveries from any Person, (including SFC, any of the Subsidiaries, Newco or Newco II), other than enforcing such Persons' rights to be paid from the proceeds of an Insurance Policy by the applicable insurer(s).

38.    **THIS COURT ORDERS** that all Persons are permanently and forever barred, estopped, stayed and enjoined, on and after the Effective Time, with respect to any and all Released Claims, from (i) commencing, conducting or continuing in any manner, directly or indirectly, any action, suits, demands or other proceedings of any nature or kind whatsoever (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against the Released Parties; (ii) enforcing, levying, attaching, collecting or otherwise recovering or enforcing by any manner or means, directly or indirectly, any judgment, award, decree or order against the Released Parties or their property; (iii) commencing, conducting or continuing in any manner, directly or indirectly, any action, suits or demands, including without limitation, by way of contribution or indemnity or other relief, in common law, or in equity, breach of trust or breach of fiduciary duty or under the provisions of any statute or regulation, or other proceedings of any nature or kind whatsoever (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against any Person who makes such a claim or might reasonably be expected to make such a claim, in any manner or forum, against one or more of the Released Parties; (iv) creating, perfecting, asserting or otherwise enforcing, directly or indirectly, any lien or encumbrance of any kind against the Released Parties or their property; or (v) taking any actions to interfere with the implementation or consummation of this Plan; provided, however, that the foregoing shall not apply to the enforcement of any obligations under the Plan.

39.    **THIS COURT ORDERS AND DECLARES** that from and after the Plan Implementation Date, (i) subject to the prior consent of the Initial Consenting Noteholders and the terms of the Litigation Trust Agreement, each of the Litigation Trustee and the Monitor shall have the right to seek and obtain an order from any court of competent jurisdiction, including an Order of the Court in the CCAA or otherwise, that gives effect to any releases of any Litigation Trust Claims agreed to by the Litigation Trustee in accordance with the Litigation Trust Agreement, and (ii) all Affected Creditors shall be deemed to consent to any such treatment of any Litigation Trust Claims.

40.    **THIS COURT ORDERS** that the Ernst & Young Settlement and the release of the Ernst & Young Claims pursuant to section 11.1 of the Plan shall become effective upon the satisfaction of the following conditions precedent:

(a)     approval by this Honourable Court of the terms of the Ernst & Young Settlement,
        including the terms and scope of the Ernst & Young Release and the Settlement Trust
        Order;

(b)     issuance by this Honourable Court of the Settlement Trust Order;

(c)     the granting of orders under Chapter 15 of the United States *Bankruptcy Code*
        recognizing and enforcing the Sanction Order and the Settlement Trust Order and any
        court orders necessary in the United States to approve the Ernst & Young Settlement
        and any other necessary ancillary order;

(d)     any other order necessary to give effect to the Ernst & Young Settlement (the orders
        referenced in (c) and (d) being collectively the "**Ernst & Young Orders**");

(e)     the fulfillment of all conditions precedent in the Ernst & Young Settlement and the
        fulfillment by the Ontario Class Action Plaintiffs of all of their obligations
        thereunder;

(f)     the Sanction Order, the Settlement Trust Order and all Ernst & Young Orders being
        final orders and not subject to further appeal or challenge; and

(g)     the payment by Ernst & Young of the settlement amount as provided in the Ernst &
        Young Settlement to the trust established pursuant to the Settlement Trust Order,

Upon the foregoing conditions precedent having been satisfied and upon receipt of a
certificate from Ernst & Young confirming it has paid the settlement amount to the
Settlement Trust in accordance with the Ernst & Young Settlement and the trustee of the
Settlement Trust confirming receipt of such settlement amount, the Monitor shall be
authorized and directed to deliver to Ernst & Young the Monitor's Ernst & Young Settlement
Certificate and the Monitor shall file the Monitor's Ernst & Young Settlement Certificate
with this Honourable Court after delivery of such certificate to Ernst & Young, all as
provided for in section 11.1 of the Plan.

41.     **THIS COURT ORDERS** that any Named Third Party Defendant Settlement, Named
Third Party Defendant Settlement Order and Named Third Party Defendant Release, the terms

and scope of which remain in each case subject to future court approval in accordance with the Plan, shall only become effective after the Plan Implementation Date and upon the satisfaction of the conditions precedent to the applicable Named Third Party Defendant Settlement and the delivery of the applicable Monitor's Named Third Party Settlement Certificate to the applicable Named Third Party Defendant, all as set forth in section 11.2 of the Plan.

## THE MONITOR

42.   **THIS COURT ORDERS** that the Monitor, in addition to its prescribed rights and obligations under the CCAA and the powers provided to the Monitor herein and in the Plan, shall be and is hereby authorized, directed and empowered to perform its functions and fulfill its obligations under the Plan to facilitate the implementation of the Plan.

43.   **THIS COURT ORDERS** that the Monitor shall not make any payment from the Monitor's Post-Implementation Reserve to any third party professional services provider (other than its counsel) that exceeds $250,000 (alone or in a series of related payments) without the prior consent of the Initial Consenting Noteholders or an Order of this Court.

44.   **THIS COURT ORDERS** that: (i) in carrying out the terms of this Plan Sanction Order and the Plan, the Monitor shall have all the protections given to it by the CCAA, the Initial Order, the Order of this Court dated April 20, 2012 expanding the powers of the Monitor, and as an officer of the Court, including the stay of proceedings in its favour; (ii) the Monitor shall incur no liability or obligation as a result of carrying out the provisions of this Plan Sanction Order and/or the Plan, save and except for any gross negligence or wilful misconduct on its part; (iii) the Monitor shall be entitled to rely on the books and records of SFC and any information provided by SFC without independent investigation; and (iv) the Monitor shall not be liable for any claims or damages resulting from any errors or omissions in such books, records or information.

45.   **THIS COURT ORDERS** that upon completion by the Monitor of its duties in respect of SFC pursuant to the CCAA, the Plan and the Orders, the Monitor may file with the Court a certificate stating that all of its duties in respect of SFC pursuant to the CCAA, the Plan and the Orders have been completed and thereupon, FTI Consulting Canada Inc. shall be deemed to be

discharged from its duties as Monitor and released of all claims relating to its activities as Monitor.

46.     **THIS COURT ORDERS** that in no circumstances will the Monitor have any liability for any of SFC's tax liabilities, if any, regardless of how or when such liabilities may have arisen.

47.     **THIS COURT ORDERS** that, subject to the due performance of its obligations as set forth in the Plan and subject to its compliance with any written directions or instructions of the Monitor and/or directions of the Court in the manner set forth in the Plan, SFC Escrow Co. shall have no liabilities whatsoever arising from the performance of its obligations under the Plan.

## RESERVES AND OTHER AMOUNTS

48.     **THIS COURT ORDERS AND DECLARES** that the amount of each of the Indemnified Noteholder Class Action Limit, the Litigation Funding Amount, the Unaffected Claims Reserve, the Administration Charge Reserve, the Monitor's Post-Implementation Reserve and the Unresolved Claims Reserve, is as provided for in the Plan, the Plan Supplement or in Schedule "D" hereto, or such other amount as may be agreed by SFC, the Monitor and the Initial Consenting Noteholders, as applicable, in accordance with the terms of the Plan.

49.     **THIS COURT ORDERS** that Goodmans LLP, in its capacity as counsel to the Initial Consenting Noteholders, shall be permitted to apply for an Order of the Court at any time directing the Monitor to make distributions from the Monitor's Post-Implementation Reserve.

50.     **THIS COURT ORDERS AND DECLARES** that, on the Plan Implementation Date, at the time or times and in the manner set forth in section 6.4 of the Plan, each of the Charges shall be discharged, released and cancelled, and any obligations secured thereby shall be satisfied pursuant to section 4.2(b) of the Plan, and from and after the Plan Implementation Date the Administration Charge Reserve shall stand in place of the Administration Charge as security for the payment of any amounts secured by the Administration Charge.

51.     **THIS COURT ORDERS AND DECLARES** that any Unresolved Claims that exceed $1 million shall not be accepted or resolved without further Order of the Court. All parties with Unresolved Claims shall have standing in any proceeding with respect to the determination or status of any other Unresolved Claim. Counsel to the Initial Consenting Noteholders, Goodmans

LLP, shall continue to have standing in any such proceeding on behalf of the Initial Consenting Noteholders, in their capacity as Affected Creditors with Proven Claims.

## DOCUMENT PRESERVATION

52.    **THIS COURT ORDERS AND DECLARES** that, prior to the Effective Time, SFC shall: (i) preserve or cause to be preserved copies of any documents (as such term is defined in the *Rules of Civil Procedure* (Ontario)) that are relevant to the issues raised in the Class Actions; and (ii) make arrangements acceptable to SFC, the Monitor, the Initial Consenting Noteholders, counsel to Ontario Class Action Plaintiffs, counsel to Ernst & Young, counsel to the Underwriters and counsel to the Named Third Party Defendants to provide the parties to the Class Actions with access thereto, subject to customary commercial confidentiality, privilege or other applicable restrictions, including lawyer-client privilege, work product privilege and other privileges or immunities, and to restrictions on disclosure arising from s. 16 of the *Securities Act* (Ontario) and comparable restrictions on disclosure in other relevant jurisdictions, for purposes of prosecuting and/or defending the Class Actions, as the case may be, provided that nothing in the foregoing reduces or otherwise limits the parties' rights to production and discovery in accordance with the *Rules of Civil Procedure* (Ontario) and the *Class Proceedings Act, 1992* (Ontario).

## EFFECT, RECOGNITION AND ASSISTANCE

53.    **THIS COURT ORDERS** that nothing in this Plan Sanction Order or as a result of the implementation of the Plan shall affect the standing any Person has at the date of this Plan Sanction Order in respect of the CCAA Proceeding or the Litigation Trust.

54.    **THIS COURT ORDERS** that the transfer, assignment and delivery to the Litigation Trustee pursuant to the Litigation Trust of (i) rights, title and interests in and to the Litigation Trust Claims and (ii) all respective rights, title and interests in and to any lawyer-client privilege, work product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) associated with the Litigation Trust Claims, regardless of whether such documents or copies thereof have been requested by the Litigation Trustee pursuant to the Litigation Trust Agreement (collectively, the **"Privileges"**) shall not constitute a waiver of any such Privileges, and that such Privileges are expressly maintained.

55.    **THIS COURT ORDERS** that the current directors of SFC shall be deemed to have resigned on the Plan Implementation Date. The current directors of SFC shall have no liability in such capacity for any and all demands, claims, actions, causes of action, counterclaims, suits, debts, sums of money, accounts, covenants, damages, judgments, orders, including, without limitation, for injunctive relief or specific performance and compliance orders, expenses, executions, Encumbrances and other recoveries on account of any liability, obligation, demand or cause of action of whatever nature which any Person may be entitled to assert, whether known or unknown, matured or unmatured, direct, indirect or derivative, foreseen or unforeseen, arising on or after the Plan Implementation Date.

56.    **THIS COURT ORDERS** that SFC and the Monitor may apply to this Court for advice and direction with respect to any matter arising from or under the Plan or this Plan Sanction Order.

57.    **THIS COURT ORDERS** that this Plan Sanction Order shall have full force and effect in all provinces and territories of Canada and abroad as against all persons and parties against whom it may otherwise be enforced.

58.    **THIS COURT ORDERS** that, from and after the Plan Implementation Date, the Monitor is hereby authorized and appointed to act as the foreign representative in respect of the within proceedings for the purposes of having these proceedings recognized in the United States pursuant to chapter 15 of title 11 of the United States Code.

59.    **THIS COURT ORDERS** that, as promptly as practicable following the Plan Implementation Date, but in no event later than the third Business Day following the Plan Implementation Date, the Monitor, as the foreign representative of SFC and of the within proceedings, is hereby authorized and directed to commence a proceeding in a court of competent jurisdiction in the United States seeking recognition of the Plan and this Plan Sanction Order and confirming that the Plan and this Plan Sanction Order are binding and effective in the United States.

60.    **THIS COURT HEREBY REQUESTS** the aid and recognition of any court or any judicial, regulatory or administrative body having jurisdiction in Canada, the United States, Barbados, the British Virgin Islands, Cayman Islands, Hong Kong, the People's Republic of

China or in any other foreign jurisdiction, to give effect to this Plan Sanction Order and to assist SFC, the Monitor and their respective agents in carrying out the terms of this Plan Sanction Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to SFC and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Plan Sanction Order, to grant representative status to the Monitor in any foreign proceeding, or to assist SFC and the Monitor and their respective agents in carrying out the terms of this Plan Sanction Order.

61.     **THIS COURT ORDERS** that each of SFC and the Monitor shall, following consultation with Goodmans LLP, be at liberty, and is hereby authorized and empowered, to make such further applications, motions or proceedings to or before such other courts and judicial, regulatory and administrative bodies, and take such steps in Canada, the United States of America, the British Virgin Islands, Cayman Islands, Hong Kong, the People's Republic of China or in any other foreign jurisdiction, as may be necessary or advisable to give effect to this Plan Sanction Order and any other Order granted by this Court, including for recognition of this Plan Sanction Order and for assistance in carrying out its terms.

62.     **THIS COURT ORDERS** that this Plan Sanction Order shall be posted on the Monitor's Website at http://cfcanada.fticonsulting.com/sfc and only be required to be served upon the parties on the Service List and those parties who appeared at the hearing of the motion for this Plan Sanction Order.

63.     **THIS COURT ORDERS AND DECLARES** that any conflict or inconsistency between the Plan and this Plan Sanction Order shall be governed by the terms, conditions and provisions of the Plan, which shall take precedence and priority.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

DEC 1 2 2012

## Schedule "A"

Court File No. CV-12-9667-00CL

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE AND ARRANGEMENT OF SINO-FOREST CORPORATION

APPLICANT

---

PLAN OF COMPROMISE AND REORGANIZATION

pursuant to the *Companies' Creditors Arrangement Act*
and the *Canada Business Corporations Act*
concerning, affecting and involving

SINO-FOREST CORPORATION

---

December 3, 2012

ARTICLE 1 INTERPRETATION ..................................................................... 4
    1.1    Definitions................................................................................... 4
    1.2    Certain Rules of Interpretation................................................. 25
    1.3    Currency.................................................................................... 26
    1.4    Successors and Assigns............................................................. 26
    1.5    Governing Law.......................................................................... 26
    1.6    Schedule "A" ............................................................................ 26

ARTICLE 2 PURPOSE AND EFFECT OF THE PLAN.................................... 26
    2.1    Purpose...................................................................................... 26
    2.2    Claims Affected ........................................................................ 27
    2.3    Unaffected Claims against SFC Not Affected .......................... 27
    2.4    Insurance................................................................................... 27
    2.5    Claims Procedure Order............................................................ 29

ARTICLE 3 CLASSIFICATION, VOTING AND RELATED MATTERS ............ 29
    3.1    Claims Procedure ..................................................................... 29
    3.2    Classification............................................................................. 29
    3.3    Unaffected Creditors................................................................. 29
    3.4    Creditors' Meeting .................................................................... 29
    3.5    Approval by Creditors.............................................................. 30

ARTICLE 4 DISTRIBUTIONS, PAYMENTS AND TREATMENT OF CLAIMS.................. 30
    4.1    Affected Creditors..................................................................... 30
    4.2    Unaffected Creditors................................................................. 30
    4.3    Early Consent Noteholders....................................................... 31
    4.4    Noteholder Class Action Claimants.......................................... 31
    4.5    Equity Claimants....................................................................... 34
    4.6    Claims of the Trustees and Noteholders .................................. 34
    4.7    Claims of the Third Party Defendants ...................................... 34
    4.8    Defence Costs ........................................................................... 34
    4.9    D&O Claims ............................................................................. 35
    4.10   Intercompany Claims................................................................ 36
    4.11   Entitlement to Litigation Trust Interests .................................. 37
    4.12   Litigation Trust Claims............................................................. 37
    4.13   Multiple Affected Claims ......................................................... 38
    4.14   Interest....................................................................................... 38
    4.15   Existing Shares.......................................................................... 39
    4.16   Canadian Exempt Plans ............................................................ 39

ARTICLE 5 DISTRIBUTION MECHANICS ................................................... 39
    5.1    Letters of Instruction................................................................ 39
    5.2    Distribution Mechanics with respect to Newco Shares and Newco Notes.......... 40
    5.3    Allocation of Litigation Trust Interests.................................... 44
    5.4    Treatment of Undeliverable Distributions ............................... 45
    5.5    Procedure for Distributions Regarding Unresolved Claims ................... 45

5.6     Tax Refunds ..................................................................................... 47
5.7     Final Distributions from Reserves .................................................. 47
5.8     Other Payments and Distributions ................................................. 48
5.9     Note Indentures to Remain in Effect Solely for Purpose of Distributions .......... 48
5.10    Assignment of Claims for Distribution Purposes .......................... 48
5.11    Withholding Rights .......................................................................... 49
5.12    Fractional Interests .......................................................................... 50
5.13    Further Direction of the Court ........................................................ 50

ARTICLE 6 RESTRUCTURING TRANSACTION ........................................... 50
6.1     Corporate Actions ............................................................................ 50
6.2     Incorporation of Newco and Newco II ........................................... 50
6.3     Incorporation of SFC Escrow Co..................................................... 51
6.4     Plan Implementation Date Transactions ......................................... 52
6.5     Cancellation of Existing Shares and Equity Interests ..................... 58
6.6     Transfers and Vesting Free and Clear.............................................. 59

ARTICLE 7 RELEASES ........................................................................................ 60
7.1     Plan Releases .................................................................................... 60
7.2     Claims Not Released ........................................................................ 63
7.3     Injunctions........................................................................................ 64
7.4     Timing of Releases and Injunctions................................................. 64
7.5     Equity Class Action Claims Against the Third Party Defendants ...... 64

ARTICLE 8 COURT SANCTION ........................................................................ 65
8.1     Application for Sanction Order........................................................ 65
8.2     Sanction Order ................................................................................. 65

ARTICLE 9 CONDITIONS PRECEDENT AND IMPLEMENTATION................ 69
9.1     Conditions Precedent to Implementation of the Plan ..................... 69
9.2     Monitor's Certificate of Plan Implementation ............................... 75

ARTICLE 10 ALTERNATIVE SALE TRANSACTION...................................... 76
10.1    Alternative Sale Transaction............................................................ 76

ARTICLE 11 SETTLEMENT OF CLAIMS AGAINST THIRD PARTY DEFENDANTS...... 77
11.1    Ernst & Young ................................................................................. 77
11.2    Named Third Party Defendants ....................................................... 78

ARTICLE 12 GENERAL........................................................................................ 79
12.1    Binding Effect.................................................................................. 79
12.2    Waiver of Defaults ........................................................................... 79
12.3    Deeming Provisions ......................................................................... 80
12.4    Non-Consummation.......................................................................... 80
12.5    Modification of the Plan .................................................................. 81
12.6    Actions and Approvals of SFC after Plan Implementation ............ 81
12.7    Consent of the Initial Consenting Noteholders............................... 82

12.8    Claims Not Subject to Compromise ................................................................. 82
12.9    Paramountcy ..................................................................................................... 83
12.10  Foreign Recognition........................................................................................... 83
12.11  Severability of Plan Provisions......................................................................... 83
12.12  Responsibilities of the Monitor.......................................................................... 84
12.13  Different Capacities ........................................................................................... 84
12.14  Notices ................................................................................................................ 84
12.15  Further Assurances............................................................................................. 86

## PLAN OF COMPROMISE AND REORGANIZATION

**WHEREAS** Sino-Forest Corporation ("**SFC**") is insolvent;

**AND WHEREAS,** on March 30, 2012 (the "**Filing Date**"), the Honourable Justice Morawetz of the Ontario Superior Court of Justice (Commercial List) (the "**Court**") granted an initial Order in respect of SFC (as such Order may be amended, restated or varied from time to time, the "**Initial Order**") pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") and the *Canada Business Corporation Act*, R.S.C. 1985, c. C-44, as amended (the "**CBCA**");

**AND WHEREAS,** on August 31, 2012, the Court granted a Plan Filing and Meeting Order (as such Order may be amended, restated or varied from time to time, the "**Meeting Order**") pursuant to which, among other things, SFC was authorized to file this plan of compromise and reorganization and to convene a meeting of affected creditors to consider and vote on this plan of compromise and reorganization.

**NOW THEREFORE,** SFC hereby proposes this plan of compromise and reorganization pursuant to the CCAA and CBCA.

## ARTICLE 1
## INTERPRETATION

### 1.1    Definitions

In the Plan, unless otherwise stated or unless the subject matter or context otherwise requires:

"**2013 Note Indenture**" means the indenture dated as of July 23, 2008, by and between SFC, the entities listed as subsidiary guarantors therein, and The Bank of New York Mellon, as trustee, as amended, modified or supplemented.

"**2014 Note Indenture**" means the indenture dated as of July 27, 2009, by and between SFC, the entities listed as subsidiary guarantors therein, and Law Debenture Trust Company of New York, as trustee, as amended, modified or supplemented.

"**2016 Note Indenture**" means the indenture dated as of December 17, 2009, by and between SFC, the entities listed as subsidiary guarantors therein, and The Bank of New York Mellon, as trustee, as amended, modified or supplemented.

"**2017 Note Indenture**" means the indenture dated as of October 21, 2010, by and between SFC, the entities listed as subsidiary guarantors therein, and Law Debenture Trust Company of New York, as trustee, as amended, modified or supplemented.

"**2013 Notes**" means the aggregate principal amount of US$345,000,000 of 5.00% Convertible Senior Notes Due 2013 issued pursuant to the 2013 Note Indenture.

**"2014 Notes"** means the aggregate principal amount of US$399,517,000 of 10.25% Guaranteed Senior Notes Due 2014 issued pursuant to the 2014 Note Indenture.

**"2016 Notes"** means the aggregate principal amount of US$460,000,000 of 4.25% Convertible Senior Notes Due 2016 issued pursuant to the 2016 Note Indenture.

**"2017 Notes"** means the aggregate principal amount of US$600,000,000 of 6.25% Guaranteed Senior Notes Due 2017 issued pursuant to the 2017 Note Indenture.

**"Accrued Interest"** means, in respect of any series of Notes, all accrued and unpaid interest on such Notes, at the regular rates provided in the applicable Note Indentures, up to and including the Filing Date.

**"Administration Charge"** has the meaning ascribed thereto in the Initial Order.

**"Administration Charge Reserve"** means the cash reserve to be established by SFC on the Plan Implementation Date in the amount of $500,000 or such other amount as agreed to by the Monitor and the Initial Consenting Noteholders, which cash reserve: (i) shall be maintained and administered by the Monitor, in trust, for the purpose of paying any amounts secured by the Administration Charge; and (ii) upon the termination of the Administration Charge pursuant to the Plan, shall stand in place of the Administration Charge as security for the payment of any amounts secured by the Administration Charge.

**"Affected Claim"** means any Claim, D&O Claim or D&O Indemnity Claim that is not: an Unaffected Claim; a Section 5.1(2) D&O Claim; a Conspiracy Claim; a Continuing Other D&O Claim; a Non-Released D&O Claim; or a Subsidiary Intercompany Claim, and "Affected Claim" includes any Class Action Indemnity Claim. For greater certainty, all of the following are Affected Claims: Affected Creditor Claims; Equity Claims; Noteholder Class Action Claims (other than the Continuing Noteholder Class Action Claims); and Class Action Indemnity Claims.

**"Affected Creditor"** means a Person with an Affected Creditor Claim, but only with respect to and to the extent of such Affected Creditor Claim.

**"Affected Creditor Claim"** means any Ordinary Affected Creditor Claim or Noteholder Claim.

**"Affected Creditors Class"** has the meaning ascribed thereto in section 3.2(a) hereof.

**"Affected Creditors Equity Sub-Pool"** means an amount of Newco Shares representing 92.5% of the Newco Equity Pool.

**"Alternative Sale Transaction"** has the meaning ascribed thereto in section 10.1 hereof.

**"Alternative Sale Transaction Consideration"** has the meaning ascribed thereto in section 10.1 hereof.

**"Applicable Law"** means any applicable law, statute, order, decree, consent decree, judgment, rule, regulation, ordinance or other pronouncement having the effect of law whether in Canada,