the United States, Hong Kong, the PRC or any other country, or any domestic or foreign state, county, province, city or other political subdivision or of any Governmental Entity.

**"Auditors"** means the former auditors of SFC that are named as defendants to the Class Actions Claims, including for greater certainty Ernst & Young LLP and BDO Limited.

**"Barbados Loans"** means the aggregate amount outstanding at the date hereof pursuant to three loans made by SFC Barbados to SFC in the amounts of US$65,997,468.10 on February 1, 2011, US$59,000,000 on June 7, 2011 and US$176,000,000 on June 7, 2011.

**"Barbados Property"** has the meaning ascribed thereto in section 6.4(j) hereof.

**"BIA"** means the *Bankruptcy and Insolvency Act*, R. S. C. 1985, c. B-3.

**"Business Day"** means a day, other than Saturday, Sunday or a statutory holiday, on which banks are generally open for business in Toronto, Ontario.

**"Canadian Tax Act"** means the *Income Tax Act* (Canada) and the *Income Tax Regulations*, in each case as amended from time to time.

**"Causes of Action"** means any and all claims, actions, causes of action, demands, counterclaims, suits, rights, entitlements, litigation, arbitration, proceeding, hearing, complaint, debt, obligation, sums of money, accounts, covenants, damages, judgments, orders, including for injunctive relief or specific performance and compliance orders, expenses, executions, Encumbrances and other recoveries of whatever nature that any Person may be entitled to assert in law, equity or otherwise, whether known or unknown, foreseen or unforeseen, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly, indirectly or derivatively, existing or hereafter arising and whether pertaining to events occurring before, on or after the Filing Date.

**"CBCA"** has the meaning ascribed thereto in the recitals.

**"CCAA"** has the meaning ascribed thereto in the recitals.

**"CCAA Proceeding"** means the proceeding commenced by SFC under the CCAA on the Filing Date in the Ontario Superior Court of Justice (Commercial List) under court file number CV-12-9667-00CL.

**"Charges"** means the Administration Charge and the Directors' Charge.

**"Claim"** means any right or claim of any Person that may be asserted or made against SFC, in whole or in part, whether or not asserted or made, in connection with any indebtedness, liability or obligation of any kind whatsoever, and any interest accrued thereon or costs payable in respect thereof, including by reason of the commission of a tort (intentional or unintentional), by reason of any breach of contract or other agreement (oral or written), by reason of any breach of duty (including any legal, statutory, equitable or fiduciary duty) or by reason of any right of ownership of or title to property or assets or right to a trust or deemed trust (statutory, express,

implied, resulting, constructive or otherwise), and whether or not any indebtedness, liability or obligation is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, present or future, known or unknown, by guarantee, surety or otherwise, and whether or not any right or claim is executory or anticipatory in nature, including any right or ability of any Person (including any Directors or Officers of SFC or any of the Subsidiaries) to advance a claim for contribution or indemnity or otherwise with respect to any matter, action, cause or chose in action, whether existing at present or commenced in the future, which indebtedness, liability or obligation, and any interest accrued thereon or costs payable in respect thereof (A) is based in whole or in part on facts prior to the Filing Date, (B) relates to a time period prior to the Filing Date, or (C) is a right or claim of any kind that would be a claim provable against SFC in bankruptcy within the meaning of the BIA had SFC become bankrupt on the Filing Date, or is an Equity Claim, a Noteholder Class Action Claim against SFC, a Class Action Indemnity Claim against SFC, a Restructuring Claim or a Lien Claim, provided, however, that "Claim" shall not include a D&O Claim or a D&O Indemnity Claim.

"**Claims Bar Date**" has the meaning ascribed thereto in the Claims Procedure Order.

"**Claims Procedure**" means the procedure established for determining the amount and status of Claims, D&O Claims and D&O Indemnity Claims, including in each case any such claims that are Unresolved Claims, pursuant to the Claims Procedure Order.

"**Claims Procedure Order**" means the Order under the CCAA of the Honourable Justice Morawetz dated May 14, 2012, establishing, among other things, a claims procedure in respect of SFC and calling for claims in respect of the Subsidiaries, as such Order may be amended, restated or varied from time to time.

"**Class Action Claims**" means, collectively, any rights or claims of any kind advanced or which may subsequently be advanced in the Class Actions or in any other similar proceeding, whether a class action proceeding or otherwise, and for greater certainty includes any Noteholder Class Action Claims.

"**Class Actions**" means, collectively, the following proceedings: (i) *Trustees of the Labourers' Pension Fund of Central and Eastern Canada et al v. Sino-Forest Corporation et al.* (Ontario Superior Court of Justice, Court File No. CV-11-431153-00CP); (ii) *Guining Liu v. Sino-Forest Corporation et al.* (Quebec Superior Court, Court File No. 200-06-000132-111); (iii) *Allan Haigh v. Sino-Forest Corporation et al.* (Saskatchewan Court of Queen's Bench, Court File No. 2288 of 2011); and (iv) *David Leapard et al. v. Allen T.Y. Chan et al.* (District Court of the Southern District of New York, Court File No. 650258/2012).

"**Class Action Court**" means, with respect to the Class Action Claims, the court of competent jurisdiction that is responsible for administering the applicable Class Action Claim.

"**Class Action Indemnity Claim**" means any right or claim of any Person that may be asserted or made in whole or in part against SFC and/or any Subsidiary for indemnity, contribution, reimbursement or otherwise from or in connection with any Class Action Claim asserted against

such Person. For greater certainty, Class Action Indemnity Claims are distinct from and do not include Class Action Claims.

**"Consent Date"** means May 15, 2012.

**"Conspiracy Claim"** means any D&O Claim alleging that the applicable Director or Officer committed the tort of civil conspiracy, as defined under Canadian common law.

**"Continuing Noteholder Class Action Claim"** means any Noteholder Class Action Claim that is: (i) a Section 5.1(2) D&O Claim; (ii) a Conspiracy Claim; (iii) a Non-Released D&O Claim; (iv) a Continuing Other D&O Claim; (v) a Noteholder Class Action Claim against one or more Third Party Defendants that is not an Indemnified Noteholder Class Action Claim; (vi) the portion of an Indemnified Noteholder Class Action Claim that is permitted to continue against the Third Party Defendants, subject to the Indemnified Noteholder Class Action Limit, pursuant to section 4.4(b)(i) hereof.

**"Continuing Other D&O Claims"** has the meaning ascribed thereto in section 4.9(b) hereof.

**"Court"** has the meaning ascribed thereto in the recitals.

**"D&O Claim"** means (i) any right or claim of any Person that may be asserted or made in whole or in part against one or more Directors or Officers of SFC that relates to a Claim for which such Directors or Officers are by law liable to pay in their capacity as Directors or Officers of SFC, or (ii) any right or claim of any Person that may be asserted or made in whole or in part against one or more Directors or Officers of SFC, in that capacity, whether or not asserted or made, in connection with any indebtedness, liability or obligation of any kind whatsoever, and any interest accrued thereon or costs payable in respect thereof, including by reason of the commission of a tort (intentional or unintentional), by reason of any breach of contract or other agreement (oral or written), by reason of any breach of duty (including any legal, statutory, equitable or fiduciary duty and including, for greater certainty, any monetary administrative or other monetary penalty or claim for costs asserted against any Officer or Director of SFC by any Government Entity) or by reason of any right of ownership of or title to property or assets or right to a trust or deemed trust (statutory, express, implied, resulting, constructive or otherwise), and whether or not any indebtedness, liability or obligation, and any interest accrued thereon or costs payable in respect thereof, is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, present or future, known or unknown, by guarantee, surety or otherwise, and whether or not any right or claim is executory or anticipatory in nature, including any right or ability of any Person to advance a claim for contribution or indemnity from any such Directors or Officers of SFC or otherwise with respect to any matter, action, cause or chose in action, whether existing at present or commenced in the future, which indebtedness, liability or obligation, and any interest accrued thereon or costs payable in respect thereof (A) is based in whole or in part on facts prior to the Filing Date, or (B) relates to a time period prior to the Filing Date.

**"D&O Indemnity Claim"** means any existing or future right of any Director or Officer of SFC against SFC that arose or arises as a result of any Person filing a D&O Proof of Claim (as

defined in the Claims Procedure Order) in respect of such Director or Officer of SFC for which such Director or Officer of SFC is entitled to be indemnified by SFC.

"**Defence Costs**" has the meaning ascribed thereto in section 4.8 hereof.

"**Director**" means, with respect to SFC or any Subsidiary, anyone who is or was, or may be deemed to be or have been, whether by statute, operation of law or otherwise, a director or *de facto* director of such SFC Company.

"**Directors' Charge**" has the meaning ascribed thereto in the Initial Order.

"**Direct Registration Account**" means, if applicable, a direct registration account administered by the Transfer Agent in which those Persons entitled to receive Newco Shares and/or Newco Notes pursuant to the Plan will hold such Newco Shares and/or Newco Notes in registered form.

"**Direct Registration Transaction Advice**" means, if applicable, a statement delivered by the Monitor, the Trustees, the Transfer Agent or any such Person's agent to any Person entitled to receive Newco Shares or Newco Notes pursuant to the Plan on the Initial Distribution Date and each subsequent Distribution Date, as applicable, indicating the number of Newco Shares and/or Newco Notes registered in the name of or as directed by the applicable Person in a Direct Registration Account.

"**Direct Subsidiaries**" means, collectively, Sino-Panel Holdings Limited, Sino-Global Holdings Inc., Sino-Panel Corporation, Sino-Capital Global Inc., SFC Barbados, Sino-Forest Resources Inc. Sino-Wood Partners, Limited.

"**Distribution Date**" means the date or dates from time to time set in accordance with the provisions of the Plan to effect distributions in respect of the Proven Claims, excluding the Initial Distribution Date.

"**Distribution Escrow Position**" has the meaning ascribed thereto in section 5.2(d) hereof.

"**Distribution Record Date**" means the Plan Implementation Date, or such other date as SFC, the Monitor and the Initial Consenting Noteholders may agree.

"**DTC**" means The Depository Trust Company, or any successor thereof.

"**Early Consent Equity Sub-Pool**" means an amount of Newco Shares representing 7.5% of the Newco Equity Pool.

"**Early Consent Noteholder**" means any Noteholder that:

(a)    (i) as confirmed by the Monitor on June 12, 2012, executed the (A) RSA, (B) a support agreement with SFC and the Direct Subsidiaries in the form of the RSA or (C) a joinder agreement in the form attached as Schedule C to the RSA; (ii) provided evidence satisfactory to the Monitor in accordance with section 2(a) of the RSA of the Notes held by such Noteholder as at the Consent Date (the "**Early Consent Notes**"), as such list of Noteholders and Notes held has been verified

and is maintained by the Monitor on a confidential basis; and (iii) continues to hold such Early Consent Notes as at the Distribution Record Date; or

(b)    (i) has acquired Early Consent Notes; (ii) has signed the necessary transfer and joinder documentation as required by the RSA and has otherwise acquired such Early Consent Notes in compliance with the RSA; and (iii) continues to hold such Early Consent Notes as at the Distribution Record Date.

**"Effective Time"** means 8:00 a.m. (Toronto time) on the Plan Implementation Date or such other time on such date as SFC, the Monitor and the Initial Consenting Noteholders may agree.

**"Eligible Third Party Defendant"** means any of the Underwriters, BDO Limited and Ernst & Young (in the event that the Ernst & Young Settlement is not completed), together with any of their respective present and former affiliates, partners, associates, employees, servants, agents, contractors, directors, officers, insurers and successors, administrators, heirs and assigns (but excluding any Director or Officer and successors, administrators, heirs and assigns of any Director or Officer in their capacity as such), and any Director or Officer together with their respective successors, administrators, heirs and assigns.

**"Employee Priority Claims"** means the following Claims of employees and former employees of SFC:

(a)    Claims equal to the amounts that such employees and former employees would have been qualified to receive under paragraph 136(1)(d) of the BIA if SFC had become bankrupt on the Filing Date; and

(b)    Claims for wages, salaries, commissions or compensation for services rendered by them after the Filing Date and on or before the Plan Implementation Date.

**"Encumbrance"** means any security interest (whether contractual, statutory, or otherwise), hypothec, mortgage, trust or deemed trust (whether contractual, statutory, or otherwise), lien, execution, levy, charge, demand, action, liability or other claim, action, demand or liability of any kind whatsoever, whether proprietary, financial or monetary, and whether or not it has attached or been perfected, registered or filed and whether secured, unsecured or otherwise, including: (i) any of the Charges; and (ii) any charge, security interest or claim evidenced by registrations pursuant to the *Personal Property Security Act* (Ontario) or any other personal property registry system.

**"Equity Cancellation Date"** means the date that is the first Business Day at least 31 days after the Plan Implementation Date, or such other date as may be agreed to by SFC, the Monitor and the Initial Consenting Noteholders.

**"Equity Claim"** means a Claim that meets the definition of "equity claim" in section 2(1) of the CCAA and, for greater certainty, includes any of the following:

(a)    any claim against SFC resulting from the ownership, purchase or sale of an equity interest in SFC, including the claims by or on behalf of current or former shareholders asserted in the Class Actions;

(b)     any indemnification claim against SFC related to or arising from the claims
        described in sub-paragraph (a), including any such indemnification claims against
        SFC by or on behalf of any and all of the Third Party Defendants (other than for
        Defence Costs, unless any such claims for Defence Costs have been determined to
        be Equity Claims subsequent to the date of the Equity Claims Order); and

(c)     any other claim that has been determined to be an Equity Claim pursuant to an
        Order of the Court.

"**Equity Claimant**" means any Person having an Equity Claim, but only with respect to and to
the extent of such Equity Claim.

"**Equity Claimant Class**" has the meaning ascribed thereto in section 3.2(b).

"**Equity Claims Order**" means the Order under the CCAA of the Honourable Justice Morawetz
dated July 27, 2012, in respect of Shareholder Claims and Related Indemnity Claims against
SFC, as such terms are defined therein.

"**Equity Interest**" has the meaning set forth in section 2(1) of the CCAA.

"**Ernst & Young**" means Ernst & Young LLP (Canada), Ernst & Young Global Limited and all
other member firms thereof, and all present and former affiliates, partners, associates,
employees, servants, agents, contractors, directors, officers, insurers and successors,
administrators, heirs and assigns of each, but excludes any Director or Officer (in their capacity
as such) and successors, administrators, heirs and assigns of any Director or Officer (in their
capacity as such).

"**Ernst & Young Claim**" means any and all demands, claims, actions, Causes of Action,
counterclaims, suits, debts, sums of money, accounts, covenants, damages, judgments, orders,
including injunctive relief or specific performance and compliance orders, expenses, executions,
Encumbrances and other recoveries on account of any claim, indebtedness, liability, obligation,
demand or cause of action of whatever nature that any Person, including any Person who may
claim contribution or indemnification against or from them and also including for greater
certainty the SFC Companies, the Directors (in their capacity as such), the Officers (in their
capacity as such), the Third Party Defendants, Newco, Newco II, the directors and officers of
Newco and Newco II, the Noteholders or any Noteholder, any past, present or future holder of a
direct or indirect equity interest in the SFC Companies, any past, present or future direct or
indirect investor or security holder of the SFC Companies, any direct or indirect security holder
of Newco or Newco II, the Trustees, the Transfer Agent, the Monitor, and each and every
member (including members of any committee or governance council), present and former
affiliate, partner, associate, employee, servant, agent, contractor, director, officer, insurer and
each and every successor, administrator, heir and assign of each of any of the foregoing may or
could (at any time past present or future) be entitled to assert against Ernst & Young, including
any and all claims in respect of statutory liabilities of Directors (in their capacity as such),
Officers (in their capacity as such) and any alleged fiduciary (in any capacity) whether known or
unknown, matured or unmatured, direct or derivative, foreseen or unforeseen, suspected or
unsuspected, contingent or not contingent, existing or hereafter arising, based in whole or in part

on any act or omission, transaction, dealing or other occurrence existing or taking place on, prior to or after the Ernst & Young Settlement Date relating to, arising out of or in connection with the SFC Companies, the SFC Business, any Director or Officer (in their capacity as such) and/or professional services performed by Ernst & Young or any other acts or omissions of Ernst & Young in relation to the SFC Companies, the SFC Business, any Director or Officer (in their capacity as such), including for greater certainty but not limited to any claim arising out of:

(a)     all audit, tax, advisory and other professional services provided to the SFC Companies or related to the SFC Business up to the Ernst & Young Settlement Date, including for greater certainty all audit work performed, all auditors' opinions and all consents in respect of all offering of SFC securities and all regulatory compliance delivered in respect of all fiscal periods and all work related thereto up to and inclusing the Ernst & Young Settlement Date;

(b)     all claims advanced or which could have been advanced in any or all of the Class Actions;

(c)     all claims advanced or which could have been advanced in any or all actions commenced in all jurisdictions prior the Ernst & Young Settlement Date; or

(d)     all Noteholder Claims, Litigation Trust Claims or any claim of the SFC Companies,

provided that "Ernst & Young Claim" does not include any proceedings or remedies that may be taken against Ernst & Young by the Ontario Securities Commission or by staff of the Ontario Securities Commission, and the jurisdiction of the Ontario Securities Commission and staff of the Ontario Securities Commission in relation to Ernst & Young under the Securities Act, R.S.O. 1990, c. S-5 is expressly preserved.

"**Ernst & Young Orders**" has the meaning ascribed thereto in section 11.1(a) hereof.

"**Ernst & Young Release**" means the release described in 11.1(b) hereof.

"**Ernst & Young Settlement**" means the settlement as reflected in the Minutes of Settlement executed on November 29, 2012 between Ernst & Young LLP, on behalf of itself and Ernst & Young Global Limited and all member firms thereof and the plaintiffs in Ontario Superior Court Action No. CV-11-4351153-00CP and in Quebec Superior Court No. 200-06-00132-111, and such other documents contemplated thereby.

"**Ernst & Young Settlement Date**" means the date that the Monitor's Ernst & Young Settlement Certificate is delivered to Ernst & Young.

"**Excluded Litigation Trust Claims**" has the meaning ascribed thereto in section 4.12(a) hereof.

"**Excluded SFC Assets**" means (i) the rights of SFC to be transferred to the Litigation Trust in accordance with section 6.4(o) hereof; (ii) any entitlement to insurance proceeds in respect of Insured Claims, Section 5.1(2) D&O Claims and/or Conspiracy Claims; (iii) any secured property of SFC that is to be returned in satisfaction of a Lien Claim pursuant to section 4.2(c)(i)

hereof; (iv) any input tax credits or other refunds received by SFC after the Effective Time; and (v) cash in the aggregate amount of (and for the purpose of): (A) the Litigation Funding Amount; (B) the Unaffected Claims Reserve; (C) the Administration Charge Reserve; (D) the Expense Reimbursement and the other payments to be made pursuant to section 6.4(d) hereof (having regard to the application of any outstanding retainers, as applicable); (E) any amounts in respect of Lien Claims to be paid in accordance with section 4.2(c)(ii) hereof; and (F) the Monitor's Post-Implementation Reserve; (vi) any office space, office furniture or other office equipment owned or leased by SFC in Canada; (vii) the SFC Escrow Co. Share; (viii) Newco Promissory Note 1; and (ix) Newco Promissory Note 2.

**"Existing Shares"** means all existing shares in the equity of SFC issued and outstanding immediately prior to the Effective Time and all warrants, options or other rights to acquire such shares, whether or not exercised as at the Effective Time.

**"Expense Reimbursement"** means the aggregate amount of (i) the reasonable and documented fees and expenses of the Noteholder Advisors, pursuant to their respective engagement letters with SFC, and other advisors as may be agreed to by SFC and the Initial Consenting Noteholders and (ii) the reasonable fees and expenses of the Initial Consenting Noteholders incurred in connection with the negotiation and development of the RSA and this Plan, including in each case an estimated amount for any such fees and expenses expected to be incurred in connection with the implementation of the Plan, including in the case of (ii) above, an aggregate work fee of up to $5 million (which work fee may, at the request of the Monitor, be paid by any of the Subsidiaries instead of SFC).

**"Filing Date"** has the meaning ascribed thereto in the recitals.

**"Fractional Interests"** has the meaning given in section 5.12 hereof.

**"FTI HK"** means FTI Consulting (Hong Kong) Limited.

**"Governmental Entity"** means any government, regulatory authority, governmental department, agency, commission, bureau, official, minister, Crown corporation, court, board, tribunal or dispute settlement panel or other law, rule or regulation-making organization or entity: (a) having or purporting to have jurisdiction on behalf of any nation, province, territory or state or any other geographic or political subdivision of any of them; or (b) exercising, or entitled or purporting to exercise any administrative, executive, judicial, legislative, policy, regulatory or taxing authority or power.

**"Government Priority Claims"** means all Claims of Governmental Entities in respect of amounts that were outstanding as of the Plan Implementation Date and that are of a kind that could be subject to a demand under:

(a)     subsections 224(1.2) of the Canadian Tax Act;

(b)     any provision of the *Canada Pension Plan* or the *Employment Insurance Act* (Canada) that refers to subsection 224(1.2) of the Canadian Tax Act and provides for the collection of a contribution, as defined in the *Canada Pension Plan*, or employee's premium or employer's premium as defined in the *Employment*

*Insurance Act* (Canada), or a premium under Part VII.1 of that Act, and of any related interest, penalties or other amounts; or

(c)    any provision of provincial legislation that has a similar purpose to subsection 224(1.2) of the Canadian Tax Act, or that refers to that subsection, to the extent that it provides for the collection of a sum, and of any related interest, penalties or other amounts, where the sum:

    (i)    has been withheld or deducted by a person from a payment to another person and is in respect of a tax similar in nature to the income tax imposed on individuals under the Canadian Tax Act; or

    (ii)    is of the same nature as a contribution under the *Canada Pension Plan* if the province is a "province providing a comprehensive pension plan" as defined in subsection 3(1) of the *Canada Pension Plan* and the provincial legislation establishes a "provincial pension plan" as defined in that subsection.

"**Greenheart**" means Greenheart Group Limited, a company established under the laws of Bermuda.

"**Indemnified Noteholder Class Action Claims**" has the meaning ascribed thereto in section 4.4(b)(i) hereof.

"**Indemnified Noteholder Class Action Limit**" means $150 million or such lesser amount agreed to by SFC, the Monitor, the Initial Consenting Noteholders and counsel to the Ontario Class Action Plaintiffs prior to the Plan Implementation Date or agreed to by the Initial Consenting Noteholders and counsel to the Class Action Plaintiffs after the Plan Implementation Date.

"**Initial Consenting Noteholders**" means, subject to section 12.7 hereof, the Noteholders that executed the RSA on March 30, 2012.

"**Initial Distribution Date**" means a date no more than ten (10) Business Days after the Plan Implementation Date or such other date as SFC, the Monitor and the Initial Consenting Noteholders may agree.

"**Initial Newco Shareholder**" means a Person to be determined by the Initial Consenting Noteholders prior to the Effective Time, with the consent of SFC and the Monitor, to serve as the initial sole shareholder of Newco pursuant to section 6.2(a) hereof.

"**Initial Order**" has the meaning ascribed thereto in the recitals.

"**Insurance Policies**" means, collectively, the following insurance policies, as well as any other insurance policy pursuant to which SFC or any Director or Officer is insured: ACE INA Insurance Policy Number DO024464; Chubb Insurance Company of Canada Policy Number 8209-4449; Lloyds of London, England Policy Number XTFF0420; Lloyds of London, England

Policy Number XTFF0373; and Travelers Guarantee Company of Canada Policy Number 10181108, and "**Insurance Policy**" means any one of the Insurance Policies.

"**Insured Claim**" means all or that portion of any Claim for which SFC is insured and all or that portion of any D&O Claim for which the applicable Director or Officer is insured, in each case pursuant to any of the Insurance Policies.

"**Intellectual Property**" means: (i) patents, and applications for patents, including divisional and continuation patents; (ii) registered and unregistered trade-marks, logos and other indicia of origin, pending trade-mark registration applications, and proposed use application or similar reservations of marks, and all goodwill associated therewith; (iii) registered and unregistered copyrights, including all copyright in and to computer software programs, and applications for and registration of such copyright (including all copyright in and to the SFC Companies' websites); (iv) world wide web addresses and internet domain names, applications and reservations for world wide web addresses and internet domain names, uniform resource locators and the corresponding internet sites; (v) industrial designs; and (vi) trade secrets and proprietary information not otherwise listed in (i) through (v) above, including all inventions (whether or not patentable), invention disclosures, moral and economic rights of authors and inventors (however denominated), confidential information, technical data, customer lists, corporate and business names, trade names, trade dress, brand names, know-how, formulae, methods (whether or not patentable), designs, processes, procedures, technology, business methods, source codes, object codes, computer software programs (in either source code or object code form), databases, data collections and other proprietary information or material of any type, and all derivatives, improvements and refinements thereof, howsoever recorded, or unrecorded.

"**Letter of Instruction**" means a form, to be completed by each Ordinary Affected Creditor and each Early Consent Noteholder, and that is to be delivered to the Monitor in accordance with section 5.1 hereof, which form shall set out:

    (a)    the registration details for the Newco Shares and, if applicable, Newco Notes to be distributed to such Ordinary Affected Creditor or Early Consent Noteholder in accordance with the Plan; and

    (b)    the address to which such Ordinary Affected Creditor's or Early Consent Noteholder's Direct Registration Transaction Advice or its Newco Share Certificates and Newco Note Certificates, as applicable, are to be delivered.

"**Lien Claim**" means any Proven Claim of a Person indicated as a secured creditor in Schedule "B" to the Initial Order (other than the Trustees) that is secured by a lien or encumbrance on any property of SFC, which lien is valid, perfected and enforceable pursuant to Applicable Law, provided that the Charges and any Claims in respect of Notes shall not constitute "Lien Claims".

"**Lien Claimant**" means a Person having a Lien Claim, other than any Noteholder or Trustee in respect of any Noteholder Claim.

"**Litigation Funding Amount**" means the cash amount of $1,000,000 to be advanced by SFC to the Litigation Trustee for purposes of funding the Litigation Trust on the Plan Implementation Date in accordance with section 6.4(o) hereof.

"**Litigation Funding Receivable**" has the meaning ascribed thereto in section 6.4(o) hereof.

"**Litigation Trust**" means the trust to be established on the Plan Implementation Date at the time specified in section 6.4(p) in accordance with the Litigation Trust Agreement pursuant to the laws of a jurisdiction that is acceptable to SFC and the Initial Consenting Noteholders, which trust will acquire the Litigation Trust Claims and will be funded with the Litigation Funding Amount in accordance with the Plan and the Litigation Trust Agreement.

"**Litigation Trust Agreement**" means the trust agreement dated as of the Plan Implementation Date, between SFC and the Litigation Trustee, establishing the Litigation Trust.

"**Litigation Trust Claims**" means any Causes of Action that have been or may be asserted by or on behalf of: (a) SFC against any and all third parties; or (b) the Trustees (on behalf of the Noteholders) against any and all Persons in connection with the Notes issued by SFC; provided, however, that in no event shall the Litigation Trust Claims include any (i) claim, right or cause of action against any Person that is released pursuant to Article 7 hereof or (ii) any Excluded Litigation Trust Claim. For greater certainty: (x) the claims being advanced or that are subsequently advanced in the Class Actions are not being transferred to the Litigation Trust; and (y) the claims transferred to the Litigation Trust shall not be advanced in the Class Actions.

"**Litigation Trust Interests**" means the beneficial interests in the Litigation Trust to be created on the Plan Implementation Date.

"**Litigation Trustee**" means a Person to be determined by SFC and the Initial Consenting Noteholders prior to the Effective Time, with the consent of the Monitor, to serve as trustee of the Litigation Trust pursuant to and in accordance with the terms thereof.

"**Material**" means a fact, circumstance, change, effect, matter, action, condition, event, occurrence or development that, individually or in the aggregate, is, or would reasonably be expected to be, material to the business, affairs, results of operations or financial condition of the SFC Companies (taken as a whole).

"**Material Adverse Effect**" means a fact, event, change, occurrence, circumstance or condition that, individually or together with any other event, change or occurrence, has or would reasonably be expected to have a material adverse impact on the assets, condition (financial or otherwise), business, liabilities, obligations (whether absolute, accrued, conditional or otherwise) or operations of the SFC Companies (taken as a whole); provided, however, that a Material Adverse Effect shall not include and shall be deemed to exclude the impact of any fact, event, change, occurrence, circumstance or condition resulting from or relating to: (A) changes in Applicable Laws of general applicability or interpretations thereof by courts or Governmental Entities or regulatory authorities, which changes do not have a Material disproportionate effect on the SFC Companies (taken as a whole), (B) any change in the forestry industry generally, which does not have a Material disproportionate effect on the SFC Companies (taken as a whole) (relative to other industry participants operating primarily in the PRC), (C) actions and omissions

of any of the SFC Companies required pursuant to the RSA or this Plan or taken with the prior written consent of the Initial Consenting Noteholders, (D) the effects of compliance with the RSA or this Plan, including on the operating performance of the SFC Companies, (E) the negotiation, execution, delivery, performance, consummation, potential consummation or public announcement of the RSA or this Plan or the transactions contemplated thereby or hereby, (F) any change in U.S. or Canadian interest rates or currency exchange rates unless such change has a Material disproportionate effect on the SFC Companies (taken as a whole), and (G) general political, economic or financial conditions in Canada, the United States, Hong Kong or the PRC, which changes do not have a Material disproportionate effect on the SFC Companies (taken as a whole).

"**Meeting**" means the meeting of Affected Creditors, and any adjournment or extension thereof, that is called and conducted in accordance with the Meeting Order for the purpose of considering and voting on the Plan.

"**Meeting Order**" has the meaning ascribed thereto in the recitals.

"**Monitor**" means FTI Consulting Canada Inc., in its capacity as Court-appointed Monitor of SFC in the CCAA Proceeding.

"**Monitor's Post-Implementation Reserve**" means the cash reserve to be established by SFC on the Plan Implementation Date in the amount of $5,000,000 or such other amount as may be agreed by SFC, the Monitor and the Initial Consenting Noteholders, which cash reserve shall be maintained and administered by the Monitor for the purpose of administering SFC and the Claims Procedure, as necessary, from and after the Plan Implementation Date.

"**Monitor's Ernst & Young Settlement Certificate**" has the meaning ascribed thereto in section 11.1(a) hereof.

"**Monitor's Named Third Party Settlement Certificate**" has the meaning ascribed thereto in section 11.2(b) hereof.

"**Named Directors and Officers**" means Andrew Agnew, William E. Ardell, James Bowland, Leslie Chan, Michael Cheng, Lawrence Hon, James M.E. Hyde, Richard M. Kimel, R. John (Jack) Lawrence, Jay A. Lefton, Edmund Mak, Tom Maradin, Judson Martin, Simon Murray, James F. O'Donnell, William P. Rosenfeld, Peter Donghong Wang, Garry West and Kee Y. Wong, in their respective capacities as Directors or Officers, and "**Named Director or Officer**" means any one of them.

"**Named Third Party Defendant Settlement**" means a binding settlement between any applicable Named Third Party Defendant and one or more of: (i) the plaintiffs in any of the Class Actions; and (ii) the Litigation Trustee (on behalf of the Litigation Trust) (if after the Plan Implementation Date), provided that, in each case, such settlement must be acceptable to SFC (if on or prior to the Plan Implementation Date), the Monitor, the Initial Consenting Noteholders (if on or prior to the Plan Implementation Date) and the Litigation Trustee (if after the Plan Implementation Date), and provided further that such settlement shall not affect the plaintiffs in the Class Actions without the consent of counsel to the Ontario Class Action Plaintiffs.

**"Named Third Party Defendant Settlement Order"** means a court order approving a Named Third Party Defendant Settlement in form and in substance satisfactory to the applicable Named Third Party Defendant, SFC (if occurring on or prior to the Plan Implementation Date), the Monitor, the Initial Consenting Noteholders (if on or prior to the Plan Implementation Date), the Litigation Trustee (if after the Plan Implementation Date) and counsel to the Ontario Class Action Plaintiffs (if the plaintiffs in any of the Class Actions are affected by the applicable Named Third Party Defendant Settlement).

**"Named Third Party Defendant Release"** means a release of any applicable Named Third Party Defendant agreed to pursuant to a Named Third Party Defendant Settlement and approved pursuant to a Named Third Party Defendant Settlement Order, provided that such release must be acceptable to SFC (if on or prior to the Plan Implementation Date), the Monitor, the Initial Consenting Noteholders (if on or prior to the Plan Implementation Date) and the Litigation Trustee (if after the Plan Implementation Date), and provided further that such release shall not affect the plaintiffs in the Class Actions without the consent of counsel to the Ontario Class Action Plaintiffs.

**"Named Third Party Defendants"** means the Third Party Defendants listed on Schedule "A" to the Plan in accordance with section 11.2(a) hereof, provided that only Eligible Third Party Defendants may become Named Third Party Defendants.

**"Newco"** means the new corporation to be incorporated pursuant to section 6.2(a) hereof under the laws of the Cayman Islands or such other jurisdiction as agreed to by SFC, the Monitor and the Initial Consenting Noteholders.

**"Newco II"** means the new corporation to be incorporated pursuant to section 6.2(b) hereof under the laws of the Cayman Islands or such other jurisdiction as agreed to by SFC, the Monitor and the Initial Consenting Noteholders.

**"Newco II Consideration"** has the meaning ascribed thereto in section 6.4(x) hereof.

**"Newco Equity Pool"** means all of the Newco Shares to be issued by Newco on the Plan Implementation Date. The number of Newco Shares to be issued on the Plan Implementation Date shall be agreed by SFC, the Monitor and the Initial Consenting Noteholders prior to the Plan Implementation Date.

**"Newco Note Certificate"** means a certificate evidencing Newco Notes.

**"Newco Notes"** means the new notes to be issued by Newco on the Plan Implementation Date in the aggregate principal amount of $300,000,000, on such terms and conditions as are satisfactory to the Initial Consenting Noteholders and SFC, acting reasonably.

**"Newco Promissory Note 1"**, **"Newco Promissory Note 2"**, **"Newco Promissory Note 3"** and **"Newco Promissory Notes"** have the meanings ascribed thereto in sections 6.4(k), 6.4(m), 6.4(n) and 6.4(q) hereof, respectively.

**"Newco Share Certificate"** means a certificate evidencing Newco Shares.

"**Newco Shares**" means common shares in the capital of Newco.

"**Non-Released D&O Claims**" has the meaning ascribed thereto in section 4.9(f) hereof.

"**Noteholder Advisors**" means Goodmans LLP, Hogan Lovells and Conyers, Dill & Pearman LLP in their capacity as legal advisors to the Initial Consenting Noteholders, and Moelis & Company LLC and Moelis and Company Asia Limited, in their capacity as the financial advisors to the Initial Consenting Noteholders.

"**Noteholder Claim**" means any Claim by a Noteholder (or a Trustee or other representative on the Noteholder's behalf) in respect of or in relation to the Notes owned or held by such Noteholder, including all principal and Accrued Interest payable to such Noteholder pursuant to such Notes or the Note Indentures, but for greater certainty does not include any Noteholder Class Action Claim.

"**Noteholder Class Action Claim**" means any Class Action Claim, or any part thereof, against SFC, any of the Subsidiaries, any of the Directors and Officers of SFC or the Subsidiaries, any of the Auditors, any of the Underwriters and/or any other defendant to the Class Action Claims that relates to the purchase, sale or ownership of Notes, but for greater certainty does not include a Noteholder Claim.

"**Noteholder Class Action Claimant**" means any Person having or asserting a Noteholder Class Action Claim.

"**Noteholder Class Action Representative**" means an individual to be appointed by counsel to the Ontario Class Action Plaintiffs.

"**Noteholders**" means, collectively, the beneficial owners of Notes as of the Distribution Record Date and, as the context requires, the registered holders of Notes as of the Distribution Record Date, and "**Noteholder**" means any one of the Noteholders.

"**Note Indentures**" means, collectively, the 2013 Note Indenture, the 2014 Note Indenture, the 2016 Note Indenture and the 2017 Note Indenture.

"**Notes**" means, collectively, the 2013 Notes, the 2014 Notes, the 2016 Notes and the 2017 Notes.

"**Officer**" means, with respect to SFC or any Subsidiary, anyone who is or was, or may be deemed to be or have been, whether by statute, operation of law or otherwise, an officer or *de facto* officer of such SFC Company.

"**Ontario Class Action Plaintiffs**" means the plaintiffs in the Ontario class action case styled as *Trustees of the Labourers' Pension Fund of Central and Eastern Canada et al v. Sino-Forest Corporation et al.* (Ontario Superior Court of Justice, Court File No. CV-11-431153-00CP).

"**Order**" means any order of the Court made in connection with the CCAA Proceeding or this Plan.

"**Ordinary Affected Creditor**" means a Person with an Ordinary Affected Creditor Claim.

"**Ordinary Affected Creditor Claim**" means a Claim that is not: an Unaffected Claim; a Noteholder Claim; an Equity Claim; a Subsidiary Intercompany Claim; a Noteholder Class Action Claim; or a Class Action Indemnity Claim (other than a Class Action Indemnity Claim by any of the Third Party Defendants in respect of the Indemnified Noteholder Class Action Claims).

"**Other Directors and/or Officers**" means any Directors and/or Officers other than the Named Directors and Officers.

"**Permitted Continuing Retainer**" has the meaning ascribed thereto in section 6.4(d) hereof.

"**Person**" means any individual, sole proprietorship, limited or unlimited liability corporation, partnership, unincorporated association, unincorporated syndicate, unincorporated organization, body corporate, joint venture, trust, pension fund, union, Governmental Entity, and a natural person including in such person's capacity as trustee, heir, beneficiary, executor, administrator or other legal representative.

"**Plan**" means this Plan of Compromise and Reorganization (including all schedules hereto) filed by SFC pursuant to the CCAA and the CBCA, as it may be further amended, supplemented or restated from time to time in accordance with the terms hereof or an Order.

"**Plan Implementation Date**" means the Business Day on which this Plan becomes effective, which shall be the Business Day on which the Monitor has filed with the Court the certificate contemplated in section 9.2 hereof, or such other date as SFC, the Monitor and the Initial Consenting Noteholders may agree.

"**PRC**" means the People's Republic of China.

"**Proof of Claim**" means the "Proof of Claim" referred to in the Claims Procedure Order, substantially in the form attached to the Claims Procedure Order.

"**Pro-Rata**" means:

(a)    with respect to any Noteholder in relation to all Noteholders, the proportion of (i) the principal amount of Notes beneficially owned by such Noteholder as of the Distribution Record Date plus the Accrued Interest owing on such Notes as of the Filing Date, in relation to (ii) the aggregate principal amount of all Notes outstanding as of the Distribution Record Date plus the aggregate of all Accrued Interest owing on all Notes as of the Filing Date;

(b)    with respect to any Early Consent Noteholder in relation to all Early Consent Noteholders, the proportion of the principal amount of Early Consent Notes beneficially owned by such Early Consent Noteholder as of the Distribution Record Date in relation to the aggregate principal amount of Early Consent Notes held by all Early Consent Noteholders as of the Distribution Record Date; and

(c)    with respect to any Affected Creditor in relation to all Affected Creditors, the proportion of such Affected Creditor's Affected Creditor Claim as at any relevant time in relation to the aggregate of all Proven Claims and Unresolved Claims of Affected Creditors as at that time.

**"Proven Claim"** means an Affected Creditor Claim to the extent that such Affected Creditor Claim is finally determined and valued in accordance with the provisions of the Claims Procedure Order, the Meeting Order or any other Order, as applicable.

**"Released Claims"** means all of the rights, claims and liabilities of any kind released pursuant to Article 7 hereof.

**"Released Parties"** means, collectively, those Persons released pursuant to Article 7 hereof, but only to the extent so released, and each such Person is referred to individually as a **"Released Party"**.

**"Required Majority"** means a majority in number of Affected Creditors with Proven Claims, and two-thirds in value of the Proven Claims held by such Affected Creditors, in each case who vote (in person or by proxy) on the Plan at the Meeting.

**"Remaining Post-Implementation Reserve Amount"** has the meaning ascribed thereto in section 5.7(b) hereof.

**"Restructuring Claim"** means any right or claim of any Person that may be asserted or made in whole or in part against SFC, whether or not asserted or made, in connection with any indebtedness, liability or obligation of any kind arising out of the restructuring, termination, repudiation or disclaimer of any lease, contract, or other agreement or obligation on or after the Filing Date and whether such restructuring, termination, repudiation or disclaimer took place or takes place before or after the date of the Claims Procedure Order.

**"Restructuring Transaction"** means the transactions contemplated by this Plan (including any Alternative Sale Transaction that occurs pursuant to section 10.1 hereof).

**"RSA"** means the Restructuring Support Agreement executed as of March 30, 2012 by SFC, the Direct Subsidiaries and the Initial Consenting Noteholders, and subsequently executed or otherwise agreed to by the Early Consent Noteholders, as such Restructuring Support Agreement may be amended, restated and varied from time to time in accordance with its terms.

**"Sanction Date"** means the date that the Sanction Order is granted by the Court.

**"Sanction Order"** means the Order of the Court sanctioning and approving this Plan.

**"Section 5.1(2) D&O Claim"** means any D&O Claim that is not permitted to be compromised pursuant to section 5.1(2) of the CCAA, but only to the extent not so permitted, provided that any D&O Claim that qualifies as a Non-Released D&O Claim or a Continuing Other D&O Claim shall not constitute a Section 5.1(2) D&O Claim.

**"Settlement Trust"** has the meaning ascribed thereto in section 11.1(a) hereof.

"**Settlement Trust Order**" means a court order that establishes the Settlement Trust and approves the Ernst & Young Settlement and the Ernst & Young Release, in form and in substance satisfactory to Ernst & Young and counsel to the Ontario Class Action Plaintiffs, provided that such order shall also be acceptable to SFC (if occurring on or prior to the Plan Implementation Date), the Monitor and the Initial Consenting Noteholders, as applicable, to the extent, if any, that such order affects SFC, the Monitor or the Initial Consenting Noteholders, each acting reasonably.

"**SFC**" has the meaning ascribed thereto in the recitals.

"**SFC Advisors**" means Bennett Jones LLP, Appleby Global Group, King & Wood Mallesons and Linklaters LLP, in their respective capacities as legal advisors to SFC, and Houlihan Lokey Howard & Zukin Capital, Inc., in its capacity as financial advisor to SFC.

"**SFC Assets**" means all of SFC's right, title and interest in and to all of SFC's properties, assets and rights of every kind and description (including all restricted and unrestricted cash, contracts, real property, receivables or other debts owed to SFC, Intellectual Property, SFC's corporate name and all related marks, all of SFC's ownership interests in the Subsidiaries (including all of the shares of the Direct Subsidiaries and any other Subsidiaries that are directly owned by SFC immediately prior to the Effective Time), all of SFC's ownership interest in Greenheart and its subsidiaries, all SFC Intercompany Claims, any entitlement of SFC to any insurance proceeds and a right to the Remaining Post-Implementation Reserve Amount), other than the Excluded SFC Assets.

"**SFC Barbados**" means Sino-Forest International (Barbados) Corporation, a wholly-owned subsidiary of SFC established under the laws of Barbados.

"**SFC Business**" means the business operated by the SFC Companies.

"**SFC Continuing Shareholder**" means the Litigation Trustee or such other Person as may be agreed to by the Monitor and the Initial Consenting Noteholders.

"**SFC Companies**" means, collectively, SFC and all of the Subsidiaries, and "**SFC Company**" means any of them.

"**SFC Escrow Co.**" means the company to be incorporated as a wholly-owned subsidiary of SFC pursuant to section 6.3 hereof under the laws of the Cayman Islands or such other jurisdiction as agreed to by SFC, the Monitor and the Initial Consenting Noteholders.

"**SFC Escrow Co. Share**" has the meaning ascribed thereto in section 6.3 hereof.

"**SFC Intercompany Claim**" means any amount owing to SFC by any Subsidiary or Greenheart and any claim by SFC against any Subsidiary or Greenheart.

"**Subsidiaries**" means all direct and indirect subsidiaries of SFC, other than (i) Greenheart and its direct and indirect subsidiaries and (ii) SFC Escrow Co., and "**Subsidiary**" means any one of the Subsidiaries.

"**Subsidiary Intercompany Claim**" means any Claim by any Subsidiary or Greenheart against SFC.

"**Tax**" or "**Taxes**" means any and all federal, provincial, municipal, local and foreign taxes, assessments, reassessments and other governmental charges, duties, impositions and liabilities including for greater certainty taxes based upon or measured by reference to income, gross receipts, profits, capital, transfer, land transfer, sales, goods and services, harmonized sales, use, value-added, excise, withholding, business, franchising, property, development, occupancy, employer health, payroll, employment, health, social services, education and social security taxes, all surtaxes, all customs duties and import and export taxes, all licence, franchise and registration fees and all employment insurance, health insurance and government pension plan premiums or contributions, together with all interest, penalties, fines and additions with respect to such amounts.

"**Taxing Authorities**" means any one of Her Majesty the Queen, Her Majesty the Queen in right of Canada, Her Majesty the Queen in right of any province or territory of Canada, the Canada Revenue Agency, any similar revenue or taxing authority of Canada and each and every province or territory of Canada and any political subdivision thereof, any similar revenue or taxing authority of the United States, the PRC, Hong Kong or other foreign state and any political subdivision thereof, and any Canadian, United States, Hong Kong, PRC or other government, regulatory authority, government department, agency, commission, bureau, minister, court, tribunal or body or regulation-making entity exercising taxing authority or power, and "**Taxing Authority**" means any one of the Taxing Authorities.

"**Third Party Defendants**" means any defendants to the Class Action Claims (present or future) other than SFC, the Subsidiaries, the Named Directors and Officers or the Trustees.

"**Transfer Agent**" means Computershare Limited (or a subsidiary or affiliate thereof) or such other transfer agent as Newco may appoint, with the prior written consent of the Monitor and the Initial Consenting Noteholders.

"**Trustee Claims**" means any rights or claims of the Trustees against SFC under the Note Indentures for compensation, fees, expenses, disbursements or advances, including reasonable legal fees and expenses, incurred or made by or on behalf of the Trustees before or after the Plan Implementation Date in connection with the performance of their respective duties under the Note Indentures or this Plan.

"**Trustees**" means, collectively, The Bank of New York Mellon in its capacity as trustee for the 2013 Notes and the 2016 Notes, and Law Debenture Trust Company of New York in its capacity as trustee for the 2014 Notes and the 2017 Notes, and "**Trustee**" means either one of them.

"**Unaffected Claim**" means any:

      (a)     Claim secured by the Administration Charge;

      (b)     Government Priority Claim;

      (c)     Employee Priority Claim;

(d)    Lien Claim;

(e)    any other Claim of any employee, former employee, Director or Officer of SFC in respect of wages, vacation pay, bonuses, termination pay, severance pay or other remuneration payable to such Person by SFC, other than any termination pay or severance pay payable by SFC to a Person who ceased to be an employee, Director or Officer of SFC prior to the date of this Plan;

(f)    Trustee Claims; and

(g)    any trade payables that were incurred by SFC (i) after the Filing Date but before the Plan Implementation Date; and (ii) in compliance with the Initial Order or other Order issued in the CCAA Proceeding.

"**Unaffected Claims Reserve**" means the cash reserve to be established by SFC on the Plan Implementation Date and maintained by the Monitor, in escrow, for the purpose of paying certain Unaffected Claims in accordance with section 4.2 hereof.

"**Unaffected Creditor**" means a Person who has an Unaffected Claim, but only in respect of and to the extent of such Unaffected Claim.

"**Undeliverable Distribution**" has the meaning ascribed thereto in section 5.4.

"**Underwriters**" means any underwriters of SFC that are named as defendants in the Class Action Claims, including for greater certainty Credit Suisse Securities (Canada), Inc., TD Securities Inc., Dundee Securities Corporation, RBC Dominion Securities Inc., Scotia Capital Inc., CIBC World Markets Inc., Merrill Lynch Canada Inc., Canaccord Financial Ltd., Maison Placements Canada Inc., Credit Suisse Securities (USA) LLC and Merrill Lynch, Pierce, Fenner & Smith Incorporated (successor by merger to Banc of America Securities LLC).

"**Unresolved Claim**" means an Affected Creditor Claim in respect of which a Proof of Claim has been filed in a proper and timely manner in accordance with the Claims Procedure Order but that, as at any applicable time, has not been finally (i) determined to be a Proven Claim or (ii) disallowed in accordance with the Claims Procedure Order, the Meeting Order or any other Order.

"**Unresolved Claims Escrow Agent**" means SFC Escrow Co. or such other Person as may be agreed by SFC, the Monitor and the Initial Consenting Noteholders.

"**Unresolved Claims Reserve**" means the reserve of Newco Shares, Newco Notes and Litigation Trust Interests, if any, to be established pursuant to sections 6.4(h)(ii) and 6.4(r) hereof in respect of Unresolved Claims as at the Plan Implementation Date, which reserve shall be held and maintained by the Unresolved Claims Escrow Agent, in escrow, for distribution in accordance with the Plan. As at the Plan Implementation Date, the Unresolved Claims Reserve will consist of that amount of Newco Shares, Newco Notes and Litigation Trust Interests as is necessary to make any potential distributions under the Plan in respect of the following Unresolved Claims: (i) Class Action Indemnity Claims in an amount up to the Indemnified Noteholder Class Action Limit; (ii) Claims in respect of Defence Costs in the amount of $30 million or such other amount

as may be agreed by the Monitor and the Initial Consenting Noteholders; and (iii) other Affected Creditor Claims that have been identified by the Monitor as Unresolved Claims in an amount up to $500,000 or such other amount as may be agreed by the Monitor and the Initial Consenting Noteholders.

"**Website**" means the website maintained by the Monitor in respect of the CCAA Proceeding pursuant to the Initial Order at the following web address: http://cfcanada.fticonsulting.com/sfc.

## 1.2    Certain Rules of Interpretation

For the purposes of the Plan:

(a)    any reference in the Plan to an Order, agreement, contract, instrument, indenture, release, exhibit or other document means such Order, agreement, contract, instrument, indenture, release, exhibit or other document as it may have been or may be validly amended, modified or supplemented;

(b)    the division of the Plan into "articles" and "sections" and the insertion of a table of contents are for convenience of reference only and do not affect the construction or interpretation of the Plan, nor are the descriptive headings of "articles" and "sections" intended as complete or accurate descriptions of the content thereof;

(c)    unless the context otherwise requires, words importing the singular shall include the plural and *vice versa*, and words importing any gender shall include all genders;

(d)    the words "includes" and "including" and similar terms of inclusion shall not, unless expressly modified by the words "only" or "solely", be construed as terms of limitation, but rather shall mean "includes but is not limited to" and "including but not limited to", so that references to included matters shall be regarded as illustrative without being either characterizing or exhaustive;

(e)    unless otherwise specified, all references to time herein and in any document issued pursuant hereto mean local time in Toronto, Ontario and any reference to an event occurring on a Business Day shall mean prior to 5:00 p.m. (Toronto time) on such Business Day;

(f)    unless otherwise specified, time periods within or following which any payment is to be made or act is to be done shall be calculated by excluding the day on which the period commences and including the day on which the period ends and by extending the period to the next succeeding Business Day if the last day of the period is not a Business Day;

(g)    unless otherwise provided, any reference to a statute or other enactment of parliament or a legislature includes all regulations made thereunder, all amendments to or re-enactments of such statute or regulations in force from time

to time, and, if applicable, any statute or regulation that supplements or supersedes such statute or regulation; and

(h)     references to a specified "article" or "section" shall, unless something in the subject matter or context is inconsistent therewith, be construed as references to that specified article or section of the Plan, whereas the terms "the Plan", "hereof", "herein", "hereto", "hereunder" and similar expressions shall be deemed to refer generally to the Plan and not to any particular "article", "section" or other portion of the Plan and include any documents supplemental hereto.

## 1.3    Currency

For the purposes of this Plan, all amounts shall be denominated in Canadian dollars and all payments and distributions to be made in cash shall be made in Canadian dollars. Any Claims or other amounts denominated in a foreign currency shall be converted to Canadian dollars at the Reuters closing rate on the Filing Date.

## 1.4    Successors and Assigns

The Plan shall be binding upon and shall enure to the benefit of the heirs, administrators, executors, legal personal representatives, successors and assigns of any Person named or referred to in the Plan.

## 1.5    Governing Law

The Plan shall be governed by and construed in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable therein. All questions as to the interpretation of or application of the Plan and all proceedings taken in connection with the Plan and its provisions shall be subject to the jurisdiction of the Court.

## 1.6    Schedule "A"

Schedule "A" to the Plan is incorporated by reference into the Plan and forms part of the Plan.

## ARTICLE 2
## PURPOSE AND EFFECT OF THE PLAN

## 2.1    Purpose

The purpose of the Plan is:

(a)     to effect a full, final and irrevocable compromise, release, discharge, cancellation and bar of all Affected Claims;

(b)     to effect the distribution of the consideration provided for herein in respect of Proven Claims;

(c)     to transfer ownership of the SFC Business to Newco and then from Newco to Newco II, in each case free and clear of all claims against SFC and certain related claims against the Subsidiaries, so as to enable the SFC Business to continue on a viable, going concern basis; and

(d)     to allow Affected Creditors and Noteholder Class Action Claimants to benefit from contingent value that may be derived from litigation claims to be advanced by the Litigation Trustee.

The Plan is put forward in the expectation that the Persons with an economic interest in SFC, when considered as a whole, will derive a greater benefit from the implementation of the Plan and the continuation of the SFC Business as a going concern than would result from a bankruptcy or liquidation of SFC.

## 2.2    Claims Affected

The Plan provides for, among other things, the full, final and irrevocable compromise, release, discharge, cancellation and bar of Affected Claims and effectuates the restructuring of SFC. The Plan will become effective at the Effective Time on the Plan Implementation Date, other than such matters occurring on the Equity Cancellation Date (if the Equity Cancellation date does not occur on the Plan Implementation Date) which will occur and be effective on such date, and the Plan shall be binding on and enure to the benefit of SFC, the Subsidiaries, Newco, Newco II, SFC Escrow Co., any Person having an Affected Claim, the Directors and Officers of SFC and all other Persons named or referred to in, or subject to, the Plan, as and to the extent provided for in the Plan.

## 2.3    Unaffected Claims against SFC Not Affected

Any amounts properly owing by SFC in respect of Unaffected Claims will be satisfied in accordance with section 4.2 hereof. Consistent with the foregoing, all liabilities of the Released Parties in respect of Unaffected Claims (other than the obligation of SFC to satisfy such Unaffected Claims in accordance with section 4.2 hereof) will be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred pursuant to Article 7 hereof. Nothing in the Plan shall affect SFC's rights and defences, both legal and equitable, with respect to any Unaffected Claims, including all rights with respect to legal and equitable defences or entitlements to set-offs or recoupments against such Unaffected Claims.

## 2.4    Insurance

(a)     Subject to the terms of this section 2.4, nothing in this Plan shall prejudice, compromise, release, discharge, cancel, bar or otherwise affect any right, entitlement or claim of any Person against SFC or any Director or Officer, or any insurer, in respect of an Insurance Policy or the proceeds thereof.

(b)     Nothing in this Plan shall prejudice, compromise, release or otherwise affect any right or defence of any such insurer in respect of any such Insurance Policy. Furthermore, nothing in this Plan shall prejudice, compromise, release or otherwise affect (i)  any right of subrogation any such insurer may have against

any Person, including against any Director or Officer in the event of a determination of fraud against SFC or any Director or Officer in respect of whom such a determination is specifically made, and /or (ii) the ability of such insurer to claim repayment of Defense Costs (as defined in any such policy) from SFC and/or any Director or Officer in the event that the party from whom repayment is sought is not entitled to coverage under the terms and conditions of any such Insurance Policy

(c)   Notwithstanding anything herein (including section 2.4(b) and the releases and injunctions set forth in Article 7 hereof), but subject to section 2.4(d) hereof, all Insured Claims shall be deemed to remain outstanding and are not released following the Plan Implementation Date, but recovery as against SFC and the Named Directors and Officers is limited only to proceeds of Insurance Policies that are available to pay such Insured Claims, either by way of judgment or settlement. SFC and the Directors or Officers shall make all reasonable efforts to meet all obligations under the Insurance Policies. The insurers agree and acknowledge that they shall be obliged to pay any Loss payable pursuant to the terms and conditions of their respective Insurance Policies notwithstanding the releases granted to SFC and the Named Directors and Officers under this Plan, and that they shall not rely on any provisions of the Insurance Policies to argue, or otherwise assert, that such releases excuse them from, or relieve them of, the obligation to pay Loss that otherwise would be payable under the terms of the Insurance Policies. For greater certainty, the insurers agree and consent to a direct right of action against the insurers, or any of them, in favour of any plaintiff who or which has (a) negotiated a settlement of any Claim covered under any of the Insurance Policies, which settlement has been consented to in writing by the insurers or such of them as may be required or (b) obtained a final judgment against one or more of SFC and/or the Directors or Officers which such plaintiff asserts, in whole or in part, represents Loss covered under the Insurance Policies, notwithstanding that such plaintiff is not a named insured under the Insurance Policies and that neither SFC nor the Directors or Officers are parties to such action.

(d)   Notwithstanding anything in this section 2.4, from and after the Plan Implementation Date, any Person having an Insured Claim shall, as against SFC and the Named Directors and Officers, be irrevocably limited to recovery solely from the proceeds of the Insurance Policies paid or payable on behalf of SFC or its Directors or Officers, and Persons with any Insured Claims shall have no right to, and shall not, directly or indirectly, make any claim or seek any recoveries from SFC, any of the Named Directors and Officers, any of the Subsidiaries, Newco or Newco II, other than enforcing such Person's rights to be paid from the proceeds of an Insurance Policy by the applicable insurer(s), and this section 2.4(d) may be relied upon and raised or pled by SFC, Newco, Newco II, any Subsidiary and any Named Director and Officer in defence or estoppel of or to enjoin any claim, action or proceeding brought in contravention of this section

## 2.5   Claims Procedure Order

For greater certainty, nothing in this Plan revives or restores any right or claim of any kind that is barred or extinguished pursuant to the terms of the Claims Procedure Order, provided that nothing in this Plan, the Claims Procedure Order or any other Order compromises, releases, discharges, cancels or bars any claim against any Person for fraud or criminal conduct, regardless of whether or not any such claim has been asserted to date.

# ARTICLE 3
# CLASSIFICATION, VOTING AND RELATED MATTERS

## 3.1   Claims Procedure

The procedure for determining the validity and quantum of the Affected Claims shall be governed by the Claims Procedure Order, the Meeting Order, the CCAA, the Plan and any other Order, as applicable. SFC, the Monitor and any other creditor in respect of its own Claim, shall have the right to seek the assistance of the Court in valuing any Claim, whether for voting or distribution purposes, if required, and to ascertain the result of any vote on the Plan.

## 3.2   Classification

(a)   The Affected Creditors shall constitute a single class, the "**Affected Creditors Class**", for the purposes of considering and voting on the Plan.

(b)   The Equity Claimants shall constitute a single class, separate from the Affected Creditors Class, but shall not, and shall have no right to, attend the Meeting or vote on the Plan in such capacity.

## 3.3   Unaffected Creditors

No Unaffected Creditor, in respect of an Unaffected Claim, shall:

(a)   be entitled to vote on the Plan;

(b)   be entitled to attend the Meeting; or

(c)   receive any entitlements under this Plan in respect of such Unaffected Creditor's Unaffected Claims (other than its right to have its Unaffected Claim addressed in accordance with section 4.2 hereof).

## 3.4   Creditors' Meeting

The Meeting shall be held in accordance with the Plan, the Meeting Order and any further Order of the Court. The only Persons entitled to attend and vote on the Plan at the Meeting are those specified in the Meeting Order.

### 3.5    Approval by Creditors

In order to be approved, the Plan must receive the affirmative vote of the Required Majority of the Affected Creditors Class.

## ARTICLE 4
## DISTRIBUTIONS, PAYMENTS AND TREATMENT OF CLAIMS

### 4.1    Affected Creditors

All Affected Creditor Claims shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred on the Plan Implementation Date. Each Affected Creditor that has a Proven Claim shall be entitled to receive the following in accordance with the Plan:

(a)    such Affected Creditor's Pro-Rata number of the Newco Shares to be issued by Newco from the Affected Creditors Equity Sub-Pool in accordance with the Plan;

(b)    such Affected Creditor's Pro-Rata amount of the Newco Notes to be issued by Newco in accordance with the Plan; and

(c)    such Affected Creditor's Pro-Rata share of the Litigation Trust Interests to be allocated to the Affected Creditors in accordance with 4.11 hereof and the terms of the Litigation Trust.

From and after the Plan Implementation Date, each Affected Creditor, in such capacity, shall have no rights as against SFC in respect of its Affected Creditor Claim.

### 4.2    Unaffected Creditors

Each Unaffected Claim that is finally determined as such, as to status and amount, and that is finally determined to be valid and enforceable against SFC, in each case in accordance with the Claims Procedure Order or other Order:

(a)    subject to sections 4.2(b) and 4.2(c) hereof, shall be paid in full from the Unaffected Claims Reserve and limited to recovery against the Unaffected Claims Reserve, and Persons with Unaffected Claims shall have no right to, and shall not, make any claim or seek any recoveries from any Person in respect of Unaffected Claims, other than enforcing such Person's right against SFC to be paid from the Unaffected Claims Reserve;

(b)    in the case of Claims secured by the Administration Charge:

(i)    if billed or invoiced to SFC prior to the Plan Implementation Date, such Claims shall be paid by SFC in accordance with section 6.4(d) hereof; and

(ii)    if billed or invoiced to SFC on or after the Plan Implementation Date, such Claims shall be paid from the Administration Charge Reserve, and all such

Claims shall be limited to recovery against the Administration Charge Reserve, and any Person with such Claims shall have no right to, and shall not, make any claim or seek any recoveries from any Person in respect of such Claims, other than enforcing such Person's right against the Administration Charge Reserve; and

(c)   in the case of Lien Claims:

(i)   at the election of the Initial Consenting Noteholders, and with the consent of the Monitor, SFC shall satisfy such Lien Claim by the return of the applicable property of SFC that is secured as collateral for such Lien Claim, and the applicable Lien Claimant shall be limited to its recovery against such secured property in respect of such Lien Claim.

(ii)   if the Initial Consenting Noteholders do not elect to satisfy such Lien Claim by the return of the applicable secured property: (A) SFC shall repay the Lien Claim in full in cash on the Plan Implementation Date; and (B) the security held by the applicable Lien Claimant over the property of SFC shall be fully, finally, irrevocably and forever released, discharged, cancelled and barred; and

(iii)   upon the satisfaction of a Lien Claim in accordance with sections 4.2(c)(i) or 4.2(c)(ii) hereof, such Lien Claims shall be fully, finally, irrevocably and forever released, discharged, cancelled and barred.

**4.3   Early Consent Noteholders**

As additional consideration for the compromise, release, discharge, cancellation and bar of the Affected Creditor Claims in respect of its Notes, each Early Consent Noteholder shall receive (in addition to the consideration it is entitled to receive in accordance with section 4.1 hereof) its Pro-Rata number of the Newco Shares to be issued by Newco from the Early Consent Equity Sub-Pool in accordance with the Plan.

**4.4   Noteholder Class Action Claimants**

(a)   All Noteholder Class Action Claims against SFC, the Subsidiaries or the Named Directors or Officers (other than any Noteholder Class Action Claims against the Named Directors or Officers that are Section 5.1(2) D&O Claims, Conspiracy Claims or Non-Released D&O Claims) shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred without consideration as against all said Persons on the Plan Implementation Date. Subject to section 4.4(f) hereof, Noteholder Class Action Claimants shall not receive any consideration or distributions under the Plan in respect of their Noteholder Class Action Claims. Noteholder Class Action Claimants shall not be entitled to attend or to vote on the Plan at the Meeting in respect of their Noteholder Class Action Claims.

(b)  Notwithstanding anything to the contrary in section 4.4(a), Noteholder Class
Action Claims as against the Third Party Defendants (x) are not compromised,
discharged, released, cancelled or barred, (y) shall be permitted to continue as
against the Third Party Defendants and (z) shall not be limited or restricted by this
Plan in any manner as to quantum or otherwise (including any collection or
recovery for such Noteholder Class Action Claims that relates to any liability of
the Third Party Defendants for any alleged liability of SFC), provided that:

   (i)   in accordance with the releases set forth in Article 7 hereof, the collective
aggregate amount of all rights and claims asserted or that may be asserted
against the Third Party Defendants in respect of any such Noteholder
Class Action Claims for which any such Persons in each case have a valid
and enforceable Class Action Indemnity Claim against SFC (the
**"Indemnified Noteholder Class Action Claims"**) shall not exceed, in the
aggregate, the Indemnified Noteholder Class Action Limit, and in
accordance with section 7.3 hereof, all Persons shall be permanently and
forever barred, estopped, stayed and enjoined, on and after the Effective
Time, from seeking to enforce any liability in respect of the Indemnified
Noteholder Class Action Claims that exceeds the Indemnified Noteholder
Class Action Limit;

   (ii)  subject to section 4.4(g), any Class Action Indemnity Claims against SFC
by the Third Party Defendants in respect of the Indemnified Noteholder
Class Action Claims shall be treated as Affected Creditor Claims against
SFC, but only to the extent that any such Class Action Indemnity Claims
that are determined to be properly indemnified by SFC, enforceable
against SFC and are not barred or extinguished by the Claims Procedure
Order, and further provided that the aggregate liability of SFC in respect
of all such Class Action Indemnity Claims shall be limited to the lesser of:
(A) the actual aggregate liability of the Third Party Defendants pursuant to
any final judgment, settlement or other binding resolution in respect of the
Indemnified Noteholder Class Action Claims; and (B) the Indemnified
Noteholder Class Action Limit; and

   (iii) for greater certainty, in the event that any Third Party Defendant is found
to be liable for or agrees to a settlement in respect of a Noteholder Class
Action Claim (other than a Noteholder Class Action Claim for fraud or
criminal conduct) and such amounts are paid by or on behalf of the
applicable Third Party Defendant, then the amount of the Indemnified
Noteholder Class Action Limit applicable to the remaining Third Party
Defendants shall be reduced by the amount paid in respect of such
Noteholder Class Action Claim, as applicable.

(c)  Subject to section 7.1(o), the Claims of the Underwriters for indemnification in
respect of any Noteholder Class Action Claims (other than Noteholder Class
Action Claims against the Underwriters for fraud or criminal conduct) shall, for
purposes of the Plan, be deemed to be valid and enforceable Class Action

Indemnity Claims against SFC (as limited pursuant to section 4.4(b) hereof), provided that: (i) the Underwriters shall not be entitled to receive any distributions of any kind under the Plan in respect of such Claims; (ii) such Claims shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred on the Plan Implementation Date; and (iii) the amount of such Claims shall not affect the calculation of any Pro-Rata entitlements of the Affected Creditors under this Plan. For greater certainty, to the extent of any conflict with respect to the Underwriters between section 4.4(e) hereof and this section 4.4(c), this section 4.4(c) shall prevail.

(d)     Subject to section 7.1(m), any and all indemnification rights and entitlements of Ernst & Young at common law and any and all indemnification agreements between Ernst & Young and SFC shall be deemed to be valid and enforceable in accordance with their terms for the purpose of determining whether the Claims of Ernst & Young for indemnification in respect of Noteholder Class Action Claims are valid and enforceable within the meaning of section 4.4(b) hereof. With respect to Claims of Ernst & Young for indemnification in respect of Noteholder Class Action Claims that are valid and enforceable: (i) Ernst & Young shall not be entitled to receive any distributions of any kind under the Plan in respect of such Claims; (ii) such Claims shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred on the Plan Implementation Date; and (iii) the amount of such Claims shall not affect the calculation of any Pro-Rata entitlements of the Affected Creditors under this Plan.

(e)     Subject to section 7.1(n), any and all indemnification rights and entitlements of the Named Third Party Defendants at common law and any and all indemnification agreements between the Named Third Party Defendants and SFC shall be deemed to be valid and enforceable in accordance with their terms for the purpose of determining whether the Claims of the Named Third Party Defendants for indemnification in respect of Noteholder Class Action Claims are valid and enforceable within the meaning of section 4.4(b) hereof. With respect to Claims of the Named Third Party Defendants for indemnification in respect of Noteholder Class Action Claims that are valid and enforceable: (i) the Named Third Party Defendants shall not be entitled to receive any distributions of any kind under the Plan in respect of such Claims; (ii) such Claims shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred on the Plan Implementation Date; and (iii) the amount of such Claims shall not affect the calculation of any Pro-Rata entitlements of the Affected Creditors under this Plan.

(f)     Each Noteholder Class Action Claimant shall be entitled to receive its share of the Litigation Trust Interests to be allocated to Noteholder Class Action Claimants in accordance with the terms of the Litigation Trust and section 4.11 hereof, as such Noteholder Class Action Claimant's share is determined by the applicable Class Action Court.

(g)     Nothing in this Plan impairs, affects or limits in any way the ability of SFC, the Monitor or the Initial Consenting Noteholders to seek or obtain an Order, whether before or after the Plan Implementation Date, directing that Class Action Indemnity Claims in respect of Noteholder Class Action Claims or any other Claims of the Third Party Defendants should receive the same or similar treatment as is afforded to Class Action Indemnity Claims in respect of Equity Claims under the terms of this Plan.

## 4.5    Equity Claimants

All Equity Claims shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred on the Plan Implementation Date.  Equity Claimants shall not receive any consideration or distributions under the Plan and shall not be entitled to vote on the Plan at the Meeting.

## 4.6    Claims of the Trustees and Noteholders

For purposes of this Plan, all claims filed by the Trustees in respect of the Noteholder Claims (other than any Trustee Claims) shall be treated as provided in section 4.1 and the Trustees and the Noteholders shall have no other entitlements in respect of the guarantees and share pledges that have been provided by the Subsidiaries, or any of them, all of which shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred on the Plan Implementation Date as against the Subsidiaries pursuant to Article 7 hereof.

## 4.7    Claims of the Third Party Defendants

For purposes of this Plan, all claims filed by the Third Party Defendants against SFC and/or any of its Subsidiaries shall be treated as follows:

(a)     all such claims against the Subsidiaries shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred on the Plan Implementation Date in accordance with Article 7 hereof;

(b)     all such claims against SFC that are Class Action Indemnity Claims in respect of Indemnified Noteholder Class Action Claims shall be treated as set out in section 4.4(b)(ii) hereof;

(c)     all such claims against SFC for indemnification of Defence Costs shall be treated in accordance with section 4.8 hereof; and

(d)     all other claims shall be treated as Equity Claims.

## 4.8    Defence Costs

All Claims against SFC for indemnification of defence costs incurred by any Person (other than a Named Director or Officer) in connection with defending against Shareholder Claims (as defined in the Equity Claims Order), Noteholder Class Action Claims or any other

claims of any kind relating to SFC or the Subsidiaries ("**Defence Costs**") shall be treated as follows:

(a)    as Equity Claims to the extent they are determined to be Equity Claims under any Order; and

(b)    as Affected Creditor Claims to the extent that they are not determined to be Equity Claims under any Order, provided that:

    (i)    if such Defence Costs were incurred in respect of a claim against the applicable Person that has been successfully defended and the Claim for such Defence Costs is otherwise valid and enforceable against SFC, the Claim for such Defence Costs shall be treated as a Proven Claim, provided that if such Claim for Defence Costs is a Class Action Indemnity Claim of a Third Party Defendant against SFC in respect of any Indemnified Noteholder Class Action Claim, such Claim for Defence Costs shall be treated in the manner set forth in section 4.4(b)(ii) hereof;

    (ii)    if such Defence Costs were incurred in respect of a claim against the applicable Person that has not been successfully defended or such Defence Costs are determined not to be valid and enforceable against SFC, the Claim for such Defence Costs shall be disallowed and no consideration will be payable in respect thereof under the Plan; and

    (iii)    until any such Claim for Defence Costs is determined to be either a Claim within section 4.8(b)(i) or a Claim within section 4.8(b)(ii), such Claim shall be treated as an Unresolved Claim,

provided that nothing in this Plan impairs, affects or limits in any way the ability of SFC, the Monitor or the Initial Consenting Noteholders to seek an Order that Claims against SFC for indemnification of any Defence Costs should receive the same or similar treatment as is afforded to Equity Claims under the terms of this Plan.

### 4.9    D&O Claims

(a)    All D&O Claims against the Named Directors and Officers (other than Section 5.1(2) D&O Claims, Conspiracy Claims and Non-Released D&O Claims) shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred without consideration on the Plan Implementation Date.

(b)    All D&O Claims against the Other Directors and/or Officers shall not be compromised, released, discharged, cancelled or barred by this Plan and shall be permitted to continue as against the applicable Other Directors and/or Officers (the "**Continuing Other D&O Claims**"), provided that any Indemnified Noteholder Class Action Claims against the Other Directors and/or Officers shall be limited as described in section 4.4(b)(i) hereof.

(c)     All D&O Indemnity Claims and any other rights or claims for indemnification held by the Named Directors and Officers shall be deemed to have no value and shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred without consideration on the Plan Implementation Date.

(d)     All D&O Indemnity Claims and any other rights or claims for indemnification held by the Other Directors and/or Officers shall be deemed to have no value and shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred without consideration on the Plan Implementation Date, except that: (i) any such D&O Indemnity Claims for Defence Costs shall be treated in accordance with section 4.8 hereof; and (ii) any Class Action Indemnity Claim of an Other Director and/or Officer against SFC in respect of the Indemnified Noteholder Class Action Claims shall be treated in the manner set forth in section 4.4(b)(ii) hereof.

(e)     All Section 5.1(2) D&O Claims and all Conspiracy Claims shall not be compromised, released, discharged, cancelled or barred by this Plan, provided that any Section 5.1(2) D&O Claims against Named Directors and Officers and any Conspiracy Claims against Named Directors and Officers shall be limited to recovery from any insurance proceeds payable in respect of such Section 5.1(2) D&O Claims or Conspiracy Claims, as applicable, pursuant to the Insurance Policies, and Persons with any such Section 5.1(2) D&O Claims against Named Directors and Officers or Conspiracy Claims against Named Directors and Officers shall have no right to, and shall not, make any claim or seek any recoveries from any Person (including SFC, any of the Subsidiaries, Newco or Newco II), other than enforcing such Persons' rights to be paid from the proceeds of an Insurance Policy by the applicable insurer(s).

(f)     All D&O Claims against the Directors and Officers of SFC or the Subsidiaries for fraud or criminal conduct shall not be compromised, discharged, released, cancelled or barred by this Plan and shall be permitted to continue as against all applicable Directors and Officers (**"Non-Released D&O Claims"**).

(g)     Notwithstanding anything to the contrary herein, from and after the Plan Implementation Date, a Person may only commence an action for a Non-Released D&O Claim against a Named Director or Officer if such Person has first obtained (i) the consent of the Monitor or (ii) leave of the Court on notice to the applicable Directors and Officers, SFC, the Monitor, the Initial Consenting Noteholders and any applicable insurers. For the avoidance of doubt, the foregoing requirement for the consent of the Monitor or leave of the Court shall not apply to any Non-Released D&O Claim that is asserted against an Other Director and/or Officer.

## 4.10    Intercompany Claims

All SFC Intercompany Claims (other than those transferred to SFC Barbados pursuant to section 6.4(j) hereof or set-off pursuant to section 6.4(l) hereof) shall be deemed to be assigned by SFC to Newco on the Plan Implementation Date pursuant to section 6.4(m) hereof, and shall

then be deemed to be assigned by Newco to Newco II pursuant to section 6.4(x) hereof. The obligations of SFC to the applicable Subsidiaries and Greenheart in respect of all Subsidiary Intercompany Claims (other than those set-off pursuant to section 6.4(l) hereof) shall be assumed by Newco on the Plan Implementation Date pursuant to 6.4(m) hereof, and then shall be assumed by Newco II pursuant to section 6.4(x) hereof. Notwithstanding anything to the contrary herein, Newco II shall be liable to the applicable Subsidiaries and Greenheart for such Subsidiary Intercompany Claims and SFC shall be released from such Subsidiary Intercompany Claims from and after the Plan Implementation Date, and the applicable Subsidiaries and Greenheart shall be liable to Newco II for such SFC Intercompany Claims from and after the Plan Implementation Date. For greater certainty, nothing in this Plan affects any rights or claims as between any of the Subsidiaries, Greenheart and Greenheart's direct and indirect subsidiaries.

**4.11   Entitlement to Litigation Trust Interests**

    (a)    The Litigation Trust Interests to be created in accordance with this Plan and the Litigation Trust shall be allocated as follows:

        (i)    the Affected Creditors shall be collectively entitled to 75% of such Litigation Trust Interests; and

        (ii)    the Noteholder Class Action Claimants shall be collectively entitled to 25% of such Litigation Trust Interests,

    which allocations shall occur at the times and in the manner set forth in section 6.4 hereof and shall be recorded by the Litigation Trustee in its registry of Litigation Trust Interests.

    (b)    Notwithstanding anything to the contrary in section 4.11(a) hereof, if any of the Noteholder Class Action Claims against any of the Third Party Defendants are finally resolved (whether by final judgment, settlement or any other binding means of resolution) within two years of the Plan Implementation Date, then the Litigation Trust Interests to which the applicable Noteholder Class Action Claimants would otherwise have been entitled in respect of such Noteholder Class Action Claims pursuant to section 4.11(a)(ii) hereof (based on the amount of such resolved Noteholder Class Action Claims in proportion to all Noteholder Class Action Claims in existence as of the Claims Bar Date) shall be fully, finally, irrevocably and forever cancelled.

**4.12   Litigation Trust Claims**

    (a)    At any time prior to the Plan Implementation Date, SFC and the Initial Consenting Noteholders may agree to exclude one or more Causes of Action from the Litigation Trust Claims and/or to specify that any Causes of Action against a specified Person will not constitute Litigation Trust Claims ("**Excluded Litigation Trust Claims**"), in which case, any such Causes of Action shall not be transferred to the Litigation Trust on the Plan Implementation Date. Any such Excluded Litigation Trust Claims shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred on the Plan

Implementation Date in accordance with Article 7 hereof. All Affected Creditors shall be deemed to consent to such treatment of Excluded Litigation Trust Claims pursuant to this section 4.12(a).

(b)     All Causes of Action against the Underwriters by (i) SFC or (ii) the Trustees (on behalf of the Noteholders) shall be deemed to be Excluded Litigation Trust Claims that are fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred on the Plan Implementation Date in accordance with Article 7 hereof, provided that, unless otherwise agreed by SFC and the Initial Consenting Noteholders prior to the Plan Implementation Date in accordance with section 4.12(a) hereof, any such Causes of Action for fraud or criminal conduct shall not constitute Excluded Litigation Trust Claims and shall be transferred to the Litigation Trust in accordance with section 6.4(o) hereof.

(c)     At any time from and after the Plan Implementation Date, and subject to the prior consent of the Initial Consenting Noteholders and the terms of the Litigation Trust Agreement, the Litigation Trustee shall have the right to seek and obtain an order from any court of competent jurisdiction, including an Order of the Court in the CCAA or otherwise, that gives effect to any releases of any Litigation Trust Claims agreed to by the Litigation Trustee in accordance with the Litigation Trust Agreement, including a release that fully, finally, irrevocably and forever compromises, releases, discharges, cancels and bars the applicable Litigation Trust Claims as if they were Excluded Litigation Trust Claims released in accordance with Article 7 hereof. All Affected Creditors shall be deemed to consent to any such treatment of any Litigation Trust Claims pursuant to this section 4.12(b).

**4.13    Multiple Affected Claims**

On the Plan Implementation Date, any and all liabilities for and guarantees and indemnities of the payment or performance of any Affected Claim, Unaffected Claim, Section 5.1(2) D&O Claim, Conspiracy Claim, Continuing Other D&O Claim or Non-Released D&O Claim by any of the Subsidiaries, and any purported liability for the payment or performance of such Affected Claim, Unaffected Claim, Section 5.1(2) D&O Claim, Conspiracy Claim, Continuing Other D&O Claim or Non-Released D&O Claim by Newco or Newco II, will be deemed eliminated and cancelled, and no Person shall have any rights whatsoever to pursue or enforce any such liabilities for or guarantees or indemnities of the payment or performance of any such Affected Claim, Unaffected Claim, Section 5.1(2) D&O Claim, Conspiracy Claim, Continuing Other D&O Claim or Non-Released D&O Claim against any Subsidiary, Newco or Newco II.

**4.14    Interest**

Subject to section 12.4 hereof, no holder of an Affected Claim shall be entitled to interest accruing on or after the Filing Date.

### 4.15    Existing Shares

Holders of Existing Shares and Equity Interests shall not receive any consideration or distributions under the Plan in respect thereof and shall not be entitled to vote on the Plan at the Meeting. Unless otherwise agreed between the Monitor, SFC and the Initial Consenting Noteholders, all Existing Shares and Equity Interests shall be fully, finally and irrevocably cancelled in accordance with and at the time specified in section 6.5 hereof.

### 4.16    Canadian Exempt Plans

If an Affected Creditor is a trust governed by a plan which is exempt from tax under Part I of the Canadian Tax Act (including, for example, a registered retirement savings plan), such Affected Creditor may make arrangements with Newco (if Newco so agrees) and the Litigation Trustee (if the Litigation Trustee so agrees) to have the Newco Shares, Newco Notes and Litigation Trust Interests to which it is entitled under this Plan directed to (or in the case of Litigation Trust Interests, registered in the name of ) an affiliate of such Affected Creditor or the annuitant or controlling person of the governing tax-deferred plan.

### ARTICLE 5
### DISTRIBUTION MECHANICS

### 5.1    Letters of Instruction

In order to issue (i) Newco Shares and Newco Notes to Ordinary Affected Creditors and (ii) Newco Shares to Early Consent Noteholders, the following steps will be taken:

(a)    with respect to Ordinary Affected Creditors with Proven Claims or Unresolved Claims:

    (i)    on the next Business Day following the Distribution Record Date, the Monitor shall send blank Letters of Instruction by prepaid first class mail, courier, email or facsimile to each such Ordinary Affected Creditor to the address of each such Ordinary Affected Creditor (as specified in the applicable Proof of Claim) as of the Distribution Record Date, or as evidenced by any assignment or transfer in accordance with section 5.10;

    (ii)    each such Ordinary Affected Creditor shall deliver to the Monitor a duly completed and executed Letter of Instruction that must be received by the Monitor on or before the date that is seven (7) Business Days after the Distribution Record Date or such other date as the Monitor may determine; and

    (iii)    any such Ordinary Affected Creditor that does not return a Letter of Instruction to the Monitor in accordance with section 5.1(a)(ii) shall be deemed to have requested that such Ordinary Affected Creditor's Newco Shares and Newco Notes be registered or distributed, as applicable, in accordance with the information set out in such Ordinary Affected Creditor's Proof of Claim; and

(b)     with respect to Early Consent Noteholders:

(i)     on the next Business Day following the Distribution Record Date the Monitor shall send blank Letters of Instruction by prepaid first class mail, courier, email or facsimile to each Early Consent Noteholder to the address of each such Early Consent Noteholder as confirmed by the Monitor on or before the Distribution Record Date;

(ii)    each Early Consent Noteholder shall deliver to the Monitor a duly completed and executed Letter of Instruction that must be received by the Monitor on or before the date that is seven (7) Business Days after the Distribution Record Date or such other date as the Monitor may determine; and

(iii)   any such Early Consent Noteholder that does not return a Letter of Instruction to the Monitor in accordance with section 5.1(b)(ii) shall be deemed to have requested that such Early Consent Noteholder's Newco Shares be distributed or registered, as applicable, in accordance with information confirmed by the Monitor on or before the Distribution Record Date.

**5.2     Distribution Mechanics with respect to Newco Shares and Newco Notes**

(a)     To effect distributions of Newco Shares and Newco Notes, the Monitor shall deliver a direction at least two (2) Business Days prior to the Initial Distribution Date to Newco or its agent, as applicable, directing Newco or its agent, as applicable, to issue on such Initial Distribution Date or subsequent Distribution Date:

(i)     in respect of the Ordinary Affected Creditors with Proven Claims:

(A)     the number of Newco Shares that each such Ordinary Affected Creditor is entitled to receive in accordance with section 4.1(a) hereof; and

(B)     the amount of Newco Notes that each such Ordinary Affected Creditor is entitled to receive in accordance with section 4.1(b) hereof,

all of which Newco Shares and Newco Notes shall be issued to such Ordinary Affected Creditors and distributed in accordance with this Article 5;

(ii)    in respect of the Ordinary Affected Creditors with Unresolved Claims:

(A)     the number of Newco Shares that each such Ordinary Affected Creditor would have been entitled to receive in accordance with section 4.1(a) hereof had such Ordinary Affected Creditor's

Unresolved Claim been a Proven Claim on the Plan Implementation Date; and

(B)    the amount of Newco Notes that each such Ordinary Affected Creditor would have been entitled to receive in accordance with section 4.1(b) hereof had such Ordinary Affected Creditor's Unresolved Claim been a Proven Claim on the Plan Implementation Date,

all of which Newco Shares and Newco Notes shall be issued in the name of the Unresolved Claims Escrow Agent for the benefit of the Persons entitled thereto under the Plan, which Newco Shares and Newco Notes shall comprise part of the Unresolved Claims Reserve and shall be held in escrow by the Unresolved Claims Escrow Agent until released and distributed in accordance with this Article 5;

(iii)    in respect of the Noteholders:

(A)    the number of Newco Shares that the Trustees are collectively required to receive such that, upon distribution to the Noteholders in accordance with this Article 5, each individual Noteholder receives the number of Newco Shares to which it is entitled in accordance with section 4.1(a) hereof; and

(B)    the amount of Newco Notes that the Trustees are collectively required to receive such that, upon distribution to the Noteholders in accordance with this Article 5, each individual Noteholder receives the amount of Newco Notes to which it is entitled in accordance with section 4.1(b) hereof,

all of which Newco Shares and Newco Notes shall be issued to such Noteholders and distributed in accordance with this Article 5; and

(iv)    in respect of Early Consent Noteholders, the number of Newco Shares that each such Early Consent Noteholder is entitled to receive in accordance with section 4.3 hereof, all of which Newco Shares shall be issued to such Early Consent Noteholders and distributed in accordance with this Article 5.

The direction delivered by the Monitor in respect of the applicable Ordinary Affected Creditors and Early Consent Noteholders shall: (A) indicate the registration and delivery details of each applicable Ordinary Affected Creditor and Early Consent Noteholder based on the information prescribed in section 5.1; and (B) specify the number of Newco Shares and, in the case of Ordinary Affected Creditors, the amount of Newco Notes to be issued to each such Person on the applicable Distribution Date. The direction delivered by the Monitor in respect of the Noteholders shall: (C) indicate that the registration and delivery details with respect to the number of Newco Shares and amount of Newco Notes

to be distributed to each Noteholder will be the same as the registration and delivery details in effect with respect to the Notes held by each Noteholder as of the Distribution Record Date; and (D) specify the number of Newco Shares and the amount of Newco Notes to be issued to each of the Trustees for purposes of satisfying the entitlements of the Noteholders set forth in sections 4.1(a) and 4.1(b) hereof. The direction delivered by the Monitor in respect of the Newco Shares and Newco Notes to be issued in the name of the Unresolved Claims Escrow Agent, for the benefit of the Persons entitled thereto under the Plan, for purposes of the Unresolved Claims Reserve shall specify the number of Newco Shares and the amount of Newco Notes to be issued in the name of the Unresolved Claims Escrow Agent for that purpose.

(b)     If the registers for the Newco Shares and/or Newco Notes are maintained by the Transfer Agent in a direct registration system (without certificates), the Monitor and/or Newco and/or the Unresolved Claims Escrow Agent, as applicable, shall, on the Initial Distribution Date or any subsequent Distribution Date, as applicable:

(i)     instruct the Transfer Agent to record, and the Transfer Agent shall record, in the Direct Registration Account of each applicable Ordinary Affected Creditor and each Early Consent Noteholder the number of Newco Shares and, in the case of Ordinary Affected Creditors, the amount of Newco Notes that are to be distributed to each such Person, and the Monitor and/or Newco and/or the Unresolved Claims Escrow Agent, as applicable, shall send or cause to be sent to each such Ordinary Affected Creditor and Early Consent Noteholder a Direct Registration Transaction Advice based on the delivery information as determined pursuant to section 5.1; and

(ii)     with respect to the distribution of Newco Shares and/or Newco Notes to Noteholders:

(A)     if the Newco Shares and/or Newco Notes are DTC eligible, the Monitor and/or Newco and/or the Unresolved Claims Escrow Agent, as applicable, shall instruct the Transfer Agent to register, and the Transfer Agent shall register, the applicable Newco Shares and/or Newco Notes in the name of DTC (or its nominee) for the benefit of the Noteholders, and the Trustees shall provide their consent to DTC to the distribution of such Newco Shares and Newco Notes to the applicable Noteholders, in the applicable amounts, through the facilities of DTC in accordance with customary practices and procedures; and

(B)     if the Newco Shares and/or Newco Notes are not DTC eligible, the Monitor and/or Newco and/or the Unresolved Claims Escrow Agent, as applicable, shall instruct the Transfer Agent to register the applicable Newco Shares and/or Newco Notes in the Direct Registration Accounts of the applicable Noteholders pursuant to the registration instructions obtained through DTC and the DTC

participants (by way of a letter of transmittal process or such other process as agreed by SFC, the Monitor, the Trustees and the Initial Consenting Noteholders), and the Transfer Agent shall (A) register such Newco Shares and/or Newco Notes, in the applicable amounts, in the Direct Registration Accounts of the applicable Noteholders; and (B) send or cause to be sent to each Noteholder a Direct Registration Transaction Advice in accordance with customary practices and procedures; provided that the Transfer Agent shall not be permitted to effect the foregoing registrations without the prior written consent of the Trustees.

(c)     If the registers for the Newco Shares and/or Newco Notes are not maintained by the Transfer Agent in a direct registration system, Newco shall prepare and deliver to the Monitor and/or the Unresolved Claims Escrow Agent, as applicable, and the Monitor and/or the Unresolved Claims Escrow Agent, as applicable, shall promptly thereafter, on the Initial Distribution Date or any subsequent Distribution Date, as applicable:

(i)     deliver to each Ordinary Affected Creditor and each Early Consent Noteholder Newco Share Certificates and, in the case of Ordinary Affected Creditors, Newco Note Certificates representing the applicable number of Newco Shares and the applicable amount of Newco Notes that are to be distributed to each such Person; and

(ii)    with respect to the distribution of Newco Shares and/or Newco Notes to Noteholders:

(A)     if the Newco Shares and/or Newco Notes are DTC eligible, the Monitor and/or Newco and/or the Unresolved Claims Escrow Agent, as applicable, shall distribute to DTC (or its nominee), for the benefit of the Noteholders, Newco Share Certificates and/or Newco Note Certificates representing the aggregate of all Newco Shares and Newco Notes to be distributed to the Noteholders on such Distribution Date, and the Trustees shall provide their consent to DTC to the distribution of such Newco Shares and Newco Notes to the applicable Noteholders, in the applicable amounts, through the facilities of DTC in accordance with customary practices and procedures; and

(B)     if the Newco Shares and/or Newco Notes are not DTC eligible, the Monitor and/or Newco and/or the Unresolved Claims Escrow Agent, as applicable, shall distribute to the applicable Trustees, Newco Share Certificates and/or Newco Note Certificates representing the aggregate of all Newco Shares and/or Newco Notes to be distributed to the Noteholders on such Distribution Date, and the Trustees shall make delivery of such Newco Share Certificates and Newco Note Certificates, in the applicable

amounts, directly to the applicable Noteholders pursuant to the delivery instructions obtained through DTC and the DTC participants (by way of a letter of transmittal process or such other process as agreed by SFC, the Monitor, the Trustees and the Initial Consenting Noteholders), all of which shall occur in accordance with customary practices and procedures.

(d)     Upon receipt of and in accordance with written instructions from the Monitor, the Trustees shall instruct DTC to and DTC shall: (i) set up an escrow position representing the respective positions of the Noteholders as of the Distribution Record Date for the purpose of making distributions on the Initial Distribution Date and any subsequent Distribution Dates (the "**Distribution Escrow Position**"); and (ii) block any further trading of the Notes, effective as of the close of business on the day immediately preceding the Plan Implementation Date, all in accordance with DTC's customary practices and procedures.

(e)     The Monitor, Newco, Newco II, the Trustees, SFC, the Named Directors and Officers and the Transfer Agent shall have no liability or obligation in respect of deliveries by DTC (or its nominee) to the DTC participants or the Noteholders pursuant to this Article 5.

## 5.3     Allocation of Litigation Trust Interests

The Litigation Trustee shall administer the Litigation Trust Claims and the Litigation Funding Amount for the benefit of the Persons that are entitled to the Litigation Trust Interests and shall maintain a registry of such Persons as follows:

(a)     with respect to Affected Creditors:

(i)     the Litigation Trustee shall maintain a record of the amount of Litigation Trust Interests that each Ordinary Affected Creditor is entitled to receive in accordance with sections 4.1(c) and 4.11(a) hereof;

(ii)     the Litigation Trustee shall maintain a record of the aggregate amount of all Litigation Trust Interests to which the Noteholders are collectively entitled in accordance with sections 4.1(c) and 4.11(a) hereof, and if cash is distributed from the Litigation Trust to Persons with Litigation Trust Interests, the amount of such cash that is payable to the Noteholders will be distributed through the Distribution Escrow Position (such that each beneficial Noteholder will receive a percentage of such cash distribution that is equal to its entitlement to Litigation Trust Interests (as set forth in section 4.1(c) hereof) as a percentage of all Litigation Trust Interests); and

(iii)     with respect to any Litigation Trust Interests to be allocated in respect of the Unresolved Claims Reserve, the Litigation Trustee shall record such Litigation Trust Interests in the name of the Unresolved Claims Escrow Agent, for the benefit of the Persons entitled thereto in accordance with

this Plan, which shall be held by the Unresolved Claims Escrow Agent in escrow until released and distributed unless and until otherwise directed by the Monitor in accordance with this Plan;

(b)     with respect to the Noteholder Class Action Claimants, the Litigation Trustee shall maintain a record of the aggregate of all Litigation Trust Interests that the Noteholder Class Action Claimants are entitled to receive pursuant to sections 4.4(f) and 4.11(a) hereof, provided that such record shall be maintained in the name of the Noteholder Class Action Representative, to be allocated to individual Noteholder Class Action Claimants in any manner ordered by the applicable Class Action Court, and provided further that if any such Litigation Trust Interests are cancelled in accordance with section 4.11(b) hereof, the Litigation Trustee shall record such cancellation in its registry of Litigation Trust Interests.

## 5.4     Treatment of Undeliverable Distributions

If any distribution under section 5.2 or section 5.3 of Newco Shares, Newco Notes or Litigation Trust Interests is undeliverable (that is, for greater certainty, that it cannot be properly registered or delivered to the Applicable Affected Creditor because of inadequate or incorrect registration or delivery information or otherwise) (an **"Undeliverable Distribution"**), it shall be delivered to SFC Escrow Co., which shall hold such Undeliverable Distribution in escrow and administer it in accordance with this section 5.4. No further distributions in respect of an Undeliverable Distribution shall be made unless and until SFC and the Monitor are notified by the applicable Person of its current address and/or registration information, as applicable, at which time the Monitor shall direct SFC Escrow Co. to make all such distributions to such Person, and SFC Escrow Co. shall make all such distributions to such Person. All claims for Undeliverable Distributions must be made on or before the date that is six months following the final Distribution Date, after which date the right to receive distributions under this Plan in respect of such Undeliverable Distributions shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred, without any compensation therefore, notwithstanding any federal, state or provincial laws to the contrary, at which time any such Undeliverable Distributions held by SFC Escrow Co. shall be deemed to have been gifted by the owner of the Undeliverable Distribution to Newco or the Litigation Trust, as applicable, without consideration, and, in the case of Newco Shares, Newco Notes and Litigation Trust Interests, shall be cancelled by Newco and the Litigation Trustee, as applicable. Nothing contained in the Plan shall require SFC, the Monitor, SFC Escrow Co. or any other Person to attempt to locate any owner of an Undeliverable Distribution. No interest is payable in respect of an Undeliverable Distribution. Any distribution under this Plan on account of the Notes, other than any distributions in respect of Litigation Trust Interests, shall be deemed made when delivered to DTC or the applicable Trustee, as applicable, for subsequent distribution to the applicable Noteholders in accordance with section 5.2.

## 5.5     Procedure for Distributions Regarding Unresolved Claims

(a)     An Affected Creditor that has asserted an Unresolved Claim will not be entitled to receive a distribution under the Plan in respect of such Unresolved Claim or any portion thereof unless and until such Unresolved Claim becomes a Proven Claim.

(b)     Distributions in respect of any Unresolved Claim in existence at the Plan
        Implementation Date will be held in escrow by the Unresolved Claims Escrow
        Agent in the Unresolved Claims Reserve until settlement or final determination of
        the Unresolved Claim in accordance with the Claims Procedure Order, the
        Meeting Order or this Plan, as applicable.

(c)     To the extent that Unresolved Claims become Proven Claims or are finally
        disallowed, the Unresolved Claims Escrow Agent shall release from escrow and
        deliver (or in the case of Litigation Trust Interests, cause to be registered) the
        following from the Unresolved Claims Reserve (on the next Distribution Date, as
        determined by the Monitor with the consent of SFC and the Initial Consenting
        Noteholders):

        (i)     in the case of Affected Creditors whose Unresolved Claims are ultimately
                determined, in whole or in part, to be Proven Claims, the Unresolved
                Claims Escrow Agent shall release from escrow and deliver to such
                Affected Creditor that number of Newco Shares, Newco Notes and
                Litigation Trust Interests (and any income or proceeds therefrom) that
                such Affected Creditor is entitled to receive in respect of its Proven Claim
                pursuant to section 4.1 hereof;

        (ii)    in the case of Affected Creditors whose Unresolved Claims are ultimately
                determined, in whole or in part, to be disallowed, the Unresolved Claims
                Escrow Agent shall release from escrow and deliver to all Affected
                Creditors with Proven Claims the number of Newco Shares, Newco Notes
                and Litigation Trust Interests (and any income or proceeds therefrom) that
                had been reserved in the Unresolved Claims Reserve for such Affected
                Creditor whose Unresolved Claims has been disallowed, Claims such that,
                following such delivery, all of the Affected Creditors with Proven Claims
                have received the amount of Newco Shares, Newco Notes and Litigation
                Trust Interests that they are entitled to receive pursuant to section 4.1
                hereof, which delivery shall be effected in accordance with sections 5.2
                and 5.3 hereof.

(d)     As soon as practicable following the date that all Unresolved Claims have been
        finally resolved and any required distributions contemplated in section 5.5(c) have
        been made, the Unresolved Claims Escrow Agent shall distribute (or in the case
        of Litigation Trust Interests, cause to be registered) any Litigation Trust Interests,
        Newco Shares and Newco Notes (and any income or proceeds therefrom), as
        applicable, remaining in the Unresolved Claims Reserve to the Affected Creditors
        with Proven Claims such that after giving effect to such distributions each such
        Affected Creditor has received the amount of Litigation Trust Interests, Newco
        Shares and Newco Notes that it is entitled to receive pursuant to section 4.1
        hereof.

(e)     During the time that Newco Shares, Newco Notes and/or Litigation Trust Interests
        are held in escrow in the Unresolved Claims Reserve, any income or proceeds

received therefrom or accruing thereon shall be added to the Unresolved Claims Reserve by the Unresolved Claims Escrow Agent and no Person shall have any right to such income or proceeds until such Newco Shares, Newco Notes or Litigation Trust Interests, as applicable, are distributed (or in the case of Litigation Trust Interests, registered) in accordance with section 5.5(c) and 5.5(d) hereof, at which time the recipient thereof shall be entitled to any applicable income or proceeds therefrom.

(f)     The Unresolved Claims Escrow Agent shall have no beneficial interest or right in the Unresolved Claims Reserve. The Unresolved Claims Escrow Agent shall not take any step or action with respect to the Unresolved Claims Reserve or any other matter without the consent or direction of the Monitor or the direction of the Court. The Unresolved Claims Escrow Agent shall forthwith, upon receipt of an Order of the Court or instruction of the Monitor directing the release of any Newco Shares, Newco Notes and/or Litigation Trust Interests from the Unresolved Claims Reserve, comply with any such Order or instruction.

(g)     Nothing in this Plan impairs, affects or limits in any way the ability of SFC, the Monitor or the Initial Consenting Noteholders to seek or obtain an Order, whether before or after the Plan Implementation Date, directing that any Unresolved Claims should be disallowed in whole or in part or that such Unresolved Claims should receive the same or similar treatment as is afforded to Equity Claims under the terms of this Plan.

(h)     Persons with Unresolved Claims shall have standing in any proceeding in respect of the determination or status of any Unresolved Claim, and Goodmans LLP (in its capacity as counsel to the Initial Consenting Noteholders) shall have standing in any such proceeding on behalf of the Initial Consenting Notheolders (in their capacity as Affected Creditors with Proven Claims).

## 5.6   Tax Refunds

Any input tax credits or tax refunds received by or on behalf of SFC after the Effective Time shall, immediately upon receipt thereof, be paid directly by, or on behalf of, SFC to Newco without consideration.

## 5.7   Final Distributions from Reserves

(a)     If there is any cash remaining in: (i) the Unaffected Claims Reserve on the date that all Unaffected Claims have been finally paid or otherwise discharged and/or (ii) the Administration Charge Reserve on the date that all Claims secured by the Administration Charge have been finally paid or otherwise discharged, the Monitor shall, in each case, forthwith transfer all such remaining cash to the Monitor's Post-Implementation Reserve.

(b)     The Monitor will not terminate the Monitor's Post-Implementation Reserve prior to the termination of each of the Unaffected Claims Reserve and the Administration Charge Reserve. The Monitor may, at any time, from time to time

and at its sole discretion, release amounts from the Monitor's Post-Implementation Reserve to Newco.  Goodmans LLP (in its capacity as counsel to the Initial Consenting Noteholders) shall be permitted to apply for an Order of the Court directing the Monitor to make distributions from the Monitor's Post-Implementation Reserve.    Once the Monitor has determined that the cash remaining in the Monitor's Post-Implementation Reserve is no longer necessary for administering SFC or the Claims Procedure, the Monitor shall forthwith transfer any such remaining cash (the "**Remaining Post-Implementation Reserve Amount**") to Newco.

## 5.8    Other Payments and Distributions

All other payments and distributions to be made pursuant to this Plan shall be made in the manner described in this Plan, the Sanction Order or any other Order, as applicable.

## 5.9    Note Indentures to Remain in Effect Solely for Purpose of Distributions

Following completion of the steps in the sequence set forth in section 6.4, all debentures, indentures, notes (including the Notes), certificates, agreements, invoices and other instruments evidencing Affected Claims will not entitle any holder thereof to any compensation or participation other than as expressly provided for in the Plan and will be cancelled and will be null and void.  Any and all obligations of SFC and the Subsidiaries under and with respect to the Notes, the Note Indentures and any guarantees or indemnities with respect to the Notes or the Note Indentures shall be terminated and cancelled on the Plan Implementation Date and shall not continue beyond the Plan Implementation Date.  Notwithstanding the foregoing and anything to the contrary in the Plan, the Note Indentures shall remain in effect solely for the purpose of and only to the extent necessary to allow the Trustees to make distributions to Noteholders on the Initial Distribution Date and, as necessary, each subsequent Distribution Date thereafter, and to maintain all of the rights and protections afforded to the Trustees as against the Noteholders under the applicable Note Indentures, including their lien rights with respect to any distributions under this Plan, until all distributions provided for hereunder have been made to the Noteholders. The obligations of the Trustees under or in respect of this Plan shall be solely as expressly set out herein.  Without limiting the generality of the releases, injunctions and other protections afforded to the Trustees under this Plan and the applicable Note Indentures, the Trustees shall have no liability whatsoever to any Person resulting from the due performance of their obligations hereunder, except if such Trustee is adjudged by the express terms of a non-appealable judgment rendered on a final determination on the merits to have committed gross negligence or wilful misconduct in respect of such matter.

## 5.10    Assignment of Claims for Distribution Purposes

(a)    *Assignment of Claims by Ordinary Affected Creditors*

Subject to any restrictions contained in Applicable Laws, an Ordinary Affected Creditor may transfer or assign the whole of its Affected Claim after the Meeting provided that neither SFC nor Newco nor Newco II nor the Monitor nor the Unresolved Claims Escrow Agent shall be obliged to make distributions to any such transferee or assignee or otherwise deal with such

transferee or assignee as an Ordinary Affected Creditor in respect thereof unless and until actual notice of the transfer or assignment, together with satisfactory evidence of such transfer or assignment and such other documentation as SFC and the Monitor may reasonably require, has been received by SFC and the Monitor on or before the Plan Implementation Date, or such other date as SFC and the Monitor may agree, failing which the original transferor shall have all applicable rights as the "Ordinary Affected Creditor" with respect to such Affected Claim as if no transfer of the Affected Claim had occurred. Thereafter, such transferee or assignee shall, for all purposes in accordance with this Plan, constitute an Ordinary Affected Creditor and shall be bound by any and all notices previously given to the transferor or assignor in respect of such Claim. For greater certainty, SFC shall not recognize partial transfers or assignments of Claims.

(b)    *Assignment of Notes*

Only those Noteholders who have beneficial ownership of one or more Notes as at the Distribution Record Date shall be entitled to receive a distribution under this Plan on the Initial Distribution Date or any Distribution Date. Noteholders who have beneficial ownership of Notes shall not be restricted from transferring or assigning such Notes prior to or after the Distribution Record Date (unless the Distribution Record Date is the Plan Implementation Date), provided that if such transfer or assignment occurs after the Distribution Record Date, neither SFC nor Newco nor Newco II nor the Monitor nor the Unresolved Claims Escrow Agent shall have any obligation to make distributions to any such transferee or assignee of Notes in respect of the Claims associated therewith, or otherwise deal with such transferee or assignee as an Affected Creditor in respect thereof. Noteholders who assign or acquire Notes after the Distribution Record Date shall be wholly responsible for ensuring that Plan distributions in respect of the Claims associated with such Notes are in fact delivered to the assignee, and the Trustees shall have no liability in connection therewith.

## 5.11    Withholding Rights

SFC, Newco, Newco II, the Monitor, the Litigation Trustee, the Unresolved Claims Escrow Agent and/or any other Person making a payment contemplated herein shall be entitled to deduct and withhold from any consideration payable to any Person such amounts as it is required to deduct and withhold with respect to such payment under the Canadian Tax Act, the United States Internal Revenue Code of 1986 or any provision of federal, provincial, territorial, state, local or foreign Tax laws, in each case, as amended. To the extent that amounts are so withheld or deducted, such withheld or deducted amounts shall be treated for all purposes hereof as having been paid to the Person in respect of which such withholding was made, provided that such amounts are actually remitted to the appropriate Taxing Authority. To the extent that the amounts so required or permitted to be deducted or withheld from any payment to a Person exceed the cash portion of the consideration otherwise payable to that Person: (i) the payor is authorized to sell or otherwise dispose of such portion of the consideration as is necessary to provide sufficient funds to enable it to comply with such deduction or withholding requirement or entitlement, and the payor shall notify the applicable Person thereof and remit to such Person any unapplied balance of the net proceeds of such sale; or (ii) if such sale is not reasonably possible, the payor shall not be required to make such excess payment until the Person has directly satisfied any such withholding obligation and provides evidence thereof to the payor.

## 5.12    Fractional Interests

No fractional interests of Newco Shares or Newco Notes ("**Fractional Interests**") will be issued under this Plan. For purposes of calculating the number of Newco Shares and Newco Notes to be issued by Newco pursuant to this Plan, recipients of Newco Shares or Newco Notes will have their entitlements adjusted downwards to the nearest whole number of Newco Shares or Newco Notes, as applicable, to eliminate any such Fractional Interests and no compensation will be given for the Fractional Interest.

## 5.13    Further Direction of the Court

The Monitor shall, in its sole discretion, be entitled to seek further direction of the Court, including a plan implementation order, with respect to any matter relating to the implementation of the plan including with respect to the distribution mechanics and restructuring transaction as set out in Articles 5 and 6 of this Plan.


## ARTICLE 6
## RESTRUCTURING TRANSACTION

### 6.1    Corporate Actions

The adoption, execution, delivery, implementation and consummation of all matters contemplated under the Plan involving corporate action of SFC will occur and be effective as of the Plan Implementation Date, other than such matters occurring on the Equity Cancellation Date which will occur and be effective on such date, and in either case will be authorized and approved under the Plan and by the Court, where appropriate, as part of the Sanction Order, in all respects and for all purposes without any requirement of further action by shareholders, Directors or Officers of SFC. All necessary approvals to take actions shall be deemed to have been obtained from the directors or the shareholders of SFC, as applicable, including the deemed passing by any class of shareholders of any resolution or special resolution and no shareholders' agreement or agreement between a shareholder and another Person limiting in any way the right to vote shares held by such shareholder or shareholders with respect to any of the steps contemplated by the Plan shall be deemed to be effective and shall have no force or effect, provided that, subject to sections 12.6 and 12.7 hereof, where any matter expressly requires the consent or approval of SFC, the Initial Consenting Noteholders or SFC's board of directors pursuant to this Plan, such consent or approval shall not be deemed to be given unless actually given.

### 6.2    Incorporation of Newco and Newco II

(a)    Newco shall be incorporated prior to the Plan Implementation Date. Newco shall be authorized to issue an unlimited number of Newco Shares and shall have no restrictions on the number of its shareholders. At the time that Newco is incorporated, Newco shall issue one Newco Share to the Initial Newco Shareholder, as the sole shareholder of Newco, and the Initial Newco Shareholder shall be deemed to hold the Newco Share for the purpose of facilitating the

Restructuring Transaction. For greater certainty, the Initial Newco Shareholder shall not hold such Newco Share as agent of or for the benefit of SFC, and SFC shall have no rights in relation to such Newco Share. Newco shall not carry on any business or issue any other Newco Shares or other securities until the Plan Implementation Date, and then only in accordance with section 6.4 hereof. The Initial Newco Shareholder shall be deemed to have no liability whatsoever for any matter pertaining to its status as the Initial Newco Shareholder, other than its obligations under this Plan to act as the Initial Newco Shareholder.

(b)     Newco II shall be incorporated prior to the Plan Implementation Date as a wholly-owned subsidiary of Newco. The memorandum and articles of association of Newco II will be in a form customary for a wholly-owned subsidiary under the applicable jurisidiction and the initial board of directors of Newco II will consist of the same Persons appointed as the directors of Newco on or prior to the Plan Implementation Date.

## 6.3     Incorporation of SFC Escrow Co.

SFC Escrow Co. shall be incorporated prior to the Plan Implementation Date. SFC Escrow Co. shall be incorporated under the laws of the Cayman Islands, or such other jurisdiction as may be agreed by SFC, the Monitor and the Initial Consenting Noteholders. The sole director of SFC Escrow Co. shall be Codan Services (Cayman) Limited, or such other Person as may be agreed by SFC, the Monitor and the Initial Consenting Noteholders. At the time that SFC Escrow Co. is incorporated, SFC Escrow Co. shall issue one share (the "SFC Escrow Co. Share") to SFC, as the sole shareholder of SFC Escrow Co. and SFC shall be deemed to hold the SFC Escrow Co. Share for the purpose of facilitating the Restructuring Transaction. SFC Escrow Co. shall have no assets other than any assets that it is required to hold in escrow pursuant to the terms of this Plan, and it shall have no liabilities other than its obligations as set forth in this Plan. SFC Escrow Co. shall not carry on any business or issue any shares or other securities (other than the SFC Escrow Co. Share). The sole activity and function of SFC Escrow Co. shall be to perform the obligations of the Unresolved Claims Escrow Agent as set forth in this Plan and to administer Undeliverable Distributions as set forth in section 5.4 of this Plan. SFC Escrow Co. shall not make any sale, distribution, transfer or conveyance of any Newco Shares, Newco Notes or any other assets or property that it holds unless it is directed to do so by an Order of the Court or by a written direction from the Monitor, in which case SFC Escrow Co. shall promptly comply with such Order of the Court or such written direction from the Monitor. SFC shall not sell, transfer or convey the SFC Escrow Co. Share nor effect or cause to be effected any liquidation, dissolution, merger or other corporate reorganization of SFC Escrow Co. unless it is directed to do so by an Order of the Court or by a written direction from the Monitor, in which case SFC shall promptly comply with such Order of the Court or such written direction from the Monitor. SFC Escrow Co. shall not exercise any voting rights (including any right to vote at a meeting of shareholders or creditors held or in any written resolution) in respect of Newco Shares or Newco Notes held in the Unresolved Claims Reserve. SFC Escrow Co. shall not be entitled to receive any compensation for the performance of its obligations under this Plan.

## 6.4    Plan Implementation Date Transactions

The following steps and compromises and releases to be effected shall occur, and be deemed to have occurred in the following manner and order (sequentially, each step occurring five minutes apart, except that within such order steps (a) to (f) (Cash Payments) shall occur simultaneously and steps (t) to (w) (Releases) shall occur simultaneously) without any further act or formality, on the Plan Implementation Date beginning at the Effective Time (or in such other manner or order or at such other time or times as SFC, the Monitor and the Initial Consenting Noteholders may agree):

### Cash Payments and Satisfaction of Lien Claims

(a)    SFC shall pay required funds to the Monitor for the purpose of funding the Unaffected Claims Reserve, and the Monitor shall hold and administer such funds in trust for the purpose of paying the Unaffected Claims pursuant to the Plan.

(b)    SFC shall pay the required funds to the Monitor for the purpose of funding the Administration Charge Reserve, and the Monitor shall hold and administer such funds in trust for the purpose of paying Unaffected Claims secured by Administration Charge.

(c)    SFC shall pay the required funds to the Monitor for the purpose of funding the Monitor's Post-Implementation Reserve, and the Monitor shall hold and administer such funds in trust for the purpose of administering SFC, as necessary, from and after the Plan Implementation Date.

(d)    SFC shall pay to the Noteholder Advisors and the Initial Consenting Noteholders, as applicable, each such Person's respective portion of the Expense Reimbursement. SFC shall pay all fees and expenses owing to each of the SFC Advisors, the advisors to the current Board of Directors of SFC, Chandler Fraser Keating Limited and Spencer Stuart and SFC or any of the Subsidiaries shall pay all fees and expenses owing to each of Indufor Asia Pacific Limited and Stewart Murray (Singapore) Pte. Ltd. If requested by the Monitor (with the consent of the Initial Consenting Noteholders) no more than 10 days prior to the Plan Implementation Date and provided that all fees and expenses set out in all previous invoices rendered by the applicable Person to SFC have been paid, SFC and the Subsidiaries, as applicable, shall, with respect to the final one or two invoices rendered prior to the Plan Implementation Date, pay any such fees and expenses to such Persons for all work up to and including the Plan Implementation Date (including any reasonable estimates of work to be performed on the Plan Implementation Date) first by applying any such monetary retainers currently held by such Persons and then by paying any remaining balance in cash.

(e)    If requested by the Monitor (with the consent of the Initial Consenting Noteholders) prior to the Plan Implementation Date, any Person with a monetary retainer from SFC that remains outstanding following the steps and payment of all

fees and expenses set out in section 6.4(d) hereof shall pay to SFC in cash the full amount of such remaining retainer, less any amount permitted by the Monitor (with the Consent of the Initial Consenting Noteholders and after prior discussion with the applicable Person as to any remaining work that may reasonably be required) to remain as a continuing  monetary retainer in connection with completion of any remaining work after the Plan Implementation Date that may be requested by the Monitor, SFC or the Initial Consenting Noteholders (each such continuing monetary retainer being a **"Permitted Continuing Retainer"**). Such Persons shall have no duty or obligation to perform any further work or tasks in respect of SFC unless such Persons are satisfied that they are holding adequate retainers or other security or have received payment to compensate them for all fees and expenses in respect of such work or tasks. The obligation of such Persons to repay the remaining amounts of any monetary retainers (including the unused portions of any Permitted Continuing Retainers) and all cash received therefrom shall constitute SFC Assets.

(f)     The Lien Claims shall be satisfied in accordance with section 4.2(c) hereof.

*Transaction Steps*

(g)     All accrued and unpaid interest owing on, or in respect of, or as part of, Affected Creditor Claims (including any Accrued Interest on the Notes and any interest accruing on the Notes or any Ordinary Affected Creditor Claim after the Filing Date) shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred for no consideration, and from and after the occurrence of this step, no Person shall have any entitlement to any such accrued and unpaid interest.

(h)     All of the Affected Creditors shall be deemed to assign, transfer and convey to Newco all of their Affected Creditor Claims, and from and after the occurrence of this step, Newco shall be the legal and beneficial owner of all Affected Creditor Claims. In exchange for the assignment, transfer and conveyance of the Affected Creditor Claims to Newco:

    (i)     with respect to Affected Creditor Claims that are Proven Claims at the Effective Time:

        (A)     Newco shall issue to each applicable Affected Creditor the number of Newco Shares that each such Affected Creditor is entitled to receive in accordance with section 4.1(a) hereof;

        (B)     Newco shall issue to each applicable Affected Creditor the amount of Newco Notes that each such Affected Creditor is entitled to receive in accordance with section 4.1(b) hereof;

        (C)     Newco shall issue to each of the Early Consent Noteholders the number of Newco Shares that each such Early Consent Noteholder is entitled to receive pursuant to section 4.3 hereof;

(D)     such Affected Creditors shall be entitled to receive the Litigation
Trust Interests to be acquired by Newco in section 6.4(q) hereof,
following the establishment of the Litigation Trust;

(E)·    such Affected Creditors shall be entitled to receive, at the time or
times contemplated in sections 5.5(c) and 5.5(d) hereof, the Newco
Shares, Newco Notes and Litigation Trust Interests that are
subsequently distributed to (or in the case of Litigation Trust
Interests registered for the benefit of) Affected Creditors with
Proven Claims pursuant to sections 5.5(c) and  5.5(d) hereof (if
any),

and all such Newco Shares and Newco Notes shall be distributed in the
manner described in section 5.2 hereof; and

(ii)    with respect to Affected Creditor Claims that are Unresolved Claims as at
the Effective Time, Newco shall issue in the name of the Unresolved
Claims Escrow Agent, for the benefit of the Persons entitled thereto under
the Plan, the Newco Shares and the Newco Notes that would have been
distributed to the applicable Affected Creditors in respect of such
Unresolved Claims if such Unresolved Claims had been Proven Claims at
the Effective Time; such Newco Shares, Newco Notes and Litigation
Trust Interests acquired by Newco in section 6.4(q) and assigned to and
registered in the name of the Unresolved Claims Escrow Agent in
accordance with section 6.4(r) shall comprise part of the Unresolved
Claims Reserve and the Unresolved Claims Escrow Agent shall hold all
such Newco Shares, Newco Notes and Litigation Trust Interests in escrow
for the benefit of those Persons entitled to receive distributions thereof
pursuant to the Plan.

(i)     The initial Newco Share in the capital of Newco held by the Initial Newco
Shareholder shall be redeemed and cancelled for no consideration.

(j)     SFC shall be deemed to assign, transfer and convey to SFC Barbados those SFC
Intercompany Claims and/or Equity Interests in one or more Direct Subsidiaries
as agreed to by SFC and the Initial Consenting Noteholders prior to the Plan
Implementation Date (the "Barbados Property") first in full repayment of the
Barbados Loans and second, to the extent the fair market value of the Barbados
Property exceeds the amount owing under the Barbados Loans, as a contribution
to the capital of SFC Barbados by SFC.   Immediately after the time of such
assignment, transfer and conveyance, the Barbados Loans shall be considered to
be fully paid by SFC and no longer outstanding.

(k)     SFC shall be deemed to assign, transfer and convey to Newco all shares and other
Equity Interests (other than the Barbados Property) in the capital of (i) the Direct
Subsidiaries and (ii) any other Subsidiaries that are directly owned by SFC
immediately prior to the Effective Time, other than SFC Escrow Co. (all such

shares and other equity interests being the "**Direct Subsidiary Shares**") for a
purchase price equal to the fair market value of the Direct Subsidiary Shares and,
in consideration therefor, Newco shall be deemed to pay to SFC consideration
equal to the fair market value of the Direct Subsidiary Shares, which
consideration shall be comprised of a U.S. dollar denominated demand non-
interest-bearing promissory note issued to SFC by Newco having a principal
amount equal to the fair market value of the Direct Subsidiary Shares (the
"**Newco Promissory Note 1**"). At the time of such assignment, transfer and
conveyance, all prior rights that Newco had to acquire the Direct Subsidiary
Shares, under the Plan or otherwise, shall cease to be outstanding. For greater
certainty, SFC shall not assign, transfer or convey the SFC Escrow Co. Share, and
the SFC Escrow Co. Share shall remain the property of SFC.

(l)    If the Initial Consenting Noteholders and SFC agree prior to the Plan
Implementation Date, there will be a set-off of any SFC Intercompany Claim so
agreed against a Subsidiary Intercompany Claim owing between SFC and the
same Subsidiary. In such case, the amounts will be set-off in repayment of both
claims to the extent of the lesser of the two amounts, and the excess (if any) shall
continue as an SFC Intercompany Claim or a Subsidiary Intercompany Claim, as
applicable.

(m)    SFC shall be deemed to assign, transfer and convey to Newco all SFC
Intercompany Claims (other than the SFC Intercompany Claims transferred to
SFC Barbados in section 6.4(j) hereof or set-off pursuant to section 6.4(l) hereof)
for a purchase price equal to the fair market value of such SFC Intercompany
Claims and, in consideration therefor, Newco shall be deemed to pay SFC
consideration equal to the fair market value of the SFC Intercompany Claims,
which consideration shall be comprised of the following: (i) the assumption by
Newco of all of SFC's obligations to the Subsidiaries in respect of Subsidiary
Intercompany Claims (other than the Subsidiary Intercompany Claims set-off
pursuant to section 6.4(l) hereof); and (ii) if the fair market value of the
transferred SFC Intercompany Claims exceeds the fair market value of the
assumed Subsidiary Intercompany Claims, Newco shall issue to SFC a U.S. dollar
denominated demand non-interest-bearing promissory note having a principal
amount equal to such excess (the "**Newco Promissory Note 2**").

(n)    SFC shall be deemed to assign, transfer and convey to Newco all other SFC
Assets (namely, all SFC Assets other than the Direct Subsidiary Shares and the
SFC Intercompany Claims (which shall have already been transferred to Newco
in accordance with sections 6.4(k) and 6.4(m) hereof)), for a purchase price equal
to the fair market value of such other SFC Assets and, in consideration therefor,
Newco shall be deemed to pay to SFC consideration equal to the fair market value
of such other SFC Assets, which consideration shall be comprised of a U.S. dollar
denominated demand non-interest-bearing promissory note issued to SFC by
Newco having a principal amount equal to the fair market value of such other
SFC Assets (the "**Newco Promissory Note 3**").

(o)    SFC shall establish the Litigation Trust and SFC and the Trustees (on behalf of
the Noteholders) shall be deemed to convey, transfer and assign to the Litigation
Trustee all of their respective rights, title and interest in and to the Litigation Trust
Claims.  SFC shall advance the Litigation Funding Amount to the Litigation
Trustee for use by the Litigation Trustee in prosecuting the Litigation Trust
Claims in accordance with the Litigation Trust Agreement, which advance shall
be deemed to create a non-interest bearing receivable from the Litigation Trustee
in favour of SFC in the amount of the Litigation Funding Amount (the
**"Litigation Funding Receivable"**).    The Litigation Funding Amount and
Litigation Trust Claims shall be managed by the Litigation Trustee in accordance
with the terms and conditions of the Litigation Trust Agreement.

(p)    The Litigation Trust shall be deemed to be effective from the time that it is
established in section 6.4(o) hereof.  Initially, all of the Litigation Trust Interests
shall be held by SFC.  Immediately thereafter, SFC shall assign, convey and
transfer a portion of the Litigation Trust Interests to the Noteholder Class Action
Claimants in accordance with the allocation set forth in section 4.11 hereof.

(q)    SFC shall settle and discharge the Affected Creditor Claims by assigning Newco
Promissory Note 1, Newco Promissory Note 2 and Newco Promissory Note 3
(collectively, the **"Newco Promissory Notes"**), the Litigation Funding Receivable
and the remaining Litigation Trust Interests held by SFC to Newco.    Such
assignment shall constitute payment, by set-off, of the full principal amount of the
Newco Promissory Notes and of a portion of the Affected Creditor Claims equal
to the aggregate principal amount of the Newco Promissory Notes, the Litigation
Trust Receivable and the fair market value of the Litigation Trust Interests so
transferred (with such payment being allocated first to the Noteholder Claims and
then to the Ordinary Affected Creditor Claims).  As a consequence thereof:

        (i)    Newco shall be deemed to discharge and release SFC of and from all of
SFC's obligations to Newco in respect of the Affected Creditor Claims,
and all of Newco's rights against SFC of any kind in respect of the
Affected Creditor Claims shall thereupon be fully, finally, irrevocably and
forever compromised, released, discharged and cancelled; and

        (ii)    SFC shall be deemed to discharge and release Newco of and from all of
Newco's obligations to SFC in respect of the Newco Promissory Notes,
and the Newco Promissory Notes and all of SFC's rights against Newco in
respect thereof shall thereupon be fully, finally, irrevocably and forever
released, discharged and cancelled.

(r)    Newco shall cause a portion of the Litigation Trust Interests it acquired in section
6.4(q) hereof to be assigned to and registered in the name of the Affected
Creditors with Proven Claims as contemplated in section 6.4(h), and with respect
to any Affected Creditor Claims that are Unresolved Claims as at the Effective
Time, the remaining Litigation Trust Interests held by Newco that would have
been allocated to the applicable Affected Creditors in respect of such Unresolved

Claims if such Unresolved Claims had been Proven Claims at the Effective Time shall be assigned and registered by the Litigation Trustee to the Unresolved Claims Escrow Agent and in the name of the Unresolved Claims Escrow Agent, in escrow for the benefit of Persons entitled thereto, and such Litigation Trust Interests shall comprise part of the Unresolved Claims Reserve. The Litigation Trustee shall record entitlements to the Litigation Trust Interests in the manner set forth in section 5.3.

### *Cancellation of Instruments and Guarantees*

(s)     Subject to section 5.9 hereof, all debentures, indentures, notes, certificates, agreements, invoices, guarantees, pledges and other instruments evidencing Affected Claims, including the Notes and the Note Indentures, will not entitle any holder thereof to any compensation or participation other than as expressly provided for in the Plan and shall be cancelled and will thereupon be null and void. The Trustees shall be directed by the Court and shall be deemed to have released, discharged and cancelled any guarantees, indemnities, Encumbrances or other obligations owing by or in respect of any Subsidiary relating to the Notes or the Note Indentures.

### *Releases*

(t)     Each of Newco and Newco II shall be deemed to have no liability or obligation of any kind whatsoever for: any Claim (including, notwithstanding anything to the contrary herein, any Unaffected Claim); any Affected Claim (including any Affected Creditor Claim, Equity Claim, D&O Claim, D&O Indemnity Claim and Noteholder Class Action Claim); any Section 5.1(2) D&O Claim; any Conspiracy Claim; any Continuing Other D&O Claim; any Non-Released D&O Claim; any Class Action Claim; any Class Action Indemnity Claim; any right or claim in connection with or liability for the Notes or the Note Indentures; any guarantees, indemnities, share pledges or Encumbrances relating to the Notes or the Note Indentures; any right or claim in connection with or liability for the Existing Shares or other Equity Interests or any other securities of SFC; any rights or claims of the Third Party Defendants relating to SFC or the Subsidiaries; any right or claim in connection with or liability for the RSA, the Plan, the CCAA Proceedings, the Restructuring Transaction, the Litigation Trust, the business and affairs of SFC and the Subsidiaries (whenever or however conducted), the administration and/or management of SFC and the Subsidiaries, or any public filings, statements, disclosures or press releases relating to SFC; any right or claim in connection with or liability for any guaranty, indemnity or claim for contribution in respect of any of the foregoing; and any Encumbrance in respect of the foregoing, provided only that Newco shall assume SFC's obligations to the applicable Subsidiaries in respect of the Subsidiary Intercompany Claims pursuant to section 6.4(l) hereof and Newco II shall assume Newco's obligations to the applicable Subsidiaries in respect of the Subsidiary Intercompany Claims pursuant to section 6.4(x) hereof.

(u)    Each of the Charges shall be discharged, released and cancelled.

(v)    The releases and injunctions referred to in Article 7 of the Plan shall become effective in accordance with the Plan.

(w)    Any contract defaults arising as a result of the CCAA Proceedings and/or the implementation of the Plan (including, notwithstanding anything to the contrary herein, any such contract defaults in respect of the Unaffected Claims) shall be deemed to be cured.

*Newco II*

(x)    Newco shall be deemed to assign, transfer and convey to Newco II all of Newco's right, title and interest in and to all of its properties, assets and rights of every kind and description (namely the SFC Assets acquired by Newco pursuant to the Plan) for a purchase price equal to the fair market value thereof and, in consideration therefor, Newco II shall be deemed to pay to Newco consideration equal to the fair market value of such properties, assets and rights (the "**Newco II Consideration**"). The Newco II Consideration shall be comprised of: (i) the assumption by Newco II of any and all indebtedness of Newco other than the indebtedness of Newco in respect of the Newco Notes (namely, any indebtedness of Newco in respect of the Subsidiary Intercompany Claims); and (ii) the issuance to Newco of that number of common shares in Newco II as is necessary to ensure that the value of the Newco II Consideration is equal to the fair market value of the properties, assets and rights conveyed by Newco to Newco II pursuant to this section 6.4(x).

## 6.5    Cancellation of Existing Shares and Equity Interests

Unless otherwise agreed between the Monitor, SFC and the Initial Consenting Noteholders, on the Equity Cancellation Date all Existing Shares and Equity Interests shall be fully, finally and irrevocably cancelled, and the following steps will be implemented pursuant to the Plan as a plan of reorganization under section 191 of the *CBCA*, to be effected by articles of reorganization to be filed by SFC, subject to the receipt of any required approvals from the Ontario Securities Commission with respect to the trades in securities contemplated by the following:

(a)    SFC will create a new class of common shares to be called Class A common shares that are equivalent to the current Existing Shares except that they carry two votes per share;

(b)    SFC will amend the share conditions of the Existing Shares to provide that they are cancellable for no consideration at such time as determined by the board of directors of SFC;

(c)    prior to the cancellation of the Existing Shares, SFC will issue for nominal consideration one Class A common share of SFC to the SFC Continuing Shareholder;

(d)     SFC will cancel the Existing Shares for no consideration on the Equity
        Cancellation Date; and

(e)     SFC will apply to Canadian securities regulatory authorities for SFC to cease to
        be a reporting issuer effective immediately before the Effective Time.

Unless otherwise agreed by SFC, the Monitor and the Initial Consenting Noteholders or as
otherwise directed by Order of the Court, SFC shall maintain its corporate existence at all times
from and after the Plan Implementation Date until the later of the date: (i) on which SFC Escrow
Co. has completed all of its obligations as Unresolved Claims Escrow Agent under this Plan; (ii)
on which SFC escrow Co. no longer holds any Undeliverable Distributions delivered to it in
accordance with the section 5.4 hereof; and (iii) as determined by the Litigation Trustee.

## 6.6     Transfers and Vesting Free and Clear

(a)     All of the SFC Assets (including for greater certainty the Direct Subsidiary
        Shares, the SFC Intercompany Claims and all other SFC Assets assigned,
        transferred and conveyed to Newco and/or Newco II pursuant to section 6.4) shall
        be deemed to vest absolutely in Newco or Newco II, as applicable, free and clear
        of and from any and all Charges, Claims (including, notwithstanding anything to
        the contrary herein, any Unaffected Claims), D&O Claims, D&O Indemnity
        Claims, Section 5.1(2) D&O Claims, Conspiracy Claims, Continuing Other D&O
        Claims, Non-Released D&O Claims, Affected Claims, Class Action Claims,
        Class Action Indemnity Claims, claims or rights of any kind in respect of the
        Notes or the Note Indentures, and any right or claim that is based in whole or in
        part on facts, underlying transactions, Causes of Action or events relating to the
        Restructuring Transaction, the CCAA Proceedings or any of the foregoing, and
        any guarantees or indemnities with respect to any of the foregoing. Any
        Encumbrances or claims affecting, attaching to or relating to the SFC Assets in
        respect of the foregoing shall be deemed to be irrevocably expunged and
        discharged as against the SFC Assets, and no such Encumbrances or claims shall
        be pursued or enforceable as against Newco or Newco II.  For greater certainty,
        with respect to the Subsidiaries, Greenheart and Greenheart's direct and indirect
        subsidiaries: (i) the vesting free and clear in Newco and/or Newco II, as
        applicable, and the expunging and discharging that occurs by operation of this
        paragraph shall only apply to SFC's ownership interests in the Subsidiaries,
        Greenheart and Greenheart's subsidiaries; and (ii) except as provided for in the
        Plan (including this section 6.6(a) and sections 4.9(g), 6.4(k), 6.4(l) and 6.4(m)
        hereof and Article 7 hereof) and the Sanction Order, the assets, liabilities,
        business and property of the Subsidiaries, Greenheart and Greenheart's direct and
        indirect subsidiaries shall remain unaffected by the Restructuring Transaction.

(b)     Any issuance, assignment, transfer or conveyance of any securities, interests,
        rights or claims pursuant to the Plan, including the Newco Shares, the Newco
        Notes and the Affected Creditor Claims, will be free and clear of and from any
        and all Charges, Claims (including, notwithstanding anything to the contrary
        herein, any Unaffected Claims), D&O Claims, D&O Indemnity Claims, Affected

Claims, Section 5.1(2) D&O Claims; Conspiracy Claims; Continuing Other D&O Claims, Non-Released D&O Claims; Class Action Claims, Class Action Indemnity Claims, claims or rights of any kind in respect of the Notes or the Note Indentures, and any right or claim that is based in whole or in part on facts, underlying transactions, Causes of Action or events relating to the Restructuring Transaction, the CCAA Proceedings or any of the foregoing, and any guarantees or indemnities with respect to any of the foregoing. For greater certainty, with respect to the Subsidiaries, Greenheart and Greenheart's direct and indirect subsidiaries: (i) the vesting free and clear in Newco and Newco II that occurs by operation of this paragraph shall only apply to SFC's direct and indirect ownership interests in the Subsidiaries, Greenheart and Greenheart's direct and indirect subsidiaries; and (ii) except as provided for in the Plan (including section 6.6(a) and sections 4.9(g), 6.4(k), 6.4(l) and 6.4(m) hereof and Article 7 hereof) and the Sanction Order, the assets, liabilities, business and property of the Subsidiaries, Greenheart and Greenheart's direct and indirect subsidiaries shall remain unaffected by the Restructuring Transaction.

## ARTICLE 7
## RELEASES

### 7.1   Plan Releases

Subject to 7.2 hereof, all of the following shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred on the Plan Implementation Date:

(a)    all Affected Claims, including all Affected Creditor Claims, Equity Claims, D&O Claims (other than Section 5.1(2) D&O Claims, Conspiracy Claims, Continuing Other D&O Claims and Non-Released D&O Claims), D&O Indemnity Claims (except as set forth in section 7.1(d) hereof) and Noteholder Class Action Claims (other than the Continuing Noteholder Class Action Claims);

(b)    all Claims of the Ontario Securities Commission or any other Governmental Entity that have or could give rise to a monetary liability, including fines, awards, penalties, costs, claims for reimbursement or other claims having a monetary value;

(c)    all Class Action Claims (including the Noteholder Class Action Claims) against SFC, the Subsidiaries or the Named Directors or Officers of SFC or the Subsidiaries (other than Class Action Claims that are Section 5.1(2) D&O Claims, Conspiracy Claims or Non-Released D&O Claims);

(d)    all Class Action Indemnity Claims (including related D&O Indemnity Claims), other than any Class Action Indemnity Claim by the Third Party Defendants against SFC in respect of the Indemnified Noteholder Class Action Claims (including any D&O Indemnity Claim in that respect), which shall be limited to the Indemnified Noteholder Class Action Limit pursuant to the releases set out in section 7.1(f) hereof and the injunctions set out in section 7.3 hereof;

(e)     any portion or amount of liability of the Third Party Defendants for the
        Indemnified Noteholder Class Action Claims (on a collective, aggregate basis in
        reference to all Indemnified Noteholder Class Action Claims together) that
        exceeds the Indemnified Noteholder Class Action Limit;

(f)     any portion or amount of liability of the Underwriters for the Noteholder Class
        Action Claims (other than any Noteholder Class Action Claims against the
        Underwriters for fraud or criminal conduct) (on a collective, aggregate basis in
        reference to all such Noteholder Class Action Claims together) that exceeds the
        Indemnified Noteholder Class Action Limit;

(g)     any portion or amount of, or liability of SFC for, any Class Action Indemnity
        Claims by the Third Party Defendants against SFC in respect of the Indemnified
        Noteholder Class Action Claims (on a collective, aggregate basis in reference to
        all such Class Action Indemnity Claims together) to the extent that such Class
        Action Indemnity Claims exceed the Indemnified Noteholder Class Action Limit;

(h)     any and all Excluded Litigation Trust Claims;

(i)     any and all Causes of Action against Newco, Newco II, the directors and officers
        of Newco, the directors and officers of Newco II, the Noteholders, members of
        the *ad hoc* committee of Noteholders, the Trustees, the Transfer Agent, the
        Monitor, FTI Consulting Canada Inc., FTI HK, counsel for the current Directors
        of SFC, counsel for the Monitor, counsel for the Trustees, the SFC Advisors, the
        Noteholder Advisors, and each and every member (including members of any
        committee or governance council), partner or employee of any of the foregoing,
        for or in connection with or in any way relating to: any Claims (including,
        notwithstanding anything to the contrary herein, any Unaffected Claims);
        Affected Claims; Section 5.1(2) D&O Claims; Conspiracy Claims; Continuing
        Other D&O Claims; Non-Released D&O Claims; Class Action Claims; Class
        Action Indemnity Claims; any right or claim in connection with or liability for the
        Notes or the Note Indentures; any guarantees, indemnities, claims for
        contribution, share pledges or Encumbrances related to the Notes or the Note
        Indentures; any right or claim in connection with or liability for the Existing
        Shares, Equity Interests or any other securities of SFC; any rights or claims of the
        Third Party Defendants relating to SFC or the Subsidiaries;

(j)     any and all Causes of Action against Newco, Newco II, the directors and officers
        of Newco, the directors and officers of Newco II, the Noteholders, members of
        the *ad hoc* committee of Noteholders, the Trustees, the Transfer Agent, the
        Monitor, FTI Consulting Canada Inc., FTI HK, the Named Directors and Officers,
        counsel for the current Directors of SFC, counsel for the Monitor, counsel for the
        Trustees, the SFC Advisors, the Noteholder Advisors, and each and every
        member (including members of any committee or governance council), partner or
        employee of any of the foregoing, based in whole or in part on any act, omission,
        transaction, duty, responsibility, indebtedness, liability, obligation, dealing or
        other occurrence existing or taking place on or prior to the Plan Implementation

Date (or, with respect to actions taken pursuant to the Plan after the Plan Implementation Date, the date of such actions) in any way relating to, arising out of, leading up to, for, or in connection with the CCAA Proceeding, RSA, the Restructuring Transaction, the Plan, any proceedings commenced with respect to or in connection with the Plan, or the transactions contemplated by the RSA and the Plan, including the creation of Newco and/or Newco II and the creation, issuance or distribution of the Newco Shares, the Newco Notes, the Litigation Trust or the Litigation Trust Interests, provided that nothing in this paragraph shall release or discharge any of the Persons listed in this paragraph from or in respect of any obligations any of them may have under or in respect of the RSA, the Plan or under or in respect of any of Newco, Newco II, the Newco Shares, the Newco Notes, the Litigation Trust or the Litigation Trust Interests, as the case may be;

(k)     any and all Causes of Action against the Subsidiaries for or in connection with any Claim (including, notwithstanding anything to the contrary herein, any Unaffected Claim); any Affected Claim (including any Affected Creditor Claim, Equity Claim, D&O Claim, D&O Indemnity Claim and Noteholder Class Action Claim); any Section 5.1(2) D&O Claim; any Conspiracy Claim; any Continuing Other D&O Claim; any Non-Released D&O Claim; any Class Action Claim; any Class Action Indemnity Claim; any right or claim in connection with or liability for the Notes or the Note Indentures; any guarantees, indemnities, share pledges or Encumbrances relating to the Notes or the Note Indentures; any right or claim in connection with or liability for the Existing Shares, Equity Interests or any other securities of SFC; any rights or claims of the Third Party Defendants relating to SFC or the Subsidiaries; any right or claim in connection with or liability for the RSA, the Plan, the CCAA Proceedings, the Restructuring Transaction, the Litigation Trust, the business and affairs of SFC and the Subsidiaries (whenever or however conducted), the administration and/or management of SFC and the Subsidiaries, or any public filings, statements, disclosures or press releases relating to SFC; any right or claim in connection with or liability for any indemnification obligation to Directors or Officers of SFC or the Subsidiaries pertaining to SFC, the Notes, the Note Indentures, the Existing Shares, the Equity Interests, any other securities of SFC or any other right, claim or liability for or in connection with the RSA, the Plan, the CCAA Proceedings, the Restructuring Transaction, the Litigation Trust, the business and affairs of SFC (whenever or however conducted), the administration and/or management of SFC, or any public filings, statements, disclosures or press releases relating to SFC; any right or claim in connection with or liability for any guaranty, indemnity or claim for contribution in respect of any of the foregoing; and any Encumbrance in respect of the foregoing;

(l)     all Subsidiary Intercompany Claims as against SFC (which are assumed by Newco and then Newco II pursuant to the Plan);

(m)    any entitlements of Ernst & Young to receive distributions of any kind (including Newco Shares, Newco Notes and Litigation Trust Interests) under this Plan;

(n)     any entitlements of the Named Third Party Defendants to receive distributions of
        any kind (including Newco Shares, Newco Notes and Litigation Trust Interests)
        under this Plan; and

(o)     any entitlements of the Underwriters to receive distributions of any kind
        (including Newco Shares, Newco Notes and Litigation Trust Interests) under this
        Plan.

## 7.2     Claims Not Released

Notwithstanding anything to the contrary in section 7.1 hereof, nothing in this
Plan shall waive, compromise, release, discharge, cancel or bar any of the following:

(a)     SFC of its obligations under the Plan and the Sanction Order;

(b)     SFC from or in respect of any Unaffected Claims (provided that recourse against
        SFC in respect of Unaffected Claims shall be limited in the manner set out in
        section 4.2 hereof);

(c)     any Directors or Officers of SFC or the Subsidiaries from any Non-Released
        D&O Claims, Conspiracy Claims or any Section 5.1(2) D&O Claims, provided
        that recourse against the Named Directors or Officers of SFC in respect of any
        Section 5.1(2) D&O Claims and any Conspiracy Claims shall be limited in the
        manner set out in section 4.9(e) hereof;

(d)     any Other Directors and/or Officers from any Continuing Other D&O Claims,
        provided that recourse against the Other Directors and/or Officers in respect of the
        Indemnified Noteholder Class Action Claims shall be limited in the manner set
        out in section 4.4(b)(i) hereof;

(e)     the Third Party Defendants from any claim, liability or obligation of whatever
        nature for or in connection with the Class Action Claims, provided that the
        maximum aggregate liability of the Third Party Defendants collectively in respect
        of the Indemnified Noteholder Class Action Claims shall be limited to the
        Indemnified Noteholder Class Action Limit pursuant to section 4.4(b)(i) hereof
        and the releases set out in sections 7.1(e) and 7.1(f) hereof and the injunctions set
        out in section 7.3 hereof;

(f)     Newco II from any liability to the applicable Subsidiaries in respect of the
        Subsidiary Intercompany Claims assumed by Newco II pursuant to section 6.4(x)
        hereof;

(g)     the Subsidiaries from any liability to Newco II in respect of the SFC
        Intercompany Claims conveyed to Newco II pursuant to section 6.4(x) hereof;

(h)     SFC of or from any investigations by or non-monetary remedies of the Ontario
        Securities Commission, provided that, for greater certainty, all monetary rights,
        claims or remedies of the Ontario Securities Commission against SFC shall be

treated as Affected Creditor Claims in the manner described in section 4.1 hereof and released pursuant to section 7.1(b) hereof;

(i)    the Subsidiaries from their respective indemnification obligations (if any) to Directors or Officers of the Subsidiaries that relate to the ordinary course operations of the Subsidiaries and that have no connection with any of the matters listed in section 7.1(i) hereof;

(j)    SFC or the Directors and Officers from any Insured Claims, provided that recovery for Insured Claims shall be irrevocably limited to recovery solely from the proceeds of Insurance Policies paid or payable on behalf of SFC or its Directors and Officers in the manner set forth in section 2.4 hereof;

(k)    insurers from their obligations under insurance policies; and

(l)    any Released Party for fraud or criminal conduct.

**7.3    Injunctions**

All Persons are permanently and forever barred, estopped, stayed and enjoined, on and after the Effective Time, with respect to any and all Released Claims, from (i) commencing, conducting or continuing in any manner, directly or indirectly, any action, suits, demands or other proceedings of any nature or kind whatsoever (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against the Released Parties; (ii) enforcing, levying, attaching, collecting or otherwise recovering or enforcing by any manner or means, directly or indirectly, any judgment, award, decree or order against the Released Parties or their property; (iii) commencing, conducting or continuing in any manner, directly or indirectly, any action, suits or demands, including without limitation, by way of contribution or indemnity or other relief, in common law, or in equity, breach of trust or breach of fiduciary duty or under the provisions of any statute or regulation, or other proceedings of any nature or kind whatsoever (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against any Person who makes such a claim or might reasonably be expected to make such a claim, in any manner or forum, against one or more of the Released Parties; (iv) creating, perfecting, asserting or otherwise enforcing, directly or indirectly, any lien or encumbrance of any kind against the Released Parties or their property; or (v) taking any actions to interfere with the implementation or consummation of this Plan; provided, however, that the foregoing shall not apply to the enforcement of any obligations under the Plan.

**7.4    Timing of Releases and Injunctions**

All releases and injunctions set forth in this Article 7 shall become effective on the Plan Implementation Date at the time or times and in the manner set forth in section 6.4 hereof.

**7.5    Equity Class Action Claims Against the Third Party Defendants**

Subject only to Article 11 hereof, and notwithstanding anything else to the contrary in this Plan, any Class Action Claim against the Third Party Defendants that relates to the purchase, sale or ownership of Existing Shares or Equity Interests: (a) is unaffected by this Plan; (b) is not

discharged, released, cancelled or barred pursuant to this Plan; (c) shall be permitted to continue as against the Third Party Defendants; (d) shall not be limited or restricted by this Plan in any manner as to quantum or otherwise (including any collection or recovery for any such Class Action Claim that relates to any liability of the Third Party Defendants for any alleged liability of SFC); and (e) does not constitute an Equity Claim or an Affected Claim under this Plan.

## ARTICLE 8
## COURT SANCTION

### 8.1   Application for Sanction Order

If the Plan is approved by the Required Majority, SFC shall apply for the Sanction Order on or before the date set for the hearing of the Sanction Order or such later date as the Court may set.

### 8.2   Sanction Order

The Sanction Order shall, among other things:

(a)   declare that: (i) the Plan has been approved by the Required Majority in conformity with the CCAA; (ii) the activities of SFC have been in reasonable compliance with the provisions of the CCAA and the Orders of the Court made in this CCAA Proceeding in all respects; (iii) the Court is satisfied that SFC has not done or purported to do anything that is not authorized by the CCAA; and (iv) the Plan and the transactions contemplated thereby are fair and reasonable;

(b)   declare that the Plan and all associated steps, compromises, releases, discharges, cancellations, transactions, arrangements and reorganizations effected thereby are approved, binding and effective as herein set out as of the Plan Implementation Date;

(c)   confirm the amount of each of the Unaffected Claims Reserve, the Administration Charge Reserve and the Monitor's Post-Implementation Reserve;

(d)   declare that, on the Plan Implementation Date, all Affected Claims shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred, subject only to the right of the applicable Persons to receive the distributions to which they are entitled pursuant to the Plan;

(e)   declare that, on the Plan Implementation Date, the ability of any Person to proceed against SFC or the Subsidiaries in respect of any Released Claims shall be forever discharged and restrained, and all proceedings with respect to, in connection with or relating to any such matter shall be permanently stayed;

(f)   declare that the steps to be taken, the matters that are deemed to occur and the compromises and releases to be effective on the Plan Implementation Date are deemed to occur and be effected in the sequential order contemplated by section 6.4, beginning at the Effective Time;

(g)     declare that, on the Plan Implementation Date, the SFC Assets vest absolutely in Newco and that, in accordance with section 6.4(x) hereof, the SFC Assets transferred by Newco to Newco II vest absolutely in Newco II, in each case in accordance with the terms of section 6.6(a) hereof;

(h)     confirm that the Court was satisfied that: (i) the hearing of the Sanction Order was open to all of the Affected Creditors and all other Persons with an interest in SFC and that such Affected Creditors and other Persons were permitted to be heard at the hearing in respect of the Sanction Order; (ii) prior to the hearing, all of the Affected Creditors and all other Persons on the service list in respect of the CCAA Proceeding were given adequate notice thereof;

(i)     provide that the Court was advised prior to the hearing in respect of the Sanction Order that the Sanction Order will be relied upon by SFC and Newco as an approval of the Plan for the purpose of relying on the exemption from the registration requirements of the United States Securities Act of 1933, as amended, pursuant to Section 3(a)(10) thereof for the issuance of the Newco Shares, Newco Notes and, to the extent they may be deemed to be securities, the Litigation Trust Interests, and any other securities to be issued pursuant to the Plan;

(j)     declare that all obligations, agreements or leases to which (i) SFC remains a party on the Plan Implementation Date, or (ii) Newco and/or Newco II becomes a party as a result of the conveyance of the SFC Assets to Newco and the further conveyance of the SFC Assets to Newco II on the Plan Implementation Date, shall be and remain in full force and effect, unamended, as at the Plan Implementation Date and no party to any such obligation or agreement shall on or following the Plan Implementation Date, accelerate, terminate, refuse to renew, rescind, refuse to perform or otherwise disclaim or resiliate its obligations thereunder, or enforce or exercise (or purport to enforce or exercise) any right or remedy under or in respect of any such obligation or agreement, by reason:

    (i)     of any event which occurred prior to, and not continuing after, the Plan Implementation Date, or which is or continues to be suspended or waived under the Plan, which would have entitled any other party thereto to enforce those rights or remedies;

    (ii)    that SFC sought or obtained relief or has taken steps as part of the Plan or under the CCAA;

    (iii)   of any default or event of default arising as a result of the financial condition or insolvency of SFC;

    (iv)    of the completion of any of the transactions contemplated under the Plan, including the transfer, conveyance and assignment of the SFC Assets to Newco and the further transfer, conveyance and assignment of the SFC Assets by Newco to Newco II; or