(v)     of any compromises, settlements, restructurings, recapitalizations or reorganizations effected pursuant to the Plan;

(k)     stay the commencing, taking, applying for or issuing or continuing any and all steps or proceedings, including without limitation, administrative hearings and orders, declarations or assessments, commenced, taken or proceeded with or that may be commenced, taken or proceed with to advance any Released Claims;

(l)     stay as against Ernst & Young the commencing, taking, applying for or issuing or continuing any and all steps or proceedings (other than all steps or proceedings to implement the Ernst & Young Settlement) pursuant to the terms of the Order of the Honourable Justice Morawetz dated May 8, 2012 between (i) the Plan Implementation Date and (ii) the earlier of the Ernst & Young Settlement Date or such other date as may be ordered by the Court on a motion to the Court on reasonable notice to Ernst & Young;

(m)     declare that in no circumstances will the Monitor have any liability for any of SFC's tax liability regardless of how or when such liability may have arisen;

(n)     authorize the Monitor to perform its functions and fulfil its obligations under the Plan to facilitate the implementation of the Plan;

(o)     direct and deem the Trustees to release, discharge and cancel any guarantees, indemnities, Encumbrances or other obligations owing by or in respect of any Subsidiary relating to the Notes or the Note Indentures;

(p)     declare that upon completion by the Monitor of its duties in respect of SFC pursuant to the CCAA and the Orders, the Monitor may file with the Court a certificate of Plan Implementation stating that all of its duties in respect of SFC pursuant to the CCAA and the Orders have been completed and thereupon, FTI Consulting Canada Inc. shall be deemed to be discharged from its duties as Monitor and released of all claims relating to its activities as Monitor; and

(q)     declare that, on the Plan Implementation Date, each of the Charges shall be discharged, released and cancelled, and that any obligations secured thereby shall satisfied pursuant to section 4.2(b) hereof, and that from and after the Plan Implementation Date the Administration Charge Reserve shall stand in place of the Administration Charge as security for the payment of any amounts secured by the Administration Charge;

(r)     declare that the Monitor may not make any payment from the Monitor's Post-Implementation Plan Reserve to any third party professional services provider (other than its counsel) that exceeds $250,000 (alone or in a series of related payments) without the prior consent of the Initial Consenting Noteholders or an Order of the Court;

(s)     declare that SFC and the Monitor may apply to the Court for advice and direction in respect of any matters arising from or under the Plan;

(t)     declare that, subject to the due performance of its obligations as set forth in the Plan and subject to its compliance with any written directions or instructions of the Monitor and/or directions of the Court in the manner set forth in the Plan, SFC Escrow Co. shall have no liabilities whatsoever arising from the performance of its obligations under the Plan;

(u)     order and declare that all Persons with Unresolved Claims shall have standing in any proceeding in respect of the determination or status of any Unresolved Claim, and that Goodmans LLP (in its capacity as counsel to the Initial Consenting Noteholders) shall have standing in any such proceeding on behalf of the Initial Consenting Notheolders (in their capacity as Affected Creditors with Proven Claims);

(v)     order and declare that, from and after the Plan Implementation Date, Newco will be permitted, in its sole discretion and on terms acceptable to Newco, to advance additional cash amounts to the Litigation Trustee from time to time for the purpose of providing additional financing to the Litigation Trust, including the provision of such additional amounts as a non-interest bearing loan to the Litigation Trust that is repayable to Newco on similar terms and conditions as the Litigation Funding Receivable;

(w)     order and declare that: (i) subject to the prior consent of the Initial Consenting Noteholders, each of the Monitor and the Litigation Trustee shall have the right to seek and obtain an order from any court of competent jurisdiction, including an Order of the Court in the CCAA or otherwise, that gives effect to any releases of any Litigation Trust Claims agreed to by the Litigation Trustee in accordance with the Litigation Trust Agreement, and (ii) in accordance with this section 8.2(w), all Affected Creditors shall be deemed to consent to any such releases in any such proceedings;

(x)     order and declare that, prior to the Effective Time, SFC shall: (i) preserve or cause to be preserved copies of any documents (as such term is defined in the *Rules of Civil Procedure* (Ontario)) that are relevant to the issues raised in the Class Actions; and (ii) make arrangements acceptable to SFC, the Monitor, the Initial Consenting Noteholders, counsel to Ontario Class Action Plaintiffs, counsel to Ernst & Young, counsel to the Underwriters and counsel to the Named Third Party Defendants to provide the parties to the Class Actions with access thereto, subject to customary commercial confidentiality, privilege or other applicable restrictions, including lawyer-client privilege, work product privilege and other privileges or immunities, and to restrictions on disclosure arising from s. 16 of the *Securities Act* (Ontario) and comparable restrictions on disclosure in other relevant jurisdictions, for purposes of prosecuting and/or defending the Class Actions, as the case may be, provided that nothing in the foregoing reduces or otherwise limits the parties' rights to production and discovery in accordance with the *Rules of Civil Procedure* (Ontario) and the *Class Proceedings Act, 1992* (Ontario);

(y)     order that releases and injunctions set forth in Article 7 of this Plan are effective
        on the Plan Implementation Date at the time or times and in the manner set forth
        in section 6.4 hereof;

(z)     order that the Ernst & Young Release shall become effective on the Ernst &
        Young Settlement Date in the manner set forth in section 11.1 hereof;

(aa)    order that any Named Third Party Defendant Releases shall become effective if
        and when the terms and conditions of sections 11.2(a), 11.2(b), 11.2(c) have been
        fulfilled.;

(bb)    order and declare that the matters described in Article 11 hereof shall occur
        subject to and in accordance with the terms and conditions of Article 11; and

(cc)    declare that section 95 to 101 of the BIA shall not apply to any of the transactions
        implemented pursuant to the Plan.

If agreed by SFC, the Monitor and the Initial Consenting Noteholders, any of the relief to be
included in the Sanction Order pursuant to this section 8.2 in respect of matters relating to the
Litigation Trust may instead be included in a separate Order of the Court satisfactory to SFC, the
Monitor and the Initial Consenting Noteholders granted prior to the Plan Implementation Date.

## ARTICLE 9
## CONDITIONS PRECEDENT AND IMPLEMENTATION

### 9.1     Conditions Precedent to Implementation of the Plan

The implementation of the Plan shall be conditional upon satisfaction or waiver of the
following conditions prior to or at the Effective Time, each of which is for the benefit of SFC
and the Initial Consenting Noteholders and may be waived only by SFC and the Initial
Consenting Noteholders collectively; provided, however, that the conditions in sub-paragraphs
(g), (h), (n), (o), (q), (r), (u), (z), (ff), (gg), (mm), (ll) and (nn) shall only be for the benefit of the
Initial Consenting Noteholders and, if not satisfied on or prior to the Effective Time, may be
waived only by the Initial Consenting Noteholders; and provided further that such conditions
shall not be enforceable by SFC if any failure to satisfy such conditions results from an action,
error, omission by or within the control of SFC and such conditions shall not be enforceable by
the Initial Consenting Noteholders if any failure to satisfy such conditions results from an action,
error, omission by or within the control of the Initial Consenting Noteholders:

*Plan Approval Matters*

(a)     the Plan shall have been approved by the Required Majority and the Court, and in
        each case the Plan shall have been approved in a form consistent with the RSA or
        otherwise acceptable to SFC and the Initial Consenting Noteholders, each acting
        reasonably;

(b)     the Sanction Order shall have been made and shall be in full force and effect prior
        to December 17, 2012 (or such later date as may be consented to by SFC and the

Initial Consenting Noteholders), and all applicable appeal periods in respect thereof shall have expired and any appeals therefrom shall have been disposed of by the applicable appellate court;

(c)    the Sanction Order shall be in a form consistent with the Plan or otherwise acceptable to SFC and the Initial Consenting Noteholders, each acting reasonably;

(d)    all filings under Applicable Laws that are required in connection with the Restructuring Transaction shall have been made and any regulatory consents or approvals that are required in connection with the Restructuring Transaction shall have been obtained and, in the case of waiting or suspensory periods, such waiting or suspensory periods shall have expired or been terminated; without limiting the generality of the foregoing, such filings and regulatory consents or approvals include:

(i)    any required filings, consents and approvals of securities regulatory authorities in Canada;

(ii)    a consultation with the Executive of the Hong Kong Securities and Futures Commission that is satisfactory to SFC, the Monitor and the Initial Consenting Noteholders confirming that implementation of the Restructuring Transaction will not result in an obligation arising for Newco, its shareholders, Newco II or any Subsidiary to make a mandatory offer to acquire shares of Greenheart;

(iii)    the submission by SFC and each applicable Subsidiary of a Circular 698 tax filing with all appropriate tax authorities in the PRC within the requisite time prior to the Plan Implementation Date, such filings to be in form and substance satisfactory to the Initial Consenting Noteholders; and

(iv)    if notification is necessary or desirable under the *Antimonopoly Law of People's Republic of China* and its implementation rules, the submission of all antitrust filings considered necessary or prudent by the Initial Consenting Noteholders and the acceptance and (to the extent required) approval thereof by the competent Chinese authority, each such filing to be in form and substance satisfactory to the Initial Consenting Noteholders;

(e)    there shall not be in effect any preliminary or final decision, order or decree by a Governmental Entity, no application shall have been made to any Governmental Entity, and no action or investigation shall have been announced, threatened or commenced by any Governmental Entity, in consequence of or in connection with the Restructuring Transaction that restrains, impedes or prohibits (or if granted could reasonably be expected to restrain, impede or prohibit) the Restructuring Transaction or any material part thereof or requires or purports to require a variation of the Restructuring Transaction, and SFC shall have provided the Initial Consenting Noteholders with a certificate signed by an officer of SFC, without

personal liability on the part of such officer, certifying compliance with this
Section 9.1(e) as of the Plan Implementation Date;

### *Newco and Newco II Matters*

(f)    the organization, incorporating documents, articles, by-laws and other constating
documents of Newco and Newco II (including any shareholders agreement,
shareholder rights plan and classes of shares (voting and non-voting)) and any
affiliated or related entities formed in connection with the Restructuring
Transaction or the Plan, and all definitive legal documentation in connection with
all of the foregoing, shall be acceptable to the Initial Consenting Noteholders and
in form and in substance reasonably satisfactory to SFC;

(g)    the composition of the board of directors of Newco and Newco II and the senior
management and officers of Newco and Newco II that will assume office, or that
will continue in office, as applicable, on the Plan Implementation Date shall be
acceptable to the Initial Consenting Noteholders;

(h)    the terms of employment of the senior management and officers of Newco and
Newco II shall be acceptable to the Initial Consenting Noteholders;

(i)    except as expressly set out in this Plan, neither Newco nor Newco II shall have:
(i) issued or authorized the issuance of any shares, notes, options, warrants or
other securities of any kind, (ii) become subject to any Encumbrance with respect
to its assets or property; (iii) become liable to pay any indebtedness or liability of
any kind (other than as expressly set out in section 6.4 hereof); or (iv) entered into
any Material agreement;

(j)    any securities that are formed in connection with the Plan, including the Newco
Shares and the Newco Notes, when issued and delivered pursuant to the Plan,
shall be duly authorized, validly issued and fully paid and non-assessable and the
issuance and distribution thereof shall be exempt from all prospectus and
registration requirements of any applicable securities, corporate or other law,
statute, order, decree, consent decree, judgment, rule, regulation, ordinance,
notice, policy or other pronouncement having the effect of law applicable in the
provinces of Canada;

(k)    Newco shall not be a reporting issuer (or equivalent) in any province of Canada or
any other jurisdiction;

(l)    all of the steps, terms, transactions and documents relating to the conveyance of
the SFC Assets to Newco and the further conveyance of the SFC Assets by
Newco to Newco II in accordance with the Plan shall be in form and in substance
acceptable to SFC and the Initial Consenting Noteholders;

(m)    all of the following shall be in form and in substance acceptable to the Initial
Consenting Noteholders and reasonably satisfactory to SFC: (i) the Newco
Shares; (ii) the Newco Notes (including the aggregate principal amount of the

Newco Notes); (iii) any trust indenture or other document governing the terms of the Newco Notes; and (iv) the number of Newco Shares and Newco Notes to be issued in accordance with this Plan;

## *Plan Matters*

(n)  the Indemnified Noteholder Class Action Limit shall be acceptable to the Initial Consenting Noteholders;

(o)  the aggregate amount of the Proven Claims held by Ordinary Affected Creditors shall be acceptable to the Initial Consenting Noteholders;

(p)  the amount of each of the Unaffected Claims Reserve and the Administration Charge Reserve shall, in each case, be acceptable to SFC, the Monitor and the Initial Consenting Noteholders;

(q)  the amount of the Monitor's Post-Implementation Reserve and the amount of any Permitted Continuing Retainers shall be acceptable to the Initial Consenting Noteholders, and the Initial Consenting Noteholders shall be satisfied that all outstanding monetary retainers held by any SFC Advisors (net of any Permitted Continuing Retainers) have been repaid to SFC on the Plan Implementation Date;

(r)  **[Intentionally deleted]**;

(s)  the amount of each of the following shall be acceptable to SFC, the Monitor and the Initial Consenting Noteholders: (i) the aggregate amount of Lien Claims to be satisfied by the return to the applicable Lien Claimants of the applicable secured property in accordance with section 4.2(c)(i) hereof; and (ii) the aggregate amount of Lien Claims to be repaid in cash on the Plan Implementation Date in accordance with section 4.2(c)(ii) hereof;

(t)  the aggregate amount of Unaffected Claims, and the aggregate amount of the Claims listed in each subparagraph of the definition of "Unaffected Claims" shall, in each case, be acceptable to SFC, the Monitor and the Initial Consenting Noteholders;

(u)  the aggregate amount of Unresolved Claims and the amount of the Unresolved Claims Reserve shall, in each case, be acceptable to the Initial Consenting Noteholders and shall be confirmed in the Sanction Order;

(v)  Litigation Trust and the Litigation Trust Agreement shall be in form and in substance acceptable to SFC and the Initial Consenting Noteholders, each acting reasonably, and the Litigation Trust shall be established in a jurisdiction that is acceptable to the Initial Consenting Noteholders and SFC, each acting reasonably;

(w)  SFC, the Monitor and the Initial Consenting Noteholders, each acting reasonably, shall be satisfied with the proposed use of proceeds and payments relating to all aspects of the Restructuring Transaction and the Plan, including, without

limitation, any change of control payments, consent fees, transaction fees, third party fees or termination or severance payments, in the aggregate of $500,000 or more, payable by SFC or any Subsidiary to any Person (other than a Governmental Entity) in respect of or in connection with the Restructuring Transaction or the Plan, including without limitation, pursuant to any employment agreement or incentive plan of SFC or any Subsidiary;

(x)     SFC, the Monitor and the Initial Consenting Noteholders, each acting reasonably, shall be satisfied with the status and composition of all liabilities, indebtedness and obligations of the Subsidiaries and all releases of the Subsidiaries provided for in the Plan and the Sanction Order shall be binding and effective as of the Plan Implementation Date;

*Plan Implementation Date Matters*

(y)     the steps required to complete and implement the Plan shall be in form and in substance satisfactory to SFC and the Initial Consenting Noteholders;

(z)     the Noteholders and the Early Consent Noteholders shall receive, on the Plan Implementation Date, all of the consideration to be distributed to them pursuant to the Plan;

(aa)    all of the following shall be in form and in substance satisfactory to SFC and the Initial Consenting Noteholders: (i) all materials filed by SFC with the Court or any court of competent jurisdiction in the United States, Canada, Hong Kong, the PRC or any other jurisdiction that relates to the Restructuring Transaction; (ii) the terms of any court-imposed charges on any of the assets, property or undertaking of any of SFC, including without limitation any of the Charges; (iii) the Initial Order; (iv) the Claims Procedure Order; (v) the Meeting Order; (vi) the Sanction Order; (vii) any other Order granted in connection with the CCAA Proceeding or the Restructuring Transaction by the Court or any other court of competent jurisdiction in Canada, the United States, Hong Kong, the PRC or any other jurisdiction; and (viii) the Plan (as it is approved by the Required Majority and the Sanction Order);

(bb)    any and all court-imposed charges on any assets, property or undertaking of SFC, including the Charges, shall be discharged on the Plan Implementation Date on terms acceptable to the Initial Consenting Noteholders and SFC, each acting reasonably;

(cc)    SFC shall have paid, in full, the Expense Reimbursement and all fees and costs owing to the SFC Advisors on the Plan Implementation Date, and neither Newco nor Newco II shall have any liability for any fees or expenses due to the SFC Advisors or the Noteholder Advisors either as at or following the Plan Implementation Date;

(dd)    SFC or the Subsidiaries shall have paid, in full all fees owing to each of Chandler Fraser Keating Limited and Spencer Stuart on the Plan Implementation Date, and

neither Newco nor Newco II shall have any liability for any fees or expenses due to either Chandler Fraser Keating Limited and Spencer Stuart as at or following the Plan Implementation Date;

(ee)    SFC shall have paid all Trustee Claims that are outstanding as of the Plan Implementation Date, and the Initial Consenting Noteholders shall be satisfied that SFC has made adequate provision in the Unaffected Claims Reserve for the payment of all Trustee Claims to be incurred by the Trustees after the Plan Implementation Date in connection with the performance of their respective duties under the Note Indentures or this Plan;

(ff)    there shall not exist or have occurred any Material Adverse Effect, and SFC shall have provided the Initial Consenting Noteholders with a certificate signed by an officer of the Company, without any personal liability on the part of such officer, certifying compliance with this section 9.1(ff) as of the Plan Implementation Date;

(gg)    there shall have been no breach of the Noteholder Confidentiality Agreements (as defined in the RSA) by SFC or any of the Sino-Forest Representatives (as defined therein) in respect of the applicable Initial Consenting Noteholder;

(hh)    the Plan Implementation Date shall have occurred no later than January 15, 2013 (or such later date as may be consented to by SFC and the Initial Consenting Noteholders);

*RSA Matters*

(ii)    all conditions set out in sections 6 and 7 of the RSA shall have been satisfied or waived in accordance with the terms of the RSA;

(jj)    the RSA shall not have been terminated;

*Other Matters*

(kk)    the organization, incorporating documents, articles, by-laws and other constating documents of SFC Escrow Co. and all definitive legal documentation in connection with SFC Escrow Co., shall be acceptable to the Initial Consenting Noteholders and the Monitor and in form and in substance reasonably satisfactory to SFC;

(ll)    except as expressly set out in this Plan, SFC Escrow Co. shall not have: (i) issued or authorized the issuance of any shares, notes, options, warrants or other securities of any kind, (ii) become subject to any Encumbrance with respect to its assets or property; (iii) acquired any assets or become liable to pay any indebtedness or liability of any kind (other than as expressly set out in this Plan); or (iv) entered into any agreement;

(mm)   the Initial Consenting Noteholders shall have completed due diligence in respect of SFC and the Subsidiaries and the results of such due diligence shall be acceptable to the Initial Consenting Noteholders prior to the date for the hearing of the Sanction Order, except in respect of any new material information or events arising or discovered on or after the date of the hearing for the Sanction Order of which the Initial Consenting Noteholders were previously unaware, in respect of which the date for the Initial Consenting Noteholders to complete such due diligence shall be the  Plan Implementation Date, provided that "new material information or events" for purposes of this Section 9.1(mm) shall not include any information or events disclosed prior to the date of the hearing for the Sanction Order in a press release issued by SFC, an affidavit filed with the Court by SFC or a Monitor's Report filed with the Court;

(nn)   if so requested by the Initial Consenting Noteholders, the Sanction Order shall have been recognized and confirmed as binding and effective pursuant to an order of a court of competent jurisdiction in Canada and any other jurisdiction requested by the Initial Consenting Noteholders, and all applicable appeal periods in respect of any such recognition order shall have expired and any appeals therefrom shall have been disposed of by the applicable appellate court;

(oo)   all press releases, disclosure documents and definitive agreements in respect of the Restructuring Transaction or the Plan shall be in form and substance satisfactory to SFC and the Initial Consenting Noteholders, each acting reasonably; and

(pp)   Newco and SFC shall have entered into arrangements reasonably satisfactory to SFC and the Initial Consenting Noteholders for ongoing preservation and access to the books and records of SFC and the Subsidiaries in existence as at the Plan Implementation Date, as such access may be reasonably requested by SFC or any Director or Officer in the future in connection with any administrative or legal proceeding, in each such case at the expense of the Person making such request.

For greater certainty, nothing in Article 11 hereof is a condition precedent to the implementation of the Plan.

## 9.2   Monitor's Certificate of Plan Implementation

Upon delivery of written notice from SFC and Goodmans LLP (on behalf of the Initial Consenting Noteholders) of the satisfaction of the conditions set out in section 9.1, the Monitor shall deliver to Goodmans LLP and SFC a certificate stating that the Plan Implementation Date has occurred and that the Plan and the Sanction Order are effective in accordance with their respective terms. Following the Plan Implementation Date, the Monitor shall file such certificate with the Court.

## ARTICLE 10
## ALTERNATIVE SALE TRANSACTION

**10.1   Alternative Sale Transaction**

At any time prior to the Plan Implementation Date (whether prior to or after the granting of the Sanction Order), and subject to the prior written consent of the Initial Consenting Noteholders, SFC may complete a sale of all or substantially all of the SFC Assets on terms that are acceptable to the Initial Consenting Noteholders (an **"Alternative Sale Transaction"**), provided that such Alternative Sale Transaction has been approved by the Court pursuant to section 36 of the CCAA on notice to the service list. In the event that such an Alternative Sale Transaction is completed, the terms and conditions of this Plan shall continue to apply in all respects, subject to the following:

(a)   The Newco Shares and Newco Notes shall not be distributed in the manner contemplated herein. Instead, the consideration paid or payable to SFC pursuant to the Alternative Sale Transaction (the **"Alternative Sale Transaction Consideration"**) shall be distributed to the Persons entitled to receive Newco Shares hereunder, and such Persons shall receive the Alternative Sale Transaction Consideration in the same proportions and subject to the same terms and conditions as are applicable to the distribution of Newco Shares hereunder.

(b)   All provisions in this Plan that address Newco or Newco II shall be deemed to be ineffective to the extent that they address Newco or Newco II, given that Newco and Newco II will not be required in connection with an Alternative Sale Transaction.

(c)   All provisions addressing the Newco Notes shall be deemed to be ineffective to the extent such provisions address the Newco Notes, given that the Newco Notes will not be required in connection with an Alternative Sale Transaction.

(d)   All provisions relating to the Newco Shares shall be deemed to address the Alternative Sale Transaction Consideration to the limited extent such provisions address the Newco Shares.

(e)   SFC, with the written consent of the Monitor and the Initial Consenting Noteholders, shall be permitted to make such amendments, modifications and supplements to the terms and conditions of this Plan as are necessary to: (i) facilitate the Alternative Sale Transaction; (ii) cause the Alternative Sale Transaction Consideration to be distributed in the same proportions and subject to the same terms and conditions as are subject to the distribution of Newco Shares hereunder; and (iii) complete the Alternative Sale Transaction and distribute the Alternative Sale Transaction Proceeds in a manner that is tax efficient for SFC and the Affected Creditors with Proven Claims, provided in each case that (y) a copy of such amendments, modifications or supplements is filed with the Court and served upon the service list; and (z) the Monitor is satisfied that such amendments, modifications or supplements do not materially alter the

proportionate entitlements of the Affected Creditors, as amongst themselves, to the consideration distributed pursuant to the Plan.

Except for the requirement of obtaining the prior written consent of the Initial Consenting Noteholders with respect to the matters set forth in this section 10.1 and subject to the approval of the Alternative Sale Transaction by the Court pursuant to section 36 of the CCAA (on notice to the service list), once this Plan has been approved by the Required Majority of Affected Creditors, no further meeting, vote or approval of the Affected Creditors shall be required to enable SFC to complete an Alternative Sale Transaction or to amend the Plan in the manner described in this 10.1.

## ARTICLE 11
## SETTLEMENT OF CLAIMS AGAINST THIRD PARTY DEFENDANTS

### 11.1    Ernst & Young

(a)    Notwithstanding anything to the contrary herein, subject to: (i) the granting of the Sanction Order; (ii) the issuance of the Settlement Trust Order (as may be modified in a manner satisfactory to the parties to the Ernst & Young Settlement and SFC (if occurring on or prior to the Plan Implementation Date), the Monitor and the Initial Consenting Noteholders, as applicable, to the extent, if any, that such modifications affect SFC, the Monitor or the Initial Consenting Noteholders, each acting reasonably); (iii) the granting of an Order under Chapter 15 of the United States Bankruptcy Code recognizing and enforcing the Sanction Order and the Settlement Trust Order in the United States; (iv) any other order necessary to give effect to the Ernst & Young Settlement (the orders referenced in (iii) and (iv) being collectively the "**Ernst & Young Orders**"); (v) the fulfillment of all conditions precedent in the Ernst & Young Settlement and the fulfillment by the Ontario Class Action Plaintiffs of all of their obligations thereunder; and (vi) the Sanction Order, the Settlement Trust Order and all Ernst & Young Orders being final orders and not subject to further appeal or challenge, Ernst & Young shall pay the settlement amount as provided in the Ernst & Young Settlement to the trust established pursuant to the Settlement Trust Order (the "**Settlement Trust**"). Upon receipt of a certificate from Ernst & Young confirming it has paid the settlement amount to the Settlement Trust in accordance with the Ernst & Young Settlement and the trustee of the Settlement Trust confirming receipt of such settlement amount, the Monitor shall deliver to Ernst & Young a certificate (the "**Monitor's Ernst & Young Settlement Certificate**") stating that (i) Ernst & Young has confirmed that the settlement amount has been paid to the Settlement Trust in accordance with the Ernst & Young Settlement; (ii) the trustee of the Settlement Trust has confirmed that such settlement amount has been received by the Settlement Trust; and (iii) the Ernst & Young Release is in full force and effect in accordance with the Plan. The Monitor shall thereafter file the Monitor's Ernst & Young Settlement Certificate with the Court.

(b)    Notwithstanding anything to the contrary herein, upon receipt by the Settlement Trust of the settlement amount in accordance with the Ernst & Young Settlement:

(i) all Ernst & Young Claims shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled, barred and deemed satisfied and extinguished as against Ernst & Young; (ii) section 7.3 hereof shall apply to Ernst & Young and the Ernst & Young Claims *mutatis mutandis* on the Ernst & Young Settlement Date; and (iii) none of the plaintiffs in the Class Actions shall be permitted to claim from any of the other Third Party Defendants that portion of any damages that corresponds to the liability of Ernst & Young, proven at trial or otherwise, that is the subject of the Ernst & Young Settlement.

(c)     In the event that the Ernst & Young Settlement is not completed in accordance with its terms, the Ernst & Young Release and the injunctions described in section 11.1(b) shall not become effective.

## 11.2   Named Third Party Defendants

(a)     Notwithstanding anything to the contrary in section 12.5(a) or 12.5(b) hereof, at any time prior to 10:00 a.m. (Toronto time) on December 6, 2012 or such later date as agreed in writing by the Monitor, SFC (if on or prior to the Plan Implementation Date) and the Initial Consenting Noteholders, Schedule "A" to this Plan may be amended, restated, modified or supplemented at any time and from time to time to add any Eligible Third Party Defendant as a "Named Third Party Defendant", subject in each case to the prior written consent of such Third Party Defendant, the Initial Consenting Noteholders, counsel to the Ontario Class Action Plaintiffs, the Monitor and, if occurring on or prior to the Plan Implementation Date, SFC. Any such amendment, restatement, modification and/or supplement of Schedule "A" shall be deemed to be effective automatically upon all such required consents being received. The Monitor shall: (A) provide notice to the service list of any such amendment, restatement, modification and/or supplement of Schedule "A"; (B) file a copy thereof with the Court; and (C) post an electronic copy thereof on the Website. All Affected Creditors shall be deemed to consent thereto any and no Court Approval thereof will be required.

(b)     Notwithstanding anything to the contrary herein, subject to: (i) the granting of the Sanction Order; (ii) the granting of the applicable Named Third Party Defendant Settlement Order; and (iii) the satisfaction or waiver of all conditions precedent contained in the applicable Named Third Party Defendant Settlement, the applicable Named Third Party Defendant Settlement shall be given effect in accordance with its terms. Upon receipt of a certificate (in form and in substance satisfactory to the Monitor) from each of the parties to the applicable Named Third Party Defendant Settlement confirming that all conditions precedent thereto have been satisfied or waived, and that any settlement funds have been paid and received, the Monitor shall deliver to the applicable Named Third Party Defendant a certificate (the "**Monitor's Named Third Party Settlement Certificate**") stating that (i) each of the parties to such Named Third Party Defendant Settlement has confirmed that all conditions precedent thereto have been satisfied or waived; (ii) any settlement funds have been paid and received; and (iii) immediately upon the delivery of the Monitor's Named Third Party

Settlement Certificate, the applicable Named Third Party Defendant Release will be in full force and effect in accordance with the Plan. The Monitor shall thereafter file the Monitor's Named Third Party Settlement Certificate with the Court.

(c)     Notwithstanding anything to the contrary herein, upon delivery of the Monitor's Named Third Party Settlement Certificate, any claims and Causes of Action shall be dealt with in accordance with the terms of the applicable Named Third Party Defendant Settlement, the Named Third Party Defendant Settlement Order and the Named Third Party Defendant Release. To the extent provided for by the terms of the applicable Named Third Party Defendant Release: (i) the applicable Causes of Action against the applicable Named Third Party Defendant shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled, barred and deemed satisfied and extinguished as against the applicable Named Third Party Defendant; and (ii) section 7.3 hereof shall apply to the applicable Named Third Party Defendant and the applicable Causes of Action against the applicable Named Third Party Defendant *mutatis mutandis* on the effective date of the Named Third Party Defendant Settlement.

## ARTICLE 12
## GENERAL

**12.1    Binding Effect**

On the Plan Implementation Date:

(a)     the Plan will become effective at the Effective Time;

(b)     the Plan shall be final and binding in accordance with its terms for all purposes on all Persons named or referred to in, or subject to, the Plan and their respective heirs, executors, administrators and other legal representatives, successors and assigns;

(c)     each Person named or referred to in, or subject to, the Plan will be deemed to have consented and agreed to all of the provisions of the Plan, in its entirety and shall be deemed to have executed and delivered all consents, releases, assignments and waivers, statutory or otherwise, required to implement and carry out the Plan in its entirety.

**12.2    Waiver of Defaults**

(a)     From and after the Plan Implementation Date, all Persons shall be deemed to have waived any and all defaults of SFC then existing or previously committed by SFC, or caused by SFC, the commencement of the CCAA Proceedings by SFC, any matter pertaining to the CCAA Proceedings, any of the provisions in the Plan or steps contemplated in the Plan, or non-compliance with any covenant, warranty, representation, term, provision, condition or obligation, expressed or implied, in any contract, instrument, credit document, indenture, note, lease,

guarantee, agreement for sale or other agreement, written or oral, and any and all amendments or supplements thereto, existing between such Person and SFC, and any and all notices of default and demands for payment or any step or proceeding taken or commenced in connection therewith under any such agreement shall be deemed to have been rescinded and of no further force or effect, provided that nothing shall be deemed to excuse SFC from performing its obligations under the Plan or be a waiver of defaults by SFC under the Plan and the related documents.

(b)     Effective on the Plan Implementation Date, any and all agreements that are assigned to Newco and/or to Newco II as part of the SFC Assets shall be and remain in full force and effect, unamended, as at the Plan Implementation Date, and no Person shall, following the Plan Implementation Date, accelerate, terminate, rescind, refuse to perform or otherwise repudiate its obligations under, or enforce or exercise any right (including any right of set-off, dilution or other remedy) or make any demand against Newco, Newco II or any Subsidiary under or in respect of any such agreement with Newco, Newco II or any Subsidiary, by reason of:

(i)     any event that occurred on or prior to the Plan Implementation Date that would have entitled any Person thereto to enforce those rights or remedies (including defaults or events of default arising as a result of the insolvency of SFC);

(ii)    the fact that SFC commenced or completed the CCAA Proceedings;

(iii)   the implementation of the Plan, or the completion of any of the steps, transactions or things contemplated by the Plan; or

(iv)    any compromises, arrangements, transactions, releases, discharges or injunctions effected pursuant to the Plan or this Order.

## 12.3    Deeming Provisions

In the Plan, the deeming provisions are not rebuttable and are conclusive and irrevocable.

## 12.4    Non-Consummation

SFC reserves the right to revoke or withdraw the Plan at any time prior to the Sanction Date, with the consent of the Monitor and the Initial Consenting Noteholders. If SFC so revokes or withdraws the Plan, or if the Sanction Order is not issued or if the Plan Implementation Date does not occur, (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan, including the fixing or limiting to an amount certain any Claim, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against SFC or any other Person; (ii) prejudice in any manner the rights of SFC or any other Person in any further proceedings involving SFC; or (iii) constitute an admission of any sort by SFC or any other Person.

## 12.5   Modification of the Plan

(a)   SFC may, at any time and from time to time, amend, restate, modify and/or
supplement the Plan with the consent of the Monitor and the Initial Consenting
Noteholders, provided that: any such amendment, restatement, modification or
supplement must be contained in a written document that is filed with the Court
and:

(i)   if made prior to or at the Meeting: (A) the Monitor, SFC or the Chair (as
defined in the Meeting Order) shall communicate the details of any such
amendment, restatement, modification and/or supplement to Affected
Creditors and other Persons present at the Meeting prior to any vote being
taken at the Meeting; (B) SFC shall provide notice to the service list of
any such amendment, restatement, modification and/or supplement and
shall file a copy thereof with the Court forthwith and in any event prior to
the Court hearing in respect of the Sanction Order; and (C) the Monitor
shall post an electronic copy of such amendment, restatement,
modification and/or supplement on the Website forthwith and in any event
prior to the Court hearing in respect of the Sanction Order; and

(ii)   if made following the Meeting: (A) SFC shall provide notice to the service
list of any such amendment, restatement, modification and/or supplement
and shall file a copy thereof with the Court; (B) the Monitor shall post an
electronic copy of such amendment, restatement, modification and/or
supplement on the Website; and (C) such amendment, restatement,
modification and/or supplement shall require the approval of the Court
following notice to the Affected Creditors and the Trustees.

(b)   Notwithstanding section 12.5(a), any amendment, restatement, modification or
supplement may be made by SFC: (i) if prior to the Sanction Date, with the
consent of the Monitor and the Initial Consenting Noteholders; and (ii) if after the
Sanction Date, with the consent of the Monitor and the Initial Consenting
Noteholders and upon approval by the Court, provided in each case that it
concerns a matter that, in the opinion of SFC, acting reasonably, is of an
administrative nature required to better give effect to the implementation of the
Plan and the Sanction Order or to cure any errors, omissions or ambiguities and is
not materially adverse to the financial or economic interests of the Affected
Creditors or the Trustees.

(c)   Any amended, restated, modified or supplementary plan or plans of compromise
filed with the Court and, if required by this section, approved by the Court, shall,
for all purposes, be and be deemed to be a part of and incorporated in the Plan.

## 12.6   Actions and Approvals of SFC after Plan Implementation

(a)   From and after the Plan Implementation Date, and for the purpose of this Plan
only:

(i)     if SFC does not have the ability or the capacity pursuant to Applicable Law to provide its agreement, waiver, consent or approval to any matter requiring SFC's agreement, waiver, consent or approval under this Plan, such agreement, waiver consent or approval may be provided by the Monitor; and

(ii)    if SFC does not have the ability or the capacity pursuant to Applicable Law to provide its agreement, waiver, consent or approval to any matter requiring SFC's agreement, waiver, consent or approval under this Plan, and the Monitor has been discharged pursuant to an Order, such agreement, waiver consent or approval shall be deemed not to be necessary.

## 12.7    Consent of the Initial Consenting Noteholders

For the purposes of this Plan, any matter requiring the agreement, waiver, consent or approval of the Initial Consenting Noteholders shall be deemed to have been agreed to, waived, consented to or approved by such Initial Consenting Noteholders if such matter is agreed to, waived, consented to or approved in writing by Goodmans LLP, provided that Goodmans LLP expressly confirms in writing (including by way of e-mail) to the applicable Person that it is providing such agreement, consent or waiver on behalf of Initial Consenting Noteholders.  In addition, following the Plan Implementation Date, any matter requiring the agreement, waiver, consent or approval of the Initial Consenting Noteholders shall: (i) be deemed to have been given if agreed to, waived, consented to or approved by Initial Consenting Noteholders in their capacities as holders of Newco Shares, Newco Notes or Litigation Trust Interests (provided that they continue to hold such consideration); and (ii) with respect to any matter concerning the Litigation Trust or the Litigation Trust Claims, be deemed to be given if agreed to, waived, consented to or approved by the Litigation Trustee.

## 12.8    Claims Not Subject to Compromise

Nothing in this Plan, including section 2.4 hereof, shall prejudice, compromise, release, discharge, cancel, bar or otherwise affect any: (i) Non-Released D&O Claims (except to the extent that such Non-Released D&O Claim is asserted against a Named Director or Officer, in which case section 4.9(g) applies); (ii) Section 5.1(2) D&O Claims or Conspiracy Claims (except that, in accordance with section 4.9(e) hereof, any Section 5.1(2) D&O Claims against Named Directors and Officers and any Conspiracy Claims against Named Directors and Officers shall be limited to recovery from any insurance proceeds payable in respect of such Section 5.1(2) D&O Claims or Conspiracy Claims, as applicable, pursuant to the Insurance Policies, and Persons with any such Section 5.1(2) D&O Claims against Named Directors and Officers or Conspiracy Claims against Named Directors and Officers shall have no right to, and shall not, make any claim or seek any recoveries from any Person, other than enforcing such Persons' rights to be paid from the proceeds of an Insurance Policy by the applicable insurer(s)); or (iii) any Claims that are not permitted to be compromised under section 19(2) of the *CCAA.*

### 12.9    Paramountcy

From and after the Effective Time on the Plan Implementation Date, any conflict between:

(a)    the Plan; and

(b)    the covenants, warranties, representations, terms, conditions, provisions or obligations, expressed or implied, of any contract, mortgage, security agreement, indenture, trust indenture, note, loan agreement, commitment letter, agreement for sale, lease or other agreement, written or oral and any and all amendments or supplements thereto existing between any Person and SFC and/or the Subsidiaries as at the Plan Implementation Date,

will be deemed to be governed by the terms, conditions and provisions of the Plan and the Sanction Order, which shall take precedence and priority.

### 12.10    Foreign Recognition

(a)    From and after the Plan Implementation Date, if requested by the Initial Consenting Noteholders or Newco, the Monitor (at the Monitor's election) or Newco (if the Monitor does not so elect) shall and is hereby authorized to seek an order of any court of competent jurisdiction recognizing the Plan and the Sanction Order and confirming the Plan and the Sanction Order as binding and effective in Canada, the United States, and any other jurisdiction so requested by the Initial Consenting Noteholders or Newco, as applicable.

(b)    Without limiting the generality of section 12.10(a), as promptly as practicable, but in no event later than the third Business Day following the Plan Implementation Date, a foreign representative of SFC (as agreed by SFC, the Monitor and the Initial Consenting Noteholders) (the "**Foreign Representative**") shall commence a proceeding in a court of competent jurisdiction in the United States seeking recognition of the Plan and the Sanction Order and confirming that the Plan and the Sanction Order are binding and effective in the United States, and the Foreign Representative shall use its best efforts to obtain such recognition order.

### 12.11    Severability of Plan Provisions

If, prior to the Sanction Date, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court, at the request of SFC and with the consent of the Monitor and the Initial Consenting Noteholders, shall have the power to either (a) sever such term or provision from the balance of the Plan and provide SFC with the option to proceed with the implementation of the balance of the Plan as of and with effect from the Plan Implementation Date, or (b) alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, and provided that SFC proceeds with the implementation of the Plan, the remainder of the terms and provisions of

the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.

### 12.12  Responsibilities of the Monitor

The Monitor is acting in its capacity as Monitor in the CCAA Proceeding and the Plan with respect to SFC and will not be responsible or liable for any obligations of SFC.

### 12.13  Different Capacities

Persons who are affected by this Plan may be affected in more than one capacity. Unless expressly provided herein to the contrary, a Person will be entitled to participate hereunder, and will be affected hereunder, in each such capacity. Any action taken by or treatment of a Person in one capacity will not affect such Person in any other capacity, unless expressly agreed by the Person, SFC, the Monitor and the Initial Consenting Noteholders in writing, or unless the Person's Claims overlap or are otherwise duplicative.

### 12.14  Notices

Any notice or other communication to be delivered hereunder must be in writing and reference the Plan and may, subject as hereinafter provided, be made or given by personal delivery, ordinary mail or by facsimile or email addressed to the respective parties as follows:

(a)    if to SFC or any Subsidiary:

> Sino-Forest Corporation
> Room 3815-29 38/F, Sun Hung Kai Centre
> 30 Harbour Road, Wanchai, Hong Kong

> Attention:    Mr. Judson Martin, Executive Vice-Chairman and Chief
> Executive Officer
> Fax:    +852-2877-0062

> with a copy by email or fax (which shall not be deemed notice) to:

> Bennett Jones LLP
> One First Canadian Place, Suite 3400
> Toronto, ON  M5X 1A4

> Attention:    Kevin J. Zych and Raj S. Sahni
> Email:    zychk@bennettjones.com and sahnir@bennettjones.com
> Fax:    416-863-1716

(b)    if to the Initial Consenting Noteholders:

        c/o Goodmans LLP
        Bay Adelaide Centre
        333 Bay Street, Suite 3400
        Toronto, Ontario M5H 2S7

| Attention: | Robert Chadwick and Brendan O'Neill |
| Email: | rchadwick@goodmans.ca and boneill@goodmans.ca |
| Fax: | 416-979-1234 |

and with a copy by email or fax (which shall not be deemed notice) to:

Hogan Lovells International LLP
11th Floor, One Pacific Place, 88 Queensway
Hong Kong  China

| Attention: | Neil McDonald |
| Email: | neil.mcdonald@hoganlovells.com |
| Fax: | 852-2219-0222 |

(c)    if to the Monitor:

        FTI Consulting Canada Inc.
        TD Waterhouse Tower
        79 Wellington Street West
        Suite 2010, P.O. Box 104
        Toronto, ON M5K 1G8

| Attention: | Greg Watson |
| Email: | greg.watson@fticonsulting.com |
| Fax: | (416) 649-8101 |

and with a copy by email or fax (which shall not be deemed notice) to:

Gowling Lafleur Henderson LLP
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, Ontario M5X 1G5

| Attention: | Derrick Tay |
| Email: | derrick.tay@gowlings.com |
| Fax: | (416) 862-7661 |

(d)    if to Ernst & Young:

        Ernst & Young LLP
        Ernst & Young Tower
        222 Bay Street
        P.O. Box 251

Toronto, ON M5K 1J7

Attention:     Doris Stamml
Email:         doris.stamml@ca.ey.com
Fax:           (416) 943-[TBD]

and with a copy by email or fax (which shall not be deemed notice) to:

Lenczner Slaght Royce Smith Griffin
130 Adelaide Street West, Suite 2600
Toronto, Ontario M5H 3P5

Attention:     Peter Griffin
Email:         pgriffin@litigate.com
Fax:           (416) 865-2921

or to such other address as any party may from time to time notify the others in accordance with this section.  Any such communication so given or made shall be deemed to have been given or made and to have been received on the day of delivery if delivered, or on the day of faxing or sending by other means of recorded electronic communication, provided that such day in either event is a Business Day and the communication is so delivered, faxed or sent before 5:00 p.m. (Toronto time) on such day.  Otherwise, such communication shall be deemed to have been given and made and to have been received on the next following Business Day.

**12.15  Further Assurances**

SFC, the Subsidiaries and any other Person named or referred to in the Plan will execute and deliver all such documents and instruments and do all such acts and things as may be necessary or desirable to carry out the full intent and meaning of the Plan and to give effect to the transactions contemplated herein.

**DATED** as of the 3rd day of December, 2012.

\6148176

## SCHEDULE A

## NAMED THIRD PARTY DEFENDANTS

1. The Underwriters, together with their respective present and former affiliates, partners, associates, employees, servants, agents, contractors, directors, officers, insurers and successors, administrators, heirs and assigns, excluding any Director or Officer and successors, administrators, heirs and assigns of any Director or Officer in their capacity as such.

2. Ernst & Young LLP (Canada), Ernst & Young Global Limited and all other member firms thereof, together with their respective present and former affiliates, partners, associates, employees, servants, agents, contractors, directors, officers, insurers and successors, administrators, heirs and assigns, excluding any Director or Officer and successors, administrators, heirs and assigns of any Director or Officer in their capacity as such, in the event that the Ernst & Young Settlement is not completed.

3. BDO Limited, together with its respective present and former affiliates, partners, associates, employees, servants, agents, contractors, directors, officers, insurers and successors, administrators, heirs and assigns, excluding any Director or Officer and successors, administrators, heirs and assigns of any Director or Officer in their capacity as such.

### Schedule "B"
## FORM OF MONITOR'S CERTIFICATE OF PLAN IMPLEMENTATION

Court File No. CV-12-9667-00CL

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### COMMERCIAL LIST

IN THE MATTER OF THE *COMPANIES' CREDITORS
ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF SINO-FOREST CORPORATION

### MONITOR'S CERTIFICATE
### (Plan Implementation)

All capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Plan of Compromise and Reorganization of Sino-Forest Corporation ("**SFC**") dated December 3, 2012 (the "**Plan**"), which is attached as Schedule "A" to the Order of the Honourable Mr. Justice Morawetz made in these proceedings on the [7th] day of December, 2012 (the "**Order**"), as such Plan may be further amended, varied or supplemented from time to time in accordance with the terms thereof.

Pursuant to paragraph 12 of the Order, FTI Consulting Canada Inc. (the "**Monitor**") in its capacity as Court-appointed Monitor of SFC delivers to SFC and Goodmans LLP this certificate and hereby certifies that:

1.      The Monitor has received written notice from SFC and Goodmans LLP (on behalf of the Initial Consenting Noteholders) that the conditions precedent set out in section 9.1 of the Plan have been satisfied or waived in accordance with the terms of the Plan; and

2.      The Plan Implementation Date has occurred and the Plan and the Plan Sanction Order are effective in accordance with their terms.

24

**DATED** at the City of Toronto, in the Province of Ontario, this ■ day of ■ , 201■.

        **FTI CONSULTING CANADA INC.,** in its
        capacity as Court-appointed Monitor of the Sino-
        Forest Corporation and not in its personal capacity


      By:   _____

            Name:
            Title:

25

Schedule "C"

**Industry Canada** Industrie Canada

Canada Business Loi canadienne sur les
Corporations Act sociétés par actions

| FORM 14 | FORMULAIRE 14 |
| ARTICLES OF REORGANIZATION | CLAUSES DE RÉORGANISATION |
| (SECTION 191) | (ARTICLE 191) |

| 1 -- Name of Corporation - Dénomination sociale de la société | 2 -- Corporation No. - N° de la société |
|---|---|
| Sino-Forest Corporation | 409023-3 |

| 3 -- In accordance with the order for reorganization, the articles of Incorporation are amended as follows: | Conformément à l'ordonnance de réorganisation, les statuts constitutifs sont modifiés comme suit : |

Please see Schedule A attached hereto.

| Signature | Printed Name - Nom en lettres moulées | 4 -- Capacity of - En qualité de | 6 -- Tel. N°, - N° de tél, |
|---|---|---|---|

FOR DEPARTMENTAL USE ONLY - À L'USAGE DU MINISTÈRE SEULEMENT

IC3409 (2000/00)

Canada

## Schedule A

3. In accordance with the order for reorganization, the articles of continuance of the Corporation dated June 25, 2002, as amended by articles of amendment dated June 22, 2004, are amended as follows:

(a) to decrease the minimum number of directors of the Corporation from three (3) directors to one (1) director;

(b) to create a new class of shares consisting of an unlimited number of "Class A Common Shares" having the following rights, privileges, restrictions and conditions:

The holders of Class A Common Shares are entitled:

(i) to two (2) votes per Class A Common Share at any meeting of shareholders of the Corporation, except meetings at which only holders of a specified class of shares are entitled to vote;

(ii) subject to the rights, privileges, restrictions and conditions attaching to shares of any other class or series of shares of the Corporation, to receive the remaining property of the Corporation upon dissolution pro rata with the holders of the Common Shares; and

(iii) subject to the rights, privileges, restrictions and conditions attaching to shares of any other class or series of shares of the Corporation, to receive any dividend declared by the directors of the Corporation and payable on the Class A Common Shares.

(c) to delete the rights, privileges, restrictions and conditions attaching to the Common Shares and to substitute therefor the following:

(1) The holders of Common Shares are entitled:

(i) to one (1) vote per Common Share at any meeting of shareholders of the Corporation, except meetings at which only holders of a specified class of shares are entitled to vote;

(ii) subject to the rights, privileges, restrictions and conditions attaching to shares of any other class or series of shares of the Corporation, to receive the remaining property of the Corporation upon dissolution pro rata with the holders of the Class A Common Shares; and

(iii) subject to the rights, privileges, restrictions and conditions attaching to shares of any other class or series of shares of the Corporation, to receive any dividend declared by the directors of the Corporation and payable on the Common Shares.

(2) At a time to be determined by the board of directors of the Corporation, the Common Shares shall be cancelled and eliminated for no consideration whatsoever, and shall be of no further force and effect, whether surrendered for cancellation or otherwise, and the obligation of the Corporation thereunder or in any way related thereto shall be deemed to

be satisfied and discharged and the holders of the Common Shares shall have no further rights or interest in the Corporation on account thereof and the rights, privileges, restrictions and conditions attached to the Common Shares shall be deleted.

(d) to confirm that the authorized capital of the Corporation consists of an unlimited number of Class A Common Shares, an unlimited number of Common Shares and an unlimited number of Preference Shares, issuable in series.

## Schedule "D"

1. Unaffected Claims Reserve:                    $1,500,000

2. Unresolved Claims Reserve for Defence Costs:  $8,000,000

IN THE MATTER OF THE *COMPANIES CREDITORS' ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF A PLAN OR COMPROMISE OR ARRANGEMENT OF SINO-FOREST CORPORATION

Court File No. CV-12-9667-00CL

| | |
|---|---|
| | ***ONTARIO***<br>**SUPERIOR COURT OF JUSTICE**<br>**(COMMERCIAL LIST)**<br><br>Proceedings commenced in Toronto |
| | **PLAN SANCTION ORDER** |
| | **BENNETT JONES LLP**<br>One First Canadian Place<br>Suite 3400, P.O. Box 130<br>Toronto, Ontario<br>M5X 1A4<br><br>Rob Staley  (LSUC #27115J)<br>Kevin Zych (LSUC #33129T)<br>Derek Bell (LSUC #43420J)<br>Jonathan Bell (LSUC #55457P)<br>Tel: 416-863-1200<br>Fax: 416-863-1716<br><br>Lawyers for Sino-Forest Corporation |

## APPENDIX "L" - NOTICE OF MOTION RE LEAVE TO
## APPEAL THE SANCTION ORDER

*(See Attached)*



Court of Appeal File No.:
S.C.J. Court File No.: CV-12-9667-00CL

## COURT OF APPEAL FOR ONTARIO

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF SINO-FOREST CORPORATION

Applicant

APPLICATION UNDER THE *COMPANIES CREDITORS'*
*ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

## NOTICE OF MOTION FOR LEAVE TO APPEAL

**THE APPELLANTS**, Invesco Canada Ltd., Northwest & Ethical Investments
L.P., and Comité Syndical National de Retraite Bâtirente Inc. ("Appellants"), seek leave to
appeal to a Panel of three judge of the Court of Appeal from the order dated December 10,
2012 ("Sanction Order") of the Honourable Mr. Justice Morawetz sanctioning Article 11
of the Plan of Compromise and Reorganization (the "Plan").

**THE APPELLANTS ASK** that leave be granted to appeal from sections 40 and 41
of the Sanction Order which sanctioned Article 11 of the Plan.

## PROPOSED METHOD OF HEARING:

The motion will be heard in writing, 36 days after service of the moving party's
motion record, factum and transcripts, if any, or on the filing of the moving party's reply
factum, if any, whichever is earlier, pursuant to Rule 61.03.1(1) of the *Rules of Civil
Procedure.*

**THE GROUNDS FOR THE MOTION ARE:**

1. Justice Morawetz erred in sanctioning Article 11 of the Plan which would operate to eliminate statutory opt out rights of putative class members under section 9 of the *Class Proceedings Act, 1992*, S.O. 1992, c. 6 ("*CPA*").

2. Justice Morawetz erred in sanctioning Article 11 of the Plan which provides for releases to Named Third Party Defendants as listed in Schedule A to the Plan ("Named Third Party Defendants"), from the claims of any person including claims arising from the class action styled *Trustees of the Labourers' Pension Fund of Central and Eastern Canada v. Sino-Forest Corp.,* Court File No. CV-11-431153-00CP, without any showing that such releases are reasonably connected and necessary to the restructuring of the applicant, Sino-Forest, and the appeal is therefore meritorious;

3. Justice Morawetz erred in sanctioning Article 11 of the Plan, which provides for the release of the Named Third Party Defendants, as fair and reasonable without affording the Appellants adequate time and notice to object;

4. the proposed appeal will not unduly hinder the progress of the *CCAA* proceeding;

5. the *CCAA*, and, in particular, sections 6, 13, and 14 thereof;

6. section 6(1)(a) of the *Courts of Justice Act;*

7. rule 61 of the *Rules of Civil Procedure*; and,

8. such further and other grounds as counsel may advise and this Honourable Court may permit.

3

**THE FOLLOWING DOCUMENTS WILL BE USED AT THE HEARING OF THE
MOTION:**

1. The motion materials filed below on the hearing before Justice Morawetz and
   orders made and the Monitor's reports filed in the *CCAA* proceedings; and,

2. such other documents as counsel may advise and this Honourable Court may
   permit.

December 27, 2012

**KIM ORR BARRISTERS P.C.**
19 Mercer Street, 4th Floor
Toronto, Ontario
M5V 1H2

James C. Orr (LSUC #23180M)
Won J. Kim (LSUC #32918H)
Megan B. McPhee (LSUC #48351G)
Michael C. Spencer (LSUC #59637F)

Tel: (416) 596-1414
Fax: (416) 598-0601

Lawyers for the Appellants, Invesco Canada
Ltd., Northwest & Ethical Investments L.P.,
and Comité Syndical National de Retraite
Bâtirente Inc.

**TO:        THE SERVICE LIST**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, RSC 1985, c. C-36, AS
AMENDED,

AND IN THE MATTER OF THE PLAN OF COMPROMISE OR ARRANGEMENT OF SINO-FOREST
CORPORATION

Court of Appeal File No
Court File No: CV-12-9667-00CL

---

### COURT OF APPEAL FOR ONTARIO

(Proceeding Commenced at Toronto)

---

NOTICE OF MOTION FOR LEAVE TO APPEAL

---

**KIM ORR BARRISTERS P.C.**
19 Mercer Street, 4th Floor
Toronto, Ontario  M5V 1H2

**James C. Orr** (LSUC #23180M)
**Won J. Kim** (LSUC #32918H)
**Megan B. McPhee** (LSUC #48351G)
**Michael C. Spencer** (LSUC #59637F)

Tel: (416) 596-1414
Fax: (416) 598-0601

Lawyers for Invesco Canada Ltd., Northwest &
Ethical Investments L.P. and Comité Syndical
National de Retraite Bâtirente Inc.

**APPENDIX "M" - (I) LETTER FROM BENNETT JONES TO KIM ORR DATED
JANUARY 3, 2013; (II) LETTER FROM KIM ORR TO BENNETT JONES DATED
JANUARY 3, 2013; (III) LETTER FROM LENCZNER SLAGHT TO KIM ORR DATED
JANUARY 3, 2013**

*(See Attached)*



# Ⅲ Bennett Jones

Bennett Jones LLP
3400 One First Canadian Place, PO Box 130
Toronto, Ontario, Canada  M5X 1A4
Tel: 416.863.1200  Fax: 416.863.1716

**Robert W. Staley**
Direct Line: 416.777.4857
e-mail: staleyr@bennettjones.com

January 3, 2013

**Sent By Email**

Mr. Won J. Kim
Kim Orr Barristers P.C.
200 Front Street West
Suite 2300
Toronto ON M5V 3K2

Dear Mr. Kim:

**Re:    Sino-Forest Corporation ("Sino-Forest") CCAA Proceeding**

I am writing to confirm our telephone conversation of January 2, 2013.

On behalf of your clients you have served a notice of motion for leave to appeal to the Court of Appeal for Ontario from the December 10, 2012 order of Justice Morawetz sanctioning Sino-Forest's CCAA Plan. I confirm your advice that your clients are not seeking a stay pending appeal, nor an expedited appeal, of the Plan sanction order. I also confirm that your advice that your clients are not seeking to prevent the implementation of Sino-Forest's CCAA Plan.

The Plan currently is scheduled to be implemented on or by January 15, 2013. In light of the foregoing, as the Plan sanction order has not been stayed, Sino-Forest (with the consent and support of the Initial Consenting Noteholders and the Monitor) intends to proceed to implement the Plan.

Yours truly,

Robert W. Staley

RWS/jm

cc:        Service List

WSLegal\059250\00008\8497684v1



# KIM·ORR

Won J. Kim P.C.
Tel: (416) 349-6570
E-mail: wjk@kimorr.ca

January 3, 2013

**VIA EMAIL**

Mr. Robert W. Staley
Bennett Jones LLP
3400 One First Canadian Place
P.O. Box 130
Toronto, Ontario
M5X 1A4

Dear Mr. Staley:

**RE: Sino-Forest Corp. CCAA Proceeding**

Thank you for your letter of January 3, 2012.

We confirm that the proposed appeal only concerns Article 11 of the Plan of Compromise and Reorganization ("Plan") and sections 40 and 41 of the Plan Sanction Order. Since Article 11 does not appear to be connected or integral to the Plan, we do not intend to seek a stay of the Plan Implementation.

Please note that our office has moved to 19 Mercer Street, 4th Floor, Toronto, Ontario, M5V 3K2.

Yours truly,

Won J. Kim P.C.

cc.    Service List



Lenczner
Slaght

130 Adelaide St W        T 416-865-9500  447
Suite 2600               F 416-865-9010
Toronto, ON              www.litigate.com
Canada M5H 3P5

January 3, 2013

**SENT BY EMAIL**

Peter Griffin
Direct line: 416-865-2921
Direct fax: 416-865-3558
Email:     pgriffin@litigate.com

Mr. Won J. Kim
Kim Orr Barristers P.C.
4th Floor
19 Mercer Street
Toronto, ON  M5V 1H2

**RE: Sino-Forest Corporation**

Dear Mr. Kim:

I have seen your letter of January 3, 2013 to Mr. Staley.

While I do not think that you could reasonably expect that others would necessarily share
the views expressed in paragraph two of your letter, we acknowledge your advice that
you do not intend to seek a stay of Plan Implementation.

Yours very truly,

Peter Griffin

PHG/jl

cc:    Robert Staley

cc:    The Service List

## APPENDIX "N" - E&Y NOTICE ORDER

*(See Attached)*



Court File No.: CV-12-9667-00CL

***ONTARIO***
## SUPERIOR COURT OF JUSTICE

### COMMERCIAL LIST

| THE HONOURABLE MR. | ) | FRIDAY , THE 21ST DAY |
|---|---|---|
| | ) | |
| JUSTICE MORAWETZ | ) | OF DECEMBER, 2012 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C.
1985, c. C-36, AS AMENDED, AND IN THE MATTER OF A PLAN OF COMPRISE OR
ARRANGEMENT OF SINO-FOREST CORPORATION

Court File No.: CV-11-431153-00CP

***ONTARIO***
## SUPERIOR COURT OF JUSTICE

B E T W E E N :

**THE TRUSTEES OF THE LABOURERS' PENSION FUND OF CENTRAL AND
EASTERN CANADA, THE TRUSTEES OF THE INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 793 PENSION PLAN FOR OPERATING
ENGINEERS IN ONTARIO, SJUNDE AP-FONDEN, DAVID GRANT and ROBERT
WONG**

Plaintiffs

- and -

**SINO-FOREST CORPORATION, ERNST & YOUNG LLP, BDO LIMITED (formerly
known as BDO MCCABE LO LIMITED), ALLEN T.Y. CHAN, W. JUDSON MARTIN,
KAI KIT POON, DAVID J. HORSLEY, WILLIAM E. ARDELL, JAMES P. BOWLAND,
JAMES M.E. HYDE, EDMUND MAK, SIMON MURRAY,  PETER WANG, GARRY J.
WEST, PÖYRY (BEIJING) CONSULTING COMPANY LIMITED, CREDIT SUISSE
SECURITIES (CANADA), INC., TD SECURITIES INC., DUNDEE SECURITIES
CORPORATION, RBC DOMINION SECURITIES INC., SCOTIA CAPITAL INC., CIBC
WORLD MARKETS INC., MERRILL LYNCH CANADA INC., CANACCORD
FINANCIAL LTD., MAISON PLACEMENTS CANADA INC., CREDIT SUISSE
SECURITIES (USA) LLC and MERRILL LYNCH, PIERCE, FENNER & SMITH
INCORPORATED (successor by merger to Banc of America Securities LLC)**

Defendants

Proceeding under the *Class Proceedings Act, 1992*

### ORDER

**THIS MOTION**, made by the Ad Hoc Committee of Purchasers of the Applicant's Securities, including the plaintiffs in the action commenced against Sino-Forest Corporation ("Sino-Forest") in the Ontario Superior Court of Justice, bearing (Toronto) Court File No. CV-11-431153-00CP (the "Ontario Plaintiffs" and the "Ontario Class Action", respectively) for an order i) approving the form of notice to class members, and everyone, including non-Canadians, who has, had, could have had or may have a claim of any kind against Ernst & Young LLP, Ernst & Young Global Limited or any of its member firms and any person or entity affiliated or connected thereto ("Ernst & Young"), in relation to Sino-Forest, Ernst & Young's audits of Sino-Forest's financial statements and any other work performed by Ernst & Young related to Sino-Forest., of the hearing to approve the Ernst & Young Settlement (as defined in the Plan of Compromise and Reorganization of Sino-Forest dated December 3, 2012 as approved by the Order of the Honourable Justice Morawetz dated December 10, 2012 (the "Plan")) between the Ontario Plaintiffs and the defendant Ernst & Young ("Notice"); and ii) approving the plan of distribution of the Notice ("Notice Plan"), was heard on December  20,  2012, in Toronto, Ontario.

**WHEREAS** the Ontario Plaintiffs and Ernst & Young have agreed to the Ernst & Young Settlement in order to resolve all Ernst & Young Claims, including all claims asserted or that could be asserted against Ernst & Young in the above-captioned class proceeding;

**AND ON BEING ADVISED** that the defendant Sino-Forest has delivered to counsel for the plaintiffs a list of holders of Sino-Forest's securities as of June 2, 2011 (the "June 2, 2011 Shareholder List");

**AND ON READING** the materials filed, and on hearing submissions of counsel for the Ontario Plaintiffs and Ernst & Young, and upon hearing from counsel to the Monitor of Sino-Forest, FTI Consulting Inc.,

1. **THIS COURT ORDERS** that the time for service and filing of this notice of motion and motion record is validated and abridged and any further service thereof is dispensed with.

2. **THIS COURT ORDERS** that the Notice substantially in the form attached as **Schedule "A"** be and hereby is approved and shall be published, subject to the right of the plaintiffs and Ernst & Young to make minor non-material amendments to such form, by mutual agreement, as may be necessary or desirable.

3. **THIS COURT ORDERS** that notice shall be provided as follows:

    a. Siskinds LLP and Koskie Minsky LLP (together, "Class Counsel") shall provide or cause to be provided a copy of the Notice directly, either electronically or by mail, to all individuals or entities who have contacted Siskinds LLP and Koskie Minsky LLP (together, "Class Counsel") or Siskinds Desmeules sencrl ("Desmeules") regarding this action, and to any person or entity who requests a copy of the Notice, provided that such person or entity has furnished his, her or its contact information to Class Counsel or Desmeules;

    b. Within 5 business days of this Order, copies of the Notice, in English and French, will be posted by Class Counsel on their websites;

    c. Within 5 business days of this Order, a copy of the Notice, in English and French, will be posted by Sino-Forest in a prominent location on the main page of the Sino-Forest website;

d.  Within 5 business days of this Order, Class Counsel will send or will cause to be sent copies of the Notice to the addresses on the June 2, 2011 Shareholder List and to the current Service Lists in Court File Nos. CV-12-9667-00CL (the CCAA Proceeding) and CV-11-431153-00CP (the Ontario Class Action) by electronic mail;

e.  Within 5 business days of this Order, Class Counsel will send or cause to be sent copies of the Notice to all 196 Canadian brokers who are known to Class Counsel, with a cover letter directing those brokers to provide a copy of the Notice, either by mail or electronically, to those of their clients who are or have been beneficial owners of Sino-Forest securities.  Brokers will be requested to send a statement to Class Counsel or its designee indicating that such mailing or electronic communication was completed as directed;

f.  Within 5 business days of this Order, Class Counsel will issue and cause to be disseminated a press release which incorporates the Notice;

g.  Class Counsel will provide hyper-links to the Notice from the following Twitter accounts:

   i.  @kmlawllp; and

   ii.  @SiskindsLLP;

h.  Within 5 business days of this Order, Class Counsel will cause copies of the Notice to be published in the following print publications:

   i.  *The Globe and Mail*, in English, in one weekday publication;

   ii.  *Wall Street Journal*, in English, in one weekday publication;

    iii. *National Post*, in English, in one weekday publication

    iv. *La Presse*, in French, in one weekday publication; and

    v. *Le Soleil*, in French, in one weekday publication.

4. **THIS COURT ORDERS** that any persons objecting to the Settlement Agreement (as defined in the Notice), other than the persons who have filed a Notice of Appearance in the CCAA proceedings (the "Core Parties"), shall:

    a. deliver a Notice of Objection substantially in the form attached hereto as Schedule "B" ("Notice of Objection") to be received by the Monitor by no later than 5:00 p.m. (Eastern Time) on January 18, 2013, by mail, courier or email transmission, to the coordinates indicated on the Notice of Objection; and,

    b. comply with the litigation timetable attached hereto as Schedule "C",

and forthwith upon receipt of a Notice of Objection, the Monitor shall provide a copy of same to each of the Applicant, the Ad Hoc Committee of Noteholders, the Ad Hoc Committee of Purchasers of the Applicant's Securities and Ernst & Young LLP, and shall deliver a report to this court attaching all such notices.

5. **THIS COURT REQUESTS,** pursuant to the *Companies' Creditors Arrangement Act* (Canada), together with such other statutes, regulations and protocols as may apply, and as a matter of comity, that all courts, regulatory and administrative bodies, and other tribunals, in all provinces and territories of Canada, in the United States of America, and in all other nations or states, recognize this order and act in aid of and in a manner complementary to this order and this court in carrying out the terms of this order.

Date: December **21** , 2012

The Honourable Justice Morawetz

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

 DEC 2 1 2012

## SCHEDULE "A":  NOTICE

### (ATTACHED)

# SINO-FOREST CORPORATION

## NOTICE OF PROPOSED SETTLEMENT WITH ERNST & YOUNG LLP

**TO:**  Everyone, including non-Canadians, who acquired Sino-Forest Corporation ("Sino-Forest") securities (including shares and/or notes) in the primary or secondary market in any jurisdiction between March 31, 2006 and August 26, 2011 (the "E&Y Settlement Class") and to everyone, including non-Canadians, who has, had, could have had or may have a claim of any kind against Ernst & Young LLP, Ernst & Young Global Limited or any of its member firms and any person or entity affiliated or connected thereto ("Ernst & Young"), in relation to Sino-Forest, Ernst & Young's audits of Sino-Forest's financial statements and any other work performed by Ernst & Young related to Sino-Forest.

## Background of Sino-Forest Class Action and CCAA Proceeding

In June and July of 2011, class actions were commenced in the Ontario Superior Court of Justice (the "Ontario Proceeding") and the Québec Superior Court (the "Québec Proceeding") (collectively, the "Proceedings") by certain plaintiffs (the "Plaintiffs") against Sino-Forest, its senior officers and directors, its underwriters, a consulting company, and its auditors, including Ernst & Young.  In January 2012, a proposed class action was commenced against Sino-Forest and other defendants in the Southern District of New York (the "US Action"). The actions alleged that the public filings of Sino-Forest contained false and misleading statements about Sino-Forest's assets, business, and transactions.

Since that time, the litigation has been vigorously contested.  On March 30, 2012, Sino-Forest obtained creditor protection under the *Companies' Creditors Arrangement Act* (the "*CCAA*"), within which proceeding the Ontario Superior Court ordered a stay  of proceedings against the company and other parties, including Ernst & Young (the "CCAA Proceeding").  Orders and other materials relevant to the *CCAA* Proceeding can be found at the *CCAA* Monitor's website at **http://cfcanada.fticonsulting.com/sfc/** (the "Monitor's Website").

On December 10, 2012, a Plan of Arrangement was approved by the court in the CCAA Proceeding.  As part of this Plan of Arrangement, the court approved a framework by which the Plaintiffs may enter into settlement agreements with any of the third-party defendants to the Proceedings. The Plan expressly contemplates the Ernst & Young Settlement (as defined in the Plan), approval of which is now sought.

## Who Acts For the E&Y Settlement Class

Koskie Minsky LLP, Siskinds LLP, and Siskinds Desmeules, sencrl ("Class Counsel") represent the E&Y Settlement Class in the Proceedings. If you want to be represented by another lawyer, you may hire one to appear in court for you at your own expense.

You will not have to directly pay any fees and expenses to Class Counsel. However, if this action succeeds or there is a monetary settlement, Class Counsel will seek to have their fees and expenses paid from any money obtained for the class or paid separately by the defendants.

## Proposed Settlement with Ernst & Young

The Plaintiffs have entered into a proposed settlement with Ernst & Young (the "Settlement Agreement"). If the settlement is approved, it will be final and binding and there will be no ability to pursue a claim (if any) against Ernst & Young through an opt-out process under class proceedings or similar legislation. The proposed settlement would settle, extinguish and bar all claims, globally, against Ernst & Young in relation to Sino-Forest including the allegations in the Proceedings. Ernst & Young does not admit to any wrongdoing or liability. The terms of the proposed settlement do not involve the resolution of any claims against Sino-Forest or any of the other defendants. For an update on CCAA orders affecting Sino-Forest, please see the CCAA Monitor's website: www.cfcanada.fticonsulting.com/sfc. A complete copy of the Settlement Agreement and other information about these proceedings is available at: **www.kmlaw.ca/sinoforestclassaction** and **www.classaction.ca** (the "Class Action Website").

The proposed settlement, if approved and its conditions fulfilled, provides that Ernst & Young will pay CAD$117,000,000.00 to a Settlement Trust to be administered in accordance with orders of the court. It is the intention of Class Counsel to seek the court's approval of a plan of allocation that distributes the settlement funds, net of counsel fees and other administrative costs and expenses, to members of the E&Y Settlement Class.

In return, the action will be dismissed against Ernst & Young, and there will be an order forever barring claims against it in relation to Sino-Forest including any allegations relating to the Proceedings, including claims (if any) that could be advanced through an opt-out process under class proceedings or similar legislation. In considering whether or how they are affected by the proposed settlement, members of the E&Y Settlement Class and anyone else with claims against Ernst & Young in relation to Sino-Forest should consider the effect of the orders made and steps taken in the Sino-Forest CCAA Proceedings. More information on the Sino-Forest CCAA Proceedings can be found on the Monitor's Website.

The settlement agreement with Ernst & Young is subject to court approval, as discussed below.

## Hearings to Approve Settlement on February 4, 2013 in Toronto, Ontario and Subsequent Hearings in Ontario, Quebec and the United States.

On February 4, 2013 at 10:00 a.m. (Eastern Time), there will be a settlement approval hearing before the Ontario Superior Court of Justice. The hearing will be heard at the Canada Life Building, 330 University Avenue, 8th Floor, Toronto, Ontario. The exact courtroom number will be available on a notice board on the 8th Floor.

If the settlement approval motion which is being heard by the Ontario Superior Court of Justice on February 4, 2013 (the "Settlement Approval Motion") is granted, then there will be a further hearing at a later date before the Ontario Superior Court of Justice (the "Ontario Allocation/Fee Motion") at which Class Counsel will seek that Court's approval of (1) the plan for allocating the net Ernst & Young settlement fund among the members of the E&Y Settlement Class; and (2) the fees and expense reimbursement requests of Class Counsel.

In addition, if the Settlement Approval Motion is granted, then there may be additional hearings at later dates in the Quebec Superior Court (the "Quebec Motion") and in the United States Bankruptcy Court for the Southern District of New York (the "US Motion") at which recognition and implementation of the Settlement Approval Motion and the Ernst & Young Settlement may be sought.

If the Settlement Approval Motion is granted, then a further notice will be disseminated to members of the E&Y Settlement Class advising them of the time and place of the Ontario Allocation/Fee Motion and any Quebec Motion and/or US Motion.

Members of the E&Y Settlement Class, and everyone, including non-Canadians, who has, had, could have had or may have a claim of any kind against Ernst & Young, in relation to Sino-Forest, Ernst & Young's audits of Sino-Forest's financial statements and any other work performed by Ernst & Young related to Sino-Forest, may attend at the hearing of the Settlement Approval Motion and ask to make submissions regarding the proposed settlement with Ernst & Young.

**Persons intending to object to the Ernst & Young Settlement Agreement are required to: (a) deliver a Notice of Objection, substantially in the form that can be found on the Monitor's Website and the Class Action Website, and, if this Notice is received by mail, enclosed with this Notice (the "Notice of Objection"), to the Monitor, by regular mail, courier or email transmission, to the coordinates indicated on the Notice of Objection, so that it is received by no later than 5:00 p.m. (Eastern Time) on January 18, 2013; and (b) comply with the litigation timetable set forth below. Copies of the Notices of Objection sent ot the Monitor will be filed with the court.**

## Litigation Timetable

By order of the Ontario Superior Court of Justice, persons intending to participate in the Settlement Approval Motion must comply with the following timetable:

1. Motion materials are to be delivered no later than January 11, 2013.

2. Responding motion materials are to be delivered by January 18, 2013.

3. Cross-examinations on affidavits (if any) are to be conducted on January 24 and 25, 2013.

4. Written Submissions are to be exchanged on January 30, 2013.

## Further Information

If you would like additional information or to object to the Ernst & Young Settlement Agreement, please contact Koskie Minsky LLP, Siskinds LLP, or Siskinds Desmeules LLP at the addresses below:

**Koskie Minsky LLP**
20 Queen St. West, Suite 900, Box 52, Toronto, ON, M5H 3R3
Re: Sino-Forest Class Action
Tel: **1.866.474.1739**
Email: **sinoforestclassaction@kmlaw.ca**

**Siskinds LLP**
680 Waterloo Street, P.O. Box 2520 London, ON N6A 3V8
Re: Sino-Forest Class Action
Tel: **1.800.461.6166 x.2380**
Email: **nicole.young@siskinds.com**

**Siskinds Desmeules, sencrl**
43 Rue Buade, Bureau 320, Québec City, Québec, G1R 4A2
Re: Sino-Forest Class Action
Tel: **418.694-2009**
Email: **simon.hebert@siskindsdesmeules.com**

## Interpretation

If there is a conflict between the provisions of this notice and the Settlement Agreement, the terms of the Settlement Agreement will prevail.

Please do not direct inquiries about this notice to the Court. All inquiries should be directed to Class Counsel.

## DISTRIBUTION OF THIS NOTICE HAS BEEN AUTHORIZED BY THE ONTARIO SUPERIOR COURT OF JUSTICE

## SCHEDULE "B"

### NOTICE OF OBJECTION

**TO:    FTI CONSULTING CANADA INC.**
acting in its capacity as Monitor of Sino-Forest Corporation
TD Waterhouse Tower
79 Wellington Street West
Suite 2010, P.O. Box 104
Toronto, Ontario M5K 1G8

Attention:  Jodi Porepa

Email: Jodi.porepa@fticonsulting.com

**RE:    SINO-FOREST CORPORATION—PROPOSED SETTLEMENT WITH ERNST &
YOUNG LLP (the "ERNST & YOUNG SETTLEMENT")**

**I ,** _____ **(please check all boxes that apply):**
                              (insert name)

☐    am a current shareholder of Sino –Forest Corporation

☐    am a former shareholder of Sino –Forest Corporation

☐    am a current noteholder of Sino –Forest Corporation

☐    am a former noteholder of Sino –Forest Corporation

☐    other (please explain)

_____

_____                    2/ 4/7.

I acknowledge that pursuant to the order of Mr. Justice Morawetz dated December 20, 2012 (the
"Order"), persons wishing to object to the Ernst & Young Settlement are required to complete
and deliver this Notice of Objection to FTI Consulting Canada Inc., acting in its capacity as
Monitor of Sino-Forest Corporation, by mail, courier or email to be received by no later than
5:00 p.m. (Eastern Time) on January 18, 2013, and comply with the litigation timetable
appended as Schedule C to the Order.

I hereby give notice that I object to the Ernst & Young Settlement, for the following reasons:

_____

_____

_____

_____

_____

_____

_____

☐    I DO NOT intend to appear at the hearing of the motion to approve the Ernst & Young Settlement, and I understand that my objection will be filed with the court prior to the hearing the motion at 10:00 a.m. on February 4, 2013, at 330 University Ave., 8th Floor Toronto, Ontario.

☐    I DO intend to appear, in person or by counsel, and to make submissions at the hearing of the motion to approve the Ernst & Young Settlement at 10:00 a.m. on February 4, 2013, at 330 University Ave., 8th Floor Toronto, Ontario.

**MY ADDRESS FOR SERVICE IS:**

Name:

**MY    LAWYER'S    ADDRESS    FOR SERVICE IS (if applicable):**

Name:

Address:

Tel.:

Fax:

Email:

Address:

Tel.:

Fax:

Email:

**Date:** _____        **Signature:** _____

## SCHEDULE "C"

## LITIGATION TIMETABLE

1. Motion materials are to be delivered no later that **January 11, 2013**.

2. Responding motion materials are to be delivered by **January 18, 2013**.

3. Cross-examinations on affidavits (if any) are to be conducted on **January 24 and 25, 2013,**

4. Factums are to be exchanged on **January 30, 2013**

5. Motion to be heard on **February 4, 2013.**

Court File No.  CV-12-9667~600CL

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c.C-36, AS AMENDED
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF SINO-FOREST CORPORATION

|  |  |
|---|---|
|  | ***ONTARIO***<br>**SUPERIOR COURT OF JUSTICE**<br>**(COMMERCIAL LIST)**<br><br>PROCEEDING COMMENCED AT<br>TORONTO |
|  | **ORDER** |
|  | **Paliare Roland Rosenberg Rothstein LLP**<br>155 Wellington Street West, 35th Floor<br>Toronto, ON  M5V 3H1<br>**Ken Rosenberg / Massimo Starnino**<br>Tel: 416.646.4300 / Fax: 416.646.4301<br><br>**Koskie Minsky LLP**<br>20 Queen Street West, Suite 900<br>Toronto, ON  M5H 3R3<br>**Kirk Baert / Jonathan Bida**<br>Tel: 416.977.8353 / Fax: 416.977.3316<br><br>**Siskinds LLP**<br>680 Waterloo Street<br>London, ON  N6A 3V8<br>**A. Dimitri Lascaris / Charles M. Wright**<br>Tel: 519.672.2121 / Fax: 519.672.6065<br><br>Lawyers for the Ad Hoc Committee of Purchasers of the Applicant's Securities, including the Representative Plaintiffs in the Ontario Class Action<br><br>820694_1.DOC |

## APPENDIX "O" - COMPANY'S PRESS RELEASE DATED JANUARY 24, 2013

*(See Attached)*



**Sino-Forest Corporation**

## Sino-Forest Announces Revised CCAA Plan Implementation Date

**TORONTO, CANADA** – January 24, 2013 – Sino-Forest Corporation ("Sino-Forest" or the "Company") today announced that the Plan Implementation Date, the date on which the Company's CCAA Plan of Compromise and Reorganization dated December 3, 2012 (the "Plan") is to become effective, has been extended with the consent of the Initial Consenting Noteholders and the Monitor. While Sino-Forest has been working diligently with the Monitor and counsel to the Initial Consenting Noteholders to complete the implementation of the Plan, certain additional work is still necessary before the Plan can become effective. The Plan Implementation Date is now expected to occur on or about January 29, 2013 and in any event before the end of January, 2013.

### Inquiries

All inquiries regarding the Company's proceedings under the *Companies' Creditors Arrangement Act* ("CCAA") should be directed to the Monitor, FTI Consulting, via email at: sfc@fticonsulting.com, or telephone: (416) 649-8094. Information about the CCAA proceedings, including copies of all court orders and the Monitor's reports, are available at the Monitor's website http://cfcanada.fticonsulting.com/sfc.

This news release contains forward-looking information within the meaning of applicable securities laws ("forward-looking statements"), including forward-looking statements relating to the expected timing of the Plan Implementation Date. The forward-looking statements expressed or implied by this news release are subject to important risks and uncertainties. Forward-looking statements are based on estimates and assumptions made by the Company in light of its experience and its perception of historical trends, current conditions and expected future developments, as well as other factors that the Company believes are appropriate in the circumstances. The results or events predicted in these statements may differ materially from actual results or events and are not guarantees of future performance of Sino-Forest. Factors which could cause results or events to differ from current expectations include, among other things: Sino-Forest's ability to complete the Plan in the time period contemplated, if at all, which is dependent on its ability to comply with the closing conditions to the Plan, many of which are significant and beyond the control of Sino-Forest; actions taken by the Company's noteholders, lenders, creditors, shareholders, and other stakeholders to enforce their rights; actions taken against the Company by governmental agencies and securities and other regulators; actions taken by the Monitor; the outcome of examinations and proceedings currently underway by law enforcement and securities regulatory authorities; the outcome of class action or other proceedings which have been or may in future be initiated against the Company; and the Company's ability to continue to operate without former senior management, almost all of whom have ceased to be employed by the Company; and other factors not currently viewed as material that could cause actual results to differ materially from those described in the forwarding-looking statements. Sino-Forest Corporation disclaims any intention or obligation to update or revise any forward-looking statements, whether as a result of new information, future events or otherwise, except as required by law.

**APPENDIX "P" - (I) LETTER FROM GOWLING LAFLEUR HENDERSON DATED
JANUARY 11, 2013 REGARDING THE ADDITION OF ALLEN CHAN AND KAI KIT
POON AS NAMED THIRD PARTY DEFENDANTS; (II) LETTER FROM GOWLING
LAFLEUR HENDERSON DATED JANUARY 21, 2013 REGARDING THE ADDITION
OF DAVID HORSLEY AS A NAMED THIRD PARTY DEFENDANT**

*(See Attached)*





montréal · ottawa · toronto · hamilton · waterloo region · calgary · vancouver · beijing · moscow · london

January 11, 2013

**SENT TO EMAIL**

Jennifer Stam
Direct 416-862-5697
jennifer.stam@gowlings.com

THE SERVICE LIST

Dear Sirs/Mesdams:

### Re: Sino-Forest Corporation ("SFC"): Court File #CV-12-9667-00CL

We refer to SFC's plan of compromise and reorganization dated December 3, 2012 (as the same may be amended, varied or supplemented from time to time in accordance with its terms, the "**Plan**") and the Plan Sanction Order dated December 10, 2012 (the "**Sanction Order**") and hereby give notice to the Service List of the matters concerning the Plan. Capitalized terms used herein but not defined have the meaning given to them in the Plan.

SFC today announced that the Plan Implementation Date, which was expected to be January 15, 2013, is expected to be January 17, 2013. This date has been selected by SFC with the consent of the Monitor and the Initial Consenting Noteholders.

In addition, pursuant to and in accordance with Section 11.2(a) of the Plan, Allen Chan and Kai Kit Poon have become "Named Third Party Defendants" under the Plan and a revised "Schedule A" to the Plan is attached to this letter. In accordance with Section 7.1(n) of the Plan, as a result of becoming Named Third Party Defendants under the Plan, Mr. Chan and Mr. Poon shall not be entitled to receive any distributions under the Plan.

In addition, on the consent of SFC, the Monitor, the Initial Consenting Noteholders, counsel to the Ontario Class Action Plaintiffs, and in accordance with section 1.1 of the Plan, the "Indemnified Noteholder Class Action Limit" under the Plan has been reduced to $25 million as it relates to David Horsley. The reduction of the Indemnified Noteholder Class Action Limit to $25 million as it relates to Mr. Horsely has been incorporated into and forms a part of the Plan as approved by the Sanction Order.

As a result of the parties added to the Plan as "Named Third Party Defendants" and the reduction of the Indemnified Noteholder Class Action Limit to $25 million as it relates to Mr. Horsely, the Unresolved Claims Reserve has been correspondingly reduced to an aggregate amount of $28,500,000, which consists of (a) Class Action Indemnity Claims in the amount of $25 million; (b) Claims in respect of Defence Costs in the amount of $3 million; and (c) other Affected Creditor Claims that have been identified by the Monitor as Unresolved Claims in an amount up to $500,000. The reduction of the Unresolved Claims Reserve to an aggregate amount of $28,500,000 has occurred with the consent of the Monitor and the Initial Consenting Noteholders in accordance with

Gowling Lafleur Henderson LLP · Lawyers · Patent and Trade-mark Agents

1 First Canadian Place · 100 King Street West · Suite 1600 · Toronto · Ontario · M5X 1G5 · Canada T 416-862-7525 F 416-862-7661 gowlings.com



section 1.1 of the Plan, and has been incorporated into and forms a part of the Plan as approved by the Sanction Order.

The establishment of the Unresolved Claims Reserve is not an admission by SFC, the Monitor or any other party (including the Initial Consenting Noteholders) as to the validity of any such Claims and all rights to dispute such Claims are reserved. Likewise, the reduction of the Indemnified Noteholder Class Action Limit as it relates to Mr. Horsely to $25 million does not constitute an admission by SFC, the Monitor or any other party (including the Initial Consenting Noteholders) as to the validity of any indemnity Claims by Mr. Horsely and all rights to dispute any such Claims by Mr. Horsely have been and are reserved.

Sincerely,

GOWLING LAFLEUR HENDERSON LLP

Jennifer Stam

JS

TOR_LAW\ 8076390\3
1/10/13

## SCHEDULE A

## NAMED THIRD PARTY DEFENDANTS

1. The Underwriters, together with their respective present and former affiliates, partners, associates, employees, servants, agents, contractors, directors, officers, insurers and successors, administrators, heirs and assigns, excluding any Director or Officer and successors, administrators, heirs and assigns of any Director or Officer in their capacity as such.

2. Ernst & Young LLP (Canada), Ernst & Young Global Limited and all other member firms thereof, together with their respective present and former affiliates, partners, associates, employees, servants, agents, contractors, directors, officers, insurers and successors, administrators, heirs and assigns, excluding any Director or Officer and successors, administrators, heirs and assigns of any Director or Officer in their capacity as such, in the event that the Ernst & Young Settlement is not completed.

3. BDO Limited, together with its respective present and former affiliates, partners, associates, employees, servants, agents, contractors, directors, officers, insurers and successors, administrators, heirs and assigns, excluding any Director or Officer and successors, administrators, heirs and assigns of any Director or Officer in their capacity as such.

4. Allen Chan, together with his successors, administrators, heirs, assigns and insurers.

5. Kai Kit Poon, together with his successors, administrators, heirs, assigns and insurers.



gowlings    montreal · ottawa · toronto · hamilton · waterloo region · calgary · vancouver · beijing · moscow · london

January 21, 2013

SENT TO EMAIL

THE SERVICE LIST

Dear Sirs/Mesdams:

Jennifer Stam
Direct 416-862-5697
jennifer.stam@gowlings.com

### Re:  Sino-Forest Corporation ("SFC"): Court File #CV-12-9667-00CL

We refer to SFC's plan of compromise and reorganization dated December 3, 2012 (as the same may
be amended, varied or supplemented from time to time in accordance with its terms, the "**Plan**"), the
Plan Sanction Order dated December 10, 2012 (the "**Sanction Order**") and our letter to the Service
List dated January 11, 2013 (the "**January 11 Letter**") and hereby give notice to the Service List of
the following matters concerning the Plan. Capitalized terms used herein but not defined have the
meaning given to them in the Plan.

SFC today announced that the Plan Implementation Date, which was expected to be January 17,
2013, is expected to be January 23, 2013. This date has been selected by SFC with the consent of
the Monitor and the Initial Consenting Noteholders.

In addition, pursuant to and in accordance with Section 11.2(a) of the Plan, David Horsley has
become a "Named Third Party Defendant" under the Plan and a revised "Schedule A" to the Plan is
attached to this letter. In accordance with Section 7.1(n) of the Plan, as a result of becoming a
Named Third Party Defendant under the Plan, Mr. Horsley shall not be entitled to receive any
distributions on account of Affected Claims under the Plan.

In addition, on the consent of SFC, the Monitor, the Initial Consenting Noteholders, counsel to the
Ontario Class Action Plaintiffs, and in accordance with section 1.1 of the Plan, the "Indemnified
Noteholder Class Action Limit" under the Plan, which had previously been reduced to $25 million as
it relates to Mr. Horsley as set out in our January 11 Letter, has been returned to $150 million. The
return of the the Indemnified Noteholder Class Action Limit to $150 million as it relates to Mr.
Horsely has been incorporated into and forms a part of the Plan as approved by the Sanction Order.

With the addition of Mr. Horsley as a "Named Third Party Defendant", all affected defendants
named in the Class Actions have now become Named Third Party Defendants under the Plan or
otherwise waived their entitlement to receive distributions under the Plan. As such, the Unresolved
Claims Reserve has been correspondingly, further reduced to eliminate any reserve for Class Action
Indemnity Claims. The Unresolved Claims Reserve has now been set at an aggregate amount of
$1.7 million, which consists of (a) certain unresolved Claims in respect of Defence Costs in the
amount of $1.5 million; and (b) certain other Affected Creditor Claims that have been identified by
the Monitor as Unresolved Claims in an amount up to $200,000. The reduction of the Unresolved

TOR_LAW\ 8084233\2

Gowling Lafleur Henderson LLP · Lawyers · Patent and Trade-mark Agents

1 First Canadian Place · 100 King Street West · Suite 1600 · Toronto · Ontario · M5X 1G5 · Canada  T 416-862-7525  F 416-862-7661  gowlings.com