**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  | ) |  |
| In re: | ) | Chapter 15 |
|  | ) |  |
| SINO-FOREST CORPORATION, | ) | Case No. 13-10361 (MG) |
|  | ) |  |
| Debtor in a Foreign Proceeding. | ) |  |
|  | ) |  |

---

### ORDER GRANTING RECOGNITION OF FOREIGN PROCEEDING, ENFORCEMENT OF CANADIAN ORDERS, AND RELATED RELIEF

Upon consideration of the *Verified Petition for Recognition of Foreign Proceeding and Related Relief* which was filed on February 4, 2013 (the "**Chapter 15 Petition**")[1] by FTI Consulting Canada Inc. the court-appointed monitor (the "**Monitor**") and authorized foreign representative of the proceeding (the "**Canadian Proceeding**") of Sino-Forest Corporation ("**SFC**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "**CCAA**") pending before the Ontario Superior Court of Justice (Commercial List) (the "**Ontario Court**"), commencing the above-captioned chapter 15 case (the "**Chapter 15 Case**") pursuant to sections 1504, 1509, and 1515 of title 11 of the United States Code (as amended, the "**Bankruptcy Code**") and seeking the entry of an order (i) recognizing the Canadian Proceeding as a "foreign main proceeding" pursuant to sections 1515 and 1517 of the Bankruptcy Code and (ii) giving full force and effect in the United States to (a) the Initial Order of the Ontario Court dated March 30, 2012, including any extensions or amendments thereof (the "**Initial Order**") and (b) the Plan Sanction Order of the Ontario Court dated December 10, 2012, including any extensions or amendments thereof (the "**Plan Sanction Order**," and with the Initial Order, the "**Canadian Orders**") sanctioning SFC's plan of

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Chapter 15 Petition.

compromise and reorganization dated December 3, 2012 (as the same may be amended, revised or supplemented in accordance with its terms, the "**Plan**"),[2] pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code; and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the "Amended Standing Order of Reference Re: Title 11" of the United States District Court for the Southern District of New York (Preska, C.J.) dated January 31, 2012; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P); and it appearing that venue is proper in this District pursuant to 28 U.S.C. §§ 1410(2) and (3); and the Court having considered and reviewed the *Memorandum of Law in Support of Chapter 15 Petition for Recognition of Foreign Proceeding and Related Relief* (the "**Memorandum of Law**") and the *Declaration of Jeremy C. Hollembeak* dated February 4, 2013 (the "**Hollembeak Declaration**") and the exhibits attached thereto, both filed contemporaneously with the Chapter 15 Petition; and the Court having held a hearing to consider the relief requested in the Chapter 15 Petition on March 6, 2013 (the "**Recognition Hearing**"); and it appearing that timely notice of the filing of the Chapter 15 Petition, the Memorandum of Law, the Hollembeak Declaration, and the Recognition Hearing has been given to SFC's known creditors and that no other or further notice need be provided; and upon all the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    On March 30, 2012 (the "**Filing Date**"), the Canadian Proceeding was commenced by SFC under the CCAA in the Ontario Court.

---

[2]    The Initial Order and the Plan Sanction Order are attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u>, respectively, while the Plan is annexed as Schedule A to the Plan Sanction Order.

B.      As of the Filing Date, SFC was a Canadian corporation amalgamated under the *Canada Business Corporations Act*, R.S.C. 1985, c. C-44, with its registered office in Mississauga, Ontario, and its common shares were listed on the Toronto Stock Exchange.

C.      As of the Filing Date, SFC's indebtedness included indebtedness related to its issuance of four series of notes aggregating approximately $1.8 billion in principal amount (the "**Notes**")[3] governed by separate indentures (collectively, the "**Notes Indentures**").

D.      As of the Filing Date, multiple class action lawsuits were pending against SFC, among other defendants (as defined in the Plan, the "**Class Actions**"), including one such action in the United States originally commenced in the Supreme Court of the State New York, County of New York, and subsequently removed to the United States District Court for the Southern District of New York and assigned the case caption *David Leapard, et al., v. Allen T.Y. Chan, et al.*, Case No. 1:12-cv-01726 (VM) (S.D.N.Y.).

E.      On the Filing Date, a Restructuring Support Agreement was executed by SFC, its direct subsidiaries and certain Noteholders[4] (as may be amended, restated and varied from time to time in accordance with its terms and the terms of the Plan and the Plan Sanction Order, the "**RSA**").

---

[3]     The Notes include: (i) $600M issued October 21, 2010 and due October 21, 2017, interest payable semi-annually at 6.25% per annum, guaranteed by 60 of SFC's direct and indirect subsidiaries and share pledges from 10 of such subsidiaries (the "**2017 Notes**"); (ii) $460M issued December 17, 2009 and due December 15, 2016, interest payable semi-annually at 4.25% per annum, guaranteed by 64 of SFC's direct and indirect subsidiaries (the "**2016 Notes**"); (iii) $399M issued July 27, 2009 and due July 28, 2014, interest payable semi-annual at 10.25% per annum, guaranteed by 60 of SFC's direct and indirect subsidiaries and share pledges from 10 of such subsidiaries (the "**2014 Notes**"); and (iv) $345M issued July and August 2008 due August 1, 2013, interest payable semi-annually at 5% per annum, guaranteed by 64 of SFC's direct and indirect subsidiaries (the "**2013 Notes**").

[4]     "**Noteholders**" means, collectively, the beneficial owners of Notes as of the Distribution Record Date and, as the context requires, the registered holders of Notes as of the Distribution Record Date, and "Noteholder" means anyone of the Noteholders.   "**Distribution Record Date**" means the Plan Implementation Date, or such other date as SFC, the Monitor and the Initial Consenting Noteholders may agree.

F.      On the Filing Date, the Ontario Court entered the Initial Order, which provided, among other relief, for a Stay Period (as defined below) during which the commencement or continuation of certain proceedings or enforcement processes against or in respect of certain parties or property were stayed.  During the pendency of the Canadian Proceeding, the Ontario Court extended the Stay Period on multiple occasions, including pursuant to a November 23, 2012 order extending the Stay Period through February 3, 2013. The Ontario Court has not entered any order extending the Stay Period in the Initial Order past February 1, 2013 with respect to any party except with respect to the Monitor as discussed below.

G.      On December 3, 2012, a meeting of creditors was held at the offices of Gowling Lafleur Henderson LLP, Canadian counsel to the Monitor, where the Plan was approved by the requisite number and amount of creditors required for approval under the CCAA.

H.      On December 7, 2012, a hearing was held before the Ontario Court for the approval of the Plan.

I.      On December 10, 2012, the Ontario Court granted the Plan Sanction Order, and approved the Plan.

J.      On January 30, 2013 (the "**Plan Implementation Date**"), the Plan was implemented in Canada.

K.      On February 4, 2013, the Monitor commenced this Chapter 15 Case and requested the relief set forth in the Chapter 15 Petition.

L.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and section 1501 of the Bankruptcy Code.

M.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

N.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1410(3).

O.      The Canadian Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

P.      The Canadian Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code because the Canadian Proceeding is pending in Canada, the location of the center of main interests for SFC.

Q.      The Monitor is a "person" within the meaning of section 101(41) of the Bankruptcy Code and a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code.

R.      The Chapter 15 Petition meets the requirements of sections 1504, 1509, and 1515 of the Bankruptcy Code.

S.      Recognizing the Canadian Proceeding would not be manifestly contrary to the public policy of the United States, as prohibited by section 1506 of the Bankruptcy Code.

T.      The Canadian Proceeding is entitled to recognition by this Court pursuant to section 1517 of the Bankruptcy Code.

U.      The Monitor is entitled to all the relief provided by section 1520 of the Bankruptcy Code without limitation.

V.      The relief granted hereby is necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the United States, warranted pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code, and will not cause any hardship to any party in interest that is not outweighed by the benefits of granting relief.

W.      The interest of the public will be served by this Court granting the relief requested by the Monitor as provided for herein.

5

NOW THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1.      The Canadian Proceeding is hereby recognized as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code.

2.      All provisions of section 1520 of the Bankruptcy Code apply in this Chapter 15 Case throughout the duration of this Chapter 15 Case or until otherwise ordered by this Court; *provided*, *however*, that the application of section 362 of the Bankruptcy Code in this case pursuant to section 1520 of the Bankruptcy Code shall apply only with respect to SFC and the property of SFC, if any, that is within the territorial jurisdiction of the United States.  For the avoidance of doubt, the provisions of this Order shall not and shall not be deemed to release, enjoin, impose a stay of, or otherwise impact any claims and/or proceedings unless such claims and/or proceedings are released, enjoined, stayed, or otherwise impacted by the Plan and/or the Plan Sanction Order; *provided*, *however*, that nothing in this Order shall limit any stay relief in effect in the Canadian Proceeding with respect to the Monitor within the United States.

3.      Paragraphs 17, 19, and 28-36 of the Initial Order,[5] solely as they relate to the Monitor as set forth in full below,[6] are hereby given full force and effect in the United States and are binding on all persons subject to this Court's jurisdiction pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code:[7]

> **Paragraph 17**.  [U]ntil and including April 29, 2012, or such later date as [the Ontario Court] may order (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**") shall be commenced or continued against or in respect

---

[5]     Capitalized terms in these provisions, unless defined herein, shall have the meaning ascribed to them in the Initial Order.

[6]     Pursuant to an order of the Ontario Court, the protections granted to the Monitor in the Initial Order remain effective and will continue through its fulfillment of post-implementation duties.  *See* Order of the Ontario Court regarding post-implementation matters dated January 31, 2013 (attached as Exhibit J to Dkt. No. 4, *Declaration of Jeremy C. Hollembeak in Support of Petition for Recognition of Foreign Proceeding and Related Relief*), at ¶ 4.

[7]     For the avoidance of doubt, the omitted language in the following paragraphs is not subject to the terms of this Order.

of … the Monitor … except with the written consent of [SFC] and the Monitor, or with leave of [the Ontario Court] ….

*Paragraph 19*. [D]uring the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**" [as used in the Initial Order]) against or in respect of … the Monitor … are hereby stayed and suspended and shall not be commenced, proceeded with or continued, except with the written consent of [SFC] and the Monitor, or leave of [the Ontario Court], provided that nothing in [the Initial Order] shall … (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA, (iii) prevent the filing of any registration to preserve or perfect a security interest, [or] (iv) prevent the registration of a claim for lien ....

*Paragraph 28*. [FTI Canada Consulting Inc.] is hereby appointed pursuant to the CCAA as the Monitor, an officer of [the Ontario Court], to monitor the business and financial affairs of [SFC] with the powers and obligations set out in the CCAA or set forth [in the Initial Order] and that [SFC] and its shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by [SFC] pursuant to [the Initial Order], and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

*Paragraph 29*.  [T]he Monitor, in addition to its prescribed rights and obligations under the CCAA, is … directed and empowered to: … (b) report to [the Ontario Court] at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein; … (f) have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of [SFC] to the extent that is necessary to adequately assess [SFC's] business and financial affairs or to perform its duties arising under [the Initial Order]; … (g) be at liberty to engage independent legal counselor such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under [the Initial Order]; … (i) perform such other duties as are required by [the Initial Order] or by [the Ontario Court] from time to time.

*Paragraph 30*.    [W]ithout limiting paragraph 29 above, in carrying out its rights and obligations in connection with [the Initial Order], the Monitor shall be entitled to take such reasonable steps and use such services as it deems necessary in discharging its powers and obligations, including, without limitation, utilizing the services of FTI Consulting (Hong Kong) Limited ("**FTI HK**").

*Paragraph 31*.  [T]he Monitor shall not take possession of the Property (or any property or assets of [SFC's] subsidiaries) and shall take no part whatsoever in the management or supervision of the management of the Business (or any business of [SFC's] subsidiaries) and shall not, by fulfilling its obligations hereunder, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof (or of any business, property or assets, or any part thereof, of any subsidiary of [SFC]).

***Paragraph 32***.  [N]othing … contained [in the Initial Order] shall require the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "**Possession**") of any of the Property (or any property of any subsidiary of [SFC]) that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the *Ontario Environmental Protection Act*, the *Ontario Water Resources Act*, or the *Ontario Occupational Health and Safety Act* and regulations thereunder (the "**Environmental Legislation**"), provided however that nothing [in the Initial Order] shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation.  The Monitor shall not, as a result of [the Initial Order] or anything done in pursuance of the Monitor's duties and powers under [the Initial Order], be deemed to be in Possession of any of the Property (or of any property of any subsidiary of [SFC]) within the meaning of any Environmental Legislation, unless it is actually in possession.

***Paragraph 33***.  [T]he Monitor shall provide any creditor of [SFC] with information provided by [SFC] in response to reasonable requests for information made in writing by such creditor addressed to the Monitor.  The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph.  In the case of information that the Monitor has been advised by [SFC] is confidential, the Monitor shall not provide such Information to creditors unless otherwise directed by [the Ontario Court] or on such terms as the Monitor and [SFC] may agree.

***Paragraph 34***.  [I]n addition to the rights and protections afforded the Monitor under the CCAA or as an officer of [the Ontario Court], the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of [the Initial Order], save and except for any gross negligence or willful misconduct on its part.  Nothing in [the Initial Order] shall derogate from the protections afforded the Monitor by the CCAA or any applicable legislation.

***Paragraph 35***.  [T]he Monitor, counsel to the Monitor, … [and] FTI HK … shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, by [SFC], whether incurred prior to or subsequent to the date of [the Initial Order], as part of the costs of these proceedings.  [SFC] is hereby authorized and directed to pay the accounts of the Monitor, counsel for the Monitor, … [and] FTI HK] … on a weekly basis or otherwise in accordance with the terms of their engagement letters.

***Paragraph 36***.  [T]he Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the Commercial List of the Ontario Superior Court of Justice.

4.  The Plan and Plan Sanction Order, in their entirety, are hereby given full

force and effect in the United States and are binding on all persons subject to this Court's

jurisdiction pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code.  All rights of creditors and parties in interest of SFC with respect to the Canadian Proceeding, including without limitation, the allowance, disallowance, and dischargeability of claims under the Plan and the restructuring transactions contemplated thereunder, shall be assessed, entered and/or resolved in accordance with the Plan and/or the relevant provisions of the CCAA and the *Canada Business Corporations Act*, R.S.C. 1985, c. C-44, as amended, or as otherwise determined in the Canadian Proceeding, and each and every creditor or party in interest is permanently restricted, enjoined and barred from asserting such rights, except as may have been or may be asserted in the Canadian Proceeding or in accordance with the Plan.

5.        Without limitation as to the relief in the preceding paragraph, the following provisions of the Plan and Plan Sanction Order are hereby given full force and effect in the United States and are binding on all persons subject to this Court's jurisdiction pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code:[8]

### Article 7 of the Plan[9]
### RELEASES

**7.1  *Plan Releases***.  Subject to 7.2 [of the Plan], all of the following shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred on the Plan Implementation Date:

(a)        all Affected Claims,[10] including all Affected Creditor Claims,[11] Equity Claims,[12]

---

[8]        Capitalized terms in these provisions, unless defined herein, shall have the meaning ascribed to them in the Plan.

[9]        As effectuated by Paragraphs 30, 32, and 38 of the Plan Sanction Order.

[10]        **"Affected Claim"** means any Claim, D&O Claim or D&O Indemnity Claim that is not:  an Unaffected Claim; a Section 5.1(2) D&O Claim; a Conspiracy Claim; a Continuing Other D&O Claim; a Non-Released D&O Claim; or a Subsidiary Intercompany Claim, and "Affected Claim" includes any Class Action Indemnity Claim.  For greater certainty, all of the following are Affected Claims:  Affected Creditor Claims; Equity Claims; Noteholder Class Action Claims (other than the Continuing Noteholder Class Action Claims); and Class Action Indemnity Claims.

[11]        **"Affected Creditor Claim"** means any Ordinary Affected Creditor Claim or Noteholder Claim.

**"Ordinary Affected Creditor Claim"** means a Claim that is not:  an Unaffected Claim; a Noteholder Claim; an Equity Claim; a Subsidiary Intercompany Claim; a Noteholder Class Action Claim; or a Class

Action Indemnity Claim (other than a Class Action Indemnity Claim by any of the Third Party Defendants in respect of the Indemnified Noteholder Class Action Claims).

"**Noteholder Claim**" means any Claim by a Noteholder (or a Trustee or other representative on the Noteholder's behalf) in respect of or in relation to the Notes owned or held by such Noteholder, including all principal and Accrued Interest payable to such Noteholder pursuant to such Notes or the Note Indentures, but for greater certainty does not include any Noteholder Class Action Claim.

"**Unaffected Claim**" means any: (a) Claim secured by the Administration Charge; (b) Government Priority Claim; (c) Employee Priority Claim; (d) Lien Claim; (e) any other Claim of any employee, former employee, Director or Officer of SFC in respect of wages, vacation pay, bonuses, termination pay, severance pay or other remuneration payable to such Person by SFC, other than any termination pay or severance pay payable by SFC to a Person who ceased to be an employee, Director or Officer of SFC prior to the date of this Plan; (f) Trustee Claims; and (g) any trade payables that were incurred by SFC (i) after the Filing Date but before the Plan Implementation Date; and (ii) in compliance with the Initial Order or other Order issued in the CCAA Proceeding.

"**Administration Charge**" has the meaning ascribed thereto in ¶ 37 of the Initial Order.

"**Government Priority Claims**" means all Claims of Governmental Entities in respect of amounts that were outstanding as of the Plan Implementation Date and that are of a kind that could be subject to a demand under: (a) subsections 224(1.2) of the Canadian Tax Act; (b) any provision of the *Canada Pension Plan* or the *Employment Insurance Act* (Canada) that refers to subsection 224(1.2) of the Canadian Tax Act and provides for the collection of a contribution, as defined in the *Canada Pension Plan*, or employee's premium or employer's premium as defined in the *Employment Insurance Act* (Canada), or a premium under Part VII. 1 of that Act, and of any related interest, penalties or other amounts; or (c) any provision of provincial legislation that has a similar purpose to subsection 224(1.2) of the Canadian Tax Act, or that refers to that subsection, to the extent that it provides for the collection of a sum, and of any related interest, penalties or other amounts, where the sum: (i) has been withheld or deducted by a person from a payment to another person and is in respect of a tax similar in nature to the income tax imposed on individuals under the Canadian Tax Act; or (ii) is of the same nature as a contribution under the *Canada Pension Plan* if the province is a "province providing a comprehensive pension plan" as defined in subsection 3(1) of the *Canada Pension Plan* and the provincial legislation establishes a "provincial pension plan" as defined in that subsection.

"**Employee Priority Claims**" means the following Claims of provincial and former employees of SFC: (a) Claims equal to the amounts that such employees and former employees would have been qualified to receive under paragraph 136(1)(d) of the BIA if SFC had become bankrupt on the Filing Date; and (b) Claims for wages, salaries, commissions or compensation for services rendered by them after the Filing Date and on or before the Plan Implementation Date.

"**Lien Claim**" means any Proven Claim of a Person indicated as a secured creditor in Schedule "B" to the Initial Order (other than the Trustees) that is secured by a lien or encumbrance on any property of SFC, which lien is valid, perfected and enforceable pursuant to Applicable Law, provided that the Charges and any Claims in respect of Notes shall not constitute "Lien Claims."

"**Trustee Claims**" means any rights or claims of the Trustees against SFC under the Note Indentures for compensation, fees, expenses, disbursements or advances, including reasonable legal fees and expenses, incurred or made by or on behalf of the Trustees before or after the Plan Implementation Date in connection with the performance of their respective duties under the Note Indentures or this Plan. "**Trustees**" means, collectively, The Bank of New York Mellon in its capacity as trustee for the 2013 Notes and the 2016 Notes, and Law Debenture Trust Company of New York in its capacity as trustee for the 2014 Notes and the 2017 Notes, and "Trustee" means either one of them.

[12] "**Equity Claim**" means a Claim that meets the definition of "equity claim" in section 2(1) of the CCAA and, for greater certainty, includes any of the following: (a) any claim against SFC resulting from the ownership, purchase or sale of an equity interest in SFC, including the claims by or on behalf of current or former shareholders asserted in the Class Actions; (b) any indemnification claim against SFC related to or arising from the claims described in sub-paragraph (a), including any such indemnification claims against SFC by or on behalf of any and all of the Third Party Defendants (other than for Defense Costs, unless any

D&O Claims[13] (other than Section 5.1(2) D&O Claims,[14] Conspiracy Claims,[15] Continuing Other D&O Claims[16] and Non-Released D&O Claims[17]), D&O Indemnity Claims[18] (except as set forth in section 7.1(d) [of the Plan]) and

---

such claims for Defense Costs have been determined to be Equity Claims subsequent to the date of the Equity Claims Order); and (c) any other claim that has been determined to be an Equity Claim pursuant to an Order of the Court.

**"Defense Costs"** means, as set forth in section 4.8 of the Plan, all Claims against SFC for indemnification of defense costs incurred by any Person (other than a Named Director or Officer) in connection with defending against Shareholder Claims (as defined in the Equity Claims Order), Noteholder Class Action Claims or any other claims of any kind relating to SFC or the Subsidiaries.

**"Equity Claims Order"** means the Order under the CCAA of the Honourable Justice Morawetz dated July 27, 2012, in respect of Shareholder Claims and Related Indemnity Claims against SFC, as such terms are defined therein.

[13] **"D&O Claim"** means (i) any right or claim of any Person that may be asserted or made in whole or in part against one or more Directors or Officers of SFC that relates to a Claim for which such Directors or Officers are by law liable to pay in their capacity as Directors or Officers of SFC, or (ii) any right or claim of any Person that may be asserted or made in whole or in part against one or more Directors or Officers of SFC, in that capacity, whether or not asserted or made, in connection with any indebtedness, liability or obligation of any kind whatsoever, and any interest accrued thereon or costs payable in respect thereof, including by reason of the commission of a tort (intentional or unintentional), by reason of any breach of contract or other agreement (oral or written), by reason of any breach of duty (including any legal, statutory, equitable or fiduciary duty and including, for greater certainty, any monetary administrative or other monetary penalty or claim for costs asserted against any Officer or Director of SFC by any Governmental Entity) or by reason of any right of ownership of or title to property or assets or right to a trust or deemed trust (statutory, express, implied, resulting, constructive or otherwise), and whether or not any indebtedness, liability or obligation, and any interest accrued thereon or costs payable in respect thereof, is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, present or future, known or unknown, by guarantee, surety or otherwise, and whether or not any right or claim is executory or anticipatory in nature, including any right or ability of any Person to advance a claim for contribution or indemnity from any such Directors or Officers of SFC or otherwise with respect to any matter, action, cause or chose in action, whether existing at present or commenced in the future, which indebtedness, liability or obligation, and any interest accrued thereon or costs payable in respect thereof (A) is based in whole or in part on facts prior to the Filing Date, or (B) relates to a time period prior to the Filing Date.

[14] **"Section 5.1(2) D&O Claim"** means any D&O Claim that is not permitted to be compromised pursuant to section 5.1(2) of the CCAA, but only to the extent not so permitted, provided that any D&O Claim that qualifies as a Non-Released D&O Claim or a Continuing Other D&O Claim shall not constitute a Section 5.1(2) D&O Claim.

[15] **"Conspiracy Claim"** means any D&O Claim alleging that the applicable Director or Officer committed the tort of civil conspiracy, as defined under Canadian common law.

[16] **"Continuing Other D&O Claims"** means, as set forth in section 4.9(b) of the Plan, all D&O Claims against the Other Directors and/or Officers which shall not be compromised, released, discharged, cancelled or barred by the Plan and which shall be permitted to continue as against the applicable Other Directors and/or Officers.

[17] **"Non-Released D&O Claims"** means, as set forth in section 4.9(f) of the Plan, all D&O Claims against the Directors and Officers of SFC or the Subsidiaries for fraud or criminal conduct which shall not be compromised, discharged, released, cancelled or barred by the Plan and which shall be permitted to continue as against all applicable Directors and Officers.

[18] **"D&O Indemnity Claim"** means any existing or future right of any Director or Officer of SFC against SFC that arose or arises as a result of any Person filing a D&O Proof of Claim (as defined in the Claims

Noteholder Class Action Claims[19] (other than the Continuing Noteholder Class Action Claims[20]);

(b)    all Claims[21] of the Ontario Securities Commission or any other Governmental Entity[22] that have or could give rise to a monetary liability, including fines,

---

Procedure Order) in respect of such Director or Officer of SFC for which such Director or Officer of SFC is entitled to be indemnified by SFC.

[19]    **"Noteholder Class Action Claim"** means any Class Action Claim, or any part thereof, against SFC, any of the Subsidiaries, any of the Directors and Officers of SFC or the Subsidiaries, any of the Auditors, any of the Underwriters and/or any other defendant to the Class Action Claims that relates to the purchase, sale or ownership of Notes, but for greater certainty does not include a Noteholder Claim.

**"Subsidiaries"** means all direct and indirect subsidiaries of SFC, other than (i) Greenheart and its direct and indirect subsidiaries and (ii) SFC Escrow Co., and **"Subsidiary"** means anyone of the Subsidiaries. **"Greenheart"** means Greenheart Group Limited, a company established under the laws of Bermuda.

**"Auditors"** means the former auditors of SFC that are named as defendants to the Class Actions Claims, including for greater certainty Ernst & Young LLP and BDO Limited.

**"Underwriters"** means any underwriters of SFC that are named as defendants in the Class Action Claims, including for greater certainty Credit Suisse Securities (Canada), Inc., TD Securities Inc., Dundee Securities Corporation, RBC Dominion Securities Inc., Scotia Capital Inc., CIBC World Markets Inc., Merrill Lynch Canada Inc., Canaccord Financial Ltd., Maison Placements Canada Inc., Credit Suisse Securities (USA) LLC and Merrill Lynch, Pierce, Fenner & Smith Incorporated (successor by merger to Banc of America Securities LLC).

[20]    **"Continuing Noteholder Class Action Claim"** means any Noteholder Class Action Claim that is: (i) a Section 5.1(2) D&O Claim; (ii) a Conspiracy Claim; (iii) a Non-Released D&O Claim; (iv) a Continuing Other D&O Claim; (v) a Noteholder Class Action Claim against one or more Third Party Defendants that is not an Indemnified Noteholder Class Action Claim; (vi) the portion of an Indemnified Noteholder Class Action Claim that is permitted to continue against the Third Party Defendants, subject to the Indemnified Noteholder Class Action Limit, pursuant to section 4.4(b)(i) [of the Plan].

[21]    **"Claim"** means any right or claim of any Person that may be asserted or made against SFC, in whole or in part, whether or not asserted or made, in connection with any indebtedness, liability or obligation of any kind whatsoever, and any interest accrued thereon or costs payable in respect thereof, including by reason of the commission of a tort (intentional or unintentional), by reason of any breach of contract or other agreement (oral or written), by reason of any breach of duty (including any legal, statutory, equitable or fiduciary duty) or by reason of any right of ownership of or title to property or assets or right to a trust or deemed trust (statutory, express, implied, resulting, constructive or otherwise), and whether or not any indebtedness, liability or obligation is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, present or future, known or unknown, by guarantee, surety or otherwise, and whether or not any right or claim is executory or anticipatory in nature, including any right or ability of any Person (including any Directors or Officers of SFC or any of the Subsidiaries) to advance a claim for contribution or indemnity or otherwise with respect to any matter, action, cause or chose in action, whether existing at present or commenced in the future, which indebtedness, liability or obligation, and any interest accrued thereon or costs payable in respect thereof (A) is based in whole or in part on facts prior to the Filing Date, (B) relates to a time period prior to the Filing Date, or (C) is a right or Claim of any kind that would be a claim provable against SFC in bankruptcy within the meaning of the BIA had SFC become bankrupt on the Filing Date, or is an Equity Claim, a Noteholder Class Action Claim against SFC, a Class Action Indemnity Claim against SFC, a Restructuring Claim or a Lien Claim, provided, however, that "Claim" shall not include a D&O Claim or a D&O Indemnity Claim.

**"BIA"** means the Bankruptcy and Insolvency Act, R. S. C. 1985, c. B-3.

**"Restructuring Claim"** means any right or claim of any Person that may be asserted or made in whole or in part against SFC, whether or not asserted or made, in connection with any indebtedness, liability or

awards, penalties, costs, claims for reimbursement or other claims having a monetary value;

(c)     all Class Action Claims[23] (including the Noteholder Class Action Claims) against SFC, the Subsidiaries or the Named Directors or Officers [24] of SFC or the Subsidiaries (other than Class Action Claims that are Section 5.1(2) D&O Claims, Conspiracy Claims or Non-Released D&O Claims);

(d)     all Class Action Indemnity Claims[25] (including related D&O Indemnity Claims), other than any Class Action Indemnity Claim by the Third Party Defendants[26] against SFC in respect of the Indemnified Noteholder Class Action Claims[27] (including any D&O Indemnity Claim in that respect), which shall be limited to the Indemnified Noteholder Class Action Limit[28] pursuant to the releases set out in section 7.1(f) of the Plan and the injunctions set out in section 7.3 of the Plan;

---

obligation of any kind arising out of the restructuring, termination, repudiation or disclaimer of any lease, contract, or other agreement or obligation on or after the Filing Date and whether such restructuring, termination, repudiation or disclaimer took place or takes place before or after the date of the Claims Procedure Order.

**"Claims Procedure Order"** means the Order under the CCAA of the Honourable Justice Morawetz dated May 14, 2012, establishing, among other things, a claims procedure in respect of SFC and calling for claims in respect of the Subsidiaries, as such Order may be amended, restated or varied from time to time.

[22]    **"Governmental Entity"** means any government, regulatory authority, governmental department, agency, commission, bureau, official, minister, Crown corporation, court, board, tribunal or dispute settlement panel or other law, rule or regulation-making organization or entity: (a) having or purporting to have jurisdiction on behalf of any nation, province, territory or state or any other geographic or political subdivision of any of them; or (b) exercising, or entitled or purporting to exercise any administrative, executive, judicial, legislative, policy, regulatory or taxing authority or power.

[23]    **"Class Action Claims"** means, collectively, any rights or claims of any kind advanced or which may subsequently be advanced in the Class Actions or in any other similar proceeding, whether a class action proceeding or otherwise, and for greater certainty includes any Noteholder Class Action Claims.

[24]    **"Named Directors and Officers"** means Andrew Agnew, William E. Ardell, James Bowland, Leslie Chan, Michael Cheng, Lawrence Hon, James M.E. Hyde, Richard M. Kimel, R. John (Jack) Lawrence, Jay A. Lefton, Edmund Mak, Tom Maradin, Judson Martin, Simon Murray, James F. O'Donnell, William P. Rosenfeld, Peter Donghong Wang, Garry West and Kee Y. Wong, in their respective capacities as Directors or Officers, and "Named Director or Officer" means anyone of them.

[25]    **"Class Action Indemnity Claim"** means any right or claim of any Person that may be asserted or made in whole or in part against SFC and/or any Subsidiary for indemnity, contribution, reimbursement or otherwise from or in connection with any Class Action Claim asserted against such Person. For greater certainty, Class Action Indemnity Claims are distinct from and do not include Class Action Claims.

[26]    **"Third Party Defendants"** means any defendants to the Class Action Claims (present or future) other than SFC, the Subsidiaries, the Named Directors and Officers or the Trustees.

[27]    **"Indemnified Noteholder Class Action Claim"** means, as set forth in section 4.4(b)(i) of the Plan, the collective aggregate amount of all rights and claims asserted or that may be asserted against the Third Party Defendants in respect of any such Noteholder Class Action Claims for which any such Persons in each case have a valid and enforceable Class Action Indemnity Claim against SFC.

[28]    **"Indemnified Noteholder Class Action Limit"** means $150 million or such lesser amount agreed to by SFC, the Monitor, the Initial Consenting Noteholders and counsel to the Ontario Class Action Plaintiffs

(e)  any portion or amount of liability of the Third Party Defendants for the Indemnified Noteholder Class Action Claims (on a collective, aggregate basis in reference to all Indemnified Noteholder Class Action Claims together) that exceeds the Indemnified Noteholder Class Action Limit;

(f)  any portion or amount of liability of the Underwriters for the Noteholder Class Action Claims (other than any Noteholder Class Action Claims against the Underwriters for fraud or criminal conduct) (on a collective, aggregate basis in reference to all such Noteholder Class Action Claims together) that exceeds the Indemnified Noteholder Class Action Limit;

(g)  any portion or amount of, or liability of SFC for, any Class Action Indemnity Claims by the Third Party Defendants against SFC in respect of the Indemnified Noteholder Class Action Claims (on a collective, aggregate basis in reference to all such Class Action Indemnity Claims together) to the extent that such Class Action Indemnity Claims exceed the Indemnified Noteholder Class Action Limit;

(h)  any and all Excluded Litigation Trust Claims;[29]

(i)  any and all Causes of Action[30] against Newco,[31] Newco II,[32] the directors and

---

prior to the Plan Implementation Date or agreed to by the Initial Consenting Noteholders and counsel to the Class Action Plaintiffs after the Plan Implementation Date.

[29]  **"Excluded Litigation Trust Claims"** means, as set forth in section 4.12(a) of the Plan, those Causes of Action that, at any time prior to the Plan Implementation Date, SFC and the Initial Consenting Noteholders may agree to exclude from the Litigation Trust Claims.

**"Litigation Trust Claims"** means any Causes of Action that have been or may be asserted by or on behalf of: (a) SFC against any and all third parties; or (b) the Trustees (on behalf of the Noteholders) against any and all Persons in connection with the Notes issued by SFC; provided, however, that in no event shall the Litigation Trust Claims include any (i) claim, right or cause of action against any Person that is released pursuant to Article 7 of the Plan or (ii) any Excluded Litigation Trust Claim. For greater certainty: (x) the claims being advanced or that are subsequently advanced in the Class Actions are not being transferred to the Litigation Trust; and (y) the claims transferred to the Litigation Trust shall not be advanced in the Class Actions.

**"Litigation Trust"** means the trust to be established on the Plan Implementation Date at the time specified in section 6.4(p) in accordance with the Litigation Trust Agreement pursuant to the laws of a jurisdiction that is acceptable to SFC and the Initial Consenting Noteholders, which trust will acquire the Litigation Trust Claims and will be funded with the Litigation Funding Amount in accordance with the Plan and the Litigation Trust Agreement.

[30]  **"Causes of Action"** means any and all claims, actions, causes of action, demands, counterclaims, suits, rights, entitlements, litigation, arbitration, proceeding, hearing, complaint, debt, obligation, sums of money, accounts, covenants, damages, judgments, orders, including for injunctive relief or specific performance and compliance orders, expenses, executions, Encumbrances and other recoveries of whatever nature that any Person may be entitled to assert in law, equity or otherwise, whether known or unknown, foreseen or unforeseen, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly, indirectly or derivatively, existing or hereafter arising and whether pertaining to events occurring before, on or after the Filing Date.

**"Encumbrance"** means any security interest (whether contractual, statutory, or otherwise), hypothec, mortgage, trust or deemed trust (whether contractual, statutory, or otherwise), lien, execution, levy, charge,

officers of Newco, the directors and officers of Newco II, the Noteholders, members of the *ad hoc* committee of Noteholders, the Trustees, the Transfer Agent, [33] the Monitor, FTI Consulting Canada Inc., FTI HK, counsel for the current Directors of SFC, counsel for the Monitor, counsel for the Trustees, the SFC Advisors, [34] the Noteholder Advisors, [35] and each and every member (including members of any committee or governance council), partner or employee of any of the foregoing, for or in connection with or in any way relating to: any Claims (including, notwithstanding anything to the contrary [in the Plan], any Unaffected Claims); Affected Claims; Section 5.1(2) D&O Claims; Conspiracy Claims; Continuing Other D&O Claims; Non-Released D&O Claims; Class Action Claims; Class Action Indemnity Claims; any right or claim in connection with or liability for the Notes or the Note Indentures; any guarantees, indemnities, claims for contribution, share pledges or Encumbrances related to the Notes or the Note Indentures; any right or claim in connection with or liability for the Existing Shares, [36] Equity Interests[37] or any other securities of SFC; any rights or claims of the Third Party Defendants relating to SFC or the Subsidiaries;

(j)    any and all Causes of Action against Newco, Newco II, the directors and officers of Newco, the directors and officers of Newco II, the Noteholders, members of the *ad hoc* committee of Noteholders, the Trustees, the Transfer Agent, the

---

demand, action, liability or other claim, action, demand or liability of any kind whatsoever, whether proprietary, financial or monetary, and whether or not it has attached or been perfected, registered or filed and whether secured, unsecured or otherwise, including: (i) any of the Charges; and (ii) any charge, security interest or claim evidenced by registrations pursuant to the Personal Property Security Act (Ontario) or any other personal property registry system.

"**Charges**" means the Administration Charge and the Directors' Charge. "**Directors' Charge**" has the meaning ascribed thereto in ¶ 26 of the Initial Order.

[31]    "**Newco**" means the new corporation to be incorporated pursuant to section 6.2(a) of the Plan under the laws of the Cayman Islands or such other jurisdiction as agreed to by SFC, the Monitor and the Initial Consenting Noteholders.

[32]    "**Newco II**" means the new corporation to be incorporated pursuant to section 6.2(b) [of the Plan] under the laws of the Cayman Islands or such other jurisdiction as agreed to by SFC, the Monitor and the Initial Consenting Noteholders.

[33]    "**Transfer Agent**" means Computershare Limited (or a subsidiary or affiliate thereof) or such other transfer agent as Newco may appoint, with the prior written consent of the Monitor and the Initial Consenting Noteholders.

[34]    "**SFC Advisors**" means Bennett Jones LLP, Appleby Global Group, King & Wood Mallesons and Linklaters LLP, in their respective capacities as legal advisors to SFC, and Houlihan Lokey Howard & Zukin Capital, Inc., in its capacity as financial advisor to SFC."

[35]    "**Noteholder Advisors**" means Goodmans LLP, Hogan Lovells and Conyers, Dill & Pearman LLP in their capacity as legal advisors to the Initial Consenting Noteholders, and Moelis & Company LLC and Moelis and Company Asia Limited, in their capacity as the financial advisors to the Initial Consenting Noteholders.

[36]    "**Existing Shares**" means all existing shares in the equity of SFC issued and outstanding immediately prior to the Effective Time and all warrants, options or other rights to acquire such shares, whether or not exercised as at the Effective Time.

[37]    "**Equity Interest**" has the meaning set forth in section 2(1) of the CCAA.

Monitor, FTI Consulting Canada Inc., FTI HK, the Named Directors and Officers, counsel for the current Directors of SFC, counsel for the Monitor, counsel for the Trustees, the SFC Advisors, the Noteholder Advisors, and each and every member (including members of any committee or governance council), partner or employee of any of the foregoing, based in whole or in part on any act, omission, transaction, duty, responsibility, indebtedness, liability, obligation, dealing or other occurrence existing or taking place on or prior to the Plan Implementation Date (or, with respect to actions taken pursuant to the Plan after the Plan Implementation Date, the date of such actions) in any way relating to, arising out of, leading up to, for, or in connection with the CCAA Proceeding, RSA, the Restructuring Transaction, [38] the Plan, any proceedings commenced with respect to or in connection with the Plan, or the transactions contemplated by the RSA and the Plan, including the creation of Newco and/or Newco II and the creation, issuance or distribution of the Newco Shares, [39] the Newco Notes, [40] the Litigation Trust or the Litigation Trust Interests, [41] provided that nothing in this paragraph shall release or discharge any of the Persons listed in this paragraph from or in respect of any obligations any of them may have under or in respect of the RSA, the Plan or under or in respect of any of Newco, Newco II, the Newco Shares, the Newco Notes, the Litigation Trust or the Litigation Trust Interests, as the case may be;

(k)     any and all Causes of Action against the Subsidiaries for or in connection with any Claim (including, notwithstanding anything to the contrary [in the Plan], any Unaffected Claim); any Affected Claim (including any Affected Creditor Claim, Equity Claim, D&O Claim, D&O Indemnity Claim and Noteholder Class Action Claim); any Section 5.1(2) D&O Claim; any Conspiracy Claim; any Continuing Other D&O Claim; any Non-Released D&O Claim; any Class Action Claim; any Class Action Indemnity Claim; any right or claim in connection with or liability for the Notes or the Note Indentures; any guarantees, indemnities, share pledges or Encumbrances relating to the Notes or the Note Indentures; any right or claim in connection with or liability for the Existing Shares, Equity Interests or any other securities of SFC; any rights or claims of the Third Party Defendants relating to SFC or the Subsidiaries; any right or claim in connection with or liability for the RSA, the Plan, the CCAA Proceedings, the Restructuring Transaction, the Litigation Trust, the business and affairs of SFC and the

---

[38]     **"Restructuring Transaction"** means the transactions contemplated by the Plan (including any Alternative Sale Transaction that occurs pursuant to section 10.1 of the Plan). **"Alternative Sale Transaction"** means, as set forth in section 10.1 of the Plan, that transaction which, at any time prior to the Plan Implementation Date (whether prior to or after the granting of the Sanction Order), and subject to the prior written consent of the Initial Consenting Noteholders, SFC may complete which constitutes a sale of all or substantially all of the SFC Assets on terms that are acceptable to the Initial Consenting Noteholders.

[39]     **"Newco Shares"** means common shares in the capital of Newco.

[40]     **"Newco Notes"** means the new notes to be issued by Newco on the Plan Implementation Date in the aggregate principal amount of $300,000,000, on such terms and conditions as are satisfactory to the Initial Consenting Noteholders and SFC, acting reasonably.

[41]     **"Litigation Trust Interests"** means the beneficial interests in the Litigation Trust to be created on the Plan Implementation Date.

Subsidiaries (whenever or however conducted), the administration and/or management of SFC and the Subsidiaries, or any public filings, statements, disclosures or press releases relating to SFC; any right or claim in connection with or liability for any indemnification obligation to Directors[42] or Officers[43] of SFC or the Subsidiaries pertaining to SFC, the Notes, the Note Indentures, the Existing Shares, the Equity Interests, any other securities of SFC or any other right, claim or liability for or in connection with the RSA, the Plan, the CCAA Proceedings, the Restructuring Transaction, the Litigation Trust, the business and affairs of SFC (whenever or however conducted), the administration and/or management of SFC, or any public filings, statements, disclosures or press releases relating to SFC; any right or claim in connection with or liability for any guaranty, indemnity or claim for contribution in respect of any of the foregoing; and any Encumbrance in respect of the foregoing;

(1)     all Subsidiary Intercompany Claims[44] as against SFC (which are assumed by Newco and then Newco II pursuant to the Plan);

(m)     any entitlements of Ernst & Young[45] to receive distributions of any kind (including Newco Shares, Newco Notes and Litigation Trust Interests) under this Plan;

(n)     any entitlements of the Named Third Party Defendants[46] to receive distributions of any kind (including Newco Shares, Newco Notes and Litigation Trust Interests)

(o)     any entitlements of the Underwriters to receive distributions of any kind (including Newco Shares, Newco Notes and Litigation Trust Interests) under this

**7.2**     ***Claims Not Released***.  Notwithstanding anything to the contrary in section 7.1 [of the Plan], nothing in [the] Plan shall waive, compromise, release, discharge, cancel or bar any of the following:

(a)     SFC of its obligations under the Plan and the [Plan] Sanction Order;

---

[42]     **"Subsidiary Intercompany Claim"** means any Claim by any Subsidiary or Greenheart against SFC.

[43]     **"Director"** means, with respect to SFC or any Subsidiary, anyone who is or was, or may be deemed to be or have been, whether by statute, operation of law or otherwise, a director or de facto director of such SFC Company.

[44]     **"Officer"** means, with respect to SFC or any Subsidiary, anyone who is or was, or may be deemed to be or have been, whether by statute, operation of law or otherwise, an officer or de facto officer of such SFC Company.

[45]     **"Ernst & Young"** means Ernst & Young LLP (Canada), Ernst & Young Global Limited and all other member firms thereof, and all present and former affiliates, partners, associates, employees, servants, agents, contractors, directors, officers, insurers and successors, administrators, heirs and assigns of each, but excludes any Director or Officer (in their capacity as such) and successors, administrators, heirs and assigns of any Director or Officer (in their capacity as such).

[46]     **"Named Third Party Defendants"** means the Third Party Defendants listed on Schedule "A" to the Plan in accordance with section 11.2(a) of the Plan, provided that only Eligible Third Party Defendants may become Named Third Party Defendants.

(b)     SFC from or in respect of any Unaffected Claims (provided that recourse against SFC in respect of Unaffected Claims shall be limited in the manner set out in section 4.2 [of the Plan];

(c)     any Directors or Officers of SFC or the Subsidiaries from any Non-Released D&O Claims, Conspiracy Claims or any Section 5.1(2) D&O Claims, provided that recourse against the Named Directors or Officers of SFC in respect of any Section 5.1(2) D&O Claims and any Conspiracy Claims shall be limited in the manner set out in section 4.9(e) [of the Plan];

(d)     any Other Directors and/or Officers[47] from any Continuing Other D&O Claims, provided that recourse against the Other Directors and/or Officers in respect of the Indemnified Noteholder Class Action Claims shall be limited in the manner set out in section 4.4(b)(i) [of the Plan];

(e)     the Third Party Defendants from any claim, liability or obligation of whatever nature for or in connection with the Class Action Claims, provided that the maximum aggregate liability of the Third Party Defendants collectively in respect of the Indemnified Noteholder Class Action Claims shall be limited to the Indemnified Noteholder Class Action Limit pursuant to section 4.4(b)(i) [of the Plan] and the releases set out in sections 7.1(e) and 7.1(f) [of the Plan] and the injunctions set out in section 7.3 [of the Plan];

(f)     Newco II from any liability to the applicable Subsidiaries in respect of the Subsidiary Intercompany Claims assumed by Newco II pursuant to section 6.4(x) [of the Plan];

(g)     the Subsidiaries from any liability to Newco II in respect of the SFC Intercompany Claims conveyed to Newco II pursuant to section 6.4(x) [of the Plan];

(h)     SFC of or from any investigations by or non-monetary remedies of the Ontario Securities Commission, provided that, for greater certainty, all monetary rights, claims or remedies of the Ontario Securities Commission against SFC shall be treated as Affected Creditor Claims in the manner described in section 4.1 [of the Plan];

(i)     the Subsidiaries from their respective indemnification obligations (if any) to Directors or Officers of the Subsidiaries that relate to the ordinary course operations of the Subsidiaries and that have no connection with any of the matters listed in section 7.1(i) [of the Plan];

(j)     SFC or the Directors and Officers from any Insured Claims,[48] provided that recovery for Insured Claims shall be irrevocably limited to recovery solely from

---

[47]    **"Other Directors and/or Officers"** means any Directors and/or Officers other than the Named Directors and Officers.

[48]    **"Insured Claim"** means all or that portion of any Claim for which SFC is insured and all or that portion of any D&O Claim for which the applicable Director or Officer is insured, in each case pursuant to any of the

the proceeds of Insurance Policies paid or payable on behalf of SFC or its Directors and Officers in the manner set forth in section 2.4 [of the Plan];

(k)    insurers from their obligations under insurance policies; and

(1)    any Released Party[49] for fraud or criminal conduct.

**7.3**    *Injunction*.    All Persons[50] are permanently and forever barred, estopped, stayed and enjoined, on and after the Effective Time, with respect to any and all Released Claims, [51] from (i) commencing, conducting or continuing in any manner, directly or indirectly, any action, suits, demands or other proceedings of any nature or kind whatsoever (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against the Released Parties; (ii) enforcing, levying, attaching, collecting or otherwise recovering or enforcing by any manner or means, directly or indirectly, any judgment, award, decree or order against the Released Parties or their property; (iii) commencing, conducting or continuing in any manner, directly or indirectly, any action, suits or demands, including without limitation, by way of contribution or indemnity or other relief, in common law, or in equity, breach of trust or breach of fiduciary duty or under the provisions of any statute or regulation, or other proceedings of any nature or kind whatsoever (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against any Person who makes such a claim or might reasonably be expected to make such a claim, in any manner or forum, against one or more of the Released Parties; (iv) creating, perfecting, asserting or otherwise enforcing, directly or indirectly, any lien or encumbrance of any kind against the Released Parties or their property; or (v) taking any actions to interfere with the implementation or consummation of this Plan; provided, however, that the foregoing shall not apply to the enforcement of any obligations under the Plan.

**7.4**    *Timing of Releases and Injunctions*.    All releases and injunctions set forth in [Article 7 of the Plan] shall become effective on the Plan Implementation Date at the time or times and in the manner set forth in section 6.4 [of the Plan].

---

Insurance Policies.  "**Insurance Policies**" means, collectively, the following insurance policies, as well as any other insurance policy pursuant to which SFC or any Director or Officer is insured:  ACE INA Insurance Policy Number DO024464; Chubb Insurance Company of Canada Policy Number 8209-4449; Lloyds of London, England Policy Number XTFF0420; Lloyds of London, England Policy Number XTFF0373; and Travelers Guarantee Company of Canada Policy Number 10181108, and "**Insurance Policy**" means any one of the Insurance Policies.

[49]    "**Released Parties**" means, collectively, those Persons released pursuant to Article 7 of the Plan, but only to the extent so released, and each such Person is referred to individually as a "**Released Party**."

[50]    "**Person**" – as used in the Plan and Plan Sanction Order -- means any individual, sole proprietorship, limited or unlimited liability corporation, partnership, unincorporated association, unincorporated syndicate, unincorporated organization, body corporate, joint venture, trust, pension fund, union, Governmental Entity, and a natural person including in such person's capacity as trustee, heir, beneficiary, executor, administrator or other legal representative.

[51]    "**Released Claims**" means all of the rights, claims and liabilities of any kind released pursuant to Article 7 of the Plan.

**7.5**    *Equity Class Action Claims Against the Third Party Defendants*.    Subject only to Article 11 [of the Plan], and notwithstanding anything else to the contrary in [the] Plan, any Class Action Claim against the Third Party Defendants that relates to the purchase, sale or ownership of Existing Shares or Equity Interests:  (a) is unaffected by this Plan; (b) is not discharged, released, cancelled or barred pursuant to this Plan; (c) shall be permitted to continue as against the Third Party Defendants; (d) shall not be limited or restricted by this Plan in any manner as to quantum or otherwise (including any collection or recovery for any such Class Action Claim that relates to any liability of the Third Party Defendants for any alleged liability of SFC); and (e) does not constitute an Equity Claim or an Affected Claim under this Plan.

**Article 11 of the Plan**[52]
**SETTLEMENT OF CLAIMS AGAINST THIRD PARTY DEFENDANTS**

**11.1**    *Ernst & Young*

(a)    Notwithstanding anything to the contrary [in the Plan], subject to: (i) the granting of the [Plan] Sanction Order; (ii) the issuance of the Settlement Trust Order[53] (as may be modified in a manner satisfactory to the parties to the Ernst & Young Settlement and SFC (if occurring on or prior to the Plan Implementation Date), the Monitor and the Initial Consenting Noteholders,[54] as applicable, to the extent, if any, that such modifications affect SFC, the Monitor or the Initial Consenting Noteholders, each acting reasonably); (iii) the granting of an Order under Chapter 15 of the United States Bankruptcy Code recognizing and enforcing the [Plan] Sanction Order and the Settlement Trust Order in the United States; (iv) any other order necessary to give effect to the Ernst & Young Settlement (the orders referenced in (iii) and (iv) being collectively the "**Ernst & Young Orders**"); (v) the fulfillment of all conditions precedent in the Ernst & Young Settlement and the fulfillment by the Ontario Class Action Plaintiffs[55] of all of

---

[52]    As effectuated by Paragraphs 40 and 41 of the Plan Sanction Order.

[53]    "**Settlement Trust Order**" means a court order that establishes the Settlement Trust and approves the Ernst & Young Settlement and the Ernst & Young Release, in form and in substance satisfactory to Ernst & Young and counsel to the Ontario Class Action Plaintiffs, provided that such order shall also be acceptable to SFC (if occurring on ·or prior to the Plan Implementation Date), the Monitor and the Initial Consenting Noteholders, as applicable, to the extent, if any, that such order affects SFC, the Monitor or the Initial Consenting Noteholders, each acting reasonably.

"**Ernst & Young Settlement**" means the settlement as reflected in the Minutes of Settlement executed on November 29, 2012 between Ernst & Young LLP, on behalf of itself and Ernst & Young Global Limited and all member firms thereof and the plaintiffs in Ontario Superior Court Action No. CV-11-4351153-00CP and in Quebec Superior Court No. 200-06-001132-111, and such other documents contemplated thereby.

"**Ernst & Young Release**" means the release described in 11.1(b) of the Plan.

[54]    "**Initial Consenting Noteholders**" means, subject to section 12.7 of the Plan, the Noteholders that executed the RSA on March 30, 2012.

[55]    "**Ontario Class Action Plaintiffs**" means the plaintiffs in the Ontario class action case styled as *Trustees of the Labourers' Pension Fund of Central and Eastern Canada et al v. Sino-Forest Corporation et al.* (Ontario Superior Court of Justice, Court File No. CV -11-431153-00CP).

their obligations thereunder; and (vi) the [Plan] Sanction Order, the Settlement Trust Order and all Ernst & Young Orders being final orders and not subject to further appeal or challenge, Ernst & Young shall pay the settlement amount as provided in the Ernst & Young Settlement to the trust established pursuant to the Settlement Trust Order (the "**Settlement Trust**").  Upon receipt of a certificate from Ernst & Young confirming it has paid the settlement amount to the Settlement Trust in accordance with the Ernst & Young Settlement and the trustee of the Settlement Trust confirming receipt of such settlement amount, the Monitor shall deliver to Ernst & Young a certificate (the "**Monitor's Ernst & Young Settlement Certificate**") stating that (i) Ernst & Young has confirmed that the settlement amount has been paid to the Settlement Trust in accordance with the Ernst & Young Settlement; (ii) the trustee of the Settlement Trust has confirmed that such settlement amount has been received by the Settlement Trust; and (iii) the Ernst & Young Release is in full force and effect in accordance with the Plan.  The Monitor shall thereafter file the Monitor's Ernst & Young Settlement Certificate with the Court.

(b)    Notwithstanding anything to the contrary [in the Plan], upon receipt by the Settlement Trust of the settlement amount in accordance with the Ernst & Young Settlement:  (i) all Ernst & Young Claims[56] shall be fully, finally, irrevocably and

---

[56]    **"Ernst & Young Claim"** means any and all demands, claims, actions, Causes of Action, counterclaims, suits, debts, sums of money, accounts, covenants, damages, judgments, orders, including injunctive relief or specific performance and compliance orders, expenses, executions, Encumbrances and other recoveries on account of any claim, indebtedness, liability, obligation, demand or cause of action of whatever nature that any Person, including any Person who may claim contribution or indemnification against or from them and also including for greater certainty the SFC Companies, the Directors (in their capacity as such), the Officers (in their capacity as such), the Third Party Defendants, Newco, Newco II, the directors and officers of Newco and Newco II, the Noteholders or any Noteholder, any past, present or future holder of a direct or indirect equity interest in the SFC Companies, any past, present or future direct or indirect investor or security holder of the SFC Companies, any direct or indirect security holder of Newco or Newco II, the Trustees, the Transfer Agent, the Monitor, and each and every member (including members of any committee or governance council), present and former affiliate, partner, associate, employee, servant, agent, contractor, director, officer, insurer and each and every successor, administrator, heir and assign of each of any of the foregoing may or could (at any time past present or future) be entitled to assert against Ernst & Young, including any and all claims in respect of statutory liabilities of Directors (in their capacity as such), Officers (in their capacity as such) and any alleged fiduciary (in any capacity) whether known or unknown, matured or unmatured, direct or derivative, foreseen or unforeseen, suspected or unsuspected, contingent or not contingent, existing or hereafter arising, based in whole or in part on any act or omission, transaction, dealing or other occurrence existing or taking place on, prior to or after the Ernst & Young Settlement Date relating to, arising out of or in connection with the SFC Companies, the SFC Business, any Director or Officer (in their capacity as such) and/or professional services performed by Ernst & Young or any other acts or omissions of Ernst & Young in relation to the SFC Companies, the SFC Business, any Director or Officer (in their capacity as such), including for greater certainty but not limited to any claim arising out of:

(a)    all audit, tax, advisory and other professional services provided to the SFC Companies or related to the SFC Business up to the Ernst & Young Settlement Date, including for greater certainty all audit work performed, all auditors' opinions and all consents in respect of all offering of SFC securities and all regulatory compliance delivered in respect of all fiscal periods and all work related thereto up to and including the Ernst & Young Settlement Date;

(b)    all claims advanced or which could have been advanced in any or all of the Class Actions;

forever compromised, released, discharged, cancelled, barred and deemed satisfied and extinguished as against Ernst & Young; (ii) section 7.3 [of the Plan] shall apply to Ernst & Young and the Ernst & Young Claims *mutatis mutandis* on the Ernst & Young Settlement Date; [57] and (iii) none of the plaintiffs in the Class Actions shall be permitted to claim from any of the other Third Party Defendants that portion of any damages that corresponds to the liability of Ernst & Young, proven at trial or otherwise, that is the subject of the Ernst & Young Settlement.

(c)        In the event that the Ernst & Young Settlement is not completed in accordance with its terms, the Ernst & Young Release and the injunctions described in section 11.1 (b) shall not become effective.

**11.2**    *Named Third Party Defendants*

(a)        Notwithstanding anything to the contrary in section 12.5(a) or 12.5(b) [of the Plan], at any time prior to 10:00 a.m. (Toronto time) on December 6, 2012 or such later date as agreed in writing by the Monitor, SFC (if on or prior to the Plan Implementation Date) and the Initial Consenting Noteholders, Schedule "A" to this Plan may be amended, restated, modified or supplemented at any time and from time to time to add any Eligible Third Party Defendant[58] as a "**Named Third Party Defendant**", [59] subject in each case to the prior written consent of such Third Party Defendant, the Initial Consenting Noteholders, counsel to the Ontario Class Action Plaintiffs, the Monitor and, if occurring on or prior to the Plan Implementation Date, SFC.  Any such amendment, restatement, modification and/or supplement of Schedule "A" shall be deemed to be effective automatically upon all such required consents being received.  The Monitor shall:  (A) provide notice to the service list of any such amendment, restatement, modification and/or supplement of Schedule "A"; (B) file a copy thereof with the Court; and (C) post

---

(c)    all claims advanced or which could have been advanced in any or all actions commenced in all jurisdictions prior the Ernst & Young Settlement Date; or

(d)    all Noteholder Claims, Litigation Trust Claims or any claim of the SFC Companies, provided that "Ernst & Young Claim" does not include any proceedings or remedies that may be taken against Ernst & Young by the Ontario Securities Commission or by staff of the Ontario Securities Commission, and the jurisdiction of the Ontario Securities Commission and staff of the Ontario Securities Commission in relation to Ernst & Young under the Securities Act, R.S.O. 1990, c. S-5 is expressly preserved.

[57]    **"Ernst & Young Settlement Date"** means the date that the Monitor's Ernst & Young Settlement Certificate is delivered to Ernst & Young.

[58]    **"Eligible Third Party Defendant"** means any of the Underwriters, BDO Limited and Ernst & Young (in the event that the Ernst & Young Settlement is not completed), together with any of their respective present and former affiliates, partners, associates, employees, servants, agents, contractors, directors, officers, insurers and successors, administrators, heirs and assigns (but excluding any Director or Officer and successors, administrators, heirs and assigns of any Director or Officer in their capacity as such), and any Director or Officer together with their respective successors, administrators, heirs and assigns.

[59]    **"Named Third Party Defendants"** means the Third Party Defendants listed on Schedule "A" to the Plan in accordance with section 11.2(a) of the Plan, provided that only Eligible Third Party Defendants may become Named Third Party Defendants.

an electronic copy thereof on the Website. [60]   All Affected Creditors shall be deemed to consent thereto any and no Court Approval thereof will be required.

(b)     Notwithstanding anything to the contrary [in the Plan], subject to:  (i) the granting of the [Plan] Sanction Order; (ii) the granting of the applicable Named Third Party Defendant Settlement Order; [61] and (iii) the satisfaction or waiver of all conditions precedent contained in the applicable Named Third Party Defendant Settlement, [62] the applicable Named Third Party Defendant Settlement shall be given effect in accordance with its terms.  Upon receipt of a certificate (in form and in substance satisfactory to the Monitor) from each of the parties to the applicable Named Third Party Defendant Settlement confirming that all conditions precedent thereto have been satisfied or waived, and that any settlement funds have been paid and received, the Monitor shall deliver to the applicable Named Third Party Defendant a certificate (the "**Monitor's Named Third Party Settlement Certificate**") stating that (i) each of the parties to such Named Third Party Defendant Settlement has confirmed that all conditions precedent thereto have been satisfied or waived; (ii) any settlement funds have been paid and received; and (iii) immediately upon the delivery of the Monitor's Named Third Party Settlement Certificate, the applicable Named Third Party Defendant Release[63] will be in full force and effect in accordance with the Plan. The Monitor shall thereafter file the Monitor's Named Third Party Settlement Certificate with the Court.

(c)     Notwithstanding anything to the contrary [in the Plan], upon delivery of the Monitor's Named Third Party Settlement Certificate, any claims and Causes of Action shall be dealt with in accordance with the terms of the applicable Named

---

[60]     **"Website"** means the website maintained by the Monitor in respect of the CCAA Proceeding pursuant to the Initial Order at the following web address: http://cfcanada.fticonsulting.com/sfc.

[61]     **"Named Third Party Defendant Settlement Order"** means a court order approving a Named Third Party Defendant Settlement in form and in substance satisfactory to the applicable Named Third Party Defendant, SFC (if occurring on or prior to the Plan Implementation Date), the Monitor, the Initial Consenting Noteholders (if on or prior to the Plan Implementation Date), the Litigation Trustee (if after the Plan Implementation Date) and counsel to the Ontario Class Action Plaintiffs (if the plaintiffs in any of the Class Actions are affected by the applicable Named Third Party Defendant Settlement).

[62]     **"Named Third Party Defendant Settlement"** means a binding settlement between any applicable Named Third Party Defendant and one or more of: (i) the plaintiffs in any of the Class Actions; and (ii) the Litigation Trustee (on behalf of the Litigation Trust) (if after the Plan Implementation Date), provided that, in each case, such settlement must be acceptable to SFC (if on or prior to the Plan Implementation Date), the Monitor, the Initial Consenting Noteholders (if on or prior to the Plan Implementation Date) and the Litigation Trustee (if after the Plan Implementation Date), and provided further that such settlement shall not affect the plaintiffs in the Class Actions without the consent of counsel to the Ontario Class Action Plaintiffs.

[63]     **"Named Third Party Defendant Release"** means a release of any applicable Named Third Party Defendant agreed to pursuant to a Named Third Party Defendant Settlement and approved pursuant to a Named Third Party Defendant Settlement Order, provided that such release must be acceptable to SFC (if on or prior to the Plan Implementation Date), the Monitor, the Initial Consenting Noteholders (if on or prior to the Plan Implementation Date) and the Litigation Trustee (if after the Plan Implementation Date), and provided further that such release shall not affect the plaintiffs in the Class Actions without the consent of counsel to the Ontario Class Action Plaintiffs.

Third Party Defendant Settlement, the Named Third Party Defendant Settlement Order and the Named Third Party Defendant Release.  To the extent provided for by the terms of the applicable Named Third Party Defendant Release:  (i) the applicable Causes of Action against the applicable Named Third Party Defendant shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled, barred and deemed satisfied and extinguished as against the applicable Named Third Party Defendant; and (ii) section 7.3 [of the Plan] shall apply to the applicable Named Third Party Defendant and the applicable Causes of Action against the applicable Named Third Party Defendant mutatis mutandis on the effective date of the Named Third Party Defendant Settlement.

### Plan Sanction Order

*Paragraph 31*.  [B]etween (i) the Plan Implementation Date and (ii) the earlier of the Ernst & Young Settlement Date or such other date as may be ordered by the [Ontario] Court on a motion to the [Ontario] Court on reasonable notice to Ernst & Young, any and all Persons shall be and are hereby stayed from commencing, taking, applying for or issuing or continuing any and all steps or proceedings against Ernst & Young (other than all steps or proceedings to implement the Ernst & Young Settlement) pursuant to the terms of the Order of the Honourable Justice Morawetz dated May 8, 2012, provided that no steps or proceedings against Ernst & Young by the Ontario Securities Commission or by staff of the Ontario Securities Commission under the Securities Act (Ontario) shall be stayed by [the Plan Sanction Order].

For the avoidance of doubt, the enforcement of Article 11 of the Plan as set forth above does not presently grant a release for Ernst & Young or any other Named Third Party Defendants, and nothing in this Order shall constitute recognition or enforcement in the United States of the Ernst & Young Settlement.

6.    Notice of entry of this order shall be served on creditors and parties in interest of SFC with respect to the Canadian Proceeding.  Such service in accordance with this Order shall constitute adequate and sufficient service and notice of this Order.

7.    The Chapter 15 Petition and copies of the Canadian Orders shall be made available upon request at the offices of Milbank, Tweed, Hadley & M$^C$Cloy, LLP, One Chase Manhattan Plaza, New York, NY 10005, Attn:  Jeremy C. Hollembeak, Esq., (212) 530-5189, jhollembeak@milbank.com.

8.      Notwithstanding Bankruptcy Rule 7062, made applicable to these Chapter 15 Cases by Bankruptcy Rule 1018, this Order shall be immediately effective and enforceable upon its entry, and upon its entry, this Order shall become final and appealable.

9.      This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any request for additional relief or any adversary proceeding brought in and through these Chapter 15 Cases, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.


Dated:  April 15, 2013
        New York, New York

                                    _____/s/Martin Glenn_____
                                       MARTIN GLENN
                                 United States Bankruptcy Judge