## EXHIBIT A

**Initial Order**

Court File No. CV-12-9667-00CL

**ONTARIO**

**SUPERIOR COURT OF JUSTICE**

**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | FRIDAY, THE 30th |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF MARCH, 2012 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF SINO-FOREST CORPORATION

**INITIAL ORDER**

THIS APPLICATION, made by Sino-Forest Corporation (the "Applicant"), pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") was heard this day at 330 University Avenue, Toronto, Ontario.

ON READING the affidavit of W. Judson Martin sworn March 30, 2012 and the Exhibits thereto (the "Martin Affidavit") and the Pre-Filing Report of the Proposed Monitor, FTI Consulting Canada Inc. ("FTI") (the "Monitor's Pre-Filing Report"), and on being advised that there are no secured creditors who are likely to be affected by the charges created herein, and on hearing the submissions of counsel for the Applicant, the Applicant's directors, FTI, the *ad hoc* committee of holders of notes issued by the Applicant (the "Ad Hoc Noteholders"), and no one else appearing for any other party, and on reading the consent of FTI to act as the Monitor,

2

## SERVICE

1.    THIS COURT ORDERS that the time for service of the Notice of Application, the Application Record and the Monitor's Pre-Filing Report is hereby abridged and validated so that this Application is properly returnable today and hereby dispenses with further service thereof.

## APPLICATION

2.    THIS COURT ORDERS AND DECLARES that the Applicant is a company to which the CCAA applies.

## PLAN OF ARRANGEMENT

3.    THIS COURT ORDERS that the Applicant shall have the authority to file and may, subject to further order of this Court, file with this Court a plan of compromise or arrangement (hereinafter referred to as the "Plan").

4.    THIS COURT ORDERS that the Applicant shall be entitled to seek any ancillary or other relief from this Court in respect of any of its subsidiaries in connection with the Plan or otherwise in respect of these proceedings.

## POSSESSION OF PROPERTY AND OPERATIONS

5.    THIS COURT ORDERS that the Applicant shall remain in possession and control of its current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the "Property").  Subject to further Order of this Court, the Applicant shall continue to carry on business in a manner consistent with the preservation of its business (the "Business") and Property.  The Applicant shall be authorized and empowered to continue to retain and employ the employees, consultants, agents, experts, accountants, counsel and such other persons (collectively "Assistants") currently retained or employed by it, with liberty to retain such further Assistants as it deems reasonably necessary or desirable in the ordinary course of business or for the carrying out of the terms of this Order.

6.    THIS COURT ORDERS that the Applicant shall be entitled but not required to pay the following expenses, whether incurred prior to or after this Order:

3

(a)    all outstanding and future wages, salaries, employee and pension benefits, vacation pay and expenses payable on or after the date of this Order, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements;

(b)    the fees and disbursements of any Assistants retained or employed by the Applicant in respect of these proceedings, at their standard rates and charges;

(c)    the fees and disbursements of the directors and counsel to the directors, at their standard rates and charges; and

(d)    such other amounts as are set out in the March 29 Forecast (as defined in the Monitor's Pre-Filing Report and attached as Exhibit "DD" to the Martin Affidavit).

7.    THIS COURT ORDERS that, except as otherwise provided to the contrary herein, the Applicant shall be entitled but not required to pay all reasonable expenses incurred by the Applicant in carrying on the Business in the ordinary course after this Order, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a)    all expenses and capital expenditures reasonably necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors and officers insurance), maintenance and security services; and

(b)    payment for goods or services actually supplied to the Applicant following the date of this Order.

8.    THIS COURT ORDERS that the Applicant shall remit, in accordance with legal requirements, or pay:

(a)    any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from employees' wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, (iii) Quebec Pension Plan, and (iv) income taxes;

4

(b)     all goods and services or other applicable sales taxes (collectively, "Sales Taxes")
required to be remitted by the Applicant in connection with the sale of goods and
services by the Applicant, but only where such Sales Taxes are accrued or collected
after the date of this Order, or where such Sales Taxes were accrued or collected prior
to the date of this Order but not required to be remitted until on or after the date of
this Order; and

(c)     any amount payable to the Crown in right of Canada or of any Province thereof or
any political subdivision thereof or any other taxation authority in respect of
municipal realty, municipal business or other taxes, assessments or levies of any
nature or kind which are entitled at law to be paid in priority to claims of secured
creditors and which are attributable to or in respect of the carrying on of the Business
by the Applicant.

9.     THIS COURT ORDERS that until a real property lease is disclaimed or resiliated in
accordance with the CCAA, the Applicant shall pay all amounts constituting rent or payable as
rent under real property leases (including, for greater certainty, common area maintenance
charges, utilities and realty taxes and any other amounts payable to the landlord under the lease)
or as otherwise may be negotiated between the Applicant and the landlord from time to time
("Rent"), for the period commencing from and including the date of this Order, twice-monthly in
equal payments on the first and fifteenth day of each month, in advance (but not in arrears). On
the date of the first of such payments, any Rent relating to the period commencing from and
including the date of this Order shall also be paid.

10.     THIS COURT ORDERS that, except as specifically permitted herein, the Applicant is
hereby directed, until further Order of this Court: (a) to make no payments of principal, interest
thereon or otherwise on account of amounts owing by the Applicant to any of its creditors as of
this date; (b) to grant no security interests, trust, liens, charges or encumbrances upon or in
respect of any of its Property; and (c) to not grant credit or incur liabilities except in the ordinary
course of the Business.

5

**RESTRUCTURING**

11.    THIS COURT ORDERS that the Applicant shall, subject to such requirements as are imposed by the CCAA and such covenants as may be contained in the Support Agreement (as defined below), have the right to:

(a)    permanently or temporarily cease, downsize or shut down any of its business or operations, and to dispose of redundant or non-material assets not exceeding US$500,000 in any one transaction or US$1,000,000 in the aggregate;

(b)    terminate the employment of such of its employees or temporarily lay off such of its employees as it deems appropriate; and

(c)    pursue all avenues of refinancing of its Business or Property, in whole or part, subject to prior approval of this Court being obtained before any material refinancing

all of the foregoing to permit the Applicant to proceed with an orderly restructuring of the Business.

12.    THIS COURT ORDERS that the Applicant shall provide each of the relevant landlords with notice of the Applicant's intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal. The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes the Applicant's entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors, such landlord and the Applicant, or by further Order of this Court upon application by the Applicant on at least two (2) days notice to such landlord and any such secured creditors. If the Applicant disclaims or resiliates the lease governing such leased premises in accordance with Section 32 of the CCAA, it shall not be required to pay Rent under such lease pending resolution of any such dispute (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer or resiliation of the lease shall be without prejudice to the Applicant's claim to the fixtures in dispute.

13.    THIS COURT ORDERS that if a notice of disclaimer or resiliation is delivered pursuant to Section 32 of the CCAA, then (a) during the notice period prior to the effective time of the

disclaimer or resiliation, the landlord may show the affected leased premises to prospective tenants during normal business hours, on giving the Applicant and the Monitor 24 hours' prior written notice, and (b) at the effective time of the disclaimer or resiliation, the relevant landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims or rights such landlord may have against the Applicant in respect of such lease or leased premises and such landlord shall be entitled to notify the Applicant of the basis on which it is taking possession and to gain possession of and re-lease such leased premises to any third party or parties on such terms as such landlord considers advisable, provided that nothing herein shall relieve such landlord of its obligation to mitigate any damages claimed in connection therewith.

## RESTRUCTURING SUPPORT AGREEMENT

14.    THIS COURT ORDERS that the Applicant and the Monitor are authorized and directed to engage in the following procedures to notify noteholders of the restructuring support agreement dated as of March 30, 2012 (the "Support Agreement") between, among others, the Applicant and certain noteholders (the "Initial Consenting Noteholders"), appended as Exhibit "B" to the Martin Affidavit, to enable any additional noteholders to execute a Joinder Agreement in the form attached as Schedule "C" to the Support Agreement and to become bound thereby as Consenting Noteholders (as defined in the Support Agreement):

   (a)    the Monitor shall without delay post a copy of the Support Agreement on its website at http://cfcanada.ftlconsulting.com/sfc (the "Monitor's Website"); and

   (b)    the notice to be published by the Monitor pursuant to paragraph 51 of this Order shall include a statement in form and substance acceptable to the Applicant, the Monitor and counsel to the Ad Hoc Noteholders, each acting reasonably, notifying noteholders of the Support Agreement and of the deadline of 5:00 p.m. (Toronto time) on May 15, 2012 (the "Consent Date") by which any noteholder (other than an Initial Consenting Noteholder) who wishes to become entitled to the Early Consent Consideration pursuant to the Support Agreement (if such Early Consent Consideration becomes payable pursuant to the terms thereof) must execute and return the Joinder Agreement to the Applicant, and shall direct noteholders to the Monitor's Website where a copy of the Support Agreement (including the Joinder Agreement) can be obtained.

15.    THIS COURT ORDERS that any noteholder (other than an Initial Consenting Noteholder) who wishes to become a Consenting Noteholder and become entitled to the Early Consent Consideration (if such Early Consent Consideration becomes payable pursuant to the terms thereof, and subject to such noteholder demonstrating its holdings to the Monitor in accordance with the Support Agreement) must execute a Joinder Agreement and return it to the Applicant and the Noteholder Advisors (as defined below) in accordance with the instructions set out in the Support Agreement such that it is received by the Applicant and the Noteholder Advisors prior to the Consent Deadline and, upon so doing, such noteholder shall become a Consenting Noteholder and shall be bound by the terms of the Support Agreement.

16.    THIS COURT ORDERS that as soon as practicable after the Consent Deadline, the Applicant shall provide to the Monitor copies of all executed Joinder Agreements received from noteholders prior to the Consent Deadline.

**NO PROCEEDINGS AGAINST THE APPLICANT OR THE PROPERTY**

17.    THIS COURT ORDERS that until and including April 29, 2012, or such later date as this Court may order (the "Stay Period"), no proceeding or enforcement process in any court or tribunal (each, a "Proceeding") shall be commenced or continued against or in respect of the Applicant or the Monitor, or affecting the Business or the Property, except with the written consent of the Applicant and the Monitor, or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Applicant or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

18.    THIS COURT ORDERS that until and including the Stay Period, no Proceeding shall be commenced or continued by any noteholder, indenture trustee or security trustee (each in respect of the notes issued by the Applicant, collectively, the "Noteholders") against or in respect of any of the Applicant's subsidiaries listed on Schedule "A" (each a "Subsidiary Guarantor", and collectively, the "Subsidiary Guarantors"), except with the written consent of the Applicant and the Monitor, or with leave of this Court, and any and all Proceedings currently under way by a Noteholder against or in respect of any Subsidiary Guarantors are hereby stayed and suspended pending further Order of this Court.

8

## NO EXERCISE OF RIGHTS OR REMEDIES

19.      THIS COURT ORDERS that during the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "Persons" and each being a "Person") against or in respect of the Applicant or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended and shall not be commenced, proceeded with or continued, except with the written consent of the Applicant and the Monitor, or leave of this Court, provided that nothing in this Order shall (i) empower the Applicant to carry on any business which the Applicant is not lawfully entitled to carry on, (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA, (iii) prevent the filing of any registration to preserve or perfect a security interest, (iv) prevent the registration of a claim for lien, or (v) prevent the exercise of any termination rights of the Consenting Noteholders under the Support Agreement.

20.      THIS COURT ORDERS that during the Stay Period, all rights and remedies of the Noteholders against or in respect of the Subsidiary Guarantors are hereby stayed and suspended and shall not be commenced, proceeded with or continued, except with the written consent of the Applicant and the Monitor, or leave of this Court, provided that nothing in this Order shall (i) empower any Subsidiary Guarantor to carry on any business which such Subsidiary Guarantor is not lawfully entitled to carry on, (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien.

## NO INTERFERENCE WITH RIGHTS

21.      THIS COURT ORDERS that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Applicant, except with the written consent of the Applicant and the Monitor, or leave of this Court.

9

## CONTINUATION OF SERVICES

22.    THIS COURT ORDERS that during the Stay Period, all Persons having oral or written agreements with the Applicant or statutory or regulatory mandates for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation services, utility or other services to the Business or the Applicant, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Applicant or exercising any other remedy provided under such agreement or arrangements, and that the Applicant shall be entitled to the continued use of its current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Applicant in accordance with normal payment practices of the Applicant or such other practices as may be agreed upon by the supplier or service provider and each of the Applicant and the Monitor, or as may be ordered by this Court.

## NON-DEROGATION OF RIGHTS

23.    THIS COURT ORDERS that, notwithstanding anything else in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of lease or licensed property or other valuable consideration provided on or after the date of this Order, nor shall any Person be under any obligation on or after the date of this Order to advance or re-advance any monies or otherwise extend any credit to the Applicant. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

## PROCEEDINGS AGAINST DIRECTORS AND OFFICERS

24.    THIS COURT ORDERS that during the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against any of the former, current or future directors or officers of the Applicant with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of the Applicant whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such

obligations, until a compromise or arrangement in respect of the Applicant, if one is filed, is sanctioned by this Court or is refused by the affected creditors of the Applicant or this Court.

## DIRECTORS' AND OFFICERS' INDEMNIFICATION AND CHARGE

25.     THIS COURT ORDERS that the Applicant shall (i) indemnify its directors and officers against obligations and liabilities that they may incur as directors or officers of the Applicant after the commencement of the within proceedings, and (ii) make payments of amounts for which its directors and officers may be liable as obligations they may incur as directors or officers of the Applicant after the commencement of the within proceedings, except to the extent that, with respect to any officer or director, the obligation or liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

26.     THIS COURT ORDERS that the directors and officers of the Applicant shall be entitled to the benefit of and are hereby granted a charge (the "Directors' Charge") on the Property (other than the Applicant's assets which are subject to the Personal Property Security Act registrations on Schedule "B" hereto (the "Excluded Property")), which charge shall not exceed an aggregate amount of $3,200,000, as security for the indemnity provided in paragraph 25 of this Order. The Directors' Charge shall have the priority set out in paragraphs 38 and 40 herein.

27.     THIS COURT ORDERS that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Applicant's directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 25 of this Order.

## APPOINTMENT OF MONITOR

28.     THIS COURT ORDERS that FTI is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the Applicant with the powers and obligations set out in the CCAA or set forth herein and that the Applicant and its shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Applicant pursuant to this Order, and shall co-operate fully with the Monitor

11

in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

29.　　THIS COURT ORDERS that the Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

(a)　monitor the Applicant's receipts and disbursements;

(b)　report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein;

(c)　advise the Applicant in its preparation of the Applicant's cash flow statements, as required from time to time;

(d)　advise the Applicant in its development of the Plan and any amendments to the Plan;

(e)　assist the Applicant, to the extent required by the Applicant, with the holding and administering of creditors' or shareholders' meetings for voting on the Plan, as applicable;

(f)　have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Applicant to the extent that is necessary to adequately assess the Applicant's business and financial affairs or to perform its duties arising under this Order;

(g)　be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order;

(h)　carry out and fulfill its obligations under the Support Agreement in accordance with its terms; and

(i)　perform such other duties as are required by this Order or by this Court from time to time.

12

30.    THIS COURT ORDERS that without limiting paragraph 29 above, in carrying out its rights and obligations in connection with this Order, the Monitor shall be entitled to take such reasonable steps and use such services as it deems necessary in discharging its powers and obligations, including, without limitation, utilizing the services of FTI Consulting (Hong Kong) Limited ("FTI HK").

31.    THIS COURT ORDERS that the Monitor shall not take possession of the Property (or any property or assets of the Applicant's subsidiaries) and shall take no part whatsoever in the management or supervision of the management of the Business (or any business of the Applicant's subsidiaries) and shall not, by fulfilling its obligations hereunder, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof (or of any business, property or assets, or any part thereof, of any subsidiary of the Applicant).

32.    THIS COURT ORDERS that nothing herein contained shall require the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "Possession") of any of the Property (or any property of any subsidiary of the Applicant) that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the Ontario *Environmental Protection Act*, the *Ontario Water Resources Act*, or the Ontario *Occupational Health and Safety Act* and regulations thereunder (the "Environmental Legislation"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. The Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property (or of any property of any subsidiary of the Applicant) within the meaning of any Environmental Legislation, unless it is actually in possession.

33.    THIS COURT ORDERS that the Monitor shall provide any creditor of the Applicant with information provided by the Applicant in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any

13

responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by the Applicant is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Applicant may agree.

34.     THIS COURT ORDERS that, in addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the protections afforded the Monitor by the CCAA or any applicable legislation.

35.     THIS COURT ORDERS that the Monitor, counsel to the Monitor, counsel to the Applicant, counsel to the directors, Houlihan Lokey Capital Inc. (the "Financial Advisor"), FTI HK, counsel to the Ad Hoc Noteholders and the financial advisor to the Ad Hoc Noteholders (together with counsel to the Ad Hoc Noteholders, the "Noteholder Advisors") shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, by the Applicant, whether incurred prior to or subsequent to the date of this Order, as part of the costs of these proceedings. The Applicant is hereby authorized and directed to pay the accounts of the Monitor, counsel for the Monitor, counsel for the Applicant, counsel to the directors, the Financial Advisor, FTI HK, and the Noteholder Advisors on a weekly basis or otherwise in accordance with the terms of their engagement letters.

36.     THIS COURT ORDERS that the Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the Commercial List of the Ontario Superior Court of Justice.

37.     THIS COURT ORDERS that the Monitor, counsel to the Monitor, the Applicant's counsel, counsel to the directors, the Financial Advisor, FTI HK, and the Noteholder Advisors shall be entitled to the benefit of and are hereby granted a charge (the "Administration Charge") on the Property (other than the Excluded Property), which charge shall not exceed an aggregate amount of $15,000,000 as security for their professional fees and disbursements incurred at their respective standard rates and charges in respect of such services, both before and after the making of this Order in respect of these proceedings. The Administration Charge shall have the priority set out in paragraphs 38 and 40 hereof.

14

## VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER

38.    THIS COURT ORDERS that the priorities of the Directors' Charge and the
Administration Charge, as between them, shall be as follows:

> First – Administration Charge (to the maximum amount of $15,000,000); and

> Second – Directors' Charge (to the maximum amount of $3,200,000).

39.    THIS COURT ORDERS that the filing, registration or perfection of the Directors'
Charge or the Administration Charge (collectively, the "Charges") shall not be required, and that
the Charges shall be valid and enforceable for all purposes, including as against any right, title or
interest filed, registered, recorded or perfected subsequent to the Charges coming into existence,
notwithstanding any such failure to file, register, record or perfect.

40.    THIS COURT ORDERS that each of the Charges shall constitute a charge on the
Property (other than the Excluded Property) and shall rank in priority to all other security
interests, trusts, liens, charges and encumbrances, claims of secured creditors, statutory or
otherwise (collectively, "Encumbrances") in favour of any Person.

41.    THIS COURT ORDERS that except as otherwise expressly provided for herein, or as
may be approved by this Court, the Applicant shall not grant any Encumbrances over any
Property that rank in priority to, or *pari passu* with, any of the Charges, unless the Applicant also
obtains the prior written consent of the Monitor, the beneficiaries of the Directors' Charge and
the beneficiaries of the Administration Charge, or further Order of this Court.

42.    THIS COURT ORDERS that the Charges shall not be rendered invalid or unenforceable
and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively,
the "Chargees"), shall not otherwise be limited or impaired in any way by (a) the pendency of
these proceedings and the declarations of insolvency made herein; (b) any application(s) for
bankruptcy order(s) issued pursuant to the BIA, or any bankruptcy order made pursuant to such
applications; (c) the filing of any assignments for the general benefit of creditors made pursuant
to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants,
prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation
of Encumbrances, contained in any existing loan documents, lease, sublease, offer to lease or

15

other agreement (collectively, an "Agreement") which binds the Applicant, and notwithstanding any provision to the contrary in any Agreement:

(a)     neither the creation of the Charges nor the execution, delivery, perfection, registration or performance of any documents in respect thereof shall create or be deemed to constitute a breach by the Applicant of any Agreement to which it is a party;

(b)     none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the creation of the Charges; and

(c)     the payments made by the Applicant pursuant to this Order and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

43.     THIS COURT ORDERS that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Applicant's interest in such real property leases.

**APPROVAL OF FINANCIAL ADVISOR AGREEMENT**

44.     THIS COURT ORDERS that the letter agreement dated as of December 22, 2012 with respect to the Financial Advisor in the form attached as Exhibit "CC" to the Martin Affidavit (the "Financial Advisor Agreement") and the retention of the Financial Advisor under the terms thereof, including the payments to be made to the Financial Advisor thereunder, are hereby approved.

45.     THIS COURT ORDERS that the Applicant is authorized and directed to make the payments contemplated in the Financial Advisor Agreement in accordance with the terms and conditions thereof.

16

## POSTPONEMENT OF ANNUAL GENERAL MEETING

46.    THIS COURT ORDERS that the Applicant be and is hereby relieved of any obligation to call and hold an annual meeting of its shareholders until further Order of this Court.

## FOREIGN PROCEEDINGS

47.    THIS COURT ORDERS that the Monitor is hereby authorized and empowered to act as the foreign representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside of Canada.

48.    THIS COURT ORDERS that the Monitor is hereby authorized, as the foreign representative of the Applicant and of the within proceedings, to apply for foreign recognition of these proceedings, as necessary, in any jurisdiction outside of Canada, including as "Foreign Main Proceedings" in the United States pursuant to Chapter 15 of the *U.S. Bankruptcy Code*.

49.    THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, Barbados, the British Virgin Islands, Cayman Islands, Hong Kong, the People's Republic of China or in any other foreign jurisdiction, to give effect to this Order and to assist the Applicant, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicant and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicant and the Monitor and their respective agents in carrying out the terms of this Order.

50.    THIS COURT ORDERS that each of the Applicant and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order and any other Order issued in these proceedings.

## SERVICE AND NOTICE

51.    THIS COURT ORDERS that the Monitor shall (i) without delay, publish in the Globe and Mail and the Wall Street Journal a notice containing the information prescribed under the CCAA, (ii) within seven days after the date of this Order, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, in the prescribed manner, a notice to every known creditor who has a claim against the Applicant of more than $1,000, and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder.

52.    THIS COURT ORDERS that each of the Applicant and the Monitor be at liberty to serve this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery, facsimile transmission or email to the Applicant's creditors or other interested parties at their respective addresses as last shown on the records of the Applicant and that any such service or notice by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

53.    THIS COURT ORDERS that the Applicant, the Monitor, and any party who has filed a Notice of Appearance may serve any court materials in these proceedings by e-mailing a PDF or other electronic copy of such materials to counsels' email addresses as recorded on the Service List from time to time, and the Monitor may post a copy of any or all such materials on the Monitor's Website.

## GENERAL

54.    THIS COURT ORDERS that the Applicant or the Monitor may from time to time apply to this Court for advice and directions in the discharge of its powers and duties hereunder.

55.    THIS COURT ORDERS that nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Applicant, the Business or the Property.

18

56.    THIS COURT ORDERS that any interested party (including the Applicant and the Monitor) may apply to this Court to vary or amend this Order on not less than seven (7) days notice to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

57.    THIS COURT ORDERS that this Order and all of its provisions are effective as of 12:01 a.m. Eastern Standard/Daylight Time on the date of this Order.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

APR 2 - 2012

Schedule "A"

1.  Sino-Panel Holdings Limited (BVI)
2.  Sino-Global Holdings Inc. (BVI)
3.  Sino-Wood Partners, Limited (HK)
4.  Grandeur Winway Limited (BVI)
5.  Sinowin Investments Limited (BVI)
6.  Sinowood Limited (Cayman Islands)
7.  Sino-Forest Bio-Science Limited (BVI)
8.  Sino-Forest Resources Inc. (BVI)
9.  Sino-Plantation Limited (HK)
10. Suri-Wood Inc. (BVI)
11. Sino-Forest Investments Limited (BVI)
12. Sino-Wood (Guangxi) Limited (HK)
13. Sino-Wood (Jiangxi) Limited (HK)
14. Sino-Wood (Guangdong) Limited (HK)
15. Sino-Wood (Fujian) Limited (HK)
16. Sino-Panel (Asia) Inc. (BVI)
17. Sino-Panel (Guangxi) Limited (BVI)
18. Sino-Panel (Yunnan) Limited (BVI)
19. Sino-Panel (North East China) Limited (BVI)
20. Sino-Panel [Xiangxi] Limited (BVI)
21. Sino-Panel [Hunan] Limited (BVI)
22. SFR (China) Inc. (BVI)
23. Sino-Panel [Suzhou] Limited (BVI)
24. Sino-Panel (Gaoyao) Ltd. (BVI)
25. Sino-Panel (Guangzhou) Limited (BVI)
26. Sino-Panel (North Sea) Limited (BVI)
27. Sino-Panel (Guizhou) Limited (BVI)
28. Sino-Panel (Huaihua) Limited (BVI)
29. Sino-Panel (Qinzhou) Limited (BVI)
30. Sino-Panel (Yongzhou) Limited (BVI)
31. Sino-Panel (Fujian) Limited (BVI)
32. Sino-Panel (Shaoyang) Limited (BVI)
33. Amplemax Worldwide Limited (BVI)
34. Ace Supreme International Limited (BVI)
35. Express Point Holdings Limited (BVI)
36. Glory Billion International Limited (BVI)
37. Smart Sure Enterprises Limited (BVI)
38. Expert Bonus Investment Limited (BVI)
39. Dynamic Profit Holdings Limited (BVI)
40. Alliance Max Limited (BVI)
41. Brain Force Limited (BVI)
42. General Excel Limited (BVI)
43. Poly Market Limited (BVI)
44. Prime Kinetic Limited (BVI)
45. Trillion Edge Limited (BVI)
46. Sino-Panel (China) Nursery Limited (BVI)

47. Sino-Wood Trading Limited (BVI)
48. Homix Limited (BVI)
49. Sino-Panel Trading Limited (BVI)
50. Sino-Panel (Russia) Limited (BVI)
51. Sino-Global Management Consulting Inc. (BVI)
52. Value quest International Limited (BVI)
53. Well Keen Worldwide Limited (BVI)
54. Harvest Wonder Worldwide Limited (BVI)
55. Cheer Gold Worldwide Limited (BVI)
56. Regal Win Capital Limited (BVI)
57. Rich Choice Worldwide Limited (BVI)
58. Sino-Forest International (Barbados) Corporation
59. Mandra Forestry Holdings Limited (BVI)
60. Mandra Forestry Finance Limited (BVI)
61. Mandra Forestry Anhui Limited (BVI)
62. Mandra Forestry Hubei Limited (BVI)
63. Sino-Capital Global Inc. (BVI)
64. Elite Legacy Limited (BVI)

PERSONAL PROPERTY SECURITY REGISTRATION SYSTEM
SEARCH RESULTS


Date Search Conducted: 3/29/2012
File Currency Date: 03/28/2012
Family(ies): 6
Page(s): 8


SEARCH :  Business Debtor :   SINO-FOREST CORPORATION



The attached report has been created based on the data received by Cyberbahn,
a Thomson Reuters business from the Province of Ontario, Ministry of Government
Services. No liability is assumed by Cyberbahn regarding its correctness,
timeliness, completeness or the interpretation and use of the report. Use of
the Cyberbahn service, including this report is subject to the terms and conditions
of Cyberbahn's subscription agreement.

```
                PERSONAL PROPERTY SECURITY REGISTRATION SYSTEM
                              SEARCH RESULTS


Date Search Conducted: 3/29/2012
File Currency Date: 03/28/2012
Family(ies): 6
Page(s): 8



            SEARCH :  Business Debtor :  SINO-FOREST CORPORATION


FAMILY :  1 OF   6                              ENQUIRY PAGE :  1 OF   8
SEARCH  : BD  : SINO-FOREST CORPORATION

00 FILE NUMBER : 609324408   EXPIRY DATE : 27SEP 2015 STATUS :
01 CAUTION FILING :           PAGE : 001 OF 1        MV SCHEDULE ATTACHED :
   REG NUM : 20040927 1631 1793 0430 REG TYP: P  PPSA   REG PERIOD: 10
02 IND DOB :           IND NAME:
03 BUS NAME: SINO-FOREST CORPORATION
                                                       OCN :
04 ADDRESS : 90 BURNHAMTHORPE ROAD WEST, SUITE 1208
   CITY    : MISSISSAUGA          PROV: ON    POSTAL CODE: L5B3C3
05 IND DOB :           IND NAME:
06 BUS NAME:
                                                       OCN :
07 ADDRESS :
   CITY    :                      PROV:     POSTAL CODE:



08 SECURED PARTY/LIEN CLAIMANT :
      LAW DEBENTURE TRUST COMPANY OF NEW YORK
09 ADDRESS : 767 THIRD AVENUE, 31ST FLOOR
   CITY    : NEW YORK             PROV: NY   POSTAL CODE: 10017
   CONS.                          MV                   DATE OF  OR NO FIXED
   GOODS INVTRY. EQUIP  ACCTS  OTHER  INCL    AMOUNT    MATURITY    MAT DATE
10                       X      X
   YEAR MAKE                     MODEL              V.I.N.
11
12
GENERAL COLLATERAL DESCRIPTION
13 PLEDGE OF SHARES OF CERTAIN SUBSIDIARIES OF THE DEBTOR PURSUANT TO
14 A PLEDGE AGREEMENT AND SHARE CHARGE.
15
16 AGENT: AIRD & BERLIS LLP #2
17 ADDRESS : 181 BAY STREET, SUITE 1800
   CITY    : TORONTO              PROV: ON   POSTAL CODE: M5J2T9
```

```
FAMILY :  1 OF  6                                ENQUIRY PAGE :   2 OF   8
SEARCH  : BD  : SINO-FOREST CORPORATION

                                                  FILE NUMBER 609324408
               PAGE   TOT              REGISTRATION NUM    REG TYPE
01 CAUTION  :    001 OF 1   MV SCHED:    20090720 1614 1793 6085
21 REFERENCE FILE NUMBER : 609324408
22 AMEND PAGE:     NO PAGE:    CHANGE: A AMNDMNT REN YEARS:    CORR PER:
23 REFERENCE DEBTOR/    IND NAME:
24       TRANSFEROR:   BUS NAME: SINO-FOREST CORPORATION

25 OTHER CHANGE:
26 REASON: TO AMEND SECURED PARTY ADDRESS AND TO AMEND GENERAL COLLATERAL
27 /DESCR: DESCRIPTION TO DELETE THE WORDS "PURSUANT TO A PLEDGE AGREEMENT AND
28      : SHARE CHARGE"
02/05 IND/TRANSFEREE:
03/06 BUS NAME/TRFEE:
                                                  OCN:
04/07 ADDRESS:
        CITY:                     PROV:      POSTAL CODE:
29 ASSIGNOR:

08 SECURED PARTY/LIEN CLAIMANT/ASSIGNEE :
      LAW DEBENTURE TRUST COMPANY OF NEW YORK
09 ADDRESS : 400 MADISON AVENUE, 4TH FLOOR
   CITY   : NEW YORK            PROV : NY   POSTAL CODE : 10017
   CONS.                        MV              DATE OF      NO FIXED
   GOODS INVTRY EQUIP ACCTS OTHER   INCL    AMOUNT      MATURITY OR  MAT DATE
10
11
12
13 PLEDGE OF SHARES OF CERTAIN SUBSIDIARIES OF THE DEBTOR
14
15
16 NAME : AIRD & BERLIS LLP
17 ADDRESS : 181 BAY STREET, SUITE 1800, BOX# 754
   CITY    : TORONTO            PROV : ON   POSTAL CODE : M5J2T9
```

```
FAMILY :  1 OF   6                            ENQUIRY PAGE :   3 OF   8
SEARCH  : BD  : SINO-FOREST CORPORATION

                                              FILE NUMBER 609324408
                PAGE   TOT                REGISTRATION NUM     REG TYPE
01 CAUTION  :     001 OF 1   MV SCHED:   20090720 1616 1793 6087
21 REFERENCE FILE NUMBER : 609324408
22 AMEND PAGE:    NO PAGE:   CHANGE: B  RENEWAL REN YEARS: 1   CORR PER:
23 REFERENCE DEBTOR/    IND NAME:
24       TRANSFEROR:   BUS NAME: SINO-FOREST CORPORATION

25 OTHER CHANGE:
26 REASON:
27 /DESCR:
28       :
02/05 IND/TRANSFEREE:
03/06 BUS NAME/TRFEE:
                                                     OCN:
04/07 ADDRESS:
        CITY:                   PROV:       POSTAL CODE:
29 ASSIGNOR:

08 SECURED PARTY/LIEN CLAIMANT/ASSIGNEE :

09 ADDRESS :
   CITY   :                    PROV :     POSTAL CODE :
   CONS.                       MV                  DATE OF      NO FIXED
   GOODS INVTRY EQUIP ACCTS OTHER   INCL     AMOUNT    MATURITY OR  MAT DATE
10
11
12
13
14
15
16 NAME : AIRD & BERLIS LLP
17 ADDRESS : 181 BAY STREET, SUITE 1800, BOX# 754
   CITY    : TORONTO              PROV : ON    POSTAL CODE : M5J2T9
```

```
FAMILY :   2 OF   6                           ENQUIRY PAGE :   4 OF   8
SEARCH  : BD  : SINO-FOREST CORPORATION

00 FILE NUMBER : 650314305   EXPIRY DATE : 03DEC 2013 STATUS :
01 CAUTION FILING :            PAGE : 001 OF 1        MV SCHEDULE ATTACHED :
   REG NUM : 20081203 1055 1793 9576 REG TYP: P  PPSA   REG PERIOD: 5
02 IND DOB :             IND NAME:
03 BUS NAME: SINO-FOREST CORPORATION
                                                    OCN :
04 ADDRESS : 1208-90 BURNHAMTHORPE RD W
   CITY   : MISSISSAUGA            PROV: ON    POSTAL CODE: L5B3C3
05 IND DOB :             IND NAME:
06 BUS NAME:
                                                    OCN :
07 ADDRESS :
   CITY   :                        PROV:      POSTAL CODE:



08 SECURED PARTY/LIEN CLAIMANT :
      XEROX CANADA LTD
09 ADDRESS : 33 BLOOR ST. E. 3RD FLOOR
   CITY   : TORONTO                PROV: ON    POSTAL CODE: M4W3H1
   CONS.                           MV                DATE OF  OR NO FIXED
   GOODS INVTRY. EQUIP  ACCTS  OTHER  INCL     AMOUNT     MATURITY    MAT DATE
10            X             X                                         X
   YEAR MAKE                     MODEL              V.I.N.
11
12
GENERAL COLLATERAL DESCRIPTION
13
14
15
16 AGENT: XEROX CANADA LTD
17 ADDRESS : 33 BLOOR ST. E. 3RD FLOOR
   CITY   : TORONTO                PROV: ON    POSTAL CODE: M4W3H1
```

```
FAMILY :  3 OF  6                              ENQUIRY PAGE :  5 OF  8
SEARCH  : BD  : SINO-FOREST CORPORATION

00 FILE NUMBER : 655022304   EXPIRY DATE : 20JUL 2015 STATUS :
01 CAUTION FILING :          PAGE : 001 OF 1        MV SCHEDULE ATTACHED :
   REG NUM : 20090720 1615 1793 6086 REG TYP: P  PPSA   REG PERIOD: 6
02 IND DOB :            IND NAME:
03 BUS NAME: SINO-FOREST CORPORATION
                                                      OCN :
04 ADDRESS : 90 BURNHAMTHORPE ROAD WEST, SUITE 1208
   CITY   : MISSISSAUGA          PROV: ON   POSTAL CODE: L5B3C3
05 IND DOB :            IND NAME:
06 BUS NAME:
                                                      OCN :
07 ADDRESS :
   CITY   :                      PROV:      POSTAL CODE:



08 SECURED PARTY/LIEN CLAIMANT :
      LAW DEBENTURE TRUST COMPANY OF NEW YORK
09 ADDRESS : 400 MADISON AVENUE, 4TH FLOOR
   CITY   : NEW YORK             PROV: NY   POSTAL CODE: 10017
   CONS.                         MV                 DATE OF  OR NO FIXED
   GOODS INVTRY. EQUIP  ACCTS  OTHER  INCL    AMOUNT    MATURITY   MAT DATE
10                         X      X
   YEAR MAKE                     MODEL             V.I.N.
11
12
GENERAL COLLATERAL DESCRIPTION
13 PLEDGE OF SHARES OF CERTAIN SUBSIDIARIES OF THE DEBTOR
14
15
16 AGENT: AIRD & BERLIS LLP - SUSAN PAK
17 ADDRESS : 181 BAY STREET, SUITE 1800
   CITY   : TORONTO              PROV: ON   POSTAL CODE: M5J2T9
```

```
FAMILY :   4 OF   6                                    ENQUIRY PAGE :   6 OF   8
SEARCH  : BD  : SINO-FOREST CORPORATION

00 FILE NUMBER : 659079036   EXPIRY DATE : 03FEB 2016 STATUS :
01 CAUTION FILING :            PAGE : 001 OF 1         MV SCHEDULE ATTACHED :
   REG NUM : 20100203 1535 1793 2023 REG TYP: P  PPSA   REG PERIOD: 6
02 IND DOB :             IND NAME:
03 BUS NAME: SINO-FOREST CORPORATION
                                                      OCN :
04 ADDRESS : 90 BURNHAMTHORPE ROAD WEST, SUITE 1208
   CITY   : MISSISSAUGA         PROV: ON    POSTAL CODE: L5B3C3
05 IND DOB :             IND NAME:
06 BUS NAME:
                                                      OCN :
07 ADDRESS :
   CITY   :                     PROV:       POSTAL CODE:



08 SECURED PARTY/LIEN CLAIMANT :
        LAW DEBENTURE TRUST COMPANY OF NEW YORK
09 ADDRESS : 400 MADISON AVENUE, 4TH FLOOR
   CITY   : NEW YORK            PROV: NY   POSTAL CODE: 10017
   CONS.                        MV                     DATE OF  OR NO FIXED
   GOODS INVTRY. EQUIP  ACCTS  OTHER  INCL     AMOUNT    MATURITY   MAT DATE
10                        X      X
   YEAR MAKE                    MODEL             V.I.N.
11
12
GENERAL COLLATERAL DESCRIPTION
13 PLEDGE OF SHARES OF CERTAIN SUBSIDIARIES OF THE DEBTOR
14
15
16 AGENT: AIRD & BERLIS LLP (SPAK - 102288)
17 ADDRESS : 181 BAY STREET, SUITE 1800
   CITY   : TORONTO             PROV: ON    POSTAL CODE: M5J2T9
```

```
FAMILY :  5 OF  6                              ENQUIRY PAGE :  7 OF  8
SEARCH  : BD  : SINO-FOREST CORPORATION

00 FILE NUMBER : 665186985   EXPIRY DATE : 15OCT 2020 STATUS :
01 CAUTION FILING :           PAGE : 001 OF 1        MV SCHEDULE ATTACHED :
   REG NUM : 20101015 1215 1793 1245 REG TYP: P  PPSA   REG PERIOD: 10
02 IND DOB :            IND NAME:
03 BUS NAME: SINO-FOREST CORPORATION
                                                    OCN :
04 ADDRESS : 90 BURNHAMTHORPE ROAD WEST, SUITE 1208
   CITY   : MISSISSAUGA           PROV: ON    POSTAL CODE: L5B3C3
05 IND DOB :            IND NAME:
06 BUS NAME:
                                                    OCN :
07 ADDRESS :
   CITY   :                       PROV:      POSTAL CODE:



08 SECURED PARTY/LIEN CLAIMANT :
        LAW DEBENTURE TRUST COMPANY OF NEW YORK
09 ADDRESS : 400 MADISON AVENUE, 4TH FLOOR
   CITY   : NEW YORK              PROV: NY   POSTAL CODE: 10017
   CONS.                          MV                DATE OF  OR NO FIXED
   GOODS INVTRY. EQUIP  ACCTS  OTHER  INCL      AMOUNT     MATURITY    MAT DATE
10                      X      X
   YEAR MAKE                     MODEL           V.I.N.
11
12
GENERAL COLLATERAL DESCRIPTION
13 PLEDGE OF SHARES OF CERTAIN SUBSIDIARIES OF THE DEBTOR.
14
15
16 AGENT: AIRD & BERLIS LLP (RMK-106760)
17 ADDRESS : 181 BAY STREET, SUITE 1800
   CITY   : TORONTO               PROV: ON    POSTAL CODE: M5J2T9
```

```
FAMILY :  6 OF  6                           ENQUIRY PAGE :  8 OF  8
SEARCH  : BD  : SINO-FOREST CORPORATION

00 FILE NUMBER : 665928963   EXPIRY DATE : 17NOV 2016 STATUS :
01 CAUTION FILING :          PAGE : 01  OF 001      MV SCHEDULE ATTACHED :
   REG NUM : 20101117 1007 1462 0113 REG TYP: P  PPSA   REG PERIOD: 6
02 IND DOB :           IND NAME:
03 BUS NAME: SINO-FOREST CORPORATION
                                                    OCN :
04 ADDRESS : 1208-90 BURNHAMTHORPE RD W
   CITY   : MISSISSAUGA        PROV: ON    POSTAL CODE: L5B3C3
05 IND DOB :           IND NAME:
06 BUS NAME:
                                                    OCN :
07 ADDRESS :
   CITY   :                    PROV:       POSTAL CODE:



08 SECURED PARTY/LIEN CLAIMANT :
      XEROX CANADA LTD
09 ADDRESS : 33 BLOOR ST. E. 3RD FLOOR
   CITY   : TORONTO            PROV: ON    POSTAL CODE: M4W3H1
   CONS.                       MV                   DATE OF  OR NO FIXED
   GOODS INVTRY. EQUIP  ACCTS  OTHER  INCL    AMOUNT      MATURITY   MAT DATE
10              X            X                                         X
   YEAR MAKE                  MODEL          V.I.N.
11
12
GENERAL COLLATERAL DESCRIPTION
13
14
15
16 AGENT: PPSA CANADA INC. - (3992)
17 ADDRESS : 110 SHEPPARD AVE EAST, SUITE 303
   CITY   : TORONTO            PROV: ON    POSTAL CODE: M2N6Y8
```

Schedule "A"

IN THE MATTER OF THE *COMPANIES CREDITORS' ARRANGEMENT ACT*, R.S.C. 1985, c C-36, AS AMENDED AND IN THE MATTER OF SINO-FOREST CORPORATION

Court File No.

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceedings commenced in Toronto

**INITIAL ORDER**

**BENNETT JONES LLP**
One First Canadian Place
Suite 3400, P.O. Box 130
Toronto, Ontario
M5X 1A4

Robert W. Staley (LSUC #27115I)
Kevin Zych (LSUC #33129T)
Derek J. Bell (LSUC #43420J)
Jonathan Bell (LSUC #55457P)
Tel: 416-863-1200
Fax: 416-863-1716

Lawyers for the Applicant