**ALLEN & OVERY LLP**

1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
Ken Coleman
Jonathan Cho

*Attorneys for Ernst & Young LLP*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x
In re:                                       :
                                             :    Chapter 15
SINO-FOREST CORPORATION,                     :
                                             :    Case No. 13-10361 (MG)
                                             :
            Debtor in a Foreign Proceeding.  :
-----------------------------------------------------------x
```

### MOTION TO RECOGNIZE AND ENFORCE ORDER OF ONTARIO COURT APPROVING ERNST & YOUNG SETTLEMENT

Ernst & Young LLP ("**E&Y**") files this motion[1] (the "**Motion**"), pursuant to

sections 105(a), 1507, and 1521 of title 11 of the United States Code (as amended, the

"**Bankruptcy Code**"), seeking the entry of an order substantially in the form annexed hereto as

Exhibit A (the "**Proposed Order**") giving full force and effect in the United States to the March

20, 2013 order (the "**Settlement Order**") of the Ontario Superior Court of Justice (Commercial

List) (the "**Ontario Court**") in the proceeding (the "**Canadian Proceeding**") of Sino-Forest

Corporation ("**SFC**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c.

C-36 (as amended, the "**CCAA**"). The Settlement Order approves the settlement of class action

claims against E&Y and implements a global release in favor of E&Y (the "**E&Y Settlement**")

under SFC's plan of compromise and reorganization dated December 3, 2012 (the "**Plan**").

---

[1]  The Monitor and the plaintiffs in the Canadian Class Actions and the lead plaintiff in the U.S. Class Action (each as defined below) have had the opportunity to review and provide comments to this Motion and related pleadings before filing, support the entry of the Proposed Order and are expected to file formal joinders.

In support of this Motion, E&Y respectfully states as follows:

## PRELIMINARY STATEMENT

The Motion seeks the recognition and enforcement of the Settlement Order approving the E&Y Settlement, pursuant to which E&Y will pay CAD117 million to resolve claims asserted against it in class action litigations filed by plaintiffs in Canada (the "**Canadian Class Actions**") and the United States (the "**U.S. Class Action**," and together with the Canadian Class Actions, the "**Class Actions**") on behalf of all persons and entities, wherever they may reside, who acquired any securities of SFC, including securities acquired in the primary, secondary, and over-the-counter markets (the "**Securities Claimants**").[2] Such proceedings were commenced against SFC and certain of its former officers, directors, underwriters, and auditors, including E&Y (together, the "**Third Party Defendants**"), on the basis of alleged misrepresentations in SFC's financial statements issued prior to 2011. E&Y, SFC's external auditor from 2007 to 2012, is a named defendant in the Class Actions. The claims asserted against SFC in the Canadian Class Actions were one of the primary catalysts for the commencement of the Canadian Proceeding.[3]

The Canadian Proceeding, as well as certain orders of the Ontario Court entered in the Canadian Proceeding, created an environment in which the parties to the Canadian Class Actions – including the plaintiffs in the Canadian Class Actions, E&Y, and certain other Third Party Defendants – were encouraged to attempt to resolve the complex web of claims and cross-claims among them within the context of the CCAA. To that end, these parties appeared and

---

[2]    As defined in Appendix A to the Settlement Order, "'Securities Claimants' are all Persons and entities, wherever they may reside, who acquired any securities of Sino-Forest Corporation including securities acquired in the primary, secondary and over-the-counter markets."

[3]    On February 4, 2013, FTI Consulting Canada Inc. (the "**Monitor**"), as foreign representative, commenced this case by filing a *Verified Petition for Recognition of Foreign Proceeding and Related Relief* filed (the "**Verified Petition**"). On April 15, 2013, this Court granted the relief requested in the Verified Petition and entered an order (the "**Recognition Order**") (a) recognizing the Canadian Proceeding as a "foreign main proceeding" under 1517 of the Bankruptcy Code and (b) enforcing in the United States (i) certain provisions of the Ontario Court's Initial Order dated March 30, 2012 (the "**Initial Order**") and (ii) the Ontario Court's Plan Sanction Order dated December 10, 2012, sanctioning the Plan (the "**Plan Sanction Order**").

participated in the Canadian Proceeding, engaged in court-ordered mediation, and contributed to the negotiation and development of the Plan.[4] Finally, in late November 2012, E&Y and certain of the plaintiffs in the Canadian Class Actions successfully negotiated the terms of the E&Y Settlement, and the parties to the Canadian Proceeding revised the Plan to include a framework to give effect to the E&Y Settlement.

The terms of the E&Y Settlement provide that following E&Y's CAD117 million payment into a settlement trust fund for the benefit of the Securities Claimants, including those located in the United States, Article 11.1(a) of the Plan will grant E&Y a global release and the benefit of certain injunctions under the Plan. E&Y also made substantial concessions in connection with the E&Y Settlement, including, among other things, releasing all claims – including indemnification claims – against SFC and its subsidiaries, officers, and directors and giving up any rights to distributions under the Plan. In so doing, and in agreeing to support the Plan, E&Y obviated the need to litigate these claims and potentially saved all parties time and expense. The benefits of E&Y's concessions have been acknowledged by both the Monitor and the Ontario Court.

E&Y's payment is conditioned on (i) the Ontario Court's entry of orders sanctioning the Plan and approving the E&Y Settlement, (ii) the enforcement of such orders in the United States through chapter 15 of the Bankruptcy Code, and (iii) the fulfillment of all other conditions precedent under the E&Y Settlement. The Ontario Court entered the Plan Sanction Order approving the Plan (which contains the framework for a release in favor of E&Y, including its conditions precedent and effect) on December 10, 2012, and this Court entered the Recognition Order giving effect to the Plan Sanction Order and the Plan in the United States on

---

[4]        In addition, the plaintiffs in the U.S. Class Action filed a claim in the Canadian Proceeding, and Canadian counsel for such plaintiffs appeared on their behalf at the respective hearings on the Plan Sanction Order and the Settlement Order.

April 15, 2013. The Ontario Court approved the E&Y Settlement with the entry of the Settlement Order on March 20, 2013, and on June 26, 2013, the Court of Appeal for Ontario dismissed motions for leave to appeal the Plan Sanction Order and the Settlement Order brought by certain minority investors in SFC.[5] Both courts specifically found that the approval of the Plan Sanction Order and the Settlement Order was consistent with a prior opinion of the Court of Appeal for Ontario establishing the requirements for third-party releases under the CCAA.[6]

The E&Y Settlement has the support of the principal constituents in the restructuring and the lead plaintiffs in the Class Actions. The recognition and enforcement of the Settlement Order in the United States is the principal remaining condition that must be satisfied before the E&Y Settlement can be implemented.[7] The Settlement Order expressly authorizes and empowers E&Y to apply for such relief, and on that basis E&Y has filed this Motion with the support of the Monitor and the lead plaintiffs in the Class Actions.

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the "Amended Standing Order of Reference Re:  Title 11" of the United States District Court for the Southern District of New York (Preska, C.J.) dated January 31, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

2.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1410(2) and (3).

3.    The statutory predicates for the relief requested herein are sections 105(a), 1507, and 1521 of the Bankruptcy Code.

---

[5]    Such investors (the **"Objectors"**) held, in the aggregate, approximately 1.62% of SFC's outstanding equity on June 30, 2011, and first appeared in the Canadian Proceeding shortly before the hearing to consider the sanction of the Plan. E&Y refrained from seeking enforcement of the Settlement Order in the United States until the resolution of the Objectors' motion for leave to appeal the Settlement Order.

[6]    *ATB Financial v. Metcalfe and Mansfield Alternative Investments II Corp.*, 2008 ONCA 587 at para. 26-28, 92 O.R. (3d) 513, *leave to appeal refused*, [2008] S.C.C.A. No. 337.

[7]    The effectiveness of the E&Y Settlement is also conditioned on the dismissal of the Canadian Class Action in Quebec. Such relief is being sought before the Quebec Superior Court.

## BACKGROUND

4.     The Court is respectfully referred to the Verified Petition for a full description of SFC, the Canadian Proceeding, and the circumstances leading to the entry of the Plan Sanction Order.

5.     In addition, for a more complete description of the participation of E&Y and the plaintiffs in the Canadian Class Actions in the Canadian Proceeding, the circumstances leading up to the entry of the Settlement Order, and the grounds on which the E&Y Settlement was approved, the Court is respectfully referred to (i) the Fifteenth Report of the Monitor dated January 28, 2013, without the exhibits or appendices thereto (the "**Fifteenth Report**"), (ii) the Endorsement of the Ontario Court dated March 20, 2013, setting forth the Ontario Court's reasons for entering the Settlement Order (the "**Settlement Endorsement**"), and (iii) the Endorsement of the Court of Appeal for Ontario dated June 26, 2013, denying the Objectors' motions for leave to appeal the Plan Sanction Order and the Settlement Order (the "**Appeal Endorsement**").  These documents are available on the Monitor's website at http://cfcanada.fticonsulting.com/sfc/default.htm, and are annexed without exhibits or appendices to the Declaration of Ken Coleman dated September 23, 2013 and filed contemporaneously herewith (the "**Coleman Declaration**") as Exhibits A to C respectively. [8]

---

[8]     In addition, the Court is respectfully referred to (i) the Factum of Ernst & Young LLP dated February 4, 2013, submitted in support of the entry of the Settlement Order (the "**Settlement Factum**"), (ii) the Responding Factum of Ernst & Young LLP dated February 22, 2013, submitted in response to a motion for leave to appeal the Plan Sanction Order (the "**Sanction Response Factum**"), and (iii) the Responding Factum of Ernst & Young LLP dated May 17, 2013, submitted in response to a motion for leave to appeal the Settlement Order (the "**Settlement Response Factum**").  These documents are annexed to the Coleman Declaration as Exhibits D to F respectively.

1.    **The Class Actions**

6.    SFC is a former publicly held company that was the ultimate parent of numerous subsidiaries with forestry operations in the People's Republic of China.[9] The common shares of SFC were formerly traded on the Toronto Stock Exchange and on the over-the-counter market in the United States, among others,[10] and SFC had issued and outstanding four series of notes that were also traded in the secondary market.[11] SFC's operating subsidiaries have been transferred to new creditor-owned entities, and its shares and notes have been cancelled, in accordance with the Plan.

7.    On June 2, 2011, SFC was the subject of an investor report by Muddy Waters LLC, a short-seller, purporting to reveal fraud at the company and casting various aspersions on SFC's advisors.[12] In the wake of the report, SFC's share price plummeted,[13] and the Class Actions were commenced against SFC and the Third Party Defendants, including E&Y.[14] The allegations in those actions against E&Y, which acted as SFC's auditor from approximately 2007 through April 4, 2012,[15] include non-compliance with Canadian Generally Accepted Auditing Standards in its audit work.  The actions or some of them also alleged that E&Y knew – or in the alternative was willfully blind to – various misrepresentations in SFC's financial statements.[16]

8.    In Ontario alone, E&Y was served with three competing proposed class actions.[17] Of these, the action that was ultimately permitted to proceed is entitled *Labourers v. Sino-Forest Corporation* (the "**Ontario Class Action**") and was commenced by Siskinds LLP

---

[9]      Settlement Factum ¶ 12.
[10]     Settlement Factum ¶ 12.
[11]     Settlement Factum ¶ 14.
[12]     Settlement Factum ¶ 15.
[13]     Settlement Factum ¶ 15.
[14]     Settlement Factum ¶ 18.
[15]     Settlement Factum ¶ 12.
[16]     Settlement Factum ¶ 23.
[17]     Settlement Factum ¶ 18.

and Koskie Minsky LLP[18] on July 20, 2011 (the "**Ontario Plaintiffs**").[19] The Ontario Plaintiffs

allege that SFC misstated its financial statements, overstated the value of its assets, and

concealed material information about its business and operations in its public filings, resulting in

SFC's securities being traded at artificially inflated prices for many years.[20] The two Ontario

actions stayed after the Ontario Plaintiffs' action was permitted to proceed are *Smith et al. v. Sino*

*Forest Corporation et al.*, commenced on June 8, 2011, and *Northwest & Ethical Investments*

*L.P. et al. v. Sino Forest Corporation et al.*, commenced on September 26, 2011.[21]

        9.     In addition, two class actions were commenced in Quebec and New York,

respectively.[22] On June 9, 2011, Siskinds, Desmeules, a Quebec City firm affiliated with counsel

in the Ontario Action, Siskinds LLP, commenced a proceeding parallel to the Ontario Class

Action in the Quebec Superior Court (the "**Quebec Class Action**").[23] Counsel in the Ontario and

Quebec Class Actions have worked together in a coordinated manner in both actions, as well as

in the Canadian Proceeding.[24] Further, on January 27, 2012, Cohen Milstein Sellers & Toll

PLLC commenced the U.S. Class Action in New York State Supreme Court, which action was

subsequently transferred to the United States District Court for the Southern District of New

York and assigned the case caption *David Leapard, et al., v. Allen T.Y. Chan, et al.*, Case No.

1:12-cv-01726 (AT) (S.D.N.Y.).[25] By order dated January 4, 2013, the plaintiffs in the U.S.

Class Action were appointed as lead plaintiffs, and their counsel appointed as lead counsel, to

---

[18]     Siskinds LLP and Koskie Minsky LLP commenced two proposed class actions in addition to the Ontario Class Action. One of these actions was discontinued, and the other was consolidated with the Ontario Class Action.

[19]     Settlement Factum ¶ 19. During this period, approximately 93.4% of the aggregate global volume of trade in Sino-Forest common shares took place in Canada. Settlement Factum ¶ 12.

[20]     Settlement Factum ¶ 19.

[21]     Settlement Factum ¶ 21. The plaintiffs in the *Smith* action were represented by Rochon Genova LLP, while the plaintiffs in the *Northwest* action – some of which would later oppose the entry of the Plan Sanction Order and the Settlement Order – were represented by Kim Orr Barristers P.C. Settlement Factum ¶ 21.

[22]     Another class action was filed in Saskatchewan. However, the plaintiffs in the Saskatchewan action have not appeared, filed a claim, or otherwise participated in the Canadian Proceeding.

[23]     Settlement Factum ¶ 20.

[24]     Settlement Factum ¶ 20.

[25]     Settlement Factum ¶ 24.

represent the interests of the putative class (the "**U.S. Plaintiffs**").[26] The U.S Class Action seeks to represent investors who purchased SFC securities in the United States, including on the over-the-counter market.

## 2.    The Canadian Proceeding

### A.    *Commencement of the Canadian Proceeding and Stay of the Class Actions*

10.    SFC commenced the Canadian Proceeding on March 30, 2012, to obtain protection from its creditors under the CCAA.[27] On that same date, the Ontario Court entered the Initial Order, which – among other things – stayed the continuation of the Ontario and Quebec Class Actions against SFC, and its subsidiaries, officers, and directors.[28] On May 8, 2012, the Ontario Court entered an (unopposed) order extending such stay to the Third Party Defendants, including E&Y, to allow all parties to focus on SFC's restructuring and on the potential resolution of the complex claims and cross-claims filed among them.[29] The U.S. Plaintiffs agreed voluntarily to refrain from prosecuting the U.S. Class Action due to the pending CCAA proceeding. These stays were extended from time to time, but have generally been superseded or replaced by the stays, injunctions, and releases now set forth in the Plan and Plan Sanction Order and in the Recognition Order.

### B.    *Filing of Claims and the Equity Claims Decision*

11.    On May 14, 2012, the Ontario Court entered an order approving a claims procedure and establishing a primary claims bar date of June 20, 2012, for the filing of claims against SFC, and its subsidiaries, officers, and directors.[30] The motion for such order proceeded

---

[26]    Settlement Factum ¶ 25.
[27]    Settlement Factum ¶ 26.
[28]    Settlement Factum ¶ 26.
[29]    Settlement Factum ¶ 27.
[30]    Sanction Response Factum ¶ 13.

unopposed following extensive discussions among the various stakeholders, including SFC, E&Y, the Ontario Plaintiffs, and the other Third Party Defendants.[31]

12.    In accordance with the claims procedure order, E&Y filed substantial claims against each of SFC, its subsidiaries, and the officers and directors of each, asserting, among other things, (i) damages for breach of contract, negligent misrepresentation, fraudulent misrepresentation, inducing breach of contract (as against SFC's subsidiaries only), injury to reputation, and vicarious liability (as against SFC and its subsidiaries), (ii) contractual indemnity pursuant to E&Y's engagement letters with SFC, and (iii) statutory contribution and indemnity under Ontario's *Negligence Act*, R.S.O. 1990, c. N-1 and other applicable legislation outside of Ontario.[32] Other Third Party Defendants filed similar claims, and representative proofs of claim were filed by the various groups of Class Action plaintiffs.[33]  The U.S. Plaintiffs filed a claim in the Canadian Proceeding.

13.    On July 27, 2012, the Ontario Court rendered a decision (the "**Equity Claims Decision**") holding that claims arising in connection with the ownership, purchase, or sale of SFC equity, including related indemnity claims, are subordinated equity claims within the meaning of the CCAA.[34] However, as such decision does not apply to claims relating to debt securities issued by SFC, at least a portion of E&Y's indemnity claim against SFC was not resolved by virtue of the Equity Claims Decision and may not have been an equity claim.[35] An appeal of the Equity Claims Decision by E&Y and other former auditors and underwriters of SFC was dismissed on November 23, 2012, by the Court of Appeal for Ontario.[36] As part of the

---

[31]    Sanction Response Factum ¶ 13.
[32]    Sanction Response Factum ¶ 15.
[33]    Sanction Response Factum ¶ 16.
[34]    Sanction Response Factum ¶ 22.
[35]    Sanction Response Factum ¶ 23.
[36]    Sanction Response Factum ¶ 22.

consideration for including the framework for the E&Y Settlement in the Plan (as further detailed below), E&Y did not seek leave to appeal to the Supreme Court of Canada.

C.    *Mediation and Negotiation Towards the E&Y Settlement*

14.    Meanwhile, on July 25, 2012, the Ontario Court directed various major constituents in the Canadian Proceeding, including SFC, the Ontario Plaintiffs, E&Y, the other Third Party Defendants, an Ad Hoc Committee of Noteholders, the Monitor, and any insurers of SFC, to engage in mediation in an effort to achieve a global resolution of the outstanding issues and disputes in the case.[37] The mediation took place on September 4, 5, and 10, 2012, with Justice Newbould of the Ontario Superior Court of Justice acting as mediator.[38] While the mediation did not immediately result in a settlement, it served as a catalyst for subsequent discussions and negotiations among these parties.[39]

15.    On October 28, 2012, the Ontario Plaintiffs moved to lift the stay of the Ontario and Quebec Class Actions with respect to E&Y and the other Third Party Defendants.[40] The Ontario Court dismissed that motion and in its Endorsement dated November 6, 2012, it observed that the parties should continue to focus on the Plan and SFC's restructuring, including issues related to the then-pending appeal (noted above) of the Equity Claims Decision.[41] At that time, and notwithstanding the absence of a global settlement, the Ontario Court was not prepared to lift the stay to allow the Ontario and Quebec Class Actions to proceed separately from the Canadian Proceeding.[42]

16.    The Ontario Court's decision to maintain the stay allowed E&Y and the Ontario Plaintiffs to continue their discussions free from the spectre of ongoing litigation

---

[37]    Sanction Response Factum ¶ 17.
[38]    Sanction Response Factum ¶¶ 18, 24.
[39]    Sanction Response Factum ¶ 24.
[40]    Settlement Factum ¶ 41.
[41]    Settlement Factum ¶¶ 41-42.
[42]    Settlement Factum ¶ 42.

between them.[43] Accordingly, following weeks of further discussions and another mediation between E&Y and the Ontario Plaintiffs on November 27, 2012, the parties successfully entered into a Minutes of Settlement on November 29, 2012.[44] The E&Y Settlement subsequently gained the support of the plaintiffs in the Quebec and U.S. Class Actions.

> D.    *Development of a Settlement Framework and Sanctioning of the Plan*

17.    A key condition to the settlement was the inclusion of a framework for the E&Y Settlement, and the incorporation of an eventual release for E&Y, in the terms of the Plan.[45] SFC and the Monitor viewed the E&Y Settlement as a positive development in furthering the overall restructuring effort, and supported the incorporation of these mechanics into the Plan.[46] Accordingly, the parties engaged in further negotiations to draft and implement the requisite amendments so that a version of the Plan with such framework in place could be voted on by creditors and, if accepted by the requisite majorities, sanctioned by the Ontario Court.[47]

18.    Article 11.1 of the Plan contains the agreed framework for giving effect to the E&Y Settlement.[48] Article 11.1(a) of the Plan provides that if:  (i) the Plan Sanction Order is entered, (ii) the E&Y Settlement is approved by order of the Ontario Court, (iii) the Plan Sanction Order and the Settlement Order are enforced in the United States through chapter 15 of the Bankruptcy Code, (iv) all orders are final orders not subject to further appeal or challenge, and (v) all other conditions precedent to the E&Y Settlement are met, E&Y will pay CAD117 million into a settlement trust fund for the benefit of the Securities Claimants in settlement of all claims asserted against it in the Class Actions.[49] Upon such payment, Article 11.1(b) of the Plan provides that E&Y will receive a global release and the benefit of certain injunctions under the

---

[43]       Settlement Factum ¶ 42.
[44]       Settlement Factum ¶ 43.
[45]       Settlement Factum ¶ 44.
[46]       Settlement Factum ¶ 45.
[47]       Settlement Factum ¶ 45.
[48]       Plan ¶ 11.1.
[49]       Plan ¶ 11.1(a).

Plan.[50] Further, none of the Securities Claimants will be entitled to claim from any Third Party Defendant any portion of damages that corresponds to the liability of E&Y, proven at trial or otherwise, that is the subject of the E&Y Settlement.[51]

19.    A revised version of the Plan incorporating Article 11 was distributed to major stakeholders and made publicly available before the December 3, 2012 meeting of creditors to vote on the Plan.[52] At that meeting, an overwhelming majority of creditors affected by the Plan voted to approve the Plan.[53]

20.    At the hearing to consider the sanctioning of the Plan and in entering the Plan Sanction Order, the Ontario Court fully considered and dismissed the concerns of the Objectors – which focused on Article 11 of the Plan – and found that the Plan was fair and reasonable and satisfied the applicable test for sanction under the CCAA.[54] Shortly thereafter, three of the Objectors filed a notice of motion (the "**Sanction Appeal Motion**") for leave to appeal those portions of the Plan Sanction Order relating to Article 11 of the Plan, but did not

---

[50]    Plan ¶ 11.1(b). In particular, Article 11.1(b) provides:

Notwithstanding anything to the contrary herein, upon receipt by the Settlement Trust of the settlement amount in accordance with the Ernst & Young Settlement:  (i) all Ernst & Young Claims shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled, barred and deemed satisfied and extinguished as .against Ernst & Young; (ii) section 7.3 hereof shall apply to Ernst & Young and the Ernst & Young Claims mutatis mutandis on the Ernst & Young Settlement Date; and (iii) none of the plaintiffs in the Class Actions shall be permitted to claim from any of the other Third Party Defendants that portion of any damages that corresponds to the liability of Ernst & Young, proven at trial or otherwise, that is the subject of the Ernst & Young Settlement.

"Ernst and Young" is defined in the Plan to mean:

Ernst & Young LLP (Canada), Ernst & Young Global Limited and all other member firms thereof, and all present and former affiliates, partners, associates, employees, servants, agents, contractors, directors, officers, insurers and successors, administrators, heirs and assigns of each, but excludes any Director or Officer (in their capacity as such) and successors, administrators, heirs and assigns of any Director or Officer (in their capacity as such).

"Ernst and Young Claim" is generally defined in the Plan to mean claims and causes of action arising in connection with SFC and any professional services provided by E&Y to SFC prior to the effective date of the E&Y Settlement.

[51]    Plan ¶ 11.1(b)(iii).
[52]    Fifteenth Report ¶ 24.
[53]    Fifteenth Report ¶¶ 26-27.
[54]    Fifteenth Report ¶ 37.

seek an intervening stay of the Plan's implementation. Accordingly, the Plan became effective on January 30, 2013.[55]

### 3.    The Ernst & Young Settlement

#### A.    *The Terms of the E&Y Settlement and other Contributions by E&Y*

21.    The E&Y Settlement principally provides that E&Y will pay CAD117 million into a settlement trust fund (the "**Settlement Fund**") in settlement of all claims asserted against it in the Class Actions, upon satisfaction of certain conditions precedent.[56] Once such payment is made, E&Y will benefit from the release and injunction provisions of the Plan as against all parties.[57] The Settlement Fund will be distributed to or for the benefit of eligible Securities Claimants pursuant to a plan of allocation to be submitted to the Ontario Court for approval.[58] In addition to this significant monetary payment and the obvious benefit to affected Canadian and U.S. investors, E&Y has made substantial non-monetary concessions and contributions that further warrant recognition and enforcement of the E&Y Settlement in the United States.

22.    In particular, E&Y also: (i) released all claims, including indemnification claims, asserted against SFC and SFC's subsidiaries, officers, and directors; (ii) relinquished all rights to distributions under the Plan; (iii) agreed not to seek leave to further appeal the Equity Claims Decision, and the related decision of the Court of Appeal for Ontario, to the Supreme Court of Canada; (iv) voted in favor of the Plan; and (v) supported the entry of the Plan Sanction Order.[59] By making these further concessions, E&Y not only waived substantial claims which, if allowed, would have diluted recoveries to other creditors, but E&Y eliminated the expense and

---

[55]    Fifteenth Report ¶ 30.
[56]    Fifteenth Report ¶ 35.
[57]    Fifteenth Report ¶ 36.
[58]    Notice of the proposed plan of allocation and the opportunity to object will be provided to all class members.
[59]    Sanction Response Factum ¶ 26.

delay that could have been incurred to litigate these claims in full.[60] Numerous parties, including
the Monitor, SFC, and the Ontario Court, have recognized that an expedited implementation of
the Plan was essential due to the deterioration of SFC's assets.[61] Moreover, the Ontario Court
observed that the "unencumbered participation of the SFC subsidiaries is crucial to the
restructuring," and the subsidiaries' ability to continue their operations free from the claims and
uncertainty associated with SFC was a critical goal of the Plan.[62] Thus, the concessions made by
E&Y in connection with the E&Y Settlement provided additional benefits to the restructuring
effort and removed a potentially substantial obstacle to an expeditious implementation of the
Plan.

     B.     *Approval of the E&Y Settlement*

     23.     By order dated December 21, 2012, the Ontario Court approved the form
and distribution of notice regarding the E&Y Settlement and the settlement hearing to be held as
part of the Canadian Proceeding and established an objection deadline of January 18, 2013.[63] As
of the deadline, the Objectors were the only institutional shareholders who maintained their
objections to the E&Y Settlement, and the only parties that made oral submissions to the Ontario
Court.[64] All other institutional investors either supported the E&Y Settlement or withdrew their
objections prior to the settlement approval hearing on February 4, 2013.[65] A number of retail
investors also filed and maintained notices of objection, but almost universally articulated no
substantive basis for their objection other than a preference for a higher recovery or a desire to

---

[60]     Fifteenth Report ¶ 42.
[61]     Fifteenth Report ¶ 44; Settlement Endorsement ¶ 69 ("At the outset and during the CCAA proceedings, the Applicant and the Monitor specifically and consistently identified timing and delay as critical elements that would impact on maximization of the value and preservation of SFC's assets.").
[62]     Settlement Endorsement ¶ 68.
[63]     Fifteenth Report ¶¶ 39-40.
[64]     Settlement Factum ¶ 60.
[65]     Settlement Factum ¶ 60.

defer approval of the E&Y Settlement pending the outcome of other proceedings (including proceedings before the Ontario Securities Commission).[66]

24.    The Ontario Court approved the E&Y Settlement and entered the Settlement Order on March 20, 2013, following a February 4, 2013, hearing at which the Ontario Court considered and overruled the objections of the Objectors (who were the only parties who appeared in opposition).[67] In addition, the Ontario Court entered an order, also dated as of March 20, 2013, denying the Objectors' motion to be appointed as representative of all proposed class members who opposed the E&Y Settlement (the "**Representative Dismissal Order**").[68]

25.    The Ontario Court's bases for its decision are detailed in the Settlement Endorsement.[69] As a threshold matter, the Ontario Court noted that outstanding litigation claims against third parties are regularly compromised and settled in CCAA proceedings, and in particular that "[i]t is well established that class proceedings can be settled in a CCAA proceeding."[70] It further observed that "[s]uch compromises fully and finally dispose of such claims, and it follows that there are no continuing procedural or other rights in such proceedings . . . *[s]imply put, there are no 'opt-outs' in the CCAA*," thereby making clear that it was considering the approval of the E&Y Settlement within the context of the Canadian Proceeding and the CCAA.[71]

26.    With respect to the release provisions of the E&Y Settlement, the Ontario Court noted that "third-party releases are not an uncommon feature of complex restructurings under the CCAA" and considered whether the release in the E&Y Settlement satisfied the applicable standards for third-party releases in CCAA proceedings established by the decision of

---

[66]    Settlement Factum ¶ 65.
[67]    Settlement Response Factum ¶ 1.
[68]    Settlement Response Factum ¶ 1.
[69]    *See* Settlement Endorsement ¶¶ 58-81.
[70]    Settlement Endorsement ¶¶ 36-37.
[71]    Settlement Endorsement ¶ 36 (emphasis added).

the Court of Appeal for Ontario in *ATB Financial v. Metcalfe and Mansfield Alternative Investments II Corp.*, 2008 ONCA 587, 92 O.R. (3d) 513, *leave to appeal refused*, [2008] S.C.C.A. No. 337. In *ATB Financial*, a decision rendered in connection with the restructuring of the Canadian asset-backed commercial paper market, the Court of Appeal for Ontario held that third-party releases are permissible in CCAA restructurings where there is "a reasonable connection between the third party claim being compromised in the plan and the restructuring achieved by the plan to warrant inclusion of the third party release in the plan."[72] As set forth in paragraph 50 of the Settlement Endorsement, in determining whether the requisite nexus exists, a CCAA court must consider the following factors:

<blockquote>

a)   Whether the claims to be released are rationally related to the purpose of the plan;

b)   Whether the claims to be released are necessary for the plan of arrangement;

c)   Whether the parties who have claims released against them contributed in a tangible and realistic way; and

d)   Whether the plan will benefit the debtor and the creditors generally.[73]

</blockquote>

27.    Further, as set forth in paragraph 49 of the Settlement Endorsement, in considering a settlement within the CCAA context, a court considers the following factors:

<blockquote>

a)   Whether the settlement is fair and reasonable;

b)   Whether it provides substantial benefits to the other stakeholders; and

c)   Whether it is consistent with the purpose and spirit of the CCAA.[74]

</blockquote>

28.    The Ontario Court ultimately concluded that "[i]n [its] view, the [E&Y] Settlement is fair and reasonable, provides substantial benefits to relevant stakeholders, and is consistent with the purpose and spirit of the CCAA. In addition, in [its] view, the factors

---

[72]    Settlement Endorsement ¶ 50 (citing *ATB Financial* at ¶ 70).
[73]    Settlement Endorsement ¶ 50.
[74]    Settlement Endorsement ¶ 49 (citing *Robertson*).

associated with the *ATB Financial* nexus test favour approving the Ernst & Young Release."[75]
Accordingly, it granted the Settlement Order and thereby approved the E&Y Settlement including the release.

29.    On April 9, 2013, the Objectors filed a notice of motion for leave to appeal both the Settlement Order and the Representation Dismissal Order with the Court of Appeal for Ontario (the "**Settlement Appeal Motion**," and with the Sanction Appeal Motion, the "**Appeal Motions**"). On April 18, 2013, while the Settlement Appeal Motion remained pending, the Objectors separately served in the Ontario Class Action a notice of appeal of the Settlement Order and the Representation Dismissal Order to the Court of Appeal for Ontario (the "**Settlement Appeal**").

---

[75]    Settlement Endorsement ¶ 66. In coming to this conclusion, the Ontario Court specifically observed:

> In considering the appropriateness of including the Ernst & Young Release, I have taken into account the following.
>
> [60] Firstly, although the Plan has been sanctioned and implemented, a significant aspect of the Plan is a distribution to SFC's creditors. The significant and, in fact, only monetary contribution that can be directly identified, at this time, is the $117 million from the Ernst & Young Settlement. Simply put, until such time as the Ernst & Young Settlement has been concluded and the settlement proceeds paid, there can be no distribution of the settlement proceeds to parties entitled to receive them. It seems to me that in order to effect any distribution, the Ernst & Young Release has to be approved as part of the Ernst & Young Settlement.
>
> [61] Secondly, it is apparent that the claims to be released against Ernst & Young are rationally related to the purpose of the Plan and necessary for it. SFC put forward the Plan. As I outlined in the Equity Claims Decision, the claims of Ernst & Young as against SFC are intertwined to the extent that they cannot be separated. Similarly, the claims of the Minority Objectors as against Ernst & Young arc, in my view, intertwined and related to the claims against SFC and to the purpose of the Plan.
>
> [62] Thirdly, although the Plan can, on its face, succeed, as evidenced by its implementation, the reality is that without the approval of the Ernst & Young Settlement, the objectives of the Plan remain unfulfilled due to the practical inability to distribute the settlement proceeds. Further, in the event that the Ernst & Young Release is not approved and the litigation continues, it becomes circular in nature as the position of Ernst & Young, as detailed in the Equity Claims Decision, involves Ernst & Young bringing an equity claim for contribution and indemnity as against SFC.
>
> [63] Fourthly, it is clear that Ernst & Young is contributing in a tangible way to the Plan, by its significant contribution of $117 million.
>
> [64] Fifthly, the Plan benefits the claimants in the form of a tangible distribution. Blair J.A., at paragraph 113 of *ATB Financial*, supra, referenced two further facts as found by the application -Page 14- judge in that case; namely, the voting creditors who approved the Plan did so with the knowledge of the nature and effect of the releases. That situation is also present in this case.
>
> [65] Finally, the application judge in *ATB Financial*, supra, held that the releases were fair and reasonable and not overly broad or offensive to public policy. In this case, having considered the alternatives of lengthy and uncertain litigation, and the full knowledge of the Canadian plaintiffs, I conclude that the Ernst & Young Release is fair and reasonable and not overly broad or offensive to public policy.

Settlement Endorsement ¶¶ 60 – 65.

4.        **The Dismissal of the Objectors' Appeals**

30.        The Objectors are the only parties who sought to appeal any of the Plan Sanction Order, the Settlement Order, and the Representation Dismissal Order. No other party supported such appeals, and the Appeal Motions and the Settlement Appeal were opposed by several other major constituents in the Canadian Proceeding.

31.        The Appeal Motions were consolidated by order of the Court of Appeal for Ontario dated June 6, 2013, and on June 26, 2013, the court issued the Appeal Endorsement and dismissed the Appeal Motions. With respect to the Sanction Appeal Motion, the Court of Appeal for Ontario held that the Objectors' proposed appeal had been mooted by the intervening implementation of the Plan, but noted that in any event it saw no basis on which to interfere with the decision of the Ontario Court.[76]

32.        The Court of Appeal for Ontario likewise saw no basis on which to interfere with Ontario Court's decision with respect to the Settlement Order, agreeing that "the issues raised on this proposed appeal are, at their core, the very issues settled by this court in *ATB Financial*."[77] As entry of the Representation Dismissal Order naturally followed from the entry of the Settlement Order, the Court of Appeal for Ontario dismissed the Settlement Appeal Motion.[78] In addition to the dismissal of the Settlement Appeal Motion, on June 28, 2013, the Court of Appeal for Ontario granted a motion to quash the Settlement Appeal on the basis that the Objectors had no jurisdiction to bring such appeal. E&Y has been informed that the Objectors intend to file a motion seeking leave to appeal the Court of Appeal for Ontario's orders to the Supreme Court of Canada.  As of the filing of this Motion, no such motion has been filed.

---

[76]        Appeal Endorsement ¶ 12.
[77]        Appeal Endorsement ¶ 14.
[78]        Appeal Endorsement ¶ 15.

**RELIEF SOUGHT**

33.     By this Motion, E&Y seeks the entry of an order giving full force and effect to the Settlement Order in the United States. Such relief is a condition precedent to the effectiveness of the E&Y Settlement, E&Y's payment of CAD117 million into the Settlement Fund, and the effectiveness of a release for E&Y under Article 11.1 of the Plan.

**BASES FOR SUCH RELIEF**

34.     For the reasons more fully discussed in the Memorandum of Law filed contemporaneously herewith, E&Y is entitled to the requested recognition and enforcement of the Settlement Order, and any extensions or amendments thereof authorized by the Ontario Court, in the United States under sections 105(a), 1507, and 1521 of the Bankruptcy Code. Such relief is consistent with relief granted in other chapter 15 cases and in plenary cases under the Bankruptcy Code, and is necessary to give effect to a comprehensive and heavily-negotiated settlement which has the support of substantially all interested parties and involves the payment of CAD117 million for the benefit of the Securities Claimants.

35.     Moreover, the Settlement Order directs that the Ontario Plaintiffs and E&Y, with the assistance of the Monitor, shall use all reasonable efforts to obtain all court approvals and orders necessary for the implementation of the E&Y Settlement.[79] To that end, the Settlement Order grants E&Y the express authority to seek the recognition of the Settlement Order in any court, tribunal, regulatory, or administrative body, wherever located,[80] and the Ontario Court requests the assistance of Canadian and United States courts in giving effect to the Settlement Order and assisting E&Y in carrying out the terms thereof.[81] Thus, granting the

---

[79]     Settlement Order ¶ 21.
[80]     Settlement Order ¶ 23.
[81]     Settlement Order ¶ 22.

requested relief is also consistent with well-established principles of international comity, as embodied in sections 1501, 1509, and 1525 of the Bankruptcy Code.

## MEMORANDUM OF LAW

36.     In accordance with Local Bankruptcy Rule 9013-1(a), a separate memorandum of law is being filed contemporaneously herewith, setting forth the rules and statutory bases for the relief requested herein and legal authorities that support such relief.

## NOTICE

37.     Notice of the Motion will be timely provided to (i) the Office of the United States Trustee for the Southern District of New York; (ii) counsel to SFC, Bennett Jones LLP, 3400 One First Canadian Place, P.O. Box 130, Toronto, Ontario M5X 1A4, Attn: Robert W. Staley, Kevin Zych, Derek J. Bell, Raj S. Sahni, Jonathan Bell, and Sean Zweig; (iii) counsel to BDO, Affleck Greene McMurty LLP, 365 Bay Street, Suite 200, Toronto, Ontario M5H 2V1, Attn: Peter Greene, Kenneth Dekker, and Michelle E. Booth; (iv) counsel to the Monitor, Gowling LaFleur Henderson LLP, 1 First Canadian Place, 100 King Street West, Suite 1600, Toronto, Ontario M5X 1G5, Attn: Derrick Tay and Jennifer Stam, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005, Attn: Jeremy C. Hollembeak and Thomas J. Matz; (v) counsel to the Underwriters, Torys LLP, 79 Wellington Street West, Suite 3000, Box 270, Toronto-Dominion Centre, Toronto, Ontario M5K 1N2, Attn: John Fabello, David Bish, Andrew Gray and Adam Slavens; (vi) counsel to the Ad Hoc Committee of Noteholders, Goodmans LLP, 333 Bay Street, Suite 3400, Toronto, Ontario M5H 2S7, Attn: Benjamin Zarnett, Robert Chadwick, Brendan O'Neill, and Caroline Descours; (vii) counsel to the Objectors, Kim Orr Barristers P.C., 19 Mercer St., 4th Floor, Toronto, Ontario M5V 1H2; Attn: Won J. Kim, James C. Orr, Michael C. Spencer, Megan B. McPhee, Yonatan Rozenszajn,

and Tanya Jemec; (viii) counsel to certain Named Directors and Officers, Osler, Hoskin & Harcourt LLP, 1 First Canadian Place, 100 King Street West, Suite 6100, P.O. Box 50, Toronto, Ontario M5X 1B8, Attn: Edward Sellers, Larry Lowenstein, and Geoffrey Grove; (ix) counsel to Allen Chan, Miller Thomson LLP, Scotia Plaza, 40 King Street West, Suite 5800, Toronto, Ontario M5H 3S1, Attn: Jay M. Hoffman, Joseph Marin, and Emily Cole; (x) counsel to Kai Kit Poon, Davis LLP, 1 First Canadian Place, Suite 6000, P.O. Box 367, 100 King Street West, Toronto, Ontario M5X 1E2, Attn: Susan E. Friedman, Bruce Darlington, and Brandon Barnes; (xi) counsel to David Horsley, Wardle Daley Bernstein LLP, 2104-401 Bay Street, P.O. Box 21, Toronto, Ontario M5H 2Y4, Attn: Peter Wardle, Simon Bieber, and Erin Pleet; (xii) respective counsel to the various representative plaintiffs in the Class Actions that advanced claims against E&Y, Koskie Minsky LLP, 20 Queen Street West, Suite 900, Toronto, Ontario M5H 3R3, Attn: Kirk M. Baert, Jonathan Ptak, Jonathan Bida, and Garth Myers, Paliare Roland Rosenberg Rothstein LLP, 155 Wellington Street, 35th Floor, Toronto, Ontario M5V 3H1, Attn: Ken Rosenberg and Massimo (Max) Starnino, Siskinds LLP, 680 Waterloo Street, P.O. Box 2520, London, Ontario N6A 3V8, Attn: A. Dimitri Lascaris and Charles M. Wright, Siskinds Desmeules, 43 Rue Buade, Bureau 320, Quebec City, Quebec G1R 4A2, Attn: Simon Herbert, Cohen Milstein Sellers & Toll PLC, 88 Pine Street, 14th Floor, New York, NY 10005, Attn: Stephen J. Toll, Richard A. Speirs, and Genevieve Fontan, and Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ 07068, Attn: Michael S. Etkin and Tania Ingman; (xiii) certain other claimholders or parties in interest identified in the Canadian Proceeding; and (xiv) U.S. purchasers of SFC securities from March 19, 2007, through August 26, 2011.[82]

---

[82]    Such service shall be effected by giving notice to brokers and similar parties who purchased or otherwise acquired SFC securities for the benefit of beneficial owners from March 19, 2007, through August 26, 2011. Such brokers and similar parties will be directed to either (i) send notice of the Motion to all such beneficial owners of SFC securities or (ii) return a list of the names and addresses of such beneficial holders, in which case notice of the Motion shall be mailed to such holders directly. This notice is intended to be consistent with the notice that would otherwise be provided under Rule 23 of the Federal Rules of Civil Procedure.

38.     In addition to mailing notice of this Motion, E&Y will cause notice of this Motion to be published as soon as practicable following the filing of this Motion, once in the national edition of *The Wall Street Journal*, will cause such notice to be posted on the Monitor's website at http://cfcanada.fticonsulting.com/sfc/default.htm, and will cause such notice to be posted on the website of lead counsel to the U.S. Plaintiffs in the U.S. Class Action at http://www.cohenmilstein.com/cases/274/sino-forest.

## CONCLUSION

WHEREFORE, E&Y respectfully requests that this Court grant this Motion and enter an order in the form of the Proposed Order giving full force and effect in the United States to the Settlement Order, and granting such other relief as is appropriate under the circumstances.

Dated: New York, New York
        September  23, 2013

                                      ALLEN & OVERY LLP

                                      By:     /s/ Ken Coleman          
                                              Ken Coleman
                                              Jonathan Cho
                                              1221 Avenue of the Americas
                                              New York, New York 10020
                                              Telephone (212) 610-6300
                                              Facsimile (212) 610-6399
                                              Ken.Coleman@allenovery.com
                                              Jonathan.Cho@allenovery.com

                                      *Counsel to Ernst & Young LLP*