**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
Ken Coleman
Jonathan Cho

*Attorneys for Ernst & Young LLP*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re:                                         :
                                               :    Chapter 15
SINO-FOREST CORPORATION,                       :
                                               :    Case No. 13-10361 (MG)
                                               :
         Debtor in a Foreign Proceeding.       :
---------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO RECOGNIZE AND
ENFORCE ORDER OF ONTARIO COURT APPROVING
<u>ERNST & YOUNG SETTLEMENT</u>**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................................. 1
JURISDICTION AND VENUE .............................................................................................................. 2
BACKGROUND ..................................................................................................................................... 3
ARGUMENT ........................................................................................................................................... 3
    A.     The Settlement Order Should be Enforced Under Section 1521 ...................................... 6
    B.     The Settlement Order Is Enforceable Under Section 1507 and Principles of
           International Comity ......................................................................................................... 10
    C.     The Requested Relief Does Not Violate Section 1506 of the Bankruptcy
           Code .................................................................................................................................. 15
CONCLUSION ...................................................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

Ad Hoc Group of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV),
   701 F.3d 1031 (5th Cir. 2012) ................................................................... passim

Collins v. Oilsands Quest, Inc.,
   484 B.R. 593 (S.D.N.Y. 2012)..............................................................................4

Drexel Burnham Lambert Trading Corp. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.),
   960 F.2d 285 (2d Cir. 1992) ................................................................................6

Gillman v. Cont'l Airlines (In re Cont'l Airlines),
   203 F.3d 203 (3d Cir. 2000) ................................................................................6

Hilton v. Guyot,
   159 U.S. 113 (1895) ............................................................................................4

In re Atlas Shipping A/S,
   404 B.R. 726 (Bankr. S.D.N.Y. 2009)..................................................................3

In re DBSD N. Am., Inc.,
   419 B.R. 179 (Bankr. S.D.N.Y. 2009) .................................................................9

In re Ephedra Prods. Liab. Litig.,
   349 B.R. 333 (S.D.N.Y. 2006).......................................................................4, 15

In re Fairfield Sentry Ltd.,
   484 B.R. 615 (Bankr. S.D.N.Y. 2013) .................................................................3

In re Metcalfe & Mansfield Alternative Invs.,
   421 B.R. 685 (Bankr. S.D.N.Y. 2010) .......................................................4, 9, 11

In re Metromedia Fiber Network, Inc.,
   416 F.3d 136 (2d. Cir 2005) ...................................................................6, 7, 8, 11

In re Spiegel Inc.,
   2006 Bankr. LEXIS 2158 (Bankr. S.D.N.Y. Aug. 16, 2006) ..............................8

Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.),
   517 F.3d 52 (2d Cir. 2008) .......................................................................6, 7, 11

Macarthur Co. v. Johns-Manville Corp.,
　　837 F.2d 89 (2d Cir. 1988) ...........................................................................................8, 9

Menard-Sanford v. Mabey (In re A.H. Robins Co.),
　　880 F.2d 694 (4th Cir. 1989) ............................................................................................8

Victrix S.S., Co., S.A. v. Salen Dry Cargo A.B.,
　　825 F.2d 709 (2d Cir. 1987) .................................................................................. *passim*

**FOREIGN CASES**

ATB Financial v. Metcalfe and Mansfield Alternative Investments II Corp.,
　　2008 ONCA 587, 92 O.R. (3d) 513 .....................................................................11, 12, 13

**RULES AND STATUTES**

11 U.S.C. § 105(a) ..................................................................................................................1, 2, 3
11 U.S.C. § 1501..........................................................................................................................16
11 U.S.C. § 1506..........................................................................................................................15
11 U.S.C. § 1507................................................................................................................. *passim*
11 U.S.C. § 1521................................................................................................................. *passim*
11 U.S.C. § 1522............................................................................................................................4
28 U.S.C. § 157........................................................................................................................2, 3
28 U.S.C. § 1334...........................................................................................................................2
28 U.S.C. § 1410...........................................................................................................................3

**OTHER**

H.R. REP. NO. 109-31(I) (2005), *reprinted in* 2005 U.S.C.C.A.N. 88..........................................15

Ernst & Young LLP ("**E&Y**") has filed[1] *a Motion to Recognize and Enforce Order of Ontario Court Approving Ernst & Young Settlement* (the "**Motion**")[2] pursuant to sections 105(a), 1507, and 1521 of title 11 of the United States Code (as amended, the "**Bankruptcy Code**"), requesting the entry of an order giving full force and effect in the United States to the March 20, 2013 order (the "**Settlement Order**") of the Ontario Superior Court of Justice (Commercial List) (the "**Ontario Court**") in the proceeding (the "**Canadian Proceeding**") of Sino-Forest Corporation ("**SFC**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "**CCAA**"). The Settlement Order approves the settlement of class action claims against E&Y and includes a cash payment by E&Y and a global release in favor of E&Y (the "**E&Y Settlement**") under SFC's plan of compromise and reorganization dated December 3, 2012 (the "**Plan**").

In support of the Motion, E&Y respectfully represents as follows:

### PRELIMINARY STATEMENT

The Motion seeks the recognition and enforcement of the Settlement Order approving the E&Y Settlement, pursuant to which E&Y will pay CAD117 million to resolve claims asserted against it in class action litigations filed by plaintiffs in Canada (the "**Canadian Class Actions**") and the United States (the "**U.S. Class Action**," and together with the Canadian Class Actions, the "**Class Actions**") on behalf of all persons and entities, wherever they may reside, who acquired any securities of SFC, including securities acquired in the primary, secondary, and over-the-counter markets (the "**Securities Claimants**"). Such proceedings were commenced against SFC and certain of its former officers, directors, underwriters, and auditors, including E&Y (together, the "**Third Party Defendants**"), on the basis of alleged

---

[1] The Monitor and the plaintiffs in the Canadian Class Actions and lead plaintiff in the U.S. Class Action (each as defined below) have had the opportunity to review and provide comments to the Motion and related pleadings before filing, support the entry of the order granting the relief requested therein and are expected to file formal joinders.

[2] Capitalized terms used herein but not defined herein shall have the meaning ascribed to such terms in the Motion.

misrepresentations in SFC's financial statements issued prior to 2011. E&Y, SFC's external auditor from 2007 to 2012, is a named defendant in the Class Actions.

In the course of the Canadian Proceeding, E&Y and the plaintiffs in the Canadian Class Actions successfully negotiated the terms of a settlement that is supported by substantially all constituents in the Canadian Proceeding, including the lead plaintiffs in each of the Class Actions. The terms of the E&Y Settlement provide that following E&Y's CAD117 million payment into a settlement trust fund for the benefit of the Securities Claimants, Article 11.1(a) of the Plan will grant E&Y a global release and the benefit of certain injunctions under the Plan. E&Y also agreed to release all claims, including indemnification claims, that it may have against each of SFC and SFC's subsidiaries, officers, and directors. In addition, E&Y relinquished its rights to any distributions under the Plan and agreed to support the approval thereof.

The principal remaining condition that must be satisfied before the E&Y Settlement can be implemented is the recognition and enforcement of the Settlement Order in the United States. E&Y respectfully submits that such relief is warranted under sections 105(a), 1507, and 1521 of the Bankruptcy Code and is consistent with the goals of international cooperation and assistance to foreign courts embodied in chapter 15 of the Bankruptcy Code. Moreover, the Ontario Court expressly requested this Court's assistance in implementing and enforcing the Settlement Order in this jurisdiction and has authorized E&Y to apply to any appropriate Court for the relief requested herein.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the "Amended Standing Order of Reference Re: Title 11" of the United States

2

District Court for the Southern District of New York (Preska, C.J.) dated January 31, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1410(2) and (3).

3. The statutory predicates for the relief requested herein are sections 105(a), 1507, and 1521 of the Bankruptcy Code.

## BACKGROUND

4. The Court is respectfully referred to the Motion and the documents annexed to the Declaration of Ken Coleman filed contemporaneously therewith for a fuller description of the Class Actions, the participation of E&Y and the plaintiffs in the Canadian Class Actions in the Canadian Proceeding, the negotiation of the E&Y Settlement, and the circumstances leading up to the entry of the Settlement Order and the filing of the Motion.

## ARGUMENT

5. Chapter 15 embodies longstanding principles of international comity and cooperation that weigh heavily in favor of the recognition and enforcement of the Settlement Order in the United States. *See Victrix S.S., Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987) ("American courts have long recognized the need to extend comity to foreign bankruptcy proceedings."); *In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009) (Chapter 15 "specifically contemplates that the court should be guided by principles of comity and cooperation with foreign courts in deciding whether to grant the foreign representative additional post-recognition relief."); *Ad Hoc Group of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*, 701 F.3d 1031, 1044 (5th Cir. 2012) ("Central to Chapter 15 is comity."); *In re Fairfield Sentry Ltd.*, 484 B.R. 615, 626 (Bankr. S.D.N.Y. 2013) ("Chapter 15 emanates from and was designed around this central concept of comity, as evidenced by its primary

3

purpose and deferential framework for international judicial cooperation."). As courts have recognized, while comity does not demand categorical deference to a foreign proceeding, under these principles "a foreign judgment should generally be accorded comity if its proceedings are 'fair and impartial.'" *Collins v. Oilsands Quest, Inc.*, 484 B.R. 593 (S.D.N.Y. 2012) (citing *In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333, 336 (S.D.N.Y. 2006)).

6. Further, "when the foreign proceeding is in a sister common law jurisdiction with procedures akin to our own, comity should be extended with less hesitation, there being fewer concerns over the procedural safeguards employed in those foreign proceedings." (internal quotations and citations omitted). *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd., Inc.*, 238 B.R. 25, 67 (Bankr. S.D.N.Y. 1999), *aff'd*, 238 B.R. 699 (S.D.N.Y. 2002). Bankruptcy courts hearing chapter 15 cases have repeatedly granted comity to orders issued in CCAA proceedings. *See*, *e.g.*, *Oilsands Quest, Inc.*, 484 B.R. 593; *In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. 685 (Bankr. S.D.N.Y. 2010); *In re Ephedra*, 349 B.R. at 336 (citing *Hilton v. Guyot*, 159 U.S. 113 (1895)).

7. In addition to general principles of comity, sections 1507 and 1521 of the Bankruptcy Code provide specific bases for a court overseeing a chapter 15 proceeding to provide additional relief to a foreign representative following the recognition of a foreign proceeding. Section 1521 allows a court to grant "any appropriate relief," including "any relief that may be available to a trustee," subject to certain limitations and provided that "the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. §§ 1521, 1522. Section 1507 empowers a court to provide "additional assistance" to a foreign representative provided that such assistance, "consistent with the principles of comity," will reasonably assure: (1) just treatment of all holders of claims against or interests in the

4

debtor's property; (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding; (3) prevention of preferential or fraudulent dispositions of property of the debtor; (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and (5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.  11 U.S.C. § 1507.

8.    In *In re Vitro*, the Fifth Circuit Court of Appeals considered the relationship between sections 1521 and 1507 of the Bankruptcy Code and established an analytical framework for considering requests for relief under chapter 15. *Vitro*, 701 F.3d at 1056.  Under the *Vitro* analysis, a court should initially consider whether the requested relief falls under one of the explicit provisions of section 1521. *Id*. If it does not, then the court must consider whether the requested relief constitutes "appropriate relief" under section 1521(a), which the *Vitro* court held to be coextensive with relief provided under former section 304 of the Bankruptcy Code, the precursor to chapter 15, or otherwise available in the United States. *Id*. Finally, if the requested relief goes beyond the relief previously available under section 304 or currently available under United States law, then a court must consider 1507, which allows for relief "more extraordinary" than that provided under section 1521.  *Id*. at 1057 (internal citations omitted).

9.    In the instant matter, the recognition and enforcement of the Settlement Order in the United States is warranted under both section 1521 and section 1507 of the Bankruptcy Code, as well as the general principles of comity that underpin chapter 15.

A.  **The Settlement Order Should be Recognized and Enforced Under Section 1521**

10.  Section 1521(a), which has been held to be coextensive with relief otherwise available under the laws of the United States, allows the Court to recognize and enforce the Settlement Order in the United States and thereby give effect to the E&Y Settlement in the United States. *Vitro*, 701 F.3d at 1056. Though nondebtor releases are generally not available in plenary bankruptcy cases in the Fifth Circuit, the Second Circuit has held that "a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization plan." *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136 (2d Cir. 2005) (citing *Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 212-13 (3d Cir. 2000) and *Drexel Burnham Lambert Trading Corp. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 960 F.2d 285, 293 (2d Cir. 1992)).

11.  The *Metromedia* court identified a number of circumstances under which U.S. bankruptcy courts may approve nondebtor releases, including (a) where the estate received substantial consideration; (b) where the enjoined claims were channeled to a settlement fund rather than extinguished; (c) where the enjoined claims would indirectly impact the debtor's reorganization by way of indemnity or contribution; (d) where the plan otherwise provided for the full payment of the enjoined claims; and (e) where the affected creditors consented to the release. *Metromedia*, 416 F.3d at 142. The *Metromedia* court further observed that nondebtor releases are generally limited to unique circumstances beyond a nondebtor's mere financial contribution to a debtor's estate. Finally, in *Manville*, in considering the scope of a bankruptcy court's jurisdiction to enter nondebtor releases in plenary bankruptcy cases, the Second Circuit indicated that nondebtor releases may be granted where the enjoined claims are "against an asset of the bankruptcy estate," or where the enjoined claims "directly affect the *res* of the bankruptcy

6

estate." *Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*, 517 F.3d 52, 65-66 (2d Cir. 2008), *rev'd on other grounds sub nom. Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009). E&Y submits that the circumstances surrounding the development of the E&Y Settlement satisfy the stringent standards established by *Metromedia* and *Manville*.

12. The allegations in the Class Actions relate to actions purportedly taken by E&Y, as SFC's auditor. If E&Y is found liable in such capacity, it has the benefit of contractual and statutory indemnification rights against SFC. E&Y filed substantial claims in the Canadian Proceeding against SFC and SFC's subsidiaries, officers, and directors asserting, among other things, (i) damages for breach of contract, negligent misrepresentation, fraudulent misrepresentation, inducing breach of contract (as against SFC's subsidiaries only), injury to reputation, and vicarious liability (as against SFC and its subsidiaries), (ii) contractual indemnity pursuant to E&Y's engagement letters with SFC, and (iii) statutory contribution and indemnity under Ontario's *Negligence Act*, R.S.O. 1990, c. N-1.

13. The continued prosecution of the Class Actions against E&Y would therefore raise the prospect of substantial indemnity and contribution claims against SFC with a direct impact on the *res* of SFC's estate. Indeed, in entering the Settlement Order, the Ontario Court found that "the claims of Ernst & Young as against SFC are intertwined to the extent that they cannot be separated. Similarly, the claims of the Objectors as against Ernst & Young are . . . intertwined and related to the claims against SFC and to the purpose of the Plan." Settlement Endorsement ¶ 61. The Ontario Court further observed that "[i]n the event that the Ernst & Young Release is not approved and the litigation continues, it becomes circular in nature as the position of Ernst & Young, as detailed in the Equity Claims Decision, involves Ernst & Young bringing an equity claim for contribution and indemnity as against SFC." *Id*. at ¶ 62. This alone

7

creates sufficient identity of interest between E&Y and SFC to warrant the approval of the E&Y Settlement. *See Metromedia*, 416 F.3d at 142; *In re Spiegel Inc.*, 2006 Bankr. LEXIS 2158 at *21 (Bankr. S.D.N.Y. Aug. 16, 2006) (noting that "[c]ourts also approve nondebtor releases when . . . the enjoined claims would indirectly impact the Debtor's reorganization 'by way of indemnity or contribution'") (citing *Menard-Sanford v. Mabey (In re A.H. Robins Co.)*, 880 F.2d 694, 701 (4th Cir. 1989)).

    14. E&Y has also made significant concessions that have benefited SFC's reorganization efforts. The litigation of its claims, and in particular its claims against SFC's subsidiaries, could have entailed substantial expense and time and impaired the subsidiaries' ability to continue their operations following the implementation of the Plan. As observed by the Ontario Court, "the unencumbered participation of the SFC subsidiaries is crucial to the restructuring," and the "Monitor specifically and consistently identified timing and delay as critical elements that would impact on maximization of the value and preservation of SFC's assets." Settlement Endorsement ¶¶ 68-69. E&Y obviated these risks by releasing its claims against the subsidiaries and relinquishing all rights to distributions under the Plan. *See In re Spiegel Inc.*, 2006 Bankr. LEXIS 2158 at *7-8 *12, *21 (concessions made by released party included $104 million payment to debtor's estate and an agreement that its claims would receive a substantially reduced distribution of 2.3%).

    15. Further, the E&Y Settlement contemplates that E&Y will pay CAD117 million to a settlement trust fund established for the benefit of the Securities Claimants. Thus, the Class Action claims against E&Y are being channeled to a settlement fund, rather than extinguished, as contemplated in *Metromedia*. *See Metromedia*, 416 F.3d at 142; *Macarthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 93-94 (2d Cir. 1988) ("The injunctive orders issued by the

8

Bankruptcy Court were necessary to effectuate the Court's channeling authority, that is, to make sure that claims to Manville's insurance proceeds were, in fact, channeled to the settlement fund and could not be asserted directly against the insurers."). Indeed, "the significant and, in fact, only monetary contribution that can be directly identified, at this time, is the [CAD] 117 million from the Ernst & Young Settlement." Settlement Endorsement ¶ 60.

16. Finally, almost every party in the Canadian Proceeding, including the lead plaintiffs in the Ontario, Quebec, and U.S. Class Actions, support the E&Y Settlement, and the circumstances therefore do not raise the specter of a "non-consensual, non-debtor release through a bankruptcy proceeding," as was the case in *Vitro*. *Vitro*, 701 F.3d at 1060. The *Vitro* court suggested that one of its principal concerns was the manner by which the relevant non-debtor releases had been approved, observing that "[t]he fact that the Plan approved here was the result of votes by insiders holding intercompany debt means that, although under *Metcalfe* non-debtor releases may be enforced in the United States under Chapter 15, the facts of this case exceed the scope of that decision." *Id*. at 1068 (citing *Metcalfe*, 421 B.R. 685).

17. By contrast, the E&Y Settlement is the subject of near unanimous support by non-insider parties. *Cf. In re DBSD N. Am., Inc.*, 419 B.R. 179, 217-218 (Bankr. S.D.N.Y. 2009), *aff'd* 2010 U.S. Dist. LEXIS 33253, 2010 WL 1223109 (S.D.N.Y. 2010), *aff'd in part and reversed in part, in each respect on other grounds*, 627 F.3d 496 (2d Cir. 2010), *opinion issued* 634 F.3d 79 (2d Cir. 2011) ("[T]he Second Circuit has held that nondebtor releases are permissible if the affected creditors consent."). SFC's Plan – including Article 11.1 thereof, which explicitly contemplates that E&Y may receive a release in return for a substantial payment into a settlement trust fund – received overwhelming approval from creditors voting in person or by proxy, with 99.96% in value and 98.81% in number of such creditors voting in favor of the

9

Plan. The E&Y Settlement itself is the product of extensive arms' length negotiation and is supported by many parties whose interests are undeniably adverse to E&Y, such as the plaintiffs in the Class Actions.

18.     Notice of the E&Y Settlement and the settlement hearing to be held as part of the Canadian Proceeding was provided in accordance with the direction of the Ontario Court. Indeed, the Ontario Court specifically approved the form of notice and the objection deadline contained therein. All notices of objection received by the Monitor were filed with the Ontario Court. Other than a limited number of retail investors who failed to articulate substantive bases for their objections, the only parties in opposition to the E&Y Settlement are the Objectors, a group of minority investors who held approximately 1.62% of SFC's outstanding shares as of June 2, 2011 and the only institutional investors to maintain their opposition to the E&Y Settlement. The Objectors appeared and filed papers in connection with both the approval of notice of the E&Y Settlement and the approval of the E&Y Settlement itself, and were heard by both the Ontario Court and the Court of Appeal for Ontario. Thus, in addition to the other compelling facts, the E&Y Settlement is almost entirely consensual, and the few opposing parties were given a full and fair opportunity to be heard at every level in Ontario. These circumstances strongly support the recognition and enforcement of the Settlement Order in the United States under section 1521(a) of the Bankruptcy Code.

**B.    The Settlement Order Can be Recognized and is Enforceable Under Section 1507**

19.     If the Court concludes that the recognition and enforcement of the E&Y Settlement is not warranted under section 1521 of the Bankruptcy Code, E&Y respectfully submits that such relief is warranted as "additional assistance" under section 1507. As the Fifth Circuit observed in *Vitro*, non-debtor releases granted in foreign insolvency proceedings may be

10

enforced in the United States through section 1507 if it can be demonstrated that the requested relief "is substantially in accordance with the circumstances that would warrant such relief in the United States." *Vitro*, 701 F.3d at 1069. *See also Metcalfe*, 421 B.R. at 696 ("While Second Circuit case law places narrow constraints on bankruptcy court approval of third-party non-debtor release and injunction provisions, the use of such provisions is not entirely precluded."). Indeed, in *Metcalfe*, this Court enforced third-party releases in connection with a CCAA restructuring and observed that certain limitations imposed by *Manville* were a result of the jurisdictional limits placed on United States Bankruptcy Courts and did not necessarily apply to Canadian courts hearing CCAA proceedings. *Metcalfe*, 421 B.R. at 698. Thus, even if the facts surrounding the E&Y Settlement do not necessarily satisfy the strict letter of the tests established by *Metromedia* and *Manville*, they are substantially in accordance with such requirements that the Settlement Order should be recognized and enforced under section 1507.

20.    Indeed, the *Metromedia* and *Manville* standards for third-party releases in plenary bankruptcy proceedings are similar to those established for CCAA proceedings in the decision of the Court of Appeal for Ontario in *ATB Financial v. Metcalfe and Mansfield Alternative Investments II Corp.*, 2008 ONCA 587, 92 O.R. (3d) 513, *leave to appeal refused*, [2008] S.C.C.A. No. 337, on which the Ontario Court relied in determining that the release provisions of the E&Y Settlement are permissible under the CCAA. *See Metcalfe*, 421 B.R. at 685 ("The Second Circuit decision in *Metromedia*, 416 F.3d at 142, and the Ontario Court of Appeal decision in *Metcalfe* . . . both reflect similar sensitivity to the circumstances justifying approving [third-party non-debtor release and injunction provisions]."). In *ATB Financial*, a decision rendered in connection with the restructuring of the Canadian asset-backed commercial paper market and related to the *Metcalfe* chapter 15 decision, the Court of Appeal for Ontario

11

held that third-party releases are permissible in CCAA restructurings where there is "a reasonable connection between the third party claim being compromised in the plan and the restructuring achieved by the plan to warrant inclusion of the third party release in the plan." Settlement Endorsement ¶ 50 (citing *ATB Financial* ¶ 70).

21. As described in the Settlement Endorsement, in determining whether the requisite nexus exists, a CCAA court must consider the following factors:

>   a) Are the claims to be released rationally related to the purpose of the plan?
>   b) Are the claims to be released necessary for the plan of arrangement?
>   c) Are the parties who have claims released against them contributing in a tangible and realistic way? and
>   d) Will the plan benefit the debtor and the creditors generally?

*Id.* In applying the *ATB Financial* test to the E&Y Settlement and concluding that the circumstances warranted the grant of a third-party non-debtor release under the CCAA, the Ontario Court found that each of these factors had been satisfied:

> [60] Firstly, although the Plan has been sanctioned and implemented, a significant aspect of the Plan is a distribution to SFC's creditors. The significant and, in fact, only monetary contribution that can be directly identified, at this time, is the $117 million from the Ernst & Young Settlement. Simply put, until such time as the Ernst & Young Settlement has been concluded and the settlement proceeds paid, there can be no distribution of the settlement proceeds to parties entitled to receive them. It seems to me that in order to effect any distribution, the Ernst & Young Release has to be approved as part of the Ernst & Young Settlement.
>
> [61] Secondly, it is apparent that the claims to be released against Ernst & Young are rationally related to the purpose of the Plan and necessary for it. SFC put forward the Plan. As I outlined in the Equity Claims Decision, the claims of Ernst & Young as against SFC are intertwined to the extent that they cannot be separated. Similarly, the claims of the Objectors as against Ernst & Young arc, in my view, intertwined and related to the claims against SFC and to the purpose of the Plan.
>
> [62] Thirdly, although the Plan can, on its face, succeed, as evidenced by its implementation, the reality is that without the approval of the Ernst & Young Settlement, the objectives of the Plan remain unfulfilled due to the practical inability to distribute the settlement proceeds. Further, in the event that the Ernst

12

& Young Release is not approved and the litigation continues, it becomes circular in nature as the position of Ernst & Young, as detailed in the Equity Claims Decision, involves Ernst & Young bringing an equity claim for contribution and indemnity as against SFC.

[63] Fourthly, it is clear that Ernst & Young is contributing in a tangible way to the Plan, by its significant contribution of $117 million.

[64] Fifthly, the Plan benefits the claimants in the form of a tangible distribution. Blair J.A, at paragraph 113 of *ATB Financial*, *supra*, referenced two further facts as found by the application -Page 14- judge in that case; namely, the voting creditors who approved the Plan did so with the knowledge of the nature and effect of the releases. That situation is also present in this case.

[65] Finally, the application judge in *ATB Financial*, *supra*, held that the releases were fair and reasonable and not overly broad or offensive to public policy. In this case, having considered the alternatives of lengthy and uncertain litigation, and the full knowledge of the Canadian plaintiffs, I conclude that the Ernst & Young Release is fair and reasonable and not overly broad or offensive to public policy.

22.     The Ontario Court's conclusions were supported by the Court of Appeal for Ontario, which noted that "[t]here is no basis on which to interfere with [the Ontario Court's] decision. The issues raised on this proposed appeal are, at their core, the very issues settled by this court in *ATB Financial*." Appeal Endorsement ¶ 14. The Ontario Court further found that "[i]mplicit in its findings is rejection of the Objectors' arguments questioning the validity of the [E&Y] Settlement and Ernst & Young Release" and that "[t]he potential to vary the [E&Y] Settlement and Ernst & Young Release to accommodate opt-outs is futile, as the court is being asked to approve the [E&Y] Settlement and Ernst & Young Release as proposed." Settlement Endorsement ¶ 71.

23.     Accordingly, in entering the Settlement Order, the Ontario Court's considerations were very much in line with those raised by the Second Circuit, and it concluded that, among other things, the E&Y Settlement was justified because: (i) E&Y will make a substantial contribution to the reorganization; (ii) the claims against E&Y and the claims against SFC are intimately related and cannot be separated; (iii) the E&Y Settlement is critical to

13

fulfilling the purpose of the Plan; and (iv) the E&Y Settlement does not offend public policy in Canada. These findings are substantially in accordance with the conditions for granting third-party non-debtor releases in plenary cases under the Bankruptcy Code.

24. Moreover, the E&Y Settlement in the context of SFC's Plan satisfies all of the factors that must be considered when granting relief under section 1507, including: (1) just treatment of all holders of claims against or interests in the debtor's property; (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding; (3) prevention of preferential or fraudulent dispositions of property of the debtor; (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and (5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns. 11 U.S.C. § 1507(b).

25. The E&Y Settlement is the product of extensive negotiations between E&Y and the plaintiffs in the Canadian Class Actions and is supported by the lead plaintiffs in the U.S. Class Action, who have appeared and filed a claim in the Canadian Proceeding. Further, upon approval of the Settlement Order, E&Y will pay CAD117 million into a settlement trust fund for the Securities Claimants, including any purchasers in the United States – whether or not such parties have raised objections – and there is no suggestion that any preferential or fraudulent disposition of property has been made. Finally, unlike *Vitro*, creditors here were not required to release E&Y as a condition to receiving distributions from SFC under the Plan, including the distribution of litigation trust interests and of shares and notes issued by Emerald Plantation Holdings Limited. *Vitro*, 701 F.3d at 1065. The Plan merely provided the framework for the plaintiffs in the Class Actions to reach a potential settlement with E&Y, and now that

14

they have done so, they additionally will receive their share of the CAD117 million payment from the settlement trust fund – which, notably, will be the first monetary distribution that will be made in connection with the Canadian Proceeding. Accordingly, E&Y respectfully submits that this Court is entitled to recognize and enforce the Settlement Order in the United States pursuant to section 1507 of the Bankruptcy Code.

C.    **The Requested Relief Does Not Violate Section 1506 of the Bankruptcy Code**

26.    Finally, the recognition and enforcement of the Settlement Order does not violate section 1506 of the Bankruptcy Code, which provides that a court may refuse to take an action governed by chapter 15 if such "action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. The legislative history of section 1506 makes clear that this exception should be "narrowly interpreted" and is restricted to "the most fundamental policies of the United States." *In re Ephedra*, 349 B.R. at 336 (citing H.R. REP. NO. 109-31(I), at 109 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 172).

27.    The relief requested by the Motion is consistent with, or at the very least substantially in accordance with, applicable standards in plenary cases under the Bankruptcy Code, and thus it cannot be contended that the recognition and enforcement of the Settlement Order violates a fundamental policy of the United States. Further, there is no question that due process principles were upheld in approving the E&Y Settlement, as interested parties were given notice and the opportunity to be heard. Moreover, United States purchasers will be provided notice of the Motion and an opportunity to raise any objections to the relief requested thereby in this Court.

28.    Finally, granting the requested relief and giving full force and effect to the Settlement Order in the United States is consistent with United States public policy respecting

foreign proceedings as articulated in section 1501 of the Bankruptcy Code. *See* 11 U.S.C. § 1501. Indeed, the Ontario Court has expressly requested the assistance of this Court in giving effect to the Settlement Order. *See* Settlement Order ¶ 22.

## **CONCLUSION**

For the foregoing reasons, E&Y respectfully requests that this Court grant the relief requested in the Motion.

Dated: New York, New York
       September 23, 2013

                          ALLEN & OVERY LLP

                          By:   /s/ Ken Coleman
                                  Ken Coleman
                                  Jonathan Cho
                                  1221 Avenue of the Americas
                                  New York, New York 10020
                                  Telephone (212) 610-6300
                                  Facsimile (212) 610-6399
                                  Ken.Coleman@allenovery.com
                                  Jonathan.Cho@allenovery.com

                          *Counsel to Ernst & Young LLP*