**Court File No. CV-12-9667-00CL**

# Sino-Forest Corporation

## FIFTEENTH REPORT OF THE MONITOR

**January 28, 2013**



**Court File No. CV-12-9667-00CL**

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
SINO-FOREST CORPORATION

Court File No.:  CV-11-431153-00CP

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE

B E T W E E N :

THE TRUSTEES OF THE LABOURERS' PENSION FUND OF CENTRAL AND EASTERN
CANADA, THE TRUSTEES OF THE INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL 793 PENSION PLAN FOR OPERATING ENGINEERS IN ONTARIO,
SJUNDE AP-FONDEN, DAVID GRANT and ROBERT WONG

Plaintiffs

- and –

SINO-FOREST CORPORATION, ERNST & YOUNG LLP, BDO LIMITED (formerly
known as BDO MCCABE LO LIMITED), ALLEN T.Y. CHAN, W. JUDSON MARTIN,
KAI KIT POON, DAVID J. HORSLEY, WILLIAM E. ARDELL, JAMES P. BOWLAND,
JAMES M.E. HYDE, EDMUND MAK, SIMON MURRY, PETER WANG, GARRY J.
WEST, PÖYRY (BEIJING) CONSULTING COMPANY LIMITED, CREDIT SUISSE
SECURITIES (CANADA), INC., TD SECURITIES INC., DUNDEE SECURITIES
CORPORATION, RBC DOMINION SECURITIES INC., SCOTIA CAPITAL INC., CIBC
WORLD MARKETS INC., MERRILL LYNCH CANADA INC., CANACCORD
FINANCIAL LTD., MAISON PLACEMENTS CANADA INC., CREDIT SUISSE
SECURITIES (USA) LLC and MERRILL LYNCH, PIERCE, FENNER & SMITH
INCORPORATED (successor by merger to Banc of America Securities LLC)

Defendants

### FIFTEENTH REPORT TO THE COURT
### SUBMITTED BY FTI CONSULTING CANADA INC.,
### IN ITS CAPACITY AS MONITOR



**INTRODUCTION**

1.    On March 30, 2012 (the "**Filing Date**"), Sino-Forest Corporation (the "**Company**" or
"**SFC**") filed for and obtained protection under the *Companies' Creditors Arrangement
Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**").   Pursuant to the Order of this
Honourable Court dated March 30, 2012 (the "**Initial Order**"), FTI Consulting Canada
Inc. was appointed as the Monitor of the Company (the "**Monitor**") in the CCAA
proceedings.   By Order of this Court dated April 20, 2012, the powers of the Monitor
were expanded in order to, among other things, provide the Monitor with access to
information concerning the Company's subsidiaries.

2.    On December 10, 2012, the Court granted an Order (the "**Sanction Order**") approving
the Company's Plan of Compromise and Reorganization dated December 3, 2012 (the
"**Plan**").

3.    The following appendices have been attached to this Fifteenth Report:

(a)    Appendix A - the Minutes of Settlement (as defined below);

(b)    Appendix B - the Plan;

(c)    Appendix C - the Monitor's Thirteenth Report dated November 22, 2012 (the
"**Thirteenth Report**") (without appendices);

(d)    Appendix D - the Monitor's Supplemental Report to the Thirteenth Report dated
December 4, 2012 (the "**Supplemental Report**") (without appendices);

(e)    Appendix E - the Monitor's Second Supplemental Report to the Thirteenth Report
dated December 6, 2012 (the "**Second Supplemental Report**") (without
appendices);

(f)    Appendix F - the Claims Procedure Order;

(g)    Appendix G - the Mediation Order;

(h)    Appendix H - the Meeting Order;

(i)       Appendix I - Notice of Appearance of Kim Orr;

(j)       Appendix J - the Sanction Order;

(k)      Appendix K - Endorsement of Justice Morawetz re Sanction Hearing;

(l)       Appendix L - Notice of Motion re Leave to Appeal the Sanction Order;

(m)     Appendix M - (i) letter from Bennett Jones to Kim Orr dated January 3, 2013; (ii) letter from Kim Orr to Bennett Jones dated January 3, 2013; (iii) letter from Lenczner Slaght to Kim Orr dated January 3, 2013;

(n)      Appendix N - E&Y Notice Order (as defined below);

(o)      Appendix O - Company's press release dated January 24, 2013; and

(p)      Appendix P - (i) letter from Gowling Lafleur Henderson dated January 11, 2013 regarding the addition of Allen Chan and Kai Kit Poon as Named Third Party Defendants; (ii) letter from Gowling Lafleur Henderson dated January 21, 2013 regarding the addition of David Horsley as a Named Third Party Defendant.

4.      The objections received to the Ernst & Young Settlement up to January 21, 2013 have been filed separately in the Monitor's fourteenth report dated January 22, 2013 (the "**Fourteenth Report**"). Any subsequent Notices of Objection or other correspondence expressing objections have or will be attached in a supplement or supplements to the Fourteenth Report.

5.      The proceedings commenced by the Company under the CCAA will be referred to herein as the "**CCAA Proceedings**".

6.      The purpose of this Fifteenth Report is to report on certain matters relating to the Ernst & Young Settlement.

7.      In preparing this Fifteenth Report, the Monitor has relied upon unaudited financial information of Sino-Forest, Sino-Forest's books and records, certain financial information prepared by Sino-Forest, the Reports of the Independent Committee of the

Company's Board of Directors dated August 10, 2011, November 13, 2011, and January 31, 2012, and discussions with Sino-Forest's management.  The Monitor has not audited, reviewed or otherwise attempted to verify the accuracy or completeness of the information.  In addition, the Monitor notes that on January 10, 2012, the Company issued a press release cautioning that the Company's historic financial statements and related audit reports should not be relied upon.  Accordingly, the Monitor expresses no opinion or other form of assurance on the information contained in this Fifteenth Report or relied on in its preparation.  Future oriented financial information reported or relied on in preparing this Fifteenth Report is based on management's assumptions regarding future events; actual results may vary from forecast and such variations may be material.

8.      Unless otherwise stated, all monetary amounts referred to herein are expressed in CDN Dollars.

9.      The term "**Sino-Forest**" refers to the global enterprise as a whole but does not include references to Greenheart (as defined in the Plan).  "Sino-Forest Subsidiaries" refers to all of the direct and indirect subsidiaries of the Company, but does not include references to Greenheart.

10.     Capitalized terms used herein and not otherwise defined have the meaning given to them in the Plan, the Thirteenth Report, the Supplemental Report and/or the Second Supplemental Report.[1]

---

[1] See Appendices B, C, D and E for copies of the Plan, the Thirteenth Report, the Supplemental Report and the Second Supplemental Report.

**BACKGROUND**

*Overview of the CCAA Proceedings*

11.     The description of the Company's business as well as the background to these
proceedings has all been set out in previous reports of the Monitor as well as affidavits
filed by the Company in connection with the CCAA Proceedings and is therefore not
repeated herein.

12.     A brief chronology of certain of the significant events in the CCAA Proceedings to date
is as follows:

(a)     On March 30, 2012, the Company sought and the Court granted the Initial Order
the terms of which included a stay of proceedings (the "**Stay**") against the
Company, its directors and officers and the Sino-Forest Subsidiaries.  The Stay
has been extended from time to time and is currently extended through to
February 1, 2013.

(b)     As part of its application for the Initial Order, the Company advised that it had
entered into the RSA which provided for the terms on which certain Initial
Consenting Noteholders would consent to a restructuring transaction.

(c)     On the same day, the Court granted the Sale Process Order pursuant to which the
Company was authorized to conduct a sale process, in part, as a market test of the
transactions contemplated under the RSA.

(d)     On April 20, 2012, the Court granted an Order expanding the Monitor's powers in
these proceedings.

(e)     On May 8, 2012, on a motion by the Company (the "**Third Party Stay Motion**"),
the Court granted an Order confirming that the Stay extended to the Third Party
Defendants (as defined below) in the Class Actions.

(f)     On May 14, 2012, the Court granted the Claims Procedure Order which provided for the calling of claims against the Company, its directors and officers and the Sino-Forest Subsidiaries and established a claims bar date.

(g)     On June 26, 2012 the Company brought a motion relating to a determination on "equity claims" and on July 27, 2012, the Court granted the motion and issued the Equity Claims Order.  An appeal from the Equity Claims Order was dismissed by the Ontario Court of Appeal on November 23, 2012.

(h)     On July 25, 2012, the Monitor sought and the Court granted the Mediation Order, directing a mediation of the Class Action Claims against the Company and the Third Party Defendants.  The Mediation took place over the course of September 4 and 5, 2012.   While no settlements were reached during the Mediation, settlement discussions among parties to the Mediation continued following the Mediation.

(i)     On August 31, 2012, the Company sought and the Court granted the Meeting Order which provided for the filing of the Plan and the calling of a meeting of creditors.

(j)     On October 28, 2012, the Ontario Class Action Plaintiffs brought a motion seeking a lifting of the stay against Ernst & Young, BDO, the Underwriters, Allen Chan and Kai Kit Poon. The motion was not opposed by the Company or the Monitor.  In an endorsement released on November 6, 2012, the Court dismissed the motion without prejudice to the Ontario Class Action Plaintiffs to renew their request on December 10, 2012 (which was the scheduled date for the Sanction Hearing).

(k)     On December 3, 2012, the Meeting took place at which time the Plan was approved by the Required Majority (also discussed in more detail below).

(l)     On December 7, 2012, the Company sought the Sanction Order, which was granted by the Court on December 10, 2012.  A notice of motion for leave to appeal the Sanction Order has been served by counsel to a group of shareholders

("**Kim Orr**").  To date, Kim Orr has not perfected its leave motion nor has leave been granted by the Ontario Court of Appeal.

(m)     On December 21, 2012, the Court granted an Order approving the notice process for the approval of the Ernst & Young Settlement.

13.     As of the date of this Fifteenth Report, the Company is continuing to work towards the implementation of the Plan, the details of which are discussed in more detail below.

## THE CLAIMS PROCESS, MEDIATION AND PARTICIPATION OF THE CLASS ACTION PLAINTIFFS IN THE CCAA PROCEEDINGS

*Claims, the Class Actions and the Mediation*

14.     From the outset of the CCAA Proceedings, it was apparent that addressing the contingent claims against the Company (and related claims against the Sino-Forest Subsidiaries) would be important given the extent of the litigation against the Company and resulting indemnification claims from others named in the Class Actions.  To further that process, on May 14, 2012, the Company obtained the Claims Procedure Order,[2] which provided for the calling of claims against the Company, its directors and officers and its subsidiaries.  The call for Claims included a call for "equity claims".  Claims (other than Restructuring Claims) and D&O Claims (as such terms are defined in the Claims Procedure Order) were to be filed prior to June 20, 2012 (the "**Claims Bar Date**"). Any Claim not filed by the Claims Bar Date is now forever barred.

15.     In developing the terms of the Claims Procedure Order, the Company and the Monitor were both cognizant of the relatively unique nature of the claims that were anticipated to be asserted in the claims process.  As set out above, as a holding company, unlike many CCAA debtors, the Company does not have many, if any, trade creditors.  Instead, aside from the claims in respect of the Notes, it was anticipated that most or all of the remaining claims filed would be in connection with the Class Actions either directly by

---

[2] See Appendix F for a copy of the Claims Procedure Order.

the plaintiffs in the Class Actions or by way of indemnity claims from the Third Party Defendants.

16.     In that regard, the Company and the Monitor had extensive discussions with class action counsel for the Ontario Class Action Plaintiffs and the Quebec Class Action Plaintiffs (collectively, the "**Canadian Plaintiffs**") (among others) as to certain terms of the Claims Procedure Order.  Ultimately, numerous changes were made to the Claims Procedure Order that was proposed to the Court including paragraphs ordering that the Canadian Plaintiffs were entitled to file representative Proofs of Claim and D&O Proofs of Claim (as both terms are defined in the Claims Procedure Order) in respect of the substance of the Ontario Class Action and the Quebec Class Action, respectively (collectively, the "**Canadian Class Actions**").[3]

17.     On June 26, 2012, the Company brought a motion seeking a direction that Claims by the plaintiffs in the Class Actions in respect of the purchase of securities[4] and resulting indemnification claims by the Third Party Defendants constituted "equity claims" pursuant to section 2(1) of the CCAA.  The motion as opposed by Ernst & Young, BDO and the Underwriters.  The motion was not opposed by the Canadian Plaintiffs who conceded that their Class Action claims in respect of the purchase of securities were "equity claims".[5]

18.     On July 27, 2012, the Court issued its decision determining that such claims did constitute "equity claims" under section 2(1) of the CCAA (the "**Equity Claims Decision**").  The Equity Claims Decision was appealed by Ernst & Young, BDO and the Underwriters.  The appeal was heard by the Ontario Court of Appeal on November 13, 2012.  On November 23, 2012, the Ontario Court of Appeal issued its reasons and dismissed the appeal.  The Equity Claims Decision was not appealed to the Supreme Court of Canada.

---

[3] See paragraphs 27 and 28 of the Claims Procedure Order.
[4] The motion did not deal with claims in respect of the purchase of debt securities.
[5] Kim Orr did not appear at or in any way oppose the motion on the Equity Claims Decision.

19.     Early in the CCAA Proceedings, it became apparent to the Monitor that the nature, complexity and number of parties involved in the litigation claims surrounding the Company had the potential to cause extensive delay and additional costs in the CCAA Proceedings.    As such, it was the view of the Monitor (with the agreement of the Company) that there was merit in a global resolution of not only the Class Action Claims against the Company, but also against the other defendants named in the Class Actions other than Pöyry Beijing (the "**Third Party Defendants**").[6]

20.     On July 25, 2012 the Court granted an order (the "**Mediation Order**"), directing a mediation (the "**Mediation**") of the class action claims against the Company and the Third Party Defendants.[7]   The parties directed to participate in the mediation were the Company, the Canadian Plaintiffs, the Third Party Defendants, the Monitor, the Initial Consenting Noteholders and relevant insurers. The Monitor is aware and believes that the parties took the Mediation seriously and relied on the ability of those in attendance to bind their respective constituents as was required by the Mediation Order.  The Mediation was conducted on September 4 and 5, 2012.  No settlements were reached during the Mediation.

21.     Although no settlements were reached during the Mediation, the Monitor was aware that many of the Third Party Defendants remained focused on determining whether a resolution within the CCAA Proceedings was possible. Specifically, the Monitor notes the description of the ongoing settlement discussions between the Canadian Plaintiffs and Ernst & Young in the affidavit of Charles Wright sworn January 10, 2013 (the "**Wright Affidavit**"), which ultimately resulted in the Ernst & Young Settlement.

---

[6] The Third Party Defendants are: EY, BDO, the Underwriters, Allen Chan, Judson Martin, Kai Kit Poon, David Horsley, William Ardell, James Bowland, James Hyde, Edmund Mak, Simon Murray, Peter Wang and Garry West.
[7] See Appendix G for a copy of the Mediation Order.

## THE PLAN, MEETING OF CREDITORS AND SANCTION ORDER

*The Plan and the Plan Filing and Meeting Order*

22.    On August 14, 2012, the Company announced that it had filed a draft plan of compromise and reorganization (the "**August 14 Draft Plan**") with the Court.[8]  On August 15, 2012, the Company filed a draft information circular with the Court. In connection with the filing of the August 14 Draft Plan, the Company also brought a motion seeking approval of a plan filing and meeting order (the "**Meeting Order**") which, among other things, provided for the calling of a meeting of creditors (the "**Meeting**").[9]  It was agreed that the Meeting Date would be subsequent to the completion of the Mediation.

23.    The motion for the Meeting Order was returnable on August 28, 2012.  Due to concerns raised by certain of the Third Party Defendants, the motion was postponed to determine whether the parties could agree to changes that would result in a mutually satisfactory proposed order, which was ultimately achieved.  On August 31, 2012, the Court granted the Meeting Order.

24.    On October 19, 2012, the Company filed a revised plan of compromise and reorganization and information statement. Further revised versions of the Plan were filed on November 28, 2012 and December 3, 2012.  The December 3, 2012 version of the Plan (being the final version of the Plan that was put to creditors at the Meeting and the Court at the Sanction Hearing) included amendments relating to the Third Party Defendants including the new Article 11.1 which provided for a mechanism through which the release contemplated by the Ernst & Young Settlement could be achieved.[10]

*The Meeting*

25.    The details regarding the calling of the Meeting as well as the conduct of the Meeting are set out in detail in the Supplemental Report and therefore not repeated herein. Briefly, the Meeting Order provided for:

---

[8] A further draft of the Plan dated August 27, 2012 was filed prior to the return of the motion for the Meeting Order.
[9] See Appendix H for a copy of the Meeting Order.
[10] See Appendix B for a copy of the Plan.

(a)      notice and mailing of the Company's plan, supplements and amendments thereto;

(b)      the solicitation of proxies;

(c)      the calling of a meeting of creditors; and

(d)      those Persons who were entitled to attend and vote on the plan at the meeting – specifically, holders of equity claims were not (in such capacity) entitled to attend the Meeting, nor were they entitled to vote on the Plan.

26.      The Meeting was held at Gowlings' office on December 3, 2012, starting shortly after 10am. By the time the Meeting was conducted, the Company (with the assistance of others) had made considerable progress in obtaining support for its Plan. Notably, with those holding Voting Claims, there were only three (3) votes against the Plan (representing approximately .03% in value) and there was only one vote against the Plan in respect of Unresolved Claims (namely, BDO).

27.      In accordance with the Meeting Order, persons who were entitled to vote submitted their proxies which were used to vote on the Plan in the form presented at the Meeting. As a result, the Plan received overwhelming approval by creditors with Voting Claims who voted in person or by proxy (99.96% in value and 98.81% in number) and even if the results of the votes on the Unresolved Claims counted towards the Required Majority, the Plan still would have received overwhelming approval (90.72% in value and 98.5% in number).[11]  Further, as discussed below, subsequent to the Meeting and prior to the Sanction Hearing, BDO (the only party with Unresolved Claims that voted "no"), became a Named Third Party Defendant under the Plan and supported approval of the Plan at the Sanction Hearing. Lastly, as set out above, holders of equity claims (including the Canadian Plaintiffs) were not entitled to attend the Meeting or vote on the Plan.

*The Sanction Order*

28.      The Sanction Hearing was held on December 7, 2012. At the Sanction Hearing, there were no claimants who filed Claims, D&O Claims or D&O Indemnity Claims (all as

---

[11] See paragraph 31 of the Supplemental Report (Appendix D) for a full summary of the voting results.

defined in the Claims Procedure Order) under the Claims Procedure Order and/or who voted at the Meeting who opposed the sanctioning of the Plan. Specifically, the following parties were supportive of the Plan:

(a)     the Company;

(b)     the Company's board of directors;

(c)     the Monitor;

(d)     the Initial Consenting Noteholders;

(e)     Ernst & Young;

(f)     the Underwriters; and

(g)     BDO.

29.     There were also a number of parties, including counsel for the Canadian Plaintiffs and the U.S. Plaintiffs, who did not oppose the sanctioning of the Plan.  The only parties who expressed any opposition to the sanctioning of the Plan were three shareholders of the Company, Invesco Canada Ltd., Northwest & Ethical Investments L.P. and Comité Syndical National De Retraite Batirente Inc. (collectively, the "**Objecting Shareholders**"), which were represented by Kim Orr, who served a notice of appearance on December 6, 2012, one (1) day prior to the Sanction Hearing in these CCAA Proceedings.[12]  Notwithstanding the fact that Kim Orr acknowledged during the Sanction Hearing that it had been monitoring the CCAA Proceedings on behalf of its clients, none of the Objecting Shareholders had previously objected to the Claims Procedure Order, the Mediation Order, nor did any of them file Claims or D&O Claims under the Claims Procedure Order independent of the representative Claims and D&O Claims that were filed by the Canadian Plaintiffs as authorized by paragraphs 27 and 28 of the Claims

---

[12] See Appendix I for a copy of the notice of appearance of Kim Orr.

Procedure Order.  The Court issued its endorsement on the Sanction Hearing and the Sanction Order was granted on December 10, 2012.[13]

30.   A notice of motion for leave to appeal the Sanction Order has been served by Kim Orr.[14] However, in an exchange of correspondence between the Company and Kim Orr, Kim Orr confirmed that they did not intend to seek a stay of the implementation of the Plan pending appeal.[15]

*Plan Implementation*

31.   Since the granting of the Sanction Order, the Company, with the assistance of the Monitor and the Initial Consenting Noteholders, has worked towards fulfilling all of the conditions precedent to the implementation of the Plan.  On January 24, 2013, the Company announced that it anticipated that the Plan Implementation Date will occur on or about January 29, 2013 and, in any event, prior to the end of January 2013.[16]

32.   Subsequent to the Sanction Order being granted,

(a)   Allen Chan, Kai Kit Poon and David Horsley have been added as "Named Third Party Defendants" to the Plan which means, among other things, that none of those three individuals will be entitled to receive any distributions under the Plan; [17]

(b)   As a result of the addition of Mr. Chan, Mr. Poon and Mr. Horsley as Named Third Party Defendants to the Plan, the Unresolved Claims Reserve was reduced from Plan consideration sufficient to address $162.5 million of Unresolved Claims to Plan consideration sufficient to address $1.2 million of Unresolved Claims;

---

[13] See Appendices J and K for copies of the Sanction Order the Court's endorsement.
[14] See Appendix L for a copy of the notice of motion seeking leave to appeal the Sanction Order.
[15] See Appendix M copies of correspondence from Bennett Jones to Kim Orr; a responding letter from Kim Orr to Bennett Jones; and a responding letter from Lenczner Slaght to Kim Orr all dated January 3, 2013.
[16] See Appendix O for a copy of the Company's press release announcing that it anticipates that Plan implementation will occur on or about January 29, 2013.
[17] See Appendix P for letters dated January 11, 2013 and January 21, 2013.

(c)     On January 15, 2013, the Company obtained an Order of the Court with respect to certain document retention matters (the "**Document Retention Protocol Order**"); and

(d)     On January 21, 2013, the Company obtained an Order to approve certain administrative changes to the Plan including providing for the creation of an additional escrow to be maintained by the Monitor in connection with certain Hong Kong stamp duty matters.

## THE ERNST & YOUNG SETTLEMENT

*The Ernst & Young Settlement and Article 11 of the Plan*

33.     As set out above, Ernst & Young is one of the Third Party Defendants named in the Canadian Class Actions (as well as the class action proceeding commenced in the U.S.). In turn, in connection with the claims process conducted pursuant to the Claims Procedure Order, Ernst & Young filed both Claims and D&O Claims against the Company, the Sino-Forest Subsidiaries and numerous individuals for indemnity, contractual damages and other matters. The Monitor notes that the Proof of Claim and D&O Proof of Claim (each as defined in the Claims Procedure Order) filed by Ernst & Young are attached as Exhibits C and D to the affidavit of Mike P. Dean sworn January 11, 2013.

34.     Prior to the Meeting, the Canadian Plaintiffs reached a settlement with Ernst & Young pursuant to certain minutes of settlement dated November 29, 2012 (the "**Minutes of Settlement**").[18]  The Minutes of Settlement provided for the settlement of all claims against Ernst & Young and, in turn, resulted in amendments to the Plan and, in that context, Ernst & Young agreed, among other things, that it would not receive any consideration under the Plan, waived all rights to appeal and also resulted in Ernst & Young being supportive of and voting in favour of the Plan.

---

[18] See Appendix A for a copy of the Minutes of Settlement.

35.   A detailed outline of the Ernst & Young Settlement is set out in the affidavit of Charles Wright sworn January 10, 2013 and therefore not repeated herein.  In general terms, the Ernst & Young Settlement provides for the payment by Ernst & Young to a settlement trust of a $117 million settlement amount (the "**Settlement Fund**") upon the satisfaction of certain conditions including: (a) approval of the court of the Ernst & Young Settlement (the "**Ernst & Young Settlement Approval Order**"); and (b) recognition by the U.S. court of the Ernst & Young Settlement Approval Order pursuant to chapter 15 of title 11 of the United States Code.

36.   In exchange for payment of the Settlement Fund, the Minutes of Settlement provide for the requirement that Ernst & Young receive a full release of all claims against it to be effected pursuant through the CCAA Plan mechanism.  As such, amendments to the November 28 Plan were required in order to incorporate this structure.  Details of the changes to the Plan relating to Ernst & Young are set out in the Supplemental Report.  A brief description is as follows:

(a)   Any and all indemnification rights and entitlements of Ernst & Young and any indemnification agreement between Ernst & Young and the Company shall be deemed to be valid and enforceable in accordance with their terms for the purposes of determining whether the Claims of Ernst & Young for indemnification in respect of the Noteholder Class Action Claims are valid and enforceable within the meaning of section 4.4(b) the Plan.[19]

(b)   Ernst & Young shall not be entitled to any distributions under the Plan.

(c)   The Sanction Order shall contain a stay against Ernst & Young between the Plan Implementation Date and the earlier of the Ernst & Young Settlement Date (as defined in the Plan) or such other date as may be ordered by the Court on a motion to the Court.

---

[19] Section 4.4(b) of the Plan, among other things, establishes the Indemnified Noteholder Class Action Limit.

(d)     Section 11.1 of the Plan contains provisions that provide a framework pursuant to
which a release of the Ernst & Young Claims[20] under the Plan would happen if
several conditions were met.  That release will only be granted if all conditions
are met including further court approval. A summary of those terms is as follows:

(i)     Notwithstanding anything to the contrary in the Plan, subject to (A) the
granting of the Sanction Order; (B) the issuance of the Settlement Trust
Order (as may be modified in a manner satisfactory to the parties to the
Ernst & Young Settlement and the Company (if occurring on or prior to
the Plan Implementation Date), the Monitor and the Initial Consenting
Noteholders, as applicable, to the extent, if any, that such modifications
affect the Company, the Monitor or the Initial Consenting Noteholders,
each acting reasonably); (C) the granting of an Order under Chapter 15 of
the United States Bankruptcy Code recognizing and enforcing the
Sanction Order and the Settlement Trust Order in the United States; (D)
any other order necessary to give effect to the Ernst & Young Settlement
(the orders referenced in (C) and (D) being collectively the "**Ernst &
Young Orders**"); (E) the fulfillment of all conditions precedent in the
Ernst & Young Settlement and the fulfillment by the Ontario Class Action
Plaintiffs of all of their obligations thereunder; and (F) the Sanction Order,
the Settlement Trust Order and all Ernst & Young Orders being final
orders and not subject to further appeal or challenge, Ernst & Young shall
pay the settlement amount as provided in the Ernst & Young Settlement to
the trust established pursuant to the Settlement Trust Order (the
"**Settlement Trust**");

(ii)    Upon receipt of a certificate from Ernst & Young confirming it has paid
the settlement amount to the Settlement Trust in accordance with the Ernst
& Young Settlement and the trustee of the Settlement Trust confirming

---

[20] "Ernst & Young Claims" has the definition given to it in the Plan and does not include any proceedings or
remedies that may be taken against Ernst & Young by the Ontario Securities Commission or by staff of the Ontario
Securities Commission and the jurisdiction of the Ontario Securities Commission is expressly preserved.

receipt of such settlement amount, the Monitor shall deliver to Ernst & Young the Monitor's Ernst & Young Settlement Certificate. The Monitor shall thereafter file the Monitor's Ernst & Young Settlement Certificate with the Court;

(iii)  Notwithstanding anything to the contrary in the Plan, upon receipt by the Settlement Trust of the settlement amount in accordance with the Ernst & Young Settlement: (A) all Ernst & Young Claims shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled, barred and deemed satisfied and extinguished as against Ernst & Young; (B) section 7.3 of the Plan shall apply to Ernst & Young and the Ernst & Young Claims *mutatis mutandis* on the Ernst & Young Settlement Date; and (C) none of the plaintiffs in the Class Actions shall be permitted to claim from any of the other Third Party Defendants that portion of any damages that corresponds to the liability of Ernst & Young, proven at trial or otherwise, that is the subject of the Ernst & Young Settlement; and

(iv)  In the event that the Ernst & Young Settlement is not completed in accordance with its terms, the Ernst & Young Release will not become effective (and any claims against Ernst & Young will be assigned to the Litigation Trust).

37.  The focus of Kim Orr's objections at the Sanction Hearing related to the inclusion of Article 11.1 relating to the Ernst & Young Settlement. At the Sanction Hearing, it was made clear by all parties that approval of the Ernst & Young Settlement (including the potential for a release under Article 7 of the Plan) was not being sought on that date and would be the subject of a further motion. However, the Company (and others) did take the view that the Plan, as a whole (not in part), was being considered for Court approval. Ultimately, the Court, in the Sanction Order, approved the Plan, in its entirety. In his endorsement, Justice Morawetz notes:

The Plan was presented to the meeting with Article 11 in place. This was the Plan that was subject to the vote and this is the Plan that is the subject

of this motion.  The alternative proposed by the Funds was not considered at the meeting and, in my view, it is not appropriate to consider such an alternative on this motion.

38.     The Monitor participated in the development of the Plan as a whole and is of the view that it is clearly reflected in the Court's endorsement that the Plan, as a whole, be approved.

*The E&Y Notice Order*

39.     The parties took the view that this Court was the appropriate court for hearing the motion to approve the Ernst & Young Settlement.  Upon direction from the Regional Senior Justice on December 13, 2012, it was determined that the Court would hear the motion for approval of the Ernst & Young Settlement.  On December 21, 2012, the Court granted an order (the "**E&Y Notice Order**") approving the notice process regarding the approval of the Ernst & Young Settlement and scheduled the motion date for the Ernst & Young Settlement Motion to be February 4, 2013.[21]

40.     The E&Y Notice Order set out the required methods for providing notice of the Ernst & Young Settlement as well as an objection process pursuant to which any person wishing to object to the approval of the Ernst & Young Settlement at the Ernst & Young Settlement Motion was required to file a notice of objection in the prescribed form on or prior to January 18, 2013.  The Monitor was also required to attach all objections received to a report to court.

41.     The Monitor has filed its Fourteenth Report that contained all Notices of Objections or other correspondence expressing objections received up to the date of the Fourteenth Report.  The Monitor has or will provide any further Notices of Objection or other correspondence expressing objections in further supplements to the Fourteenth Report.

*The Benefits of Ernst & Young Settlement to the Company and the CCAA Proceedings*

---

[21] See Appendix N for a copy of the E&Y Notice Order.

42.     Although the Ernst & Young Settlement resolves class action litigation claims against Ernst & Young, the settlement was reached in the context of the Company's CCAA Proceedings and has provided a benefit to the Company, the Plan and the CCAA Proceedings for the following reasons.  In particular:

(a)     It eliminated the chance that Ernst & Young would seek leave to appeal the Equity Claims Decision to the Supreme Court of Canada which might have been costly and time consuming;

(b)     Given that the Equity Claims Decision did not address the entirety of Ernst & Young's indemnity claims, the settlement results in the elimination of further litigation relating to the acceptance, disallowance or revision of the Claim and D&O Claim filed by Ernst & Young, which litigation could have been extensive, lengthy and costly;

(c)     Ernst & Young has agreed to forego any distributions under the Plan which; and

(d)     It eliminated the possibility that Ernst & Young would vote against the Plan, object to the Sanction Hearing and appeal the Sanction Order which could have caused delay in implementing the Plan and result in significant additional cost to the estate.

43.     Further, the Monitor has consistently recognized the potential benefit of settlement within the CCAA Proceedings of the litigation claims surrounding the Company, including those against the Third Party Defendants.  This view was evident not only in the Monitor's Reports but also through the Monitor's support of the Third Party Stay Motion as well as the bringing of the motion for Mediation.  The Monitor has, throughout, encouraged the settlement of these claims within the CCAA framework which, in the Monitor's view, provides for an efficient legal regime through which such settlements may be effected.

44.     The Monitor has also consistently expressed its views regarding urgency in the CCAA Proceedings and is of the view that the Ernst & Young Settlement has assisted in eliminating a potential delay in the implementation of the Plan.

**MONITOR'S RECOMMENDATION**

45.    For the reasons set out above, the Monitor recommends approval of the Ernst & Young
       Settlement including the granting of the proposed release as set out in Articles 7 and 11
       of the Plan.

Dated this 28th day of January, 2013.

FTI Consulting Canada Inc.
In its capacity as Monitor of
Sino-Forest Corporation, and not in its personal capacity

Greg Watson
Senior Managing Director

Jodi Porepa
Managing Director