Court File No. CV-12-9667-00-CL

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE
## COMMERCIAL LIST

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED,

AND IN THE MATTER OF A PLAN OF COMPRISE AND ARRANGEMENT OF SINO-FOREST CORPORATION

Court File No.: CV-11-431153-00CP

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE

B E T W E E N :

**THE TRUSTEES OF THE LABOURERS' PENSION FUND OF CENTRAL AND EASTERN CANADA, THE TRUSTEES OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 793 PENSION PLAN FOR OPERATING ENGINEERS IN ONTARIO, SJUNDE AP-FONDEN, DAVID GRANT and ROBERT WONG**

Plaintiffs

- and –

**SINO-FOREST CORPORATION, ERNST & YOUNG LLP, BDO LIMITED (formerly known as BDO MCCABE LO LIMITED), ALLEN T.Y. CHAN, W. JUDSON MARTIN, KAI KIT POON, DAVID J. HORSLEY, WILLIAM E. ARDELL, JAMES P. BOWLAND, JAMES M.E. HYDE, EDMUND MAK, SIMON MURRAY, PETER WANG, GARRY J. WEST, PÖYRY (BEIJING) CONSULTING COMPANY LIMITED, CREDIT SUISSE SECURITIES (CANADA), INC., TD SECURITIES INC., DUNDEE SECURITIES CORPORATION, RBC DOMINION SECURITIES INC., SCOTIA CAPITAL INC., CIBC WORLD MARKETS INC., MERRILL LYNCH CANADA INC., CANACCORD FINANCIAL LTD., MAISON PLACEMENTS CANADA INC., CREDIT SUISSE SECURITIES (USA) LLC and MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED (successor by merger to Banc of America Securities LLC)**

Defendants

## FACTUM OF ERNST & YOUNG LLP
### Motion to Approve the Ernst & Young Settlement
### February 4, 2013

January 30, 2013

**LENCZNER SLAGHT ROYCE SMITH GRIFFIN LLP**

Barristers
Suite 2600
130 Adelaide Street West
Toronto ON  M5H 3P5

Peter H. Griffin (19527Q)
Tel:    (416) 865-2921
Fax:    (416) 865-3558
Email:  pgriffin@litigate.com

Peter J. Osborne (33420C)
Tel:    (416) 865-3094
Fax:    (416) 865-3974
Email:  posborne@litigate.com

Shara N. Roy (49950H)
Tel:    (416) 865-2942
Fax:    (416) 865-3973
Email:  sroy@litigate.com

Lawyers for Ernst & Young LLP

TO:        **THE SERVICE LIST**

# INDEX

PART I - OVERVIEW ............................................................................................... 1

PART II - THE FACTS ............................................................................................. 4

    (i)     Sino-Forest Corporation........................................................................ 4

    (ii)    Class Actions ........................................................................................ 6

    (iii)   CCAA Process ...................................................................................... 8

    (iv)   The Relationship Between the CPA and the CCAA Proceedings ......... 11

    (v)    Mediation Efforts ............................................................................... 12

    (vi)   The Ernst & Young Settlement ........................................................... 16

    (vii)  The Kim Orr Objectors ...................................................................... 20

    (viii) The Pöyry "Evidence" ........................................................................ 23

PART III - THE LAW ............................................................................................ 24

(A)    The Ernst & Young Settlement and the Ernst & Young Release Meet the Test for
Approval Under the CCAA ................................................................................... 25

    (i)     The Ernst & Young Settlement is Procedurally Fair ........................... 28

    (ii)    The Ernst & Young Settlement is Fair and Reasonable ...................... 31

    (iii)   The Ernst & Young Release is Fair and Reasonable ........................... 35

    (iv)   The Ernst & Young Settlement Provides Substantial Benefits to Sino-
Forest and all other Stakeholders ...................................................................... 37

(B)    The Objections Raised by a Small Minority of Shareholders Should Not Impede
Approval of the Ernst & Young Settlement .......................................................... 40

    (i)     Claims are Frequently Compromised in the CCAA Context................ 40

    (ii)    The Kim Orr Objectors Made No Attempt to Participate in the Negotiation
Process ............................................................................................................... 41

    (iii)   The Objecting Shareholders Represent a Very Small Minority ........... 42

    (iv)   The Objecting Shareholders Are Too late to Attack the Plan Vote ...... 42

PART IV - ORDER REQUESTED .......................................................................... 43

## PART I - OVERVIEW

1.      Ernst & Young LLP seeks an order approving the settlement and release of all claims in connection with its audit work for the Applicant Sino-Forest Corporation and its subsidiaries.

2.      The Ernst & Young Settlement and the Ernst & Young Release (as these terms are defined in a Plan of Compromise and Reorganization of the Applicant under the *Companies' Creditors Arrangement Act* ("CCAA") dated December 3, 2012 (the "Plan"))) are the product of an extensive settlement process that started with a court ordered mediation process and that culminated with extensive changes to the Plan to incorporate the terms agreed.    The Court initiated this process with the goal of furthering the overall restructuring objectives.    That goal has been achieved.

3.      In reaching the settlement that is before the Court, Ernst & Young:

    (a)      engaged in a lengthy mediation and negotiation process aimed at satisfying the claims against it, resolving the outstanding class proceedings and advancing the CCAA proceedings;

    (b)      agreed to contribute $117 million to a settlement trust, for the benefit of stakeholders, many of whom would otherwise not have received any distributions;

    (c)      incorporated the settlement and release of Ernst & Young (as defined in the Plan) into the framework of the Plan;

    (d)      voted in favour of and supported Court approval of the Plan;

(e)  released all distributions owing to it under the Plan as well as the significant claims available to it against the Applicant, its subsidiaries, directors and officers; and

(f)  abandoned any further appeal rights of this Court's order regarding the definition of "equity claims" in the CCAA.

4.  The Ernst & Young Settlement represents a substantial contribution to the Plan and provides a significant benefit to the Applicant's creditors.  In these circumstances and in light of the robust arm's length negotiations that led to the Ernst & Young Settlement, it is fair and reasonable and ought to be approved by this Court.

5.  In addition, the settlement has facilitated the Plan process and Plan approval.  The Ernst & Young Settlement not only resolved Ernst & Young's claims against the Applicant, its subsidiaries and directors and officers and Ernst & Young's objections to the Plan, but it also served as a catalyst for the support of the Plan by other third party stakeholders.

6.  The Ernst & Young Release, which is an integral component of the settlement, also meets the necessary criteria for approval:

(a)  It is rationally related to the purpose of the Plan;

(b)  It is necessary for the success and timing of the Plan; and

(c)  It reflects a tangible contribution under the Plan for the benefit of the Applicant and its stakeholders generally.

7.     The Ernst & Young Settlement and the Ernst & Young Release are supported by:

(a)     the Applicant;

(b)     the Ad Hoc Committee of Sino-Forest Noteholders;

(c)     the Ontario Plaintiffs; and

(d)     the court-appointed Monitor.

8.     In addition, they are unopposed by:

(a)     any of the stakeholders who have actively participated in the CCAA proceedings;

(b)     any of the institutional purchasers or holders of the Applicant's notes; or

(c)     any of the institutional purchasers or holders of the Applicant's shares, save for a
small group of objectors discussed below.

9.     These objectors, represented by Kim Orr Barristers P.C. (the "Kim Orr Objectors"),
represent in aggregate a mere 1.62% of the value of the issued and outstanding shares of the
Applicant.   Having deliberately ignored the CCAA process to date, including the claims bar and
court ordered mediation, the Kim Orr Objectors now come forward claiming that their interests
have been unfairly compromised.

10.     Their complaints should be dismissed:

(a)     the Kim Orr Objectors ought not to be heard to complain of the results of a
process which they chose to ignore;

- 4 -

    (b)    the CCAA process does not contemplate that stakeholders can simply "sit it out" and "opt out". The policy behind the CCAA is clear. It is to resolve all claims, not merely the claims of those stakeholders who choose to participate;

    (c)    the Kim Orr Objectors have not in fact "opted out" since they expect this Court to provide them with the benefits of the Ernst & Young Settlement if it is approved.

11.    The Ernst & Young Settlement and the Ernst & Young Release should be approved.

## PART II - THE FACTS

### (i)    Sino-Forest Corporation

12.    Sino-Forest Corporation ("Sino-Forest", the "Company" or the "Applicant") was a reporting issuer in Ontario with forestry operations in the People's Republic of China ("PRC"). Ernst & Young LLP was retained as Sino-Forest's auditor from approximately 2007 until it resigned on April 4, 2012. The shares of Sino-Forest were publicly traded at all material times on the Toronto Stock Exchange (the "TSX") and on the over-the-counter market in the United States, among others. During the period from March 19, 2007 through June 2, 2011, approximately 93.4% of the aggregate global volume of trade in Sino-Forest common shares took place in Canada.

               **Reference**    Affidavit of Charles M. Wright, para. 11.

13.    Also during the period from March 19, 2007 through June 2, 2011, Sino-Forest made three prospectus offerings of common shares by way of final short-form prospectuses dated June 2007, June 2009 and December 2009.

14.     Sino-Forest also issued and had various notes (debt instruments) outstanding.   These notes were offered to investors by way of offering memoranda, and were underwritten by various financial institutions who are defendants in the Ontario Action.   During the period from March 19, 2007 through June 2, 2011, Sino-Forest made four note offerings by way of offering memoranda dated July 2008, June 2009, December 2009 and October 2010.   These notes also traded in the secondary market.

**Reference**        Affidavit of Charles M. Wright, para. 12.

15.     On June 2, 2011, a short-seller, Muddy Waters LLC, issued a report which purported to reveal fraud at the Company and cast various aspersions on the Company's advisors.   In the wake of that report, Sino-Forest's share price plummeted.   The allegations contained in the Muddy Waters report have never been substantiated by any finding, and are vigorously disputed by the Applicant and its senior management.

**Reference**        Affidavit of W. Judson Martin sworn March 30, 2012, at para, 114 ("March 30 Martin Affidavit") attached as Exhibit A to Affidavit of W. Judson Martin sworn April 23, 2012, Motion Record of Sino-Forest Corporation returnable May 8, 2012, Tab 20.

Affidavit of Charles M. Wright, para. 18.

16.     On June 6, 2011, Sino-Forest announced that a committee of its Board of Directors (the "Independent Committee") had been established and had retained Osler, Hoskin & Harcourt LLP and PricewaterhouseCoopers to conduct an investigation into Muddy Waters' allegations.

**Reference**        Affidavit of Charles M. Wright, para. 19.

- 6 -

17.     On August 26, 2011, the Ontario Securities Commission ("OSC") issued a temporary cease-trade order in respect of Sino-Forest's securities.

**Reference**     Affidavit of Charles M. Wright, para. 26.

**(ii)     Class Actions**

18.     In the wake of the Muddy Waters Report, Ernst & Young and a variety of other parties were served with a multitude of class action claims in Ontario, Quebec and New York (the "Class Actions"). In Ontario alone, Ernst & Young was served with three competing proposed class actions.

19.     On July 20, 2011, the Ontario Action was commenced under the *Class Proceedings Act, 1992* (the "*CPA*") against Sino-Forest, Ernst & Young and other defendants on behalf of persons who had purchased Sino-Forest securities in the period from March 19, 2007 to June 2, 2011. The Ontario Plaintiffs alleged that Sino-Forest misstated its financial statements, overstated the value of its assets, and concealed material information about its business and operations from investors in its public filings. As a result, Sino-Forest's securities allegedly traded at artificially inflated prices for many years.

**Reference**     Affidavit of Charles M. Wright, para. 30.

20.     On June 9, 2011, Siskinds Desmeules, a Quebec City law firm affiliated with Siskinds, commenced a parallel proceeding against Sino-Forest, Ernst & Young and certain other defendants in the Quebec Superior Court. Class Counsel in Ontario and Quebec have been working together in a coordinated manner in both of these proceedings.

**Reference**     Affidavit of Charles M. Wright, para. 32.

- 7 -

21.     Two other proposed class proceedings commenced in Ontario relating to Sino-Forest. *Smith et al. v. Sino Forest Corporation et al.,* commenced on June 8, 2011 (the "*Smith Action*") and *Northwest & Ethical Investments L.P. et al. v. Sino-Forest Corporation et al.*, commenced on September 26, 2011 (the "*Northwest Action*"). Rochon Genova LLP acted for the plaintiffs in the *Smith Action*, and Kim Orr acted for the plaintiffs in the *Northwest Action*. Kim Orr acts for the Kim Orr Objectors on this motion.

**Reference**     Affidavit of Charles M. Wright, para. 33.

22.     In December 2011, there was a carriage motion to determine which of the three actions in Ontario should be permitted to proceed and which should be stayed. By Order dated January 6, 2012, the Honourable Justice Perell granted carriage to the Ontario Plaintiffs. The court stayed the *Smith Action* and the *Northwest Action*, and appointed Siskinds LLP and Koskie Minsky LLP to prosecute the Ontario Action on behalf of the proposed class. Following that decision, and pursuant to the Court's order, David Grant, a noteholder, was added as a proposed representative plaintiff and the scope of the class was expanded to its current scope, which includes noteholders as at June 2, 2011.

23.     The *Northwest Action* included express allegations of fraudulent misrepresentation expressly referred to in the carriage motion decision of Justice Perell. In addition, the plaintiffs in the Ontario Action expressly allege that Ernst & Young LLP (as well as others) knew or in the alternative was wilfully blind to the fact that the representation that Sino-Forest's financial statements complied with GAAP was false. For this reason among others, it is necessary that the Ernst & Young Release be sufficiently broad in scope to include the release of all the Ernst & Young Claims, including in particular claims framed in fraud.

**Reference**     Affidavit of Charles M. Wright, para. 36.

24.     On January 27, 2012, the Washington, DC-based law firm of Cohen Milstein Sellers &

Toll PLLC ("US Plaintiffs' Counsel") commenced a proposed class action against Sino, Ernst &

Young LLP, Ernst & Young Global Limited and other defendants in the New York Supreme

Court (the "US Action").  The US Action was transferred from the New York state court to the

federal District Court for the Southern District of New York in March 2012.

<div align="center">

**Reference**     Affidavit of Charles M. Wright, para. 37.

</div>

25.     By order made in the U.S. Action on January 4, 2013, the plaintiffs in the U.S. Action

were appointed as lead plaintiffs and U.S. plaintiffs' counsel as lead counsel to represent the

interests of the proposed class.

<div align="center">

**Reference**     Affidavit of Charles M. Wright, para. 39.

</div>

**(iii)     CCAA Process**

26.     On March 30, 2012, in part due to the Class Actions, Sino-Forest sought and obtained

protection from its creditors pursuant to the CCAA (the "Initial Order").  Sino-Forest currently

remains in CCAA insolvency proceedings in the Ontario Superior Court of Justice (the "CCAA

Proceeding").  The Initial Order made in the CCAA Proceeding stayed the Class Actions against

the Company, its subsidiaries and its directors and officers.  The claims in the Class Action were

the primary catalyst for the CCAA filing.

<div align="center">

**Reference**     Affidavit of Mike P. Dean, para. 11.

Fifteenth Report of the Monitor, para. 15.

</div>

27.     On May 8, 2012, this Honourable Court made a further order, unopposed by any party,

that the stay extends to all third party defendants to the Class Actions, including Ernst & Young

LLP (the "Third Party Stay Order"), in order to allow all stakeholders to focus on Sino-Forest's

restructuring, in which the resolution of the web of claims and cross-claims played a central role.

The stay as against all parties has been extended from time to time. As a result, the Ontario Class Action and the Quebec Class Action are stayed as against all defendants, with one narrow exception relating to a settlement in the Ontario Class Action with Pöyry (Beijing) Consulting Company ("Pöyry"). Pöyry expressly elected to not participate in the CCAA Proceedings and to be excluded from the scope of the CCAA stay in order that the stay not interfere with or delay the approval of its settlement by the class proceedings Court.

<div align="center">**Reference**  Affidavit of Mike P. Dean, para. 12.</div>

28. On May 14, 2012, this Honourable Court granted a claims procedure order (the "Claims Procedure Order") in the CCAA Proceeding. The motion for the Claims Procedure Order proceeded on an unopposed basis following extensive discussions amongst the stakeholders including the Company, Ernst & Young, the Ontario Plaintiffs and the other third party defendants including the syndicate of underwriters for Sino-Forest's various debt and equity offerings (the "Underwriters") and Sino-Forest's previous auditors, BDO Limited ("BDO").

<div align="center">**Reference**  Affidavit of Mike P. Dean, para. 13.</div>

29. The Claims Procedure Order established a claims bar date pursuant to which any party wishing to file a proof of claim was required to do so. The Claims Procedure Order called for claims against Sino-Forest and (although they were not Applicants) the Sino-Forest Subsidiaries (as defined in the Claims Procedure Order) and separately for claims against the directors and officers of Sino-Forest. The claims against the Sino-Forest Subsidiaries were of particular importance to the Applicant, and the Applicant's position was that no restructuring could proceed without dealing with those claims.

<div align="center">**Reference**  Affidavit of Mike P. Dean, para. 14.</div>

<div align="center">    Affidavit of Judson Martin sworn January
11, 2013, paras. 8 and 10.</div>

- 10 -

Fifteenth Report of the Monitor, paras. 15
and 16.

30.     Ernst & Young filed Proofs of Claim pursuant to the Claims Procedure Order and

claimed as against each of Sino-Forest, the Sino-Forest Subsidiaries, and the directors and

officers of each for:

    (a)    Damages for:

        (i)    Breach of contract;

        (ii)    Negligent misrepresentation;

        (iii)    Fraudulent misrepresentation;

        (iv)    Inducing breach of contract (as against the Sino-Forest Subsidiaries only);

        (v)    Injury to Reputation; and

        (vi)    Vicarious Liability (as against Sino-Forest and the Sino-Forest
                Subsidiaries);

    (b)    Contractual indemnity, pursuant to Ernst & Young's engagement letters; and

    (c)    Contribution and indemnity under the *Negligence Act*, R.S.O. 1990, c. N-1 and

        other applicable legislation outside of Ontario (the "*Negligence Act*").

                **Reference**        Affidavit of Mike P. Dean, para. 15.

31.     The Ad Hoc Committee of Purchasers of the Applicant's Securities, including Ontario

Plaintiffs (augmented by their representation of the Quebec Class Action Plaintiffs), filed a proof

of claim in the CCAA Proceedings on behalf of all putative class members in the Ontario Class

Action, as expressly provided by the Claims Procedure Order.   This putative class expressly

included the Kim Orr Objectors who now oppose this motion.

32.     The Kim Orr Objectors, on their own evidence, monitored the CCAA Proceeding from

the outset and throughout.   The Kim Orr Objectors did not oppose the filing of the Proof of

Claim by the Ad Hoc Committee on behalf of the entire putative class, and they did not file a proof of claim on their own behalf.

> **Reference**      Affidavit of Eric S. Adelson, paras. 6-10.
>
> Affidavit of Daniel Simard, paras. 15, 16, 18 and 20.
>
> Fifteenth Report of the Monitor, para. 29.

33.     The Applicant, supported by the Monitor, consistently took the position that timing and delay were critical factors to the success of any Plan.  The Applicant and the Noteholders also took the position that any and all delays reduced recovery for the creditors of Sino-Forest. Therefore, a contribution to timing contributed materially to the Plan.

> **Reference**      Affidavit of Judson Martin, paras. 11, 12 and 21.

### (iv)    The Relationship Between the CPA and the CCAA Proceedings

34.     The Ontario Plaintiffs (styled as the Ad Hoc Committee) participated in the CCAA proceedings from the outset and throughout.  In addition to filing a Proof of Claim on behalf of the putative class members, the Ontario Plaintiffs took a series of closely integrated steps in the CCAA proceedings, whereby they, among other things:

(a)     brought various motions on behalf of Sino-Forest securities purchasers and holders;

(b)     participated in the claims process;

(c)     made the strategic decision on behalf of the class to accept the Applicant's position that the shareholder claims were equity claims as that term is defined in the CCAA;

(d)     negotiated certain protections and structures within the Plan in relation to the noteholder claims advanced in the Class Action litigation; and

(e)     sought from time to time to lift the stay with a view to advancing the litigation, which steps were ultimately unsuccessful in light of the central role the litigation played in the affairs of Sino-Forest.

> **Reference**     Affidavit of Charles Wright, para. 49.
>
> Fifteenth Report of the Monitor, paras. 16 and 18.

35.     As the proceeding progressed, any party interested in the CCAA Proceeding was able to follow all developments through the Monitor's website, Sino-Forest's website and various media reports, as well as by attending the court proceedings.   In particular, all Court orders and endorsements, all motion materials and all Monitor's reports were posted on the Monitor's website.  Counsel for the Kim Orr Objectors advised the Court on December 7, 2012 that they and their clients had "been monitoring the CCAA proceedings throughout."

> **Reference**     Affidavit of Mike P. Dean, para. 49.

### (v)     Mediation Efforts

36.     On July 25, 2012, this Court ordered the Parties (as defined in the Order), including the Ontario Plaintiffs and Ernst & Young LLP, to participate in a mediation process.  The Mediation Order, which was unopposed by any party, required Sino-Forest, the Ontario Plaintiffs, the Third

Party Defendants, the Monitor, the Noteholders and any insurers providing coverage to participate in the mediation. Those participating were ordered to attend "with full authority to settle the Subject Claims."

37.     The mediating parties therefore had confidence that should they reach a settlement, it would be resolved in the context of the CCAA. The Applicant and the Monitor welcomed the initiative from this Court to encourage the principal stakeholders to engage in a constructive dialogue with a view to attempting to resolve disputes on a consensual basis, including ordering the mediation.

|  |  |
|---|---|
| **Reference** | Affidavit of Mike P. Dean, para. 22-23. |
|  | Affidavit of Judson Martin, paras. 13 and 14. |
|  | Fifteenth Report of the Monitor, paras. 19 and 43. |

38.     Pöyry elected to table a unilateral deal with the Ontario and Quebec Plaintiffs outside of and with express notice of the Mediation Order.

39.     Although aware of the Mediation Order, the Kim Orr Objectors took no position on it and did not seek to participate in the mediation.

|  |  |
|---|---|
| **Reference** | Affidavit of Daniel Simard, para. 18. |

40.     The global mediation, directed by Justice Newbould, did not result in a settlement at that time. However, it was the catalyst for ongoing future discussions and dialogue amongst the parties, leading directly to the Ernst & Young Settlement.

|  |  |
|---|---|
| **Reference** | Affidavit of Mike P. Dean, para. 25-27. |
|  | Affidavit of Judson Martin, paras. 15 and 16. |

- 14 -

Fifteenth Report of the Monitor, para. 21.

41.    As those discussions continued, the Ontario Plaintiffs brought a motion in the CCAA

Proceedings on October 28, 2012 for an order, among other things, restricting the scope of the

stay of proceedings so that it would not apply to the third party defendants, including Ernst &

Young, and certain officers and directors.    The Court dismissed that motion, by way of

Endorsement dated November 6, 2012 (the "Lift Stay Endorsement").

**Reference**        Affidavit of Mike P. Dean, para. 28.

42.    In the Lift Stay Endorsement, the Court observed that the relevant stakeholders should

focus on the Plan and Sino-Forest's restructuring, including issues related to a then pending

appeal of the Equity Claims Order.    At that time, and notwithstanding the absence of a global

settlement, the Court was not prepared to lift the stay to allow the Class Actions to move ahead

separately from the CCAA Proceedings.    This decision allowed, and in many respects

encouraged, the Parties to continue their negotiations, which they did.

**Reference**        Affidavit of Mike P. Dean, para. 28.

43.    Following weeks of discussion, on November 27, 2012, Clifford Lax, Q.C., a highly

experienced senior litigator and mediator, conducted a mediation between Ernst & Young and

the Ontario Plaintiffs.    Ernst & Young and the Ontario Plaintiffs worked literally around the

clock for days.    The mediation and further negotiations resulted in the Minutes of Settlement.

**Reference**        Affidavit of Charles M. Wright, para. 64-65.

                    Fifteenth Report of the Monitor, Appendix
                    A.

44.    Immediately following execution of the Minutes of Settlement, Class Action Plaintiffs,

Ernst & Young, the Applicant, and the Ad Hoc Committee of Noteholders, with involvement of

the Monitor, engaged in intensive negotiations to draft and implement the requisite amendments

to the draft Plan in accordance with the Ernst & Young Settlement. Inclusion of the framework for the Ernst & Young Settlement and the Ernst & Young Release was a key condition of the Minutes of Settlement, without which there would be no settlement.

|  |  |
|---|---|
| **Reference** | Affidavit of Mike P. Dean, para. 31. |
|  | Affidavit of Judson Martin, paras. 17 and 19. |

45.    The Applicant viewed the Ernst & Young Settlement as a positive development in the restructuring and was therefore amendable to amending the Plan to provide for the mechanics and framework of the Ernst & Young Settlement and the Ernst & Young Release.    The Applicant, the Noteholders and the Monitor were strongly of the view that such amendments must be made urgently if they were to be included in the Plan, in view of the importance of an expedited restructuring to preserve asset value, and so that the Plan including the framework could be voted on at the meeting of creditors and sanctioned by this Court.

|  |  |
|---|---|
| **Reference** | Affidavit of Mike P. Dean, para. 31. |
|  | Affidavit of Judson Martin, paras. 17 and 19. |
|  | Fifteenth Report of the Monitor, para. 44. |

46.    The Plan, incorporating the Ernst & Young Release and the Ernst & Young Settlement, was approved by an overwhelming majority of the Applicant's creditors (exceeding the requisite double majority) and was sanctioned by this Honourable Court on December 10, 2012.

|  |  |
|---|---|
| **Reference** | Fifteenth Report of the Monitor, para. 27. |

47.    Article 12.5 of the Plan specifically provides for modifications to the Plan, both before and after the creditors' vote and Court sanction.  As required, the Company, the Noteholders and the Monitor consented to the modification of the Plan to include the framework for the Ernst &

Young Settlement and the Ernst & Young Release. The proxy forms (for all classes of creditors) specifically provided that a creditor's nominee could vote at the nominee's discretion with respect to any amendments or variations to the Plan. There was no restriction as to who could be designated as a creditor's nominee.

> **Reference**      Plan Filing Meeting Order dated August 31, 2012.

### (vi)    The Ernst & Young Settlement

48.    The Ernst & Young Settlement provides for the payment by Ernst & Young of CAD$117 million as a Settlement Fund, being the full monetary contribution by Ernst & Young to settle the Ernst & Young Claims. The Ernst & Young Settlement is conditional upon the terms set out in the Minutes of Settlement, including a court-approved global release granted by the CCAA Court and recognized through a Chapter 15 proceeding in the United States Bankruptcy Court.

49.    The Ernst & Young Settlement is also conditional upon the following steps, as set out at Article 11.1 of the Plan:

(a)    the granting of the Sanction Order sanctioning the Plan including the terms of the Ernst & Young Settlement and the Ernst & Young Release;

(b)    the issuance of the Settlement Trust Order;

(c)    the issuance of any other orders necessary to give effect to the Ernst & Young Settlement and the Ernst & Young Release, including the Chapter 15 recognition order;

(d)    the fulfillment of all conditions precedent in the Ernst & Young Settlement; and

- 17 -

(e)      all orders being final orders and not subject to further appeal or challenge.

**Reference**      Affidavit of Mike P. Dean, para. 33-34.

50.    The terms of the Ernst & Young Settlement, including in particular the Ernst & Young

Release, are integral to the comprehensive deal which was reached in consideration for, among

other things, Ernst & Young's payment of the Settlement Funds.

**Reference**      Affidavit of Mike P. Dean, para. 35.

51.    The Ernst & Young Settlement involves significant contributions as well as substantive

concessions on the part of Ernst & Young, by which it:

(a)      released its claims, including indemnification claims, against Sino-Forest, its
         subsidiaries and officers and directors;

(b)      gave up all rights to distributions under the Plan;

(c)      discontinued its motion seeking leave to appeal the Equity Claims Order and
         Court of Appeal decision;

(d)      facilitated Plan approval prior to the finalization of the settlement approval
         process;

(e)      withdrew its objections to the Plan and voted in favour of the Plan; and

(f)      supported the Plan Sanction Order.

**Reference**      Affidavit of Judson Martin, paras. 18 and
                   19.

                   Fifteenth Report of the Monitor, paras. 42
                   and 44.

52.    As a result of Ernst & Young's agreement to release all its claims, the Applicant and its creditors were able to avoid: (a) the expense and delay that would otherwise have been incurred in litigating its claims and (b) the dilution of the estate of the Applicant by virtue of distributions that would have otherwise been made to Ernst & Young.  The Applicants has confirmed that these contributions are significant.

| Reference | Affidavit of Judson Martin, paras. 19(b) and 21. |
|---|---|
|  | Fifteenth Report of the Monitor, paras. 42 and 44. |

53.    The Ernst & Young Settlement also provided the framework for future settlements under section 11.2 of the Plan.  With these amendments, the Underwriters and BDO ultimately supported the Plan and its approval at the Sanction Hearing.

| Reference | Affidavit of Judson Martin, para. 23. |
|---|---|
|  | Fifteenth Report of the Monitor, paras. 27 and 28. |

54.    As a result of actions of Ernst & Young, the Unresolved Claims (and accompanying reserves) against the Applicant have been reduced from $162.5 million to $1.2 million, providing additional consideration to the Applicant's creditors.

| Reference | Fifteenth Report of the Monitor, para. 32. |
|---|---|

55.    The Settlement Fund of $117 million falls well within the range of possible recoveries for the class members and reflects the litigation risks faced by both sides in the dispute.  In the absence of the Ernst & Young Settlement and Articles 11.1 and 11.2 of the Plan, there is a very real risk that claimants might recover nothing.

56.    There is a strong nexus between the Ernst & Young Release and the overall Plan:

(a)    the Claims against Ernst & Young to be released are rationally related to the purpose of the Plan, as the Plan could not proceed without resolving Ernst & Young's claims against the debtor and its subsidiaries;

(b)    the Ernst & Young Settlement materially contributed to the timing of the Plan and its implementation, a factor that the Applicant has consistently cited a vital to achieving a Plan and recovery for its creditors;

(c)    Ernst & Young is contributing in a tangible and realistic way, as its $117 million is available to all Securities Claimants. Many of the Securities Claimants (and all shareholders) would otherwise have received nothing as a result of Sino-Forest's restructuring; and

(d)    the Plan benefits both Sino-Forest and its stakeholders generally.

57.    The Plan already provides for other third party releases, including the Sino-Forest Subsidiaries and certain present and former directors and officers of Sino-Forest.

**Reference**    Affidavit of Judson Martin, para. 22.

58.    The Ernst & Young Settlement is supported by the Applicant, the Ad Hoc Committee of Sino-Forest Noteholders and the court-appointed Monitor. It is not opposed by any institutional holder of Sino-Forest notes or any institutional holder of Sino-Forest shares aside from the Kim Orr Objectors.

**Reference**    Affidavit of Judson Martin, para. 24.

Fifteenth Report of the Monitor, para. 45.

Reply Affidavit of Charles M. Wright, sworn January 22, 2013, para. 11-15 and Exhibit O

### (vii)    The Kim Orr Objectors

59.    A small minority of shareholders represented by Kim Orr oppose the Ernst & Young
Settlement.  The Monitor has also received a number of notices of objection pursuant to the
Order of this Court dated December 21, 2012.  Almost all of those who have submitted notices
of objection (other than the Objectors) have indicated that they will not attend the settlement
approval hearing on February 4, 2013.

| | |
|---|---|
| **Reference** | Affidavit of Eric S. Adelson, Exhibit C, para. 1. |
| | Affidavit of Daniel Simard, para. 7. |
| | Affidavit of Jemec, para. 6. |
| | Fourteenth Report of the Monitor. |

60.    According to Mr. Wright's evidence, all institutional investors who filed notices of
objection have withdrawn them, other than the Kim Orr Objectors.  Significant institutional
investors do not object, including Paulson & Co. Inc. (which held 14% of Sino-Forest's shares at
June 2, 2011) and Davis Selected Advisors LP (which held 12% of Sino-Forest's shares at June
2, 2011).    Notably, certain proposed representative plaintiffs at the carriage motion have not
objected to the settlement including Rochon Genova LLP clients Douglas Smith and Zhongjun
Gao.

| | |
|---|---|
| **Reference** | Supplemental affidavit of Charles Wright, Sworn January 22, 2013 at paras. 11-15 and Exhibit O. |

61.    The Kim Orr Objectors – who held (at most) 1.6% of the outstanding shares of Sino-
Forest as at June 2, 2011 – are also the only institutional shareholders purporting to "opt-out" in
the Ontario Class Action.  The other opt-outs constitute a small number of individual retail

investors.  The opt-out deadline, established by an Order made by the Honourable Justice Perell

in the Ontario Class Action on September 25, 2012 expired on January 15, 2013.

| | |
|---|---|
| **Reference** | Supplemental affidavit of Charles Wright, Sworn January 22, 2013 at paras. 16-19 and Exhibit P. |

62.     Each opt-out form filed by the Kim Orr Objectors contained the following statement:

> This opt-out is submitted on condition that, and is intended to be effective only to the extent that, any defendant in this proceeding does not receive an order in this proceeding, which order becomes final, releasing any claim against such defendant, which includes a claim asserted on an opt-out basis by [name of Objector].  Otherwise, this opt-out right would be wholly illusory.

| | |
|---|---|
| **Reference** | Opt-out forms filed by Kim Orr Objectors, Responding Motion Record of the Objectors, Adelson Affidavit, Exhibit "D", Simard Affidavit, Exhibit "H", and Jemec Affidavit, Exhibits "E", "F", "G" and "H" |

63.     Thus, the Kim Orr Objectors seek to opt out "on condition".  They seek to opt out unless

Ernst & Young Settlement is approved in which case they want to "opt-in".

64.     Most importantly, the Kim Orr Objectors have deliberately ignored these CCAA

Proceedings, the forum for the resolution of their claims relating to Sino-Forest.  The Kim Orr

Objectors decided to take no steps in the CCAA Proceedings prior to the sanction hearing in

December 2012.  The Kim Orr Objectors did not oppose any of the steps taken in the CCAA

Proceedings, including:

(a)     Third Party Stay Order dated May 8, 2012 – authorized the Applicant to enter into

agreements with the Ontario Plaintiffs and the Quebec Plaintiffs to toll certain

limitation periods in the class proceedings;

(b)     Claims Procedure Order dated May 14, 2012 – established a claims bar date and
procedure for determination and resolution of claims and, importantly, barred any
such claims (including claims against persons other than the Applicant who could
claim contribution or indemnity from the Applicant (i.e., Ernst & Young)).  The
Ontario Plaintiffs were authorized to file one representative Proof of Claim on
behalf of the proposed class (and the same relief was granted in respect of the
Quebec Class Action).  The proposed Class in each of the Ontario and Quebec
Class Actions includes the Kim Orr Objectors.  The Kim Orr Objectors did not
file a separate proof of claim.  Should they eschew the representative steps taken
by the Ontario Plaintiffs, any claim they might have had against Sino-Forest or
Ernst & Young is or may be barred; and

(c)     Mediation Order dated July 25, 2012 – ordered and defined the parties eligible to
participate in the mediation which proceeded on consent.  The mediation parties
were directed to participate with full authority to settle the Subject Claims (as
defined therein), as a result of which the Ontario Plaintiffs were granted full
authority to settle and resolve the claims, including the claims of the Kim Orr
Objectors.

**Reference**          Affidavit of Mike P. Dean, paras. 48-52

Affidavit of Eric S. Adelson, paras. 6-10.

Affidavit of Daniel Simard, paras. 15, 16, 18
and 20.

65.     With respect to the retail investors who have filed and maintain their notices of objection,
they (almost universally) articulate no substantive basis for their objection other than preference

for a higher (or full) recovery or a desire that this motion ought to await the outcome of other

proceedings (such as proceedings before the Ontario Securities Commission).

**Reference**        Fourteenth Report of the Monitor.

### (viii)   The Pöyry "Evidence"

66.    At the last minute Pöyry appears to have reversed course and provided to Kim Orr

information drawn from a Pöyry "proffer", which it refused to let the Ontario Plaintiffs disclose

in response to written questions from Kim Orr put to Charles Wright on his affidavit sworn in

these proceedings.

**Reference:**        Responses to Questions on Written Examination on Affidavit
of Christina Doria, Questions 1 and 2.

67.    Accordingly, the Ontario Plaintiffs have filed a supplementary response adding

information drawn from the Ernst & Young response to the Pöyry "proffer", both of which the

Ontario Plaintiffs had when negotiating the Ernst & Young Settlement.

**Reference:**        Supplementary Response to Questions on Written
Examination on Affidavit of Charles Wright, Question 6.

68.    The Pöyry "proffer" is not credible:

(a)    It attempts to rewrite the very discussion captured by its own staff in their minutes

of the meeting referred to;

(b)    The meeting in question addressed the transition to new accounting rules, not the

quality and sufficiency of SFC data;

(c)    After the meeting, Pöyry issued its valuation report without additional

qualification.

- 24 -

| Reference: | Supplementary Response to Questions on Written Examination on Affidavit of Charles Wright, Question 6 |
|---|---|

69.    All of this information formed part of the factual record on which the Ernst & Young Settlement was mediated and negotiated.

70.    In sum, the Ernst & Young Settlement is fair and reasonable.  It represents a significant contribution to the terms and timing of the CCAA Plan and should be approved by this Honourable Court pursuant to both the CCAA and the *Class Proceedings Act, 1992*.

71.    The Monitor has been involved throughout the negotiations and supports the Ernst & Young Settlement Agreement and the Ernst & Young Release, recommends Court approval, and has expressed its opinion that the relief sought results in a fair and reasonable outcome.

| Reference | Fifteenth Report of the Monitor, para. 45. |
|---|---|

72.    There is no basis upon this record to suggest otherwise.

## PART III - THE LAW

73.    This Court has jurisdiction to grant the approval requested.  The CCAA supervising judge has also been appointed as the class proceedings judge for this motion.

| Reference | Fifteenth Report of the Monitor, para. 39. |
|---|---|
| Reference | Letter from the Regional Senior Justice Then dated December 13, 2012. |

74.     The Ernst & Young Settlement and the Ernst & Young Release are fair and reasonable in the circumstances, benefit the CCAA stakeholders (including the Applicant and the creditors) and are rationally connected to the Plan.

75.     The submissions of the Kim Orr Objectors should be accorded no weight.  They elected not to participate in the CCAA process and all of its constituent steps, including the Court-ordered mediation and negotiation of the Ernst & Young Settlement.  Their stand-alone claim is or may be barred.

76.     A rejection of the Ernst & Young Settlement and the Ernst & Young Release would undermine the benefits for all other stakeholders, as the broad-based support for a the Plan and this motion demonstrate.

**(A)     The Ernst & Young Settlement and the Ernst & Young Release Meet the Test for Approval Under the CCAA**

77.     The CCAA is a "flexible statute", and the court has "jurisdiction to approve major transactions, including settlement agreements, during the stay period defined in the Initial Order."  The CCAA affords courts broad jurisdiction to make orders and "fill in the gaps in legislation so as to give effect to the objects of the CCAA."

> **Reference**      *Re Nortel Networks Corp.* (2010), 63 C.B.R. (5th) 44 at para. 67 and 70) (*"Re Nortel"*); *Re Canadian Red Cross Society* (1998), 5 C.B.R. (4th) 299 (Ont. Gen. Div.) at para. 43.

78.     As the Supreme Court has explained:

> "CCAA decisions are often based on discretionary grants of jurisdiction. The incremental exercise of judicial discretion in commercial courts under conditions one practitioner aptly describes as "the hothouse of real-time litigation" has been the primary method by which the CCAA has been adapted and has evolved to meet contemporary business and social needs (internal citation omitted).

...

> When large companies encounter difficulty, reorganizations become
> increasingly complex. CCAA courts have been called upon to innovate
> accordingly in exercising their jurisdiction beyond merely staying
> proceedings against the debtor to allow breathing room for
> reorganization. They have been asked to sanction measures for which
> there is no explicit authority in the CCAA".

| Reference | *Century Services Inv. v. Canada (Attorney General)*, [2010] S.C.R. 379 at paras. 58, 61. |
|---|---|

79.    The Ernst & Young Settlement is conditional upon the release of all claims asserted against Ernst & Young.

80.    Third party releases are now a common feature of complex restructurings under the CCAA.

| Reference | *Re Metcalfe & Mansfield Alternative Investments II Corp.*, (2008) 92 O.R. (3d) (C.A) ("*ATB Financial*"). |
|---|---|
| | *Re Nortel, supra.* |
| | *Robertson v. ProQuest Information and Learning Co.*, [2011] O.J. No. 1160 (S.C.J.) ("*Robertson*"). |
| | *Re Muscletech Research & Development Inc.*, (2007), 30 C.B.R. (5th) 59 (Ont. S.C.) ("*Muscletech*") |
| | *Re Grace Canada Inc.*, [2008] O.J. No. 4208 ("*Grace*"). |
| | *Re Allen Vanguard*, [2011] O.J. No. 3946 (S.C.J.). |

81.    The Court of Appeal has specifically confirmed that a third party release is justified, in cases such as this one, where the release forms part of a comprehensive compromise. As Justice Blair has stated:

> I believe the open-ended CCAA permits third-party releases that are
> reasonably related to the restructuring at issue because they are
> encompassed in the comprehensive terms "compromise" and
> "arrangement" and because of the double-voting majority and court

- 27 -

sanctioning statutory mechanism that makes them binding on unwilling creditors.

> **Reference**     *ATB Financial, supra,* at para. 78.

82.     Further, in recent years, a number of courts managing CCAA proceedings have approved class action settlements within the context of CCAA plans. The factors that militate in favour of approving the Ernst & Young Settlement within the CCAA context also apply to approval in the Class Action context.

> **Reference**     *Re Nortel, supra.*
>
>                    *Robertson, supra.*

83.     When assessing a settlement within the CCAA context, the Court looks at three factors:

   (a)     whether the settlement is fair and reasonable;

   (b)     whether it provides substantial benefits to other stakeholders; and

   (c)     whether it is consistent with the purpose and spirit of the CCAA.

The Ernst & Young Settlement clearly satisfies each of these factors.

> **Reference**     *Robertson, supra.*

84.     Where a settlement also provides for a release, such as here, the Courts have considered the following (related) factors to determine whether there is a sufficient nexus between the third party releases and the overall plan of arrangement:

   (a)     Are the claims to be released rationally related to the purpose of the plan;

   (b)     Are the claims to be released necessary for the success of the plan of arrangement;

(c)     Are the parties who have claims released against them contributing in a tangible and realistic way; and

(d)     Will the plan benefit the debtor and the creditors generally.

None of these factors is determinative; the Court must consider all of the factors in each case.

| Reference | *ATB Financial*, *supra,* at paras. 31, 71-72; *see also*, the application reasons at (2008), 43 C.B.R. (5th) 269 (Ont. S.C.) ("*ATB Financial – Application*"); *Re Nortel,* at para. 79. |
|---|---|

85.    In this case, each of these factors militates in favour of approval of the Ernst & Young Settlement and the Ernst & Young Release both under the CCAA and the *Class Proceedings Act, 1992*.

### (i)    The Ernst & Young Settlement is Procedurally Fair

86.    The parties were encouraged by this Court to enter into settlement to resolve the CCAA Proceedings and the class proceedings.

87.    This Court:

(a)     stayed the class actions against Sino-Forest and the Third Party Defendants, to allow the parties to focus on the Company's restructuring;

(b)     extended that stay from time to time, and refused to lift it as against the Third Party Defendants;

(c)     ordered that the Ontario Plaintiffs and Quebec Plaintiffs could file representative Proofs of Claim;

(d)     ordered the parties to mediation; and

(e)    encouraged further negotiation when the global mediation was not successful.

88.    The Ontario Plaintiffs participated with the authority to negotiate and resolve claims on behalf of the security holders of Sino-Forest, including their proposed Class.

89.    The reason to appoint representative counsel in the context of CCAA proceedings is clear.  It facilitates an orderly and efficient process, which provides that vulnerable interests are represented.  It avoids the multiplicity of representation of common interests.  This Court recognized the value in such representation in making the Claims Procedure Order and the Mediation Order.

               **Reference**    *Re Canwest*, [2010] O.J. No. 943 and [2009]
                                    O.J. No. 6437.

90.    The Applicant and the Monitor consistently recognized the interrelatedness of the class proceedings and the CCAA Proceedings.

               **Reference**    Fifteenth Report of the Monitor, para. 19

91.    The parties should be entitled to rely on the process established by the Court.  The Kim Orr Objectors have closely monitored the CCAA Proceedings, only to attempt to unravel at the last moment all the parties have accomplished.

- 30 -

92.     The process to reach the Ernst & Young Settlement was fair:

(a)     the interests of security holders were vigorously prosecuted by counsel to the Ontario Plaintiffs, both in the Class Action and the CCAA Proceeding;

(b)     the Ontario Plaintiffs are represented by three (3) highly respected and experienced law firms with securities, class action and CCAA experience;

(c)     counsel to the Ontario Plaintiffs retained U.S. counsel to advise them;

(d)     information regarding the CCAA Proceeding was readily (and immediately) available on the Monitor's website, including Court orders and endorsements, parties' materials and the Monitor's Reports;

(e)     information was also available on Sino-Forest's website and the websites of counsel to the Ontario Plaintiffs;

(f)     the CCAA Proceeding was followed by the media;

(g)     the parties had the benefit of a highly experienced sitting Judge of the Ontario Superior Court of Justice (Justice Newbould) and an experienced securities litigator (Clifford Lax) in the mediation context;

(h)     the entire process was overseen by the Court-appointed Monitor; and

(i)     the parties engaged in protracted and lengthy arm's-length negotiations, of which the Kim Orr Objectors were aware but, ignored.

**Reference**     *Nunes v. Air Transat A.T. Inc.*, [2005] O.J. No. 2527 (S.C.J.) at para. 7.

- 31 -

*Marcantonio v. TVI Pacific Inc.*, 2009 CarswellOnt 4850
(S.C.J.) at para 12.

*Parsons v. Canadian Red Cross Society*, 1999 CarswellOnt
2932 (S.C.J.) at paras. 71, 73.


**(ii)     The Ernst & Young Settlement is Fair and Reasonable**

93.     In reaching the Ernst & Young Settlement, the parties were represented by experienced
counsel who had access to and considered voluminous material in reaching their
recommendation.  These sources of information include:

(a)     all of Sino's public disclosure documents and other publicly available information
with respect to Sino;

(b)     trading data for Sino's securities;

(c)     non-public documents uploaded by Sino into the data-room established in the
CCAA Proceeding for purposes of a global mediation;

(d)     Ernst & Young's responsive insurance policies;

(e)     the input and opinions of accounting experts, insolvency law experts, and
insurance coverage experts;

(f)     the input and opinion of Frank C. Torchio, the President of Forensic Economics,
Inc., who has consulted or given independent damage opinions in securities fraud
lawsuits for over 20 years;

(g)     the Statement of Allegations issued against Sino and certain officers and directors

by the OSC, dated May 22, 2012;

(h)     the mediation briefs provided by the parties at the global mediation in September,

2012 and by Ernst & Young LLP at the mediation in November, 2012; and

(i)     input from experienced U.S. securities counsel, Kessler Topaz Meltzer & Check,

LLP, and discussions with US Plaintiffs' Counsel.

**Reference**        Affidavit of Charles Wright, para 87.

94.    On the basis of this extensive information, experienced class counsel entered into this

settlement believing it to be fair and reasonable.   They are familiar with the facts, risks and

benefits of the settlement.

95.    Absent the Ernst & Young Settlement:

(a)     recoverable damages at trial could be materially lower if the plaintiffs were

successful at all;

(b)     any recoverable damages would be split amongst all defendants, and not just

payable by Ernst & Young;

(c)     as a term of the Plan, the Ad Hoc Committee of Purchasers negotiated a cap of

$150 million for claims by all noteholders in the various class actions as against

all remaining defendants, where those claims were indemnified.   Therefore,

noteholder recovery was effectively limited to a maximum of $150 million;

(d)      for statutory claims under the *OSA*, certain damages limits apply, including a cap on all secondary market claims of the greater of $1 million or fees earned, absent a finding of knowing misrepresentation, a significant burden for the plaintiffs;

(e)      in advancing the common law claims on behalf of secondary market shareholders, the class faced a significant hurdle in establishing that Ernst & Young owed any duty of care to the class members, given the Supreme Court of Canada's decision in *Hercules*. Even if the Class established that Ernst & Young owed a duty of care to the shareholders, there remained the challenge of establishing that Ernst & Young breached the standard of care;

(f)      the Ontario Securities Commission has alleged that Ernst & Young was misled by the Company and its senior management, and certain material facts were not disclosed by the Company to its auditors. If this fact was proven, the plaintiffs might not succeed against Ernst & Young; and

(g)      with respect to the claims of negligence and negligent misrepresentation, the plaintiffs would be required to establish reliance by each individual class member, which element is rarely certified in class proceedings in Ontario.

          **Reference**      Affidavit of Charles Wright, para. 91-117.

96.      The plaintiffs in the U.S. Action also face significant obstacles to success or any recovery, as described in the affidavit of Adam Pritchard. These challenges would include establishing a cause of action, reliance, and damages.

          **Reference**      Affidavit of Adam C. Pritchard, para. 3.

97.    Class counsel's recommendation is supported by neutral third parties, including the
Applicant, the Noteholders and most importantly the Monitor.

98.    The parties should be entitled to rely on the process established by the Court. In turn, the
Court can rely on the business judgment of experienced class counsel.

99.    These were significant risks to proceeding both for the class members and for Sino-Forest
and the Sino-Forest Subsidiaries (and the newly constituted Newco / Newco II). By eliminating
these risks, the Ernst & Young Settlement is clearly fair and reasonable.

100.    The efficacy of a process in which stakeholders demonstrate a willingness to compromise
is in stark contrast to other restructurings before this Court where unresolved competing claims
serve to paralyze the proceeding to the detriment of all stakeholders.

101.    The Ernst & Young Settlement is precisely the type of compromise that the CCAA is
designed to promote. Prior to entering CCAA protection, Sino-Forest faced claims worth
billions of dollars, stakeholders had no ability to ascertain if they would ever collect on their
damages claims, numerous parties pointed fingers at each other in an effort to untangle a series
of complex actions, the Company was in limbo and there was uncertainty as to whether it could
continue operations or even realize on its assets. The Ernst & Young Settlement has provided
recovery to the Securities Claimants, simplified the web of claims and cross-claims, and enabled
the Company to emerge as Newco/Newco II in a timely way and with potential viability. This
result is emblematic of the goals promoted by the CCAA.

- 35 -

### (iii)    The Ernst & Young Release is Fair and Reasonable

102.    In assessing whether the release of any third parties pursuant to a plan of compromise is fair and reasonable, the Court will assess if there is "a reasonable connection between the third party claim being compromised in the plan and the restructuring achieved by the plan to warrant inclusion of the third party release in the plan." This test is referred to as the "nexus test".

     **Reference**     *ATB Financial, supra,* at para. 70.

103.    The connection between the claims against Ernst & Young and the purpose of the Plan has been recognized by this Honourable Court in the various procedural steps it has ordered, as set out above. The inclusion of the framework for the Ernst & Young Settlement and the Ernst & Young Release in the Plan itself is further evidence of the nexus between the claims against Ernst & Young and the claims from which the Plan aims to free Newco/Newco II.

     **Reference**     Affidavit of Mike P. Dean, paras. 28-29.

104.    There is an obvious connection between the release of claims against Ernst & Young and the compensation of creditors. The plaintiffs in the litigation are shareholders and noteholders of Sino-Forest. These plaintiffs have claims to assert against Sino-Forest that are being directly satisfied with the payment of $117 million by Ernst & Young.

     **Reference**     Minutes of Settlement, dated November 28, 2012.

105.    In *Nortel Networks*, the Court noted that the releases benefitted creditors generally because they "reduce[d] the risk of litigation, protect[ed] [Nortel] against potential contribution claims and indemnity claims . . . and reduce[d] the risk of delay caused by potentially complex litigation and associated depletion of assets to fund potentially significant litigation costs."

     **Reference**     *Re Nortel, supra,* at para. 81.

106.    Furthermore, the Court of Appeal has confirmed that parties are entitled to settle allegations of fraud and to include releases of such claims as part of a settlement.  As the Court of Appeal explained, "there is no legal impediment to granting the release of an antecedent claim in fraud, provided the claim is in the contemplation of the parties to the release at the time it is given".

| Reference | *ATB Financial, supra*, at para. 111. |
|---|---|
| | *Fotinis Restaurant Corp. v. White Spot Ltd.* (1998), 1998 Carswell BC 543, (B.C.S.C.) at para. 9. |

107.    In the proposed Ontario class action, the Ontario Plaintiffs assert, among other things, that Ernst & Young made knowing, or was reckless to, misrepresentations in its auditors' report and the Company's financial statements.  Claims of fraud were asserted in the other claims commenced against Ernst & Young.  The settlement of these is integral to the Ernst & Young Settlement and the Ernst & Young Release.  The claims having been made, and been dealt with in the negotiations between the parties, they must be compromised.  The plaintiffs were fully aware of the scope of their allegations – and the risks of proving them – in reaching this settlement.  Accordingly, it is appropriate for the Court to approve the Ernst & Young Settlement and the Ernst & Young Release that include the settlement and release of the fraud allegations.

108.    A final point on the approval of the settlement and the release:  the settlement as a whole, including the release, must be approved or rejected.  The court cannot modify the terms of a proposed settlement.  In deciding whether to reject a settlement, the court should consider whether doing so would put the settlement in "jeopardy of being unraveled."  There is no obligation on parties to resume discussions and it could be that the parties have reached their limits in negotiations and will backtrack from their positions or abandon the effort.  This result

would be contrary to the widely held view that the resolution of complex litigation through settlement is encouraged by the courts and favoured by public policy.

| | |
|---|---|
| **Reference** | *Dabbs v Sun Life Assurance Company of Canada,* [1998] O.J. No. 1598 (Gen. Div.) at paras. 10, 14; and (1998), 40 O.R. (3d) 429 (Gen. Div.); aff'd (1998), 41 O.R. (3d) 97 (C.A.); leave to appeal to SCC denied [1998] S.C.C.A No. 372. |
| **Reference** | *Semple v. Canada (Attorney General),* 2006 CarswellMan 482 (QB) at para. 26. |

**(iv)    The Ernst & Young Settlement Provides Substantial Benefits to Sino-Forest and all other Stakeholders**

109.    All CCAA settlements require compromise.  Generally, each party forfeits some interests in order to yield a result that benefits the whole.  In the case of the Sino-Forest Plan, this is true for all stakeholders.

110.    The Ernst & Young Settlement provides substantial benefits to Sino-Forest and to all other stakeholders.

111.    Ernst & Young's $117 million Settlement Fund represents the sole monetary contribution to Sino-Forest's restructuring and the sole mechanism by which security holders other than current noteholders might receive distribution under the Plan.  As such, the Ernst & Young Settlement represents a tangible and significant contribution to the Plan.

112.    The release of claims by Ernst & Young has allowed Sino-Forest and the Sino-Forest Subsidiaries to contribute their assets to the restructuring, unencumbered by claims totalling billions of dollars.  As Sino-Forest is a holding company with no material assets of its own, the unencumbered participation of the Sino-Forest Subsidiaries is crucial to the restructuring.  As set out in the affidavit of W. Judson Martin, the claims Ernst & Young asserted against Sino-Forest

and the Sino-Forest Subsidiaries "had to be addressed as part of this restructuring."   Throughout this process, the Monitor's Reports have consistently characterized the class action allegations (and the related claims for indemnity from the third parties such as Ernst & Young) against Sino-Forest and its senior management as "the gating issue in all material respects."

<div style="margin-left: 2em;">
**Reference**   Affidavit of Mike P. Dean, para. 21.

        Affidavit of W. Judson Martin, para. 9.
</div>

113. Where, as here, a double majority of creditors has approved a Plan, courts are usually unwilling to interfere with creditors' judgment of whether they derive a benefit.

<div style="margin-left: 2em;">
**Reference**   *Muscletech, supra*, at para. 18.

        *Re Olympia & York Developments Ltd.,* (1993), 17 C.B.R.
        (3d) 1 (Ont. Gen. Div.) at paras. 36-40.

        *ATB* Financial – *Application, supra*, at paras. 137-138.
</div>

114. Moreover, courts have recognized a broad variety of contributions by a third party sufficient to permit them a release under a plan of compromise and arrangement.   These contributions include: assuming increased risk, disclosing proprietary information, provision of below-cost financing, surrender of contractual rights and "other contributions".   Where the proposed third party contribution constitutes the entirety of the distribution to a class of creditors, as here, the contribution is especially significant.   This prong of the test is accordingly satisfied.

<div style="margin-left: 2em;">
**Reference**   *ATB Financial, supra*, at paras. 31 and 71; *Muscletech,
        supra*, at paras. 19-21.
</div>

115. The Applicant and the Monitor specifically and consistently identified timing and delay as critical factors throughout the CCAA process.   It has been readily acknowledged that reaching a timely resolution of the claims was "critical to the success of this restructuring, to the maximization of value and to the preservation of assets."   The Monitor's Reports have also

highlighted that the "urgency of these CCAA Proceedings" was "critical to the maximization of assets for the stakeholders and the chances of a viable outcome."

| | |
|---|---|
| Reference | Affidavit of W. Judson Martin, para. 12. |
| | Affidavit of Mike P. Dean, para. 20. |
| | Fifteenth Report of the Monitor, para. 15. |

116.    The claims against Ernst & Young and the indemnity claims asserted by Ernst & Young would, absent the Ernst & Young Settlement, have had to be finally determined before the CCAA claims could be quantified.   These steps had the potential to significantly delay the CCAA proceedings.

| | |
|---|---|
| Reference | Affidavit of W. Judson Martin, para. 19(b)(iii). |

117.    Courts have frequently held that a reduced risk of future litigation against debtors, their directors, third parties and other stakeholders constitutes a benefit.   Where the claims being released may take years to resolve, are risky, expensive, or otherwise uncertain of success, the benefit that accrues to creditors in having them settled is even greater.

| | |
|---|---|
| Reference | *Re Nortel, supra*, at paras. 73, 81. |
| | *Muscletech, supra*, at paras. 19-21. |

118.    The Ernst & Young Settlement, and the follow-on support of the Plan by the Underwriters and BDO, was an important contribution to the timely meeting of creditors and the ultimate sanctioning of the Plan.   In the result, implementation of the Plan is imminent, less than 10 months after the Applicant's initial filing.

119.    All relevant factors therefore militate in favour of approving the settlement, both pursuant to the CCAA and the *Class Proceedings Act*, 1992.

**(B)    THE OBJECTIONS RAISED BY A SMALL MINORITY OF SHAREHOLDERS
SHOULD NOT IMPEDE APPROVAL OF THE ERNST & YOUNG
SETTLEMENT**

120.    Five shareholders ask this Court not to approve the Ernst & Young Settlement.    The

objecting shareholders assert that the Plan subverts their rights to pursue their claims against

Ernst & Young, among others.

### (i)    Claims are Frequently Compromised in the CCAA Context

121.    The principal complaint of the Kim Orr Objectors is that the Ernst & Young Settlement

deprives them of their procedural opt-out rights in the proposed class proceeding. However, the

Kim Orr Objectors ignore the fact that the Ernst & Young Settlement is part of a CCAA plan

process.

122.    Claims, including contingent claims, are regularly compromised and settled within

CCAA proceedings.    This includes outstanding litigation claims against the debtor company and

third parties.    Such compromises fully and finally dispose of such claims and it follows that there

are no continuing procedural or other rights in such proceedings; they are at an end.    There are

no "opt-outs" in the CCAA.

123.    Ernst & Young has paid a premium for the finality of a CCAA process.    Without the

CCAA release, there is no settlement.

124.    Moreover, the Kim Orr Objectors have adduced no evidence on the merits of the

settlement.    They cannot point to any prejudice in not being able to "opt out".    Indeed they

specifically seek to reserve their rights to "opt-in" and share in the spoils.

125.    In the absence of any substantive prejudice, the Kim Orr Objectors make entirely procedural arguments, namely that they are in an informational deficit.  Notwithstanding their complaint, the Kim Orr Objectors have to this day never made any requests of Ernst & Young for documentation or information related to the substance of the Ernst & Young Claims.

126.    Finally, the Kim Orr Objectors seek to rely upon possible future settlement under Article 11.2 of the Plan to say that the Ernst & Young Settlement is unfair.  It is premature and misplaced to raise those arguments in relation to the Ernst & Young Settlement. The time and place for such arguments occurs if and when the Court is asked to approve those settlements.  It is not before the Court on this motion.

### (ii)    The Kim Orr Objectors Made No Attempt to Participate in the Negotiation Process

127.    The affidavit filed on behalf of Invesco suggests that they had no notice that the CCAA process could affect their claims against a third party such as Ernst & Young.

128.    In fact, the Kim Orr Objectors were aware of the CCAA Proceedings, the various representation motions brought by the Ontario Plaintiffs and the Mediation Order.  They were or ought to have been aware that the compromise of claims against third parties was a real possibility, and one fostered by the process.  The objecting shareholders were aware of and could have sought to participate in important steps in the process, including the Third Party Stay Order, the Claims Procedure Order, the Mediation Order and the Data Room Order.  They did not.  Any claims of ignorance as to the consequences of their failure do not ring true.

**Reference**        Affidavit of Mike P. Dean, para. 48-52.

129.    The Kim Orr Objectors have closely monitored the CCAA Proceedings and by any account "lay in the weeds".  Their late objections should be accorded no weight.

### (iii)    The Objecting Shareholders Represent a Very Small Minority

130.    The Kim Orr Objectors collectively held approximately 1.62% of the outstanding shares. This context is important in assessing the objections raised.   A very small minority of shareholders is seeking to derail the entire CCAA compromise on the hope that, in so doing, they can achieve a better result for themselves than the one reached for the shareholders generally through protracted and arm's length negotiations.   Settlements during CCAA stay periods are often approved "even over the objections of one or more parties, because the court must act to the greater good," and the Court should do so in this case.

|  |  |
|---|---|
| **Reference** | *Re Calpine Canada Energy Ltd.* (2007), 35 C.B.R. (5th) 27; 80 Alta. L.R. (4th) 60 at para. 38. |

131.    The Kim Orr Objectors have no evidence to support the claim that a better result could be achieved, but assert only that they do not have enough information to know.  Given that they could have participated in the CCAA process and mediation discussions (of which they were keenly aware), and have not even today requested any information from Ernst & Young, electing instead to wait until a deal was struck to enter the ring, these objections should be given no weight.

### (iv)    The Objecting Shareholders Are Too late to Attack the Plan Vote

132.    The Kim Orr Objectors suggested that the Plan vote was somehow affected by the addition of Article 11.1 to the Plan.

133.    Whether or not they have any status to make the argument it should have been raised at the Sanction motion, not now.

134.    In any event, no voting creditor has made any complaint about the addition of Article 11.1 of the Plan.

## PART IV - ORDER REQUESTED

135.    Ernst & Young requests an Order approving the Ernst & Young Settlement including the Ernst & Young Release.

**ALL OF WHICH IS RESPECTFULLY SUBMITTED** this 30th day of January, 2013.

_____
Peter H. Griffin

_____
Peter J. Osborne

_____
Shara N. Roy

- 44 -

**LENCZNER SLAGHT ROYCE SMITH GRIFFIN LLP**

Barristers
Suite 2600
130 Adelaide Street West
Toronto ON  M5H 3P5

Peter H. Griffin (19527Q)
Tel:      (416) 865-2921
Fax:     (416) 865-3558
Email:   pgriffin@litigate.com

Peter J. Osborne (33420C)
Tel:      (416) 865-3094
Fax:     (416) 865-3974
Email:   posborne@litigate.com

Shara N. Roy (49950H)
Tel:      (416) 865-2942
Fax:     (416) 865-3973
Email:   sroy@litigate.com

Lawyers for Ernst & Young LLP

- 45 -

## SCHEDULE "A"

### List of Authorities

1.  Plan Filing and Meeting Order of Morawetz, J. dated August 31, 2012

2.  *Re Nortel Networks Corp.* (2010), 63 C.B.R. (5th) 44

3.  *Re Canadian Red Cross Society* (1998), 5 C.B.R. (4th) 299 (Ont. Gen. Div.)

4.  *Century Services Inc. v. Canada (Attorney General),* [2010] S.C.R. 379

5.  *Re Metcalfe & Mansfield Alternative Investments II Corp.* (2008), 92 O.R. (3d) 513 (C.A.)

6.  *Robertson v. ProQuest Information and Learning Co.,* [2011] O.J. No. 1160 (S.C.J)

7.  *Re Muscletech Research & Development Inc.,* (2007), 20 C.B.R. (5th) 59 (Ont. S.C.)

8.  *Re Grace Canada Inc.*, [2008] O.J. No. 4208

9.  *Re Allen Vanguard,* [2011] O.J. No. 3946 (S.C.J.)

10. *ATB Financial v. Metcalfe & Mansfield Alternative Investments II Corp.,* (2008), 43 C.B.R. (5th) 269 (Ont. S.C.)

11. *Re Canwest,* [2010] O.J No. 943

12. *Re Canwest,* [2009] O.J. No. 6437

13. *Nunes v. Air Transat A.T. Inc.,* [2005] O.J No. 2527 (S.C.J.)

14. *Marcantonio v. TVI Pacific Inc.,* 2009 CarswellOnt 4850 (S.C.J.)

15. *Parsons v. Canadian Red Cross Society,* 1999 CarswellOnt 2932 (S.C.J.)

16. *Fotinis Restaurant Corp. v. White Spot Ltd.* 1998 CarswellBC 543 (B.C.S.C)

17. *Dabbs v. Sun Life Assurance Company of Canada,* [1998] O.J. No. 1598 (Gen. Div.)

18. *Dabbs v. Sun Life Assurance Company of Canada,* (1998), 40 O.R. (3d) 429

19. *Semple v. Canada (Attorney General),* 2006 CarswellMan 482 (QB)

20. *Re Olympia & York Developments Ltd.*, (1993), 17 C.B.R. (3d) 1 (Ont. Gen. Div.)

21. *Re Calpine Canada Energy Ltd.* (2007), 35 C.B.R. (5th)

## SCHEDULE "B"
### List of Legislation

*Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36,

**IN THE MATTER OF THE** *COMPANIES' CREDITORS ARRANGEMENT ACT*, **R.S.C. 1985, c. C-36, AS AMENDED, AND IN THE MATTER OF A PLAN OF COMPRISE OR ARRANGEMENT OF SINO-FOREST CORPORATION**

Court File No. CV-12-9667-00-CL

| | |
|---|---|
| THE TRUSTEES OF THE LABOURERS. et al. | SINO-FOREST CORPORATION, et al |
| Plaintiffs | Defendants |

Court File No. CV-11-431153-00-CP

---

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

PROCEEDING COMMENCED AT TORONTO

---

**FACTUM OF ERNST & YOUNG LLP**
**(Motion to Approve the Ernst & Young Settlement**
**February 4, 2013)**

---

**LENCZNER SLAGHT ROYCE**
**SMITH GRIFFIN LLP**
Barristers
Suite 2600
130 Adelaide Street West
Toronto ON  M5H 3P5

Peter H. Griffin (19527Q)
Tel:        (416) 865-2921
Fax: (416) 865-3558
Email:        pgriffin@litigate.com
Peter J. Osborne (33420C)
Tel:        (416) 865-3094
Fax: (416) 865-3974
Email:        posborne@litigate.com
Shara N. Roy (49950H)
Tel:        (416) 865-2942
Fax: (416) 865-3973
Email:        sroy@litigate.com

Lawyers for Ernst & Young LLP