Court of Appeal File No.: M42068
Court File No. CV-12-9667-00-CL

# COURT OF APPEAL FOR ONTARIO

## IN THE MATTER OF THE *COMPANIES CREDITORS' ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

## AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF SINO-FOREST CORPORATION

Applicant

APPLICATION UNDER THE *COMPANIES CREDITORS' ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

## RESPONDING FACTUM OF ERNST & YOUNG LLP
### (Motion for Leave to Appeal from Sanction Order)

February 22, 2013

**LENCZNER SLAGHT ROYCE SMITH GRIFFIN LLP**
Barristers
Suite 2600
130 Adelaide Street West
Toronto ON  M5H 3P5

Peter H. Griffin (19527Q)
Tel:     (416) 865-2921
Fax:     (416) 865-3558
Email:   pgriffin@litigate.com
Peter J. Osborne (33420C)
Tel:     (416) 865-3094
Fax:     (416) 865-3974
Email:   posborne@litigate.com
Shara N. Roy (49950H)
Tel:     (416) 865-2942
Fax:     (416) 865-3973
Email:   sroy@litigate.com

Lawyers for Ernst & Young LLP

TO:        **ATTACHED SERVICE LIST**

## PART I - OVERVIEW

1.      On December 10, 2012, the Honourable Justice Morawetz sanctioned the plan of compromise and arrangement (the "Plan") under the *Companies Creditors' Arrangement Act*, R.S.C. 1985, c. C-36 (the "CCAA") of Sino-Forest Corporation ("Sino-Forest" or the "Applicant"). The Plan received the approval of an overwhelming majority of the Applicant's creditors.

2.      In accordance with its terms, the Plan was implemented on January 30, 2013 and distributions have been made, debts have been released and the capital structure of Sino-Forest has been restructured. The moving parties (the "Kim Orr Objectors") did not seek to stay or otherwise prevent the Plan from being implemented.

3.      The proposed appeal of the Sanction Order will achieve no useful purpose and leave should not be granted:

(a)      The proposed appeal is moot. The Plan has been implemented and the Applicant has been restructured. Having allowed the Plan to be implemented, the Kim Orr Objectors cannot now properly seek to challenge it on appeal;

(b)      The issues that are proposed to be raised on appeal, including the fairness of the Ernst & Young Settlement and the Ernst & Young Release (as those terms are defined in the Plan), were the subject matter of a separate hearing before Justice Morawetz on February 4, 2013. As of the date of this factum, Justice Morawetz has not released his decision;

(c)     The proposed appeal seeks to have this Court redraft and recraft the Plan, specifically in respect of Article 11. That is not the role of this Court. The Plan must be considered as a whole and the Kim Orr Objectors' request that certain substantive provisions be amended or severed should be dismissed; and

(d)     The Kim Orr Objectors cannot meet the test for leave to appeal.

4.    As result, this proposed appeal, brought on behalf of a very small number of shareholders of the Applicant, should be dismissed.

## PART II - THE FACTS

5.    Ernst & Young LLP ("Ernst & Young") was retained as Sino-Forest's auditor – from 2007 until it resigned on April 4, 2012.

|  |  |
|---|---|
| **Reference** | Affidavit of W. Judson Martin sworn November 29, 2012, at para. 61 ("November 29 Martin Affidavit"), Responding Motion Record of Ernst & Young LLP on Motion for Leave to Appeal Sanction Order ("E&Y Motion Record"), Tab 16, page 411. |

6.    On June 2, 2011, a short-seller, Muddy Waters LLC, issued a report which purported to reveal alleged fraud at the Company and cast various aspersions on the Company's advisors. In the wake of that report, Sino-Forest's share price plummeted.

|  |  |
|---|---|
| **Reference** | November 29 Martin Affidavit at para. 8, E&Y Motion Record, Tab 16, page 396. |

7.    In the wake of the Muddy Waters Report, Sino-Forest, Ernst & Young and a variety of other parties were served with a multitude of class action claims in Ontario, Quebec and New York (the "Class Actions"). On July 20, 2011, the Ontario Action was commenced under the *Class Proceedings Act, 1992* (the "*CPA*") against Sino-Forest, Ernst & Young and other

defendants on behalf of persons who had purchased Sino-Forest securities in the period from
March 19, 2007 to June 2, 2011.

> **Reference**    November 29 Martin Affidavit at paras. 8, 46, 49-50 E&Y
> Motion Record, Tab 16, pages 396, 408-409.
>
> Fresh as Amended Statement of Claim, Court File No. CV-11-
> 431153-CP, Exhibit C to the November 29 Martin Affidavit,
> E&Y Motion Record, Tab 16C, page 511.

8.      Two other proposed class proceedings were commenced in Ontario relating to Sino-
Forest.  Smith et al. v. Sino Forest Corporation et al., commenced on June 8, 2011 (the "Smith
Action") and Northwest & Ethical Investments L.P. et al. v. Sino-Forest Corporation et al.,
commenced on September 26, 2011 (the "Northwest Action").  Rochon Genova LLP acted for
the plaintiffs in the Smith Action, and Kim Orr LLP acted for the plaintiffs in the Northwest
Action.  Kim Orr acts for the Kim Orr Objectors on this motion for leave to appeal.  The Kim
Orr Objectors include Northwest & Ethical Investments L.P. and other proposed representative
plaintiffs.

> **Reference**    Reasons for Decision of Justice Perell dated
> January 6, 2012, E&Y Motion Record, Tab 15,
> page 337.

9.      In December 2011, a carriage motion was argued to determine which of the three actions
in Ontario should be permitted to proceed and which should be stayed.  By Order dated January
6, 2012, the Honourable Justice Perell granted carriage to the Ontario Plaintiffs.  The court
stayed the Smith Action and the Northwest Action, and appointed Siskinds LLP and Koskie
Minsky LLP to prosecute the Ontario Action on behalf of the proposed class.  Following that
decision, and pursuant to the Court's order, David Grant, a noteholder, was added as a proposed

representative plaintiff and the scope of the class was expanded to its current scope, which includes noteholders as at June 2, 2011.

> **Reference**  Carriage Order of Justice Perell dated January 6, 2012, E&Y Motion Record, Tab 14, page 328 and Reasons for Decision of Justice Perell dated January 6, 2012, E&Y Motion Record, Tab 15, page 337.
>
> November 29 Martin Affidavit at para. 47, E&Y Motion Record, Tab 16, page 408.

10.     The plaintiffs in the Ontario Class Action claim damages in the aggregate, and against all defendants, of $9.2 billion on behalf of resident and non-resident shareholders and noteholders. The causes of action alleged are both statutory, under the *Securities Act* (Ontario), R.S.O. 1990, c.S-5 and at common law, in negligence and negligent or reckless misrepresentation. The claims generally are:

(a)     Against Sino-Forest, that it made a series of misrepresentations in respect of its timber assets;

(b)     Against Ernst & Young and the other third party defendants that they failed to detect these misrepresentations and in particular that Ernst & Young's audit did not comply with Canadian generally accepted auditing standards; and

(c)     That Ernst & Young (as well as others) knew or in the alternative was wilfully blind to the fact that the representation that Sino-Forest's financial statements complied with GAAP was false.

Similar claims are advanced in the Quebec and U.S. actions, (together with the Ontario Class Action, the "Class Actions").

Reference    Fresh as Amended Statement of Claim, Court
File No. CV-11-431153-CP, Exhibit C to the
November 29 Martin Affidavit, E&Y Motion
Record, Tab 16C, page 511.

November 29 Martin Affidavit at paras. 47-50,
E&Y Motion Record, Tab 16, pages 408-409.

11.    On March 30, 2012, due primarily to the claims in the Class Actions, Sino-Forest sought

and obtained protection from its creditors pursuant to the CCAA (the "Initial Order").  Sino-

Forest currently remains in CCAA insolvency proceedings in the Ontario Superior Court of

Justice (the "CCAA Proceeding"), although the Plan has now been implemented and the

ownership of Sino-Forest had been substantially restructured.  The Initial Order made in the

CCAA Proceeding stayed the Class Actions against the Company, its subsidiaries and its

directors and officers.

Reference    Fifteenth Report of the Monitor at para. 15,
E&Y Motion Record, Tab 23, page 967.

12.    On May 8, 2012, the CCAA Court ordered, on consent of the parties, that the Stay in

place since March 30, 2012 did extend to the third party defendants to the Ontario Class Action,

including Ernst & Young (the "Third Party Stay Order").

Reference    Third Party Stay Order of Justice Morawetz,
dated May 8, 2012, E&Y Motion Record, Tab 5,
page 170.

13.    On May 14, 2012, the CCAA Court granted a claims procedure order (the "Claims

Procedure Order").  The motion for the Claims Procedure Order proceeded on an unopposed

basis following extensive discussions amongst the stakeholders including the Company, Ernst &

Young, the Ontario Plaintiffs and the other third party defendants including the syndicate of

underwriters for Sino-Forest's various debt and equity offerings (the "Underwriters") and Sino-Forest's previous auditors, BDO Limited ("BDO").

| | |
|---|---|
| **Reference** | Claims Procedure Order of Justice Morawetz dated May 14, 2012, E&Y Motion Record, Tab 6, page 174 and Endorsement of Justice Morawetz re Claims Procedure, E&Y Motion Record, Tab 7, page 223. |
| | November 29 Martin Affidavit at paras. 39-41, E&Y Motion Record, Tab 16, pages 405-406. |

14.    The Claims Procedure Order established a claims bar date pursuant to which any party wishing to file a proof of claim was required to do so.  The Claims Procedure Order called for claims against Sino-Forest and (although they were not Applicants) the Sino-Forest Subsidiaries (as defined in the Claims Procedure Order) and separately for claims against the directors and officers of Sino-Forest.  The claims against the Sino-Forest Subsidiaries were of particular importance to the Applicant, and the Applicant's position was that no restructuring could proceed without dealing with those claims.

| | |
|---|---|
| **Reference** | Claims Procedure Order of Justice Morawetz dated May 14, 2012, E&Y Motion Record, Tab 6, page 174 and Endorsement of Justice Morawetz re Claims Procedure, E&Y Motion Record, Tab 7, page 223. |
| | November 29 Martin Affidavit at paras. 40-41, E&Y Motion Record, Tab 16, page 405-406. |
| | Thirteenth Report of the Monitor, E&Y Motion Record, Tab 18, page 865. |

15.    Ernst & Young filed Proofs of Claim with the Monitor in accordance with the claims procedure process setting out its claims for contribution and indemnity from Sino-Forest, its directors and officers and subsidiaries:

(a)   Contractual claims of indemnification for all relevant years, in respect of work
done in connection with its annual audits as well as related to prospectus and note
offerings; and

(b)   Statutory and common law claims of contribution and/or indemnity for all
relevant years.

Reference        Ernst & Young LLP Proofs of Claim, E&Y
Motion Record, Tabs 17A and 17B, pages 805
and 845.

Thirteenth Report of the Monitor, E&Y Motion
Record, Tab 17, page 865.

16.    The Ad Hoc Committee of Purchasers of the Applicant's Securities, including the
Ontario Plaintiffs (augmented by their representation of the Quebec Class Action Plaintiffs),
filed a Proof of Claim in the CCAA Proceedings on behalf of all putative class members in the
Ontario Class Action, as expressly provided by the Claims Procedure Order.   The Kim Orr
Objectors are members of the putative class.  None of them filed a Proof of Claim on their own
behalf.

Reference        Thirteenth Report of the Monitor, E&Y Motion
Record, Tab 17, page 865.

17.    On July 25, 2012, on a motion made by the Class Action Plaintiffs, the CCAA Court
ordered that the parties, including the Applicant, the Class Action Plaintiffs, the Ad Hoc
Committee of Noteholders, the Monitor, the Third Party Defendants (including E&Y) and any
insurers (the "Mediation Parties"), participate in a mediation process (the "Mediation Order").

Reference        November 29 Martin Affidavit at para. 84, E&Y
Motion Record, Tab 16, page 416.

Mediation Order of Justice Morawetz dated July
25, 2012, E&Y Motion Record, Tab 9, page 243.

18.     The Mediation Order, which was unopposed by any party:

(a)     required the Mediation Parties to attend "with full authority to settle the Subject
Claims.";

(b)     the Subject Claims were defined in the Mediation Order as the claims of the
Plaintiffs against the Applicant and the Third Party Defendants as set out in the
statements of claim in the Ontario Class Action and the Quebec Class Action and
any and all related claims;

(c)     contemplated access to a confidential database of documents, to facilitate the
mediation; and

(d)     created confidence amongst the Mediation Parties that should they reach a
settlement, it would be resolved in the context of the CCAA.

**Reference**     Mediation Order of Justice Morawetz dated July
25, 2012, E&Y Motion Record, Tab 9, page 243.

November 29 Martin Affidavit at para. 85, E&Y
Motion Record, Tab 16, page 416.

19.     Although aware of the Mediation Order, the Kim Orr Objectors took no position on it.
None of them sought to participate in the mediation.

20.     On July 26, 2012, the Applicant brought a motion to have the claims of shareholders and
related indemnity claims of the Third Party Defendants including those of Ernst & Young
declared "equity claims" under the CCAA.  Creditors with "equity claims" are not entitled to
vote on a Plan of Arrangement and their claims are subordinated to ordinary creditors.

21.    The Ontario Plaintiffs did not oppose the order sought.  None of the Kim Orr Objectors took a position on the motion.    The Third Party Defendants including Ernst & Young vigourously opposed the motion.

| | |
|---|---|
| Reference | November 29 Martin Affidavit at paras. 63-65, E&Y Motion Record, Tab 16, page 412. |

22.    Justice Morawetz granted the relief sought by the Applicant and issued the Equity Claims Order.  The Third Party Defendants sought leave to appeal to the Court of Appeal for Ontario, which was granted.  This Court dismissed the appeal reference.

| | |
|---|---|
| Reference | Equity Claims Order of Justice Morawetz dated August 3, 2012, E&Y Motion Record, Tab 10, page 250. |
| | Endorsement of Justice Morawetz regarding Equity Claims dated June 27, 2012, E&Y Motion Record, Tab 8, page 225. |

23.    Ernst & Young, BDO and the Underwriters all asserted claims directly against the Sino-Forest subsidiaries.  The Equity Claims Order and Decision, upheld by the Court of Appeal, addressed only the indemnification rights of the third party defendants in respect of shareholder claims against the Applicant, Sino-Forest.  It did not address indemnification rights against the subsidiaries, nor did it address indemnification rights related to claims of noteholders.

| | |
|---|---|
| Reference | November 29 Martin Affidavit at paras. 66-67, E&Y Motion Record, Tab 16, page 413. |

24.    The Mediation ordered for September 4, 5 and 10, 2012 was unsuccessful, however, it led directly to settlement discussions between Ernst & Young and the Ontario Plaintiffs, resulting in Minutes of Settlement entered into on November 29, 2012.

| | |
|---|---|
| Reference | November 29 Martin Affidavit at para. 86, E&Y Motion Record, Tab 16, page 416. |

Minutes of Settlement dated November 29, 2012,
E&Y Motion Record, Tab 26, page 1058.

25.      Prior to the Ernst & Young Settlement, Ernst & Young and the other third party

defendants (including the Underwriters and BDO Limited) strongly opposed the restructuring

and the Plan.

Reference          November 29 Martin Affidavit at paras. 61-72,
E&Y Motion Record, Tab 16, page 412-414.

Letter from Torys LLP to Gowlings LLP dated
November 26, 2012, E&Y Motion Record, Tab
27, page 1061.

Responding letter from Gowlings LLP to Torys
LLP et al dated November 28, 2012 E&Y
Motion Record, Tab 28, page 1065.

26.      Following the execution of the Minutes of Settlement, Ernst & Young negotiated with the

Applicant and the Ad Hoc Committee of Noteholders for the inclusion of the framework for the

Ernst & Young Settlement and the Ernst & Young Release into the Plan.  Those negotiations

were arm's length and strenuous.  As a result of the inclusion of the framework for Ernst &

Young Settlement in the Plan:

(a)      Ernst & Young agreed to support the Plan, which includes the elements of

the Ernst & Young Settlement and the Ernst & Young Release therein, at

Article 11.1 and elsewhere;

(b)      Ernst & Young's support materially simplified the Plan process and the

Sanction Hearing:

(i)    Ernst & Young agreed that its claims against Sino-Forest and the Sino-Forest Subsidiaries were released, which claims were significant and material;

(ii)    Ernst & Young agreed to waive any leave to appeal to the Supreme Court of Canada in respect of the dismissal by the Court of Appeal for Ontario of its appeal of the Equity Claims Order;

(iii)    By agreeing to release all these claims, Ernst & Young eliminated:

(1)    The expense and management time otherwise to be incurred by Newco and the Subsidiaries in litigating these claims;

(2)    Dilution of the noteholders' recovery if Ernst & Young were ultimately to obtain judgments or settlements in respect of those claims; and

(3)    Potentially extended the timelines to complete the restructuring of Sino-Forest; and

(c)    Ernst & Young agreed not to receive any distributions of any kind under the Plan, as did other Third Party Defendants.

**Reference**    Fifteenth Report of the Monitor, E&Y Motion Record, Tab 23, page 961.

27.    The Ernst & Young Settlement provides for the payment of $117,000,000.00 as a Settlement Fund as the full monetary contribution by E&Y to settlement of the claims, it being the intention of the parties that the settlement be approved and implemented in the CCAA proceedings.

| | |
|---|---|
| **Reference** | Minutes of Settlement dated November 29, 2012 at Schedule "A" E&Y Motion Record, Tab 26, page 1053. |

28.    Article 11.1 of the Plan provides the framework only for the Ernst & Young Settlement and the Ernst & Young Release.  The Plan and the Sanction Order contemplated a further fairness hearing to consider the propriety of the settlement and the release.

29.    Similarly, Article 11.2 of the Plan provides the framework only for future settlements under the Plan.  With the amendment to include section 11.2 of the Plan, the Underwriters and BDO ultimately supported the Plan and its approval at the Sanction Hearing.

| | |
|---|---|
| **Reference** | Fifteenth Report of the Monitor, paras. 27 and 28, E&Y Motion Record, Tab 23, pages 971-972. |

30.    The Plan, incorporating the framework for the Ernst & Young Release and the Ernst & Young Settlement, was approved by an overwhelming majority of the Applicant's creditors (exceeding the requisite double majority) at the meeting of creditors.

| | |
|---|---|
| **Reference** | Fifteenth Report of the Monitor, para.27, E&Y Motion Record, Tab 23, page 971. |

31.    Article 12.5 of the Plan specifically provides for modifications to the Plan, both before and after the creditors' vote and Court sanction.  As required, the Company, the Noteholders and the Monitor consented to the modification of the Plan to include the framework for the Ernst & Young Settlement and the Ernst & Young Release.  The proxy forms (for all classes of creditors)

specifically provided that a creditor's nominee could vote at the nominee's discretion with respect to any amendments or variations to the Plan. There was no restriction as to who could be designated as a creditor's nominee.

> **Reference**     Plan Filing Meeting Order dated August 31,
> 2012, E&Y Motion Record, Tab 11, page 254.

32.     The meeting of creditors was adjourned from November 29, 2012 to December 3, 2012. Prior to the meeting on December 3, 2012, the revised Plan with Article 11 was distributed to the major stakeholders. As stated above, the Ad Hoc Committee of Noteholders, representing the vast majority of the current noteholders, was intimately involved in amending the Plan to obtain Ernst & Young and the other third party defendants' support.

> **Reference**     Fifteenth Report of the Monitor, E&Y Motion
> Record, Tab 23, page 961.

33.     In considering the test for sanctioning the Plan, and whether the Plan was fair and reasonable, Justice Morawetz was clear in his reasons that he was not considering the approval of the Ernst & Young Settlement or the Ernst & Young Release (or that of any other Named Third Party Defendant):

> [T]he E&Y Settlement does not form part of the Sanction Order and no relief is being sought on this motion with respect to the E&Y Settlement. Rather, section 11.1 of the Plan contains provisions that provide a framework pursuant to which a release of the E&Y claims under the Plan will be effective if certain conditions are met. That release will only be granted if all conditions are met, including further court approval.
>
> Further, SFC's counsel acknowledges that any issues relating to the E&Y Settlement, including fairness, continuing discovery rights in the Ontario Class Action and the Quebec Class Action, or opt-out rights, are to be dealt with at a further court-approval hearing.

| Reference | Endorsement of Justice Morawetz re Plan Sanction dated December 12, 2012 at paras. 48-49, E&Y Motion Record, Tab 2, page 128. |
|---|---|

34.    Justice Morawetz did consider that the Plan was a negotiated document between sophisticated parties and was approved by an overwhelming majority of creditors entitled to vote at the meeting of creditors, including Articles 11.1 and 11.2:

> [I]t is necessary to provide brief comment on the alternative argument of the Funds, namely, the Plan be altered to remove Article 11 "Settlement of Claims against Third Party Defendants". The Plan was presented to the meeting with Article 11 in place. This was the Plan that was subject to the vote and this is the Plan that is the subject of this motion. The alternative proposed by the Funds [Kim Orr Objectors] was not considered at the meeting and, in my view, it is not appropriate to consider such an alternative on this motion.

| Reference | Endorsement of Justice Morawetz re Plan Sanction dated December 12, 2012 at para. 78, E&Y Motion Record, Tab 2, page 132. |
|---|---|

35.    Justice Morawetz found that the test had been met and sanctioned the Plan.

| Reference | Plan Sanction Order dated December 12, 2012, E&Y Motion Record, Tab 1, page 1. |
|---|---|

36.    In order to provide stability to the Sino-Forest business and protect what was left of the quickly eroding values of the Sino-Forest enterprise, the Plan had to be implemented quickly.

37.    The Kim Orr Objectors served their notice of motion for leave to appeal to this Court in late December 2012, but they confirmed that they were not seeking a stay nor to prevent Plan implementation.  The Plan has now been implemented.

| Reference | Letter from Bennett Jones LLP to Kim Orr LLP dated January 3, 2013, E&Y Motion Record, Tab 30, page 1099.

Letter from Kim Orr LLP to Bennett Jones LLP dated January 3, 2013, E&Y Motion Record, Tab 31, page 1100. |
|---|---|

> Letter from Lenczner Slaght LLP to Kim Orr LLP dated January 3, 2013, E&Y Motion Record, Tab 32, page 1101.

38.     On the Plan Implementation Date, a number of steps are contemplated by the Plan, which are deemed final and binding by Article 12.1 of the Plan, including:

(a)     the compromise of all creditors' claims against the Applicant;

(b)     the deemed transfer and conveyance of all equity interests held by the Applicant in its subsidiaries and other assets to Newco, as well as the cancellation of certain intercompany claims;

(c)     Affected Creditors are entitled to receive their allotted Newco Shares and Newco Notes; and

(d)     payment by Sino-Forest to the Monitor of the amount to fund the Unaffected Claims Reserve, the Administration Charge Reserve and the Monitor's Post-Implementation Reserve, which the Monitor holds in trust.

> **Reference**     Plan of Compromise and Reorganization affecting and involving Sino-Forest Corporation, dated December 3, 2012 at Articles 4, 5, 6 and 12.1, Schedule "A" to the Sanction Order, E&Y Motion Record, Tab 1, page 22.
>
> Fifteenth Report of the Monitor, E&Y Motion Record, Tab 23, page 961.

39.     The Plan was implemented on January 30, 2013.

40.     The settlement approval hearing of the Ernst & Young Settlement proceeded before Justice Morawetz on February 4, 2013. For the purposes of the settlement approval hearing, Justice Morawetz sat as both CCAA judge and Class Action Proceedings judge. The Kim Orr

Objectors participated fully in the settlement approval hearing. As of the date of this factum, Justice Morawetz has not rendered his decision.

|  | Reference | Notice of Motion for approval of Ernst & Young Settlement dated January 11, 2013, E&Y Motion Record, Tab 33, page 1102. |

## The Kim Orr Objectors

41.   A small minority of shareholders represented by Kim Orr oppose the Ernst & Young Settlement and seek leave to appeal the inclusion of Articles 11.1 and 11.2 in the Plan and paragraphs 40 and 41 of the Sanction Order. The Kim Orr Objectors did not participate in any step of the CCAA Proceedings until the Sanction Hearing, which order they now seek leave to appeal. The Kim Orr Objectors include Northwest & Ethical Investments L.P. and other proposed representative plaintiffs who lost the carriage fight before Justice Perell.

42.   The Kim Orr Objectors – who held (at most) 1.6% of the outstanding shares of Sino-Forest as at June 2, 2011 – are also the only institutional shareholders "opting-out" in the Ontario Class Action. The other opt-outs constitute a small number of individual retail investors. The opt-out deadline, established by an Order made by the Honourable Justice Perell in the Ontario Class Action on September 25, 2012 expired on January 15, 2013.

|  | Reference | Fourteenth Report of the Monitor, E&Y Motion Record, Tab 21, page 937. |
|  |  | Supplemental Report to the Fourteenth Report of the Monitor, Tab 22, page 950. |

43.   Thus, the Kim Orr Objectors represent a very small minority of the Applicant's creditors.

## PART III - THE LAW

### A.  THE PROPOSED APPEAL IS MOOT

44.      The Plan has been implemented.  The Kim Orr Objectors specifically advised that they
were not seeking a stay of Plan implementation or to delay it in any way pending their leave
motion or proposed appeal.

45.      As set out in paragraph 37 above, certain binding and irrevocable steps are contemplated
on Plan Implementation Date.  The Court cannot grant a remedy with no effect:

> If the proposed appeal were allowed, this Court cannot rewrite the
> Plan; nor could it remit the matter back to the *CCAA* supervising
> judge for such purpose. It must either uphold or set aside the
> approval of the Plan granted by the court below. In effect, if
> Resurgence succeeded on appeal, the Plan would be vacated.
> However, that remedy is no longer possible, at minimum, because
> the certificate issued by the Registrar cannot be revoked. As stated
> in *Norcan Oils Ltd.*, an appellate court cannot order a remedy
> which could have no effect. This Court cannot order that the Plan
> be undone in its entirety.

> Reference        *Resurgence Asset Management LLC v. Canadian
>                  Airlines Corp.*, 2000 ABCA 238 at para. 30,
>                  Brief of Authorities of the Respondent Ernst &
>                  Young LLP ("E&Y Brief of Authorities"), Tab
>                  17.
>
>                  *Crystallex International Corp. (Re)*, [2012] O.J.
>                  No. 2651 (C.A.) at para. 62, E&Y Brief of
>                  Authorities, Tab 5.
>
>                  *1078385 Ontario Ltd.(Re)*, [2004] O.J. No. 6050
>                  (C.A.) at para 43, E&Y Brief of Authorities, Tab
>                  1.

46.      The Kim Orr Objectors ask the Court to do what is no longer possible – amend a Plan
that has been implemented.

47.    To grant the relief sought by the Kim Orr Objectors would be to prejudice the other creditors as the Plan cannot be undone.

## B.  LEAVE TO APPEAL

48.    In the CCAA context, leave to appeal is to be granted sparingly and only where there are serious and arguable grounds that are of real and significant interest to the parties.

49.    Leave to appeal should only be granted where:

    (a)    the point on appeal is of significance in the practice;

    (b)    the point on appeal is of significance to the underlying parties;

    (c)    the appeal is prima facie meritorious and not frivolous;  and

    (d)    the appeal will not hinder the progress of the action.

| | |
|---|---|
| **Reference** | *Timminco Ltd. (Re)*, 2012 ONCA 552 at para. 2, E&Y Brief of Authorities, Tab 23. |
| | *Stelco Inc. (Re)* (2005), 75 O.R. (3d) 5 (C.A.) at para. 24, E&Y Brief of Authorities, Tab 21. |

50.    The four part test for granting leave to appeal requires that all four elements be satisfied; the failure to establish any one of the requirements will result in a dismissal of the application. In this case, the moving parties have failed to satisfy any of the four requirements.

| | |
|---|---|
| **Reference** | *Statoil Canada Ltd. (Arrangement relatif à)*, 2012 QCCA 665 at paras. 4 & 7 ("*Statoil*"), E&Y Brief of Authorities, Tab 20. |

51.    The moving parties carry a heavy burden in order to obtain leave in a CCAA proceeding. Courts have emphasized that such an application will only be granted sparingly because of

among other things, the "real time" dynamic of CCAA proceedings and the discretionary nature

of orders made by supervising CCAA judges:

> … I am of the view that this Court should exercise its powers sparingly
> when it is asked to intervene with respect to questions which arise under
> the CCAA. The process of management which the *Act* has assigned to
> the trial Court is an ongoing one … A colleague has suggested that a
> judge exercising a supervisory function under the CCAA is more like a
> judge hearing a trial, who makes orders in the course of that trial …. In
> supervising a proceeding under the CCAA, orders are made, and orders
> are varied as changing circumstances require.   Orders depend upon a
> careful and delicate balancing of a variety of interests and of problems.
> In the context appellate proceedings may well upset the balance, and
> delay or frustrate the process under the CCAA.  I do not say that leave
> will never be granted in a CCAA proceeding.  But the effect upon all
> parties concerned will be an important consideration in deciding whether
> leave ought to be granted.

<table>
<tr><td>Reference</td><td>*Statoil*, *supra* at para. 4, E&Y Brief of Authorities, Tab 20.</td></tr>
<tr><td></td><td>*Timminco Ltd. (Re)*, *supra* at para. 2, E&Y Brief of Authorities, Tab 23.</td></tr>
<tr><td></td><td>*Stelco Inc. (Re)*, [2005] O.J. No. 4883 (C.A.) at paras. 15 & 18, E&Y Brief of Authorities, Tab 22.</td></tr>
<tr><td></td><td>*Pacific National Lease Holding Corp. (Re)* (1992), 19 B.C.A.C. 134 at paras. 28-30, E&Y Brief of Authorities, Tab 10.</td></tr>
</table>

52.     The Kim Orr Objectors cannot meet this test.

53.     The Kim Orr Objectors have filed a fresh affidavit to buttress their arguments.  Leave is

required to file new affidavit evidence on a leave to appeal motion.  The Kim Orr Objectors have

not sought leave, nor could they meet the test for leave if it had been sought.

<table>
<tr><td>Reference</td><td>*Iness v. Canada Mortgage & Housing Corp.* (2002), 62 O.R. (3d) 255 (C.A.), E&Y Brief of Authorities, Tab 7.</td></tr>
</table>

*Ontario (Minister of Transportation) v. 1520658
Ontario Inc.* (2010), 100 O.R. (3d) 619 (C.A.),
E&Y Brief of Authorities, Tab 9.

## C.  POINT ON APPEAL IS NOT SIGNIFICANT TO THE PRACTICE

54.    The Kim Orr Objectors' appeal is not significant to the practice or the CCAA bar.  The

decision the Kim Orr Objectors seek leave to appeal is not the release of Ernst & Young or any

other third party under Article 11 of the Plan.  Rather, they seek to appeal the inclusion of the

framework in the Plan and Sanction Order that might provide for such a release, if the Court

determines that the test (as enunciated by this Court) has been met.

55.    Justice Morawetz was explicit in his reasons that he was not considering the fairness or

scope of any release at the sanction hearing.  Any such settlement and release would be (and is

contemplated under the Plan to be) the subject of a separate hearing.  In the case of the proposed

Ernst & Young Settlement and Ernst & Young Release, that hearing proceeded on February 4,

2013.  The Kim Orr Objectors were given standing at the motion, filed materials and made oral

argument.  The decision of Justice Morawetz is pending.  The Kim Orr Objector's proposed

appeal is therefore misplaced.

56.    Even if it could be conceived that this leave motion relates to the propriety of third party

releases, this Court has already considered that issue.

> **Reference**    *Metcalfe & Mansfield Alternative Investments II
> Corp. (Re)* (2008) 92 O.R. (3d) (C.A), E&Y
> Brief of Authorities, Tab 8 ("*ATB Financial*").

57.    Third party releases and a component of complex restructurings under the CCAA.

> **Reference**    *ATB Financial*, *supra*, E&Y Brief of Authorities,
> Tab 8.

> *Re Nortel Networks Corp*, (2010), 63 C.B.R.
> (5th) 44 at paras. 67 and 70, E&Y Brief of
> Authorities, Tab 15 (*"Re Nortel"*).
>
> *Robertson v. ProQuest Information and
> Learning Co.*, [2011] O.J. No. 1160 (S.C.J.)
> ("*Robertson*") E&Y Brief of Authorities, Tab 18.
>
> *Re Muscletech Research & Development Inc.*,
> (2007), 30 C.B.R. (5th) 59 (Ont. S.C.)
> ("*Muscletech*"), E&Y Brief of Authorities, Tab
> 15.
>
> *Re Grace Canada Inc.*, [2008] O.J. No. 4208
> ("*Grace*"), E&Y Brief of Authorities, Tab 14.
>
> *Re Allen-Vanguard Corp.*, [2011] O.J. No. 3946
> (S.C.J.), E&Y Brief of Authorities, Tab 12.

58.    Further, despite the suggestion of the Kim Orr Objectors, a number of courts managing
CCAA proceedings have approved class action settlements within the context of CCAA plans.

> **Reference**        *Re Nortel, supra*, E&Y Brief of Authorities, Tab
> 15.
>
> *Robertson, supra*, E&Y Brief of Authorities, Tab
> 18.

## D.  POINT ON APPEAL IS NOT SIGNIFICANT TO THE PARTIES

59.    The Plan was approved by an overwhelming majority of the creditors.  All stakeholders
involved in the CCAA Proceedings throughout supported or did not oppose the sanctioning of
the Plan.  The Plan has now been implemented.  Any decision on settlement approval and
fairness of the third party releases under Article 11 of the Plan has not yet been rendered.  The
proposed appeal is not significant to the parties in the CCAA Proceedings.

## E.  APPEAL IS NOT *PRIMA FACIE* MERITORIOUS

60.    The CCAA is a "flexible statute", and the court has "jurisdiction to approve major
transactions, including settlement agreements, during the stay period defined in the Initial

Order."   The CCAA affords courts broad jurisdiction to make orders and "fill in the gaps in

legislation so as to give effect to the objects of the CCAA."

|  |  |
|---|---|
| **Reference** | *Re Nortel, supra* at para. 67 and 70, E&Y Brief of Authorities, Tab 15; *Re Canadian Red Cross Society* (1998), 5 C.B.R. (4th) 299 (Ont. Gen. Div.) at para. 43, E&Y Brief of Authorities, Tab 3 |

61.      As the Supreme Court has explained:

> "CCAA decisions are often based on discretionary grants of jurisdiction. The incremental exercise of judicial discretion in commercial courts under conditions one practitioner aptly describes as "the hothouse of real-time litigation" has been the primary method by which the CCAA has been adapted and has evolved to meet contemporary business and social needs (internal citation omitted).
>
> …
>
> When large companies encounter difficulty, reorganizations become increasingly complex. CCAA courts have been called upon to innovate accordingly in exercising their jurisdiction beyond merely staying proceedings against the debtor to allow breathing room for reorganization.  They have been asked to sanction measures for which there is no explicit authority in the CCAA".

|  |  |
|---|---|
| **Reference** | *Century Services Inc. v. Canada (Attorney General)*, [2010] 3 S.C.R. 379 at paras. 58, 61, E&Y Brief of Authorities, Tab 4. |

62.      As stated above, the proposed appeal by the Kim Orr Objectors is both premature and

moot.  The appeal would not consider the propriety of the settlement or release of any third party

under Article 11 of the Plan, if that is the issue the Kim Orr Objectors seek to put before this

Court.  That decision of the lower Court has not yet been rendered.

63.      The Kim Orr Objectors do not seek to appeal the Plan.  Instead, they appear to attempt to

appeal only two paragraphs in the Plan Sanction Order and one article, Article 11, in the Plan.

The Plan is a whole and must be considered as such. A Plan under the CCAA is a compromise
and cannot be expected to be perfect. Equitable treatment under a Plan of Compromise is not
equal treatment and a minority of creditors is bound to the Plan the majority of creditors has
approved – subject only to the court determining that the Plan is fair and reasonable.

<div style="margin-left:30%;">

**Reference**   *Sammi Atlas Inc. (Re)*, [1998] O.J. No 1089
(Ont. Gen. Div.) at para 4, E&Y Brief of
Authorities, Tab 19.

*Canadian Airlines*, *supra* at para 30, E&Y Brief
of Authorities, Tab 17.

</div>

64.     The Court's discretion to amend a plan should be "'exercised sparingly and in
exceptional circumstances only' even if the amendment were merely technical and did not
prejudice the interests of the corporation or its creditors and then only where there is jurisdiction
under the CCAA to make the amendment requested." Here, the amendment sought by the Kim
Orr Objectors is not technical. It would fundamentally change the bargain struck between the
major creditors of the Applicant. In these circumstances, the Court properly exercised its
discretion not to amend the Plan.

<div style="margin-left:30%;">

**Reference**   *Sammi Atlas Inc. (Re)*, *supra* at para 6, E&Y
Brief of Authorities, Tab 19.

</div>

65.     The Court of Appeal has specifically confirmed that a third party release is justified
where the release forms part of a comprehensive compromise. As Justice Blair has stated:

<div style="margin-left:20%;">

I believe the open-ended CCAA permits third-party releases that are
reasonably related to the restructuring at issue because they are
encompassed in the comprehensive terms "compromise" and
"arrangement" and because of the double-voting majority and court
sanctioning statutory mechanism that makes them binding on unwilling
creditors.

</div>

<div style="margin-left:30%;">

**Reference**   *ATB Financial*, *supra*, at para. 78, E&Y Brief of
Authorities, Tab 8.

</div>

66.    The Kim Orr Objectors have also challenged the aspect of the settlement framework that
might allow for the compromise of fraud claims.  This issue is premature as it forms part of the
test to consider the propriety of the release.  In any event, this Court of Appeal has confirmed
that parties are entitled to settle allegations of fraud and to include releases of such claims as part
of a settlement.  As the Court of Appeal explained, "there is no legal impediment to granting the
release of an antecedent claim in fraud, provided the claim is in the contemplation of the parties
to the release at the time it is given".

> **Reference**     *ATB Financial, supra*, at para. 111, E&Y Brief
> of Authorities, Tab 8.
>
> *Fotinis Restaurant Corp. v. White Spot Ltd.*
> (1998), 1998 Carswell BC 543, (B.C.S.C.) at
> para. 9, E&Y Brief of Authorities, Tab 6.

67.    Where, as here, a double majority of creditors has approved a Plan, courts are usually
unwilling to interfere with creditors' judgment of whether they derive a benefit.

> **Reference**     *Muscletech, supra*, at para. 18, E&Y Brief of
> Authorities, Tab 14.
>
> *Re Olympia & York Developments Ltd.*, (1993),
> 17 C.B.R. (3d) 1 (Ont. Gen. Div.) at paras. 36-
> 40, E&Y Brief of Authorities, Tab 16.
>
> *ATB Financial v. Metcalfe & Mansfield
> Alternative Investments II Corp.*, 43 C.B.R. (5th)
> 269 (S.C.J.) at paras. 137-138, E&Y Brief of
> Authorities, Tab 2.

68.    Claims, including contingent claims, are regularly compromised and settled within
CCAA proceedings.  This includes outstanding litigation claims against the debtor company and
third parties.  Such compromises fully and finally dispose of such claims and it follows that there
are no continuing procedural or other rights in such proceedings; they are at an end.  There are
no "opt-outs" in the CCAA.

69.     The Kim Orr Objectors collectively held approximately 1.62% of the outstanding shares.
This fact is important in assessing the objections raised. A very small minority of shareholders is
seeking to derail the CCAA compromise in the hope that, in so doing, they can achieve a better
result for themselves than the one reached for the creditors generally through protracted and
arm's length negotiations. Settlements during CCAA stay periods are often approved "even over
the objections of one or more parties, because the court must act to the greater good".

<div align="center">

**Reference**    *Re Calpine Canada Energy Ltd.* (2007), 35
C.B.R. (5th) 27; 80 Alta. L.R. (4th) 60 at para.
38, E&Y Brief of Authorities, Tab 12.

</div>

70.     The Kim Orr Objectors unfairly argue that Justice Morawetz failed to consider and apply
section 19(2) of the CCAA. They raised none of these arguments at any hearing either in their
factum or orally before Justice Morawetz.

71.     In any event, subsection 19(2) is not applicable here:

(a)     subsection 19(2) deals with claims that are properly claims against the debtor
company and its directors and officers, not true third party claims;

(b)     paragraphs 19(2)(c) and (d) are intended to prevent the compromise of debts that
arise where (i) something was taken that belonged to a creditor, (ii) the taking was
wrongful, and (iii) the thing was taken while the taker was acting in a fiduciary
capacity. The principle is simple: if a debtor company obtains value in the above
manner, any claim for the return of that value will not be compromised absent the
express consent of the person harmed to that compromise;

(c)     paragraph 19(2)(d) does not apply as Ernst & Young was never a fiduciary of the
Kim Orr Objectors or any other security holder; and

(d)     paragraph 19(2)(d) does not apply as the claim made by the Kim Orr Objectors is
not based upon the value of any property obtained by Ernst & Young. It relates to
a loss of value in the Sino-Forest shares held by the Kim Orr Objectors, which
had no corresponding benefit to Ernst & Young.

72.     The decision of the lower Court to sanction the Plan was discretionary and should not be
interfered with lightly.

73.     Further, as stated above, an appeal is pointless. The Plan has been implemented. The
Court cannot grant a remedy with no effect.

Reference        *Canadian Airlines (Re)*, *supra*, E&Y Brief of
Authorities, Tab 17.

*1078385 Ontario Ltd. (Re)*, *supra*, E&Y Brief of
Authorities, Tab 1.

*Crystallex International Corp. (Re)*, *supra*, E&Y
Brief of Authorities, Tab 5.

## F.  APPEAL WILL HINDER THE PROGRESS OF THE RESTRUCTURING

74.     The proposed appeal is a further unnecessary step in the CCAA proceedings. The
implementation of the Plan has rendered the proposed appeal moot. If allowed, the appeal would
severely hinder the restructuring as it seeks to undo a Plan which has been implemented.

## PART IV - ORDER REQUESTED

75.    For the reasons set out above, Ernst & Young requests that the motion for leave to appeal

the Sanction Order should be dismissed with costs.

**ALL OF WHICH IS RESPECTFULLY SUBMITTED**

this 22nd day of February, 2013.

_____
Peter H. Griffin

_____
Peter J. Osborne

_____
Shara N. Roy

**LENCZNER SLAGHT ROYCE
SMITH GRIFFIN LLP**
Barristers
Suite 2600
130 Adelaide Street West
Toronto ON  M5H 3P5

Peter H. Griffin (19527Q)
Tel:      (416) 865-2921
Fax:     (416) 865-3558
Email:   pgriffin@litigate.com
Peter J. Osborne (33420C)
Tel:      (416) 865-3094
Fax:     (416) 865-3974
Email:   posborne@litigate.com
Shara N. Roy (49950H)
Tel:      (416) 865-2942
Fax:     (416) 865-3973
Email:   sroy@litigate.com

Lawyers for the Respondent, Ernst & Young LLP

## SCHEDULE "A"

### List of Authorities

1. *1078385 Ontario Ltd. (Re),* [2004] O.J No. 6050 (C.A)

2. *ATB Financial v. Metcalfe & Mansfield Alternative Investments II Corp.,* 43 C.B.R. (5th) 269 (S.C.J.)

3. *Canadian Red Cross Society* (1988), 5 C.B.R. (4th) 299 (Ont. Gen. Div.)

4. *Century Services Inc. v Canada (Attorney General),* [2010] 3 S.C.R. 379

5. *Crystallex International Corp (Re),* [2012] O.J. No. 2651 (C.A)

6. *Fontinis Restaurant Corp. v. White Spot Ltd.* (1998) CarswellBC 543 (B.C.S.C.)

7. *Iness v. Canada Mortgage & Housing Corp.* (2002), 62 O.R. (3d) 255 (C.A)

8. *Metcalfe & Mansfield Alternative Investments II Corp. (Re),* (2008) 92 O.R. (3d) (C.A.)

9. *Ontario (Minister of Transportation) v. 1520658 Ontario Inc.,* (2010), 100 O.R. (3d) 619 (C.A.)

10. *Pacific National Lease Holding Corp. (Re)* (1992), 19 B.C.A.C. 134

11. *Re Allen Vanguard,* [2011] O.J. No. 3946 (S.C.J.)

12. *Re Calpine Canada Energy Ltd.* (2007), 35 C.B.R. (5th) 27; 80 Alta. L.R.

13. *Re Grace Canada Inc.*, [2008] O.J. No. 4208 (S.C.J.)

14. *Re Muscletech Research & Development Inc.* (2007), 30 C.B.R. (5th) 59 (Ont. S.C.)

15. *Re Nortel Networks Corp.,* (2010), 63 C.B.R. (5th) 44 (S.C.J.)

16. *Re Olympia & York Developments Ltd.* (1993), 17 C.B.R. (3d) 1 (Ont. Gen. Div.)

17. *Resurgence Asset Management LLC v. Canadian Airlines Corp.*, 2000 ABCA 238

18. *Robertson v ProQuest Information and Learning Co.*, [2011] O.J. No. 1160 (S.C.J.)

19. *Sammi Atlas Inc., (Re),* [1998] O.J No 1089 (Ont. Gen. Div.)

20. *Statoil Canada Ltd. (Arrangement relatif à),* 2012 QCCA 665

21. *Stelco Inc. (Re)* (2005), 75 O.R. (3d) 5 (C.A)

22. *Stelco Inc. (Re),* [2005] O.J. No. 4883 (C.A.)

23. *Timminco Ltd. (Re),* 2012 ONCA 552

## SCHEDULE "B"

### Legislation

*Companies' Creditors Arrangement Act*, R.S.C., 1985, c. C-36

**6.** (1) If a majority in number representing two thirds in value of the creditors, or the class of creditors, as the case may be — other than, unless the court orders otherwise, a class of creditors having equity claims, — present and voting either in person or by proxy at the meeting or meetings of creditors respectively held under sections 4 and 5, or either of those sections, agree to any compromise or arrangement either as proposed or as altered or modified at the meeting or meetings, the compromise or arrangement may be sanctioned by the court and, if so sanctioned, is binding

(*a*) on all the creditors or the class of creditors, as the case may be, and on any trustee for that class of creditors, whether secured or unsecured, as the case may be, and on the company; and

(*b*) in the case of a company that has made an authorized assignment or against which a bankruptcy order has been made under the *Bankruptcy and Insolvency Act* or is in the course of being wound up under the *Winding-up and Restructuring Act*, on the trustee in bankruptcy or liquidator and contributories of the company.

[…]

**19.** (1) Subject to subsection (2), the only claims that may be dealt with by a compromise or arrangement in respect of a debtor company are

(*a*) claims that relate to debts or liabilities, present or future, to which the company is subject on the earlier of

(i) the day on which proceedings commenced under this Act, and

(ii) if the company filed a notice of intention under section 50.4 of the *Bankruptcy and Insolvency Act* or commenced proceedings under this Act with the consent of inspectors referred to in section 116 of the *Bankruptcy and Insolvency Act*, the date of the initial bankruptcy event within the meaning of section 2 of that Act; and

(*b*) claims that relate to debts or liabilities, present or future, to which the company may become subject before the compromise or arrangement is sanctioned by reason of any obligation incurred by the company before the earlier of the days referred to in subparagraphs (*a*)(i) and (ii).

(2) A compromise or arrangement in respect of a debtor company may not deal with any claim that relates to any of the following debts or liabilities unless the compromise or arrangement explicitly provides for the claim's compromise and the creditor in relation to that debt has voted for the acceptance of the compromise or arrangement:

(*a*) any fine, penalty, restitution order or other order similar in nature to a fine, penalty or restitution order, imposed by a court in respect of an offence;

(*b*) any award of damages by a court in civil proceedings in respect of

    (i) bodily harm intentionally inflicted, or sexual assault, or

    (ii) wrongful death resulting from an act referred to in subparagraph (i);

(*c*) any debt or liability arising out of fraud, embezzlement, misappropriation or defalcation while acting in a fiduciary capacity or, in Quebec, as a trustee or an administrator of the property of others;

(*d*) any debt or liability resulting from obtaining property or services by false pretences or fraudulent misrepresentation, other than a debt or liability of the company that arises from an equity claim; or

(*e*) any debt for interest owed in relation to an amount referred to in any of paragraphs (*a*) to (*d*).

IN THE MATTER OF THE *COMPANIES CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF SINO-FOREST CORPORATION

Court of Appeal File No.: M42068

Court File No. CV-12-9667-00-CL

## COURT OF APPEAL FOR ONTARIO

PROCEEDING COMMENCED AT TORONTO

## RESPONDING FACTUM OF ERNST & YOUNG LLP

(Motion for Leave to Appeal from Sanction Order)

**LENCZNER SLAGHT ROYCE SMITH GRIFFIN LLP**
Barristers
130 Adelaide Street West, Suite 2600
Toronto ON  M5H 3P5

Peter H. Griffin (19527Q)
Tel: (416) 865-2921
Fax: (416) 865-3558
Email:      pgriffin@litigate.com

Peter J. Osborne (33420C)
Tel: (416) 865-3094
Fax: (416) 865-3974
Email:      posborne@litigate.com

Shara N. Roy (49950H)
Tel: (416) 865-2942
Fax: (416) 865-3973
Email:      sroy@litigate.com

Lawyers for Ernst & Young LLP