Court of Appeal File No.: M42399
Court File No. CV-12-9667-00-CL

## COURT OF APPEAL FOR ONTARIO

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE AND ARRANGEMENT OF SINO-FOREST CORPORATION

Court File No.: CV-11-431153-00CP

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE

B E T W E E N :

### THE TRUSTEES OF THE LABOURERS' PENSION FUND OF CENTRAL AND EASTERN CANADA, THE TRUSTEES OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 793 PENSION PLAN FOR OPERATING ENGINEERS IN ONTARIO, SJUNDE AP-FONDEN, DAVID GRANT and ROBERT WONG

Plaintiffs

- and –

### SINO-FOREST CORPORATION, ERNST & YOUNG LLP, BDO LIMITED (formerly known as BDO MCCABE LO LIMITED), ALLEN T.Y. CHAN, W. JUDSON MARTIN, KAI KIT POON, DAVID J. HORSLEY, WILLIAM E. ARDELL, JAMES P. BOWLAND, JAMES M.E. HYDE, EDMUND MAK, SIMON MURRAY, PETER WANG, GARRY J. WEST, PÖYRY (BEIJING) CONSULTING COMPANY LIMITED, CREDIT SUISSE SECURITIES (CANADA), INC., TD SECURITIES INC., DUNDEE SECURITIES CORPORATION, RBC DOMINION SECURITIES INC., SCOTIA CAPITAL INC., CIBC WORLD MARKETS INC., MERRILL LYNCH CANADA INC., CANACCORD FINANCIAL LTD., MAISON PLACEMENTS CANADA INC., CREDIT SUISSE SECURITIES (USA) LLC and MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED (successor by merger to Banc of America Securities LLC)

Defendants

## RESPONDING FACTUM OF ERNST & YOUNG LLP
### (Motion for Leave to Appeal from Settlement Approval Order)

- 2 -

May 17, 2013

**LENCZNER SLAGHT ROYCE
SMITH GRIFFIN LLP**
Barristers
Suite 2600
130 Adelaide Street West
Toronto ON  M5H 3P5

Peter H. Griffin (19527Q)
Tel:      (416) 865-2921
Fax:      (416) 865-3558
Email:    pgriffin@litigate.com
Peter J. Osborne (33420C)
Tel:      (416) 865-3094
Fax:      (416) 865-3974
Email:    posborne@litigate.com
Shara N. Roy (49950H)
Tel:      (416) 865-2942
Fax:      (416) 865-3973
Email:    sroy@litigate.com

Lawyers for Ernst & Young LLP


TO:        **ATTACHED SERVICE LIST**

## PART I - OVERVIEW

1.      The moving parties, a small group of institutional shareholders of the Applicant Sino-
Forest Corporation (the "Objectors"), seek leave to appeal the orders of the Honourable Justice
Morawetz dated March 20, 2013:

> (a)      approving a settlement between Ernst & Young LLP ("Ernst & Young") and the
> representative Plaintiffs in class proceedings brought in Ontario and Quebec,
> under the *Companies Creditors' Arrangement Act*, R.S.C. 1985, c. C-36 (the
> "*CCAA*") and the *Class Proceedings Act, 1992*, S.O. 1992, c C-6 (the "*CPA*") (the
> "Settlement Approval Order"); and

> (b)      denying representative status to the Objectors (the "Representation Dismissal
> Order").

2.      The Objectors also seek leave to appeal the order of Justice Morawetz dated December
12, 2012 sanctioning the Plan of Compromise and Reorganization of the Applicant under the
*Companies' Creditors Arrangement Act* ("*CCAA*") dated December 3, 2012 (the "Plan").  They
purport to appeal as of right from the Settlement Approval Order and the Representation
Dismissal Order.  Ernst & Young has moved to quash the Objectors' appeal.

3.      The Ernst & Young Settlement and the Ernst & Young Release (as these terms are
defined in the Plan) are the result of a comprehensive court supervised restructuring process and
concurrent management of class proceeding claims into the same estate.  In reaching the
settlement that is before the Court, Ernst & Young:

- 2 -

(a)     engaged in a lengthy mediation and negotiation process mandated by the Court aimed at resolving the outstanding class proceedings and thereby advancing the *CCAA* proceedings to completion;

(b)     agreed to contribute $117 million to a settlement trust for the benefit of stakeholders, many of whom would not otherwise have received any distributions;

(c)     incorporated the settlement and release of Ernst & Young (as defined in the Plan) into the framework of the Plan;

(d)     voted in favour of and supported Court approval of the Plan;

(e)     released significant claims available to it against the Applicant, its subsidiaries, directors and officers and all distributions it was otherwise to receive under the Plan; and

(f)     abandoned any further appeal rights of the Equity Claims Order.

4.     Justice Morawetz, an experienced commercial judge, found on a trial evidentiary record that the Ernst & Young Settlement and the Ernst & Young Release were:

(a)     fair and reasonable;

(b)     represented a substantial contribution to the stakeholders involved; and

(c)     facilitated the restructuring of Sino-Forest as a viable operating entity.

5.     Leave should not be granted.  The Objectors cannot meet the test for leave to appeal under *CCAA* jurisprudence.

- 3 -

6.    The appeal is not significant to the insolvency bar generally, or to the parties:

    (a)    this Court has already established the test for granting third party releases.  The courts below have approved third party *CCAA* releases in a variety of contexts, including class proceedings; and

    (b)    the parties to the *CCAA* process and the overwhelming majority of the affected current and former shareholders and noteholders of Sino-Forest (the "Securities Claimants") either support or do not oppose the settlement.

7.    Finally, the Objectors' appeal is without merit.

## PART II - THE FACTS

8.    Ernst & Young relies upon its factum filed in Court of Appeal Court File No. M42068, on the Objector's motion for leave to appeal the December 10, 2012 order of the Honourable Justice Morawetz sanctioning the Plan under the *CCAA* (the "Sanction Order").  It outlines:

    (a)    the background of the class action and *CCAA* proceeding (paragraphs 5-16);

    (b)    the court-ordered mediation (paragraphs 17-25);

    (c)    the Ernst & Young Settlement (paragraphs 26-29);

    (d)    the Plan and the meeting of creditors to approve the Plan (paragraphs 30-32);

    (e)    the Objectors' sudden intervention in the *CCAA* proceedings following the meeting of creditors (paragraphs 41-43); and

    (f)    the Sanction Order and Plan implementation (paragraphs 33-39).

- 4 -

## A. THE CLASS PROCEEDINGS AND THE *CCAA* PROCEEDINGS

9.       In early 2012, the Ontario Plaintiffs won a carriage fight for the class proceedings in

Ontario.  The Objectors or some of them, represented by Kim Orr Barristers P.C. ("Kim Orr"),

lost that fight. They were the proposed representative plaintiffs in the third-ranked competing

class action (of three).

|  |  |
|---|---|
| Reference | Carriage Order of Justice Perell dated January 6, 2012, Responding Record of Ernst & Young (Motion for Leave to Appeal from Settlement Approval Order) ("E&Y Motion Record"), Tab 7, pages 171-179 and Reasons for Reasons for Decision of Justice Perell dated January 6, 2012, E&Y Motion Record, Tab 8, pages 180-234. |

10.      The Ontario Plaintiffs participated throughout the *CCAA* proceedings.  In addition to

filing a Proof of Claim on behalf of the putative class members, the Ontario Plaintiffs took a

series of closely integrated steps in the *CCAA* proceedings.  They:

(a)       brought various motions on behalf of Sino-Forest securities purchasers and

holders;

(b)       participated in the claims process;

(c)       made the strategic decision on behalf of the class to accept the Applicant's

position that the shareholder claims were equity claims as that term is defined in

the *CCAA*;

(d)       negotiated certain protections and structures within the Plan in relation to the

noteholder claims advanced in the Class Action litigation;

(e)       participated in court-ordered mediation; and

(f)    sought from time to time to lift the stay with a view to advancing the litigation, which steps were ultimately unsuccessful in light of the central role the litigation played in the affairs of Sino-Forest.

> Reference    Affidavit of Charles Wright sworn January 10, 2013 ("Wright Affidavit"), para. 49, E&Y Motion Record, Tab 14, pages 335-337.
>
> Fifteenth Report of the Monitor, paras. 16 and 18, E&Y Motion Record, Tab 20, page 836.

11.    As the proceeding progressed, any party interested in the *CCAA* Proceeding was able to follow all developments (and obtain copies of orders and materials filed) through the Monitor's website, Sino-Forest's website, various media reports, and by attending the court proceedings. Counsel for the Objectors advised the Court that they and their clients had "been monitoring the *CCAA* proceedings throughout."

> Reference    Affidavit of Mike P. Dean ("Dean Affidavit"), para. 49, E&Y Motion Record, Tab 16, page 379.

## B. THE ERNST & YOUNG SETTLEMENT

12.    In the wake of a court-ordered global mediation process, Ernst & Young and the Ontario Plaintiffs entered into a settlement agreement on November 29, 2013. Following the execution of the Minutes of Settlement, Ernst & Young negotiated with the Applicant and a group of the major secured creditors, the Ad Hoc Committee of Noteholders, for the inclusion of the framework for the Ernst & Young Settlement and the Ernst & Young Release in the Plan.

> Reference    Affidavit of W. Judson Martin sworn November 29, 2012 ("November 29 Martin Affidavit") at paras. 82-89, E&Y Motion Record, Tab 13, pages 300-302
>
> Letter from Torys LLP to Gowlings LLP dated November 26, 2012, E&Y Motion Record, Tab 23, pages 912-915.

> Responding letter from Gowlings LLP to Torys LLP et al. dated November 28, 2012 E&Y Motion Record, Tab 21, pages 916-940.

13.     The meeting of creditors was adjourned from November 29, 2012 to December 3, 2012. Prior to the meeting on December 3, 2012, a Plan incorporating the framework for the Ernst & Young Settlement and a broad release of Ernst & Young (at Article 11) was distributed to the major stakeholders and made publicly available.  The Plan was approved by an overwhelming majority of stakeholders and supported by the Applicant and its senior creditors.

> **Reference**     Fifteenth Report of the Monitor, E&Y Motion Record, Tab 20, pages 828-850.

14.     The Objectors suggest that the Ernst & Young Settlement was a last minute and contrived add-on to the Plan engineered by Ernst & Young and the Ontario Plaintiffs.  They are wrong:

(a)     The Ernst & Young Settlement was the result of a process that began early in the *CCAA* process, when the participating parties (which did not include the Objectors) consented to (or did not oppose) a mediation order dated July 25, 2012, which:

(i)     required the Mediation Parties to attend "with full authority to settle the Subject Claims";

(ii)     the Subject Claims were defined in the Mediation Order as the claims of the Plaintiffs against the Applicant and the Third Party Defendants as set out in the statements of claim in the Ontario Class Action and the Quebec Class Action and any and all related claims;

(iii)    contemplated access to a confidential database of documents, to facilitate the mediation; and

(iv)    created confidence amongst the Mediation Parties that should they reach a settlement, it would be resolved in the context of the *CCAA*.

Reference    Mediation Order of Justice Morawetz dated July 25, 2012, E&Y Motion Record, Tab 9, pages 235-241.

November 29 Martin Affidavit, para. 85, E&Y Motion Record, Tab 13, page 301.

(b)    The inclusion of the framework for the Ernst & Young Settlement and the Ernst & Young Release in the Plan required further arm's length and strenuous negotiations with the Applicant and the Ad Hoc Committee of Noteholders, following the execution of the Minutes of Settlement between Ernst & Young and the Ontario Plaintiffs;

(c)    In addition to the agreement to pay $117 million, the Ernst & Young Settlement required Ernst & Young to agree:

(i)    to support the Plan, which includes elements of the Ernst & Young Settlement and the Ernst & Young Release, at Article 11.1 and elsewhere;

(ii)    that its claims against Sino-Forest and the Sino-Forest Subsidiaries were released, which claims were significant and material;

- 8 -

    (iii)    to waive any leave to appeal to the Supreme Court of Canada in respect of the dismissal by the Court of Appeal for Ontario of its appeal of the Equity Claims Order; and

    (iv)    not to receive distributions of any kind under the Plan.

(d)    The Ernst & Young Settlement was fully supported by the Applicant, the Ad Hoc Committee of Noteholders and the Court-appointed Monitor;

(e)    The Ernst & Young Settlement was approved by an overwhelming majority vote of the creditors of Sino-Forest;

(f)    The Ernst & Young Settlement was supported by institutional shareholders of Sino-Forest representing in excess of 25% of the outstanding shares of Sino-Forest as at June 2, 2011;

(g)    The Ernst & Young Settlement was not objected to by any institutional investors other than the Objectors, who represent less than 2% of the outstanding shares of Sino-Forest as at June 2, 2011 and did not file a proof of claim in the *CCAA* process; and

(h)    The total number of additional outstanding objections to the Ernst & Young Settlement constituted 0.24% of 34,177 Sino-Forest beneficial shareholders as of April 29, 2011.

**Reference**    Reasons for Decision of Morawetz J. dated March 20, 2013
at paras. 32, 33, E&Y Motion Record, Tab 3, page 26

> Fifteenth Report of the Monitor, E&Y Motion Record, Tab
> 20, pages 828-850
>
> Affidavit of Judson Martin sworn January 11, 2013 ("January
> 11 Martin Affidavit"), E&Y Motion Record, Tab 17, pages
> 387-393
>
> Supplemental Wright Affidavit, 2013 ("Supplemental Wright
> Affidavit"), paras. 11-15, E&Y Motion Record, Tab 15,
> pages 359-360, and Exhibit "O" (contained in the Appellant's
> Motion Record, Tab 7A).

15.    As a result of Ernst & Young's support of the Plan, the Applicant and its creditors were

able to avoid: (a) the expense and delay that would otherwise have been incurred in litigating its

claims against the assets subject to the Plan, and (b) the dilution of the estate of the Applicant by

virtue of distributions that would have otherwise been made to Ernst & Young. The Applicant

and the Monitor confirmed that these contributions were significant.

> **Reference**    Reasons for Decision of Morawetz J. dated March 20, 2013
> at para. 56, E&Y Motion Record, Tab 3, pages 31.
>
> January 11 Martin Affidavit, paras. 19(b) and 21, E&Y
> Motion Record, Tab 17, pages 391A-391B.
>
> Fifteenth Report of the Monitor, paras. 42 and 44, E&Y
> Motion Record, Tab 20, page 847.

16.    Building on the Ernst & Young Settlement, the Plan also provided the framework for

future settlements under section 11.2. With these amendments, Ernst & Young, Sino-Forest's

underwriters and predecessor auditors (and major creditors of the Applicant) ultimately

supported the Plan and its approval at the Sanction hearing.

> **Reference**    January 11, 2013 Martin Affidavit, para. 23, E&Y Motion
> Record, Tab 17, page 392.
>
> Fifteenth Report of the Monitor, paras. 27 and 28, E&Y
> Motion Record, Tab 20, pages 839-840.

17.    As a result of this support, the Unresolved Claims (and accompanying reserves) against

the Applicant were reduced from $162.5 million to $1.2 million, providing significant additional

consideration to the Applicant's creditors.

>    **Reference**    Fifteenth Report of the Monitor, para. 32, E&Y Motion
>    Record, Tab 20, pages 841-842.

## C. THE OBJECTORS

18.    Following the meeting of creditors, the Objectors (representing 1.6% of the equity

stakeholders) sought standing for the first time in the *CCAA* proceedings and objected to the

Ernst & Young Settlement. They appeared at the Sanction hearing and the Ernst & Young

Settlement approval motion.

>    **Reference**    Supplemental Wright Affidavit at paras. 11-15, E&Y Motion
>    Record, Tab 15, pages 359-360.

19.    As part of the Ernst & Young Settlement process, Justice Morawetz ordered that notice of

the settlement and the approval motion be provided to affected persons, including all past and

present security holders of Sino-Forest. The notice process allowed affected security holders to

submit notices of objection to the Monitor, to be filed with the Court.

>    **Reference**    Settlement Approval Order of Morawetz J. dated March 20,
>    2013, E&Y Motion Record, Tab 1, pages 1-15.

20.    In the result, 88 shareholders of Sino-Forest maintained their objections at the Ernst &

Young Settlement approval motion. Only the Objectors made submissions to the court. All

other institutional investors either supported the settlement (including Paulson & Co. Inc. and

Davis Selected Advisors LP, which held 14% and 12% of Sino-Forest's shares at June 2, 2011,

respectively) or withdrew their objections prior to the settlement hearing on February 4, 2013.

| Reference | Supplemental Wright Affidavit at paras. 11-15, E&Y Motion Record, Tab 15, pages 359-360. |
|---|---|

21.     The retail investors who filed and maintained their notices of objection, essentially preferred more money or to defer the settlement pending other proceedings.

| Reference | Fourteenth Report of the Monitor, E&Y Motion Record, Tab 18, pages 394-723. |
|---|---|
|  | Supplemental Fourteenth Report of the Monitor, E&Y Motion Record, Tab 19, pages 724-827. |

22.     The Objectors were the only institutional shareholders who "opted out" of the Ontario Class Action.  The other opt outs were a small number of individual retail investors.

| Reference | Supplemental Wright Affidavit at paras. 16-19, E&Y Motion Record, Tab 15, page 360. |
|---|---|

23.     Each opt out form filed by the Kim Orr Objectors contained the following statement:

> This opt-out is submitted on condition that, and is intended to be effective only to the extent that, any defendant in this proceeding does not receive an order in this proceeding, which order becomes final, releasing any claim against such defendant, which includes a claim asserted on an opt-out basis by [name of Objector].  Otherwise, this opt-out right would be wholly illusory.

| Reference | Opt-out forms filed by Kim Orr Objectors, E&Y Motion Record, Tabs 29 and 30, pages 945-946. |
|---|---|

## D.  PLAN SANCTION

24.     In his decision dated December 10, 2013, Justice Morawetz found that the applicable test under the *CCAA* had been met.  He sanctioned the Plan.  The Plan included a framework for the Ernst & Young Settlement and the Ernst & Young Release.

| Reference | Plan Sanction Order of Morawetz J. dated December 10, 2012, E&Y Motion Record, Tab 4, pages 36-152. |
|---|---|

- 12 -

25.    In sanctioning the Plan, Justice Morawetz recognized that the Plan and the settlement

framework at Article 11 was a negotiated document between sophisticated parties and was

approved by an overwhelming majority of creditors. The Objectors had taken the alternative

position that at least Article 11 containing the Ernst & Young Settlement and Ernst & Young

Release could be struck from the Plan.

> [I]t is necessary to provide brief comment on the alternative argument of
> the Funds [Objectors], namely, the Plan be altered to remove Article 11
> "Settlement of Claims against Third Party Defendants". The Plan was
> presented to the meeting with Article 11 in place. This was the Plan that
> was subject to the vote and this is the Plan that is the subject of this
> motion. The alternative proposed by the Funds [Objectors] was not
> considered at the meeting and, in my view, it is not appropriate to
> consider such an alternative on this motion.
>
> **Reference**    Endorsement of Justice Morawetz re Plan Sanction dated
>                  December 10 and 12, 2012 at para. 78, E&Y Motion Record,
>                  Tab 5, page 163.

## E.  APPROVAL OF THE ERNST & YOUNG SETTLEMENT

26.    For the purposes of the settlement approval hearing, Justice Morawetz sat as both *CCAA*

judge and *CPA* judge.

27.    The settlement approval hearing proceeded on a substantial record, including:

(a)    affidavits from plaintiffs' counsel Charles Wright, as well as affidavits from the

representative plaintiffs;

(b)    unusually for a settlement approval motion, an affidavit from Ernst & Young

supporting the basis for the settlement and the court order granting the relief

sought;

(c)    an affidavit from the chief executive officer of Sino-Forest, Judson Martin, supporting the contribution of Ernst & Young to the resolution of the *CCAA* proceeding and completion of the *CCAA* restructuring; and

(d)    the report of the Monitor supporting the Ernst & Young Settlement, the Ernst & Young Release and Ernst & Young's contribution to the completion of the *CCAA* restructuring.

28.    The Objectors chose not to cross-examine any of the affiants.  They instead posed certain written questions which, to Ernst & Young, were more directed toward whether any shareholder received a better deal than the Ernst & Young Settlement.  None did.

29.    In reaching the Ernst & Young Settlement, the Ontario Plaintiffs had access to and considered voluminous material.  These sources of information included:

(a)    all of Sino's public disclosure documents and other publicly available information with respect to Sino;

(b)    trading data for Sino's securities;

(c)    non-public documents uploaded by Sino into the data-room established in the *CCAA* proceeding for purposes of a global mediation;

(d)    Ernst & Young's responsive insurance policies (the total amount of coverage has been disclosed to counsel for the Objectors on a confidential basis);

(e)     the input and opinions of accounting, insolvency law, and insurance coverage experts;

(f)     the input and opinion of Frank C. Torchio, the President of Forensic Economics, Inc., who has consulted or given independent damage opinions in similar cases for over 20 years;

(g)     the Statement of Allegations issued against Sino and certain officers and directors by the Ontario Securities Commission (the "OSC"), dated May 22, 2012;

(h)     the mediation briefs provided by the parties at the global mediation in September, 2012 and by Ernst & Young LLP at the mediation in November, 2012; and

(i)     input from experienced U.S. securities counsel, Kessler Topaz Meltzer & Check, LLP, and discussions with US Plaintiffs' Counsel.

**Reference**     Wright Affidavit, para 87, E&Y Motion Record, Tab 14, pages 343-344.

30.     On this basis, experienced class counsel (having won a carriage fight over counsel for the Objectors) entered into the Ernst & Young Settlement believing it to be fair and reasonable.

31.     At the motion to approve the Ernst & Young Settlement and the Ernst & Young Release, the Objectors filed materials and made oral argument.  However:

(a)     they did not argue their motion for a representation order or for the other relief they purportedly now seek;

(b)    they did not suggest in argument that the settlement consideration was inadequate; and

(c)    they did not raise section 6(8) of the *CCAA*.

32.    In approving the Ernst & Young Settlement, Justice Morawetz considered (following *Robertson v. ProQuest Information and Learning Co.*):

(a)    whether the settlement was fair and reasonable;

(b)    whether it provided substantial benefit to the other stakeholders (including the Ontario Plaintiffs and the Objectors); and

(c)    whether it was consistent with the purposes and spirit of the *CCAA*.

> **Reference**    Reasons for Decision of Morawetz J. dated March 20, 2013 at paras. 49 and 58-80, E&Y Motion Record, Tab 3, pages 30, 32-35
>
> *Robertson v. ProQuest Information and Learning Co.*, [2011] O.J. No. 1160 at paras. 27, 34 (Sup. Ct. J.), Book of Authorities of Ernst & Young ("E&Y Authorities"), Tab 14 ("*Robertson*")

33.    In approving the Ernst & Young Release (and thereby the absence of opt out rights), Justice Morawetz applied the "nexus test" from *ATB Financial*:

(a)    are the claims to be released rationally related to the purposes of the Plan?

(b)    are the claims to be released necessary for the Plan?

(c)    are the parties who have the claims released against them contributing in a tangible and realistic way? and

(d)    will the Plan benefit the debtor and creditors generally?

> **Reference**    Reasons for Decision of Morawetz J. dated March 20, 2013 at paras. 50 and 58-80, E&Y Motion Record, Tab 3, pages 30, 32-35
>
> *Re Metcalfe & Mansfield Alternative Investments II Corp.*, [2008] O.J. No. 3164 at para. 71 (C.A), E&Y Authorities, Tab 16 ("*ATB Financial*").

34.    Justice Morawetz made the following findings of fact which were amply supported by the record:

(a)    the voting creditors approved the Plan with knowledge of the nature and effect of the Ernst & Young Release;

> **Reference**    Reasons for Decision of Morawetz J. dated March 20, 2013 at para. 64, E&Y Motion Record, Tab 3, pages 32-33.

(b)    the Applicant supported the Ernst & Young Settlement and the Ernst & Young Release and submitted that Ernst & Young's support of the Plan enabled Sino-Forest to emerge as Newco/Newco II in a timely way and with potential viability;

> **Reference**    Reasons for Decision of Morawetz J. dated March 20, 2013 at para. 56, E&Y Motion Record, Tab 3, page 31.

(c)    the $117 million to be paid by Ernst & Young was substantial (and tangible);

> **Reference**    Reasons for Decision of Morawetz J. dated March 20, 2013 at paras. 60, 63 and 64 E&Y Motion Record, Tab 3, pages 32-33.

(d)    the $117 million to be paid by Ernst & Young was the only monetary contribution to the Plan;

| Reference | Reasons for Decision of Morawetz J. dated March 20, 2013 at paras. 60, 63 and 64, E&Y Motion Record, Tab 3, pages 32-33. |
|---|---|

(e)     the claims released against Ernst & Young, including the claims of the Objectors, were intertwined and related to the claims against the Applicant Sino-Forest and the purpose of the Plan. In reaching this factual finding, Justice Morawetz relied upon his "Equity Claims Decision", which was upheld by this Court;[1]

| Reference | Reasons for Decision of Morawetz J. dated March 20, 2013 at paras. 61, 68 and 70, E&Y Motion Record, Tab 3, pages 32-33. |
|---|---|
|  | Endorsement of Morawetz J. regarding Equity Claims dated July 27, 2012, E&Y Motion Record, Tab 11, pages 246-263, aff'd 2012 ONCA 816 |

(f)     without approval of the Ernst & Young Settlement, the objectives of the Plan would remain unfulfilled, due to the inability to distribute the settlement funds as well as the circular nature of the claims against Ernst & Young (including those of the Objectors), resulting in contribution and indemnity claims against the Applicant Sino-Forest; and

| Reference | Reasons for Decision of Morawetz J. dated March 20, 2013 at para. 62, E&Y Motion Record, Tab 3, page 32. |
|---|---|

(g)     in the particular context and reality of Sino-Forest's insolvency, the settlement was necessary to the Plan.

---

[1] The Equity Claims Decision did not resolve claims made by Ernst & Young and the other Third Party Defendants related to noteholder (non-equity) claims or claims by Ernst & Young and the other Third Party Defendants against the Sino-Forest subsidiaries related to both shareholder (equity) and noteholder (non-equity) claims. Potentially reserving for these claims while the Plan was initially implemented would not have resolved the claims and the claims would have remained to be dealt with.

| Reference | Reasons for Decision of Morawetz J. dated March 20, 2013 at para. 62, E&Y Motion Record, Tab 3, page 32. |
|---|---|

35.    In the result, Justice Morawetz held that the Ernst & Young Settlement was fair and reasonable, provided substantial benefit to the stakeholders and was consistent with the purpose and spirit of the *CCAA*.  In separately considering the Ernst & Young Release, Justice Morawetz held that it was fair and reasonable and not overly broad.

| Reference | Reasons for Decision of Morawetz J. dated March 20, 2013 at paras. 65 and 66, E&Y Motion Record, Tab 3, page 33. |
|---|---|

36.    Justice Morawetz held that the Objectors should not be permitted to opt out in the context of the combined *CPA* and *CCAA* proceedings, especially when they elected not to participate in the *CCAA* proceedings and did not, among other things, file any claim in that process.

| Reference | Reasons for Decision of Morawetz J. dated March 20, 2013 at para. 75-78, E&Y Motion Record, Tab 3, pages 34. |
|---|---|

37.    In any event, Justice Morawetz properly found that the Objectors could not opt out conditionally.

| Reference | Reasons for Decision of Morawetz J. dated March 20, 2013 at para. 80, E&Y Motion Record, Tab 3, pages 35. |
|---|---|

## PART III - THE LAW

### A.  LEAVE TO APPEAL

38.    In the *CCAA* context, leave to appeal is to be granted sparingly and only where there are serious and arguable grounds that are of real and significant interest to the parties.

39.    Leave to appeal should only be granted where:

(a)    the point on appeal is of significance in the practice;

   (b)  the point on appeal is of significance to the underlying parties;

   (c)  the appeal is *prima facie* meritorious and not frivolous;  and

   (d)  the appeal will not hinder the progress of the action.

| | |
|---|---|
| **Reference** | *Re Timminco Ltd.*, 2012 ONCA 552 at para. 2, E&Y Authorities, Tab 1. |
| | *Re Stelco Inc.* (2005), 75 O.R. (3d) 5 (C.A.) at para. 24, E&Y Authorities, Tab 2. |

40.  The four-part test for granting leave to appeal requires that all four elements be satisfied; the failure to establish any one of the requirements will result in a dismissal of the application.

| | |
|---|---|
| **Reference** | *Statoil Canada Ltd. (Arrangement relatif à)*, 2012 QCCA 665 at paras. 4 & 7 ("*Statoil*"), E&Y Authorities, Tab 3. |

41.  The moving parties carry a heavy burden to obtain leave in this *CCAA* proceeding.   Such a motion will only be granted sparingly because of among other things, the "real time" dynamic of *CCAA* proceedings and the discretionary nature of orders made by supervising *CCAA* judges:

> … I am of the view that this Court should exercise its powers sparingly when it is asked to intervene with respect to questions which arise under the *CCAA*.  The process of management which the *Act* has assigned to the trial Court is an ongoing one … A colleague has suggested that a judge exercising a supervisory function under the *CCAA* is more like a judge hearing a trial, who makes orders in the course of that trial …. In supervising a proceeding under the *CCAA*, orders are made, and orders are varied as changing circumstances require.   Orders depend upon a careful and delicate balancing of a variety of interests and of problems. In the context appellate proceedings may well upset the balance, and delay or frustrate the process under the *CCAA*.  I do not say that leave will never be granted in a *CCAA* proceeding.  But the effect upon all parties concerned will be an important consideration in deciding whether leave ought to be granted.

| | |
|---|---|
| **Reference** | *Statoil*, *supra* at para. 4, E&Y Authorities, Tab 3. |
| | *Re Timminco Ltd.*, *supra* at para. 2, E&Y Authorities, Tab 1. |

> *Re Stelco Inc.*, [2005] O.J. No. 4883 (C.A.) at paras. 15 & 18,
> E&Y Authorities, Tab 4.
>
> *Re Pacific National Lease Holding Corp.*, [1992] B.C.J. No.
> 2309 (C.A) at paras. 28-30, E&Y Authorities, Tab 5.

42.     For this requirement to be satisfied, "on first impression, there must appear to be an error in principle of law or a palpable and overriding error of fact. Exercise of discretion by a supervising judge, so long as it is exercised judicially, is not a matter for interference by an appellate court, even if the appellate court were inclined to decide the matter another way."

> **Reference**     *Resurgence Asset Management LLC v. Canadian Airlines
> Corp.*, [2000] A.J. No. 610 (C.A) at para. 35, ("*Resurgence
> Asset Management*"), E&Y Authorities, Tab 6.

43.     Courts have recognized the significant deference afforded to decisions made by the supervising judge in a *CCAA* proceeding. Justice Morawetz has overseen this process since the beginning. His discretion was exercised with an intimate understanding of the Applicant's restructuring and Ernst & Young's contribution thereto.

> **Reference**     *Ravelston Corp. (Re)*, 2007 ONCA 268 at para. 14, E&Y
> Authorities, Tab 7.
>
> *Resurgence Asset Management, supra* at para. 28, E&Y
> Authorities, Tab 6.

## B. THE APPEAL IS NOT SIGNIFICANT TO THE PRACTICE OR THE PARTIES

44.     The proposed points on appeal are not of significance to the practice or the parties. This Court has already established the test for granting third party releases in the context of the *CCAA*.

> **Reference**     *Metcalfe & Mansfield Alternative Investments II Corp. (Re)*
> (2008) 92 O.R. (3d) (C.A.), E&Y Authorities, Tab 8 ("*ATB
> Financial*").

45.     Third party releases are a legitimate component of complex restructurings under the

*CCAA*.

> **Reference**     *ATB Financial, supra*, E&Y Authorities, Tab 8.
>
> *Re Nortel Networks Corp*, [2010] OJ No 1232 (S.C.J.) at paras. 67 and 70 (*"Re Nortel"*), E&Y Authorities, Tab 9.
>
> *Re Muscletech Research & Development Inc.*, [ 2007] O.J. No. 695 (S.C.J.) at paras. 23, 26 (*"Muscletech"*), E&Y Authorities, Tab 10.
>
> *Re Grace Canada Inc.*, [2008] O.J. No. 4208 (S.C.J.) at para. 78 (*"Grace"*), E&Y Authorities, Tab 11.
>
> *Re Allen-Vanguard Corp.*, [2011] O.J. No. 3946 (S.C.J.), E&Y Authorities, Tab 12.

46.     Despite the suggestion of the Objectors, a number of courts have approved class action

settlements within the context of *CCAA* plans.

> **Reference**     *Re Nortel Networks Corp.,* [2010] O.J. No. 1408 (S.C.J.) at para. 40, E&Y Authorities, Tab 13.
>
> *Robertson v ProQuest Information and Learning Co.*, [2011] O.J. No. 1160 (S.C.J.) at para. 34, E&Y Authorities, Tab 14.

47.     The overwhelming majority and substance of the interests in these proceedings supported

the Plan and either support or do not oppose the Ernst & Young Settlement.

## C.  APPEAL IS NOT *PRIMA FACIE* MERITORIOUS

48.     The Objectors now seem to raise four attacks on the Settlement Order and the

Representation Dismissal Order:

> (a)     The Ernst & Young Settlement and the Ernst & Young Release are not rationally
>
> connected to or necessary for the Plan;

> (b)     Approval of the Ernst & Young Settlement violated section 6(8) of the *CCAA*;

- 22 -

(c)     Justice Morawetz failed to consider the adequacy of the settlement amount and

the propriety of the release for fraud; and

(d)     the Ontario Plaintiffs did not adequately represent those objecting to the Ernst &

Young Settlement and the Ernst & Young Release. The Ontario Plaintiffs address

this issue in their factum and Ernst & Young relies on those submissions.

**(i)     General *CCAA* Principles and Third Party Releases**

49.     The *CCAA* is a "flexible statute", and the court has "jurisdiction to approve major

transactions, including settlement agreements."  The *CCAA* affords courts broad jurisdiction to

make orders and "fill in the gaps in legislation so as to give effect to the objects of the *CCAA*."

Further, "[t]he Court should give the statute a broad and liberal interpretation so as to encourage

and facilitate successful restructurings whenever possible."

| | |
|---|---|
| Reference | *Re Nortel, supra* at paras. 67 and 70, E&Y Authorities, Tab 9 |
| | *Re Canadian Red Cross,* [1998] O.J. No. 3306 (Ont. Gen. Div.) at para. 43, E&Y Authorities, Tab 15 |
| | *ATB Financial v Metcalfe & Mansfield Alternative Investments II Corp.,* [2008] O.J. No. 1818 (S.C.J.) at para. 41, E&Y Authorities, Tab 16. |

50.     As the Supreme Court has explained:

"*CCAA* decisions are often based on discretionary grants of jurisdiction.
The incremental exercise of judicial discretion in commercial courts
under conditions one practitioner aptly describes as "the hothouse of
real-time litigation" has been the primary method by which the *CCAA*
has been adapted and has evolved to meet contemporary business and
social needs (internal citation omitted).

…

> When large companies encounter difficulty, reorganizations become
> increasingly complex. *CCAA* courts have been called upon to innovate
> accordingly in exercising their jurisdiction beyond merely staying
> proceedings against the debtor to allow breathing room for
> reorganization. They have been asked to sanction measures for which
> there is no explicit authority in the *CCAA*".

| | |
|---|---|
| **Reference** | *Century Services Inc. v. Canada (Attorney General)*, [2010] 3 S.C.R. 379 at paras. 58, 61, E&Y Authorities, Tab 17. |

51.     The Plan is a whole and must be considered as such. A Plan under the *CCAA* is a compromise and cannot be expected to be perfect. Equitable treatment under a Plan of Compromise is not equal treatment and a minority of creditors is bound to the Plan the majority of creditors has approved – subject only to the court determining that the Plan is fair and reasonable.

| | |
|---|---|
| **Reference** | *Sammi Atlas Inc. (Re)*, [1998] O.J. No 1089 (Ont. Gen. Div.) at para 4, E&Y Authorities, Tab 18. |
| | *Resurgence Asset Management*, *supra* at para 30, E&Y Authorities, Tab 6. |

52.     This Court has specifically confirmed that a third party release is justified where the release forms part of a comprehensive compromise. As Justice Blair has stated:

> I believe the open-ended *CCAA* permits third-party releases that are
> reasonably related to the restructuring at issue because they are
> encompassed in the comprehensive terms "compromise" and
> "arrangement" and because of the double-voting majority and court
> sanctioning statutory mechanism that makes them binding on unwilling
> creditors.

| | |
|---|---|
| **Reference** | *ATB Financial, supra*, at para. 78, E&Y Authorities, Tab 8. |

**(ii)     The Ernst & Young Settlement and the Ernst & Young Release are Rationally Connected to the Plan**

53.     As set out above, Justice Morawetz found that the Ernst & Young Settlement and the Ernst & Young Release were rationally connected to and necessary for the Plan's success.

54.     The Objectors misapprehend the test in this regard.  The Objectors argue that because the

Plan was implemented (with the framework of the Ernst & Young Settlement and the Ernst &

Young Release contained therein) before the Court approved the Ernst & Young Settlement and

the Ernst & Young Release, that they are not rationally connected to or necessary for the Plan.

55.     The test is not whether a Plan can be implemented, but rather whether the Applicant will

be successfully restructured.  Plan implementation is a necessary and important element of that

restructuring, but matters do not end there.  The ultimate goal of the *CCAA* is for a distressed

company to emerge as a continuing and viable entity:

> Faced with an insolvent organization, [the Court's] role is to look
> forward and ask:   does this plan represent a fair and reasonable
> compromise that will permit a viable commercial entity to emerge?  It is
> also an exercise in assessing current reality by comparing available
> commercial alternatives to what is offered in the proposed plan.

| Reference | *Re Canadian Airlines Corp.,* [2000] A.J. No. 771 (Q.B.) at para. 3, E&Y Authorities, Tab 19. |
|-----------|---------------------------------------------------------------------------------------------|
|           | *Re Canwest Global Communications*, [2010] O.J. No. 3233 (S.C.J.) at para. 19 ("*Canwest Global*"), E&Y Authorities, Tab 20 |

56.     These considerations are to be informed by the objectives of the *CCAA*, "namely, to

facilitate the reorganization of a debtor company, its creditors, shareholders, employees and in

many instances, a much broader constituency of affected persons."

| Reference | *Canwest Global, supra* at para. 20, E&Y Authorities, Tab 20. |
|-----------|---------------------------------------------------------------|

57.     Plan implementation without a successful restructuring is neither desirable nor what is

intended by the legislature or the courts in *CCAA* proceedings.

58. Justice Morawetz found on the evidence that Ernst & Young's support of the Plan (and its agreement among other things not to seek any distribution from Sino-Forest) enabled Sino-Forest to emerge as Newco/Newco II in a timely way and with potential viability.

> **Reference**    Reasons for Decision of Morawetz J. dated March 20, 2013
> at para. 56, E&Y Motion Record, Tab 3, page 31.

59. Justice Morawetz found that although on its face the Plan might succeed, the objectives of the Plan would remain unfulfilled without the approval of the Ernst & Young Settlement.

> **Reference**    Reasons for Decision of Morawetz J. dated March 20, 2013
> at para. 62, E&Y Motion Record, Tab 3, page 32.

60. These findings were well within his discretion. They should not be disturbed.

**(iii)    Section 6(8) of the *CCAA* Does Not Apply**

61. The Objectors now say that distribution of the settlement funds to current and former equity holders violates section 6(8) of the *CCAA*.

62. The Objectors did not raise this argument below either in their factum or orally.

63. The Objectors raised it for the first time in a March 26, 2012 letter to Justice Morawetz following an attendance to settle the E&Y Settlement Order.

> **Reference**    Letter from Michael Spencer to The Honourable Mr. Justice
> Morawetz dated March 26, 2013, E&Y Motion Record, Tab
> 32, pages 971-973.

64. Section 6(8) of the *CCAA* precludes payment by a debtor in respect of an equity claim unless all non-equity claims have been paid in full.

65.    Although the settlement funds are a contribution to the Plan, the Settlement Approval

Order makes it explicit that they paid are in respect of claims against Ernst & Young, not the

debtor Applicant.   As found by this Court in *Re Sino-Forest Corp.*, 2010 ONCA 816, claims

against a third party, such as Ernst & Young, do not fall within the definition of equity claims in

the *CCAA*.

|  |  |
|---|---|
| **Reference** | *Re Sino-Forest Corp.*, 2012 ONCA 816 at para. 56, E&Y Authorities, Tab 21. |
|  | Letter from Massimo Starnino to The Honourable Mr. Justice Morawetz dated March 27, 2013, E&Y Motion Record, Tab 33, pages 974-994. |

66.    Accordingly, there is no payment of any equity claim that would engage section

6(8).  The Ernst & Young Settlement does not in any way impact the recovery of non-equity

claims. Section 6(8) of the *CCAA* is therefore inapplicable.

|  |  |
|---|---|
| **Reference** | *Re Canwest Global Communications supra* at para. 18, E&Y Authorities, Tab 20. |

67.    In any event, the Settlement Approval Order provides that a trust will be established to

hold and distribute the settlement funds in accordance with a process to be approved by further

order of the Court.

|  |  |
|---|---|
| **Reference** | Settlement Approval Order of Morawetz J. dated March 28, 2013, paras. 16-18, E&Y Motion Record, Tab 1, pages. 8-9. |

68.    It is not uncommon for a class member to be unsure of his/her actual recovery at the time

that an omnibus settlement is approved by the Court.   The Court therefore maintains a

supervisory role, as it does here.

|  |  |
|---|---|
| **Reference** | *Robertson, supra* at para. 33, E&Y Authorities, Tab 14 |

**(iv)    Fairness of the Ernst & Young Settlement and the Ernst & Young Release**

**Adequacy**

69.    Contrary to the assertions of the Objectors, Justice Morawetz did consider the adequacy of the $117 million settlement.

70.    Justice Morawetz had a complete record before him justifying and supporting the quantum to be paid by E&Y. It was the Objectors who chose not to contest the adequacy of the E&Y Settlement, but now attempt to do so on appeal.

**Release of Fraud Claims Asserted in Class Action Claims**

71.    The Objectors have also challenged the aspect of the settlement that allows for the compromise of fraud claims.

72.    In the proposed Ontario class action, the Ontario Plaintiffs asserted, among other things, that Ernst & Young made knowing, or reckless, misrepresentations.    Claims of fraud were asserted by Kim Orr in its class action claims.    The settlement of these claims is integral to the Ernst & Young Settlement and the Ernst & Young Release.    The claims made, and dealt with in the negotiations between the parties, were properly compromised.

73.    This Court has confirmed that parties are entitled to settle allegations of fraud and to include releases of such claims as part of a settlement: "There is no legal impediment to granting the release of an antecedent claim in fraud, provided the claim is in the contemplation of the parties to the release at the time it is given".

**Reference**    *ATB Financial, supra*, at para. 111, E&Y Authorities, Tab 8.

- 28 -

*Fotinis Restaurant Corp. v. White Spot Ltd*[1998] B.C.J. No.
598 (B.C.S.C.) at para. 9, E&Y Authorities, Tab 22.

74.     Claims, including contingent claims, are regularly compromised and settled within *CCAA*

proceedings.  This includes outstanding litigation claims against the debtor company and third

parties.  Such compromises fully and finally dispose of such claims and it follows that there are

no continuing procedural or other rights in such proceedings; they are at an end.  There are no

"opt-outs" in the *CCAA*.

75.     Justice Morawetz approved the Ernst & Young Release as fair and not overly broad,

including the release for fraud.  It was well within his discretion to do so.

E.      **THE *CCAA* PROCEEDINGS**

76.     A very small minority of shareholders is seeking to derail the *CCAA* compromise in the

hope that, in so doing, they can achieve a better result for themselves than the one reached for the

stakeholders generally through protracted arm's length negotiations.   However, settlements

during a *CCAA* process are often approved "even over the objections of one or more parties,

because the court must act to the greater good".

**Reference**      *Re Calpine Canada Energy Ltd.,*  [2007] A.J. No. 917 (C.A)
at para. 38, E&Y Authorities, Tab 23.

**PART IV - ORDER REQUESTED**

77.     For the reasons set out above, Ernst & Young requests that the motion for leave to appeal

the Settlement Order and the Representation Dismissal Order should be dismissed with costs.

## ALL OF WHICH IS RESPECTFULLY SUBMITTED

this 17th day of May, 2013.

_____
Peter H. Griffin

_____
Peter J. Osborne

_____
Shara N. Roy

**LENCZNER SLAGHT ROYCE
SMITH GRIFFIN LLP**
Barristers
Suite 2600
130 Adelaide Street West
Toronto ON  M5H 3P5

Peter H. Griffin (19527Q)
Tel:      (416) 865-2921
Fax:     (416) 865-3558
Email:   pgriffin@litigate.com

Peter J. Osborne (33420C)
Tel:      (416) 865-3094
Fax:     (416) 865-3974
Email:   posborne@litigate.com

Shara N. Roy (49950H)
Tel:      (416) 865-2942
Fax:     (416) 865-3973
Email:   sroy@litigate.com

Lawyers for the Respondent, Ernst & Young LLP

**A**

- 30 -

## SCHEDULE "A"

### List of Authorities

1. *Re Timminco Ltd.,* [2012] O.J. No. 3931 (C.A)

2. *Re Stelco Inc. Re*, [2005] O.J. No. 1171 (C.A)

3. *Statoil Canada Ltd. (Arrangement relatif à),* [2012] Q.J. No. 3234 (C.A)

4. *Re Stelco Inc.*, [2005] O.J. No. 4883 (C.A)

5. *Re Pacific National Lease Holding Corp ,* [1992] B.C.J. No. 2309 (C.A)

6. *Resurgence Asset Management LLC v. Canadian Airlines Corp.*, [2000] A.J. No. 610 (C.A)

7. *Ravelston Corp. (Re)*, [2007] O.J. No. 1389 (C.A)

8. *Re Metcalfe & Mansfield Alternative Investments II Corp.,* [2008] O.J. No. 3164 (C.A)

9. *Re Nortel Networks Corp*, [2010] O.J. No. 1232 (S.C.J.)

10. *Re Muscletech Research & Development Inc.,* [2007] O.J. No. 695 (S.C.J.)

11. *Re Grace Canada Inc.*, [2008] O.J. No. 4208 (S.C.J.)

12. *Re Allen-Vanguard Corp.*, [2011] O.J. No. 3946 (S.C.J.)

13. *Re Nortel Networks Corp.,* [2010] O.J. No. 1408 (S.C.J.)

14. *Robertson v ProQuest Information and Learning Co.*, [2011] O.J. No. 1160 (S.C.J.)

15. *Re Canadian Red Cross Society*, [1998] O.J. No. 3306 (Ont. Gen. Div.)

16. *ATB Financial v Metcalfe & Mansfield Alternative Investments II Corp.,* [2008] O.J. No. 1818 (S.C.J.)

17. *Century Services Inc. v. Canada (Attorney General)*, [2010] 3 S.C.R. 379

18. *Re Sammi Atlas Inc.,* [1998] O.J. No 1089 (Ont. Gen. Div.)

19. *Re Canadian Airlines Corp.*, [2000] A.J. No. 771 (Q.B)

20. *Re Canwest Global Communications*, [2010] O.J. No. 3233 (S.C.J.)

21. *Re Sino-Forest Corp.*, 2012 ONCA 816

- 31 -

22. *Fotinis Restaurant Corp. v. White Spot Ltd.*, [1998] B.C.J. No. 598 (B.C.S.C.)

23. *Re Calpine Canada Energy Ltd.,* [2007] A.J. No. 917 (C.A)

**B**

## SCHEDULE "B"

### Legislation

*Companies' Creditors Arrangement Act*, R.S.C., 1985, c. C-36

**6.** (1) If a majority in number representing two thirds in value of the creditors, or the class of creditors, as the case may be — other than, unless the court orders otherwise, a class of creditors having equity claims, — present and voting either in person or by proxy at the meeting or meetings of creditors respectively held under sections 4 and 5, or either of those sections, agree to any compromise or arrangement either as proposed or as altered or modified at the meeting or meetings, the compromise or arrangement may be sanctioned by the court and, if so sanctioned, is binding

(*a*) on all the creditors or the class of creditors, as the case may be, and on any trustee for that class of creditors, whether secured or unsecured, as the case may be, and on the company; and

(*b*) in the case of a company that has made an authorized assignment or against which a bankruptcy order has been made under the *Bankruptcy and Insolvency Act* or is in the course of being wound up under the *Winding-up and Restructuring Act*, on the trustee in bankruptcy or liquidator and contributories of the company.

[…]

**19.** (1) Subject to subsection (2), the only claims that may be dealt with by a compromise or arrangement in respect of a debtor company are

(*a*) claims that relate to debts or liabilities, present or future, to which the company is subject on the earlier of

(i) the day on which proceedings commenced under this Act, and

(ii) if the company filed a notice of intention under section 50.4 of the *Bankruptcy and Insolvency Act* or commenced proceedings under this Act with the consent of inspectors referred to in section 116 of the *Bankruptcy and Insolvency Act*, the date of the initial bankruptcy event within the meaning of section 2 of that Act; and

(*b*) claims that relate to debts or liabilities, present or future, to which the company may become subject before the compromise or arrangement is sanctioned by reason of any obligation incurred by the company before the earlier of the days referred to in subparagraphs (*a*)(i) and (ii).

(2) A compromise or arrangement in respect of a debtor company may not deal with any claim that relates to any of the following debts or liabilities unless the compromise or arrangement explicitly provides for the claim's compromise and the creditor in relation to that debt has voted for the acceptance of the compromise or arrangement:

(*a*) any fine, penalty, restitution order or other order similar in nature to a fine, penalty or restitution order, imposed by a court in respect of an offence;

(*b*) any award of damages by a court in civil proceedings in respect of

    (i) bodily harm intentionally inflicted, or sexual assault, or

    (ii) wrongful death resulting from an act referred to in subparagraph (i);

(*c*) any debt or liability arising out of fraud, embezzlement, misappropriation or defalcation while acting in a fiduciary capacity or, in Quebec, as a trustee or an administrator of the property of others;

(*d*) any debt or liability resulting from obtaining property or services by false pretences or fraudulent misrepresentation, other than a debt or liability of the company that arises from an equity claim; or

(*e*) any debt for interest owed in relation to an amount referred to in any of paragraphs (*a*) to (*d*).

IN THE MATTER OF THE *COMPANIES CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF SINO-FOREST CORPORATION

Court of Appeal File No.:  M42399
Court File No. CV-12-9667-00-CL

## COURT OF APPEAL FOR ONTARIO

PROCEEDING COMMENCED AT TORONTO

### RESPONDING FACTUM OF ERNST & YOUNG LLP
(Motion for Leave to Appeal from Settlement Approval Order)

**LENCZNER SLAGHT ROYCE SMITH GRIFFIN LLP**
Barristers
130 Adelaide Street West, Suite 2600
Toronto ON  M5H 3P5

Peter H. Griffin (19527Q)
Tel: (416) 865-2921
Fax: (416) 865-3558
Email:        pgriffin@litigate.com

Peter J. Osborne (33420C)
Tel: (416) 865-3094
Fax: (416) 865-3974
Email:        posborne@litigate.com

Shara N. Roy (49950H)
Tel: (416) 865-2942
Fax: (416) 865-3973
Email:        sroy@litigate.com

Lawyers for Ernst & Young LLP