



Positive
As of: Sep 17, 2013

**In re SPIEGEL INC., et al., Debtors.**

**Chapter 11 Cases, Case No. 03-11540 (BRL), Jointly Administered**

**UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2006 Bankr. LEXIS 2158*; *46 Bankr. Ct. Dec. 272*

**August 16, 2006, Decided**

**SUBSEQUENT HISTORY:** Affirmed by *Stupakoff v. OTTO (In re Spiegel, Inc.), 2007 U.S. Dist. LEXIS 19633 (S.D.N.Y., Feb. 26, 2007)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Bankruptcy debtors' confirmed Chapter 11 plan included a release of third parties with regard to all claims related to the debtors, but a creditor asserted that its claims for copyright infringement against released parties which received copyrighted photographs from the debtors were not related to the debtors. The creditor moved for an order authorizing a state court action against the transferees.

**OVERVIEW:** The creditor contended that the creditor's copyright infringement claims had no practical or legal consequence to the debtors against which no claims were asserted. The creditor also argued that the claims were independent of the debtors' conduct, and that the released parties did not file pleadings in the debtors' bankruptcy to address the claims. The bankruptcy court held, however, that the creditor's claims were released by the debtors' confirmed and substantially consummated plan. In confirming the plan, the court found that the release and the released parties' substantial contribution of consideration were essential components of the plan, and jurisdiction to approve the release was proper based on the released parties' potential claims for contribution from the debtors for the alleged infringement. Further, the claims were related to the debtors within the meaning of the release since the debtors allegedly conspired to provide the photographs to the released parties, and it was irrelevant that the creditor did not seek direct imposition of liability against the debtors or that the released parties did not seek bankruptcy adjudication of the claims.

**OUTCOME:** The creditor's motion for an order authorizing a state action against the released parties was denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings > General Overview*
[HN1] A court should not blindly accept findings of fact

13-10361-mg    Doc 21-7    Filed 09/23/13    Entered 09/23/13 17:10:27    Exhibit G1
Pg 2 of 17

Page 2

2006 Bankr. LEXIS 2158, *; 46 Bankr. Ct. Dec. 272

and conclusions of law proffered by parties.

***Bankruptcy Law > Practice & Proceedings > Jurisdiction > Core Proceedings***
[HN2] Confirmation of a bankruptcy plan is a core proceeding under *28 U.S.C.S. § 157(b)(2)* and a bankruptcy court has exclusive jurisdiction to determine whether the plan complies with the applicable provisions of the Bankruptcy Code.

***Bankruptcy Law > Practice & Proceedings > Jurisdiction > General Overview***
[HN3] A bankruptcy court has inherent or ancillary jurisdiction to interpret and enforce its own orders, wholly independent of the statutory grant of jurisdiction under *28 U.S.C.S. § 1334*.

***Bankruptcy Law > Practice & Proceedings > Jurisdiction > General Overview***
[HN4] A bankruptcy court's jurisdiction continues post-confirmation to protect its confirmation decree, to prevent interference with the execution of a confirmed plan, and to otherwise aid in its operation.

***Bankruptcy Law > Case Administration > Court Powers***
***Bankruptcy Law > Practice & Proceedings > Jurisdiction > Noncore Proceedings***
[HN5] For purposes of determining bankruptcy jurisdiction under *28 U.S.C.S. § 1334(b)*, it is necessary only to determine whether a matter is at least related to the bankruptcy. The appropriate test for determining whether a claim is related to a debtor is whether the outcome of the proceeding might have any conceivable effect on the bankrupt estate or if the proceeding has any significant connection with the bankrupt estate. The conceivable-effect test is extremely broad and finds related-to jurisdiction in a wide variety of circumstances. A bankruptcy court has the power to enjoin suits against non-debtor third parties where the actions against such third parties have at least a conceivable effect upon the debtors or implicate the interpretation or enforcement of the court's orders.

***Bankruptcy Law > Reorganizations > Plans > Contents > Discretionary Provisions***
[HN6] In bankruptcy cases, a bankruptcy court may enjoin a creditor from suing a third party, provided the injunction plays an important part in a debtor's reorganization plan. Courts also approve nondebtor releases when: (1) the estate received substantial consideration; (2) the enjoined claims were channeled to a settlement fund rather than extinguished; (3) the enjoined claims would indirectly impact the debtor's reorganization by way of indemnity or contribution; or (4) the plan otherwise provided for the full payment of the enjoined claims. In addition, nondebtor releases also may be tolerated if the affected creditors consent.

***Contracts Law > Contract Interpretation > Ambiguities & Contra Proferentem > General Overview***
[HN7] The use of "arising out of" language in a contract is considered unambiguous and viewed as reasonably supporting only a broad reading. The phrase "related to" is even broader in scope than "arising out of," does not require a causal relation, is found to be synonymous with phrases such as "in connection with," "associated with," "with reference to," and "with respect to," and is not ambiguous in spite of its breadth.

***Bankruptcy Law > Reorganizations > Plans > Postconfirmation > Effects of Confirmation***
***Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata***
[HN8] Once a Chapter 11 confirmation order becomes final and nonappealable, a collateral attack on the order is precluded by res judicata principles and, therefore, the confirmation order is no longer subject to challenge based on the standard applicable to the initial approval of a third party plan release. Res judicata applies whether or not a bankruptcy court initially had the power to grant the release. Every court in rendering a judgment tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter. Thereafter, the court in which the plea of res judicata is made has not the power to inquire again into that jurisdictional fact.

***Bankruptcy Law > Reorganizations > Plans > Postconfirmation > Effects of Confirmation***
[HN9] When a Chapter 11 plan has been substantially consummated, the related confirmation order no longer is subject to review.

***Bankruptcy Law > Reorganizations > Plans > Postconfirmation > Effects of Confirmation***

13-10361-mg    Doc 21-7    Filed 09/23/13    Entered 09/23/13 17:10:27    Exhibit G1
Pg 3 of 17

Page 3

2006 Bankr. LEXIS 2158, *; 46 Bankr. Ct. Dec. 272

[HN10] A Chapter 11 plan is substantially consummated when substantially all of the property proposed to be transferred pursuant to the plan has in fact been transferred, the reorganized debtor has assumed control of the business, and plan distribution has commenced.

**COUNSEL:** [*1] For Spiegel, Inc., Debtor: Andrew V. Tenzer, James L. Garrity, Jr., Shearman & Sterling, New York, NY; Timothy W. Walsh, DLA Piper Rudnick Gray Cary US LLP, New York, NY.

For United States Trustee, U.S. Trustee: Greg M. Zipes, Office of the United States Trustee, New York, NY.

For Official Committee of Unsecured Creditors, Creditor Committee: David M. LeMay, Douglas Deutsch, Howard Seife, Joseph H. Smolinsky, Chadbourne & Parke, LLP, New York, NY.

For Chadbourne & Parke LLP, Creditor Committee: Howard Seife, Chadbourne & Parke, LLP, New York, NY.

For Clear Creek ISD, Creditor Committee: Laura J. Monroe, Perdue, Brandon, Fielder Collins & Mott, Lubbock, TX.

**JUDGES:** Honorable Burton R. Lifland, UNITED STATES BANKRUPTCY JUDGE.

**OPINION BY:** Honorable Burton R. Lifland

**OPINION**

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER DENYING MOTION OF PETER ROSENBAUM PHOTOGRAPHY CORPORATION FOR A DECLARATORY RULING PURSUANT TO *SECTIONS 105(a)* AND *1109(b) OF THE BANKRUPTCY CODE*, ETC. AND DENYING RELATED RELIEF

Peter Rosenbaum Photography Corporation ("Rosenbaum") brought this motion dated May 4, 2006 (the "Motion"), for an order pursuant to *sections 105(a)* [*2] and *1109(b) of the Bankruptcy Code*: (1) declaring that Rosenbaum's claims against Otto (GmbH & Co KG) ("Otto KG"), Otto Doosan Ltd. (f/k/a Otto Doosan Mail Order Ltd.) ("Doosan"), and Otto Sumisho Inc. ("Sumisho," and together with Otto KG and Doosan, the "Named Defendants") in an action (the "Illinois Action") filed in the United States District Court for the District of Illinois (the "Illinois Court") are unrelated to the chapter 11 cases of Spiegel Inc. ("Spiegel") and certain of its direct and indirect subsidiaries (collectively with Spiegel, the "Debtors") and, therefore, are not barred by the release and injunction provisions of the Debtors' plan of reorganization and related confirmation order; and (2) authorizing such claims to proceed. The Named Defendants' filed an objection to the Motion, dated June 5, 2006 (the "Objection") and Rosenbaum filed a Reply in support of the Motion, dated June 15, 2006 (the "Reply").

On June 21, 2006, Bico Stupakoff and Russell James (collectively, "Stupakoff and James") moved for a continuance of the hearing (the "Hearing") on the Motion (the "Adjournment Motion") or a declaration [*3] of the Court that any ruling on the Motion shall have no preclusive effect on any motion or pleading filed by Stupakoff and James. The Named Defendants objected to the Adjournment Motion, dated June 21, 2006.

The Hearing was held before this Court on June 22, 2006. Having considered all of the evidence, testimonial and documentary, as well as the arguments of the parties, and their Proposed Findings of Fact and Conclusions of Law, and keeping in mind that [HN1] a court should not blindly accept findings of fact and conclusions of law proffered by the parties, *St. Clare's Hospital and Health Center v. Insurance Company of North America (In re St. Clare's Hospital and Health Center), 934 F.2d 15 (2d Cir.1991)*(citing *U.S. v. El Paso Natural Gas Co., 376 U.S. 651, 656, 84 S. Ct. 1044, 12 L.Ed.2d 12 (1964))*, and having conducted an independent analysis of the law and the facts, consistent with the record of the hearing on June 22, 2006 at which this Court made its preliminary findings and conclusions, this Court makes the following Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

IT IS HEREBY FOUND that:

The Spiegel Chapter 11 Cases

[*4] A. On March 17, 2003, each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.

B. Subsequently, Rosenbaum filed a proof of claim for $ 210,186.75 relating to services performed for the

13-10361-mg    Doc 21-7    Filed 09/23/13    Entered 09/23/13 17:10:27    Exhibit G1
Pg 4 of 17

Page 4

2006 Bankr. LEXIS 2158, *4; 46 Bankr. Ct. Dec. 272

Debtors in the Debtors' cases. This proof of claim was assigned to a third party.

C. This Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court or its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at, the hearings held before this Court during the pendency of these chapter 11 cases.

The Spiegel Plan

D. By order, dated May 25, 2005 (the "Confirmation Order"), this Court confirmed the Debtors' Modified First Amended Joint Plan of Reorganization of Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan"). [1] *In re Spiegel, Inc., 2005 Bankr. LEXIS 1113 (Bankr. S.D.N.Y. May 25, 2005)*. Regarding the events leading up to the hearing on confirmation of the Plan (the "Confirmation Hearing"), the Confirmation Order included, [*5] inter alia, the following findings:

> E. On March 28, 2005, the Debtors filed their First Amended Joint Plan of Reorganization of Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code (Docket No. 3082) and accompanying First Amended Disclosure Statement Pursuant to *Section 1125 of the Bankruptcy Code* for the First Amended Joint Plan of Reorganization of Affiliated Debtors (Docket No. 3084) (as modified, amended or supplemented from time to time and including all exhibits and schedules thereto, the "Disclosure Statement"). On May 23, 2005, the Debtors filed a Modified First Amended Joint Plan of Reorganization of Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code (Docket No. 3556) (the "Plan") [1] that incorporated certain non-material technical amendments and modifications.
>
> [1] Unless otherwise specified, capitalized terms and phrases used [in the Confirmation Order] have the meanings as defined in the Plan.
>
> * * *
>
> G. On March 29, 2005, after due notice and a hearing held on March 29, 2005, this Court entered an order (Docket No. 3116) (the "Disclosure Statement Order") that, among other things, (a) approved the Disclosure Statement as containing adequate information, . . . and (f) established notice and objection procedures in respect of confirmation of the [*6] Plan, including a form of confirmation hearing notice (the "Confirmation Hearing Notice").
>
> * * *
>
> I. Adequate and sufficient notice of the Confirmation Hearing and other requirements and deadlines, hearings and matters described in the Disclosure Statement Order was provided in compliance with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order. . . . [T]he Confirmation Hearing Notice was mailed on or about April 5, 2005 to Holders of Claims against and Equity Interests in the Debtors and other parties in interest. . . . [T]he Confirmation Hearing Notice was published, on April 14, 2005 in *USA Today* (National Edition), and on April 15, 2005 in *The New York Times* (National Edition), *The Wall Street Journal* (National Edition), and *The Globe and Mail* (National Edition). No other or further notice of the Confirmation Hearing was or is required.

*Confirmation Order, 2005 Bankr. LEXIS 1113, at * 3-6.*

1 Unless otherwise specified, capitalized terms and phrases used herein shall have the meanings provided in the Plan. The term "Affiliate" shall have the meaning ascribed to it in the Bankruptcy Code.

[*7] E. Under the Plan, holders of allowed general unsecured claims, which are classified in Class 4 (which voted to accept the Plan), received distributions of cash and stock in the reorganized Eddie Bauer anticipated to be worth approximately 91% of their allowed claims plus potential recoveries from a Creditor Trust. See First

13-10361-mg    Doc 21-7    Filed 09/23/13    Entered 09/23/13 17:10:27    Exhibit G1
Pg 5 of 17

Page 5

2006 Bankr. LEXIS 2158, *7; 46 Bankr. Ct. Dec. 272

Amended Disclosure Statement Pursuant to *Section 1125 of the Bankruptcy Code* for the First Amended Joint Plan of Reorganization of Affiliated Debtors (the "Disclosure Statement") p. 15.

F. The Plan, inter alia, incorporated a settlement (the "SHI Settlement") among various parties, including the Debtors, their official unsecured creditors' committee, and Spiegel Holdings, Inc. ("SHI"). SHI was Spiegel's majority shareholder and sole voting shareholder and is an Affiliate of the Named Defendants. Pursuant to the SHI Settlement: (i) SHI paid $ 104 million in cash to the Debtors; (ii) Otto [*8] KG and certain of its Affiliates retained approximately $ 26.9 million of general unsecured claims (the "Otto KG Goods Unsecured Claims") that were allowed as Class 4 Claims, but their recoveries on those claims were limited so they only would receive approximately 82.8% of their allowed claims (instead of the projected 91% for other Class 4 claims); and (iii) approximately $ 173.9 million in claims held by Otto-Spiegel Finance GmbH & Co. and SHI (the "SHI Unsecured Claims") were treated as claims solely against Spiegel on a non-substantively consolidated basis entitled to a distribution of 2.3% in cash (instead of the projected 91% for other Class 4 claims). Disclosure Statement pp. 9, 16. Thus, the total value of the concessions of Affiliates of the Named Defendants was not less than $ 260.4 million, representing the sum of: (a) $ 104 million in cash from SHI; (b) approximately $ 2.2 million in concessions on the Otto KG Goods Unsecured Claims; plus (c) approximately $ 154.2 in concessions on the SHI Unsecured Claims. In exchange for these and other concessions, the Plan provided for SHI, Otto KG, and their respective Affiliates -- including all of the Named Defendants -- [*9] (all of whom were among the "SHI Released Parties" under the Plan) to receive releases (the "Plan Release") from any and all claims arising on or before the Plan's "Effective Date" that: (i) the Debtors and their subsidiaries may hold against the SHI Released Parties; or (ii) the Debtors' creditors may hold against the SHI Released Parties related to the Debtors or their subsidiaries. Plan § 13.4.

G. In pertinent part, the Confirmation Order incorporated the Plan Release and enjoined the Debtors' creditors from asserting the released claims (collectively, the "Plan Release and Injunction") and also made related findings and conclusions:

28. *Rule 9019* SHI Settlement. Pursuant to *section 1123(b)(3) of the Bankruptcy Code* and Bankruptcy *Rule 9019*, the Plan incorporates the SHI Settlement. The SHI Settlement plays an important part in the Plan, and absent the releases and corresponding injunction that are critical components of the SHI Settlement, the Released Parties (including, but not limited to, the Holders of the Otto KG Goods Unsecured Claims and the SHI Unsecured Claims) would not be willing to enter into the SHI Settlement. The [*10] SHI Settlement is the compromise of disputed claims and a good faith settlement and release of those claims and associated alleged injuries. Such settlement, as reflected in the relative distributions and recoveries of Holders of Allowed Claims under the Plan, (i) will save the Debtors and their estates the costs and expenses of prosecuting various disputes, the outcome of which is likely to consume substantial resources of the Debtors' estates and require substantial time to adjudicate and (ii) have facilitated the creation and implementation of the Plan and benefits the Debtors' estates and creditors. Accordingly, such settlement is fair, equitable and reasonable.

* * *

32. Releases, Exculpations and Injunctions. Pursuant to *section 1123(b)(3) of the Bankruptcy Code* and Bankruptcy *Rule 9019(a)*, the settlements, compromises, re-leases, discharges, exculpations, and injunctions set forth in the Plan and implemented by this Confirmation Order, including but not limited to the SHI Settlement, are fair, equitable, reasonable, in good faith and in the best interests of the Debtors and their estates, the Reorganized Debtors, the Creditor Trust Debtors, the [*11] Creditors' Committee, the Creditor Trust, Eddie Bauer Holdings, and Holders of Claims and Equity Interests. The releases of non-Debtors under the Plan and related injunctions are fair to Holders of Claims

13-10361-mg    Doc 21-7    Filed 09/23/13    Entered 09/23/13 17:10:27    Exhibit G1
Pg 6 of 17

Page 6

2006 Bankr. LEXIS 2158, *11; 46 Bankr. Ct. Dec. 272

and Equity Interests and are necessary to the proposed reorganization of the Debtors and the successful administration of their estates, thereby satisfying the requirements of *In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285 (2d Cir. 1992)*, *In re Johns-Mansville, 837 F.2d 89 (2d Cir. 1988)*, and *In re Ionosphere Clubs, Inc., 184 B.R. 648, 655 (S.D.N.Y. 1995)*. The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the releases, exculpations and injunctions provided for in Article XIII of the Plan.

* * *

37. Provisions of Plan and Order Nonseverable and Mutually Dependent. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

* * *

41. Binding Effect. Pursuant to *section 1141 of the Bankruptcy Code*, except as otherwise expressly provided in the Plan, [*12] on and after the Effective Date, the Plan and all exhibits thereto . . . shall bind all Holders of Claims and Equity Interests.

* * *

52. SHI Settlement. The SHI Settlement is a good faith settlement and release of claims and associated alleged injuries, is fair and reasonable and is accordingly approved in all respects pursuant to Bankruptcy *Rule 9019(a)* and *section 1123(b)(3)(A) of the Bankruptcy Code*. This Court has found that (a) the SHI Settlement was reached as a result of arm's-length good faith negotiations among the parties, (b) the SHI Settlement plays a vital part in the Plan, and absent the releases and corresponding injunctions that are critical components of the SHI Settlement, the Released Parties (including, but not limited to, the Holders of the Otto KG Goods Unsecured Claims and the SHI Unsecured Claims) would not be willing to enter into the SHI Settlement, and (c) such settlement, as reflected in the relative distributions and recoveries of Holders of Allowed Claims under the Plan, (i) will save the Debtors and their estates the substantial costs and expenses of prosecuting various disputes, the outcome of which is likely to [*13] consume substantial re-sources of the Debtors' estates and require substantial time to adjudicate and (ii) has facilitated the creation and implementation of the Plan and provided substantial benefits to the Debtors' estates and creditors.

* * *

54. Section 13.4(b) Injunction On the Effective Date, each Holder of a Claim (but not shareholders or former shareholders of Spiegel, Inc. solely in their capacity as shareholders or former shareholders of Spiegel, Inc. or any Governmental Unit) are hereby permanently enjoined from asserting any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever (including those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence taking place during the period beginning at the beginning of time through and including the Effective Date and related to the Debtors or their direct or indirect subsidiaries, including, but not limited, to Contribution Claims, against any of the Released Parties (the "Section 13.4(b) [*14] Injunction"). This Section 13.4(b) Injunction shall apply to: (i) any Person or Entity that is or was the Holder of a Claim on or after the Petition Date. . . .

13-10361-mg    Doc 21-7    Filed 09/23/13    Entered 09/23/13 17:10:27    Exhibit G1
Pg 7 of 17

Page 7
2006 Bankr. LEXIS 2158, *14; 46 Bankr. Ct. Dec. 272

55. Other Injunctions. All Persons or Entities that release claims pursuant to Sections 13.2, 13.3, 13.4 and 13.6 of the Plan are hereby permanently enjoined from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such released claims except as otherwise permitted pursuant to Section 2.6 of the Plan; (b) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order on such released claims; and (c) creating, perfecting, or enforcing any encumbrance of any kind on such released claims. . . .

56. Releases. Except as otherwise expressly provided in the Plan, this Confirmation Order or a separate order of this Court, the release provisions set forth in Article XIII of the Plan are approved.

* * *

86. Substantial Consummation Substantial consummation of the Plan shall be deemed to occur on the Effective Date.

*Confirmation Order, 2005 Bankr. LEXIS 1113, at \*31-34, 36-38, 48-53, 80-81*(emphasis added).

H. Hence, in entering [*15] the Confirmation Order, this Court found, inter alia, that: (a) the Plan Release and Injunction were "critical components" of the SHI Settlement, which played "a vital part in the Plan"; and (b) the Plan Release and Injunction were "necessary to the proposed reorganization of the Debtors and the successful administration of their estates." *2005 U.S. Bankr. LEXIS 113. PP 32, 52*.

I. The Effective Date of the Plan was June 21, 2005. In connection with the Effective Date, over $260 million in cash and other consideration was contributed to the Debtors' estates on behalf of the SHI Released parties, which included all of the Named Defendants.

The Illinois Action

J. On January 30, 2004, Rosenbaum commenced the Illinois Action against the Named Defendants by filing a complaint in the Illinois Court. On October 25, 2004, Rosenbaum filed its First Amended Complaint (the "Complaint") in the Illinois Action. See Rosenbaum Memo, Exhibit 2. In the Complaint, Rosenbaum asserted a variety of claims (the "Initial Copyright Claims") against the Named Defendants related to the alleged improper use by Doosan and Sumisho of photographs they received from Spiegel and upon which Rosenbaum alleges [*16] it holds the exclusive copyright. The Complaint also asserts that Otto KG is "vicariously liable" for the conduct of Spiegel, Doosan, and Sumisho.

K. The Complaint named Bradford Matson as a defendant in addition to the Named Defendants. Mr. Matson was sued as the Spiegel officer in charge of advertising and of Spiegel's relationship with Rosenbaum. Complaint PP 96, 99.

L. Also in the Illinois Action, both Doosan and Sumisho contested the Illinois Court's jurisdiction. The Illinois Court found it had jurisdiction over Doosan and Sumisho based on the relationship of the Copyright Claims to Spiegel. Memorandum Opinion and Order, *2005 U.S. Dist. LEXIS 21528, Case No. 04 C767 (N.D. Ill. E. Div. September 26, 2005) (the "Jurisdiction Opinion") pp. \*6-7*. See Objection, Exhibit B.

M. Once they all had been served with the Complaint, the Named Defendants brought the Plan Release and Injunction to the Illinois Court's attention in November, 2005. See Rosenbaum Memo, Exhibit 4. After a hearing on November 29, 2005, the Illinois Court stayed the Illinois Action subject to any ruling from this Court regarding the scope and application of the Plan Release and Injunction. See Rosenbaum Memo, Exhibit 3.

N. [*17] Also addressed at the November 29 hearing was a motion of Rosenbaum and certain individuals for leave to file a Second Amended Class Action Complaint against, inter alia, the Named Defendants in the Illinois Action. See Reply, Exhibit A. Among the proposed plaintiffs for a subsequent proposed Second Amended Class Action Complaint in the Illinois Action (the "Class Action Complaint") were Stupakoff and James. See Rosenbaum Memo, Exhibit 1. As drafted, the Class Action Complaint would add additional plaintiffs, an additional defendant, and additional causes of action to those included in the Complaint (collectively, with the Initial Copyright Claims, the "Copyright Claims"). The original motion for leave to file a Second

13-10361-mg    Doc 21-7    Filed 09/23/13    Entered 09/23/13 17:10:27    Exhibit G1
Pg 8 of 17

Page 8

2006 Bankr. LEXIS 2158, *17; 46 Bankr. Ct. Dec. 272

Amended Class Action Complaint was continued and stayed pending Rosenbaum's request for relief from this Court. See Rosenbaum Memo, Exhibit 3.

The Motions

O. On May 4, 2006, more than five months after the Plan Release and Injunction were brought to the Illinois Court's attention, Rosenbaum filed the Motion [Docket No. 4405] and supporting Memorandum of Law in Support of the Motion of Peter Rosenbaum Photography Corporation ("Rosenbaum [*18] Memo") [Docket No. 4406]. Thereafter, the Named Defendants filed their Objection [Docket No. 4431], the parties agreed to a two week adjournment of the Hearing, and Rosenbaum filed its Reply [Docket No. 4433].

P. On June 21, 2006, Stupakoff and James filed their Adjournment Motion [Docket No. 4438]. Later that day, the Named Defendants filed their objection to the Adjournment Motion [Docket No. 4441].

**CONCLUSIONS OF LAW**

IT IS HEREBY DETERMINED THAT:

The Adjournment Motion

1. There is no basis for adjourning the June 22, 2006 hearing on Rosenbaum's Motion, particularly as: (a) the parties and the Court had expended significant effort to prepare for the Hearing; (b) the Hearing had been adjourned once before; and (c) Rosenbaum, Stupakoff and James each were named as proposed co-plaintiffs in the Class Action Complaint sought to be filed in the Illinois Action. See Rosenbaum Memo, Exhibit 1. The Adjournment Motion is denied.

2. Stupakoff and James' alternative request, for a special finding that any ruling on Rosenbaum's Motion shall have no preclusive effect on any motion or pleading filed by Stupakoff and James, has no legal basis or foundation. [*19] The request for a special finding is denied.

Jurisdiction and Venue

3. This Court has jurisdiction over these chapter 11 cases pursuant to *28 U.S.C. § § 157* and *1334*. [HN2] Confirmation of the Plan is a core proceeding under *28 U.S.C. § 157(b)(2)* and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code. Venue is proper before this Court pursuant to *28 U.S.C. § § 1408* and *1409*.

4. [HN3] A Bankruptcy Court also has inherent or ancillary jurisdiction to interpret and enforce its own orders, including the Confirmation Order, wholly independent of the statutory grant of jurisdiction under *28 U.S.C. § 1334. Local Loan Co. v. Hunt, 292 U.S. 234, 239, 54 S. Ct. 695, 78 L. Ed. 1230 (1934)*. [HN4] A Bankruptcy Court's jurisdiction continues post-confirmation to protect its confirmation decree, to prevent interference with the execution of a confirmed plan, and to otherwise aid in its operation. *In re Chateaugay Corp., 201 B.R. 48, 64 (Bankr. S.D.N.Y. 1996)* (hereinafter "Chateaugay") (citing *In re Dilbert's Quality Supermarkets, Inc., 368 F.2d 922, 924 (2d Cir. 1966))*. [*20]

Subject Matter Jurisdiction To Approve Third Party Plan Release

5. This Court has held that [HN5] "'[f]or purposes of determining *section 1334(b)* jurisdiction, it is necessary only to determine whether a matter is at least "related to" the bankruptcy.'" *Chateaugay, 201 B.R. at 63* (quoting *Michigan Employment Security Comm'n v. Wolverine Radio Co., 930 F.2d 1132, 1141 (6th Cir. 1991)*, cert. dismissed, *503 U.S. 978, 112 S. Ct. 1605, 118 L. Ed. 2d 317 (1992))*. This Court further stated that the appropriate test for determining whether a claim is "related to" a debtor is "whether the outcome of a proceeding 'might have any "conceivable effect" on the bankrupt estate' or if the proceeding has 'any significant connection' with the bankrupt estate." *Chateaugay, 201 B.R. at 63* (quoting *Publicker Indus., Inc. v. U.S., 980 F.2d 110, 114 (2d Cir. 1992))*. This Court then interpreted the conceivable effect test to be "extremely broad" so as to "find related to jurisdiction in a wide variety of circumstances." *Chateaugay, 201 B.R. at 63* (citations omitted); see also *In re Singer, 2002 U.S. Dist. LEXIS 8609,* [*21] *at *14 (S.D.N.Y. 2002)*. Based on such analysis, this Court then held that it "has the power to enjoin [suits] against non-debtor third parties . . . where, as here, the actions against such third parties have at least a conceivable effect upon the Debtors or implicate the interpretation or enforcement of this Court's orders." *Chateaugay, 201 B.R. at 66*.

6. [HN6] "'In bankruptcy cases, a Court may enjoin a creditor from suing a third party, provided the injunction

13-10361-mg    Doc 21-7    Filed 09/23/13    Entered 09/23/13 17:10:27    Exhibit G1
Pg 9 of 17

Page 9

2006 Bankr. LEXIS 2158, *21; 46 Bankr. Ct. Dec. 272

plays an important part in the Debtor's reorganization plan.'" *In re Metromedia Fiber Network, 416 F.3d 136, 141 (2d Cir. 2005)* (hereinafter "Metromedia") (quoting *In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 293 (2d Cir. 1992)* (hereinafter "Drexel"); *In re XO Communications, Inc., 330 B.R. 394, 436-38 (Bank. S.D.N.Y. 2005)*. Courts also approve nondebtor releases when: (1) the estate received substantial consideration, *Drexel, 960 F.2d at 293*; (2) the enjoined claims were "channeled" to a settlement fund rather than extinguished, *MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89, 93-94 (2d Cir. 1988)*; *In re A.H. Robins Co., 880 F.2d 694, 701 (4th Cir. 1989)*; [*22] (3) the enjoined claims would indirectly impact the Debtor's reorganization "by way of indemnity or contribution," Id.; or (4) the plan otherwise provided for the full payment of the enjoined claims, Id.; *Metromedia, 416 F.3d at 142*. In addition, nondebtor releases also may be tolerated if the affected creditors consent. Id. (citing *In re Specialty Equip. Cos., Inc., 3 F.3d 1043, 1047 (7th Cir. 1993))*.

7. In entering the Confirmation Order and incorporating the Plan Release and Injunction, this Court found that the plan release and injunction were "critical components of the SHI Settlement" that played a "vital part in the plan" and were "necessary to the proposed reorganization of the Debtors and the successful administration of their estates." Confirmation Order PP 28, 32, 52, *2005 Bankr. LEXIS 1113, at \*31-33 (Bankr. S.D.N.Y. May 25, 2005)*. Consequently, this Court had the power to enjoin creditors from bringing actions against the SHI Released Parties both because the Plan Release and Injunction played an important part in the Plan and because a substantial contribution to the Debtors' estates was made on behalf of the [*23] SHI Released Parties. See *Metromedia, 416 F.3d at 141*; *Drexel 960 F.2d at 293*.

8. Nonetheless, Rosenbaum contends this Court had "no subject matter jurisdiction over the [Copyright Claims] because such claims will have no practical or legal consequence for the Debtors." Rosenbaum Memo p. 10. Yet, the substantial contributions of cash and other consideration to the Debtors' reorganization -- on behalf of the Named Defendants -- were an essential component of the Plan. Those contributions provided for certain distributions that otherwise would not have been made available. In fact, the Disclosure Statement projected the Debtors' Plan would provide at least a 91% distribution to the Debtors' general unsecured creditors, whose claims were classified in Class 4, which voted to accept the Plan.

9. As to the Named Defendants sharing an identity of interest with the Debtors such that the Copyright Claims could impact the Debtors, the Named Defendants could have sought contribution and/or indemnification from Spiegel (or its officers and perhaps other Debtors) because, among other things, Spiegel provided the photographs to Doosan and Sumisho and authorized [*24] them to use the photos on the basis that use of the photographs was unrestricted. Such contribution claims would have impacted both the allocation of the Debtors' property among creditors (including, potentially, directors and officers' insurance policy proceeds) and altered the Debtors' liabilities. See *Hunnicutt Co. v. TJX Cos., Inc., (In re Ames Dept. Stores, Inc.), 190 B.R. 157, 160-161 (S.D.N.Y. 1995)* (holding that the Court had jurisdiction over postpetition litigation between nondebtors and that litigation was "related to the bankruptcy case because the outcome of the dispute has the potential to alter the distribution of the debtor's estate to creditors.") (emphasis added). [2]

> [2] Rosenbaum argues that any such contribution or indemnification claims were released under the Plan and, therefore, there is no longer any risk to the Debtors. See Reply pp. 11-13. Nevertheless, the potential for such claims must be analyzed at the time of Plan confirmation. Otherwise, virtually no third party plan release would remain valid because in almost every instance the released third party provides a reciprocal release to the debtor.

[*25] 10. Still another impact of the Copyright Claims on the Debtors results from the fact the alter ego type claims alleged by Rosenbaum as the sole or partial basis for the Copyright Claims asserted against the Named Defendants are by law property of the Debtors and the resolution of alter ego type claims was integral to the SHI Settlement incorporated into the Plan. See *Kalb, Voorhis & Co. v. Am. Fin. Corp., 8 F.3d 130, 133 (2d Cir. 1993)* ("[G]ranting the bankruptcy trustee exclusive standing to assert alter ego claims furthers the bankruptcy policy of ensuring that all similarly situated creditors are treated fairly: the alter ego action is based upon allegations that if proven would benefit all the debtor's creditors, i.e., making more assets available to satisfy the debtor's debts."); *In re Enron Corp., 2003 Bankr. LEXIS 330, at \*11 (Bankr. S.D.N.Y. Apr. 17, 2003)* ("the trustee

13-10361-mg    Doc 21-7    Filed 09/23/13    Entered 09/23/13 17:10:27    Exhibit G1
Pg 10 of 17

Page 10

2006 Bankr. LEXIS 2158, *25; 46 Bankr. Ct. Dec. 272

or debtor-in-possession would have exclusive standing to maintain a Delaware corporation's alter ego claim of a general nature."). Accordingly, such claims directly impact the Debtors' rights and property. See *Chateaugay, 201 B.R. at 64-65* (in which this [*26] Court stayed lawsuits against nondebtors due, inter alia, to concerns about the lawsuits' impact on the debtors' assets and cited Wolverine and Hunnicutt approvingly).

11. As to the potential impact of the Copyright Claims on any copyrights of the Debtors related to Rosenbaum's photographs, Rosenbaum argues that "[i]t cannot be disputed . . . that Rosenbaum exclusively owns the copyrights in all photographs it created," Reply p. 10, and, therefore, Rosenbaum's pursuit of the Copyright Claims could not have any "conceivable effect" on the Debtors' estate to warrant subject matter jurisdiction. See *Chateaugay, 201 B.R. at 63*. Although Rosenbaum submitted affidavits of Peter Rosenbaum and Bradford Mattson supposedly supporting Rosenbaum's exclusive ownership of the relevant copyrights, see Reply, Exhibits B and C, there has been no fact discovery by the Named Defendants in the Illinois Action. Hence, it remains possible that the Named Defendants could show Spiegel had a claim to copyrights on the photographs. Indeed, such a conclusion would be consistent with the allegations in paragraphs 26 to 34 of the Affidavit of Bradford Matson that Spiegel provided [*27] Rosenbaum's photographs to the Named Defendants and authorized them to use the photos. [3] See Reply, Exhibit C. Thus, several defenses of the Named Defendants to the Copyright Claims could be based on the position that Spiegel owned the copyright on the disputed photos entirely or in part and, therefore, the Copyright Claims seek to impact property of the Debtors' estates. See *In re Wolverine Radio Co., 930 F.2d at 1143* (risk of collateral estoppel of debtor from litigation against nondebtor enough to confer jurisdiction); *In re Paris Indus. Corp., 132 B.R. 504, 507 (D. Me. 1991)* (enjoining products liability suit against buyer of debtor's assets based on post sale incident because unless free and clear language of sale order was enforced, purchaser would have grounds to sue the debtor to seek rescission).

---

[3] Contrary to Rosenbaum's assertion, the acceptance of the truth of Rosenbaum's fact allegations for the purpose of considering the Motion does not require acceptance of Rosenbaum's legal conclusions or preclude consideration of the Named Defendants' potential defenses. See Reply p. 10. Otherwise, a creditor such as Rosenbaum asserting enjoined claims could divest the Bankruptcy Court of subject matter jurisdiction to enforce the injunction just by alleging facts and legal conclusions that would preclude such jurisdiction.

[*28] 12. Consequently, it was appropriate for the Plan Release and Injunction to apply to the Copyright Claims.

The Copyright Claims Are "Related To" The Debtors

13. Rosenbaum argues that even if the Plan Release and Injunction are valid, they do not apply to the Copyright Claims because such claims are not "related to" the Debtors as required by the Plan's language. Nevertheless, any fair reading of the Complaint demonstrates the Copyright Claims are related to the Debtors, including Rosenbaum's allegations that: (a) "Spiegel" and certain of its employees entered into conspiracies with at least some of the Named Defendants to misuse Rosenbaum's copyrighted photographs; (b) the Spiegel executive in charge of advertising was actively involved in the alleged conspiracies to wrongfully use Rosenbaum's photos; (c) pursuant to those conspiracies, Spiegel improperly provided the Named Defendants with Rosenbaum's photos; and (d) Otto KG is "vicariously liable for the wrongful conduct of Spiegel". See e.g., Complaint PP 1, 2, 8, 12, 96, 99, 128, 129, 133, 134, 142, 144, 210, 215, 219, 226. The Class Action Complaint expands on such allegations regarding the Debtors' involvement.

[*29] 14. Such allegations demonstrate that rather than being "independent" of the Debtors' conduct, the Copyright Claims are based upon the Debtors' conduct entirely or almost entirely. The additional allegation that Doosan and Sumisho used Rosenbaum's photographs overseas once the conspiracy with Spiegel and its officers had been initiated and the photos had been provided by Spiegel, hardly serves to make the Copyright Claims unrelated to the Debtors. Rosenbaum, however, makes three arguments to show the Copyright Claims are not "related to the Debtors". The Court rejects these arguments.

15. Rosenbaum first argues that a claim is not "related to the Debtors" under the Plan unless a prerequisite for pursuit of the claim is initiation of a lawsuit against the Debtors. Rosenbaum Memo at 5. See

13-10361-mg    Doc 21-7    Filed 09/23/13    Entered 09/23/13 17:10:27    Exhibit G1
Pg 11 of 17

Page 11

2006 Bankr. LEXIS 2158, *29; 46 Bankr. Ct. Dec. 272

Reply pp. 5-6 (Rosenbaum submits that its "direct claims" asserted against the Named Defendants for which no Debtor is named as a co-defendant are not "related to the Debtors"). Nonetheless, relevant case law is to the contrary. For example, this Court rejected an identical argument made by Rosenbaum when finding the Court could enjoin lawsuits against nondebtors even though the debtors were [*30] not named in those lawsuits:

> Adamson and Back contend that this cause of action [to enjoin their Virginia Action against nondebtors] should be dismissed because the Virginia Action "only seeks recovery against [LTV Vehicle] pursuant to the express terms of the Stipulation and Order and no recovery is sought against any of the other Debtors. Defendants' Brief p. 28. As set forth above, the Virginia Action and Adamson's threatened actions do constitute improper collateral attacks on this Court's orders. Moreover, since the Debtors are exposed to potential liability (e.g., through an indemnity claim by New AM General) and the other adverse effects set forth above, resulting from such collateral attacks, the fact that the Virginia Action does not seek a direct imposition of liability against the Debtors (other than to the extent provided in the Stipulation and Order) is irrelevant.

*Chateaugay Corp., 201 B.R. at 68* (emphasis added). Thus, it is irrelevant that Rosenbaum chose not to name any Debtor as a defendant in any of the complaints against the Named Defendants or to file a proof of claim in these cases based on the Copyright Claims. Instead, [*31] the plain meaning of the "related to the Debtors" phrase in the Plan encompasses the Copyright Claims because, as found above, the Debtors are integral to the Copyright Claims. [4]

> 4    Contrary to Rosenbaum's suggestion, the phrase "related to" as used in the Plan has a broad meaning based on the very contract interpretation rules Rosenbaum espouses. "In many areas of law . . . [HN7] the use of 'arising out of' language in a contract is considered unambiguous and viewed as reasonably supporting only a broad reading." *Nycal Corp. v. Inoco PLC, 1998 U.S. App. LEXIS 31216, No. 98-7058, 1998 WL 870192, at *2 (2d Cir. Dec. 9, 1998)*; see also *Richards v. Princeton Ins. Co., 178 F. Supp. 2d 386, 392-93 (S.D.N.Y. 2001)* (in the context of insurance policies "[t]he term 'arising out of is to be interpreted in a broad and comprehensive sense to mean originating from or growing out of . . . ") (internal quotations omitted). The phrase "related to" is even "broader in scope" than "arising out of," does not require a causal relation, has been found to be synonymous with phrases such as "in connection with" "associated with," "with reference to," and "with respect to," and is not ambiguous in spite of its breadth. *Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128 (2d Cir. 2001)*; see also *Mehler v. Terminis Int'l Co, 205 F.3d 44, 49 (2d Cir. 2000)* (finding arbitration clause containing "arising out of or relating to" language to be "classically broad" and "precisely the kind of broad arbitration clause that justifies a presumption of arbitrability"); *In re Johns Manville Corp., 340 B.R. 49, 60 (S.D.N.Y. 2006)* ("As the Bankruptcy Court concluded: 'The Court's repeated use of the term "arising out of" and "related to" were not gratuitous or superfluous; they were meant to provide the broadest [third party plan release] protection possible to facilitate global finality for Travelers as a necessary condition for it to make a significant contribution to the Manville estate.'") (citing 2004 WL 1876046, at *31.); *Vt. Pure Holdings, Ltd. v. Descartes Sys. Group, Inc., 140 F. Supp. 2d 331, 334-35 (D. Vt. 2001)* (the "Second Circuit has . . . held that the ordinary meaning of the term 'related to' was clear, unambiguous, and quite broad . . . and . . . has been defined simply as 'connected by reason of an established or discoverable relation'") (citation omitted).

[*32] 16. Second, Rosenbaum argues that rules of contract interpretation should govern the Court's interpretation of the Plan and such rules require the Plan to be interpreted consistent with existing law. See Reply pp. 3-4. Based on that premise, Rosenbaum argues the Court must read limits into the "related to the Debtors" phrase in the Plan Release and Injunction because existing Second Circuit law under Metromedia prohibits a third party plan release from granting abusive "blanket immunity" allegedly inherent in a release of the Copyright Claims. Id. Yet Metromedia merely clarifies

13-10361-mg    Doc 21-7    Filed 09/23/13    Entered 09/23/13 17:10:27    Exhibit G1
Pg 12 of 17

Page 12

2006 Bankr. LEXIS 2158, *32; 46 Bankr. Ct. Dec. 272

the standard for granting third party plan releases, rather than prohibiting any particular kind of release. See *416 F.3d at 141-42*. Further, as established above, the Plan Release and Injunction were approved in accordance with the standard set forth in Metromedia and other Second Circuit precedent, such as Drexel.

17. Moreover, Metromedia does not stand for the proposition asserted by Rosenbaum. In effect, the Second Circuit did not interpret the third party plan release in that case so as to conform the release to the Second Circuit standard, but rather found [*33] that as written, the release failed to comply with the applicable standard. See *Metromedia, 416 F.3d at 141-42*. Similarly, Rosenbaum's reliance on XO is misplaced. The XO Court interpreted the third party plan release at issue based on then applicable law not because rules of contract interpretation required such an approach, but rather because the express language of the XO plan limited the scope of the release to what was then permissible under applicable law. See *In re XO Communications, Inc. 330 B.R. at 439-41*.

18. Third, Rosenbaum asserts that the Named Defendants effectively admitted the Copyright Claims do not relate to the Debtors because the Named Defendants did not file pleadings in this Court: (a) asserting the Copyright Claims were subject to the automatic stay in these cases; (b) commencing an adversary proceeding seeking to stay the Copyright Claims; or (c) removing Rosenbaum's action to this Court. Rosenbaum Memo at 6-7; Reply p. 7. As to the automatic stay, which only applies to claims against the Debtors, there is no requirement that a claim be subject to the automatic stay in order for the claim to be "related to" the [*34] Debtors. As to seeking a discretionary stay or removal of the Copyright Claims, those may be options, but the Named Defendants had no obligation to pursue them and, therefore, there could be no admission if such remedies were not sought Regardless, the Plan Release and Injunction ultimately obtained by the Named Defendants and their Affiliates constitute the exact relief Rosenbaum suggests the Named Defendants need to have sought.

Estoppel

19. Even, however, if the Copyright Claims somehow were not "related to" the Debtors for purposes of interpretation of the Plan Release and Injunction or for evaluating whether subject matter jurisdiction exists, Rosenbaum would be precluded from asserting those arguments based on collateral estoppel and judicial estoppel arising from Rosenbaum's litigation of personal and subject matter jurisdiction in the Illinois Action.

20. The elements necessary for collateral estoppel here based on a determination in the Illinois Action are: "(1) the issues in both proceedings must be identical; (2) the issue must have been actually litigated and actually decided in the prior proceeding; (3) there must have been a full and fair opportunity to litigate [*35] the issue in the prior proceeding; and (4) the resolution of the issue must have been necessary to support a valid and final judgment on the merits." U.S. v. U.S. Currency in Amount of *$ 119,984, 304 F.3d 165, 172 (2d Cir. 2002)*.

21. Rosenbaum concedes that all of the elements for collateral estoppel are present here other than the issues being identical. See Reply p. 9, n. 11. In effect: (a) the "related to" issue was "actually litigated and actually decided" in the Jurisdiction Opinion entered in the Illinois Action; (b) the Illinois Action provided "a full and fair opportunity to litigate" the "related to" issue; and (c) the Illinois Court's Jurisdiction Opinion was "necessary" to provide that Court with jurisdiction.

22. As to the issues being identical, Rosenbaum raises the following three points regarding the collateral estoppel impact of the Illinois Court's personal jurisdiction ruling, which found personal jurisdiction over Doosan in Illinois based entirely on Doosan's alleged connection with Spiegel. Jurisdiction Opinion pp. 4-5, Reply pp. 8-9:

> (a) Rosenbaum argues that the Illinois Court never specified whether it found personal jurisdiction over [*36] Doosan based on the "arising out of" standard or the "related to" standard. That distinction, however, is irrelevant because "arising out of" is a subset of "related to". See *Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128 (2d Cir. 2001)* (the phrase "related to" is even "broader in scope" than the phrase "arising out of"). Thus, a ruling under either standard would signify the claims against Doosan were "related to" the Debtors.

> (b) Rosenbaum suggests the two standards differ because personal jurisdiction is based on whether a defendant's contact is "related to" the

13-10361-mg    Doc 21-7    Filed 09/23/13    Entered 09/23/13 17:10:27    Exhibit G1
Pg 13 of 17

Page 13

2006 Bankr. LEXIS 2158, *36; 46 Bankr. Ct. Dec. 272

controversy while application of the Plan Release and Injunction is based on whether the Copyright Claims "related to" the Debtors. Yet, Rosenbaum's theory is incorrect because the controversy and the Copyright Claims are identical and, in any event, the standards do not differ.

(c) Rosenbaum argues that the Jurisdiction Opinion only covers Doosan on the personal jurisdiction issue. While that is true, as the Copyright Claims include similar allegations against the other Named Defendants, this distinction is irrelevant.

23. Notably, Rosenbaum does not even address the Illinois Court's [*37] ruling on subject matter jurisdiction. See Reply pp. 8-9. The Illinois Court found subject matter jurisdiction to entertain the Complaint based entirely on Rosenbaum's allegations of unauthorized predicate acts by Spiegel that the Named Defendants allegedly knew of and induced. Jurisdiction Opinion pp. 6-7 ("In the instant case, any unauthorized reproduction of plaintiff's photographs by Spiegel is a violation of the Copyright Act within the United States and constitutes a predicate act of direct infringement."). Hence, there can be no dispute that the Illinois Court's subject matter determination resolved the issue of whether the Copyright Claims are "related to the Debtors". Consequently, Rosenbaum is subject to collateral estoppel on the "related to" issue.

24. The elements necessary for judicial estoppel to apply here based on the Jurisdiction Opinion are: "[1] the party against whom the estoppel is asserted must have argued an inconsistent position in a prior proceeding; and [2] the prior inconsistent position must have been adopted by the court in some manner." *Bates v. Long Island R. Co., 997 F.2d 1028, 1038 (2d Cir. 1993)*.

25. Rosenbaum concedes that [*38] all of the elements for judicial estoppel are present here other than the issues being identical; i.e., that Rosenbaum asserted a prior inconsistent position in the Illinois Action. See Reply p. 9, n. 11. Yet the same analysis applicable to collateral estoppel demonstrates that Rosenbaum asserted a prior inconsistent position in the Illinois Action. Accordingly, judicial estoppel also precludes Rosenbaum's "related to" argument.

Res Judicata

26. [HN8] Once, as here, a confirmation order has become final and nonappealable, a collateral attack on the order is precluded by res judicata principles and, therefore, the confirmation order is no longer subject to challenge based on the standard applicable to the initial approval of a third party plan release. *Stoll v. Gottlieb, 305 U.S. 165, 171-72, 59 S. Ct. 134, 83 L. Ed. 104(1938)*. In Stoll v. Gottlieb, the Supreme Court held that the doctrine of res judicata precludes a creditor from enforcing a guaranty obligation of a nondebtor once that obligation had been released pursuant to a plan of reorganization of the debtor/primary obligor that has been approved by a final, nonappealable order. The Supreme Court found that res judicata [*39] applied whether or not the bankruptcy court initially had the power to grant the release, reasoning as follows: "Every court in rendering a judgment tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter . . . . [Thereafter,] the Court in which the plea of res judicata is made has not the power to inquire again into that jurisdictional fact." Id. (citations omitted).

27. Based on Stoll v. Gottlieb, the Fifth Circuit held that the doctrine of res judicata prevents a creditor from enforcing a nondebtor's guaranty obligation that was released pursuant to a plan confirmed by a final, nonappealable order. *Republic Supply Co. v. Shoaf, 815 F.2d 1046, 1054 (5th Cir. 1987)*. The Fifth Circuit reasoned that "[w]e read Stoll to mean, therefore, that at least in the case of a bankruptcy court's exceeding its statutory authority by releasing a guarantor of a debtor, the interest in finality surpasses any threat that courts will engage in drastic overreaching." Id. Hence, whether or not this Court properly approved the Plan Release and Injunction in connection with confirmation of the Plan, res judicata principles [*40] preclude a collateral attack on the Plan Release and Injunction now.

28. Rosenbaum, however, argues that it is not collaterally attacking the Confirmation Order, but merely seeking an interpretation of the Order. See, e.g., Reply pp. 6, 13-15. Rosenbaum's three arguments in this regard are incorrect:

(a) Rosenbaum asserts that the Illinois Court "directed the parties to go to this Court to get an interpretative ruling" and, therefore, Rosenbaum's motion must be

13-10361-mg    Doc 21-7    Filed 09/23/13    Entered 09/23/13 17:10:27    Exhibit G1
Pg 14 of 17

Page 14

2006 Bankr. LEXIS 2158, *40; 46 Bankr. Ct. Dec. 272

viewed as such an attempt Reply p. 13 (citing Transcript attached as Exhibit A to the Reply). In fact, the Illinois Court found that the Plan Release and Injunction enjoined the Illinois Action unless Rosenbaum could obtain relief in this Court. See Reply, Exhibit A; Motion, Exhibit 3. Regardless, a direction by the Illinois Court to seek relief here cannot convert a collateral attack into a request for an interpretive ruling.

(b) Rosenbaum suggests that a collateral attack on a confirmation order only occurs when revocation of a confirmation order is sought based on fraud under *section 1144 of the Bankruptcy Code*. See Reply p. 15. While a request for relief based on fraud certainly is [*41] a collateral attack on a confirmation order, there are other types of collateral attacks as well. Here, among other things, Rosenbaum argues the Plan Release and Injunction were improperly approved because: (i) these case are not the type of "rare cases" Metromedia viewed as justifying a third party plan release; (ii) prior to entry of the confirmation order, there was inadequate disclosure that the Plan Release and Injunction would apply to the Copyright Claims; and (iii) equitable considerations should preclude such application. See Reply pp. 4, 5, 18. Yet, prior to and in connection with confirming the Plan, this Court already determined that: (x) the Second Circuit standard for approval of a third party plan release was satisfied here; (y) there was adequate disclosure and notice regarding confirmation of the Plan; and (z) the SHI Settlement "is fair, equitable and reasonable". Confirmation Order PP G, I, 28, 32, 52.

(c) Rosenbaum contends that In re XO Communications, Inc. authorizes postconfirmation interpretation of third party plan releases so they conform with then applicable law. See Reply p. 15. Yet XO is readily distinguishable because the release at [*42] issue was limited "to the fullest extent permitted by law as such law may be extended or interpreted subsequent to the Effective Date." *330 B.R. at 439-41*. Hence, unlike here, interpretation of the XO plan release in accordance with applicable law was required by the language of the release. Moreover, the XO decision actually supports enforcement of the Plan Release and Injunction here because XO upheld application of a third party plan release to protect a creditor on whose behalf a substantial contribution was made to the debtor's estate and who had released a potential claim against the debtor for indemnification or contribution. Id.

29. Alternatively, Rosenbaum asserts that Stoll v. Gottlieb and res judicata principles are inapplicable here for four reasons. See Reply pp. 16-17. Rosenbaum's first purported distinction, that Rosenbaum only seeks an interpretative ruling of rather than makes a collateral attack on the Confirmation Order, is rejected above.

30. Rosenbaum's second asserted distinction, that Stoll involved greater disclosure of the claim released in the plan at issue, is insignificant because there is no requirement [*43] in Stoll or Second Circuit cases addressing third party plan releases for such disclosure. See, e.g., *Corbett v. MacDonald Moving Servs., 124 F.3d 82, 85-87 (2d Cir. 1997)* (upholding application of third party plan release to pension liability asserted against debtor's parent despite no pre-confirmation disclosure expressly stating that the release covered the pension claim). [5]

---

[5] There are multiple other reasons why such disclosure was unnecessary. The plain language of the Plan Release and Injunction signified they covered the Copyright Claims. Further, as Rosenbaum argues the Copyright Claims were unimportant prior to Plan Confirmation, see Reply p. 18, there would not have been the sense at that time that the Copyright Claims were of sufficient magnitude to warrant express disclosure. Also, Rosenbaum's argument that the Copyright Claims should have been discussed in the Disclosure Statement, which would not have been sent to

13-10361-mg    Doc 21-7    Filed 09/23/13    Entered 09/23/13 17:10:27    Exhibit G1
Pg 15 of 17

Page 15

2006 Bankr. LEXIS 2158, *43; 46 Bankr. Ct. Dec. 272

purported class plaintiffs who did not file a claim in the Spiegel cases or have their claims scheduled by the Debtors, is inconsistent with Rosenbaum's assertion in the Class Action Complaint, P 344, that Rosenbaum's claims were typical of the claims of all class plaintiffs. Additionally, the disclosure cases cited by Rosenbaum such as *In re Wolfson, 139 B.R. 279 (Bankr. S.D.N.Y. 1992)*, are inapplicable here because they merely require individual debtors not to hide any of their assets.

[*44] 31. Rosenbaum's third alleged "distinction" of Stoll is that res judicata does not apply here because the Named Defendants did not list the elements of res judicata. Yet those elements are readily established here: (a) the Confirmation Order was a final judgment; (b) this Court is a court of competent jurisdiction to enter the Confirmation Order; (c) the Confirmation Hearing involved the same parties, i.e., the Named Defendants and creditors of the Debtors such as Rosenbaum; and (d) the Confirmation Hearing involved the same claims, i.e., the Plan Injunction and Release applies to the Copyright Claims.

32. Rosenbaum's fourth attempted distinction is that application of res judicata also requires a determination that pursuit of the Copyright Claims "would impair, destroy, challenge, or invalidate the enforceability or effectiveness of the reorganization plan." Reply p. 17 (citing *Sure-Snap Corp. v. State Street Bank and Trust Co., 948 F.2d 869, 875-76 (2d Cir. 1991))*. Whether or not that is required, it is apparent here that invalidation of the Plan Release and Injunction and loss of the related SHI Settlement consideration exceeding $ 260 million [*45] would impair, destroy, and invalidate the Plan, even if it were possible to implement such steps now.

Equitable Mootness

33. Even without application of res judicata principles, courts consistently find that [HN9] when, as here, a plan has been "substantially consummated," the related confirmation order no longer is subject to review. See, e.g., *Metromedia, 416 F.3d at 144* (Second Circuit holds that appeal of order confirming a "substantially consummated" plan that included a third party release is equitably moot even though the Second Circuit found that the release in question should not have been approved in the first instance); *In re Loral Space & Communications Ltd., 342 B.R. 132, 137-38 (S.D.N.Y. 2006)* (dismissing appeal of confirmation order as being equitably moot, based largely on the presumption of equitable mootness and the appellant's failure to seek a stay of the confirmation order); *In re Trico Marine Services, Inc., 343 B.R. 68 (Bankr. S.D.N.Y. 2006)* (denying request for plan revocation because "even if [the movant] could prove fraud, the Court could not fashion a remedy that would satisfy the requirements [*46] of § 1144*." Among other reasons, stock had been issued to creditors under the Trico Marine plan and such stock subsequently was traded, which is exactly what has occurred in the Debtors' cases).

34. [HN10] A plan has been "substantially consummated" when, as here, substantially all of the property proposed to be transferred pursuant to the plan has in fact been transferred, the reorganized debtor has assumed control of the business, and plan distribution has commenced. *Metromedia, 416 F.3d at 144*. Indeed, paragraph 86 of the Confirmation Order expressly provides that "[s]ubstantial consummation of the Plan shall be deemed to occur on the Effective Date." As the Plan's Effective Date has occurred, the Plan was substantially consummated. Therefore, Rosenbaum's Motion is equitably moot.

Equitable Considerations

35. As established above, even if the equities were relevant to the initial approval of a third party plan release, at this point, Rosenbaum's equitable arguments are collateral attacks on the Confirmation Order, which, inter alia, found the SHI Settlement to be fair and equitable. Regardless, Rosenbaum's equitable arguments are to no avail: [*47]

> (a) Rosenbaum argues the release of the Copyright Claims in particular was not important to the Debtors' reorganization and, therefore, is not covered by the Plan Release and Injunction. Rosenbaum Memo pp. 19-20; Reply pp. 18-20. Nonetheless, the language of the Plan Release does not distinguish between important and unimportant claims. Moreover, whether or not Rosenbaum's contention is true begs the question. Instead, the issue is whether the Plan Release and Injunction and the related SHI

13-10361-mg    Doc 21-7    Filed 09/23/13    Entered 09/23/13 17:10:27    Exhibit G1
Pg 16 of 17

Page 16

2006 Bankr. LEXIS 2158, *47; 46 Bankr. Ct. Dec. 272

Settlement consideration each were important as whole to the Spiegel cases, not whether each individual claim released was important. There is no question about such aggregate importance, as this Court expressly found. *Confirmation Order, 2005 Bankr. LEXIS 1113 at \*31.*

(b) Rosenbaum contends the Copyright Claims could not be released if the SHI Settlement consideration did not directly reach Rosenbaum on account of the enjoined Copyright Claims. See Reply pp. 20-21. Yet, the Second Circuit has rejected that exact argument:

> Appellants also claim that notwithstanding any other limitation on nondebtor releases, good and sufficient consideration must be paid to any enjoined [*48] creditor. Such consideration has weight in equity, but it is not required. In *Drexel Burnham* the complaining creditors received none of the settlement with Drexel's personnel. *950 F.2 at 289, 293.*

*Metromedia, 416 F.3d at 143* (emphasis added). Notably, this Court specifically found the Plan Release was fair and necessary. *Confirmation Order, 2005 Bankr. LEXIS 1113, at \*31, 33.* [6]

---

[6] Moreover, the distribution to all creditors (including Rosenbaum and/or the assignee of its claim) of the substantial settlement consideration contributed on behalf of the Named Defendants and their Affiliates made particular sense here, as key claims asserted against such parties-including those of Rosenbaum-relied in large part on alter ego and other theories assertable for the benefit of all of the Debtors' creditors.

(c) Rosenbaum argues that Sumisho and Doosan may not benefit from the Plan Release and Injunction because they did not directly contribute to the SHI Settlement. [*49] See Reply p. 21. Nevertheless, the making of a single contribution on behalf of multiple beneficiaries of a third party plan release is both customary and acceptable. See, e.g., *In re XO Communications, Inc., 330 B.R. at 439-40.*

(d) Rosenbaum contends that it should not be subject to the Plan Injunction and Release because Rosenbaum has not had its day in court regarding the Copyright Claims. Yet the notion that each creditor must have fully litigated its claim is unfounded and mutually inconsistent with the concept of a third party plan release.

36. Moreover, Rosenbaum's contention completely ignores the equities favoring the Named Defendants. For example, over $ 260 million in cash and other consideration already has been contributed to the Debtors' estates on behalf of the Named Defendants and their Affiliates. Further, numerous actions have been taken by all parties in reliance on those contributions and the substantial consummation of the Plan. Also, it appears Rosenbaum made a calculated decision not to file a proof of claim based on the Copyright Claims or to otherwise participate in these cases until now to challenge the Plan Release and Injunction.

[*50] 37. Accordingly, equitable considerations are of no benefit to Rosenbaum.

**DECREES**

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1. The findings of fact and conclusions of law of this Court set forth herein and at the Hearing shall constitute findings of fact and conclusions of law pursuant to Bankruptcy *Rule 7052*, as made applicable herein by Bankruptcy *Rule 9014*. The findings of fact and conclusions of law of this Court at the Hearing are

13-10361-mg    Doc 21-7    Filed 09/23/13    Entered 09/23/13 17:10:27    Exhibit G1
Pg 17 of 17

Page 17

2006 Bankr. LEXIS 2158, *50; 46 Bankr. Ct. Dec. 272

incorporated herein by reference. To the extent that any of the foregoing findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the foregoing conclusions of law constitute findings of fact, they are adopted as such.

2. Stupakoff and James' Adjournment Motion is denied in all respects.

3. The Plan Release and Injunction release the Named Defendants from and enjoin pursuit of the Copyright Claims.

4. Rosenbaum's Motion is denied in all respects.

Dated: New York, New York

August 16, 2006

/s/ Hon. Burton R. Lifland

UNITED STATES BANKRUPTCY JUDGE