```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK                FOR PUBLICATION
```
In re:

        SINO-FOREST CORPORATION,

                Debtor in a Foreign Proceeding.

Chapter 15

Case No. 13-10361 (MG)

## MEMORANDUM OPINION GRANTING MOTION TO RECOGNIZE AND ENFORCE ORDER OF ONTARIO COURT APPROVING E&Y SETTLEMENT INCLUDING THIRD-PARTY RELEASE

*A P P E A R A N C E S:*

MILBANK, TWEED, HADLEY & McCLOY LLP
*Attorneys to FTI Consulting Canada Inc.,*
*as Foreign Representative of the Canadian Proceeding*
*of Sino-Forest Corporation*
One Chase Manhattan Plaza
New York, NY  10005-1413
By:    Dennis F. Dunne, Esq.
         Thomas J. Matz, Esq.
         Jeremy C. Hollembeak, Esq.

ALLEN & OVERY LLP
*Attorneys for Ernst & Young LLP*
1221 Avenue of the Americas
New York, NY  10020
By:    Ken Coleman, Esq.
         Jonathan Cho, Esq.

LOWENSTEIN SANDLER LLP
*Chapter 15 Counsel for Class Action Plaintiffs*
1251 Avenue of the Americas
New York, NY  10020
By:    Michael S. Etkin, Esq.
         Tatiana Ingman, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

        Before the Court is Ernst & Young LLP's ("E&Y") *Motion to Recognize and Enforce*

*Order of Ontario Court Approving E&Y Settlement* (the "Motion").  (ECF Doc. # 18.)  The

Motion is supported by a *Memorandum of Law in Support of Motion to Recognize and Enforce Order of Ontario Court Approving Ernst & Young Settlement* (ECF Doc. # 19), along with the *Declaration of Ken Coleman in Support of Petition for Recognition of Foreign Proceedings* (ECF Doc. # 21), which attaches various orders issued by the Canadian courts. Two joinders in the Motion were also filed: (1) *Joinder of Foreign Representative in (I) Motion to Recognize and Enforce Order of Ontario Court Approving Ernst & Young Settlement and (II) Memorandum of Law in Support of Motion to Recognize and Enforce Order of Ontario Court Approving Ernst & Young Settlement* (the "FTI Joinder," ECF Doc. # 22), and (2) *U.S. Class Action Plaintiffs' and Canadian Class Action Plaintiffs' Joinder to the Motion to Recognize and Enforce Order of Ontario Court Approving Ernst & Young Settlement* (the "Class Action Plaintiffs' Joinder," ECF Doc. # 25). A *Notice of Filing of Order of Quebec Court Permanently Staying Class Action Against E&Y* was filed. (ECF Doc. # 26.) Additionally, the *Declaration of Kurt J. Elgie Regarding Notice to the Class* (ECF Doc. # 27), and the *Supplemental Declaration of Kurt J. Elgie Regarding Notice to the Class* (ECF Doc. # 28) were also filed. The Motion is unopposed.

Through the Motion, E&Y seeks entry of an order giving full force and effect in the United States to the March 20, 2013 order (the "Settlement Order") of the Ontario Superior Court of Justice (Commercial List) (the "Ontario Court") in the proceeding (the "Canadian Proceeding") of Sino-Forest Corporation ("SFC") under Canada's *Companies Creditors Arrangement Act* (as amended, the "CCAA"). The Settlement Order approves the settlement of class action claims against E&Y and implements a global release in favor of E&Y (the "E&Y Settlement") under SFC's plan of compromise and reorganization dated December 3, 2012 (the "Plan").

2

This is the first time this Court has been asked to grant comity in a chapter 15 case to a foreign court order approving a third-party non-debtor release since the Fifth Circuit's decision in *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031 (5th Cir. 2012), affirming a bankruptcy court decision declining to grant comity in a chapter 15 case to a Mexican court order that included third-party releases. In a decision preceding the *Vitro* decision, this Court granted comity to a Canadian court order that included third-party releases. *See In re Metcalfe & Mansfield Alternative Investments*, 421 B.R. 685 (Bankr. S.D.N.Y. 2010). *Metcalfe* is almost on all fours with this case, and the Court concludes below that nothing in *Vitro* would require a different result here. Therefore, the Motion to recognize and enforce the Canadian court order is **GRANTED**.

## I.  BACKGROUND

On February 4, 2013, FTI, as Foreign Representative and Monitor, commenced this case by filing a *Verified Petition for Recognition of Foreign Proceeding and Related Relief* (the "Verified Petition," ECF Doc. # 1). On April 15, 2013, this Court granted the relief requested in the Verified Petition and entered an order (the "Recognition Order," ECF Doc. # 16) (a) recognizing the Canadian Proceeding as a "foreign main proceeding" under section 1517 of the Bankruptcy Code and (b) enforcing in the United States (i) certain provisions of the Ontario Court's Initial Order dated March 30, 2012 (the "Initial Order") and (ii) the Ontario Court's Plan Sanction Order dated December 10, 2012, sanctioning the Plan (the "Plan Sanction Order").

The Motion seeks the recognition and enforcement of the Settlement Order approving the E&Y Settlement, pursuant to which E&Y will pay CAD $117 million to resolve claims asserted against it in class action litigations filed by plaintiffs in Canada (the "Canadian Class Actions") and the United States (the "U.S. Class Action," and together with the Canadian Class Actions,

3

the "Class Actions") on behalf of all persons and entities, wherever they may reside, who acquired any securities of SFC, including securities acquired in the primary, secondary, and over-the-counter markets (the "Securities Claimants"). Those proceedings were commenced against SFC and certain of its former officers, directors, underwriters, and auditors, including E&Y (together, the "Third Party Defendants"), on the basis of alleged misrepresentations in SFC's financial statements issued before 2011. E&Y, SFC's external auditor from 2007 to 2012, is a named defendant in the Class Actions.

In the course of the Canadian Proceeding, E&Y and the plaintiffs in the Canadian Class Actions successfully negotiated the terms of a settlement that is supported by substantially all constituents in the Canadian Proceeding, including the lead plaintiffs in each of the Class Actions. In addition, the plaintiffs in the U.S. Class Action filed a claim in the Canadian Proceeding, and Canadian counsel for the U.S. plaintiffs appeared on their behalf at the respective hearings on the Plan Sanction Order and the Settlement Order. The terms of the E&Y Settlement provide that following E&Y's CAD $117 million payment into a settlement trust fund (the "Settlement Fund") for the benefit of the Securities Claimants, Article 11.1(a) of the Plan will grant E&Y a global release and the benefit of certain injunctions under the Plan. E&Y also agreed to release all claims, including indemnification claims, it may have against each of SFC and SFC's subsidiaries, officers, and directors. E&Y also relinquished its rights to any distributions under the Plan and agreed to support the Plan's approval.

The Ontario Court approved the E&Y Settlement with the entry of the Settlement Order on March 20, 2013, and on June 26, 2013, the Court of Appeal for Ontario dismissed motions for leave to appeal the Plan Sanction Order and the Settlement Order brought by certain minority

4

investors in SFC.[1] Both courts specifically found that the approval of the Plan Sanction Order and the Settlement Order was consistent with a prior opinion of the Court of Appeal for Ontario establishing the requirements for third-party releases under the CCAA.[2]

The principal remaining condition that must be satisfied before the E&Y Settlement can be implemented is the recognition and enforcement of the Settlement Order in the United States. The Ontario Court expressly requested this Court's assistance in implementing and enforcing the Settlement Order in this jurisdiction and has authorized E&Y to apply to any appropriate court for the relief requested.

### A. The Plan

Article 11.1 of the Plan contains the agreed framework for giving effect to the E&Y Settlement. Article 11.1(a) of the Plan provides that if: (1) the Plan Sanction Order is entered, (2) the Ontario Court approves by order the E&Y Settlement, (3) the Plan Sanction Order and the Settlement Order are enforced in the United States through chapter 15 of the Bankruptcy Code, (4) all orders are final orders not subject to further appeal or challenge, and (5) all other conditions precedent to the E&Y Settlement are met, E&Y will pay CAD $117 million into a settlement trust fund for the benefit of the Securities Claimants in settlement of all claims asserted against it in the Class Actions. Upon that payment, Article 11.1(b) of the Plan provides that E&Y will receive a global release and the benefit of certain injunctions under the Plan. Further, none of the Securities Claimants will be entitled to claim from any Third Party

---

[1] These minority investors (the "Objectors") held, in the aggregate, approximately 1.62% of SFC's outstanding equity on June 30, 2011, and first appeared in the Canadian Proceeding shortly before the hearing to consider the sanction of the Plan. E&Y refrained from seeking enforcement of the Settlement Order in the United States until the resolution of the Objectors' motion for leave to appeal the Settlement Order.

[2] *ATB Financial v. Metcalfe and Mansfield Alternative Investments II Corp.*, 2008 ONCA 587 at ¶¶ 26-28, 92 O.R. (3d) 513, *leave to appeal refused*, [2008] S.C.C.A. No. 337.

Defendant any portion of damages that corresponds to the liability of E&Y, proven at trial or otherwise, that is the subject of the E&Y Settlement.

At the hearing to consider the sanctioning of the Plan and in entering the Plan Sanction Order, the Ontario Court fully considered and dismissed the Objectors' concerns—which focused on Article 11 of the Plan—and found that the Plan was fair and reasonable and satisfied the applicable test for sanction under the CCAA. Soon after, three of the Objectors filed a notice of motion (the "Sanction Appeal Motion") for leave to appeal those portions of the Plan Sanction Order relating to Article 11 of the Plan, but did not seek an intervening stay of the Plan's implementation. Accordingly, the Plan became effective on January 30, 2013.

### B. The E&Y Settlement

The E&Y Settlement principally provides that E&Y will pay CAD $117 million into the Settlement Fund in settlement of all claims asserted against E&Y in the Class Actions, upon satisfaction of certain conditions precedent. Once payment is made, E&Y will benefit from the release and injunction provisions of the Plan as against all parties. The Settlement Fund will be distributed to or for the benefit of eligible Securities Claimants pursuant to a plan of allocation to be submitted to the Ontario Court for approval. Aside from this significant monetary payment and the obvious benefit to affected Canadian and U.S. investors, E&Y has made substantial non-monetary concessions and contributions that further warrant recognition and enforcement of the E&Y Settlement in the United States.

In particular, E&Y also: (1) released all claims, including indemnification claims, asserted against SFC and SFC's subsidiaries, officers, and directors; (2) relinquished all rights to distributions under the Plan; (3) agreed not to seek leave to further appeal a decision relating to equity claims, and a related decision of the Court of Appeal for Ontario, to the Supreme Court of

6

Canada; (4) voted in favor of the Plan; and (5) supported the entry of the Plan Sanction Order. By making these additional concessions, E&Y not only waived substantial claims which, if allowed, would have diluted recoveries to other creditors, but E&Y also eliminated the expense and delay of litigating these claims in full. Numerous parties, including the Monitor, SFC, and the Ontario Court, have recognized that the deterioration of SFC's assets made an expedited implementation of the Plan essential. Moreover, the Ontario Court observed in a settlement endorsement (the "Settlement Endorsement," attached as Ex. B to Coleman Decl.) that the "unencumbered participation of the SFC subsidiaries is crucial to the restructuring," and the Plan intended to facilitate the subsidiaries' continued operations free from the claims and uncertainty associated with SFC. Settlement Endorsement ¶¶ 68–69. Thus, E&Y's concessions in the E&Y Settlement provided additional benefits to the restructuring effort and removed a potentially substantial obstacle to an expeditious implementation of the Plan.

### C. Canadian Court Approval and *ATB Financial*

The Ontario Court approved the E&Y Settlement and entered the Settlement Order on March 20, 2013, following a February 4, 2013 hearing at which the court considered and overruled the objections of the Objectors (who were the only parties who appeared in opposition). In addition, the Ontario Court entered an order, also dated March 20, 2013, denying the Objectors' motion to be appointed as representative of all proposed class members who opposed the E&Y Settlement (the "Representation Dismissal Order").

The Ontario Court's bases for its decision are detailed in the Settlement Endorsement. As a threshold matter, the Ontario Court noted that outstanding litigation claims against third parties are regularly compromised and settled in CCAA proceedings, and in particular that "[i]t is well established that class proceedings can be settled in a CCAA proceeding." Settlement

7

Endorsement ¶¶ 36–37. It further observed that "[s]uch compromises fully and finally dispose of such claims, and it follows that there are no continuing procedural or other rights in such proceedings . . . [s]imply put, there are no 'opt-outs' in the CCAA," thereby making clear that it was considering the approval of the E&Y Settlement within the context of the Canadian Proceeding and the CCAA. *Id.* ¶ 36 (emphasis added). With respect to the E&Y Settlement's release provisions, the Ontario Court noted that "third-party releases are not an uncommon feature of complex restructurings under the CCAA" and considered whether the release in the E&Y Settlement satisfied the applicable standards for third-party releases in CCAA proceedings established by the Court of Appeal for Ontario in *ATB Financial*.

In *ATB Financial*, a decision rendered in connection with the restructuring of the Canadian asset-backed commercial paper market, the Court of Appeal for Ontario held that third-party releases are permissible in CCAA restructurings where there is "a reasonable connection between the third party claim being compromised in the plan and the restructuring achieved by the plan to warrant inclusion of the third party release in the plan." Settlement Endorsement ¶ 50 (citing *ATB Financial* at ¶ 70). As set forth in paragraph 50 of the Settlement Endorsement, in determining whether the requisite nexus exists, a CCAA court must consider the following factors:

> a) Whether the claims to be released are rationally related to the purpose of the plan;
> b) Whether the claims to be released are necessary for the plan of arrangement;
> c) Whether the parties who have claims released against them contributed in a tangible and realistic way; and
> d) Whether the plan will benefit the debtor and the creditors generally.

*Id.* Further, as set forth in paragraph 49 of the Settlement Endorsement, in considering a settlement within the CCAA context, a court considers the following factors:

> a) Whether the settlement is fair and reasonable;
> b) Whether it provides substantial benefits to the other stakeholders; and

8

      c) Whether it is consistent with the purpose and spirit of the CCAA.

*Id.* ¶ 49.

The Ontario Court ultimately concluded that "[i]n [its] view, the [E&Y] Settlement is fair and reasonable, provides substantial benefits to relevant stakeholders, and is consistent with the purpose and spirit of the CCAA. In addition, in [its] view, the factors associated with the *ATB Financial* nexus test favour approving the Ernst & Young Release." *Id.* ¶ 66. Accordingly, it granted the Settlement Order and approved the E&Y Settlement including the release. On April 9, 2013, the Objectors filed a notice of motion for leave to appeal both the Settlement Order and the Representation Dismissal Order with the Court of Appeal for Ontario (the "Settlement Appeal Motion," and with the Sanction Appeal Motion, the "Appeal Motions"). On April 18, 2013, while the Settlement Appeal Motion remained pending, the Objectors separately served in the Ontario Class Action a notice of appeal of the Settlement Order and the Representation Dismissal Order to the Court of Appeal for Ontario (the "Settlement Appeal"). The Objectors are the only parties who sought to appeal any of the Plan Sanction Order, the Settlement Order, and the Representation Dismissal Order. No other party supported these appeals, and several major constituents in the Canadian Proceeding opposed the Appeal Motions and the Settlement Appeal.

The Court of Appeal for Ontario consolidated the Appeal Motions, and on June 26, 2013, the court dismissed the Appeal Motions ("Appeal Endorsement," attached as Ex. C to Coleman Decl.). As for the Sanction Appeal Motion, the Court of Appeal for Ontario held that the Objectors' proposed appeal had been mooted by the intervening implementation of the Plan, but noted that in any event, it saw no basis for interfering with the Ontario Court's decision. The Court of Appeal for Ontario likewise saw no basis for interfering with Ontario Court's decision

9

with respect to the Settlement Order, agreeing that "the issues raised on this proposed appeal are, at their core, the very issues settled by this court in *ATB Financial*." Appeal Endorsement ¶ 14. Since entry of the Representation Dismissal Order naturally followed from the entry of the Settlement Order, the Court of Appeal for Ontario dismissed the Settlement Appeal Motion.

In addition to the dismissal of the Settlement Appeal Motion, on June 28, 2013, the Court of Appeal for Ontario granted a motion to quash the Settlement Appeal on the basis that the Objectors had no jurisdiction to bring the appeal. According to E&Y, the Objectors intend to file a motion seeking leave to appeal the Court of Appeal for Ontario's orders to the Supreme Court of Canada. As of the filing of this Motion, the Objectors had not followed through on that plan. (Motion ¶ 32.) The Objectors were served with notice of the hearing in this Court seeking recognition and enforcement of the E&Y Settlement, including the release provisions, but they did not file any objections here.

## II. DISCUSSION

In *Metcalfe*, 421 B.R. 685, the Court faced an almost identical request for relief. The Court was also asked to enforce a Canadian order granting a non-debtor release and injunction. The Court began by analyzing whether the requested relief could be granted in a plenary case under chapter 11. The Court recognized that under *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141 (2d Cir. 2005), the law in the Second Circuit limits availability of third-party non-debtor releases; they are "proper only in rare cases." While this Court thought that the facts in *Metcalfe* may have satisfied the "rigorous standard established in *Metromedia*," *Metcalfe*, 421 B.R. at 695, it was unclear whether the separate jurisdictional requirement before a bankruptcy court may even consider whether to approve a third-party release in a plenary bankruptcy case could be satisfied. *See In re Johns-Manville Corp.*, 517 F.3d 52 (2d Cir. 2008), *rev'd and*

10

*remanded sub nom. Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009).  After the *Metcalfe* decision, the Second Circuit in dealing with *Manville* on remand from the Supreme Court, adhered to its earlier view that the bankruptcy court in a plenary chapter 11 case lacks jurisdiction to approve third-party releases unless the third-party claims may affect the *res* of the estate.  *In re Johns-Manville Corp.*, 600 F.3d 135, 153 & n.13 (2d Cir. 2010).  But in *Metcalfe*, the Court held that the correct inquiry in a chapter 15 case was not whether the Canadian orders could be enforced under U.S. law in a plenary chapter 11 case, but whether recognition of the Canadian courts' decision was proper in the exercise of comity in a case under chapter 15.  421 B.R. at 696.  The Court explained:

> [W]hatever the precise limits of a bankruptcy court's jurisdiction to approve a third-party non-debtor release and injunction in a plenary chapter 11 case, the important point for present purposes is that the jurisdictional limits derive from the scope of bankruptcy court "related to" jurisdiction under 28 U.S.C. § 1334, and the prudential limits courts have applied in chapter 11 cases under the Bankruptcy Code.  This Court is not being asked to approve such provisions in a plenary case; rather, the Court is being asked to order enforcement of provisions approved by the Canadian courts.  The correct inquiry, therefore, is whether the foreign orders should be enforced in the United States in this chapter 15 case. . . . [P]rinciples of enforcement of foreign judgments and comity in chapter 15 cases strongly counsel approval of enforcement in the United States of the third-party non-debtor release and injunction provisions included in the Canadian Orders, even if those provisions could not be entered in a plenary chapter 11 case.

*Id.*

The Court then discussed the principles of comity that underpin chapter 15.  *Id.* ("Chapter 15 specifically contemplates that the court should be guided by principles of comity and cooperation with foreign courts in deciding whether to grant the foreign representative additional post-recognition relief.").  The Court quoted the seminal comity case, *Hilton v. Guyot*, 159 U.S. 113, 202–03 (1895), where the Supreme Court held that if the foreign forum provides "a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular

11

proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it is sitting," the judgment should be enforced and not "tried afresh."

"Federal courts generally extend comity whenever the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy." *In re Atlas Shipping A/S*, 404 B.R. 726, 733 (Bankr. S.D.N.Y. 2009) (quoting *Victrix S.S. Co., S.A v. Salen Dry Cargo A.B.,* 825 F.2d 709, 713 (2d Cir. 1987)). As the court stated in *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A.,* 412 F.3d 418, 424 (2d Cir. 2005), "deference to the foreign court is appropriate so long as the foreign proceedings are procedurally fair and . . . do not contravene the laws or public policy of the United States." In analyzing procedural fairness, courts have looked to the following nonexclusive factors:

> (1) Whether creditors of the same class are treated equally in the distribution of assets; (2) whether the liquidators are considered fiduciaries and are held accountable to the court; (3) whether creditors have the rights to submit claims which, if denied, can be submitted to a bankruptcy court for adjudication; (4) whether the liquidators are required to give notice to potential claimants; (5) whether there are provisions for creditors meetings; (6) whether a foreign country's insolvency laws favor its own citizens; (7) whether all assets are marshalled before one body for centralized distribution; and (8) whether there are provisions for an automatic stay and for the lifting of such stays to facilitate the centralization of claims.

*Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 249 (2d Cir. 1999); *see also In re Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 114–15 (Bankr. S.D.N.Y. 2012).

In *Metcalfe*, focusing specifically on extending comity to orders of Canadian courts, the Court explained that "[t]he U.S. and Canada share the same common law traditions and fundamental principles of law. Canadian courts afford creditors a full and fair opportunity to be

12

heard in a manner consistent with standards of U.S. due process. U.S. federal courts have repeatedly granted comity to Canadian proceedings." *Metcalfe*, 421 B.R. at 698. Applying the doctrine of comity, and recognizing that the issue of the third-party non-debtor release had been fully and fairly litigated in the Canadian courts, the Court held that it could recognize and enforce the release. *Id.* at 699. The same analysis, with the same conclusion, applies here. The parties to the Canadian proceedings in this case had a full and fair opportunity to litigate the issues, and the trial court reached a reasoned decision that it had the jurisdiction to grant the requested relief and that such relief was appropriate in the circumstances. The Objectors' appeal to the Court of Appeal for Ontario failed. While an additional motion for leave to appeal may be filed in the Supreme Court of Canada, this Court sees no reason to await the outcome of such at motion (if it is made) before ruling on the pending matter; the issues raised are not novel here or in Canada, as this Court's decision in *Metcalfe* demonstrates.

Similar to *Metcalfe*, relief here is proper as "additional assistance" under section 1507 of the Bankruptcy Code.[3] Section 1507 provides as follows:

---

[3]    E&Y also requests relief under section 1521(a), which provides that "Upon recognition of a foreign proceeding . . . the court may . . . grant *any appropriate relief*—including [under subparagraphs (a)(1)–(7)]." 11 U.S.C. § 1521(a) (emphasis added). In *Vitro*, the Fifth Circuit applied a three-step process in considering similar relief, also requested under sections 1521 and 1507. The court stated:
> We conclude that a court confronted by this situation should first consider the specific relief enumerated under § 1521(a) and (b). If the relief is not explicitly provided for there, a court should then consider whether the requested relief falls more generally under § 1521's grant of any appropriate relief. We understand "appropriate relief" to be relief previously available under Chapter 15's predecessor, § 304. Only if a court determines that the requested relief was not formerly available under § 304 should a court consider whether relief would be appropriate as "additional assistance" under § 1507.

701 F.3d at 1054. This Court has, on a prior occasion, considered relief formerly available under old section 304. *See Atlas Shipping A/S*, 404 B.R. at 726. But while the Fifth Circuit's approach may be appropriate in certain circumstances—*e.g.*, so that "courts begin their analysis in familiar territory," *Vitro*, 701 F.3d at 1057—the Court believes that *Vitro*'s three-step approach is unnecessary here because the Court already decided in *Metcalfe* that the relief sought is available under section 1507. Therefore, the Court declines to decide whether the "any appropriate relief" language in section 1521 would also provide a basis for the relief.

13

>  (a) Subject to the specific limitations stated elsewhere in this chapter the court, if recognition is granted, may provide additional assistance to a foreign representative under this title or under other laws of the United States.
>  (b) In determining whether to provide additional assistance under this title or under other laws of the United States, the court shall consider whether such additional assistance, consistent with the principles of comity, will reasonably assure—
>  (1) just treatment of all holders of claims against or interests in the debtor's property;
>  (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
>  (3) prevention of preferential or fraudulent dispositions of property of the debtor;
>  (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and
>  (5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

11 U.S.C. § 1507.

"While recognition of the foreign proceeding turns on the objective criteria under § 1517, 'relief [post-recognition] is largely discretionary and turns on subjective factors that embody principles of comity.'" *Metcalfe*, 421 B.R. at 697 (quoting *In re Bear Stearns High–Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008)). "Once a case is recognized as a foreign main proceeding, chapter 15 specifically contemplates that the court will exercise its discretion consistent with principles of comity." *Atlas Shipping A/S*, 404 B.R. at 738.

While the factors identified in section 1507(b)(1)–(5), required to be considered in determining whether to extend comity in a case under chapter 15, may, in some circumstances, narrow application of the common law rules for extending comity, none of those factors comes into play here.[4] Extending comity here does not affect (1) the just treatment of creditors, (2)

---

[4] "Because the principle of comity does not limit the legislature's power and is, in the final analysis, simply a rule of construction, it has no application where Congress has indicated otherwise." *Maxwell Commc'n Corp. v. Societe Generale (In re Maxwell Commc'n Corp.),* 93 F.3d 1036, 1047 (2d Cir.1996). Here, Congress has identified a series of factors to consider in determining whether to extend comity under section 1507; they may narrow

14

protection of creditors in the United States against prejudice or inconvenience, (3) prevention of preferential or fraudulent disposition of property of the debtor, (4) distribution of proceeds substantially in accordance with Bankruptcy Code priorities, or (5) the opportunity for a fresh start.

Section 1506 nevertheless places a limitation on recognition if doing so is manifestly contrary to U.S. public policy:

> Nothing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States.

11 U.S.C. § 1506. But this public policy exception is narrowly construed. *See In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333 (S.D.N.Y. 2006); *see also Vitro*, 701 F.3d at 1069 (stating that "§ 1506 was intended to be read narrowly, a fact that does not sit well with the bankruptcy court's broad description of the fundamental policy at stake as the protection of third party claims in a bankruptcy case") (internal quotation marks omitted). In *Metcalfe*, the Court specifically rejected the argument that section 1506 precludes granting third-party releases in appropriate cases. The Court explained:

> The relief granted in the foreign proceeding and the relief available in a U.S. proceeding need not be identical. A U.S. bankruptcy court is not required to make an independent determination about the propriety of individual acts of a foreign court. The key determination required by this Court is whether the procedures used in Canada meet our fundamental standards of fairness.

---

circumstances when comity is appropriate. But as the Court concluded in *Cozumel*, "[i]t is unnecessary here to explore this issue further as the Court concludes that the relief ordered by the Court would be appropriate in any event." 482 B.R. at 114–15 n.16. The factors listed in section 1507(b)(1)–(5), to be considered in deciding whether to extend comity under section 1507, are not included in section 1521(a). Whether it is appropriate, consistent with principles of comity, to grant "any appropriate relief" under section 1521, if granting comity would be inconsistent with the factors in section 1507, need not be addressed in this case. In any event, section 1522 places limitations on relief available under section 1521: relief may be granted "only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. 1522(a); *see also Vitro*, 701 F.3d at 1060.

15

421 B.R. at 697 (citations omitted). In this Circuit, where the third-party releases are not categorically prohibited, it cannot be argued that the issuance of such releases is manifestly contrary to public policy. *See Metromedia*, 416 F.3d at 141.

The Fifth Circuit's decision in *Vitro* does not dictate a different result.[5] The Fifth Circuit, on direct appeal from the bankruptcy court, affirmed the bankruptcy judge's decision refusing to extend comity to a Mexican court order approving a reorganization plan that vitiated guarantees issued by Vitro's U.S.-based affiliates, under loan agreements governed by U.S. law. The Fifth Circuit concluded that the bankruptcy court did not abuse the discretion expressly provided in section 1507(b). *See Vitro*, 701 F.3d at 1042 ("A court's decision to grant comity is . . . reviewed for abuse of discretion."); *id.* at 1069 ("[W]e hold that Vitro has not met its burden of showing that the relief requested under the Plan—a non-consensual discharge of non-debtor guarantors—is substantially in accordance with the circumstances that would warrant such relief in the United States. In so holding, we stress the deferential standard under which we review the bankruptcy court's determination. . . . Our only task is to determine whether the bankruptcy court's decision was reasonable. Having reviewed the record and relevant caselaw, we conclude that the bankruptcy court's decision was reasonable.") (internal citations omitted). The court specifically declined to decide the case on one of the alternative bases of the bankruptcy court's ruling—namely, whether the third-party release was manifestly contrary to public policy. *Id.* at 1070. The Fifth Circuit decision was largely premised on an analysis of section 1507(b)(4)— "distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title [11] . . ."—concluding that the bankruptcy court did not abuse its

---

[5]    Obviously, a decision of the Fifth Circuit is not binding precedent on this Court. But to be clear, as explained below, the Court does not believe that *Vitro* would require a different result here.

16

discretion in finding that Vitro did not carry its burden under that subsection. *See Vitro*, 701 F.3d at 1065–66. The court distinguished *Vitro* from *Metcalfe*, and many of the same distinguishing facts are present here: the Plan has near unanimous support, that support does not rely on votes by insiders and "the Canadian court's decision to approve the non-debtor release 'reflect[ed] similar sensitivity to the circumstances justifying approving such provisions'" as those considered by U.S. courts. *Id.* at 1068 (quoting *Metcalfe*, 421 B.R. at 698). No one has objected to the relief requested here, and as already stated, the requested relief does not run afoul of any of the subsections of section 1507(b).

### III. CONCLUSION

E&Y, supported by the Foreign Representative and the Canadian and U.S. Class Action Plaintiffs, seeks an order granting comity to a Canadian court order approving class action settlements that include a third-party release and injunction in favor of E&Y in return for a payment of CAD $117 million. Broad notice of the motion seeking relief and of the hearing in the bankruptcy court was timely provided. No objections to the requested relief were filed.

This case is virtually on all fours with *Metcalfe*. The procedural posture is almost exactly the same. The Ontario Court has already approved the E&Y Settlement and has asked this Court to assist in its enforcement. The Court of Appeal for Ontario has denied a motion for leave to appeal. While a motion for leave to appeal to the Supreme Court of Canada may be filed, the Court believes that the law in Canada and in the Second Circuit is well settled so there is no reason to wait before ruling. Furthermore, at least one additional ruling is required from the trial court in Canada, seeking approval of a plan of distribution, before the settlement can become final, so this Court's ruling does not provide the last word in any event.

For the reasons explained above, the Court concludes that the requested relief should be approved.  Therefore, the Motion is **GRANTED**.  A separate order will be entered granting the requested relief.

Dated:   November 25, 2013
         New York, New York

                                       ___*Martin Glenn*_____
                                          MARTIN GLENN
                                       United States Bankruptcy Judge