Court File No.:  CV-12-9667-00CL

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE

### COMMERCIAL LIST

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED, AND IN THE MATTER OF A PLAN OF COMPRISE OR ARRANGEMENT OF SINO-FOREST CORPORATION**

Court File No.:  CV-11-431153-00CP

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE

BETWEEN:

**THE TRUSTEES OF THE LABOURERS' PENSION FUND OF CENTRAL AND EASTERN CANADA, THE TRUSTEES OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 793 PENSION PLAN FOR OPERATING ENGINEERS IN ONTARIO, SJUNDE AP-FONDEN, DAVID GRANT and ROBERT WONG**

Plaintiffs

- and -

**SINO-FOREST CORPORATION, ERNST & YOUNG LLP, BDO LIMITED (formerly known as BDO MCCABE LO LIMITED), ALLEN T.Y. CHAN, W. JUDSON MARTIN, KAI KIT POON, DAVID J. HORSLEY, WILLIAM E. ARDELL, JAMES P. BOWLAND, JAMES M.E. HYDE, EDMUND MAK, SIMON MURRAY, PETER WANG, GARRY J. WEST, PÖYRY (BEIJING) CONSULTING COMPANY LIMITED, CREDIT SUISSE SECURITIES (CANADA), INC., TD SECURITIES INC., DUNDEE SECURITIES CORPORATION, RBC DOMINION SECURITIES INC., SCOTIA CAPITAL INC., CIBC WORLD MARKETS INC., MERRILL LYNCH CANADA INC., CANACCORD FINANCIAL LTD., MAISON PLACEMENTS CANADA INC., CREDIT SUISSE SECURITIES (USA) LLC and MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED (successor by merger to Banc of America Securities LLC)**

Defendants

Proceeding under the *Class Proceedings Act, 1992*

## AFFIDAVIT OF CHARLES M. WRIGHT
### (Sworn July 4, 2014)

- 2 -

I, **CHARLES M. WRIGHT**, of the City of London, in the Province of Ontario

AFFIRM:

1.      I am a partner at Siskinds LLP, who, along with Koskie Minsky LLP (together, "Class Counsel"), are counsel to the plaintiffs (the "Class Plaintiffs") in the above-captioned class proceeding (the "Ontario Action").

2.      For the purposes of the above-captioned proceeding under the CCAA (the "CCAA Proceedings"), Class Counsel have retained Paliare Roland Rosenberg Rothstein LLP ("Paliare Roland") to represent the Ad Hoc Committee of Purchasers of the Applicant's Securities, including the Class Plaintiffs (together, the "Ontario Plaintiffs").

3.      Siskinds Desmeules, sencrl, an affiliate of Siskinds LLP, is counsel to the plaintiffs in a parallel class proceeding in the Province of Quebec Superior Court styled as *Guining Liu v Sino-Forest Corporation, et al.,* File No. 200-06-000132-111 (the "Quebec Action").

4.      Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") is counsel to the plaintiffs in a parallel class proceeding in the District Court of the Southern District of New York styled as *David Leapard, et al v Allen TY Chan, et al*, Case Number 1:12-cv-01726 (AT) (the "US Action").

5.      I have knowledge of the matters deposed to below.  Where I make statements in this affidavit that are not within my personal knowledge, I have indicated the source of my information and believe such information to be true.

**NATURE OF THIS MOTION**

6.      The Ontario Plaintiffs and David J. Horsley ("Horsley"), among others, have entered into
Minutes of Settlement in order to resolve all causes of action, claims and/or demands, on all
counts howsoever arising and in all jurisdictions, made against Horsley, including the Class
Actions (as defined in the Plan) (the "Horsley Settlement").  The Horsley Settlement is marked
and attached hereto as **Exhibit "A"**.  Appended as Schedule "C" to the Horsley Settlement is the
form of a draft settlement approval order (the "Settlement Order") that will be sought for
approval of the Horsley Settlement.

7.      Unless otherwise defined or the context requires otherwise, all capitalized terms in this
affidavit have the meanings attributed to them in the Settlement Order.

8.      I affirm this affidavit in support of the motion brought by the Ontario Plaintiffs for
approval of the Horsley Settlement.

**OVERVIEW OF THE SETTLEMENT**

**Horsley's Role with Sino**

9.      Horsley was Sino's Chief Financial Officer ("CFO") from October 2005 until his
resignation in April 2012.  As Sino's CFO, Horsley signed and certified the company's interim
and annual MD&A and financial statements, as well as certain primary market offering
documents.

- 4 -

**Key Terms of the Horsley Settlement**

10.      As discussed below, the Horsley Settlement will resolve both the class action claims against Horsley, as well as the claim commenced against Horsley by Sino's Litigation Trust (as defined in the Plan).

11.      Subject to the terms of the Horsley Settlement, Horsley's insurers have agreed to pay CDN $4,200,000 (the "Class Settlement Fund") into an interest bearing trust account with a Canadian Schedule 1 bank in Ontario (the "Settlement Trust") to be administered in accordance with orders of the court.

12.      The Horsley Settlement is conditional on, among other things, the issuance of the Settlement Order and a recognition order from the United States Bankruptcy Court granting recognition and enforcement of the Settlement Order in the United States (the "US Recognition Order").

13.      The Horsley Settlement will become effective ("Effective Date") when:

(a)      the Settlement Order has been obtained and either (i) all appeal rights have expired; or (ii) the applicable final appellate court has upheld the Settlement Order; and

(b)      the US Recognition Order has been obtained and either (i) all appeal rights have expired; or (ii) the applicable final appellate court has upheld the US Recognition Order.

14.      The Class Settlement Fund will be paid into the Settlement Trust within fifteen (15) days following the Effective Date.  Upon payment of the Class Settlement Fund, the Ontario Action and the Quebec Action will be dismissed against Horsley, and the representative plaintiffs in the

US Action shall cause the US Action to be dismissed against Horsley. Following the Effective
Date,

(a)     no further proceedings shall be commenced by anyone against Horsley in respect
of any Causes of Action (as defined in the Plan), other than as necessary to
complete the Horsley Settlement;

(b)     The plaintiffs in the Ontario Action, Quebec Action, and US Action agree not to
claim from the non-settling defendants in any of the actions that portion of
damages that corresponds to the proportionate share of liability of Horsley; and

(c)     the plaintiffs in the Ontario Action, Quebec Action, and US Action and their
counsel agree not to cooperate with any other party in advancing claims against
Horsley.   However, such plaintiffs reserve all rights with respect to the
prosecution of the claims remaining against the non-settling defendants.

15.     Save and except for legal fees and disbursements that may be incurred by Horsley or on
his behalf in the future in relation to any criminal charges that may be laid against him by the
Royal Canadian Mounted Police in relation to Sino-Forest, Horsley will not seek reimbursement
from any insurers for legal fees and disbursements after the Effective Date.

16.     Horsley will provide documents and cooperation to the Class Plaintiffs in the continued
prosecution of the Ontario Action, and, if requested, shall appear as a witness at the trial of the
Ontario Action and give complete and truthful answers to proper questions concerning any
relevant matter.

17.     In addition to settling the claims in the class actions, the Horsley Settlement also seeks to
resolve the claims advanced against Horsley by Sino's Litigation Trust.  In settlement of the
Litigation Trust claims, Horsley and his insurers will make a payment of $1.4 million, of which
$600,000 will be paid personally by Horsley.

18.    As discussed further below, certain Securities Claimants have an interest in the Litigation

Trust, and accordingly will benefit from the $1.4 million payment in that settlement.

**Key Factors and Rationale Supporting the Horsley Settlement**

19.    As discussed in detail later in this affidavit, there are several factors supporting Class

Counsel's recommendation of the Horsley Settlement.  A summary of the key factors follows.

20.    First, the funds available under Sino's Directors & Officers liability insurance policies

are quickly dwindling as they are being used to fund the defense of several defendants in this

litigation.  The Horsley Settlement will likely preserve millions of dollars in insurance proceeds

that would otherwise be spent on Horsley's defense.  Those funds will now potentially be

available for recovery from Sino and the remaining individual defendants.

21.    Second, although losses to Securities Claimants run into the billions of dollars, the legal

and practical impediments to recovery from Horsley weigh strongly in favour of our

recommendation of the Horsley Settlement.  As discussed in detail at paragraphs 91- 105, Class

Counsel's view is that the recovery from Horsley in this settlement is consistent with his several

liability for primary market share purchaser claims, and may potentially far exceed his liability

limit under Part XXIII.1 of the Ontario *Securities Act* (the "*OSA*").

22.    Third, as detailed below, certain Securities Claimants have an interest in the $1.4 million

being paid in settlement of the Litigation Trust claims against Horsley, of which Horsley will

personally contribute $600,000.  Class Counsel have reviewed a statutory declaration concerning

the combined net worth of Horsley and his spouse, and in our view, a payment of $600,000

represents a significant contribution in light of his assets and is commensurate with his alleged

conduct.

23.    Finally, the approval of the Horsley Settlement is a condition of Horsley's proposed
settlement of the OSC Proceedings (defined below).  In the absence of a settlement, it is possible
that Horsley would be subject to a significant fine that would not benefit Securities Claimants
and which would impinge on his ability to satisfy any judgment in the class actions.

## BACKGROUND OF THE ACTION

24.    The Ontario Action was commenced on July 20, 2011 against Sino-Forest Corporation
("Sino") and other defendants.  Sino's shares were publicly traded at all material times on the
Toronto Stock Exchange ("TSX"), on the Berlin exchange, on the over-the-counter market in the
United States and on the Tradegate market.  Sino shares also traded on alternative trading venues
in Canada and elsewhere including, without limitation, AlphaToronto and PureTrading.

25.    Sino also issued and had various notes outstanding.  These notes were offered to
investors by way of offering memoranda, and were underwritten by various financial institutions
who are defendants in the Ontario Action.  In addition to those primary market offerings, these
notes traded in the secondary market.

26.    On June 2, 2011, Muddy Waters Research ("Muddy Waters") released a research report
alleging fraud against Sino and alleging that it "massively exaggerates its assets".  The release of
this report was immediately followed by a dramatic decline in Sino's share price.

27.    On June 1, 2011, the day prior to the publication of the Muddy Waters report, Sino's
common shares closed at $18.21.  After the Muddy Waters report became public, Sino shares fell
to $14.46 on the TSX (a decline of 20.6%), at which point trading was halted.  When trading
resumed the next day, Sino's shares fell to a close of $5.23 (a decline of 71.3% from June 1).

28.    Sino's notes also fell in value following the Muddy Waters report.  On May 9, 2012 an auction was held to settle the credit derivative trades for Sino-Forest credit default swaps ("CDS").  CDS are essentially an insurance contract for debt instruments, and the price set in that auction represents the market's view of the value of the notes as of May 9, 2012.  The CDS auction price was 29% of the notes' face values.

29.    On August 26, 2011, the Ontario Securities Commission (the "OSC") issued a temporary cease-trade order in respect of Sino's securities.  The recitals to the cease-trade order reflect that Sino appeared to the OSC to have engaged in significant non-arm's length transactions which may have been contrary to Ontario securities laws and the public interest, that Sino and certain of its officers and directors appeared to have misrepresented some of Sino's revenue and exaggerated some of its timber holdings, and that Sino and certain of its officers and directors appeared to be engaging or participating in acts, practices or a course of conduct related to Sino's securities which they (or any of them) knew or ought reasonably to know would perpetuate a fraud.

30.    On January 10, 2012, Sino issued a press release stating, among other things, that its historical financial statements and related auditors reports should not be relied upon.

31.    On March 30, 2012, Sino filed for protection from its creditors under the CCAA and obtained a stay of proceedings against it, its subsidiaries and directors and officers, including the Ontario Action.

32.    On May 9, 2012, Sino's shares were delisted from the TSX. The delisting was imposed due to Sino's failure to meet the continued listing requirements of the TSX as a result of the CCAA Proceedings (discussed below), and for failure to file on a timely basis certain of its

interim financial statements and the audited financial statements for the year ended December 31, 2011.  Sino has not filed audited financial statements for any period subsequent to 2010. Ernst & Young resigned as Sino's auditors effective April 4, 2012.  No new auditors were appointed.

**CLASS ACTIONS AGAINST HORSLEY RELATING TO SINO**

33.     On July 20, 2011, the Ontario Action was commenced under the *Class Proceedings Act, 1992* (the "CPA") against Sino, Horsley, and other defendants on behalf of persons that had purchased Sino securities in the period from March 19, 2007 to June 2, 2011.  In this action, the plaintiffs allege that Sino misstated its financial statements, overstated the value of its assets, and concealed material information about its business and operations from investors in its public filings.  As a result, Sino's securities allegedly traded at artificially inflated prices for many years.

34.     Before commencing the Ontario Action, Class Counsel conducted an investigation into the Muddy Waters allegations with the assistance of the Dacheng law firm, one of China's largest law firms ("Dacheng").  Dacheng was retained on the day after the Muddy Waters report was issued.  Class Counsel's investigation into the Muddy Waters allegations continued since that time, and has been aided not only by Dacheng, but also by Hong-Kong based investigators specializing in financial fraud; two separate Toronto-based firms that specialize in forensic accounting, generally accepted accounting principles and generally accepted auditing standards; a lawyer qualified to practice in the Republic of Suriname, where Sino purported to own, through an affiliate, certain timber assets; and a financial economist who specializes in the treatment of damages in securities class actions.

35.     On June 9, 2011, Siskinds Desmeules ("Desmeules"), a Quebec city law firm affiliated with Siskinds, commenced the Quebec Action against Sino, Horsley, and certain other defendants in the Quebec Superior Court.

36.     There were also two other proposed class proceedings commenced in Ontario relating to Sino.  In December 2011, there was a motion to determine which of the three actions in Ontario should be permitted to proceed and which should be stayed.  By Order dated January 6, 2012, the Honourable Justice Perell granted carriage to the Class Plaintiffs, and appointed Siskinds and Koskie Minsky to prosecute the Ontario Action on behalf of the proposed class.

37.     On January 27, 2012, the Washington, DC-based law firm of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") commenced the US Action against Sino, Horsley, and other defendants in the New York Supreme Court.  The US Action was transferred from the New York state court to the federal District Court for the Southern District of New York in March 2012.

38.     By way of Order of the United States District Court Southern District of New York dated January 4, 2013, David Leapard, IMF Finance SA and Myong Hyoon Yoo were appointed as the lead plaintiffs and Cohen Milstein as lead counsel to represent the interests of the proposed class.

39.     Class Counsel, Desmeules, and Cohen Milstein have been working together in a coordinated manner in all three of the proceedings.

40.     On April 18, 2012, the Class Plaintiffs filed a Fresh as Amended Statement of Claim, a copy of which is attached hereto as **Exhibit "B"**.  In March 2014, the Class Plaintiffs served on the defendants a proposed Second Fresh as Amended Statement of Claim.  The motion to amend the statement of claim is scheduled to be heard along with the motions for certification and leave

under Part XXIII.1 of the Ontario *Securities Act*. Attached and marked as **Exhibit "C"** is a copy of the proposed Second Fresh as Amended Statement of Claim.

## PLAINTIFFS' MOTIONS FOR CERTIFICATION AND LEAVE

41.    In March and April 2012, the Class Plaintiffs brought (a) a motion for certification of the Ontario Action as a class action under the CPA; and (b) a motion for leave to proceed with statutory claims under Part XXIII.1 of the *OSA*.

42.    The Class Plaintiffs filed voluminous motion records in support of their motions, comprising evidence from their investigations and expert reports.  The motion records included:

(a)    an affidavit of Steven Chandler, a senior law enforcement official from Hong Kong who was involved in investigating Sino in China;

(b)    an affidavit of Alan Mak, an expert in forensic accounting;

(c)    an affidavit of Dennis Deng, a lawyer qualified to practice in the People's Republic of China, and a partner in the Dacheng law firm; and

(d)    an affidavit of Carol-Ann Tjon-Pian-Gi, a lawyer qualified to practice in the Republic of Suriname.

43.    The certification and leave motions were scheduled for November 21 to 30, 2012, but were not heard at that time due to Sino's insolvency.

## SINO'S INSOLVENCY

44.    On March 30, 2012, Sino commenced the CCAA Proceedings and obtained an order for an interim stay of proceedings against the company, its subsidiaries, and its directors and officers.  Pursuant to an order on May 8, 2012, the stay of proceedings was extended to all other defendants in the action, including Horsley.

45.    From the outset, it was apparent to counsel to the Ontario Plaintiffs that the CCAA

Proceedings presented a material risk to the Ontario Plaintiffs; namely, that in order to effect a

restructuring that generated as much value as possible for Sino's creditors, there could be a plan

of arrangement that had the effect of imposing an unfavourable settlement on the Ontario

Plaintiffs.

46.    Consequently, Class Counsel immediately entered into negotiations with other

stakeholders in the CCAA Proceedings, and took a number of steps to vigorously represent the

interests of the purchasers of Sino's securities.  The following were among Class Counsel's main

objectives:

   (a)    Reserving the Ontario Plaintiffs' rights to object to various features of the CCAA
          Proceedings, so as to generate and/or preserve momentum for the Ontario
          Plaintiffs' claims and positions;

   (b)    Ensuring that a Claims Process was established that identified the universe of
          stakeholders having an interest in the CCAA Proceedings while ensuring the
          recognition of the totality of the representative claim advanced by the Ontario
          Plaintiffs;

   (c)    Establishing a process for the mediation in the CCAA Proceeding through which
          the positions of the various stakeholders would be defined; and

   (d)    Obtaining access to information that would permit Class Counsel to make
          informed recommendations to the Ontario Plaintiffs and the court in connection
          with the terms of any Plan.

47.    To further these objectives, Class Counsel took a number of steps in the CCAA

Proceedings, including the following:

   (a)    Bringing or appearing in response to the following motions:

(i)       March 30, 2012 – Attending at the initial application regarding *CCAA* protection and sales process for Sino and its subsidiaries, including a stay of proceedings against Sino, its subsidiaries and directors and officers;

(ii)      April 13, 2012 – Attending at the Company's motion regarding stay extension;

(iii)     April 20, 2012 – Bringing a motion regarding advice and direction on the *CCAA* stay and its impact on the pending motions in the Ontario Action;

(iv)      April 20, 2012 – Attending at the Company's motion regarding expansion of the powers of the Monitor;

(v)       May 8, 2012 – Attending and participating actively in the motion regarding a third party stay;

(vi)      May 8, 2012 – Bringing a motion regarding Pöyry settlement leave;

(vii)     May 14, 2012 – Attending and participating in a motion regarding Claims Procedure Order, including granting of leave to the Ontario Plaintiffs to file a Claim in respect of the substance of the matters set out in the Ontario Action on behalf of the proposed Class and the same leave to the plaintiffs in the Quebec Action;

(viii)    May 14, 2012 – Attending a motion brought by Contrarian, one of Sino's noteholders;

(ix)      May 17, 2012 – Bringing a motion in the Ontario Action regarding a third-party funding agreement;

(x)       May 17, 2012 – Bringing a motion in the Ontario Action regarding Pöyry settlement approval;

(xi)      May 31, 2012 – Attending at the Company's motion regarding stay extension;

(xii)     June 26, 2012 – Attending at the Company's motion regarding the status of Shareholder Claims and Related Indemnity Claims under the *CCAA*;

(xiii)    July 25, 2012 – Precipitating and attending at a motion regarding mediation in the *CCAA* proceedings, which included an order that the Ontario Plaintiffs were a party to the mediation;

(xiv)     July 27, 2012 – Attending at the Company's motion regarding the status of Shareholder Claims and Related Indemnity Claims under the *CCAA*;

(xv)      July 30, 2012 – Bringing a motion regarding document production and a data room;

(xvi)    August 31, 2012 – Attending at the Company's motion regarding plan filing and meeting Order;

(xvii)    August 31, 2012 – Attending at the Company's motion regarding adjournment of Ad Hoc Committee's motion (regarding appointment of Representative Plaintiff and leave to vote on Plan of Compromise);

(xviii)    September 28, 2012 – Attending at the Company's motion regarding stay extension;

(xix)    October 9, 2012 – Attending and participating in the Company's motion regarding adjournment of the Ad Hoc Committee's motion (regarding lifting of the stay against the Third Parties);

(xx)    October 9, 2012 – Attending at the Company's motion regarding stay extension;

(xxi)    October 28, 2012 – Bringing a motion to limit the scope of stay to exclude the Third Party Defendants and others;

(xxii)    October 29, 2012 – Attending at the Company's motion regarding revised noteholder noticing process;

(xxiii)    November 13, 2012 – Attending an appeal regarding Equity Claims decision; and

(xxiv)    November 23, 2012 – Attending at the Company's motion regarding stay extension;

(xxv)    December 7, 2012 – Attending and participating in the motion to sanction the Plan;

(b)    almost from the inception of the CCAA Proceedings, engaging in extensive and protracted negotiations with the Ad Hoc Noteholder Group and with Sino with respect to the terms of the Plan of Reorganization;

(c)    bringing a motion early in the proceeding seeking various relief challenging the framework of the CCAA Proceedings, such as the appointment of a receiver and providing for representation on behalf of the Class Members, and reserving all rights with respect to those issues throughout the CCAA Proceedings;

(d)    supporting a motion for an order increasing the powers of the Monitor to administer Sino which took away powers from entrenched management and the

then-existing board, protecting the assets of the company for all stakeholders and ensuring greater transparency and balance in the proceeding;

(e)    negotiating the claims procedure in the CCAA Proceedings and obtaining the right to file a representative claim so as to protect the interests of the putative Class;

(f)    obtaining a data room of confidential non-public documents from Sino, which related principally to the audits of Sino's financial statements so as to permit the Ontario Plaintiffs to negotiate with other stakeholders at the Mediation and respond to any plan of arrangement in an informed manner;

(g)    examining all applicable insurance policies and indemnity agreements and assessed the capacity to pay of various defendants, including Horsley;

(h)    compelling the attendance of Sino's CEO at a cross-examination and testing his evidence in the CCAA Proceedings;

(i)    engaging in multiple formal and informal, group and individual mediation and negotiation sessions with other stakeholders regarding the Class Members' claims, including a court-ordered, 2-day Mediation in September presided over by the Honourable Justice Newbould; and

(j)    bringing a motion, in response to the form of the restructuring plan initially filed with the court, which the Ontario Plaintiffs deemed to be contrary to their interests, challenging various features of the Plan, and seeking the right to vote on the Plan, and expressly reserving all of the Ontario Plaintiffs' rights in connection with that motion pending the presentation of the plan for sanction by the court, to ensure that the plan was in the best interests of the Class Members.

## SETTLEMENT WITH PÖYRY (BEIJING)

48.    The Ontario Plaintiffs engaged in settlement discussions with Pöyry (Beijing) Consulting Company Limited ("Pöyry (Beijing)"), a defendant in these proceedings, starting in January

2012. Following arm's-length negotiations, the Ontario Plaintiffs entered into a settlement with

Pöyry (Beijing) in March 2012.

49.      On September 25, 2012, the Ontario Action was certified as a class proceeding as against

Pöyry (Beijing) for the purposes of settlement and the settlement was approved between the class

and Pöyry (Beijing).

**COURT-ORDERED MEDIATION**

50.      On July 25, 2012, this Court ordered the various constituencies in the CCAA Proceedings

to attend a mediation.  On September 4 and 5, 2012, the Ontario Plaintiffs attended an all-parties

mediation, which included Horsley.  The mediation was conducted with the assistance of the

Honourable Justice Newbould, acting as mediator.  Extensive mediation briefs were filed by all

parties.  The briefs and the mediation itself set forth the position of the parties, including

Horsley.  The mediation did not result in a settlement with any of the parties, including Horsley,

at that time.

51.      It is Class Counsels' opinion that, given the defendants' negotiating stance as the

mediation, the Ontario Plaintiffs could not have negotiated a significant all-party settlement at

that mediation.

52.      Following the mediation, settlement discussions continued with the defendants.

However, those settlement discussions did not come close to bridging the significant difference

between the position of the parties.

**SETTLEMENT WITH ERNST & YOUNG**

53.     In November 2012, the Ontario Plaintiffs engaged in a further mediation with Ernst &
Young, which resulted in the Ernst & Young Settlement and the Ernst & Young Release (all as
defined in the Plan).  The Ernst & Young Settlement was conditional upon obtaining orders in
the CCAA proceedings and in the United States Bankruptcy Court resolving all claims against
Ernst & Young in relation to Sino.

54.     The framework of the Ernst & Young Settlement is contained at Article 11.1 of the Plan
and was the template for a similar framework for Named Third Party Defendants contained at
Article 11.2 of the Plan (discussed below).

55.     Pursuant to a motion brought by the Ontario Plaintiffs, the Ernst & Young Settlement
was approved by this Court on March 20, 2013.  The Ontario Plaintiffs then brought a motion for
approval of the method of distribution of the Ernst & Young Settlement funds to Securities
Claimants and claims filing procedure.  The motion was granted on December 27, 2013.

56.     In connection with both of these hearings, extensive notice was given to Securities
Claimants of these proceedings.  To date, over 47,000 claims have been filed in connection with
the Ernst & Young Settlement.

**SETTLEMENT FRAMEWORK IN ARTICLE 11.2 OF THE PLAN**

57.     Article 11.2 of the Plan provides the Ontario Plaintiffs with the ability to complete further
settlements within the context of the CCAA proceedings, subject to further court approval.

58.    Article 11.2 contains a framework by which an Eligible Third Party Defendant may become a named Third Party Defendant for the purpose of entering into a Named Third Party Defendant Settlement and Obtaining a Named Third Party Defendant Release.

59.    The Horsley Settlement contemplates that the settlement will be effected through Article 11.2 of the Plan.  The parties have obtained the necessary consents requires pursuant to Article 11.2(a) of the Plan to add Horsley as a Named Third Party Defendant.  Attached and marked as **Exhibit "D"** is a letter dated January 21, 2013, from Jennifer Stam, counsel to the Monitor, to the service list advising that Horsley had become a Named Third Party Defendant.

60.    In order for the Horsley Settlement to be a Named Third Party Defendant Settlement pursuant to the Plan, it must be acceptable to the Monitor and the Litigation Trustee.  The Litigation Trustee is a party to the settlement.  Attached and marked as **Exhibit "E"** is an email chain containing an email dated May 21, 2014 from Derrick Tay to Rob Staley advising that the Monitor consents to the Horsley Settlement being a Named Third Party Defendant Settlement.

61.    In order to effect a Named Third Party Defendant Settlement through Article 11.2 of the Plan, the settlement must be approved by the court and the court must issue a Named Third Party Defendant Settlement Order.  The proposed draft Settlement Order, appended as Schedule "C" to the Minutes of Settlement, is such an order.

**OSC STATEMENT OF ALLEGATIONS AGAINST HORSLEY**.

62.    On May 22, 2012, the OSC issued a Statement of Allegations against Sino-Forest and certain of its senior executives, including Horsley (the "OSC Proceeding").  The Statement of Allegations clearly distinguishes the conduct of Horsley from the conduct of the rest of the respondent senior executives ("Overseas Management").

63.     While the Statement of Allegations alleges fraud against Overseas Management, the allegations against Horsley are consistent with negligence only, and not fraud.

64.     Attached and marked as **Exhibit "F"** are the OSC Statement of Allegations.

65.     Pursuant to paragraph 29(c) of the Minutes of Settlement, the Horsley Settlement is conditional upon the OSC approving a settlement of the OSC Proceeding as against Horsley.

66.     I am advised by Peter Wardle and believe that the proposed settlement of the OSC Proceeding against Horsley is conditional upon approval of the Horsley Settlement.

**LITIGATION TRUST CLAIM AGAINST HORSLEY**

67.     In July 2013, the Litigation Trust issued a statement of claim against Horsley and other senior executives of Sino.  As with the OSC Proceeding, the Litigation Trust claim clearly distinguishes the conduct of Horsley from the conduct of the other defendants.

68.     In our view, the allegations against Horsley in the Litigation Trust are generally consistent with our understanding of his role with respect to Sino and our rationale in recommending the Horsley Settlement.  The Litigation Trust claim against Horsley is attached and marked as **Exhibit "G"**.

**Certain Securities Claimants' Interest in the Litigation Trust**

69.     Pursuant to Article 4.11 of the Plan, the Litigation Trust Interests (as defined in the Plan) in the Litigation Trust are allocated as follows:

    (a)     the Affected Creditors (as defined in the Plan) shall be collectively entitled to 75% of such Litigation Trust Interests; and

(b)    the Noteholder Class Action Claimants (as defined in the Plan) shall be collectively entitled to 25% of such Litigation Trust Interests.

70.    Accordingly, 25% of the $1.4 million being paid in settlement of the Litigation Trust claims will be to the benefit of certain Securities Claimants that acquired Sino notes, a factor which was considered by Class Counsel in settlement negotiations.

## SETTLEMENT WITH HORSLEY

71.    The negotiations leading to the Horsley Settlement were conducted on an adversarial, arm's-length basis.

72.    Following the failed court-ordered mediation in September 2012, Class Counsel continued settlement discussions with counsel to Horsley. An agreement in principle was reached in January 2014; however, it soon became apparent that any resolution of the class action claims against Horsley would require a simultaneous resolution of the Litigation Trust claims against him. This was due to a number of practical considerations, including i) any settlement within the Plan's Article 11.2 framework required consent of the Litigation Trust; and ii) Horsley sought to resolve all outstanding litigation against him.

73.    Class Counsel, Horsley's counsel (and insurers), and counsel to the Litigation Trust continued to negotiate a resolution of all claims over the next several months, finally entering into the Minutes of Settlement in late May 2014.

**THE ONTARIO PLAINTIFFS SUPPORT THE SETTLEMENT**

74.    The Ontario Plaintiffs are:

(a)    The trustees of the Labourers' Pension Fund of Central and Eastern Canada ("Labourers Fund"). The Labourers Fund is a multi-employer pension plan providing benefits for employees working in the construction industry.   The trustees of the Labourers Fund manage more than $2.5 billion of assets.  During the period from March 19, 2007 to June 2, 2011 the Labourers Fund purchased Sino common shares.  Most of those shares were purchased in the secondary market over the TSX.  The Labourers Fund also purchased Sino common shares pursuant to a prospectus that Sino issued.  As at the day before the issuance of the Muddy Waters report, the Labourers Fund held a total of approximately 128,700 Sino shares. The Labourers Fund is a long-standing client of Koskie Minsky LLP;

(b)    The trustees of the International Union of Operating Engineers ("OE Fund").  The OE Fund is a multi-employer pension plan providing pension benefits for operating engineers in Ontario. The trustees of the OE Fund manage approximately $1.5 billion of assets. During the period from March 19, 2007 to June 2, 2011, the OE Fund purchased Sino common shares over the TSX and held approximately 324,100 such shares at the day before the issuance of the Muddy Waters report. The OE Fund is a long-standing client of Koskie Minsky LLP;

(c)    Sjunde AP-Fonden ("AP7"), the Swedish National Pension Fund.  AP7 manages billions of dollars in assets.  During the period from March 19, 2007 to June 2,

2011, AP7 purchased common shares over the TSX and held 139,398 shares as at the day before the issuance of the Muddy Waters report;

(d)     David Grant is an individual resident in Calgary, Alberta.  During the period from March 19, 2007 to June 2, 2011, he purchased 100 of the Sino 6.25% Guaranteed Senior Notes due 2017 pursuant to an offering memorandum.   Mr. Grant continued to hold these notes as at the day before the issuance of the Muddy Waters report; and

(e)     Robert Wong is an individual residing in Kincardine, Ontario.   Mr. Wong purchased hundreds of thousands Sino shares from 2002 (when he first became a Sino shareholder) through June 2011. During the period from March 19, 2007 to June 2, 2011, he purchased Sino common shares in the secondary market over the TSX and 30,000 shares pursuant to a prospectus that Sino issued.  Mr. Wong continued to hold 508,700 Sino common shares at the day before the issuance of the Muddy Waters report.

75.     Collectively, the Ontario Plaintiffs owned in excess of 1.1 million common shares at the day before the issuance of the Muddy Waters report, and those shares had a market value immediately prior to the issuance of the Muddy Waters report of over $20 million.

76.     I am advised by Jonathan Ptak of Koskie Minsky that the trustees of the Labourers Fund and the OE Fund support the Horsley Settlement and have instructed Class Counsel to seek approval of it.  I am advised by Serge Kalloghlian of Siskinds LLP that Robert Wong, David Grant, and AP7 also support the settlement and have instructed Class Counsel to seek approval of it.

77.     In addition, I am advised by Daniel Bach of Siskinds LLP that the proposed settlement

with Horsley is supported by Davis.  Davis was the second-largest shareholder of Sino, holding

approximately 12.6% of Sino's outstanding common shares prior to the issuance of the Muddy

Waters report.

78.     Class Counsel has been retained by Davis.  Mr. Bach advises me that, since the

commencement of the class actions, he has had numerous and extensive discussions with

responsible officials at Davis with respect to the progress generally of the class action and the

CCAA Proceeding, including the terms and rationale for the Horsley Settlement.

## FACTORS CONSIDERED IN ASSESSING THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

### Experience of Class Counsel

79.     Siskinds LLP and Koskie Minsky LLP both have extensive experience litigating and

resolving complex class action litigation similar to this case.  In addition, Kessler Topaz Meltzer

and Check LLP, counsel to AP7, are one of the leading U.S. class action firms with particular

expertise in securities class actions.

80.     Siskinds acted for the plaintiffs in the first action certified as a class proceeding under the

*CPA, Bendall v McGhan Medical Corp (1993), 14 OR (3d) 734 (Gen Div)*.  Since that time,

Siskinds has been lead or co-lead counsel to the plaintiffs in well over 100 class proceedings and

has successfully resolved over 60 such proceedings, in areas such as securities, competition

(price-fixing), product liability (particularly with respect to pharmaceuticals and medical

products), the environment and consumer claims.

81.     To the date of this affidavit, Siskinds has had approximately 20 securities class actions

and 2 derivative proceeding settlements approved by courts, including most recently the

*SunOpta, CV Technologies, Bear Lake Gold, PetroKazakhstan, Gildan Activewear, Canadian Superior Energy, Redline Communications, Gammon Gold,* and *Arctic Glacier* securities class action settlements.

82.    Koskie Minsky has prosecuted class actions at all levels of court in Ontario as well as before the Supreme Court of Canada, and has been responsible for shaping class actions law through leading cases including *Cloud v The Attorney General of Canada, Pearson v Inco Ltd, Caputo v Imperial Tobacco,* and *Markson v MBNA Canada Bank*.    Koskie Minsky has prosecuted actions for securities fraud, pension fund and investment claims, intellectual property violations, environmental damage and residential school abuse, among others.

83.    Koskie Minsky has acted for shareholders in securities class actions, including *Lawrence v Atlas Cold Storage Holdings Inc, Toevs v Yorkton, Frohlinger v Nortel Networks Corp, Millwright Regional Council of Ontario Pension Trust Fund (Trustees of) v. Celestica Inc, Bayens v. Kinross Gold Corporation,* and *Coffin v Atlantic Power Corporation*.

84.    Paliare Roland has appeared as counsel in many CCAA restructuring proceedings, and has acted for a variety of stakeholders in those proceedings, including stakeholders acting in representative capacities.    Past engagements include, among others, advising and appearing on behalf of a number of institutional and other investors including various dissident noteholders in connection with the restructuring of Canada's non-bank asset backed commercial paper market, advising and appearing on behalf of the Superintendent of Financial Services in his capacity as administrator of Ontario's Pension Benefits Guarantee Fund in connection with the restructuring of Nortel Networks Corporation and its global subsidiaries, advising and appearing on behalf of the United Steelworkers in connection with the Stelco restructuring, as well as in connection with the restructuring of a variety of other steel mills, pulp mills, and manufacturing facilities

across Ontario, and advising and appearing on behalf of the Air Line Pilots Association in connection with the restructuring of Air Canada. Paliare Roland also appeared as counsel to the committee of non-unionized Quebec employees in the restructuring of Fraser Papers, and, most recently, as counsel to a committee of former employees in the Cinram restructuring.

85.    As a result of Class Counsel's involvement in other cases, we have gained considerable experience in the settlement mechanics and imperatives, damages methodologies, and risks associated with this type of litigation.

86.    Class Counsel recommend the approval of the Horsley Settlement. In our view, its terms, including the consideration available to Securities Claimants, are fair and reasonable in the circumstances. The Horsley Settlement will deliver an immediate benefit to Securities Claimants on claims that faced risks.

87.    I explain below our rationale for recommending to the Ontario Plaintiffs, and to this Court, the compromise of the claims advanced against Horsley in this action.

**Information Supporting Settlement**

88.    In assessing our clients' position and the proposed settlement, we had access to and considered the following sources of information:

(a)    all of Sino's public disclosure documents and other publicly available information with respect to Sino;

(b)    the available trading data for Sino's securities;

(c)    non-public documents uploaded by Sino into the data-room established in the CCAA Proceedings for purposes of the global mediation, which included the

documents listed at Schedule "A" to the July 30, 2012 Order of Justice Morawetz, which is marked and attached hereto as **Exhibit "H"**;

(d)    Horsley's responsive insurance policies;

(e)    a statutory declaration from Horsley confirming the net worth of Horsley and his spouse;

(f)    Sino's Management Information Circulars, which contain information regarding the amount of compensation received by Horsley from Sino;

(g)    the input and opinions of our accounting experts, insolvency law experts, and insurance coverage experts;

(h)    the input and opinion of Frank C. Torchio, the President of Forensic Economics, Inc., who has consulted or given independent damage opinions in securities fraud lawsuits for over 20 years.

(i)    the Statement of Allegations issued against Sino, Horsley and others by the OSC, dated May 22, 2012;

(j)    the mediation briefs provided by the parties, including Horsley, at the global mediation in September, 2012;

(k)    input from experienced U.S. securities counsel, Kessler Topaz Meltzer & Check, LLP, and discussions with US Plaintiffs' Counsel; and

(l)    the Litigation Trust claim against Horsley and others.

89.    In our view, Class Counsel had more than adequate information available from which to make an appropriate recommendation concerning the resolution of the claims as against Horsley.

90.    It has always been Class Counsel's view that the claims against Horsley had merit. However, a number of factors in this case presented a significant risk to the ultimate success and recovery from Horsley. These risks weighed in favour of settlement with Horsley. It is Class

Counsel's view that the Horsley Settlement is fair and reasonable and in the best interests of Securities Claimants.   Class Counsel's assessment of the Horsley Settlement and our recommendation of it rest primarily on the following factors, in addition to the general risks of proceeding with complex litigation.

**Actual Damages Far Exceed Recoverable Damages**

91.   The Ontario Action asserts the following claims against Horsley:

(a)   statutory liability in respect of primary market share purchaser claims pursuant to s. 130 of the *OSA*;

(b)   statutory liability in respect of secondary market share purchaser and note purchaser claims pursuant to Part XXIII.1 of the *OSA*;

(c)   oppression pursuant to s. 241 of the *Canada Business Corporations Act,* R.S.C., 1985, c. C-44; and

(d)   common law and equitable claims for negligent misrepresentation, negligence *simpliciter*, conspiracy, and unjust enrichment.

92.   These claims, if entirely successful, could result in an award for significant damages against all defendants.  I have reviewed various expert reports by Mr. Torchio regarding damages in this action.  Mr. Torchio is the president of Forensic Economics, Inc., and has consulted or given independent opinions on damages in securities fraud lawsuits for over 20 years. In this course of this litigation, Mr. Torchio provided his opinion that total estimated damages to Securities Claimants run into the billions of dollars.

93.   We were guided by the advice of Mr. Torchio, but were also cognizant that it is common for defendants to produce opinions that make different assumptions and put forth lower damages figures.  Indeed, in the course of settlement discussions in this case, certain defendants insisted that far more conservative damages figures would be appropriate.

94.    It is also important to recognize that Mr. Torchio opines on total estimated damages.  His opinions are based in large part on trading models and various assumptions, the results of which could vary from the actual trading patterns of Securities Claimants.

95.    Further, the damages alleged are for all losses suffered, including those attributable to Sino, the other individual defendants, and third party defendants.

96.    Moreover, the actual damages to be paid may only be for claims filed.  For a variety of reasons, less than 100% of class members generally file claims.  Although claims rates vary from case to case, it is never the case in a matter of this nature that all class members file claims. Therefore, actual payable damages could be some portion of Mr. Torchio's figures if the matter proceeded to trial and the defendants succeeded in establishing that damages should be based only on claims filed.

97.    Finally, and most significantly, irrespective of the scale of actual damages, the legal and practical impediments to recovery – namely the statutory liability limit under Part XXIII.1, Horsley's capacity to pay, and the quickly dwindling Directors and Officers insurance policies – weigh strongly in our recommendation of the Horsley Settlement.  In essence, while damages alleged are in the billions of dollars, recovery from Horsley may be less than the settlement amount if the plaintiffs were successful at trial.

Statutory claims on behalf of primary market share and note purchasers

98.    The Ontario Action advances claims against Horsley under s 130 of the *OSA*.  According to Mr. Torchio, the damages for these claims are limited in the aggregate to approximately $78.5 million.  For the reasons stated above, actual damages may be lower.

99.    It is very likely that if Horsley was found liable, responsibility would also be borne by Sino, the other officers and directors, BDO Limited, and, notably, the Underwriters. Based on our review of the information available to us, including the allegations against Horsley in the OSC Proceeding and Litigation Trust claim, it is Class Counsel's view that the settlement amount reflects Horsley's several liability under the s 130 claims.

100.    It should be noted that the Ontario Action advances claims pursuant to s 130.1 of the *OSA* against Sino for misrepresentations in the offering memoranda issued during the class period. However, s. 130.1 does not provide for a statutory right of action relating to the offering memoranda is respect of any other defendant, including Horsley, a fact that Class Counsel have taken into account in recommending the Horsley Settlement.

Part XXIII.1 Liability Limits

101.    The Ontario Action asserts statutory secondary market misrepresentation claims against Horsley pursuant to Part XXIII.1 of the *OSA*. Part XXIII.1 imposes limits on the amount recoverable from certain defendants. In the case of an officer or director of a responsible issuer, such as Horsley, the limit is the greater of $25,000 and 50% of the individual's compensation from the responsible issuer (i.e. Sino) and its affiliates for the 12 month-period immediately preceding the day on which the misrepresentation was made.

102.    According to our estimates based on publicly available information, Horsley received approximately $10.3 million in aggregate compensation from Sino in the years 2006 to 2010 (information not available for 2011), and approximately $1.1 million in 2006. The liability limit provisions under Part XXIII.1 have not yet been interpreted by any court, and depending on the interpretation that is ultimately adopted, based on our estimates, it is possible that Horsley's

liability limit could range as low as approximately $600,000 - $700,000 for the secondary market claims.

103.    The only exception to this recovery under Part XXIII.1 would be for the plaintiffs to prove that Horsley made the alleged misrepresentations knowingly.  This could be a difficult standard to meet, one which Horsley denies and which Horsley will assert requires proof of fraud.  Class Counsel has found no evidence of conduct that would support a finding of fraud by Horsley.

104.    Class Counsel's view that establishing knowledge will be challenging is bolstered by the OSC Statement of Allegations, which makes allegations consistent with negligence and no allegations amounting to knowledge, intentional misrepresentations, or fraud.

Oppression, Unjust Enrichment, and Common Law Claims

105.    The Ontario Action also asserts claims against Horsley in oppression, unjust enrichment, negligence, and negligent misrepresentation.  Each of these claims presents their own procedural and substantive challenges, including the potential for significant individual issues following the common issues trial.

**Horsley's Insurance and Capacity to Pay**

106.    Class Counsel has been provided with Sino's Directors & Officers insurance policies that are responsive to the claims against Horsley.  The insurance policies provided coverage of $60 million in aggregate, and are responsive to the claims against Sino and all other individual defendants named in the class actions, as well as certain respondents in the OSC Proceedings.  Accordingly, the insurance proceeds available to the plaintiffs as a potential source of recovery are quickly dwindling due to the many sets of defence lawyers being paid out of the policies,

including Bennett Jones LLP; Miller Thomson LLP; Osler, Hoskin & Harcourt LLP; Davis LLP;

McMillan LLP; and Wardle Daley Bernstein Bieber LLP (Horsley's counsel).

107.   Class Counsel has been monitoring the depletion of the funds available under Sino's

Directors & Officers insurance policies.  We are advised by Robert Staley, counsel to Sino, and

believe the following amounts of insurance were available under the policies on the following

dates:

      (a)      August 23, 2012 – approximately $52 million;

      (b)      March 4, 2013 – approximately $47.5 million;

      (c)      September 4, 2013 – approximately $45 million;

      (d)      February 13, 2014 – approximately $42 million.

108.   Attached and marked as **Exhibit "I"** is a letter dated July 3, 2014 from Mary Margaret

Fox, counsel to Chubb and ACE.  Among other things, the letter indicates that as of July 3, 2014,

$7,002,379.82 remains payable under the Chubb policy.  Accordingly, I believe that, as of the

date of this affidavit, there is approximately $37 million of aggregate insurance funds remaining

under Sino's Directors & Officers insurance policies.  The letter also addresses the rationale for

paragraphs 18-30 of the Settlement Order.

109.   One of our goals in entering the Horsley Settlement was to preserve to the greatest extent

possible the amount of insurance proceeds available as potential recovery to Securities

Claimants.  Accordingly, the Horsley Settlement prohibits Horsley from claiming any legal fees

or disbursements from the insurance policies after the Effective Date, save and except for any

criminal charges that may be laid against him.

110.    In the absence of a settlement, Horsley's counsel would be involved in continued cross examinations in the Ontario Action, the certification and leave motions in the Ontario Action, (scheduled for January 2015), and a lengthy trial in the OSC Proceedings (presently scheduled to begin September 2014).  It is estimated that Horsley's legal costs to defend the OSC Proceedings and the Class Actions would exceed $2 million which would otherwise draw on Sino's Directors & Officers liability insurance.

111.    The Horsley Settlement will therefore likely preserve millions of dollars of insurance proceeds that would otherwise not be available for recovery from Sino and the remaining individual defendants.

112.    Moreover, in the absence of a settlement with the OSC (which is conditional upon approval of the Horsley Settlement), Horsley may have been subject to a fine.  We have been provided with a statutory declaration from Horsley concerning the combined net worth of him and his spouse, and it is our view that a significant fine imposed on Horsley in the OSC Proceeding could impinge on his ability to make any personal contribution to a settlement.

**Settlement with Litigation Trust**

113.    As indicated, Noteholder Class Action Claimants are entitled to 25% of the $1.4 million being paid in Horsley's settlement of the Litigation Trust claim against him.  Of this amount, Horsley is making a personal contribution of $600,000.   Having reviewed the statutory declaration concerning the combined net worth of Horsley and his spouse, it is Class Counsel's view that a payment of $600,000 by Horsley is a significant contribution relative to the net assets that the plaintiffs could reasonably expect to collect on, particularly if a trial had occurred in the OSC Proceeding and a significant fine had been levied against him.

- 33 -

## CONCLUSION

114.    In light of all the above considerations, it is Class Counsel's opinion that the Horsley

Settlement is fair and reasonable to Securities Claimants.   Class Counsel recommend that the

Court approve the settlement.


SWORN before me at the City of  )
London, in the Province of Ontario,  )
this 4th day of July, 2014.  )
                                             )
                                             )
                                             )
_____  )
A Commissioner, etc.  )
                                             )
LSUC # S9642T

Charles M. Wright