**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, New York  10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)
Michael S. Etkin
Tatiana Ingman

*United States Bankruptcy Counsel for Class Action Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| SINO-FOREST CORPORATION, | Case No. 13- 10361 (MG) |
| Debtor in a Foreign Proceeding | |

### NOTICE OF FILINGS IN THE ONTARIO SUPERIOR COURT OF JUSTICE

   **PLEASE TAKE NOTICE** that on July 17, 2014, the *Factum of the Ad Hoc Committee of Purchasers of the Applicant's Securities, Including the Class Action Plaintiffs* attached hereto as **Exhibit A**. in support of approval of the Horsley Settlement, was filed with the Ontario Superior Court of Justice.

   **PLEASE TAKE FURTHER NOTICE** that on July 18, 2014, the *Factum of the Defendant, David J. Horsley* attached hereto as **Exhibit B** in support of approval of the Horsley Settlement, was filed with the Ontario Superior Court of Justice.

Dated: July 18, 2014
   New York, New York

          **LOWENSTEIN SANDLER LLP**

          _/s/ Michael S. Etkin_____
          Michael S. Etkin
          Tatiana Ingman
          1251 Avenue of the Americas
          New York, New York 10022
          metkin@lowenstein.com
          tingman@lowenstein.com

          *United States Bankruptcy Counsel for the*
          *Class Action Plaintiffs*

# **EXHIBIT  A**

Court File No.: CV-12-9667-00CL

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C.
1985, c. C-36, AS AMENDED, AND IN THE MATTER OF A PLAN OF COMPROMISE
OR ARRANGEMENT OF SINO-FOREST CORPORATION

Court File No.: CV-11-431153-00CP

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**

B E T W E E N :

**THE TRUSTEES OF THE LABOURERS' PENSION FUND
OF CENTRAL AND EASTERN CANADA, THE TRUSTEES OF THE
INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 793 PENSION
PLAN FOR OPERATING ENGINEERS IN ONTARIO, SJUNDE AP-FONDEN, DAVID
GRANT and ROBERT WONG**

Plaintiffs

- and -

**SINO-FOREST CORPORATION, ERNST & YOUNG LLP, BDO LIMITED (formerly
known as BDO MCCABE LO LIMITED), ALLEN T.Y. CHAN, W. JUDSON MARTIN,
KAI KIT POON, DAVID J. HORSLEY, WILLIAM E. ARDELL, JAMES P. BOWLAND,
JAMES M.E. HYDE, EDMUND MAK, SIMON MURRAY,  PETER WANG, GARRY J.
WEST, PÖYRY (BEIJING) CONSULTING COMPANY LIMITED, CREDIT SUISSE
SECURITIES (CANADA), INC., TD SECURITIES INC., DUNDEE SECURITIES
CORPORATION, RBC DOMINION SECURITIES INC., SCOTIA CAPITAL INC., CIBC
WORLD MARKETS INC., MERRILL LYNCH CANADA INC., CANACCORD
FINANCIAL LTD., MAISON PLACEMENTS CANADA INC., CREDIT SUISSE
SECURITIES (USA) LLC and MERRILL LYNCH, PIERCE, FENNER & SMITH
INCORPORATED (successor by merger to Banc of America Securities LLC)**

Defendants

Proceeding under the *Class Proceedings Act, 1992*

**FACTUM OF THE AD HOC COMMITTEE OF PURCHASERS OF THE APPLICANT'S
SECURITIES, INCLUDING THE CLASS ACTION PLAINTIFFS**
**Settlement Approval - Horsley Settlement**
**(Motion Returnable July 24, 2014)**

1201881v2

July 17, 2014

**Siskinds LLP**
680 Waterloo Street, Box 2520
London, ON  N6A 3V8

**A. Dimitri Lascaris (LSUC#: 50074A)**
Tel: (519) 660-7844
Fax: (519) 660-7845

**Serge Kalloghlian (LSUC#: 55557F )**
Tel: (416) 594-4392
Fax: (416) 362-2610
Email: serge.kalloghlian@siskinds.com

**Koskie Minsky LLP**
900-20 Queen Street West, Box 52
Toronto, ON  M5H 3R3

**Kirk M. Baert (LSUC#: 30942O)**
Tel: 416.595.2117
Fax: 416.204.2889
Email: kbaert@kmlaw.ca

**Jonathan Ptak (LSUC#: 45773F)**
Tel:  416.595.2149
Fax:  416.204.2903
Email: jptak@kmlaw.ca

**Paliare Roland Rosenberg Rothstein LLP**
250 University Avenue, Suite 501
Toronto, ON  M5H 3E5

**Ken Rosenberg (LSUC#: 21101H)**
**Massimo Starnino (LSUC#: 41048G)**
Tel: (416) 646-4300
Fax: (416) 646-4301

Lawyers for the Ad Hoc Committee of
Purchasers of the Applicant's Securities,
including the Class Action Plaintiffs

**TO: ATTACHED SERVICE LIST**

Court File No.  CV-12-9667-00-CL

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE ***COMPANIES' CREDITORS ARRANGEMENT ACT,***
**R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT**
**OF SINO-FOREST CORPORATION**

**SERVICE LIST**
**(as at January 30, 2013)**

| | |
|---|---|
| **TO:**  **BENNETT JONES LLP** | **AND**  **GOWLING LAFLEUR HENDERSON LLP** |
| 3400 One First Canadian Place, | **TO:**  1 First Canadian Place |
| P.O. Box 130 | 100 King Street West, Suite 1600 |
| Toronto, Ontario  M5X 1A4 | Toronto, Ontario M5X 1G5 |
| | |
| Robert W. Staley | Derrick Tay |
| Tel:  416.777.4857 | Tel:  416.369.7330 |
| Fax: 416.863.1716 | Fax: 416.862.7661 |
| Email: staleyr@bennettjones.com | Email: derrick.tay@gowlings.com |
| | |
| Kevin Zych | Clifton Prophet |
| Tel:  416.777.5738 | Tel:  416.862.3509 |
| Email: zychk@bennettjones.com | Email: clifton.prophet@gowlings.com |
| | |
| Derek J. Bell | Jennifer Stam |
| Tel:  416.777.4638 | Tel:  416.862.5697 |
| Email: belld@bennettjones.com | Email: jennifer.stam@gowlings.com |
| | |
| Raj S. Sahni | Ava Kim |
| Tel:  416.777.4804 | Tel:  416.862.3560 |
| Email: sahnir@bennettjones.com | Email: ava.kim@gowlings.com |
| | |
| Jonathan Bell | Jason McMurtrie |
| Tel:  416.777.6511 | Tel:  416.862.5627 |
| Email: bellj@bennettjones.com | Email: jason.mcmurtrie@gowlings.com |
| | |
| Sean Zweig | Lawyers for the Monitor |
| Tel:  416.777.6254 | |
| Email: zweigs@bennettjones.com | |
| | |
| Lawyers for the Applicant, Sino-Forest Corporation | |

AND
TO:

**FTI CONSULTING CANADA INC.**
T-D Waterhouse Tower
79 Wellington Street West
Toronto-Dominion Centre, Suite 2010,
P.O. Box 104
Toronto, Ontario  M5K 1G8

Greg Watson
Tel: 416.649.8100
Fax: 416.649.8101
Email: greg.watson@fticonsulting.com

Jodi Porepa
Tel: 416.649.8070
Email: Jodi.porepa@fticonsulting.com

Monitor

AND
TO:

**AFFLECK GREENE MCMURTY LLP**
365 Bay Street, Suite 200
Toronto, Ontario  M5H 2V1

Peter Greene
Tel: 416.360.2800
Fax: 416.360.8767
Email: pgreene@agmlawyers.com

Kenneth Dekker
Tel: 416.360.6902
Fax: 416.360.5960
Email: kdekker@agmlawyers.com

Michelle E. Booth
Tel: 416.360.1175
Fax: 416.360.5960
Email: mbooth@agmlawyers.com

Lawyers for BDO

AND
TO:

**BAKER MCKENZIE LLP**
Brookfield Place
2100-181 Bay Street
Toronto, Ontario  M5J 2T3

John Pirie
Tel: 416.865.2325
Fax: 416.863.6275
Email: john.pirie@bakermckenzie.com

David Gadsden
Tel: 416.865.6983
Email: david.gadsden@bakermckenzie.com

Lawyers for Poyry (Beijing) Consulting
Company Limited

AND
TO:

**TORYS LLP**
79 Wellington Street West
Suite 3000, Box 270
Toronto-Dominion Centre
Toronto, Ontario  M5K 1N2

John Fabello
Tel:  416.865.8228
Fax:  416.865.7380
Email:  jfabello@torys.com

David Bish
Tel:  416.865.7353
Email:  dbish@torys.com

Andrew Gray
Tel:  416.865.7630
Email: agray@torys.com

Lawyers for the Underwriters named in Class
Actions

AND  **LENCZNER SLAGHT ROYCE SMITH**
TO:  **GRIFFIN LLP**
Suite 2600, 130 Adelaide Street West
Toronto, Ontario  M5H 3P5

Peter H. Griffin
Tel:  416.865.9500
Fax:  416.865.3558
Email:  pgriffin@litigate.com

Peter J. Osborne
Tel:  416.865.3094
Fax:  416.865.3974
Email:  posborne@litigate.com

Linda L. Fuerst
Tel:  416.865.3091
Fax:  416.865.2869
Email:  lfuerst@litigate.com

Shara Roy
Tel:  416.865.2942
Fax:  416.865.3973
Email:  sroy@litigate.com

Lawyers for Ernst & Young LLP

AND  **GOODMANS LLP**
TO:  333 Bay Street, Suite 3400
Toronto, Ontario M5H 2S7

Benjamin Zarnett
Tel:  416.597.4204
Fax:  416.979.1234
Email:  bzarnett@goodmans.ca

Robert Chadwick
Tel:  416.597.4285
Email:  rchadwick@goodmans.ca

Brendan O'Neill
Tel:  416.979.2211
Email:  boneill@goodmans.ca

Caroline Descours
Tel:  416.597.6275
Email:  cdescours@goodmans.ca

Lawyers for Ad Hoc Committee of Bondholders

AND  **MERCHANT LAW GROUP LLP**
TO:  Saskatchewan Drive Plaza
100-2401 Saskatchewan Drive
Regina, Saskatchewan  S4P 4H8

E.F. Anthony Merchant, Q.C.
Tel:  306.359.7777
Fax:  306.522.3299
tmerchant@merchantlaw.com

Lawyers for the Plaintiffs re Saskatchewan
action

AND  **ONTARIO SECURITIES COMMISSION**
TO:  Suite 1900, 20 Queen Street West
Toronto, Ontario  M5H 3S8

Hugh Craig
Senior Litigation Counsel
Tel:  416.593.8259
Email:  hcraig@osc.gov.on.ca

AND TO:  **OSLER, HOSKIN & HARCOURT LLP**
1 First Canadian Place
100 King Street West
Suite 6100, P.O. Box 50
Toronto, Ontario M5X 1B8

Larry Lowenstein
Tel: 416.862.6454
Fax: 416.862.6666
Email: llowenstein@osler.com

Edward Sellers
Tel: 416.862.5959
Email: esellers@osler.com

Geoffrey Grove
Tel: (416) 862-4264
Email: ggrove@osler.com

Lawyers for the Board of Directors of Sino-Forest Corporation

AND TO:  **COHEN MILSTEIN SELLERS & TOLL PLC**
1100 New York, Ave., N.W.
West Tower, Suite 500
Washington, D.C. 20005

Steven J. Toll
Tel: 202.408.4600
Fax: 202.408.4699
Email: stoll@cohenmilstein.com

Attorneys for the Plaintiff and the Proposed Class re New York action

AND TO:  **SISKINDS LLP**
680 Waterloo Street
P.O. Box 2520
London, Ontario N6A 3V8

A. Dimitri Lascaris
Tel: 519.660.7844
Fax: 519.672.6065
Email: dimitri.lascaris@siskinds.com

Charles M. Wright
Tel: 519.660.7753
Email: Charles.wright@siskinds.com

Lawyers for an Ad Hoc Committee of Purchasers of the Applicant's Securities, including the Representative Plaintiffs in the Ontario Class Action against the Applicant

AND TO:  **KOSKIE MINSKY LLP**
20 Queen Street West, Suite 900
Toronto, Ontario M5H 3R3

Kirk M. Baert
Tel: 416.595.2117
Fax: 416.204.2899
Email: kbaert@kmlaw.ca

Jonathan Ptak
Tel: 416.595.2149
Fax: 416.204.2903
Email: jptak@kmlaw.ca

Jonathan Bida
Tel: 416.595.2072
Fax: 416.204.2907
Email: jbida@kmlaw.ca

Garth Myers
Tel: 416.595.2102
Fax: 416.977.3316
Email: gmyers@kmlaw.ca

Lawyers for an Ad Hoc Committee of Purchasers of the Applicant's Securities, including the Representative Plaintiffs in the Ontario Class Action against the Applicant

AND TO:    **COHEN MILSTEIN SELLERS & TOLL PLC**
88 Pine Street, 14th Floor
New York, NY 10005

Richard S. Speirs
Tel: 212.838.7797
Fax: 212.838.7745
Email: rspeirs@cohenmilstein.com

Attorneys for the Plaintiff and the Proposed
Class re New York action

AND TO:    **LAW DEBENTURE TRUST COMPANY OF NEW YORK**
400 Madison Avenue – 4th Floor
New York, New York 10017

James D. Heaney
Tel: 646-747-1252
Fax: 212-750-1361
Email: james.heaney@lawdeb.com

Senior Note Indenture Trustee

AND TO:    **THOMPSON HINE LLP**
335 Madison Avenue – 12th Floor
New York, New York 10017-4611

Yesenia D. Batista
Tel: 212.908.3912
Fax: 212.344.6101
Email: yesenia.batista@thompsonhine.com

Irving Apar
Tel: 212.908.3964
Email: irving.apar@thompsonhine.com

Curtis L. Tuggle
3900 Key Center, 127 Public Square
Cleveland, Ohio 44114
Tel: 216.566.5904
Fax: 216.566.5800
Email: Curtis.tuggle@thompsonhine.com

Lawyers for Senior Note Indenture Trustee

AND TO:    **THE BANK OF NEW YORK MELLON**
Global Corporate Trust
101 Barclay Street – 4th Floor East
New York, New York 10286

David M. Kerr, Vice President
Tel: 212.815.5650
Fax: 732.667.9322
Email: david.m.kerr@bnymellon.com

Convertible Note Indenture Trustee

AND TO:    **THE BANK OF NEW YORK MELLON**
320 Bay Street, 11th Floor
Toronto, Ontario M5H 4A6

George Bragg
Tel: 416.933.8505
Fax: 416.360.1711 / 416.360.1737
Email: George.bragg@bnymellon.com

Convertible Note Indenture Trustee

AND TO:    **THE BANK OF NEW YORK MELLON**
12/F Three Pacific Place
1 Queen's Road East, Hong Kong

Marelize Coetzee, Vice President
Relationship Manager, Default Administration
Group – APAC
Tel: 852.2840.6626
Mobile: 852.9538.5010
Email: marelize.coetzee@bnymellon.com

Tin Wan Chung
Tel: 852.2840.6617
Fax: 852.2295-3283
Email: tin.chung@bnymellon.com

Grace Lau
Email:  grace.lau@bnymellon.com

Convertible Note Indenture Trustee

AND
TO:  **WARDLE DALEY BERNSTEIN LLP**
2104 - 401 Bay Street, P.O. Box 21
Toronto Ontario M5H 2Y4

Peter Wardle
Tel:  416.351.2771
Fax:  416.351.9196
Email:  pwardle@wdblaw.ca

Simon Bieber
Tel:  416.351.2781
Email:  sbieber@wdblaw.ca

Erin Pleet
Tel:  416.351.2774
Email:  epleet@wdblaw.ca

Lawyers for David Horsley

AND
TO:  **LINKLATERS LLP**
10th Floor, Alexandra House
18 Chater Road
Hong Kong  China

Melvin Sng
Tel:  852 2901 5234
Fax:  852 2810 8133
Email:  Melvin.Sng@linklaters.com

Lawyers for Sino-Forest Corporation (Hong Kong)

T991329\TOR_LAW\ 7884118\29

AND
TO:

**LINKLATERS LLP**
10th Floor, Alexandra House
18 Chater Road
Hong Kong  China

Hyung Ahn
Tel:  852 2842 4199
Fax: 852 2810 8133
Email:  hyung.ahn@linklaters.com

Samantha Kim
Tel:  852.2842 4197
Email:  Samantha.Kim@Linklaters.com

Jon Gray
Tel:  852.2842.4188
Email:  Jon.Gray@linklaters.com

Lawyers for Sino-Forest Corporation (U.S.)

AND
TO:

**APPLEBY GLOBAL**
Jayla Place, Wickham's Cay1
P.O. Box 3190, Road Town
Tortola  VG1110  BVI

Eliot Simpson
Tel:  284.852.5321
Fax:  284.494.7279
Email:  esimpson@applebyglobal.com

Andrew Willins
Tel:  284 852 5323
Email:  awillins@applebyglobal.com

Andrew Jowett
Tel:  284 852 5316
Email:  ajowett@applebyglobal.com

Lawyers for Sino-Forest Corporation (BVI)

AND
TO:

**KING AND WOOD MALLESONS**
9th Floor, Hutchison House
Central, Hong Kong Island
Hong Kong (SAR)

Edward Xu
Tel:  852.2848.4848
Fax:  852.2845.2995
Email:  Edward.Xu@hk.kwm.com

Helena Huang
Tel:  852.2848.4848
Email:  Helena.huang@kingandwood.com

Tata Sun
Tel:  852.2848.4848
Email:  tata.sun@kingandwood.com

Lawyers for Sino-Forest Corporation (PRC)

AND
TO:

**THORNTON GROUT FINNIGAN LLP**
Suite 3200, 100 Wellington Street West
P. O. Box 329, Toronto-Dominion Centre
Toronto, Ontario M5K 1K7

James H. Grout
Tel:  416.304.0557
Fax:  416.304.1313
Email:  jgrout@tgf.ca

Kyle Plunkett
Tel:  416-304-7981
Fax:  416.304.1313
Email:  kplunkett@tgf.ca

Lawyers for the Ontario Securities Commission

AND TO: **McCARTHY TETRAULT LLP**
Suite 2500, 1000 De La Gauchetiere St. West
Montreal, Québec, H3B 0A2

Alain N. Tardif
Tel: 514.397.4274
Fax : 514.875.6246
Email: atardif@mccarthy.ca

Mason Poplaw
Tel: 514.397.4155
Email: mpoplaw@mccarthy.ca

Céline Legendre
Tel: 514.397.7848
Email: clegendre@mccarthy.ca

Lawyers for Ernst & Young LLP

AND TO: **CHAITONS LLP**
5000 Yonge Street, 10th Floor
Toronto, Ontario M2N 7E9

Harvey G. Chaiton
Tel: 416.218.1129
Fax: 416.218.1849
Email: Harvey@chaitons.com

Lawyers for the Law Debenture Trust Company of New York

AND TO: **MILLER THOMSON LLP**
Scotia Plaza, 40 King Street West
Suite 5800
Toronto, Ontario M5H 3S1

Emily Cole
Tel: 416.595.8640
Email: ecole@millerthomson.com

Joseph Marin
Tel: 416.595.8579
Email: jmarin@millerthomson.com

Lawyers for Allen Chan

AND TO: **PALIARE ROLAND ROSENBERG ROTHSTEIN LLP**
155 Wellington Street, 35th Floor
Toronto, Ontario M5V 3H1

Ken Rosenberg
Tel: 416.646.4304
Fax: 416.646.4301
Email: ken.rosenberg@paliareroland.com

Massimo (Max) Starnino
Tel: 416.646.7431
Email: max.starnino@paliareroland.com

Lawyers for an Ad Hoc Committee of Purchasers of the Applicant's Securities, including the Representative Plaintiffs in the Ontario Class Action against the Applicant

AND TO: **ERNST & YOUNG LLP**
222 Bay Street, P.O. Box 251
Toronto, Ontario M5K 1J7

Mike P. Dean
Tel: 416-943-2134
Fax: 416-943-3300
Email: Mike.P.Dean@ca.ey.com

AND TO: **FASKEN MARTINEAU LLP**
333 Bay Street, Suite 2400,
Bay-Adelaide Centre, Box 20
Toronto, Ontario M5H 2T6

Stuart Brotman
Tel: 416.865.5419
Fax: 416.364.7813
Email: sbrotman@fasken.com

Conor O'Neill
Tel: 416 865 4517
Email: coneill@fasken.com

Canadian Lawyers for the Convertible Note Indenture Trustee (The Bank of New York Mellon)

AND TO:   **EMMET, MARVIN & MARTIN, LLP**
120 Broadway, 32nd Floor
New York, NY 10271

Margery A. Colloff
Tel: 212.238.3068 or 212.653.1746
Fax: 212.238.3100
Email: mcolloff@emmetmarvin.com

U.S. Lawyers for the Convertible Note Indenture Trustee (The Bank of New York Mellon)

AND TO:   **LAPOINTE ROSENSTEIN MARCHAND MELANÇON, S.E.N.C.R.L.**
1250, boul. René-Lévesque Ouest, bureau 1400
Montréal (Québec) Canada H3B 5E9

Bernard Gravel
Tel: 514.925.6382
Fax: 514.925.5082
Email: bernard.gravel@lrmm.com

Bruno Floriani
Tel: 514.925.6310
Email: bruno.floriani@lrmm.com

Québec counsel for Pöyry (Beijing) Consulting Company Ltd.

AND TO:   **FRASER MILNER CASGRAIN LLP**
77 King Street West, Suite 400
Toronto-Dominion Centre
Toronto Ontario M5K 0A1

Neil S. Rabinovitch
Tel: 416.863.4656
Fax: 416 863 4592
Email: neil.rabinovitch@fmc-law.com

Jane Dietrich
Tel: 416.863.4467
Email: jane.dietrich@fmc-law.com

Lawyers for Contrarian Capital Management, LLC

AND TO:   **CLYDE & COMPANY**
390 Bay Street, Suite 800
Toronto, Ontario M5H 2Y2

Mary Margaret Fox
Tel: 416.366.4555
Fax: 416.366.6110
Email: marymargaret.fox@clydeco.ca

Paul Emerson
Tel: 416.366.4555
Email: paul.emerson@clydeco.ca

Lawyers for ACE INA Insurance and Chubb Insurance Company of Canada

AND TO:   **DAVIES WARD PHILLIPS & VINEBERG LLP**
155 Wellington Street West
Toronto, ON M5V 3J7

Jay Swartz
Tel: 416.863.5520
Fax: 416.863.0871
Email: jswartz@dwpv.com

James Doris
Tel: 416.367.6919
Fax: 416.863.0871
Email: jdoris@dwpv.com

Canadian Counsel for the Plaintiff and the Proposed Class re New York action

AND TO:   **RICKETTS, HARRIS LLP**
Suite 816, 181 University Ave
Toronto ON M5H 2X7

Gary H. Luftspring
Tel: 647.288.3362
Fax: 647.260.2220
Email: GLuftspring@rickettsharris.com

Sam Sasso
Tel: 416.364.6211 (ext. 285)
Fax: 647.260.2220
Email: ssasso@rickettsharris.com

Lawyers for Travelers Insurance Company of Canada

AND **DAVIS LLP**
TO: 1 First Canadian Place, Suite 6000
PO Box 367
100 King Street West
Toronto, Ontario  M5X 1E2

Susan E. Friedman
Tel: 416.365.3503
Fax: 416.777.7415
Email: sfriedman@davis.ca

Bruce Darlington
Tel: 416.365.3529
Fax: 416.369.5210
Email: bdarlington@davis.ca

Brandon Barnes
Tel: 416.365.3429
Fax: 416.369.5241
Email: bbarnes@davis.ca

Lawyers for Kai Kat Poon

AND **KIM ORR BARRISTERS P.C.**
TO: 19 Mercer St., 4th Floor
Toronto, ON M5V 1H2

Won J. Kim
Tel: 416.349.6570
Fax: 416.598.0601
Email: wjk@kimorr.ca

James C. Orr
Tel: 416.349.6571
Fax: 416.598.0601
Email: jo@kimorr.ca

Michael C. Spenser
Tel: 416.349.6599
Fax: 416.598.0601
Email: mcs@kimorr.ca

Megan B. McPhee
Tel: 416.349.6574
Fax: 416.598.0601
Email: mbm@kimorr.ca

Yonatan Rozenszajn
Tel: 416.349.6578
Fax: 416.598.0601
Email: YR@kimorr.ca

Tanya Jemec
Tel: 416.349.6573
Fax: 416.598.0601
Email: TTJ@kimorr.ca

Lawyers for Invesco Canada Ltd., Northwest &
Ethical Investments L.P., Comité Syndical
National De Retraite Batirente Inc., Matrix Asset
Management Inc., Gestion Férique and Montrusco
Bolton Investments Inc.

AND     **DAVIES HOWE PARTNERS LLP**
TO:      5th Floor, 99 Spadina Avenue
         Toronto, Ontario  M5V 3P8

         David Cherepacha
         Tel:  416.977.7088
         Fax:  416.977.8931
         Email: davidc@davieshowe.com

         Lawyers for Certain Underwriters at Lloyds
         of London, being Sagicor Syndicate 1206 at
         Lloyds and Barbican Financial &
         Professional Lines Consortium Syndicate
         9562 at Lloyds

# TABLE OF CONTENTS

PART I.    OVERVIEW ................................................................................................1

PART II.    THE FACTS ................................................................................4

  (A)  Background of the Action .................................................................4

  (B)  Class Actions against Sino, Horsley and Others.................................6

  (C)  Steps Taken in the Actions .................................................................8

    (i)  Motions for Certification and Leave in the Ontario Action ................................. 8

    (ii)  Sino's Insolvency ............................................................... 8

    (iii)  Settlement with Pöyry (Beijing) .......................................... 10

    (iv)  Court-Ordered Mediation.................................................... 10

    (v)  Settlement with Ernst & Young .......................................... 11

  (D)  Other Proceedings Against Horsley................................................12

    (i)  OSC Statement of Allegations Against Horsley ................................. 12

    (ii)  Litigation Trust Claim Against Horsley ........................... 12

  (E)  The Horsley Settlement......................................................................13

    (i)  Background to and Terms of Settlement.............................. 13

    (ii)  Settlement Framework in Article 11.2 of the Plan.............. 15

    (iii)  Factors Supporting the Settlement .................................... 15

    Objections to the Settlement ................................................... 22

PART III.    ISSUES AND THE LAW........................................................23

  (A)  Settlement Approval .........................................................................23

    (i)  Settlements in the CCAA Context....................................... 23

    (ii)  Settlements in the CPA Context .......................................... 24

    (iii)  The Settlement is Fair and Reasonable and Should be Approved .................. 27

    (v)  The Horsley Settlement Fairly Compromises the US Claims.............................. 30

  (B)  Proposed Bar Order.........................................................................32

PART IV.  ORDER REQUESTED ........................................................34

SCHEDULE "A" ................................................................................35

SCHEDULE "B" ................................................................................36

1201881v2

## PART I.    OVERVIEW

1.  This motion is to approve a settlement with David Horsley ("Horsley"), a defendant in a number of class actions concerning Sino-Forest Corporation ("Sino") commenced in North America. It is the product of hard-fought and protracted negotiations, which were conducted by counsel having extensive experience in securities class actions and CCAA proceedings, and who had the benefit of extensive investigations.

2.  On June, 2011, the Ontario Plaintiffs[1] commenced the above-captioned class proceeding (the "Ontario Action") against Sino and various other defendants, including Horsley. Horsley was the company's Chief Financial Officer ("CFO") from October 2005 until his resignation in April 2012.

3.  In the same month as the Ontario Action was commenced, a parallel action was commenced in the Quebec Superior Court (the "Quebec Action", together with the Ontario Action, the "Canadian Actions") by an individual shareholder of Sino (together with the Ontario Plaintiffs, the "Canadian Plaintiffs"). In January 2012, an action was commenced by certain plaintiffs against Sino, Horsley, and others in the New York Supreme Court (the "US Action").

4.  The class actions allege in essence that Sino, Horsley and others misstated Sino's financial results, misrepresented its timber rights, overstated the value of its assets and concealed material information about its business operations from investors. They further allege that, as a result of Sino's misrepresentations, Sino's securities traded at artificially inflated prices for

---

1 The Trustees of the Labourers' Pension Fund of Central and Eastern Canada, the Trustees of the International Union of Operating Engineers Local 793 Pension Plan for Operating Engineers in Ontario, Sjunde Ap-Fonden, David Grant and Robert Wong.

many years and that, when the truth was revealed, Sino's security holders were injured by the collapse in market value of their Sino holdings.

5. The plaintiffs in the Ontario Action, Quebec Action, and US Action (the "Class Actions") have entered into Minutes of Settlement (the "Horsley Settlement") with Horsley to settle all claims against him in exchange for a payment of $4.2 million (the "Class Settlement Fund"). In addition to settling the claims in the Class Actions, the Horsley Settlement also resolves the claims advanced against Horsley by Sino's Litigation Trust. In settlement of the Litigation Trust claims, Horsley and his insurers will also make a payment of $1.4 million, of which $600,000 will be paid personally by Horsley.[2] Therefore, the total amount payable by Horsley and his insurers is $5.6 million.

6. In addition, Horsley (i) is giving up claims against all other current or former defendants or anyone that may claim over against a defendant; (ii) is providing cooperation to the plaintiffs in the continued prosecution of the Ontario Action; and (iii) will cease to seek reimbursement from his insurers for legal fees.[3]

7. The Horsley Settlement is subject to court approval in Ontario and recognition the United States.[4]

---

[2] Affidavit of Charles Wright, sworn July 4, 2014 ("Wright Affidavit") paras. 11 and 17, Motion Record of the Plaintiffs (Settlement Approval – Horsley Settlement) ("Plaintiffs' Motion Record") at Tab 2, pp. 28, 29; Minutes of Settlement paras 1, 15, and 16 – Exhibit "A" to Wright Affidavit ("Minutes of Settlement"), Plaintiffs' Motion Record at Tab 2A, pp. 59, 62, 63.
[3] Horsley may still seek reimbursement for any legal fees incurred as a result of criminal proceedings that may be laid against him.
[4] Wright Affidavit, para 12, Plaintiffs' Motion Record at Tab 2, p. 28; Minutes of Settlement para 14, Plaintiffs' Motion Record at Tab 2A, p. 62.

8. The litigation will continue against the remaining defendants other than Pöyry (Beijing) Consulting Company Limited ("Pöyry") and Ernst & Young. The claims against Pöyry and Ernst & Young were released pursuant to Court-approved settlement agreements.

9. The net settlement fund is to be distributed to persons who purchased Sino securities, other than the defendants and their affiliates. The manner in which the net settlement fund will be allocated among different groups of security holders will be the subject of a subsequent allocation approval hearing, if the Horsley Settlement is approved.

10. Under all of the circumstances, the Horsley Settlement is a very good settlement.    In particular:

    (a) The funds available under Sino's Directors & Officers liability insurance policies are quickly dwindling as they are being used to fund the defense of several defendants in this litigation. The Horsley Settlement will likely preserve millions of dollars in insurance proceeds that would otherwise be spent on Horsley's defense.  Those funds will now potentially be available for recovery from Sino and the remaining individual defendants;

    (b) Although losses to Securities Claimants caused by all of the defendants could run into the billions of dollars, there are numerous legal and practical impediments to recovery from Horsley which weigh strongly in favour of the Horsley Settlement. As discussed in detail below, Class Counsel's view is that the recovery from Horsley in this settlement is consistent with his several liability for primary market share purchaser claims, and may potentially far exceed his liability limit under Part XXIII.1 of the Ontario Securities Act (the "OSA");

    (c) The extensive investigations done by class counsel and the OSC did not reveal any evidence of fraud or knowing misrepresentation and any such allegation (which was not made by the OSC or the Litigation Trust) would be very unlikely to succeed.

    (d) There are significant procedural and substantive challenges to advancing the common law claims;

    (e) Class Counsel have reviewed a statutory declaration concerning the combined net worth of Horsley and his spouse and his personal contribution of $600,000 represents a significant contribution in light of his assets and is commensurate with his alleged conduct;

(f) There is significant value in Horsley's cooperation in the continued prosecution of the Ontario Action against the remaining defendants;

(g) The approval of the Horsley Settlement is a condition of Horsley's proposed settlement of the OSC Proceedings (defined below). In the absence of a settlement, it is possible that Horsley would be subject to a significant fine that would not benefit Securities Claimants and which would impinge on his ability to satisfy any judgment in the class actions.; and

(h) The settlement assists in moving towards the final resolution of all claims related to Sino-Forest. Obtaining a contribution from, and eliminating one defendant and one set of defence counsel makes the resolution of other claims incrementally easier.

11. The Horsley Settlement ought to be approved.

## PART II.    THE FACTS

### (A)    Background of the Action

12. Sino was a forestry company with shares that were traded publicly on the Toronto Stock Exchange ("TSX"), on the Berlin exchange, on the over-the-counter market in the United States, and on the Tradegate market. Sino shares also traded on alternative trading venues in Canada and elsewhere including, without limitation, AlphaToronto and PureTrading. Sino also had various notes outstanding which were offered to investors by way of offering memoranda and which also traded on the secondary market.[5]

13. On June 2, 2011, Muddy Waters Research ("Muddy Waters") released a report alleging fraud against Sino and alleging that it "massively exaggerates its assets". The release of this report was immediately followed by a dramatic decline in Sino's share price. The value of Sino's notes also fell in value following the release of the report.[6]

---

5 Wright Affidavit, paras. 24-25, Plaintiffs' Motion Record at Tab 2, p. 31.
6 Wright Affidavit, paras. 26-28, Plaintiffs' Motion Record at Tab 2, pp. 31-32.

14. On August 26, 2011, the Ontario Securities Commission (the "OSC") issued a temporary cease trade order in respect of Sino's securities. The recitals to the cease-trade order reflect that Sino appeared to the OSC to have engaged in significant non-arms' length transactions which may have been contrary to Ontario securities laws and the public interest, that Sino and certain of its officers and directors appeared to have misrepresented some of Sino's revenue and exaggerated some of its timber holdings, and that Sino and certain of its officers and directors appeared to be engaging or participating in acts, practices or a course of conduct related to Sino's securities which they (or any of them) knew or ought reasonably to know would perpetuate a fraud.[7]

15. On March 30, 2012, Sino filed for protection from its creditors under the CCAA and obtained a stay of proceedings against it, its subsidiaries and directors and officers, including the Ontario Action.[8]

16. On May 9, 2012, Sino's shares were delisted from the TSX. The delisting was imposed due to Sino's failure to meet the continued listing requirements of the TSX as a result of the CCAA Proceedings (discussed below), and for failure to file on a timely basis certain of its interim financial statements and the audited financial statements for the year ended December 31, 2011. Sino has not filed audited financial statements for any period subsequent to 2010. Ernst & Young resigned as Sino's auditors effective April 4, 2012. No new auditors were appointed.[9]

---

7 Wright Affidavit para. 29, Plaintiffs' Motion Record at Tab 2, p. 32.
8 Wright Affidavit para. 31, Plaintiffs' Motion Record at Tab 2, p. 32.
9 Wright Affidavit para. 32, Plaintiffs' Motion Record at Tab 2, pp. 32-33.

**(B)    Class Actions against Sino, Horsley and Others**

17. On July 20, 2011, the Ontario Action was commenced under the *Class Proceedings Act, 1992* (the "CPA") against Sino, Horsley, and other defendants on behalf of persons that had purchased Sino securities in the period from March 19, 2007 to June 2, 2011.  In this action, the plaintiffs allege that Sino misstated its financial statements, overstated the value of its assets, and concealed material information about its business and operations from investors in its public filings.  As a result, Sino's securities allegedly traded at artificially inflated prices for many years.[10]

18. Before commencing the Ontario Action, Class Counsel conducted an investigation into the Muddy Waters allegations with the assistance of the Dacheng law firm, one of China's largest law firms ("Dacheng"). Dacheng was retained on the day after the Muddy Waters report was issued. Class Counsel's investigation into the Muddy Waters allegations continued since that time, and has been aided not only by Dacheng, but also by Hong-Kong based investigators specializing in financial fraud; two separate Toronto-based firms that specialize in forensic accounting, generally accepted accounting principles and generally accepted auditing standards; a lawyer qualified to practice in the Republic of Suriname, where Sino purported to own, through an affiliate, certain timber assets; and a financial economist who specializes in the treatment of damages in securities class actions.[11]

---

10 Wright Affidavit para. 33, Plaintiffs' Motion Record at Tab 2, p. 33.
11 Wright Affidavit para. 34, Plaintiffs' Motion Record at Tab 2, p. 33.

19. On June 9, 2011, Siskinds Desmeules ("Desmeules"), a Quebec City law firm affiliated with Siskinds, commenced the Quebec Action against Sino, Horsley, and certain other defendants in the Quebec Superior Court.[12]

20. There were also two other proposed class proceedings commenced in Ontario relating to Sino. In December 2011, there was a motion to determine which of the three actions in Ontario should be permitted to proceed and which should be stayed. By Order dated January 6, 2012, the Honourable Justice Perell granted carriage to the Ontario Plaintiffs, and appointed Siskinds LLP and Koskie Minsky LLP to prosecute the Ontario Action on behalf of the proposed class.[13]

21. On January 27, 2012, the Washington, DC-based law firm of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") commenced the US Action against Sino, Horsley, and other defendants in the New York Supreme Court. The US Action was transferred from the New York state court to the federal District Court for the Southern District of New York in March 2012.[14]

22. By way of Order of the United States District Court Southern District of New York dated January 4, 2013, David Leapard, IMF Finance SA and Myong Hyoon Yoo were appointed as the lead plaintiffs and Cohen Milstein as lead counsel to represent the interests of the proposed class.[15]

---

12 Wright Affidavit para. 35, Plaintiffs' Motion Record at Tab 2. p. 34.
13 Wright Affidavit para. 36, Plaintiffs' Motion Record at Tab 2, p. 34.
14 Wright Affidavit para. 37, Plaintiffs' Motion Record at Tab 2, p. 34.
15 Wright Affidavit para. 38, Plaintiffs' Motion Record at Tab 2, p. 34.

23. Class Counsel, Desmeules, and Cohen Milstein have been working together in a coordinated manner in all three of the proceedings.[16]

## (C)   Steps Taken in the Actions

### (i)  Motions for Certification and Leave in the Ontario Action

24. In March and April 2012, the Ontario Plaintiffs brought (a) a motion for certification of the Ontario Action as a class action under the CPA; and (b) a motion for leave to proceed with statutory claims under Part XXIII.1 of the OSA.[17]

25. The plaintiffs filed voluminous motion records in support of their motions, comprising evidence from their investigations and expert reports.  The motion records included:

   (a) an affidavit of Steven Chandler, a senior law enforcement official from Hong Kong who was involved in investigating Sino in China;

   (b) an affidavit of Alan Mak, an expert in forensic accounting;

   (c) an affidavit of Dennis Deng, a lawyer qualified to practice in the People's Republic of China, and a partner in the Dacheng law firm; and

   (d) an affidavit for Carol-Ann  Tjon-Pian-Gi, a lawyer qualified to practice in the Republic of Suriname.[18]

26. The certification and leave motions were scheduled for November 21-30, 2012, but were not heard at that time due to Sino's insolvency.[19]

### (ii) Sino's Insolvency

27. On March 30, 2012, Sino filed an application for protection from its creditors under the CCAA (the "CCAA Proceedings"), and thereby secured an interim stay of proceedings

---

16 Wright Affidavit para. 39, Plaintiffs' Motion Record at Tab 2, p. 34.
17 Wright Affidavit para. 41, Plaintiffs' Motion Record at Tab 2, p. 35.
18 Wright Affidavit para. 42, Plaintiffs' Motion Record at Tab 2, p. 35.
19 Wright Affidavit para. 43, Plaintiffs' Motion Record at Tab 2, p. 35.

against the company, its subsidiaries, and its directors and officers. Pursuant to an order dated May 8, 2012, the stay of proceedings was extended to all other defendants in the action, including Horsley.[20]

28. The CCAA Proceedings presented a material risk to investors on whose behalf the class actions were being prosecuted. In particular, the CCAA Proceedings could have resulted in an order approving a plan of arrangement that had the effect of imposing an unfavourable settlement on the Ontario Plaintiffs and the other securities claimants (the "Securities Claimants").[21]

29. In the course of the CCAA Proceedings, counsel to the Ontario Plaintiffs appeared numerous times to protect the interests of purchasers of Sino's securities. These attendances included motions, among other things, (i) to lift the CCAA stay partially or fully; (ii) regarding the claims procedure and obtaining the right to file a representative claim; (iii) to permit a motion to approve a litigation funding arrangement for the Ontario Action; (iv) for a representation order; (v) to effect a settlement with one of the defendants to the Ontario Action, Pöyry (Beijing) Consulting Company Ltd. ("Pöyry (Beijing)"); (vi) to secure access to non-public documents that were relevant to the claims advanced in the Ontario Action; and (vii) to schedule a mediation in the CCAA Proceedings.[22]

---

20 Wright Affidavit para. 44, Plaintiffs' Motion Record at Tab 2, p. 35.
21 Wright Affidavit para. 45, Plaintiffs' Motion Record at Tab 2, p. 36.
22 Wright Affidavit paras. 44-47, Plaintiffs' Motion Record at Tab 2, pp. 35-39.

### (iii)  Settlement with Pöyry (Beijing)

30. The Ontario Plaintiffs engaged in settlement discussions with Pöyry (Beijing) a defendant in the Ontario Action, starting in January 2012.   Following arms-length negotiations, the Ontario Plaintiffs entered into a settlement with Pöyry (Beijing) in March 2012.[23]

31. On September 25, 2012, the Ontario Action was certified as a class proceeding as against Pöyry (Beijing) for settlement purposes and the settlement was approved between the class and Pöyry (Beijing).[24]  The opt-out period ran in respect of all claims against all defendants. The opt-out deadline was January 15, 2013.

### (iv)  Court-Ordered Mediation

32. On July 25, 2012, this Court ordered the various constituencies in the CCAA Proceedings to attend a mediation. On September 4 and 5, 2012, the Ontario Plaintiffs attended an all-parties mediation, which included Horsley. The mediation was conducted with the assistance of the Honourable Justice Newbould, acting as mediator. Extensive mediation briefs were filed by all parties. The position of each of the parties was set out in the briefs and at the mediation, including Horsley's position. The mediation did not result in a settlement with any of the parties, including Horsley, at that time.[25]

33. It is Class Counsels' opinion that, given the defendants' negotiating stance as the mediation, the Ontario Plaintiffs could not have negotiated a significant all-party settlement at that mediation.[26]

---

23 Wright Affidavit para. 48, Plaintiffs' Motion Record at Tab 2, pp. 39-40.
24 Wright Affidavit para. 49, Plaintiffs' Motion Record at Tab 2, p. 40.
25 Wright Affidavit para. 50, Plaintiffs' Motion Record at Tab 2, p. 40.
26 Wright Affidavit para. 51, Plaintiffs' Motion Record at Tab 2, p. 40.

34. Following the mediation, settlement discussions continued with the defendants. However, those settlement discussions did not come close to bridging the significant difference between the positions of the parties.[27]

**(v) Settlement with Ernst & Young**

35. In November 2012, the Ontario Plaintiffs engaged in a further mediation with Ernst & Young, which resulted in a settlement with Ernst & Young (the "Ernst & Young Settlement").[28]

36. The framework of the Ernst & Young Settlement is contained at Article 11.1 of the Plan and was the template for a similar framework for Named Third Party Defendants contained at Article 11.2 of the Plan.[29]

37. Pursuant to a motion brought by the Ontario Plaintiffs, the Ernst & Young Settlement was approved by this Court on March 20, 2013. The Ontario Plaintiffs then brought a motion for approval of the method of distribution of the Ernst & Young Settlement funds to Securities Claimants and claims filing procedure. The motion was granted on December 27, 2013.[30]

38. In connection with both of these hearings, extensive notice was given to Securities Claimants of these proceedings. To date, over 47,000 claims have been filed in connection with the Ernst & Young Settlement.[31]

---

27 Wright Affidavit para. 52, Plaintiffs' Motion Record at Tab 2, p. 40.
28 Wright Affidavit para. 53, Plaintiffs' Motion Record at Tab 2, p. 41.
29 Wright Affidavit para. 54, Plaintiffs' Motion Record at Tab 2, p. 41.
30 Wright Affidavit para. 55, Plaintiffs' Motion Record at Tab 2, p. 41.
31 Wright Affidavit para. 56, Plaintiffs' Motion Record at Tab 2, p. 41.

**(D)    Other Proceedings Against Horsley**

### (i)  OSC Statement of Allegations Against Horsley

39. On May 22, 2012, the OSC issued a Statement of Allegations against Sino and certain of its senior executives, including Horsley (the "OSC Proceeding"). The Statement of Allegations clearly distinguishes the conduct of Horsley from the conduct of the rest of the respondent senior executives ("Overseas Management").[32]

40. While the Statement of Allegations alleges fraud against Overseas Management, the allegations against Horsley are consistent with negligence only, and not fraud.[33]

41. The Horsley Settlement is conditional upon the OSC approving a conditional settlement of the OSC Proceeding against Horsley. Likewise, the proposed settlement of the OSC Proceeding against Horsley is conditional upon approval of the Horsley Settlement.[34]

### (ii) Litigation Trust Claim Against Horsley

42. In July 2013, the Litigation Trust issued a statement of claim against Horsley and other senior executives of Sino. As with the OSC Proceeding, the Litigation Trust claim clearly distinguishes the conduct of Horsley from the conduct of the other defendants.[35]

43. In our view, the allegations against Horsley in the Litigation Trust are generally consistent with Class Counsel's understanding of his role with respect to Sino and the rationale in recommending the Horsley Settlement.[36]

---

32 Wright Affidavit para. 62, Plaintiffs' Motion Record at Tab 2, p. 42.
33 Wright Affidavit para. 63, Plaintiffs' Motion Record at Tab 2, p. 43.
34 Wright Affidavit paras. 65-66, Plaintiffs' Motion Record at Tab 2, p. 43.
35 Wright Affidavit para. 67, Plaintiffs' Motion Record at Tab 2, p. 43.
36 Wright Affidavit para. 68, Plaintiffs' Motion Record at Tab 2, p. 43.

44. Pursuant to Article 4.11 of the Plan, the Litigation Trust Interests (as defined in the Plan) in the Litigation Trust are allocated as follows:

> (a) the Affected Creditors (as defined in the Plan) shall be collectively entitled to 75% of such Litigation Trust Interests; and

> (b) the Noteholder Class Action Claimants (as defined in the Plan) shall be collectively entitled to 25% of such Litigation Trust Interests.

45. Accordingly, 25% of the $1.4 million being paid in settlement of the Litigation Trust claims will be to the benefit of certain Securities Claimants that acquired Sino notes.

## (E)    The Horsley Settlement

### (i)  Background to and Terms of Settlement

46. The negotiations leading to the Horsley Settlement were conducted on an adversarial, arm's-length basis. [37]

47. Following the failed court-ordered mediation in September 2012, Class Counsel continued settlement discussions with counsel to Horsley. An agreement in principle was reached in January 2013; however, it soon became apparent that any resolution of the class action claims against Horsley would require a simultaneous resolution of the Litigation Trust claims against him. This was due to a number of practical considerations, including (a) any settlement within the Plan's Article 11.2 framework required consent of the Litigation Trust; and (b) Horsley sought to resolve all outstanding litigation against him. [38]

---

37 Wright Affidavit para. 71, Plaintiffs' Motion Record at Tab 2, p. 44.
38 Wright Affidavit para. 72, Plaintiffs' Motion Record at Tab 2, p. 44.

1201881v2

48. Class Counsel, Horsley's counsel (and insurers) and counsel to the Litigation Trust continued to negotiate a resolution of all claims over the next several months, finally entering into the Minutes of Settlement in late May 2014. [39]

49. The key terms of the Horsley Settlement are as follows:

    (a) Horsley's insurers will pay $4.2 million in respect of the claims of the class members;

    (b) Horsley will contribute $600,000 personally, and his insurers will contribute $800,000 in respect of the Litigation Trust claims;

    (c) all claims or possible claims against Horsley relating to Sino will be released;

    (d) Horsley will not seek reimbursement from his insurers for legal fees after the Effective Date, except for any legal fees incurred as a result of criminal proceedings that may be laid against him, therefore Horsley must continue to pay out-of-pocket for his legal expenses incurred to assist the plaintiffs in advancing the class action against the other non-settling defendants in connection with his cooperation obligations under the settlement agreement;[40]

    (e) Horsley will provide cooperation to the plaintiffs in the Ontario Action, including being interviewed by the plaintiffs and giving evidence at trial if requested to do so; [41]

    (f) none of the parties in the Class Actions (as defined in the Settlement Order) or any other actions in which the Horsley Claims (as defined in the Settlement Order) have been or could have been asserted shall be permitted to claim from any of the other defendants that portion of any damages, restitutionary award or disgorgement of profits that corresponds with the liability of Horsley proven at trial or otherwise; [42]

    (g) any claims that Horsley may have had against (i) any other current or former defendant in the Ontario Action; (ii) any other current or former defendant in any Class Actions (as defined in the Settlement Order); (iii) any other current or former defendants' insurers, or any affiliates thereof; or (iv) any other persons who may claim over against the other current or former defendants in

---

39 Wright Affidavit para. 73, Plaintiffs' Motion Record at Tab 2, p. 44.
40 Minutes of Settlement, para. 21, Plaintiffs' Motion Record at Tab 2A, p. 59.
41 Minutes of Settlement, para. 22, 23, 25, 27, Plaintiffs' Motion Record at Tab 2A, pp. 64, 65, 66, 67.
42 Settlement Order, Plaintiffs' Motion Record Tab 2A, p. 77.

respect of contribution, indemnity or other claims that relate to the allegations made in the Class Actions will be released. [43]

50. The Horsley Settlement is subject to the issuance of the Settlement Order and the US Recognition Order. [44]

**(ii) Settlement Framework in Article 11.2 of the Plan**

51. Article 11.2 of the Plan provides the Ontario Plaintiffs with the ability to complete further settlements within the context of CCAA Proceedings, subject to further court approval.[45]

52. Article 11.2 contains a framework by which an Eligible Third Party Defendant may become a named Third Party Defendant for the purpose of entering into a Named Third Party Defendant Settlement and Obtaining a Named Third Party Defendant Release. [46]

53. The Horsley Settlement contemplates that the settlement will be effected through Article 11.2 of the Plan, and the parties have obtained the necessary consents required by Article 11.2 to do so. [47]

**(iii) Factors Supporting the Settlement**

54. Class Counsel have substantial experience in class actions, particularly securities class actions. In the view of Class Counsel, the Horsley Settlement is fair, reasonable and in the best interests of Securities Claimants. [48]

---

43 Settlement Order para 15, Plaintiffs' Motion Record Tab 2A, p. 77.
44 Wright Affidavit para. 12, Plaintiffs' Motion Record at Tab 2, p. 28.
45 Wright Affidavit para. 57, Plaintiffs' Motion Record at Tab 2, p. 41.
46 Wright Affidavit para. 58, Plaintiffs' Motion Record at Tab 2, p. 42.
47 Wright Affidavit paras. 59-60, Plaintiffs' Motion Record at Tab 2, p. 42.
48 Wright Affidavit paras. 79-86, 90, Plaintiffs' Motion Record at Tab 2, pp. 47-50.

1201881v2

55. Class Counsel's view is informed by its extensive investigations, document review, and the input and opinions of experts, including:

    (a) all of Sino's public disclosure documents and other publicly available information with respect to Sino;

    (b) the available trading data for Sino's securities;

    (c) extensive non-public documentation uploaded by Sino into the data-room established in the CCAA Proceedings for purposes of the global mediation;

    (d) Horsley's responsive insurance policies;

    (e) a statutory declaration from Horsley confirming the net worth of Horsley and his spouse;

    (f) Sino's Management Information Circulars, which contain information regarding the amount of compensation received by Horsley from Sino;

    (g) the input and opinions of accounting experts, insolvency law experts, and insurance coverage experts;

    (h) the input and opinion of Frank C. Torchio, the President of Forensic Economics Inc., who has consulted or given independent damage opinions in securities fraud lawsuits for over 20 years;

    (i) the Statement of Allegations issued against Horsley and others by the OSC;

    (j) the mediation briefs provided by the parties, including Horsley, at the global mediation in September 2012;

    (k) input from experienced US securities counsel, Kessler Topaz Meltzer & Check, LLP, and discussions with counsel the plaintiffs in the US Action; and

    (l) the Litigation Trust claim against Horsley and others. [49]

56. Although the parties entered into the Horsley Settlement prior to formal discovery, Class Counsel had at its disposal an abundance of information available from which to make an appropriate recommendation concerning the resolution of the claims against Horsley.

*Actual Damages Far Exceed Recoverable Damages*

---

49 Wright Affidavit para. 88, Plaintiffs' Motion Record at Tab 2, pp. 49-50.

57. The Ontario Action asserts against Horsley (i) statutory liability in respect of primary market share purchaser claims pursuant to s. 130 of the OSA; (ii) statutory liability in respect of secondary market share and note purchaser claims pursuant to Part XXIII.1 of the OSA; (iii) oppression; and (iv) common law and equitable claims for negligent misrepresentation, negligence, conspiracy, and unjust enrichment.

58. If successful, these claims could result in an award for significant damages against all defendants. Frank Torchio, the plaintiffs' damages expert, has estimated that total damages to Securities Claimants caused by all defendants run into the billions of dollars. While Class Counsel was guided by the advice of Mr. Torchio, in the course of the settlement discussions in this case, certain defendants insisted that far more conservative damages figures would be appropriate. [50]

59. Mr. Torchio opines on total estimated damages for all losses suffered, including those attributable to Sino, the other individual defendants, and third party defendants. However, the extent of damages which were caused, and which could be proven and collectible against any one defendant would be far lower.

60. Moreover, actual damages to be paid may only be for claims filed. For a variety of reasons, less than 100% of class members generally file claims. Although claims rates vary from case to case, it is never the case in a matter of this nature that all class members file claims. Therefore, actual payable damages could be some portion of Mr. Torchio's figures if the

---

50 Wright Affidavit paras. 92-93, Plaintiffs' Motion Record at Tab 2, p. 51.

matter proceeded to trial and the defendants succeeded in establishing that damages should be based only on claims filed. [51]

61. More importantly, according to Mr. Torchio, the aggregate damages for the s. 130 OSA claims against all defendants are limited to approximately $78.5 million.[52]   This is of note because the OSA claims contain a deemed reliance provision which is not available in common law claims.

62. In addition, it is very likely that if Horsley was found liable, liability would also be borne by Sino, the other officers and directors, BDO Limited, and the Underwriters.   Based on the review of available information, including the allegations against Horsley in the OSC Proceeding and Litigation Trust claim, Class Counsel's view is that the settlement amount reflects Horsley's several liability under the s. 130 claims. [53]

63. With respect to the secondary market claims, Part XXIII.1 of the OSA imposes limits on the amount recoverable from certain defendants.   In the case of an officer or director of a responsible issuer, such as Horsley, the limit is the greater of $25,000 and 50% of the individual's compensation from the responsible issuer and its affiliates for the 12 month-period immediately preceding the day on which the misrepresentation was made.   According to Class Counsel's estimates based on Sino's disclosures, it is possible that Horsley's liability limit could range as low as approximately $600,000 - $700,000 for the secondary market claims. [54]

---

51 Wright Affidavit paras. 95-96, Plaintiffs' Motion Record at Tab 2, p. 52.
52 Wright Affidavit para. 98, Plaintiffs' Motion Record at Tab 2, p. 52.
53 Wright Affidavit para. 99, Plaintiffs' Motion Record at Tab 2, p. 53.
54 Wright Affidavit paras. 101-102, Plaintiffs' Motion Record at Tab 2, p. 53.

64. The only exception to this recovery would be for the plaintiffs to prove that Horsley made the alleged misrepresentations knowingly. This would be a very difficult standard to meet, one which Horsley denies and which Horsley will assert requires proof of fraud. Class Counsel has found no evidence of conduct that would support a finding of fraud by Horsley. Class Counsel's view is supported by the OSC Statement of Allegations and the Litigation Trust Claim, which makes allegations consistent with negligence and no allegation amounting to knowledge, intentional misrepresentation, or fraud.[55]

65. The Ontario Action also asserts claims against Horsley in oppression, unjust enrichment, negligence, and negligent misrepresentation. Each of these claims presents their own procedural and substantive challenges, including, among others: (a) uncertainty surrounding the certification of common law negligent misrepresentation; (b) the potential for significant individual issues following the common issues trial; and (c) proving individual reliance.[56]

66. Furthermore the action against Horsley raises novel and complex legal issues that are largely untested in Canadian courts. There has never been a trial of claims under Part XXIII.1 of the *Securities Act*. Its detailed provisions that create defences and place limits on damages are uncertain and will be contentious. There have also been few securities trials of negligent misrepresentation claims. Further, the claims on behalf of note purchases are made more complex by the terms of the offering memoranda. This will include legal disputes regarding the applicable law and restrictions on the ability to advance claims.

---

55 Wright Affidavit paras, 103-104, Plaintiffs' Motion Record at Tab 2, p. 54.
56 Wright Affidavit at para. 105, Plaintiffs' Motion Record at Tab 2, p. 54.

*Horsley's Insurance and Capacity to Pay*

67. The insurance policies responsive to the claims against Horsley provide coverage of $60 million in aggregate, are eroded by defence costs, and are also responsive to the claims against Sino and all other individual defendants named in the class actions, as well as certain respondents in the OSC Proceedings. The insurance proceeds available to the plaintiffs as a potential source of recovery are quickly dwindling due to the many sets of defence lawyers being paid out of the policies, including Bennett Jones LLP; Miller Thomson LLP; Osler, Hoskin & Harcourt LLP; Davis LLP; McMillan LLP; and Wardle Daley Bernstein Bieber LLP.[57]

68. Furthermore the multiplicity of proceedings against the many different defendants (represented by different counsel) in various courts and at the OSC further erodes the insurance funds.

69. Class Counsel has monitored the amount of funds available under Sino's Directors & Officers insurance policies, which are quickly depleting. The following amounts of insurance were available under the policies on the following dates:

    (a) August 23, 2012 – approximately $52 million;

    (b) March 4, 2013 – approximately $47.5 million;

    (c) September 4, 2013 – approximately $45 million;

    (d) February 13, 2014 – approximately $42 million; and

    (e) July 3, 2014 – approximately $37 million.[58]

---

57 Wright Affidavit para. 106, Plaintiffs' Motion Record at Tab 2, pp. 54-55.
58 Wright Affidavit paras. 107-108, Plaintiffs' Motion Record at Tab 2, p. 55.

70. This represents a burn rate of the insurance funds of approximately **$1 million per month** over the last five months.

71. One of Class Counsel's goals in entering the Horsley Settlement was to preserve to the greatest extent possible the amount of insurance proceeds available as potential recovery to Securities Claimants. Accordingly, the Horsley Settlement prohibits Horsley from claiming any legal fees or disbursements from the insurance policies after the Effective Date, save and except for any criminal charges that may be laid against him. [59]

72. In the absence of a settlement, Horsley's counsel would be involved in continued cross-examinations in the Ontario Action, the certification and leave motions in the Ontario Action (scheduled for January 2015), and a lengthy trial in the OSC Proceedings (presently scheduled to begin in September 2014). It is estimated that Horsley's legal costs to defend the OSC Proceedings and the class actions would exceed $2 million which would otherwise draw on Sino's Directors & Officers liability insurance. [60]

73. The Horsley Settlement will therefore likely preserve millions of dollars of insurance proceeds that would otherwise not be available for recovery from Sino and the remaining individual defendants. [61]

74. Moreover, in the absence of a settlement with the OSC (which is conditional upon approval of the Horsley Settlement), Horsley may have been subject to a fine. Class Counsel has reviewed a statutory declaration from Horsley concerning the combined net worth of him and his spouse, and Class Counsel's view is that a significant fine imposed on Horsley in the

---

59 Wright Affidavit para. 109, Plaintiffs' Motion Record at Tab 2, p. 55.
60 Wright Affidavit para. 110, Plaintiffs' Motion Record at Tab 2, p. 56.
61 Wright Affidavit para. 111, Plaintiffs' Motion Record at Tab 2, p. 56.

1201881v2

OSC Proceedings could impinge on his ability to make any personal contribution to a settlement. [62]

*Horsley's Ability to Pay and the Settlement with Litigation Trust*

75. As indicated, Noteholder Class Action Claimants are entitled to 25% of the $1.4 million being paid in Horsley's settlement of the Litigation Trust claim against him. Of this amount, Horsley is making a personal contribution of $600,000. Having reviewed the statutory declaration concerning the combined net worth of Horsley and his spouse, payment of $600,000 by Horsley is a significant contribution relative to the net assets that the plaintiffs could reasonably expect to collect on, particularly if a trial had occurred in the OSC Proceeding and a significant fine had been levied against him.[63]

## Objections to the Settlement

76. To date, Class Counsel has received 35 objections from individuals[64] regarding the Horsley Settlement:

    (a) Seventeen of the objections provided no reason. For example, one simply stated "I object [to] the Horsley Settlement", another stated "I do not like the Ho[r]sley settlement". Nine did not write anything at all, calling into question whether those persons actually intended to object.[65]

    (b) Fourteen individuals objected to the quantum of the settlement. These individuals did not have access to the extensive investigations, document review, and the input and opinions of experts that led Class Counsel to reach this settlement with Horsley.

    (c) One objector stated that no money should be distributed until all the defendants have been investigated and the class action is finalized. This argument is contrary to the purpose and spirit of the CPA and the CCAA,

---

62 Wright Affidavit para. 112, Plaintiffs' Motion Record at Tab 2, p. 56.
63 Wright Affidavit para. 113, Plaintiffs' Motion Record at Tab 2, p. 56.
64 One individual, Deborah Ann Wilson, submitted two separate notices of objection.
65 Exhibit "D" to the Affidavit of Daniel E. H. Bach, sworn July 14, 2014, Plaintiffs' Motion Record (Fee Approval), pp. 139-178.

which encourage settlement after a reasonable investigation and hard look at the merits, costs and risks of continuing litigation.

(d) One objection stated that Horsley needs to admit to wrongdoing and liability and should voluntarily resign all professional designations and complete remediation for his actions before he is re-instated. This concern is properly addressed by the Ontario Securities Commission. The settlement agreement between Class Counsel and Horsley reflects a compromise between the parties that achieves compensation for Sino-Forest security holders while preserve millions of dollars in insurance proceeds that would otherwise be spent on Horsley's defense.

(e) One objector stated that there is no guarantee that Horsley will provide information to aid in the class action. Pursuant to the settlement agreement, Horsley must provide cooperation to the plaintiffs in the Ontario Action, including being interviewed by the plaintiffs and giving evidence at trial if requested to do so.

(f) One objector argues that Sino-Forest is *innocent* any wrongdoing, and this settlement punishes current shareholders.

77. As discussed above, Class Counsel considered these types of concerns in reaching the settlement with Horsley.

## PART III.    ISSUES AND THE LAW

### (A)    Settlement Approval

#### (i)    Settlements in the CCAA Context

78. In assessing a settlement within the CCAA context, the court looks at the following three factors: (a) whether the settlement is fair and reasonable; (b) whether it provides substantial benefit to other stakeholders; and (c) whether it is consistent with the purpose and spirit of the CCAA. [66]

---

[66] *Labourers' Pension Fund of Central and Eastern Canada v. Sino-Forest Corp.*, 2013 ONSC 1078 ("E&Y Settlement Approval Decision") at para 49, Plaintiffs' Book of Authorities (Settlement Approval – Horsley Settlement) ("Plaintiffs' Book of Authorities"), Tab 1.

1201881v2

79. Where a settlement also provides for a release, courts assess whether there is "a reasonable connection between the third party claim being compromised in the plan and the restructuring achieved by the plan to warrant inclusion of the third party release in the plan." Applying this "nexus test" requires consideration of the following factors:

(a) are the claims to be released rationally related to the purpose of the plan?

(b) are the claims to be released necessary for the plan of arrangement?

(c) are the parties who have claims released against them contributing in a tangible and realistic way?

(d) will the plan benefit the debtor and the creditors generally? [67]

80. As set out below, the CCAA tests to approve a settlement and release are met.

### (ii)    Settlements in the CPA Context

81. The test for whether a class action settlement ought to be approved is substantially similar to the test for approval of a settlement under the CCAA.   The class action principles can provide guidance to this Court with respect to the approval of a settlement in both contexts.

82. To approve a class action settlement, the test is whether "in all the circumstances, the settlement is fair, reasonable, and in the best interests of those affected by it." [68]   The class action cases establish additional principles relevant on a settlement approval motion:

(a) the resolution of complex litigation through the compromise of claims is encouraged by the courts and favoured by public policy;

(b) there is a strong initial presumption of fairness when a proposed settlement, which was negotiated at arms-length by counsel for the class, is presented for court approval;

---

67 *Labourers' Pension Fund of Central and Eastern Canada v. Sino-Forest Corporation*, 2013 ONSC 1078 at para 50, Plaintiffs' Book of Authorities Tab 1.
68 *Dabbs v Sun Life Assurance Co. of Canada*, [1998] OJ No 1598 (OCJ Gen Div) at para 9, Plaintiffs' Book of Authorities Tab 2.

(c) to reject the terms of a settlement and require the litigation to continue, a court must conclude that the settlement does not fall within a range of reasonableness;

(d) a court must be assured that the settlement secures appropriate consideration for the class in return for the surrender of litigation rights against the defendants. However, the court must balance the need to scrutinize the settlement against the recognition that there may be a number of possible outcomes within a range of reasonableness. All settlements are the product of a process of give and take. Settlements rarely give all parties exactly what they want. Fairness is not a standard of perfection; and

(e) it is not the court's function to substitute its judgment for that of the parties or to attempt to renegotiate a proposed settlement. Nor is it the court's function to litigate the merits of the actions or simply rubber-stamp a proposed settlement. [69]

83. The "range of reasonableness" test is flexible. It permits the court to apply an objective standard, allowing for variation between settlements, depending upon the subject matter of the litigation and the nature of the damages for which settlement provides compensation.[70] In fact, even a "less than perfect settlement may be in the best interests of those affected…when compared to the alternative of the risks and costs of litigation." [71]

84. Courts have developed a list of factors that are useful in assessing the reasonableness of a proposed settlement. It is not necessary that all factors be present or equally weighted; some may even be disregarded, depending on the circumstances of the case. They include:

(a) the likelihood of recovery or likelihood of success;

(b) the amount and nature of discovery, evidence, or investigation;

(c) the proposed settlement terms and conditions;

(d) the recommendation and experience of counsel;

---

[69] *Nunes v Air Transat AT Inc* (2005), 20 CPC (6th) 93 (On Sup Ct) at para 7, Plaintiffs' Book of Authorities Tab 3; *Osmun v. Cadbury Adams Canada Inc.*, 2010 ONSC 2643 at para 31, Plaintiffs' Book of Authorities Tab 4.
[70] *Parsons v Canadian Red Cross Society* (1999), 40 CPC (4th) 151 at para 70, Plaintiffs' Book of Authorities Tab 5.
[71] *Robertson v ProQuest Information and Learning Company*, 2011 ONSC 1647 at para 25 and 33, Plaintiffs' Book of Authorities Tab 6.

(e) the risk, future expense, and likely duration of litigation;

(f) the number of objectors and nature of objections;

(g) the presence of arm's-length bargaining and the absence of collusion; and/or

(h) information conveying to the courts the dynamics of, and the positions taken by the parties during, the negotiations. [72]

85. In the CPA context and in the absence of evidence to the contrary, "the recommendation of experienced counsel is entitled to considerable weight given their ability to weigh the factors bearing on the reasonableness of the settlement."[73]

86. A class actions judge can approve or reject the settlement, but cannot modify its terms.[74] In deciding whether to reject a settlement, the Court should consider if whether doing so would put the settlement in "jeopardy of being unraveled." There is no obligation on parties to resume settlement discussions and it could be that the parties have reached their limits in negotiations and will backtrack from their positions or abandon the effort. This result would be contrary to the widely-held view that the resolution of complex litigation through settlement is to be encouraged by the courts and favored by public policy. [75]

87. As set out below, the test under the CPA to approve a settlement and release is met as well.

---

72 *Marcantonio v TVI Pacific Inc* (2009), 82 CPC (6th) 305 at para 12, Plaintiffs' Book of Authorities Tab 7; *Parsons v Canadian Red Cross Society* (1999), 40 CPC (4th) 151 at paras 71-73, Plaintiffs' Book of Authorities Tab 5.
73 *Metzler Investment GmbH v Gildan Activewear Inc.*, 2011 ONSC 1146 at para 31, Plaintiffs' Book of Authorities Tab 8; *Robinson v Rochester Financial Ltd.*, 2012 ONSC 911 at para 20 (Cautioning against the Court "substituting [its] view of the prospects of success for the views of class counsel, who have lived with this action since its outset and who are familiar with the risks and benefits of continuing with the action", Plaintiffs' Book of Authorities Tab 9.
74 *Dabbs v Sun Life Assurance Company of Canada*, [1998] OJ No 1598 (Gen Div) at paras 10 and 14, Plaintiffs' Book of Authorities Tab 2.
75 *Semple v Canada (Attorney General)*, 2006 MBQB 285 at para 26, Plaintiffs' Book of Authorities Tab 10; *Osmun v. Cadbury Adams Canada Inc.*, 2010 ONSC 2643 at para 34, Plaintiffs' Book of Authorities Tab 4.

### (iii)    The Settlement is Fair and Reasonable and Should be Approved

88. As outlined above, the Horsley Settlement provides for payment of $5.6 million in total in settlement of all claims against Horsley in relation to Sino.  In addition, Horsley (i) is giving up claims against all other current or former defendants or anyone that may claim over against a defendant; (ii) is providing cooperation to the plaintiffs in the continued prosecution of the Ontario Action; and (iii) will cease to seek reimbursement from his insurers for legal fees.

89.  In all of the circumstances, the Horsley Settlement is a very good settlement.

90. The Horsley Settlement is fair and reasonable under all of the circumstances, provides substantial benefit to other stakeholders and is consistent with both the purpose and spirit of the CPA and the CCAA, which encourage settlement after a reasonable investigation and hard look at the merits, costs and risks of continuing litigation.

91. The release is also "justified as part of the compromise or arrangement between the debtors and its creditors…. [There is] a reasonable connection between the third party claim being compromised in the plan and the restructuring achieved by the plan." [76]

92. Although the Plan has been sanctioned and implemented, a significant aspect of the Plan is a distribution to Sino's creditors.[77] In order to effect any distribution, the Horsley Release must be approved as part of the Horsley Settlement.

---

[76] *ATB Financial v Metcalfe & Mansfield Alternative Investments II Corp,* 2008 ONCA 587 at para 70, Plaintiffs' Book of Authorities Tab 11.
[77] *Labourers' Pension Fund of Central and Eastern Canada v. Sino-Forest Corporation,* 2013 ONSC 1078  at para. 60, Plaintiffs' Book of Authorities Tab 1.

93. Article 11.2 of the Plan of Arrangement which permitted Horsley (and other defendants) to be named as Third Party Defendants, and which provides the framework for the Horsley settlement, created value for stakeholders (including class members and beneficiaries of the litigation trust) by facilitating settlements with the defendants.  They are an integral and important part of the Plan.  Without the addition of such provision, the Plan wouldhave faced opposition from certain stakeholders, as well as potential appeals.  These delays would have been detrimental to the restructuring.  In the Monitor's words, Sino could "not afford to remain in a CCAA process for much longer."  As found by this court, timing and delay were specifically identified as elements that would impact on maximization of the value and preservation of Sino's assets.[78]

94. Furthermore, the Named Third Party defendants (of which Horsley is one) were required to release cross-claims against Sino which assisted in the restructuring.

95. In addition, Class Counsel had the benefit of its own extensive investigation aided by experts from a variety of relevant disciplines and jurisdiction, the investigation of Sino's independent committee and its advisers, Class Counsel's review of non-public relevant documents from the confidential data room, the allegations of OSC Staff, and the allegations of the Litigation Trust. [79]

96. In reaching the settlement, Class Counsel considered, among other things:

(a) **Horsley's proportionate liability with respect to the s. 130 OSA claims:** it is Class Counsel's view that the settlement amount reflects Horsley's several liability under the section 130 claims;

---

[78] *Labourers' Pension Fund of Central and Eastern Canada v. Sino-Forest Corporation,* 2013 ONSC 1078  at para. 69, Plaintiffs' Book of Authorities Tab 1.
[79] Wright Affidavit para. 88, Plaintiffs' Motion Record at Tab 2, pp. 49-50.

(b) **Horsley's liability limit with respect to the Part XXIII.1 OSA claims:** Depending on the interpretation that is ultimately adopted, based on our estimates, it is possible that Horsley's liability limit could range as low as approximately $600,000 - $700,000 for the secondary market claims.

(c) **The unlikelihood that fraud or knowing misrepresentation could be established:** The extensive investigations done by class counsel and the OSC did not reveal any evidence of fraud or knowing misrepresentation and any such allegation (which was not made by the OSC or the Litigation Trust) would be very unlikely to succeed.

(d) **Horsley's net worth and limited capacity to pay:** Canadian Class Counsel has been provided with a statutory declaration from Horsley concerning the combined net worth of him and his spouse. Horsley's personal contribution of $600,000 to the Horsley Settlement represents a significant contribution in light of his assets, and Horsley must continue to pay out-of-pocket for ongoing expenses in connection with his cooperation obligations under the settlement agreement.[80]

(e) **The quickly dwindling available insurance proceeds remaining;** The Horsley Settlement stops the depletion of Sino's Directors and Officers insurance and preserves millions of dollars of insurance proceeds that would otherwise not be available for recovery from Sino and the remaining individual defendants. Almost half of the insurance proceeds have already been exhausted in defence costs and the "burn rate" has reached approximately $1 million per month over the last five months.

(f) **The difficulty in advancing the common law claims of oppression, unjust enrichment, negligence, and negligent misrepresentation.** Each of these claims presents their own procedural and substantive challenges, including, among others: (a) uncertainty surrounding the certification of common law negligent misrepresentation; (b) the potential for significant individual issues following the common issues trial; and (c) proving individual reliance.

(g) **The value of Horsley's cooperation in the continued prosecution of the Ontario Action against the remaining defendants.**

97. Furthermore, a policy objective of Ontario's class proceedings regime is of general and specific deterrence or "behaviour modification." This objective will be advanced if Horsley's settlement of the OSC Proceeding is approved and includes a permanent ban on Horsley from acting as a director or officer of a public issuer of securities, as stated in the recitals to the draft settlement approval order appended to the Minutes of Settlement. In

---

80 Wright Affidavit at paras. 22 and 113, Plaintiffs' Motion Record at Tab 2, p. 30, 56.

addition, Horsley's $600,000 personal contribution to the settlement of the Litigation Trust claims will send a signal to directors and officers of public companies that personal financial consequences will attach to the type of conduct alleged against Horsley. Neither a settlement with the OSC nor with the Litigation Trust would have been possible without the Horsley Settlement.

98. Finally, the settlement assists in moving towards the final resolution of all claims related to Sino-Forest. The class actions include multiple intertwined claims, and multiple potential draws on the relevant insurance policies. Obtaining a contribution from, and eliminating one defendant and one set of defence counsel makes the resolution of other claims incrementally easier.

### (v)   The Horsley Settlement Fairly Compromises the US Claims

99. The Horsley Settlement also meets US standards for approval, because it is fair, reasonable, and adequate.[81]

100.   The US Action faced challenges to continued litigation that are similar to those described above, and the US class members will substantially benefit from the Horsley Settlement. Moreover, US plaintiffs faced challenges in addition to the risks described above and under the Exchange Act, which requires them to prove *scienter* (fraudulent intent). This is a standard, as the United States Supreme Court has stated, that mandates "[e]xacting pleading requirements...."[82] As held in controlling law for the District where the US Action is pending, allegations supporting *scienter* must satisfy the heightened pleading requirements of

---

81 In the jurisdiction where the US Action is pending, "there is a 'strong judicial policy in favor of settlements, particularly in the class action context'" and settlements may be approved so long as they are "'fair, reasonable and adequate.'" In re IMAX Sec. Litig., 283 F.R.D. 178, 188 (S.D.N.Y. 2012), Plaintiffs' Book of Authorities Tab 12.
82 *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007), Plaintiffs' Book of Authorities Tab 13.

Rule 9(b) of the US Federal Rules of Civil Procedure and the US Private Securities Litigation Reform Act ("PSLRA"), and plead facts with sufficient particularly to prove a state of mind behind knowing or reckless conduct.[83] As noted above at paragraph 40, class counsel and the OSC did not reveal any evidence of intentional fraud or knowing misrepresentation, and so proving *scienter* would have posed a substantial challenge in the US litigation: Where plaintiffs do not meet the heightened pleading standard requiring a showing of *scienter*, the PSLRA mandates dismissal under 15 U.S.C. § 78u-4(b)(3)(A).

101.    Another risk in the US Action is that the doctrine of joint and several liability applies under the Exchange Act "only if the trier of fact specifically determines" that the defendant "knowingly committed a violation of the securities laws."[84] Given the challenges in this case in proving knowledge against Horsley, US plaintiffs faced the risk that Horsley would eventually be found only proportionately liable and that his proportionate fault was much smaller than the amount achieved in the Horsley Settlement. A finding of proportionate liability, in turn, would pose additional limitations to recovery, as Horsley's net worth could restrict the collectability of any judgment obtained against him. The Horsley Settlement also precludes any challenges faced by enforcing a US judgment overseas in a foreign jurisdiction.

102.    Finally, courts in the US favor preserving funds available to class recovery.[85] Here, the Horsley Settlement resolves risks of protracted litigation and appeal.

---

83 *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001), Plaintiffs' Book of Authorities Tab 14.
84 This is provided for under U.S. Code as amended by the PSLRA, 15 U.S.C. § 78u-4(f)(2)(A).
85 *See In re Amer. Bus. Fin. Services, Inc. Noteholders Litig.*, No. 05–232, 2008 WL 4974782, at *8 (Nov. 21, 2008) ("Continuing to trial in the hopes of obtaining a higher penalty would merely deplete the insurance policy proceeds and increase the risk that the proceeds will further deplete due to the litigation costs of the other pending

T201881v2

**(B)    Proposed Bar Order**

103.    As part of the Horsley Settlement, the parties seek an order barring any claims for

contribution or indemnity against Horsley, in accordance with section 11.2 of the Plan of

Arrangement.    The proposed bar order provides, as is standard that the class shall restrict its

joint and several claims against the non-settling defendants to those damages arising from the

conduct of the non-settling defendants.[86]

104.    The form of the bar order is fair and properly balances the competing interests of

Securities Claimants, Horsley, and the non-settling defendants:

(a)    Securities Claimants are not releasing their claims to a greater extent than
necessary;

(b)    Horsley is assured that his obligations in connection with the settlement will
conclude his liability in the class proceeding; and

(c)    the non-settling defendants will not have to pay more following a judgment
than they would be required to pay if Horsley remained as a defendant in the
action (i.e. the plaintiffs have agreed not to look to the non-settling defendants
for any loss attributable to Horsley).

105.    These orders are standard where a defendant settles and others remain.[87]

106.    In addressing any non-settling defendant's objection to a bar order, the Court must be

careful not to give the non-settling defendant a "tactical advantage." An unreasonable non-

settling defendant "can hold the other parties at ransom, virtually dictating the terms of the

---

cases, leaving the class, if successful, with a lesser judgment, not a greater one."), Plaintiffs' Book of Authorities
Tab 15.
86 Settlement Order para 14(d), Plaintiffs' Motion Record Tab 2A, p. 77.
87 *Ontario New Home Warranty Program v Chevron Chemical Co* (1999), 46 OR (3d) 130 (Ont Sup Ct), Plaintiffs'
Book of Authorities, Tab 16; *Eidoo v Infineon Technologies AG,* 2012 ONSC 380, Plaintiffs' Book of Authorities,
Tab 17.

settlement." This would be inconsistent with the strong public policy reasons favouring settlement.[88]

107.    The bar order is reasonable and appropriate under the circumstances.

## Conclusion

108.    Under all of the circumstances, the Horsley Settlement is a very good settlement.    It reflects the significant legal and practical impediments to recovery and was reached after extensive investigation and arms' length bargaining.    It is fair and reasonable, provides tangible benefits to stakeholders, and was reached within the framework of the Plan of Arrangement.    It ought to be approved.

---

[88] *Amoco Canada Petroleum Co v Propak System Ltd*, 2001 ABCA 110 at para 25, Plaintiffs' Book of Authorities Tab 18; *Osmun v. Cadbury Adams Canada Inc.*, 2010 ONSC 2643 at para 58, Plaintiffs' Book of Authorities Tab 4.

1201881v2

## PART IV.  ORDER REQUESTED

109.    In light of all of the above, the Ontario Plaintiffs respectfully request an order approving

the Horsley Settlement.

**ALL OF WHICH IS RESPECTFULLY SUBMITTED**

July 17, 2014

_____
A. Dimitri Lascaris / Serge Kalloghlian

_____
Kirk Baert / Jonathan Ptak / Garth Myers

_____
Ken Rosenberg / Massimo Starnino

**Class Counsel**

1201881v2

**SCHEDULE "A"**

1.  *Labourers' Pension Fund of Central and Eastern Canada v. Sino-Forest Corp.*, 2013 ONSC 1078

2.  *Dabbs v Sun Life Assurance Co. of Canada*, [1998] OJ No 1598 (OCJ Gen Div)

3.  *Nunes v Air Transat AT Inc* (2005), 20 CPC (6th) 93 (On Sup Ct)

4.  *Osmun v. Cadbury Adams Canada Inc.*, 2010 ONSC 2643

5.  *Parsons v Canadian Red Cross Society* (1999), 40 CPC (4th) 151

6.  *Robertson v ProQuest Information and Learning Company*, 2011 ONSC 1647

7.  *Marcantonio v TVI Pacific Inc* (2009), 82 CPC (6th) 305

8.  *Metzler Investment GmbH v Gildan Activewear Inc.*, 2011 ONSC 1146

9.  *Robinson v Rochester Financial Ltd.*, 2012 ONSC 911

10. *Semple v Canada (Attorney General)*, 2006 MBQB 285

11. *ATB Financial v Metcalfe & Mansfield Alternative Investments II Corp*, 2008 ONCA 587

12. *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012)

13. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007)

14. *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001)

15. *In re Amer. Bus. Fin. Services, Inc. Noteholders Litig.*, No. 05–232, 2008 WL 4974782

16. *Ontario New Home Warranty Program v Chevron Chemical Co* (1999), 46 OR (3d) 130 (Ont Sup Ct)

17. *Eidoo v Infineon Technologies AG*, 2012 ONSC 380

18. *Amoco Canada Petroleum Co v Propak System Ltd*, 2001 ABCA 110

**SCHEDULE "B"**

*Class Proceedings Act, 1992,* **S.O. 1992, c. 6:**

**Discontinuance, abandonment and settlement**

> **29.** (1)  A proceeding commenced under this Act and a proceeding certified as a class proceeding under this Act may be discontinued or abandoned only with the approval of the court, on such terms as the court considers appropriate. 1992, c. 6, s. 29 (1).

**Settlement without court approval not binding**

> (2)  A settlement of a class proceeding is not binding unless approved by the court. 1992, c. 6, s. 29 (2).

**Effect of settlement**

> (3)  A settlement of a class proceeding that is approved by the court binds all class members. 1992, c. 6, s. 29 (3).

**Notice: dismissal, discontinuance, abandonment or settlement**

> (4)  In dismissing a proceeding for delay or in approving a discontinuance, abandonment or settlement, the court shall consider whether notice should be given under section 19 and whether any notice should include,

> > (a) an account of the conduct of the proceeding;

> > (b) a statement of the result of the proceeding; and

> > (c) a description of any plan for distributing settlement funds. 1992, c. 6, s. 29 (4).

*Securities Act,* **R.S.O. 1990, c. S.5:**

**PART XXIII
CIVIL LIABILITY**

**Liability for misrepresentation in prospectus**

> 130. (1)  Where a prospectus, together with any amendment to the prospectus, contains a misrepresentation, a purchaser who purchases a security offered by the prospectus during the period of distribution or during distribution to the public has, without regard to whether the purchaser relied on the misrepresentation, a right of action for damages against,

> > (a) the issuer or a selling security holder on whose behalf the distribution is made;

> > (b) each underwriter of the securities who is required to sign the certificate required by section 59;

> > (c) every director of the issuer at the time the prospectus or the amendment to the prospectus was filed;

(d) every person or company whose consent to disclosure of information in the prospectus has been filed pursuant to a requirement of the regulations but only with respect to reports, opinions or statements that have been made by them; and

(e) every person or company who signed the prospectus or the amendment to the prospectus other than the persons or companies included in clauses (a) to (d),

or, where the purchaser purchased the security from a person or company referred to in clause (a) or (b) or from another underwriter of the securities, the purchaser may elect to exercise a right of rescission against such person, company or underwriter, in which case the purchaser shall have no right of action for damages against such person, company or underwriter. R.S.O. 1990, c. S.5, s. 130 (1); 2004, c. 31, Sched. 34, s. 6; 2006, c. 33, Sched. Z.5, s. 13.

**Joint and several liability**

<u>(8)</u> All or any one or more of the persons or companies specified in subsection (1) are jointly and severally liable, and every person or company who becomes liable to make any payment under this section may recover a contribution from any person or company who, if sued separately, would have been liable to make the same payment provided that the court may deny the right to recover such contribution where, in all the circumstances of the case, it is satisfied that to permit recovery of such contribution would not be just and equitable. R.S.O. 1990, c. S.5, s. 130 (8).

**Liability for misrepresentation in offering memorandum**

<u>130.1 (1)</u> Where an offering memorandum contains a misrepresentation, a purchaser who purchases a security offered by the offering memorandum during the period of distribution has, without regard to whether the purchaser relied on the misrepresentation, the following rights:

1. The purchaser has a right of action for damages against the issuer and a selling security holder on whose behalf the distribution is made.

2. If the purchaser purchased the security from a person or company referred to in paragraph 1, the purchaser may elect to exercise a right of rescission against the person or company. If the purchaser exercises this right, the purchaser ceases to have a right of action for damages against the person or company. 2004, c. 31, Sched. 34, s. 7.

# PART XXIII.1
# CIVIL LIABILITY FOR SECONDARY MARKET DISCLOSURE

INTERPRETATION AND APPLICATION

**Definitions**

<u>138.1</u> In this Part,

...

"liability limit" means,

    (a) in the case of a responsible issuer, the greater of,

        (i) 5 per cent of its market capitalization (as such term is defined in the regulations), and

        (ii) $1 million,

    (b) in the case of a director or officer of a responsible issuer, the greater of,

        (i) $25,000, and

        (ii) 50 per cent of the aggregate of the director's or officer's compensation from the responsible issuer and its affiliates,

    (c) in the case of an influential person who is not an individual, the greater of,

        (i) 5 per cent of its market capitalization (as defined in the regulations), and

        (ii) $1 million,

    (d) in the case of an influential person who is an individual, the greater of,

        (i) $25,000, and

        (ii) 50 per cent of the aggregate of the influential person's compensation from the responsible issuer and its affiliates,

    (e) in the case of a director or officer of an influential person, the greater of,

        (i) $25,000, and

        (ii) 50 per cent of the aggregate of the director's or officer's compensation from the influential person and its affiliates,

    (f) in the case of an expert, the greater of,

        (i) $1 million, and

        (ii) the revenue that the expert and the affiliates of the expert have earned from the responsible issuer and its affiliates during the 12 months preceding the misrepresentation, and

    (g) in the case of each person who made a public oral statement, other than an individual referred to in clause (d), (e) or (f), the greater of,

        (i) $25,000, and

        (ii) 50 per cent of the aggregate of the person's compensation from the responsible issuer and its affiliates; ("limite de responsabilité")

...

Liability

**Liability for secondary market disclosure**
**Documents released by responsible issuer**

138.3 (1)  Where a responsible issuer or a person or company with actual, implied or apparent authority to act on behalf of a responsible issuer releases a document that contains a misrepresentation, a person or company who acquires or disposes of the issuer's security during the period between the time when the document was released and the time when the misrepresentation contained in the document was publicly corrected has, without regard to whether the person or company relied on the misrepresentation, a right of action for damages against,

(a) the responsible issuer;

(b) each director of the responsible issuer at the time the document was released;

(c) each officer of the responsible issuer who authorized, permitted or acquiesced in the release of the document;

(d) each influential person, and each director and officer of an influential person, who knowingly influenced,

(i) the responsible issuer or any person or company acting on behalf of the responsible issuer to release the document, or

(ii) a director or officer of the responsible issuer to authorize, permit or acquiesce in the release of the document; and

(e) each expert where,

(i) the misrepresentation is also contained in a report, statement or opinion made by the expert,

(ii) the document includes, summarizes or quotes from the report, statement or opinion of the expert, and

(iii) if the document was released by a person or company other than the expert, the expert consented in writing to the use of the report, statement or opinion in the document. 2002, c. 22, s. 185; 2004, c. 31, Sched. 34, s. 12 (1, 2).

...

**Limits on damages**

138.7 (1)  Despite section 138.5, the damages payable by a person or company in an action under section 138.3 is the lesser of,

(a) the aggregate damages assessed against the person or company in the action; and

(b) the liability limit for the person or company less the aggregate of all damages assessed after appeals, if any, against the person or company in all other actions brought under section 138.3, and under comparable legislation in other

provinces or territories in Canada in respect of that misrepresentation or failure to make timely disclosure, and less any amount paid in settlement of any such actions. 2002, c. 22, s. 185; 2004, c. 31, Sched. 34, s. 16.

**Same**

(2)  Subsection (1) does not apply to a person or company, other than the responsible issuer, if the plaintiff proves that the person or company authorized, permitted or acquiesced in the making of the misrepresentation or the failure to make timely disclosure while knowing that it was a misrepresentation or a failure to make timely disclosure, or influenced the making of the misrepresentation or the failure to make timely disclosure while knowing that it was a misrepresentation or a failure to make timely disclosure. 2002, c. 22, s. 185.

Commercial Court File No.: CV-12-9667-00CL

Court File No: CV-11-431153-00CP

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
Proceeding commenced at Toronto

**FACTUM OF THE AD HOC COMMITTEE OF PURCHASERS OF THE APPLICANT'S SECURITIES, INCLUDING THE CLASS ACTION PLAINTIFFS**
**Settlement Approval – Horsley Settlement**
**(Motion Returnable July 24, 2014)**

**KOSKIE MINSKY LLP**
20 Queen Street West, Suite 900
Toronto, ON  M5H 3R3

Kirk Baert (LSUC# 309420)
Jonathan Ptak (LSUC#: 45773F)
Garth Myers (LSUC#: 62307G)
Tel: (416) 595-2117 / Fax: (416) 204-2889

**SISKINDS LLP**
680 Waterloo Street
London, ON  N6A 3V8

A. Dimitri Lascaris (LSUC#: 50074A)
Serge Kalloghlian (LSUC#: 55557F)
Tel: (519) 660-7844 / Fax: (519) 660-7845

**PALIARE ROLAND ROSENBERG ROTHSTEIN LLP**
250 University Avenue, Suite 501
Toronto, ON  M5H 3E5

Ken Rosenberg (LSUC#: 21101H)
Massimo Starnino (LSUC#: 41048G)
Tel: (416) 646-4300 / Fax: (416) 646-4301

Lawyers for the plaintiffs

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED, AND IN THE MATTER OF A PLAN OF COMPRISE OR ARRANGEMENT OF SINO-FOREST CORPORATION

The Trustees of the Labourer's Pension Fund of Central and Eastern Canada, et al.

Plaintiffs

and

Sino-Forest Corporation, et al.

Defendants

1190810v2

# **EXHIBIT  B**

Court File No.:  CV-12-9667-00CL

*ONTARIO*
## SUPERIOR COURT OF JUSTICE
## COMMERCIAL LIST

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED, AND IN THE MATTER OF A PLAN OF COMPRISE OR ARRANGEMENT OF SINO-FOREST CORPORATION

Court File No.:  CV-11-431153-00CP

*ONTARIO*
## SUPERIOR COURT OF JUSTICE

B E T W E E N :

**THE TRUSTEES OF THE LABOURERS' PENSION FUND OF CENTRAL AND EASTERN CANADA, THE TRUSTEES OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 793 PENSION PLAN FOR OPERATING ENGINEERS IN ONTARIO, SJUNDE AP-FONDEN, DAVID GRANT and ROBERT WONG**

Plaintiffs

- and -

**SINO-FOREST CORPORATION, ERNST & YOUNG LLP, BDO LIMITED (formerly known as BDO MCCABE LO LIMITED), ALLEN T.Y. CHAN, W. JUDSON MARTIN, KAI KIT POON, DAVID J. HORSLEY, WILLIAM E. ARDELL, JAMES P. BOWLAND, JAMES M.E. HYDE, EDMUND MAK, SIMON MURRAY,  PETER WANG, GARRY J. WEST, PÖYRY (BEIJING) CONSULTING COMPANY LIMITED, CREDIT SUISSE SECURITIES (CANADA), INC., TD SECURITIES INC., DUNDEE SECURITIES CORPORATION, RBC DOMINION SECURITIES INC., SCOTIA CAPITAL INC., CIBC WORLD MARKETS INC., MERRILL LYNCH CANADA INC., CANACCORD FINANCIAL LTD., MAISON PLACEMENTS CANADA INC., CREDIT SUISSE SECURITIES (USA) LLC and MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED (successor by merger to Banc of America Securities LLC)**

Defendants

Proceeding under the *Class Proceedings Act, 1992*

## FACTUM OF THE DEFENDANT, DAVID J. HORSLEY
### (returnable July 24, 2014)

July 18, 2014

**Wardle Daley Bernstein Bieber LLP**
2104-401 Bay Street
P.O. Box 21
Toronto ON  M5H 2Y4

Peter Wardle  LS#: 26412D
Tel:  (416) 351-2771
Fax:  (416) 351-9196

Simon Bieber   LS#: 56219Q
Tel: (416) 351-2781
Fax: (416) 351-9179

Lawyers for the Defendant, David J. Horsley

TO:    Attached Service List

Court File No.: CV-12-9667-00CL

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C.
1985, c. C-36, AS AMENDED, AND IN THE MATTER OF A PLAN OF COMPRISE OR
ARRANGEMENT OF SINO-FOREST CORPORATION

Court File No.:  CV-11-431153-00CP

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

B E T W E E N :

**THE TRUSTEES OF THE LABOURERS' PENSION FUND OF CENTRAL AND
EASTERN CANADA, THE TRUSTEES OF THE INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 793 PENSION PLAN FOR OPERATING
ENGINEERS IN ONTARIO, SJUNDE AP-FONDEN, DAVID GRANT
and ROBERT WONG**

Plaintiffs

- and -

**SINO-FOREST CORPORATION, ERNST & YOUNG LLP, BDO LIMITED (formerly
known as BDO MCCABE LO LIMITED), ALLEN T.Y. CHAN, W. JUDSON MARTIN,
KAI KIT POON, DAVID J. HORSLEY, WILLIAM E. ARDELL, JAMES P. BOWLAND,
JAMES M.E. HYDE, EDMUND MAK, SIMON MURRAY,  PETER WANG, GARRY J.
WEST, PÖYRY (BEIJING) CONSULTING COMPANY LIMITED, CREDIT SUISSE
SECURITIES (CANADA), INC., TD SECURITIES INC., DUNDEE SECURITIES
CORPORATION, RBC DOMINION SECURITIES INC., SCOTIA CAPITAL INC., CIBC
WORLD MARKETS INC., MERRILL LYNCH CANADA INC., CANACCORD
FINANCIAL LTD., MAISON PLACEMENTS CANADA INC., CREDIT SUISSE
SECURITIES (USA) LLC and MERRILL LYNCH, PIERCE, FENNER & SMITH
INCORPORATED (successor by merger to Banc of America Securities LLC)**

Defendants

Proceeding under the *Class Proceedings Act, 1992*

**SERVICE LIST**

- 2 -

**Koskie Minsky LLP**

Kirk M. Baert
Email: kbaert@kmlaw.ca

Jonathan Ptak
Email: jptak@kmlaw.ca

Jonathan Bida
Email: jbida@kmlaw.ca

Garth Myers
Email: gmyers @ kmlaw.ca

*Lawyers for an Ad Hoc Committee of*
*Purchasers of the Applicant's Securities,*
*including the Representative Plaintiffs in the*
*Ontario Class Action against the Applicant*

**Siskinds LLP**

Charles M. Wright
Email: charles.wright@siskinds.com

A. Dimitri Lascaris
Email: dimitri.lascaris@siskinds.com

*Lawyers for an Ad Hoc Committee of*
*Purchasers of the Applicant's Securities,*
*Including the Representative Plaintiffs in the*
*Ontario Class Action Against the Applicant*

**Palliare Roland Roland Rosenberg**
**Rothstein LLP**

Ken Rosenberg
Email: sarita.sanasie@paliareroland.com

Massimo Starnino
Email: max.starnino@paliareroland.com

*Lawyers for the Ad Hoc Committee of*
*Purchasers of the Applicants Securities,*
*including the Representative Plaintiffs in the*
*Ontario Class Action*

**Bennett Jones LLP**

Robert W. Staley
Email: staleyr@bennettjones.com

Kevin Zych
Email: zychk@bennettjones.com

Derek J. Bell
Email: belld@bennettjones.com

Raj S. Sahni
Email: sahnir@bennettjones.com

Jonathan Bell
Email: bellj@bennettjones.com

Sean Zweig
Email: zweigs@bennettjones.com

*Lawyers for the Applicant,*
*Sino-Forest Corporation*

**Gowling Lafleur Henderson LLP**

Derrick Tay

**Lenczner Slaght Royce Smith Griffin LLP**

Peter H. Griffin

- 3 -

Email: derrick.tay@gowlings.com

Clifton Prohpet
Email: clifton.prohet@gowlings.com

Jennifer Stam
Email: jennifer.stam@gowlings.com

Ava Kim
Email: ava.kim@gowlings.com

Jason McMurtrie
Email: Jason.mcmurtrie@gowlings.com

*Lawyers for the Monitor*

Email: pgriffin@litigate.com

Peter Osborne
Email: posborne@litigate.com

Linda L. Fuerst
Email: lfuerst@litigate.com

Shara Roy
Email: sroy@litigate.com

*Lawyers for Ernst & Young LLP*

**Miller Thomson LLP**

Emily Cole
Email: ecole@millerthomson.com

Joseph Marin
Email: jmarin@millerthomson.com

*Lawyers for the Defendant, Allen T.Y. Chan*

**Wardle Daley Bernstein LLP**

Peter Wardle
Email: pwardle@wdbblaw.ca

Simon Bieber
Email: sbieber@wdbblaw.ca

Erin Pleet
Email: epleet@wdbblaw.ca

*Lawyers for the Defendant David J. Horsley*

**Osler, Hoskin & Harcourt LLP**

Larry Lowenstein
Email: llowenstein@osler.com

Edward Sellers
Email: esellers@osler.com

Geoffrey Grove
Email: ggrove@osler.com

*Lawyers for the Board of Directors of Sino-Forest Corporation*

**FTI Consulting Canada Inc.**

Greg Watson
Email: greg.watson@fticonsulting.com

Jodi Porepa
Email: Jodi.porepa@fticonsulting.com

*Monitor*

**Affleck Greene McMurtry LLP**

Peter Greene
Email: pgreene@agmlawyers.com

**Baker McKenzie LLP**

John Pirie
Email: john.pirie@bakermckenzie.com

- 4 -

Kenneth Dekker
Email:  Kdekker@agmlawyers.com

Michelle E. Booth
Email:  mbooth@agmlawyers.com

*Lawyers for BDO*

**Torys LLP**

John Fabello
Email:  jfabello@torys.com

David Bish
Email:  dbish@torys.com

Andrew Gray
Email:  agray@torys.com

*Lawyers for the Underwriters named in Class Actions*

**Merchant Law Group LLP**

E.F. Anthony Merchant, Q.C.
Email:  tmerchant@merchantlaw.com

*Lawyers for the Plaintiffs - Saskatchewan action*

**Cohen Milstein Sellers & Toll PLC**

Steven J. Toll
Email:  stoll@cohenmilstein.com

*Attorneys for the Plaintiff and the Proposed Class – New York action*

**Thompson Hine LLP**

Yesenia D. Batista
Email:  yesenia.batista@thompsonhine.com

Irving Apar
Email:  irving.apar@thompsonhine.com

Curtis Tuggle

David Gadsden
Email:  david.gadsden@bakermckenzie.com

*Lawyers for Poyry (Beijing) Consulting Company Limited*

**Goodmans LLP**

Benjamin Zarnett
Email:  bzarnett@goodmans.ca

Robert Chadwick
Email:  rchadwick@goodmans.ca

Brendan O'Neill
Email:  boneill@goodmans.ca

Caroline Descours
Email:  cedscours@goodmans.ca

*Lawyers for Ad Hoc Committee of Bondholders*

**Ontario Securities Commission**

Hugh Craig
Senior Litigation Counsel
Email:  hcraig@osc.gov.on.ca

**Law Debenture Trust Company of New York**

James D. Heaney
Email:  james.heaney2lawdeb.com

*Senior Note Indenture Trustee*

**The Bank of New York Mellon**

David M. Kerr
President
Email:  david.m.kerr@bnymellon.com

George Bragg
Email:  george.bragg@bnymellon.com

- 5 -

Email:  curtis.tuggle@thompsonhine.com

*Lawyers for Senior Note Indenture Trustee*

Marelize Coetzee
vice President
Email:  marelize.coetzee@bnymellon.com

Tin Wan Chung
Email:  tin.chung@bnymellon.com

Grace Lau
Email:  grace.lau@bnymellon.com

*Convertible Note Indenture Trustee*

**Linklaters LLP**

Melvin Sng
Email:  Melvin.sng@linklaters.com

*Lawyers for Sino-Forest Corporation – Hong Kong*

**Linklaters LLP**

Hyung Ahn
Email:  hyung.ahn@linklaters.com

Samantha Kim
Email:  samantha.kim@linklaters.com

Jon Gray
Email:  jon.gray@linklaters.com

*Lawyers for Sino-Forest Corporation – U.S.*

- 6 -

**Appleby Global**

Eliot Simpson
Email: esimpson@applebyglobal.com

Andrew Willins
Email: awillins@applebyglobal.com

Andrew Jowett
Email: ajowett@applebyglobal.com

*Lawyers for Sino-Forest Corporation – BVI*

**Thornton Grout Finnigan LLP**

James H. Grout
Email: jgrout@tgf.ca

Kyle Plunkett
Email: kplunkett@tgf.ca

*Lawyers for the Ontario Securities Commission*

**Chaitons LLP**

Harvey G. Chaiton
Email: harvey@chaitons.com

*Lawyers for the Law Debenture Trust Company of New York*

**Fasken Martineau LLP**

Stuart Brotman
Email: sbrotman@fasken.com

Conor O'Neill
Email: coneill@fasken.com

*Canadian Lawyers for the Convertible Note Indenture Trustee (The Bank of New York Mellon)*

**LaPointe Rosenstein Marchand Melançon, S.E.N.C.R.L.**

Bernard Gravel

**King and Wood Mallesons**

Edward Xu
Email: edward.xu@hk.kwm.com

Helena Huang
Email: helena.hunag@kingandwood.com

Tata Sun
Email: tata.sun@kingandwood.com

*Lawyers for Sino-Forest Corporation – PRC*

**McCarthy Tetrault LLP**

Alain N. Tardif
Email: atardif@mccarthy.ca

Mason Poplaw
Email: mpoplaw@mccarthy.ca

Céline Legendre
Email: clegendre@mccarthy.ca

*Lawyers for Ernst & Young LLP*

**Ernst & Young LLP**

Mike P. Dean
Email: mike.p.dean@ca.ey.com

**Emmet, Marvin & Martin, LLP**

Margery A. Colloff
Email: mcolloff@emmetmarvin.com

*U.S. Lawyers for the Convertible Note Indenture Trustee (The Bank of New York Mellon)*

**Fraser Milner Casgrain LLP**

Neil S. Rabinovitch

Email: bernard.gravel@lrmm.com

Bruno Floriani
Email: bruno.floriani@lrmm.com

*Québec counsel for Pöyry (Beijing) Consulting Company Ltd.*

**Clyde & Company**

Mary Margaret Fox
Email: marymargaret.fox@clydeco.ca

Paul Emerson
Email: paul.emerson@clydeco.ca

*Lawyers for ACE INA Insurance and Chubb Insurance Company of Canada*

**Ricketts, Harris LLP**

Gary H. Luftspring
Email: gluftspring@rickettsharris.com

Sam Sasso
Email: ssasso@rickettsharris.com

*Lawyers for Travelers Insurance Company of Canada*

**Kim Orr Barristers P.C.**

Won J. Kim
Email: wjk@kimorr.ca

James C. Orr
Email: jo@kimorr.ca

Michael C. Spenser
Email: mcs@kimorr.ca

Megain B. McPhee
Email: mbm@kimorr.ca

Yonatan Rozenszajn
Email: YR@kimorr.ca

Tanya Jemec

Email: neil.rabinovitch@fmc-law.com

Jane Dietrich
Email: jane.dietrich@fmc-law.com

*Lawyers for Contrarian Capital Management, LLC*

**Davies Ward Phillips & Vineberg LLP**

Jay Swartz
Email: jswartz@dwpv.com

James Doris
Email: jdoris@dwpv.com

*Canadian Counsel for the Plaintiff and the Proposed Class – New York action*

**Davis LLP**

Susan E. Friedman
Email: sfriedman@davis.ca

Bruce Darlington
Email: bdarlington@davis.ca

Brandon Barnes
Email: bbarnes@davis.ca

*Lawyers for Kai Kat Poon*

**Davies Howe Partners LLP**

David Cherepacha
Email: Davidc@davieshowe.com

*Lawyers for Certain Underwriters at Lloyds of London, being Sagicor Syndicate 1206 at Lloyds and Barbican Financial & Professional Lines Consortium Syndicate 9562 at Lloyds*

Email: TTJ@kimorr.ca

*Lawyers for Invesco Canada Ltd., Northwest &
Ethical Investments L.P., Comité Syndical
National De Retraite Batirente Inc., Matrix
Asset Management Inc., Gestion Féruque and
Montrusco Bolton Investments Inc.*

## PART I - OVERVIEW

1.     This is motion for approval of a settlement between David Horsley (the former Chief Financial Officer of Sino-Forest Corporation) and the Litigation Trust of Sino-Forest, along with the Plaintiffs in class actions commenced in Ontario, Quebec and New York.

2.     The settlement follows the framework set out in section 11.2 of Sino-Forest's Plan of Arrangement. This section was incorporated into the Plan to facilitate settlements by a limited group of individuals or entities (defined in the Plan as "Named Third Party Defendants") with the class action plaintiffs and the Litigation Trust for the benefit of Sino-Forest's stakeholders.

3.     Section 11.2 was included in the Plan to maximize the potential recovery for Sino-Forest's stakeholders on the theory that Named Third Party Defendants would be prepared to enter into larger dollar value settlements in exchange for a broad and comprehensive release, which is authorized under section 11.2 of the Plan.

4.     That is precisely what has happened in respect of this settlement.

5.     The settlement was the product of a lengthy and extensive negotiation. The result is a comprehensive agreement that provides significant benefits to Sino-Forest Corporation's ("Sino-Forest") stakeholders and resolves a number of proceedings as against Horsley, including:

(a)     The class actions that have been commenced in relation to Sino-Forest;

(b)     An action that the Litigation Trustee has commenced against certain former officers of Sino-Forest; and

(c)     A proceeding by the Ontario Securities Commission (the "OSC") as against Horsley.

6.     The settlement is supported by the class action plaintiffs, the Litigation Trustee, Staff of the Ontario Securities Commission (the "OSC"), the Monitor, Mr. Horsley and Sino-Forest's insurers. The Underwriters and BDO Limited have also indicated that they anticipate supporting the settlement.

7.     In summary, the key aspects of the settlement are:

(a)     A payment on behalf of David Horsley ("Horsley") to the class action plaintiffs in the amount of $4.2 million;

(b)     A payment by and on behalf of Horsley to the Litigation Trust in the amount of $1.4 million of which $600,000.00 is being paid by Horsley personally;

(c)     The resolution of all allegations made against Horsley by the Ontario Securities Commission through a separate settlement agreement that will be subject to an approval hearing before the OSC on July 21, 2014;

(d)     A release under the Plan for the benefit of Horsley and the recognition of the settlement as a Named Third Party Defendant Settlement under the Plan, which is

approved by the Court pursuant to a Named Third Party Defendant Settlement
Order (as defined in the Plan); and

(e)    The settlement does not permit opt-outs.

8.    The settlement complies with the terms and intent of the Plan, provides a substantial
recovery to Sino-Forest's stakeholders, ensures that the insurance limits are not further depleted
as a result of defence costs attributable to Horsley, and is fair and reasonable in the
circumstances.

9.    Horsley respectfully submits that the Court should approve the settlement and grant the
Named Third Party Defendant Settlement Order.

## PART II - THE FACTS

10.    Sino-Forest was a publicly traded company that was listed on the Toronto Stock
Exchange with its primary operations in the People's Republic of China. Horsley was Sino-
Forest's Chief Financial Officer ("CFO") from 2005 until 2012.

**Affidavit of Charles Wright, sworn July 4, 2014 (the "Wright Affidavit") at paras. 9
and 24, Plaintiffs' Motion Record at Tab 2**

11.    In a report authored by Muddy Waters LLC, Sino-Forest was alleged to be a Ponzi
scheme and a near total fraud. Following the release of that report, Sino-Forest's share price
collapsed, it sought protection under the Companies' Creditors Arrangement Act (the "CCAA")
and it was ultimately delisted from the Toronto Stock Exchange.

**Wright Affidavit at paras. 26 and 27, Plaintiffs' Motion Record at Tab 2**

12.     Sino-Forest along with its directors, officers, auditors and underwriters were sued in a number of class actions. The Ontario Securities Commission (the "OSC") also brought a regulatory proceeding against Sino-Forest and certain of its officers, including Horsley.

**Wright Affidavit at paras. 33 and 62, Plaintiffs' Motion Record at Tab 2**

13.     The allegations made in the class actions and the regulatory proceeding are serious. Sino-Forest is alleged to be a near complete fraud and several of its former officers are alleged to have been active participants in the fraud. The allegations against Horsley are, however, different. The OSC does not allege fraud against Horsley and in fact, after an extensive investigation, the OSC acknowledges that it has found no evidence that Horsley was involved in, or aware of, the alleged fraud. The class action plaintiffs also acknowledge that they have "found no evidence that Horsley of conduct that would support a finding of fraud by Horsley."

**Wright Affidavit at para 103, Plaintiffs' Motion Record at Tab 2**

14.     The allegations against Horsley by the Plaintiffs in the class actions can be summarized as: (i) an allegation that, as Sino-Forest's CFO, he failed to ensure that Sino-Forest's public disclosure was accurate in all material respects and (ii) an allegation that he failed to detect the alleged fraud that was being perpetrated by others.

**The CCAA Proceeding**

15.     Sino-Forest was reorganized pursuant to a Plan of Arrangement, which the Court approved on December 7, 2012. The Plan was the subject of extensive negotiation amongst Sino-

5

Forest's stakeholders and, by the time the Plan was put before the Court for approval, it enjoyed overwhelming support from Sino-Forest's stakeholders.

16.     The Plan includes specific provisions that are meant to incentivize a limited group of individuals and entities (namely Sino-Forest's former officers, directors, auditors and underwriters) to reach settlements with the class action plaintiffs and the Litigation Trustee for the benefit of Sino-Forest's stakeholders. These provisions allow that group (defined in the Plan as Named Third Party Defendants) to obtain a broad and comprehensive release under the Plan (defined as a Named Third Party Defendant Release) as part of a settlement.

**Sino-Forest's Plan of Arrangement at section 11.2**

17.     This framework is an integral component of the Plan, which was approved by the Court, and is meant to provide a mechanism to maximize the recovery for Sino-Forest's creditors.

**The Settlement**

18.     Horsley, the Litigation Trustee, the Monitor and the class action plaintiffs followed the framework set out in the Plan in reaching the settlement agreement.

19.     The settlement is part of a comprehensive agreement that also includes the resolution of the proceedings commenced by the Ontario Securities Commission (the "OSC") against Horsley.

20.     The settlement is complex and was the product of extensive negotiations that spanned almost eight months.

**Wright Affidavit at paras. 71 – 73, Plaintiffs' Motion Record at Tab 2**

21.    The result is an agreement that (i) provides a significant recovery to Sino-Forest's stakeholders; (ii) allows Horsley to move on from his involvement with Sino-Forest; and (iii) has wide-spread support, including from the Monitor, the Litigation Trustee (which is a party to the agreement), the Staff of the OSC, the class action plaintiffs in Ontario, Quebec and New York (including from significant shareholders such as Davis Selected Advisers LP, which held 12.6% of Sino-Forest's shares), and Sino-Forest's insurers.

**Wright Affidavit at paras. 74 – 78, Plaintiffs' Motion Record at Tab 2**

22.    The key aspects of the settlement are:

    (a)    A payment to the class action plaintiffs of $4.2 million;

    (b)    A payment to the Litigation Trustee of $1.4 million, of which Horsley is paying $600,000.00 personally;

    (c)    The resolution of all proceedings against Horsley, including the proceeding by the OSC;

    (d)    A mechanism through which Horsley's evidence will be captured and preserved for the remaining parties to the class actions and the OSC proceeding;

    (e)    A Named Third Party Defendant Release, which bars all claims against Horsley without opt-out rights.

**Exhibit "A" to the Wright Affidavit, Plaintiffs' Motion Record at Tab 2A**

23.    Each of those components of the settlement provides a benefit to Sino-Forest's stakeholders. Aside from the monetary benefits, the resolution of the OSC proceeding against Horsley is important because Horsley's participation in that proceeding resulted in the reduction of the limits of Sino-Forest's directors' and officers' insurance policies. Those policies are diminished by defence costs that are incurred by a director or officer. Had Horsley continued to defend the OSC proceeding through a merits hearing, he would have incurred significant defence costs that would have reduced the amount of insurance that is now available to satisfy the claims of Sino-Forest's shareholders.

24.    The same rationale applies to the resolution of all civil proceedings against Horsley.

25.    In addition, without the certainty and broad protection afforded by the Named Third Party Defendant Release, the amount of the settlement would have been lower. Simply put, Horsley was prepared to pay a higher price in exchange for a more comprehensive release under the Plan.

26.    The settlement was the product of extensive negotiations involving a of number parties who were litigating at least four different proceedings. Horsley respectfully submits that the settlement reflects a significant compromise and is fair and reasonable such that it should be approved by the Court.

**PART III - ISSUES AND THE LAW**

27.    The only issue on this motion is whether the settlement should be approved by the Court under the provisions of the *Class Proceedings Act* and CCAA?

8

*Robertson v. ProQuest Information and Learning Co*, **2011 ONSC 1647 at para 22, Horsley's Book of Authorities at Tab 1**

28.    This Court has jurisdiction and is the appropriate forum to approve the settlement between Horsley and the class action plaintiffs. Indeed, section 1.5 of the Plan requires that "all proceedings taken in connection with the Plan" are subject to the jurisdiction of this Court.

29.    At this stage, the Court has already approved the Plan, including section 11.2, which (i) provides the framework for this settlement and (ii) specifically authorizes the Court to grant a third party release under the CCAA to Named Third Party Defendants if and when those parties reach a settlement with the class action plaintiffs and/or the Litigation Trustee.

30.    Accordingly, the Court has already determined that, as part of the numerous compromises that went into the Plan, it was appropriate in the circumstances to grant third party releases under the CCAA to the limited group of entities/individuals who were defined in the Plan as Named Third Party Defendants.[1]

*Re Sino-Forest Corp.*, **2013 ONSC 7050, Horsley's Book of Authorities at Tab 2**

31.    In Horsley's respectful submission, the inquiry on this motion is, therefore, streamlined and the test to be applied is:

   (a)    whether the settlement is fair and reasonable;

   (b)    whether it provides substantial benefits to other stakeholders; and

---

[1] Third party releases are, in any event, now a common aspect of complicated restructurings. See e.g. *Re Metcalfe & Mansfield Alternative Investments II Corp.*, (2008) 92 O.R. (3d) 513 (C.A.); *Re Muscletech Research Development Inc.* (2007), 30 C.B.R. (5th) 59 (Ont. S.C.); *Re Allen Vanguard*, [2011] O.J. No. 3946 (S.C.J.).

(c)    whether it is consistent with the purpose and spirit of the CCAA.

> *Robertson v. ProQuest Information and Learning Co*, 2011 ONSC 1647 at para 22,
> **Horsley's Book of Authorities at Tab 1**

32.    Horsley respectfully submits that the settlement satisfies each of those criteria.

33.    First, the settlement is fair and reasonable. This is evidenced by the significant support that the settlement has received from the Monitor, the Litigation Trust, the Staff of the OSC and Sino-Forest's former shareholders, including the named plaintiffs in the Ontario class action and Davis Selected Advisers LP ("Davis"), which was Sino-Forest's second largest shareholder and held approximately 12.6% of Sino-Forest's shares at the time of the Muddy Waters report.

34.    Furthermore, the settlement properly balances the competing interests of class members, Horsley and the non-settling defendants as:

(a)    class members are not releasing their claims to a greater extent than necessary. The class members are releasing only their claims against Horsley and can continue to pursue the non-settling defendants;

(b)    Horsley obtains the certainty that once he has paid the settlement amount, he will have no further civil liability in relation to Sino-Forest by virtue of the Named Third Party Defendant Release. Although this release is comprehensive and broad, the Plan specifically authorizes it for Named Third Party Defendants (such as Horsley) in order to maximize the return that shareholders and the Litigation Trust receive in a settlement. Simply put, the amount of the settlement was higher

because of the availability of this release and if the release was unavailable and Horsley faced the prospect of having to face opt-outs or more civil litigation, he would not be in a position make such a significant payment;

(c)    the settlement contains *Pierringer* type language so that the non-settling defendants will not have to pay more following a judgment than they would be required to pay if Horsley remained as a defendant in the action; and

(d)    the non-settling defendants are granted broad rights of discovery and are receiving production of any relevant non-privileged documents in Horsley's power, possession or control.

35.    Second, the settlement provides a "substantial benefit" to Sino-Forest's stakeholders. As part of the settlement, $5.6 million is being paid by or on behalf of Horsley to the Litigation Trust and the class action plaintiffs. The Litigation Trust is beneficially owned by Sino-Forest's former shareholders and debt holders. And the class is comprised of those who held securities of Sino-Forest during the time that Horsley was the CFO. Accordingly, the former shareholders and debt holders of Sino-Forest will receive a significant benefit by virtue of this payment.

36.    Moreover, by resolving all existing civil and regulatory proceedings as part of the settlement, the insurance proceeds will not be further depleted by Horsley through the payment of his defence costs.

37.    Third and lastly, the settlement is consistent with the spirit and purpose of the CCAA. The Plan involved a series of compromises, one of those was the inclusion of section 11.2 which

provided the framework for this settlement and other potential settlements in the future involving Named Third Party Defendants. Horsley, the Litigation Trust and the class action plaintiffs applied this framework to reach a settlement that provides a meaningful recovery to Sino-Forest's stakeholders (and the only recovery since the settlement involving Ernst & Young LLP) while allowing Mr. Horsley to move on from his involvement with Sino-Forest.

38.    Another aspect of the Plan was the establishment of the Litigation Trust, which was created to assert claims for the benefit of Sino-Forest's debt holders and shareholders.    The Litigation Trust is receiving a substantial payment through the settlement, which Horsley respectfully submits is consistent with the purpose and spirit of the CCAA and the Plan.

39.    This also demonstrates that the release that Horsley is to receive in exchange for the payments is rationally related to the purpose of the Plan and that Horsley is making a real and substantial contribution to the restructuring for benefit of Sino-Forest's creditors.

*Re Metcalfe & Mansfield Alternative Investments II Corp.*, (2008) 92 O.R. (3d) 513
at para 70 (C.A.) Horsley's Book of Authorities at Tab 3

40.    While the Named Third Party Defendant Release is comprehensive and broad, a similar release was approved by the Court as part of the settlement involving Ernst & Young. In Horsley's respectful submission, the release is an integral part of the settlement, it is specifically authorized by the Plan and it is reasonable without being overly broad.

*Re Sino-Forest Corp.*, 2013 ONSC 1078, Horsley's Book of Authorities at Tab 4

**The Terms of the Order Relating to Insurance**

41.     The Named Third Party Defendant Settlement Order contains a number of terms addressing Sino-Forest's directors' and officers' insurance, namely paragraphs 18 – 30 of the draft Order.

42.     These paragraphs were the subject of extensive negotiation involving the insurers.

43.     The paragraphs are required for the insurers to fund their contribution to the settlement.

44.     The insurers' contribution to the settlement is the first indemnity payment (as opposed to defence costs) that the insurers are making in relation to Sino-Forest.  And the insurers need to be protected against any allegation that the payment is imprudent or somehow improper.

45.     The insureds under the policies have been given notice of the settlement and have been provided with a copy of the draft Order, pursuant to this Court's Order approving notice of the settlement dated June 5, 2014.

46.     There has been no objection to the aspects of the Order relating to the insurance.

47.     The provisions of the draft Named Third Party Defendant Settlement Order form an integral part of the settlement and without them, the insurers will not fund their contribution. The provisions are reasonable and limited to protecting the insurers against any allegation of impropriety in respect of the amounts that they have paid to date, including the contribution to this settlement.

48.    There is authority for approving these sorts of terms relating to insurance.

> *Re Laidlaw Inc.* (2003), 46 C.C.L.I. (3d) 263 at p. 272 (S.C.J.), Horsley's Book of Authorities at Tab 5
>
> *Re Hollinger International Inc. v. American Home Assurance Company*, [2006] O.J. No. 140 at paras. 106 – 129 (S.C.J.), Horsley's Book of Authorities at Tab 6
>
> *Sun-Times Media Group Inc. v. Royal & Sun Alliance Insurance Company of Canada*, 2007 CanLII 50287 at para 72 (Ont. S.C.J.), Horsley's Book of Authorities at Tab 7

49.    Horsley respectfully submits that the terms of the Order, in their entirety, are reasonable and should be approved.

## PART IV - ORDER REQUESTED

50.    Horsley respectfully requests that the Court approve the settlement and grant the Named Third Party Defendant Settlement Order.

ALL OF WHICH IS RESPECTFULLY SUBMITTED this 18ᵗʰ day of July, 2014.

Peter Wardle
WARDLE DALEY BERNSTEIN BIEBER LLP
Lawyer for the Defendant, David J. Horsley

## SCHEDULE "A"
## LIST OF AUTHORITIES

1.  *Robertson v. ProQuest Information and Learning Co*, 2011 ONSC 1647

2.  *Re Sino-Forest Corp.*, 2013 ONSC 7050

3.  *Metcalfe & Mansfield Alternative Investments II Corp.*, (2008) 92 O.R. (3d) (C.A.)

4.  *Re Sino-Forest Corp.,* 2013 ONSC 1078

5.  *Re Laidlaw Inc.* (2003), 46 C.C.L.I. (3d) 263 (S.C.J.)

6.  *Hollinger International Inc. v. American Home Assurance Company*, [2006] O.J. No. 140 (S.C.J.)

7.  *Sun-Times Media Group Inc. v. Royal & Sun Alliance Insurance Company of Canada*, 2007 CanLII 50287 (Ont. S.C.J.)

**SCHEDULE "B"**
**RELEVANT STATUTES**

N/A

Court File No: CV-12-9667-00CL

Court File No. CV-11-431153-00CP

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED, AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF SINO-FOREST CORPORATION

The Trustees of the Labourer's Pension Fund of     -and-     Sino-Forest Corporation et al
Central and Eastern Canada et al

Plaintiffs                                                         Defendants

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

Proceeding commenced at TORONTO

**FACTUM OF THE DEFENDANT, DAVID HORSLEY**
**(RETURNABLE JULY 24, 2014 )**

Wardle Daley Bernstein Bieber LLP
2104-401 Bay Street
P.O. Box 21
Toronto ON  M5H 2Y4

Peter C. Wardle  LSUC#: 26412D
Tel: (416) 351.2771
Fax: (416) 351.9196

Simon Bieber  LSUC#: 56219Q
Tel: (416) 351-2781
Fax: (416) 351-9196

Lawyers for David J. Horsley