**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)
Michael S. Etkin
Tatiana Ingman

*United States Bankruptcy Counsel for Class Action Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| SINO-FOREST CORPORATION, | Case No. 13- 10361 (MG) |
| Debtor in a Foreign Proceeding. | |

### NOTICE OF FILINGS IN THE ONTARIO SUPERIOR COURT OF JUSTICE

**PLEASE TAKE NOTICE** that on July 21, 2014, the *Supplementary Motion Record Regarding Fee Approval and Settlement Approval Motions* attached hereto as **Exhibit A** was filed with the Ontario Superior Court of Justice in support of approval of the Horsley Settlement.

Dated:  July 22, 2014
        New York, New York

                                            **LOWENSTEIN SANDLER LLP**

                                            _/s/ Michael S. Etkin_____
                                            Michael S. Etkin
                                            Tatiana Ingman
                                            1251 Avenue of the Americas
                                            New York, New York 10022
                                            metkin@lowenstein.com
                                            tingman@lowenstein.com

                                            *United States Bankruptcy Counsel for the*
                                            *Class Action Plaintiffs*

**<u>EXHIBIT A</u>**

Court File No.:  CV-12-9667-00CL

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS
ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE AND
ARRANGEMENT OF SINO-FOREST CORPORATION

Court File No.:  CV-11-431153-00CP

*ONTARIO*
SUPERIOR COURT OF JUSTICE

B E T W E E N :

THE TRUSTEES OF THE LABOURERS' PENSION FUND OF CENTRAL AND
EASTERN CANADA, THE TRUSTEES OF THE INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 793 PENSION PLAN FOR OPERATING
ENGINEERS IN ONTARIO, SJUNDE AP-FONDEN, DAVID GRANT
and ROBERT WONG

Plaintiffs

- and -

SINO-FOREST CORPORATION, ERNST & YOUNG LLP, BDO LIMITED (formerly
known as BDO MCCABE LO LIMITED), ALLEN T.Y. CHAN, W. JUDSON MARTIN,
KAI KIT POON, DAVID J. HORSLEY, WILLIAM E. ARDELL, JAMES P. BOWLAND,
JAMES M.E. HYDE, EDMUND MAK, SIMON MURRAY,  PETER WANG, GARRY J.
WEST, PÖYRY (BEIJING) CONSULTING COMPANY LIMITED, CREDIT SUISSE
SECURITIES (CANADA), INC., TD SECURITIES INC., DUNDEE SECURITIES
CORPORATION, RBC DOMINION SECURITIES INC., SCOTIA CAPITAL INC., CIBC
WORLD MARKETS INC., MERRILL LYNCH CANADA INC., CANACCORD
FINANCIAL LTD., MAISON PLACEMENTS CANADA INC., CREDIT SUISSE
SECURITIES (USA) LLC and MERRILL LYNCH, PIERCE, FENNER & SMITH
INCORPORATED (successor by merger to Banc of America Securities LLC)

Defendants

Proceeding under the *Class Proceedings Act, 1992*

---

**SUPPLEMENTARY MOTION RECORD**
**(Fee Approval and Settlement Approval Motions, Returnable July 24, 2014)**

---

**KOSKIE MINSKY LLP**
900-20 Queen Street West, Box 52
Toronto ON  M5H 3R3

**Kirk M. Baert (LSUC#: 30942O)**
Tel: 416.595.2117
Fax: 416.204.2889
Email: kbaert@kmlaw.ca
**Jonathan Ptak (LSUC#: 45773F)**
Tel:  416.595.2149
Fax:  416.204.2903
Email: jptak@kmlaw.ca

**SISKINDS LLP**
680 Waterloo Street, P.O. Box 2520
London ON  N6A 3V8

**Charles M. Wright (LSUC#: 36599Q )**
Tel: (519) 660-7753
Fax: (519) 660-7754
Email: charles.wright@siskinds.com
**A. Dimitri Lascaris (LSUC#: 50074A)**
TEL: (519) 660-7844
Fax: (519) 660-7845
Email: dimitri.lascaris@siskinds.com

**PALAIRE ROLAND ROSENBERG
ROTHSTEIN LLP**
155 Wellington Street West, Floor 35
Toronto ON  M5V 3H1

**Ken Rosenberg (LSUC#: 21102H)**
Tel: (416) 646-4304
Fax: (416) 646-4301
Email: ken.rosenberg@paliareroland.com
**Massimo Starnino (LSUC#: 41048G)**
Tel: (416) 646-7431
Fax: (416) 646-4301
Email: max.starnino@paliareroland.com

Lawyers for the Ad Hoc Committee of
Purchasers of the Applicant's Securities,
including the Representative Plaintiffs in the
Ontario Class Action

**TO: ATTACHED SERVICE LIST**

**Court File No.  CV-12-9667-00-CL**

*ONTARIO*
**SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF SINO-FOREST CORPORATION**

**SERVICE LIST
(as at January 30, 2013)**

| | | |
|---|---|---|
| TO: | **BENNETT JONES LLP**<br>3400 One First Canadian Place,<br>P.O. Box 130<br>Toronto, Ontario  M5X 1A4 | AND<br>TO: | **GOWLING LAFLEUR HENDERSON LLP**<br>1 First Canadian Place<br>100 King Street West, Suite 1600<br>Toronto, Ontario M5X 1G5 |

TO:    **BENNETT JONES LLP**
3400 One First Canadian Place,
P.O. Box 130
Toronto, Ontario  M5X 1A4

Robert W. Staley
Tel: 416.777.4857
Fax: 416.863.1716
Email: staleyr@bennettjones.com

Kevin Zych
Tel: 416.777.5738
Email: zychk@bennettjones.com

Derek J. Bell
Tel: 416.777.4638
Email: belld@bennettjones.com

Raj S. Sahni
Tel: 416.777.4804
Email: sahnir@bennettjones.com

Jonathan Bell
Tel: 416.777.6511
Email: bellj@bennettjones.com

Sean Zweig
Tel: 416.777.6254
Email: zweigs@bennettjones.com

Lawyers for the Applicant, Sino-Forest
Corporation

AND    **GOWLING LAFLEUR HENDERSON LLP**
TO:    1 First Canadian Place
100 King Street West, Suite 1600
Toronto, Ontario M5X 1G5

Derrick Tay
Tel: 416.369.7330
Fax: 416.862.7661
Email: derrick.tay@gowlings.com

Clifton Prophet
Tel: 416.862.3509
Email: clifton.prophet@gowlings.com

Jennifer Stam
Tel: 416.862.5697
Email: jennifer.stam@gowlings.com

Ava Kim
Tel: 416.862.3560
Email: ava.kim@gowlings.com

Jason McMurtrie
Tel: 416.862.5627
Email: jason.mcmurtrie@gowlings.com

Lawyers for the Monitor

AND
TO:

**FTI CONSULTING CANADA INC.**
T-D Waterhouse Tower
79 Wellington Street West
Toronto-Dominion Centre, Suite 2010,
P.O. Box 104
Toronto, Ontario  M5K 1G8

Greg Watson
Tel: 416.649.8100
Fax: 416.649.8101
Email: greg.watson@fticonsulting.com

Jodi Porepa
Tel: 416.649.8070
Email: Jodi.porepa@fticonsulting.com

Monitor

AND
TO:

**AFFLECK GREENE MCMURTY LLP**
365 Bay Street, Suite 200
Toronto, Ontario  M5H 2V1

Peter Greene
Tel: 416.360.2800
Fax: 416.360.8767
Email: pgreene@agmlawyers.com

Kenneth Dekker
Tel: 416.360.6902
Fax: 416.360.5960
Email: kdekker@agmlawyers.com

Michelle E. Booth
Tel: 416.360.1175
Fax: 416.360.5960
Email: mbooth@agmlawyers.com

Lawyers for BDO

AND
TO:

**BAKER MCKENZIE LLP**
Brookfield Place
2100-181 Bay Street
Toronto, Ontario  M5J 2T3

John Pirie
Tel: 416.865.2325
Fax: 416.863.6275
Email: john.pirie@bakermckenzie.com

David Gadsden
Tel: 416.865.6983
Email: david.gadsden@bakermckenzie.com

Lawyers for Poyry (Beijing) Consulting
Company Limited

AND
TO:

**TORYS LLP**
79 Wellington Street West
Suite 3000, Box 270
Toronto-Dominion Centre
Toronto, Ontario  M5K 1N2

John Fabello
Tel: 416.865.8228
Fax: 416.865.7380
Email: jfabello@torys.com

David Bish
Tel: 416.865.7353
Email: dbish@torys.com

Andrew Gray
Tel: 416.865.7630
Email: agray@torys.com

Lawyers for the Underwriters named in Class
Actions

AND TO: **LENCZNER SLAGHT ROYCE SMITH GRIFFIN LLP**
Suite 2600, 130 Adelaide Street West
Toronto, Ontario  M5H 3P5

Peter H. Griffin
Tel:  416.865.9500
Fax:  416.865.3558
Email:  pgriffin@litigate.com

Peter J. Osborne
Tel:  416.865.3094
Fax:  416.865.3974
Email:  posborne@litigate.com

Linda L. Fuerst
Tel:  416.865.3091
Fax:  416.865.2869
Email:  lfuerst@litigate.com

Shara Roy
Tel:  416.865.2942
Fax:  416.865.3973
Email:  sroy@litigate.com

Lawyers for Ernst & Young LLP

AND TO: **GOODMANS LLP**
333 Bay Street, Suite 3400
Toronto, Ontario M5H 2S7

Benjamin Zarnett
Tel:  416.597.4204
Fax:  416.979.1234
Email:  bzarnett@goodmans.ca

Robert Chadwick
Tel:  416.597.4285
Email:  rchadwick@goodmans.ca

Brendan O'Neill
Tel:  416.979.2211
Email:  boneill@goodmans.ca

Caroline Descours
Tel:  416.597.6275
Email:  cdescours@goodmans.ca

Lawyers for Ad Hoc Committee of Bondholders

AND TO: **MERCHANT LAW GROUP LLP**
Saskatchewan Drive Plaza
100-2401 Saskatchewan Drive
Regina, Saskatchewan  S4P 4H8

E.F. Anthony Merchant, Q.C.
Tel:  306.359.7777
Fax:  306.522.3299
tmerchant@merchantlaw.com

Lawyers for the Plaintiffs re Saskatchewan action

AND TO: **ONTARIO SECURITIES COMMISSION**
Suite 1900, 20 Queen Street West
Toronto, Ontario  M5H 3S8

Hugh Craig
Senior Litigation Counsel
Tel:  416.593.8259
Email:  hcraig@osc.gov.on.ca

AND TO: **OSLER, HOSKIN & HARCOURT LLP**
1 First Canadian Place
100 King Street West
Suite 6100, P.O. Box 50
Toronto, Ontario  M5X 1B8

Larry Lowenstein
Tel:  416.862.6454
Fax:  416.862.6666
Email:  llowenstein@osler.com

Edward Sellers
Tel:  416.862.5959
Email:  esellers@osler.com

Geoffrey Grove
Tel:  (416) 862-4264
Email:  ggrove@osler.com

Lawyers for the Board of Directors of Sino-Forest Corporation

AND TO: **COHEN MILSTEIN SELLERS & TOLL PLC**
1100 New York, Ave., N.W.
West Tower, Suite 500
Washington, D.C.  20005

Steven J. Toll
Tel:  202.408.4600
Fax:  202.408.4699
Email:  stoll@cohenmilstein.com

Attorneys for the Plaintiff and the Proposed Class re New York action

AND TO: **SISKINDS LLP**
680 Waterloo Street
P.O. Box 2520
London, Ontario  N6A 3V8

A. Dimitri Lascaris
Tel:  519.660.7844
Fax:  519.672.6065
Email:  dimitri.lascaris@siskinds.com

Charles M. Wright
Tel:  519.660.7753
Email:  Charles.wright@siskinds.com

Lawyers for an Ad Hoc Committee of Purchasers of the Applicant's Securities, including the Representative Plaintiffs in the Ontario Class Action against the Applicant

AND TO: **KOSKIE MINSKY LLP**
20 Queen Street West, Suite 900
Toronto, Ontario  M5H 3R3

Kirk M. Baert
Tel:  416.595.2117
Fax:  416.204.2899
Email:  kbaert@kmlaw.ca

Jonathan Ptak
Tel:  416.595.2149
Fax:  416.204.2903
Email:  jptak@kmlaw.ca

Jonathan Bida
Tel:  416.595.2072
Fax:  416.204.2907
Email:  jbida@kmlaw.ca

Garth Myers
Tel:  416.595.2102
Fax:  416.977.3316
Email:  gmyers@kmlaw.ca

Lawyers for an Ad Hoc Committee of Purchasers of the Applicant's Securities, including the Representative Plaintiffs in the Ontario Class Action against the Applicant

AND TO: **COHEN MILSTEIN SELLERS & TOLL PLC**
88 Pine Street, 14th Floor
New York, NY 10005

Richard S. Speirs
Tel: 212.838.7797
Fax: 212.838.7745
Email: rspeirs@cohenmilstein.com

Attorneys for the Plaintiff and the Proposed Class re New York action

AND TO: **LAW DEBENTURE TRUST COMPANY OF NEW YORK**
400 Madison Avenue – 4th Floor
New York, New York 10017

James D. Heaney
Tel: 646-747-1252
Fax: 212-750-1361
Email: james.heaney@lawdeb.com

Senior Note Indenture Trustee

AND TO: **THOMPSON HINE LLP**
335 Madison Avenue – 12th Floor
New York, New York 10017-4611

Yesenia D. Batista
Tel: 212.908.3912
Fax: 212.344.6101
Email: yesenia.batista@thompsonhine.com

Irving Apar
Tel: 212.908.3964
Email: irving.apar@thompsonhine.com

Curtis L. Tuggle
3900 Key Center, 127 Public Square
Cleveland, Ohio 44114
Tel: 216.566.5904
Fax: 216.566.5800
Email: Curtis.tuggle@thompsonhine.com

Lawyers for Senior Note Indenture Trustee

AND TO: **THE BANK OF NEW YORK MELLON**
Global Corporate Trust
101 Barclay Street – 4th Floor East
New York, New York 10286

David M. Kerr, Vice President
Tel: 212.815.5650
Fax: 732.667.9322
Email: david.m.kerr@bnymellon.com

Convertible Note Indenture Trustee

AND TO: **THE BANK OF NEW YORK MELLON**
320 Bay Street, 11th Floor
Toronto, Ontario M5H 4A6

George Bragg
Tel: 416.933.8505
Fax: 416.360.1711 / 416.360.1737
Email: George.bragg@bnymellon.com

Convertible Note Indenture Trustee

AND TO: **THE BANK OF NEW YORK MELLON**
12/F Three Pacific Place
1 Queen's Road East, Hong Kong

Marelize Coetzee, Vice President
Relationship Manager, Default Administration Group – APAC
Tel: 852.2840.6626
Mobile: 852.9538.5010
Email: marelize.coetzee@bnymellon.com

Tin Wan Chung
Tel: 852.2840.6617
Fax: 852.2295-3283
Email: tin.chung@bnymellon.com

Grace Lau
Email: grace.lau@bnymellon.com

Convertible Note Indenture Trustee

AND
TO:

**WARDLE DALEY BERNSTEIN LLP**
2104 - 401 Bay Street, P.O. Box 21
Toronto Ontario M5H 2Y4

Peter Wardle
Tel: 416.351.2771
Fax: 416.351.9196
Email: pwardle@wdblaw.ca

Simon Bieber
Tel: 416.351.2781
Email: sbieber@wdblaw.ca

Erin Pleet
Tel: 416.351.2774
Email: epleet@wdblaw.ca

Lawyers for David Horsley

AND
TO:

**LINKLATERS LLP**
10th Floor, Alexandra House
18 Chater Road
Hong Kong  China

Melvin Sng
Tel: 852 2901 5234
Fax: 852 2810 8133
Email: Melvin.Sng@linklaters.com

Lawyers for Sino-Forest Corporation (Hong Kong)

T991329\TOR_LAW\7884118\29

AND **LINKLATERS LLP**
TO:    10th Floor, Alexandra House
       18 Chater Road
       Hong Kong  China

       Hyung Ahn
       Tel: 852 2842 4199
       Fax: 852 2810 8133
       Email: hyung.ahn@linklaters.com

       Samantha Kim
       Tel: 852.2842 4197
       Email: Samantha.Kim@Linklaters.com

       Jon Gray
       Tel: 852.2842.4188
       Email: Jon.Gray@linklaters.com

       Lawyers for Sino-Forest Corporation (U.S.)

AND **KING AND WOOD MALLESONS**
TO:    9th Floor, Hutchison House
       Central, Hong Kong Island
       Hong Kong (SAR)

       Edward Xu
       Tel: 852.2848.4848
       Fax: 852.2845.2995
       Email: Edward.Xu@hk.kwm.com

       Helena Huang
       Tel: 852.2848.4848
       Email: Helena.huang@kingandwood.com

       Tata Sun
       Tel: 852.2848.4848
       Email: tata.sun@kingandwood.com

       Lawyers for Sino-Forest Corporation (PRC)

AND **APPLEBY GLOBAL**
TO:    Jayla Place, Wickham's Cay1
       P.O. Box 3190, Road Town
       Tortola  VG1110  BVI

       Eliot Simpson
       Tel: 284.852.5321
       Fax: 284.494.7279
       Email: esimpson@applebyglobal.com

       Andrew Willins
       Tel: 284 852 5323
       Email: awillins@applebyglobal.com

       Andrew Jowett
       Tel: 284 852 5316
       Email: ajowett@applebyglobal.com

       Lawyers for Sino-Forest Corporation (BVI)

AND **THORNTON GROUT FINNIGAN LLP**
TO:    Suite 3200, 100 Wellington Street West
       P. O. Box 329, Toronto-Dominion Centre
       Toronto, Ontario M5K 1K7

       James H. Grout
       Tel: 416.304.0557
       Fax: 416.304.1313
       Email: jgrout@tgf.ca

       Kyle Plunkett
       Tel: 416-304-7981
       Fax: 416.304.1313
       Email: kplunkett@tgf.ca

       Lawyers for the Ontario Securities Commission

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 2500, 1000 De La Gauchetiere St.
West
Montreal, Québec, H3B 0A2

Alain N. Tardif
Tel: 514.397.4274
Fax : 514.875.6246
Email: atardif@mccarthy.ca

Mason Poplaw
Tel: 514.397.4155
Email: mpoplaw@mccarthy.ca

Céline Legendre
Tel: 514.397.7848
Email: clegendre@mccarthy.ca

Lawyers for Ernst & Young LLP

AND
TO:

**PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP**
155 Wellington Street, 35th Floor
Toronto, Ontario  M5V 3H1

Ken Rosenberg
Tel: 416.646.4304
Fax: 416.646.4301
Email: ken.rosenberg@paliareroland.com

Massimo (Max) Starnino
Tel:  416.646.7431
Email: max.starnino@paliareroland.com

Lawyers for an Ad Hoc Committee of Purchasers
of the Applicant's Securities, including the
Representative Plaintiffs in the Ontario Class
Action against the Applicant

AND
TO:

**CHAITONS LLP**
5000 Yonge Street, 10th Floor
Toronto, Ontario  M2N 7E9

Harvey G. Chaiton
Tel: 416.218.1129
Fax: 416.218.1849
Email:  Harvey@chaitons.com

Lawyers for the Law Debenture Trust
Company of New York

AND
TO:

**ERNST & YOUNG LLP**
222 Bay Street, P.O. Box 251
Toronto, Ontario  M5K 1J7

Mike P. Dean
Tel: 416-943-2134
Fax: 416-943-3300
Email: Mike.P.Dean@ca.ey.com

AND
TO:

**MILLER THOMSON LLP**
Scotia Plaza, 40 King Street West
Suite 5800
Toronto, Ontario M5H 3S1

Emily Cole
Tel: 416.595.8640
Email: ecole@millerthomson.com

Joseph Marin
Tel: 416.595.8579
Email: jmarin@millerthomson.com

Lawyers for Allen Chan

AND
TO:

**FASKEN MARTINEAU LLP**
333 Bay Street, Suite 2400,
Bay-Adelaide Centre, Box 20
Toronto, Ontario  M5H 2T6

Stuart Brotman
Tel:  416.865.5419
Fax:  416.364.7813
Email:  sbrotman@fasken.com

Conor O'Neill
Tel:  416 865 4517
Email: coneill@fasken.com

Canadian Lawyers for the Convertible Note
Indenture Trustee (The Bank of New York
Mellon)

AND TO: **EMMET, MARVIN & MARTIN, LLP**
120 Broadway, 32nd Floor
New York, NY 10271

Margery A. Colloff
Tel: 212.238.3068 or 212.653.1746
Fax: 212.238.3100
Email: mcolloff@emmetmarvin.com

U.S. Lawyers for the Convertible Note Indenture Trustee (The Bank of New York Mellon)

AND TO: **LAPOINTE ROSENSTEIN MARCHAND MELANÇON, S.E.N.C.R.L.**
1250, boul. René-Lévesque Ouest, bureau 1400
Montréal (Québec) Canada H3B 5E9

Bernard Gravel
Tel: 514.925.6382
Fax: 514.925.5082
Email: bernard.gravel@lrmm.com

Bruno Floriani
Tel: 514.925.6310
Email: bruno.floriani@lrmm.com

Québec counsel for Pöyry (Beijing) Consulting Company Ltd.

AND TO: **FRASER MILNER CASGRAIN LLP**
77 King Street West, Suite 400
Toronto-Dominion Centre
Toronto Ontario M5K 0A1

Neil S. Rabinovitch
Tel: 416.863.4656
Fax: 416 863 4592
Email: neil.rabinovitch@fmc-law.com

Jane Dietrich
Tel: 416.863.4467
Email: jane.dietrich@fmc-law.com

Lawyers for Contrarian Capital Management, LLC

AND TO: **CLYDE & COMPANY**
390 Bay Street, Suite 800
Toronto, Ontario M5H 2Y2

Mary Margaret Fox
Tel: 416.366.4555
Fax: 416.366.6110
Email: marymargaret.fox@clydeco.ca

Paul Emerson
Tel: 416.366.4555
Email: paul.emerson@clydeco.ca

Lawyers for ACE INA Insurance and Chubb Insurance Company of Canada

AND TO: **DAVIES WARD PHILLIPS & VINEBERG LLP**
155 Wellington Street West
Toronto, ON M5V 3J7

Jay Swartz
Tel: 416.863.5520
Fax: 416.863.0871
Email: jswartz@dwpv.com

James Doris
Tel: 416.367.6919
Fax: 416.863.0871
Email: jdoris@dwpv.com

Canadian Counsel for the Plaintiff and the Proposed Class re New York action

AND TO: **RICKETTS, HARRIS LLP**
Suite 816, 181 University Ave
Toronto ON M5H 2X7

Gary H. Luftspring
Tel: 647.288.3362
Fax: 647.260.2220
Email: GLuftspring@rickettsharris.com

Sam Sasso
Tel: 416.364.6211 (ext. 285)
Fax: 647.260.2220
Email: ssasso@rickettsharris.com

Lawyers for Travelers Insurance Company of Canada

AND
TO:

**DAVIS LLP**
1 First Canadian Place, Suite 6000
PO Box 367
100 King Street West
Toronto, Ontario  M5X 1E2

Susan E. Friedman
Tel: 416.365.3503
Fax: 416.777.7415
Email: sfriedman@davis.ca

Bruce Darlington
Tel: 416.365.3529
Fax: 416.369.5210
Email: bdarlington@davis.ca

Brandon Barnes
Tel: 416.365.3429
Fax: 416.369.5241
Email: bbarnes@davis.ca

Lawyers for Kai Kat Poon

AND
TO:

**KIM ORR BARRISTERS P.C.**
19 Mercer St., 4th Floor
Toronto, ON M5V 1H2

Won J. Kim
Tel: 416.349.6570
Fax: 416.598.0601
Email: wjk@kimorr.ca

James C. Orr
Tel: 416.349.6571
Fax: 416.598.0601
Email: jo@kimorr.ca

Michael C. Spenser
Tel: 416.349.6599
Fax: 416.598.0601
Email: mcs@kimorr.ca

Megan B. McPhee
Tel: 416.349.6574
Fax: 416.598.0601
Email: mbm@kimorr.ca

Yonatan Rozenszajn
Tel: 416.349.6578
Fax: 416.598.0601
Email: YR@kimorr.ca

Tanya Jemec
Tel: 416.349.6573
Fax: 416.598.0601
Email: TTJ@kimorr.ca

Lawyers for Invesco Canada Ltd., Northwest &
Ethical Investments L.P., Comité Syndical
National De Retraite Batirente Inc., Matrix Asset
Management Inc., Gestion Férique and Montrusco
Bolton Investments Inc.

AND     **DAVIES HOWE PARTNERS LLP**
TO:     5th Floor, 99 Spadina Avenue
      Toronto, Ontario  M5V 3P8

      David Cherepacha
      Tel:  416.977.7088
      Fax:  416.977.8931
      Email: davidc@davieshowe.com

      Lawyers for Certain Underwriters at Lloyds
      of London, being Sagicor Syndicate 1206 at
      Lloyds and Barbican Financial &
      Professional Lines Consortium Syndicate
      9562 at Lloyds

# TABLE OF CONTENTS

| TAB | DESCRIPTION | Page No. |
|---|---|---|
| 1. | Affidavit of Heather Palmer, sworn July 21, 2014 | 1 |
| | **Exhibit "A"** – Ontario Securities Commission Settlement Agreement between Staff and David Horsley dated July 21, 2014 | 3 |
| | **Exhibit "B"** – Order approving the Ontario Securities Commission Settlement Agreement between Staff and David Horsley dated July 21, 2014 | 30 |

Court File No. CV-12-9667-00-CL

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

IN THE MATTER OF THE *COMPANIES' CREDITORS
ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE AND
ARRANGEMENT OF SINO-FOREST CORPORATION

Court File No.: CV-11-431153-00CP

*ONTARIO*
SUPERIOR COURT OF JUSTICE

B E T W E E N :

THE TRUSTEES OF THE LABOURERS' PENSION FUND OF CENTRAL AND
EASTERN CANADA, THE TRUSTEES OF THE INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 793 PENSION PLAN FOR OPERATING
ENGINEERS IN ONTARIO, SJUNDE AP-FONDEN, DAVID GRANT
and ROBERT WONG

Plaintiffs

- and -

SINO-FOREST CORPORATION, ERNST & YOUNG LLP, BDO LIMITED (formerly
known as BDO MCCABE LO LIMITED), ALLEN T.Y. CHAN, W. JUDSON MARTIN,
KAI KIT POON,  DAVID J. HORSLEY, WILLIAM E. ARDELL, JAMES P. BOWLAND,
JAMES M.E. HYDE,  EDMUND MAK, SIMON MURRAY, PETER WANG, GARRY J.
WEST,  PÖYRY (BEIJING) CONSULTING COMPANY LIMITED, CREDIT SUISSE
SECURITIES (CANADA), INC., TD SECURITIES INC., DUNDEE SECURITIES
CORPORATION, RBC DOMINION SECURITIES INC., SCOTIA CAPITAL INC.,
CIBC WORLD MARKETS INC., MERRILL LYNCH CANADA INC.,  CANACCORD
FINANCIAL LTD., MAISON PLACEMENTS CANADA INC. CREDIT SUISSE
SECURITIES (USA) LLC, and MERRILL LYNCH, PIERCE, FENNER & SMITH
INCORPORATED (successor by merger to
Banc of America Securities LLC)

Defendants

Proceeding under the *Class Proceedings Act, 1992*

**AFFIDAVIT OF HEATHER PALMER**

**I, HEATHER PALMER**, of the City of Toronto, in the Province of Ontario AFFIRM:

1.      I am an assistant at Koskie Minsky LLP, who, along with Siskinds LLP (together, "Class Counsel"), are counsel to the plaintiffs in the above-captioned class proceeding (the "Class Plaintiffs"). I have knowledge of the matters deposed to below.

2.      Attached hereto as Exhibit "A" is a copy of the  OSC Settlement Agreement Between Staff and David J. Horsley.

3.      Attached hereto as Exhibit "B" the order approving the OSC Settlement Agreement between Staff and David J. Horsley.

4.      I make this affidavit in support of the motion for settlement and fee approval and for no other or improper purpose.

SWORN BEFORE ME at the City of
Toronto in the Province of Ontario, on
July 21, 2014.

_____
Commissioner for Taking Affidavits
Jody Brown

_____
HEATHER PALMER

*THIS IS EXHIBIT "A" REFERRED TO IN THE*
*AFFIDAVIT OF HEATHER PALMER*
*SWORN BEFORE ME, THIS 21ST  DAY OF JULY, 2014*

*A COMMISSIONER FOR TAKING AFFIDAVITS, ETC.*



Ontario
Securities
Commission

Commission des
valeurs mobilières
de l'Ontario

22nd Floor
20 Queen Street West
Toronto ON M5H 3S8

22e étage
20, rue queenouest
Toronto ON M5H 3S8

## IN THE MATTER OF THE *SECURITIES ACT*,
## R.S.O. 1990, c. S.5, AS AMENDED

### - AND -

## IN THE MATTER OF
## SINO-FOREST CORPORATION, ALLEN CHAN, ALBERT IP, ALFRED
## C.T. HUNG, GEORGE HO, SIMON YEUNG and DAVID HORSLEY

## SETTLEMENT AGREEMENT
## BETWEEN STAFF AND DAVID HORSLEY

### PART I - INTRODUCTION[1]

1.      By Notice of Hearing dated May 22, 2012 (the "Notice of Hearing"), the Ontario Securities Commission (the "Commission") announced that it proposed to hold a hearing, commencing on July 12, 2012, pursuant to sections 127, and 127.1 of the *Securities Act*, R.S.O. 1990, c. S. 5, as amended (the "Act"), to consider whether it is in the public interest to make orders, as specified therein, against Sino-Forest Corporation ("Sino-Forest"), Allen Chan ("Chan"), Albert Ip ("Ip"), Alfred Hung ("Hung"), George Ho ("Ho"), Simon Yeung ("Yeung") and David Horsley ("Horsley") (collectively the "Respondents"). Chan, Ip, Hung, Ho and Yeung are referred to collectively as "Overseas Management". The Notice of Hearing was issued in connection with the allegations as set out in the Statement of Allegations of Staff of the Commission ("Staff") dated May 22, 2012 (the "Statement of Allegations").

2.      The Commission will issue a further Notice of Hearing to announce that it will hold a hearing to consider whether, pursuant to sections 127 and 127.1 of the Act, it is in the public interest for the Commission to approve this Settlement Agreement and to make certain orders in respect of Horsley.

---

[1] Staff and Horsley agree that any references to sections of the Act, the Rules or Regulations contained in this Settlement Agreement and any Orders issued by the Commission in relation to this Settlement Agreement are consistent with the Act, Rules or Regulations as they existed at the filing of the Notice of Hearing dated May 22, 2012 and that any terms not defined herein are used as defined in the Statement of Allegations dated May 22, 2012.

2

## PART II – JOINT SETTLEMENT RECOMMENDATION

3.      Staff agree to recommend settlement of the proceeding initiated by the Notice of Hearing against Horsley (the "Proceeding") in accordance with the terms and conditions set out below. Horsley consents to the making of an order in the form attached as Schedule "A", based on the facts set out below.

## PART III – AGREED FACTS

**A.      Sino-Forest**

4.      Sino-Forest[2] was a reporting issuer in the province of Ontario as that term is defined in subsection 1(1) of the Act. Between June 30, 2006 and January 11, 2012 (the "Material Time"), the common shares of Sino-Forest were listed on the Toronto Stock Exchange ("TSX").

5.      Sino-Forest was created under the *Canada Business Corporations Act*, R.S.C., 1985, c. C-44, as amended (the "CBCA") and its registered head office was located in Mississauga, Ontario. Sino-Forest purportedly engaged primarily in the purchase and sale of Standing Timber in the People's Republic of China (the "PRC"), and its principal executive office was located in Hong Kong.

6.      From February of 2003 until October of 2010, Sino-Forest raised approximately $3.0 billion (USD)[3] in cash from the issuance of equity and debt securities to investors (the "Investors").

7.      From June 30, 2006 to March 31, 2011, Sino-Forest's share price grew from $5.75 (CAD) to $25.30 (CAD), an increase of 340%. By March 31, 2011 Sino-Forest's market capitalization was well over $6 billion (CAD).

---

[2] "Sino-Forest" or the "Company" includes all of Sino-Forest's subsidiaries and companies that it controlled as set out in its public disclosure record and as the context of the Statement of Allegations and this Settlement Agreement require.
[3] Unless otherwise stated, all amounts presented in this Settlement Agreement are in United States Dollars.

3

8.    In early June of 2011, the share price of Sino-Forest plummeted after a private analyst made allegations of fraud against Sino-Forest in a report released on June 2, 2011 (the "Muddy Waters Report").

9.    On June 2, 2011, the board of Sino-Forest (the "Board") appointed a committee of independent directors (the "Independent Committee") to review and examine the allegations in the Muddy Waters Report and report back to the Board of Sino-Forest.

10.    On August 26, 2011, the Commission issued a temporary order that all trading in securities of Sino-Forest cease.

11.    On November 15, 2011, Sino-Forest announced that it was deferring the release of its interim financial report for the third quarter of 2011.[4] Sino-Forest has never filed this interim financial report with the Commission.

12.    On January 10, 2012, Sino-Forest issued a news release cautioning that its historic financial statements and related audit reports should not be relied upon.

13.    On January 31, 2012, after delivering two interim reports, the Independent Committee delivered its final report to the Board.  The Independent Committee could not resolve issues in three identified "core areas" of concern: (i) timber asset verification; (ii) timber asset value; and (iii) revenue recognition.

14.    Sino-Forest was required to file its 2011 audited annual financial statements with the Commission by March 30, 2012.    That very day, Sino-Forest initiated proceedings in the Superior Court of Justice (Ontario) requesting protection from its creditors under the *Companies' Creditors Arrangement Act*, R.S.C., 1985, c. C-36, as amended (the "CCAA").  Sino-Forest has never filed its 2011 audited annual financial statements with the Commission.

15.    On April 4, 2012, the auditors of Sino-Forest resigned.

16.    On May 9, 2012, the TSX delisted the shares of Sino-Forest.

---

[4] The financial year end of Sino-Forest is December 31.

4

17.    On May 22, 2012, Staff filed the Statement of Allegations against the Respondents and issued the Notice of Hearing.

18.    On January 30, 2013, Sino-Forest announced that it had implemented a plan of compromise and reorganization under the CCAA and the CBCA. As a result of this plan, Sino-Forest ceased to be a reporting issuer in every applicable jurisdiction.

19.    On March 4, 2013, all of the outstanding shares of Sino-Forest were cancelled.

**B.    David Horsley - Chief Financial Officer of Sino-Forest During the Material Time**

20.    Horsley received his Bachelor of Arts degree from the University of Toronto. He became a member of the Institute of Chartered Accountants of Ontario[5] and the Institute of Chartered Business Valuators. Horsley also has a corporate finance specialist designation and a chartered director designation.

21.    Horsley's association with Sino-Forest started on September 14, 2004 when he was appointed as an independent director on the Board and soon after became a member of Sino-Forest's audit committee. Horsley was then appointed as Senior Vice-President and Chief Financial Officer ("CFO") of Sino-Forest effective October 10, 2005 and resigned from the Board of Directors on or about that date. Throughout the Material Time, Horsley was the CFO of Sino-Forest.

22.    On April 5, 2012, Horsley received an Enforcement Notice from Staff related to the matters set out herein. He resigned his position as CFO of Sino-Forest on April 17, 2012.

23.    Horsley was responsible for the oversight of all financial aspects of the affairs of Sino-Forest and had the ultimate responsibility for the integrity of Sino-Forest's financial reporting.

---

[5] Now known as the Chartered Professional Accountants of Ontario.

5

24.    During the Material Time, Horsley, as CFO of Sino-Forest, was required to do the following to comply with National Instrument 52-109 ("NI 52-109"):

(i)    certify that he had reviewed Sino-Forest's annual and interim filings, and that based on his review, having exercised reasonable diligence, the annual and interim filings presented fairly in all material respects the financial condition, financial performance and cash flows of Sino-Forest as at and for the period presented and that they did not include misrepresentations;

(ii)    be responsible for establishing and maintaining disclosure controls and procedures ("DC&P") and internal control over financial reporting ("ICFR") for Sino-Forest;

(iii)    certify that he supervised the design of DC&P, to provide reasonable assurance that material information relating to Sino-Forest was made known to him and that information that was required to be disclosed by Sino-Forest under Ontario securities laws was recorded, processed, summarized and reported on a timely basis;

(iv)    certify that he supervised the design of ICFR to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with Canadian Generally Accepted Accounting Principles;

(v)    certify that Sino-Forest disclosed in its annual Management Discussion and Analysis ("MD&A") a description of all material weaknesses in the design of its ICFR, the impact of any material weaknesses on Sino-Forest's financial reporting and plans for remediation; and

(vi)    certify that he supervised the evaluation of the effectiveness of Sino-Forest's DC&P and ICFR and that Sino-Forest disclosed his

6

conclusions about the effectiveness of Sino-Forest's DC&P and ICFR
in its annual MD&A.

25.    In the event of material weaknesses in Sino-Forest's ICFR, Horsley had the responsibility
to ensure that these material weaknesses were properly disclosed to the investing public.

26.    To fulfil these and other critical roles as CFO of Sino-Forest, Horsley agrees that he
needed to have the requisite first-hand knowledge of the business and operating environment of
Sino-Forest. Accordingly, Horsley agrees that he needed to know how Sino-Forest came to own
its assets and generate revenue. Such knowledge was crucial to enable Horsley to identify any
material risks, disclose these risks to the investing public and ultimately eliminate or mitigate
these risks to the best of his ability.

27.    Horsley agrees that he was also required to have sufficient knowledge of Sino-Forest's
key suppliers ("Suppliers") and customers, referred to as Authorized Intermediaries ("AIs") in
the BVI Model (as defined below), to ensure the legitimacy of transactions between Sino-Forest
and these companies which were located in the PRC. This knowledge was required to ensure that
material transactions were arm's length and had true economic substance or, if any material
transactions were not arm's length, that these facts were properly disclosed to the investing
public.

28.    The need for Horsley, as CFO of Sino-Forest, to have first-hand knowledge of Sino-
Forest's business was heightened by the fact that the vast majority of its operations were in the
PRC and most if not all of its key purchase and sales contracts were written in Chinese. Horsley
had no prior experience as an officer, director or employee of a forestry company nor did he have
any prior experience conducting business in the PRC. He did not speak or read any Chinese
dialects. He did not reside in the PRC or Hong Kong but spent on average two weeks per quarter
at Sino-Forest's offices in Hong Kong.

29.    Horsley admits that, as CFO of Sino-Forest, he did not have the requisite first-hand
knowledge of the business of Sino-Forest or its operating environment. He also placed undue
reliance on the representations made to him by members of Overseas Management.

7

30.    Horsley's failure to acquire this knowledge resulted in his breaches of the Act set out herein and was contrary to the public interest. He also failed to be duly diligent in the performance of his duties and responsibilities as CFO of Sino-Forest.

## C.    Standing Timber – The Primary Business of Sino-Forest

31.    In its Annual Information Form for 2010, Sino-Forest stated that its operations were comprised of two core business segments which it titled "Wood Fibre Operations" and "Manufacturing and Other Operations". Wood Fibre Operations had two subcomponents entitled "Plantation Fibre" and "Trading of Wood Logs".

32.    According to Sino-Forest's public disclosure (the "Sino-Forest Disclosure"), the Plantation Fibre subcomponent of its business was derived from the acquisition, cultivation and sale of either "standing timber" or "logs" in the PRC. For the purpose of this Settlement Agreement, the Plantation Fibre subcomponent of Sino-Forest's business will be referred to as "Standing Timber" as, according to the Sino-Forest Disclosure, most, if not all, of the revenue from the sale of Plantation Fibre was derived from the sale of these assets.

33.    From 2007 to 2010, Sino-Forest reported Standing Timber revenue totaling approximately $3.56 billion, representing about 75% of its total revenue of $4.77 billion. The following table provides a summary of Sino-Forest's stated revenue for the period from 2007 to 2010 and illustrates the importance of the revenue derived from the sale of Standing Timber:

|  | *$ (millions)* | | | | |
|  | **2007** | **2008** | **2009** | **2010** | **Total** |
| Plantation Fibre (defined as Standing Timber herein) | 521.5 | 685.4 | 954.2 | 1,401.2 | 3,562.3 |
| Trading of Wood Logs | 154.0 | 153.5 | 237.9 | 454.0 | 999.4 |
| *Wood Fibre Operations* | *675.5* | *838.9* | *1,192.1* | *1,855.2* | *4,561.7* |
| *Manufacturing and Other Operations* | *38.4* | *57.1* | *46.1* | *68.3* | *209.9* |
| **Total Revenue** | **713.9** | **896.0** | **1,238.2** | **1,923.5** | **4,771.6** |

8

### D.     The BVI and WFOE Models – Standing Timber Holdings and Revenue

34.     Standing Timber was purchased, held and sold by Sino-Forest in two distinct legal structures or models: the "BVI Model" and the "WFOE Model".

35.     According to the Sino-Forest Disclosure, in the BVI Model, Sino-Forest's purchases and sales of Standing Timber in the PRC were conducted using wholly owned subsidiaries of Sino-Forest incorporated in the British Virgin Islands (the "BVI Subs").  The BVI Subs entered into written purchase contracts ("Purchase Contracts") with Suppliers and then entered into written sales contracts ("Sales Contracts") with AIs.

36.     According to the Sino-Forest Disclosure, in the WFOE Model, Sino-Forest used subsidiaries incorporated in the PRC called Wholly Foreign Owned Enterprises ("WFOEs") to acquire, cultivate and sell the Standing Timber.  The Sino-Forest WFOEs also entered into Purchase Contracts and Sales Contracts with other parties in the PRC.

37.     According to the Sino-Forest Disclosure, at December 31, 2010, Sino-Forest reported total timber holdings of $3.1 billion comprising 799,700 hectares. About $2.5 billion, or approximately 80% of the total timber holdings (by value), was held in the BVI Model, comprising approximately 467,000 hectares of Standing Timber. The WFOE Model held approximately 97,000 hectares of Standing Timber valued at $295.6 million or approximately 10% of the total timber holdings (by value).  The timber holdings in the BVI Model and the WFOE Model comprised approximately 90% of the total timber holdings (by value) of Sino-Forest as at December 31, 2010.

38.     According to the Sino-Forest Disclosure, the cash flow associated with the purchase and sale of Standing Timber executed in the BVI Model took place pursuant to a payables/receivables offsetting arrangement (the "Offsetting Arrangement"), whereby the BVI Subs would not directly receive the proceeds on the sale of Standing Timber from the purchasing AI. Rather, Sino-Forest disclosed that it would direct the AI that purchased the Standing Timber to pay the sales proceeds to other Suppliers in order to buy additional Standing Timber.  Sino-Forest did not make payment directly to Suppliers for purchases of Standing Timber.

9

39.    Sino-Forest did not possess the bank records to confirm that the cash flow in the Offsetting Arrangement in the BVI Model actually took place. This lack of transparency within the BVI Model meant independent confirmation of these reported cash flows was reliant on the good faith and independence of Suppliers and AIs.

40.    In the WFOE Model, the cash flow associated with the purchases and sales of Standing Timber could be traced in the bank accounts of Sino-Forest's WFOE companies.

41.    Sino-Forest dealt with relatively few Suppliers and AIs in the BVI Model in any particular year. For example, in 2010, six Suppliers accounted for 100% of the Standing Timber purchased in the BVI Model and five AIs accounted for 100% of Sino-Forest's revenue generated in the BVI Model.

42.    From 2007 to 2010, revenue from the BVI Model totaled $3.35 billion, representing 94% of Sino-Forest's reported Standing Timber revenue and 70% of Sino-Forest's total revenue. The importance of the revenue from the BVI Model is demonstrated in the following table:

|  | *$ (millions)* | | | | |
|  | __2007__ | __2008__ | __2009__ | __2010__ | __Total__ |
| BVI Model Revenue | 501.4 | 644.9 | 882.1 | 1,326.0 | 3,354.4 |
| WFOE Model Revenue | 20.1 | 40.5 | 72.1 | 75.2 | 207.9 |
| **Standing Timber Revenue** | **521.5** | **685.4** | **954.2** | **1,401.2** | **3,562.3** |
| **Total Revenue** | **713.9** | **896.0** | **1,238.2** | **1,923.5** | **4,771.6** |
| BVI Model as % of Total Revenue | 70% | 72% | 71% | 69% | 70% |

43.    The Sino-Forest Disclosure did not adequately describe the relative importance of the BVI Model and the WFOE Model nor did it reveal the material difference in cash flow between the BVI Model and the WFOE Model.

44.    Horsley was aware that the assets and revenue in the BVI Model were more significant than the assets and revenue of the WFOE Model and that the inherent financial risk profiles in each model were materially different. Horsley now acknowledges that this important difference in risk profiles was not fully disclosed to the public prior to the release of the Muddy Waters Report contrary to Ontario securities law.

10

### E.    Major Suppliers and AIs within the BVI Network

45.    Almost all of the buying and selling of Standing Timber in the BVI Model was generated through transactions between BVI Subs and a small number of Suppliers and AIs in any particular year.

46.    For the purpose of this Settlement Agreement, the BVI Subs, Suppliers, AIs, and any alleged "nominee" and "peripheral" companies involved in the buying and selling of Standing Timber in the BVI Model are collectively referred to as the "BVI Network".

47.    The control and influence that Sino-Forest exerted over certain Suppliers, AIs and peripheral companies within the BVI Network brought the *bona fides* of numerous contracts entered into in the BVI Model into question and thereby placed the pecuniary interests of the Investors at risk.

48.    Horsley's position is that he did not have knowledge of improper influence by Sino-Forest over purportedly external companies in the BVI Network.

49.    Horsley admits that he had inadequate first-hand knowledge about the operations, legitimacy and substance of the major Suppliers or AIs of Sino-Forest during the Material Time other than as conveyed to him by Overseas Management.

50.    For example, from 2007 to 2010, Huaihua City Yuda Wood Ltd. ("Yuda Wood") was purportedly Sino-Forest's largest Supplier, accounting for 18% of all purchases in the BVI Model.  Sino-Forest claimed to have paid Yuda Wood approximately $650 million during that time.   Prior to the release of the Muddy Waters Report and the creation of the Independent Committee, Horsley knew little about Yuda Wood or how it operated.

51.    Similarly, in 2008, Dongkou Shuanglian Wood Company Limited ("Dongkou") was Sino-Forest's most significant AI, purportedly purchasing approximately $125 million in Standing Timber from Sino-Forest, constituting about 18% of Sino-Forest's Standing Timber revenue for that year.  Prior to the release of the Muddy Waters Report and the creation of the Independent Committee, Horsley knew little about Dongkou or how it operated.

11

52.    Horsley admits that his first-hand knowledge about the major Suppliers and AIs of Sino-Forest, such as Yuda Wood and Dongkou, fell below what was expected of him as CFO of Sino-Forest.

53.    Horsley's lack of first-hand knowledge about the Suppliers and AIs was contrary to the public interest.

**F.    The Creation of Purchase Contracts in the BVI Model**

54.    As set out in paragraph 37, approximately 80% (by value) of Sino-Forest's timber holdings were held in the BVI Model as of December 31, 2010.

55.    As CFO of Sino-Forest, Horsley knew that he was required to ensure the proper design of ICFR, including ICFR over the recording and recognition of Sino-Forest's purchase of Standing Timber.    Horsley was aware that ineffective ICFR could put the integrity of Sino-Forest's financial reporting at risk including a risk of fraud.

56.    Sino-Forest used the Purchase Contracts to acquire and evidence ownership of Standing Timber in the BVI Model. The Purchase Contracts purported to include a number of attachments including Certificates or other documents purporting to certify evidence of Standing Timber ownership, Farmers' Authorization Letters (the "Farmers' Authorizations") and Timber Survey Reports (the "Survey Reports").

57.    Horsley now accepts that during the Material Time, but without his knowledge, employees of Sino-Forest employed an improper and misleading quarterly documentation process in the BVI Model whereby the Purchase Contacts were not drafted and executed until the quarter <u>after</u> the purported purchases were recorded in the Sino-Forest Disclosure.

58.    Horsley now accepts that, like the Purchase Contracts and without his knowledge, the Confirmations[6] were also created by Sino-Forest and improperly dated to the <u>previous</u> quarter. This was misleading. These Confirmations were created contemporaneously with the creation of the corresponding Purchase Contracts.

---

[6] As discussed at paragraph 74 of the Statement of Allegations.

12

59.    Horsley now accepts that the Purchase Contracts referred to Farmers' Authorizations. However, no Farmers' Authorizations were attached to the Purchase Contracts available to Horsley.    The Farmers' Authorizations are significant because they provide evidence that important contractual rights to the Standing Timber were properly transferred from farmers and, ultimately, to Sino-Forest through Suppliers.

60.    Additionally, Horsley accepts that the Survey Reports, which purported to identify the general location of the purchased timber, were all or almost all prepared by a single firm during the Material Time.

61.    Without Horsley's knowledge, a 10% shareholder of this survey firm was also an employee of Sino-Forest.    Drafts of certain Survey Reports purportedly prepared by this "independent" survey company were located on the computer of another employee of Sino-Forest.

62.    Like the Purchase Contracts and Confirmations, these drafts of the Survey Reports were improperly dated to the quarter prior to their creation.    This too was misleading but was done without Horsley's knowledge.

63.    Sino-Forest relied on the validity of the Purchase Contracts and the Confirmations as proof of ownership of the Standing Timber it held in the BVI Model.

64.    Horsley now acknowledges that the Purchase Contracts and available attachments, including Confirmations, did not constitute sufficient proof of ownership of the Standing Timber for public disclosure or financial reporting purposes.  Neither the Purchase Contracts nor the Survey Reports adequately identified the precise location of the Standing Timber being purchased such that the existence of this Standing Timber could not be properly verified and valued independently

65.    Prior to June of 2011, Horsley never reviewed a translation of a Purchase Contract or Sales Contract or any of their attachments including the Confirmations.  Therefore, he was not aware whether any specific rights, such as harvesting rights, were recognized or not in the Confirmations.

13

66.    Horsley was not aware of Sino-Forest's practice of backdating the Purchase Contracts in the BVI Model as set out in paragraph 57 and following above.

67.    Horsley now agrees that, as CFO of Sino-Forest, he should have known about all procedures leading to the creation and execution of the Purchase Contracts in the BVI Model as well as the origin and significance of each of the attachments to these contracts.

68.    Horsley now agrees that he should have assured himself that effective ICFR was implemented to ensure that assets were properly recognized in the Sino-Forest Disclosure.

69.    Horsley now agrees that, as CFO of Sino-Forest, he did not have the requisite first-hand knowledge of the business and operating environment of Sino-Forest required to ensure that Sino-Forest acquired and maintained the requisite proof of ownership for its Standing Timber assets held in the BVI Model.

70.    Horsley's failure to exercise the skill, care and diligence required of him as CFO of Sino-Forest permitted Sino-Forest to make materially misleading disclosure contrary to section 122(1)(b). Accordingly, his conduct was contrary to section 122(3) of the Act.

71.    This conduct was also contrary to the public interest.

**G.    The Creation of Sales Contracts in the BVI Model and Incorrect Revenue Recognition**

72.    Like the Purchase Contracts, all of the Sales Contracts entered into by the BVI Subs in the BVI Model were not actually created and executed until the quarter _after_ the date of the alleged transaction.

73.    Accordingly, the revenue from the Sales Contracts in the BVI Model was recognized in the quarter prior to the creation of the Sales Contracts. Therefore, the Sino-Forest Disclosure regarding the Company's revenue from Standing Timber was materially misleading. During the Material Time, in its correspondence to Staff, Horsley provided incorrect or untrue information to the Commission about Sino-Forest's revenue recognition practice.

14

74.    Horsley was not aware of Sino-Forest's practice of backdating Sales Contracts as described in paragraph 72 above.

75.    On May 13, 2008, Staff of the Corporate Finance Branch of the Commission addressed a letter (the "May 13 Letter") to Horsley, as CFO of Sino-Forest, requesting confirmation that "the significant risks and rewards of ownership of standing timber are transferred to the customer at the time the contract is signed." The May 13 Letter was prompted by a Sino-Forest accounting policy note for revenue recognition which indicated that Standing Timber revenue was recognized when the contract was entered into.

76.    In his capacity of CFO, Horsley responded to the May 13 Letter through his own letter dated June 13, 2008, (the "June 13 Letter"). In the June 13 Letter, Horsley clearly stated that revenue for "standing timber" was recognized on the date when the relevant "sales agreement" was "signed" or "executed".

77.    The June 13 Letter states that "[t]he Corporation recognizes revenue at this date because the following criteria have been met: (a) pervasive evidence of an arrangement exists; (b) delivery has occurred, (c) the Corporation's price is fixed and determinable; and (d) collection is reasonably assured."

78.    Horsley now agrees that the June 13 Letter he signed is materially incorrect as it applies to Sino-Forest's revenue recognition.   Horsley is now aware that most, if not all, of the Sales Contracts in the BVI Model executed during the Material Time were backdated as set out above and therefore revenue was not recognized in the manner described in the June 13 Letter.

79.    Horsley now agrees that, as CFO of Sino-Forest, he should have known about all procedures leading to the creation and execution of the Sales Contracts in the BVI Model as well as the significance of each of the attachments to these contracts. He should have assured himself that effective ICFR was implemented to ensure that revenue was properly recognized in the Sino-Forest Disclosure in accordance with Ontario securities law.

80.    The June 13 Letter signed by Horsley and provided to Corporate Finance Staff contained incorrect or untrue information contrary to section 122(1)(a) of the Act.

15

81.   This conduct was also contrary to the public interest.

**H.   Undisclosed ICFR Material Weaknesses/Failures in the BVI Model**

82.   In its MD&A for 2010 dated March 15, 2011, Sino-Forest stated the following on page 27 regarding its "Disclosure Control and Procedures and Internal Controls Over Financial Reporting":

> The success of the Company's vision and strategy of acquiring and selling forestry plantations and access to a long-term supply of wood fibre in the PRC is dependent on senior management. **As such, senior management plays a significant role in maintaining customer relationships, negotiating and finalizing the purchase and sale of plantation fibre contracts and the settlement of accounts receivable and accounts payable associated with plantation fibre contracts.** This concentration of authority, or lack of segregation of duties, creates risk in terms of measurement and completeness of transactions as well as the possibility of non-compliance with existing controls, either of which may lead to the possibility of inaccurate financial reporting. By taking additional steps in 2011 to address this deficiency, management will continue to monitor and work on mitigating this weakness. **[emphasis added]**

83.   Sino-Forest made similar disclosure in its annual MD&A from 2006 to 2009 regarding this concentration of authority or lack of segregation and the risk resulting from these materials weaknesses. These weaknesses were not remedied by Sino-Forest, Overseas Management or Horsley during the Material Time.

84.   In addition, Sino-Forest failed to disclose the extent of the concentration of authority or lack of segregation of duties in Overseas Management. Specifically, Horsley acknowledges that Sino-Forest did not fully disclose the concentration of control that members of Overseas Management had (i) over the operation of the BVI Model including the creation and execution of the Purchase Contracts and Sales Contracts and (ii) over the documentation of the cash flow in the BVI Model from the purchase and sale of Standing Timber. As set out above, the importance of the BVI Model was not adequately described in the Sino-Forest Disclosure. Accordingly, the fact that these material weaknesses were linked to the BVI Model was not disclosed. Horsley permitted the issuance of Sino-Forest's inadequate and materially misleading disclosure in this regard, which was contrary to Ontario securities law.

16

85.    It is Staff's allegation that the concentration of control in the hands of Overseas Management facilitated the fraudulent course of conduct perpetrated in the BVI Model as alleged by Staff in the Statement of Allegations. However, Staff has no reason to believe that Horsley was aware of, involved in, or a participant in any of the fraud that has been alleged against Sino-Forest or Overseas Management.

86.    Horsley now agrees that, as CFO of Sino-Forest, he ought to have applied additional diligence before accepting the representations of Chan and the other members of Overseas Management, particularly their representations regarding the mitigation of the identified material weaknesses. Horsley acknowledges that his failure to do so contributed to the risk of fraud.

87.    As set out above in paragraph 84, these key omissions made the Sino-Forest Disclosure materially misleading contrary to section 122(1)(b) of the Act. Accordingly, Horsley's conduct was contrary to section 122(3) of the Act.

88.    Accordingly, during the Material Time, Horsley failed to exercise the skill, care and diligence required of him as CFO of Sino-Forest when he certified the annual and interim filings of Sino-Forest. For the reasons set out above, Horsley admits that these filings were materially misleading. This conduct was contrary to NI 52-109.

89.    This conduct was also contrary to the public interest.

I.    **Deficiencies in Horsley's Knowledge Regarding Harvesting of Standing Timber**

90.    As CFO of Sino-Forest, Horsley should have had first-hand knowledge of how Sino-Forest would acquire, hold and ultimately sell its Standing Timber in the BVI Model and how Sino-Forest or any AI would harvest this Standing Timber.  He did not.

91.    Due to his lack of knowledge in this regard, Horsley could not have known whether the financial disclosure of Sino-Forest was accurate when it referred to the purported harvesting of Standing Timber and "logs". Horsley realizes now that little or no harvesting actually took place by Sino-Forest or its customers.

17

92.    Further, the Sino-Forest Disclosure states that parties (such as AIs) who purchased Standing Timber had contractually agreed that they had eighteen months to harvest this Standing Timber.  Horsley knew or should have known that Sino-Forest was not tracking whether AIs were actually harvesting the Standing Timber sold to them in the BVI Model and, if so, when these AIs were doing so.

93.    As set out in the Sino-Forest Disclosure and as discussed in the Sino-Forest quarterly earnings calls, this was an important contractual term of Sino-Forest because Sino-Forest could not exercise its right of first refusal to lease and replant the underlying land until the trees were harvested by customers such as the AIs.   Sino-Forest's stated plan to replant and thus create more Standing Timber assets on this underlying land was repeatedly presented to the investing public.

94.    Horsley's failure to make any inquiries in this regard contributed to the materially misleading disclosure being made by Sino-Forest that its standing timber and "logs" were being harvested.

95.    During the Material Time, Horsley's failure to exercise the skill, care and diligence required of him as CFO of Sino-Forest permitted Sino-Forest to make materially misleading disclosure contrary to section 122(3) of the Act.

96.    Accordingly, during the Material Time, Horsley failed to exercise the skill, care and diligence required of him as CFO of Sino-Forest when he certified the annual and interim filings of Sino-Forest. For the reasons set out above, Horsley admits that these filings were materially misleading. This conduct was contrary to NI 52-109.

97.    This conduct was also contrary to the public interest.

18

## PART IV – CONTRAVENTIONS OF ONTARIO SECURITIES LAW AND CONDUCT CONTRARY TO THE PUBLIC INTEREST

98.     By engaging in the conduct described above, Horsley admits and acknowledges that he contravened Ontario securities law during the Material Time in the following ways:

      (i)    as result of his inadequate knowledge, lack of due diligence and undue reliance on the representations of Overseas Management, Horsley permitted Sino-Forest to make materially misleading disclosure contrary to subsection 122(1)(b) of the Act and, accordingly, as CFO of Sino-Forest, his conduct was contrary to subsection 122(3) of the Act;

      (ii)    as CFO of Sino-Forest, Horsley provided incorrect or untrue information in the June 13 Letter to Corporate Finance Staff, and, accordingly, Horsley's actions were contrary to subsection 122(1)(a) of the Act; and

      (iii)    as CFO of Sino-Forest, Horsley's certification of the annual and interim filings of Sino-Forest was contrary to the requirements of NI 52-109.

99.     Horsley admits and acknowledges that he acted contrary to the public interest by contravening Ontario securities law as set out in paragraph 98.

## PART V –RESPONDENT'S POSITION

100.    Horsley requests that the settlement hearing panel consider the following mitigating circumstances.

101.    Horsley cooperated with Staff's investigation.

19

102.    In early 2011, Horsley recognized the need for Sino-Forest to have a CFO based in Hong Kong and that it would be beneficial to Sino-Forest and the investing public for the CFO to be better positioned to be more involved in Sino-Forest's operations and fluent in Chinese. As a result, in April 2011, before the Muddy Waters Report, Horsley tendered his resignation. The Board requested that Horsley withdraw his resignation, which he did.

103.    Horsley was not aware of, involved in, or a participant in any of the fraud that has been alleged against Sino-Forest or Overseas Management. Further, as noted in paragraphs 48, 61, 62, 66 and 74, Horsley was not aware of any improper relationships between Sino-Forest or its employees and purportedly external companies nor was he aware of the wholesale practice of backdating documents in the BVI Model.

104.    This Settlement Agreement will curtail Horsley's professional employment opportunities in the future.

105.    Concurrent with this Settlement Agreement, Horsley has sought Court approval of a settlement of the class action proceedings that have been commenced against him (and others) in connection with Sino-Forest (the "Class Action") and litigation commenced against him by the Sino-Forest Litigation Trust, which will result in a total of $5.6 million (CAD) being paid on behalf of Horsley to former security holders of Sino-Forest.

## PART VI - TERMS OF SETTLEMENT

106.    Horsley agrees to the terms of settlement listed below.

107.    Horsley undertakes to cooperate with the Commission and Staff in this matter and to appear and testify at the hearing in this matter if requested by Staff.

108.    The Commission will make an order, pursuant to sections 127(1) and section 127.1 of the Act, that:

      (a)    the Settlement Agreement is approved;

      (b)    pursuant to clause 6 of subsection 127(1) of the Act, Horsley is reprimanded;

20

   (c)      pursuant to clause 7 of subsection 127(1) of the Act, Horsley resign all positions he holds as a director or officer of an issuer;

   (d)      pursuant to clause 8 of subsection 127(1) of the Act, Horsley is permanently prohibited from becoming or acting as a director or officer of any reporting issuer;

   (e)      pursuant to clause 8.1 of subsection 127(1) of the Act, Horsley resign all positions he holds as a director or officer of a registrant;

   (f)      pursuant to clause 8.2 of subsection 127(1) of the Act, Horsley is permanently prohibited from becoming or acting as a director or officer of a registrant;

   (g)      pursuant to clause 8.4 of subsection 127(1) of the Act, Horsley is permanently prohibited from becoming or acting as a director or officer of an investment fund manager;

   (h)      pursuant to clause 8.5 of subsection 127(1) of the Act, Horsley is permanently prohibited from becoming or acting as a registrant, as an investment fund manager or as a promoter; and

   (i)      pursuant to section 127.1 of the Act, Horsley shall pay costs to the Commission in the amount of (CAD)$700,000, inclusive of interest and HST.

109.    Horsley undertakes to consent to a regulatory Order made by any provincial or territorial securities regulatory authority in Canada containing any or all of the sanctions set out in subparagraphs 108 (b) to (h) above.

## PART VII - STAFF COMMITMENT

110.    If this Settlement Agreement is approved by the Commission, Staff will not initiate any other proceeding under the Act against Horsley in relation to the facts set out in Part III herein, subject to the provisions of paragraph 111 below.

111.    If this Settlement Agreement is approved by the Commission, and at any subsequent time Horsley fails to honour the terms of the Settlement Agreement, Staff reserve the right to bring proceedings under Ontario securities law against Horsley based on, but not limited to, the facts set out in Part III herein as well as the breach of the Settlement Agreement.

## PART VIII - PROCEDURE FOR APPROVAL OF SETTLEMENT

112.    This Settlement Agreement is conditional on Court approval of the settlement of the Class Action including an order that the settlement is a Named Third Party Defendant Settlement for the purpose of section 11.2 of Sino-Forest's Plan of Compromise and Reorganization and that Horsley is released from all claims in accordance with section 11.2(c) of the Plan. In the event that the Court does not approve the settlement of the Class Action against Horsley, this Settlement Agreement shall be null and void, Staff will not rely on the terms of this Settlement Agreement for any purpose and Horsley will not be bound by any of the admissions herein.

113.    Approval of this Settlement Agreement will be sought at a hearing of the Commission scheduled on a date to be determined by the Secretary to the Commission, or such other date as may be agreed to by Staff and Horsley for the scheduling of the hearing to consider the Settlement Agreement.

114.    Staff and Horsley agree that this Settlement Agreement will constitute the entirety of the agreed facts to be submitted at the settlement hearing regarding Horsley's conduct in this matter, unless the parties agree that further facts should be submitted at the settlement hearing.

115.    If this Settlement Agreement is approved by the Commission, Horsley agrees to waive all rights to a full hearing, judicial review or appeal of this matter under the Act.

116.    If this Settlement Agreement is approved by the Commission, neither party will make any public statement that is inconsistent with this Settlement Agreement or inconsistent with any additional agreed facts submitted at the settlement hearing.

22

117.    Whether or not this Settlement Agreement is approved by the Commission, Horsley agrees that he will not, in any proceeding, refer to or rely upon this Settlement Agreement or the settlement negotiations as the basis of any attack on the Commission's jurisdiction, alleged bias or appearance of bias, alleged unfairness or any other remedies or challenges that may otherwise be available.

## PART IX – DISCLOSURE OF SETTLEMENT AGREEMENT

118.    If, for any reason whatsoever, this Settlement Agreement is not approved by the Commission or the order attached as Schedule "A" is not made by the Commission:

(a)    this Settlement Agreement and its terms, including all settlement negotiations between Staff and Horsley leading up to its presentation at the settlement hearing, shall be without prejudice to Staff and Horsley; and

(b)    Staff and Horsley shall be entitled to all available proceedings, remedies and challenges, including proceeding to a hearing on the merits of the allegations in the Notice of Hearing and Statement of Allegations of Staff, unaffected by the Settlement Agreement or the settlement discussions/negotiations.

119.    The terms of this Settlement Agreement will be treated as confidential by all parties hereto until approved by the Commission. Any obligations of confidentiality shall terminate upon approval of this Settlement Agreement by the Commission. The terms of the Settlement Agreement will be treated as confidential forever if the Settlement Agreement is not approved for any reason whatsoever by the Commission, except with the written consent of Horsley and Staff or as may be required by law.

23

## PART X - EXECUTION OF SETTLEMENT AGREEMENT

120.   This Settlement Agreement may be signed in one or more counterparts which together will constitute a binding agreement.

121.   A facsimile copy of any signature will be as effective as an original signature.

Signed in the presence of:

Witness   Simon BIEBER                         David Horsley

Dated this 26 day of June , 2014

STAFF OF THE ONTARIO SECURITIES COMMISSION

**Tom Atkinson**
Director, Enforcement Branch

Dated this 26 day of June , 2014

## SCHEDULE "A"



| | | | |
|---|---|---|---|
| Ontario | Commission des | 22nd Floor | 22e étage |
| Securities | valeurs mobilières | 20 Queen Street West | 20, rue queenouest |
| Commission | de l'Ontario | Toronto ON M5H 3S8 | Toronto ON M5H 3S8 |

Ontario

---

## IN THE MATTER OF THE *SECURITIES ACT*
## R.S.O. 1990, c.S.5, AS AMENDED

### - AND -

## IN THE MATTER OF
## SINO-FOREST CORPORATION, ALLEN CHAN, ALBERT IP,
## ALFRED C.T. HUNG, GEORGE HO, SIMON YEUNG and DAVID
## HORSLEY

### - AND -

## IN THE MATTER OF
## A SETTLEMENT AGREEMENT
## BETWEEN STAFF AND DAVID HORSLEY

## ORDER
### (Sections 127 and 127.1)

**WHEREAS** on                    , the Ontario Securities Commission (the "Commission") issued a Notice of Hearing pursuant to sections 127 and 127.1 of the *Securities Act*, R.S.O. 1990, c.S.5, as amended (the "Act") in respect of David Horsley ("Horsley");

**AND WHEREAS** Horsley entered into a Settlement Agreement with Staff of the Commission dated            , 2012 (the "Settlement Agreement") in which Horsley agreed to a proposed settlement of the proceeding commenced by the Notice of Hearing, subject to the approval of the Commission;

- 25 -

AND UPON reviewing the Settlement Agreement and upon hearing submissions from counsel for Horsley and from Staff of the Commission;

AND WHEREAS Horsley has undertaken to cooperate with the Commission and Staff in this matter and to appear and testify at the hearing in this matter if requested by Staff;

AND WHEREAS Horsley has also undertaken to consent to a regulatory Order made by any provincial or territorial securities regulatory authority in Canada containing any or all of the sanctions set out in (b) to (h) below;

AND WHEREAS the Commission is of the opinion that it is in the public interest to make this Order;

IT IS HEREBY ORDERED THAT:

(a)    the Settlement Agreement is approved;

(b)    pursuant to clause 6 of subsection 127(1) of the Act, Horsley is reprimanded;

(c)    pursuant to clause 7 of subsection 127(1) of the Act, Horsley resign all positions he holds as a director or officer of an issuer;

(d)    pursuant to clause 8 of subsection 127(1) of the Act, Horsley is permanently prohibited from becoming or acting as a director or officer of any reporting issuer;

(e)    pursuant to clause 8.1 of subsection 127(1) of the Act, Horsley resign all positions he holds as a director or officer of a registrant

(f)    pursuant to clause 8.2 of subsection 127(1) of the Act, Horsley is permanently prohibited from becoming or acting as a director or officer of a registrant;

- 26 -

(g)     pursuant to clause 8.4 of subsection 127(1) of the Act, Horsley is
permanently prohibited from becoming or acting as a director or officer
of an investment fund manager;

(h)     pursuant to clause 8.5 of subsection 127(1) of the Act, Horsley is
permanently prohibited from becoming or acting as a registrant, as an
investment fund manager or as a promoter;   and

(i)     pursuant to section 127.1 of the Act, Horsley shall pay costs to the
Commission in the amount of (CAD)$700,000, inclusive of interest and
HST.

**DATED AT TORONTO** this          day of          , 2014.

_____          _____

_____

30

*THIS IS EXHIBIT "B" REFERRED TO IN THE*
*AFFIDAVIT OF HEATHER PALMER*
*SWORN BEFORE ME, THIS 21ST DAY OF JULY, 2014*

*A COMMISSIONER FOR TAKING AFFIDAVITS, ETC.*



| Ontario | Commission des | 22nd Floor | 22e étage |
| Securities | valeurs mobilières | 20 Queen Street West | 20, rue queenouest |
| Commission | de l'Ontario | Toronto ON M5H 3S8 | Toronto ON M5H 3S8 |

**IN THE MATTER OF THE *SECURITIES ACT*,**
**R.S.O. 1990, c.S.5, AS AMENDED**

**- AND -**

**IN THE MATTER OF**
**SINO-FOREST CORPORATION, ALLEN CHAN, ALBERT IP,**
**ALFRED C.T. HUNG, GEORGE HO, SIMON YEUNG and DAVID**
**HORSLEY**

**- AND -**

**IN THE MATTER OF**
**A SETTLEMENT AGREEMENT**
**BETWEEN STAFF AND DAVID HORSLEY**

**ORDER**
**(Sections 127 and 127.1)**

**WHEREAS** on   May 22, 2012, the Ontario Securities Commission (the
"Commission") issued a Notice of Hearing pursuant to sections 127 and 127.1 of the
*Securities Act*, R.S.O. 1990, c.S.5, as amended (the "Act") in respect of David Horsley
("Horsley");

**AND WHEREAS** Horsley entered into a Settlement Agreement with Staff of the
Commission dated June 26, 2014 (the "Settlement Agreement") in which Horsley agreed
to a proposed settlement of the proceeding commenced by the Notice of Hearing, subject
to the approval of the Commission;

AND **UPON** reviewing the Settlement Agreement and upon hearing submissions from counsel for Horsley and from Staff of the Commission;

AND **WHEREAS** Horsley has undertaken to cooperate with the Commission and Staff in this matter and to appear and testify at the hearing of this matter if requested by Staff;

AND **WHEREAS** Horsley has also undertaken to consent to any regulatory order made by any provincial or territorial securities regulatory authority in Canada containing any or all of the sanctions set out in clauses (b) to (h) below;

AND **WHEREAS** this Order is made subject to the payment by Horsley of the amount of $5.6 million as contemplated by paragraph 105 of the Settlement Agreement;

AND **WHEREAS** the Commission is of the opinion that it is in the public interest to make this Order;

**IT IS HEREBY ORDERED THAT:**

(a)    the Settlement Agreement is approved;

(b)    pursuant to clause 6 of subsection 127(1) of the Act, Horsley is reprimanded;

(c)    pursuant to clause 7 of subsection 127(1) of the Act, Horsley resign all positions he holds as a director or officer of an issuer;

(d)    pursuant to clause 8 of subsection 127(1) of the Act, Horsley is permanently prohibited from becoming or acting as a director or officer of any reporting issuer;

(e)    pursuant to clause 8.1 of subsection 127(1) of the Act, Horsley resign all positions he holds as a director or officer of a registrant;

- 3 -

(f)    pursuant to clause 8.2 of subsection 127(1) of the Act, Horsley is permanently prohibited from becoming or acting as a director or officer of a registrant;

(g)    pursuant to clause 8.4 of subsection 127(1) of the Act, Horsley is permanently prohibited from becoming or acting as a director or officer of an investment fund manager;

(h)    pursuant to clause 8.5 of subsection 127(1) of the Act, Horsley is permanently prohibited from becoming or acting as a registrant, as an investment fund manager or as a promoter;   and

(i)    pursuant to section 127.1 of the Act, Horsley shall pay costs to the Commission in the amount of (CAD)$700,000, inclusive of interest and HST.

**DATED AT TORONTO** this 21st day of July, 2014.

*"James E. A. Turner"*
_____
James E. A. Turner

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c.C-36, AS AMENDED AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF SINO-FOREST CORPORATION

Court File No: CV-12-9667-00-CL

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(Commercial List)**

Proceedings Under the *Class Proceedings Act, 1992*

Proceeding commenced at **Toronto**

**AFFIDAVIT OF HEATHER PALMER**

**KOSKIE MINSKY LLP**
900-20 Queen Street West, Box 52
Toronto, ON M5H 3R3
**Kirk M. Baert (LSUC#: 309420)**
Tel: 416.595.2117/Fax: 416.204.2889
**Jonathan Ptak (LSUC#: 45773F)**
Tel: 416.595.2149/Fax: 416.204.2903

**SISKINDS LLP**
680 Waterloo Street
P.O. Box 2520
London, ON N6A 3V8
**A. Dimitri Lascaris (LSUC#: 50074A)**
Tel: 519.660.7844/Fax: 519.660.7845
**Charles M. Wright (LSUC#: 36599Q)**
Tel: 519.660.7753/Fax: 519.660.7754

**PALIARE ROLAND ROSENBERG ROTHSTEIN LLP**
155 Wellington Street, 35th Floor
Toronto, ON M5V 3H1
**Ken Rosenberg (LSUC #21102H)**
**Massimo Starnino (LSUC #41048G)**
Tel: 416-646-4300/Fax: 416-646-4301

Lawyers for the Ad Hoc Committee of Purchasers of the Applicant's Securities, including the Class Action Plaintiffs

Court File No: CV-11-431153-00CP

Court File No: CV-12-9667-00CL

The Trustees of the Labourer's Pension Fund of Central and Eastern Canada, et al.
Plaintiffs

and

Sino-Forest Corporation, et al.
Defendants

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED, AND IN THE MATTER OF A PLAN OF COMPRISE OR ARRANGEMENT OF SINO-FOREST CORPORATION

*ONTARIO*

SUPERIOR COURT OF JUSTICE

Proceedings Under the *Class Proceedings Act, 1992*

Proceeding commenced at Toronto

SUPPLEMENTARY MOTION RECORD
Fee Approval and Settlement Approval Motions,
Returnable July 24, 2014

KOSKIE MINSKY LLP
20 Queen Street West, Suite 900, Box 52
Toronto ON M5H 3R3
Kirk M. Baert (LSUC#: 30942O)
Tel: (416) 595-2117/Fax: (416) 204-2889
Jonathan Ptak (LSUC#: 45773F)
Tel: (416) 595-2149/Fax: (416) 204-2903

SISKINDS LLP
680 Waterloo Street, P.O. Box 2520
London ON N6A 3V8
Charles M. Wright (LSUC#: 36599Q)
Tel: (519) 660-7753/Fax: (519) 660-7754
A. Dimitri Lascaris (LSUC#: 50074A)
Tel: (519) 660-7844/Fax: (519) 660-7845

PALAIRE ROLAND ROSENBERG ROTHSTEIN LLP
155 Wellington Street West, Floor 35
Toronto ON M5V 3H1
Ken Rosenberg (LSUC#: 21102H)
Tel: (416) 646-4304/Fax: (416) 646-4301
Massimo Starnino (LSUC#: 41048G)
Tel: (416) 646-7431/Fax: (416) 646-4301

Lawyers for the Ad Hoc Committee of Purchasers of the Applicant's Securities, including the Representative Plaintiffs in the Ontario Class Action