**LOWENSTEIN SANDLER LLP**
Michael S. Etkin
Andrew Behlmann
1251 Avenue of the Americas
New York, New York  10020
(212) 262-6700  (Telephone)
(212) 262-7402  (Facsimile)

*United States Bankruptcy Counsel*
*for Class Action Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| SINO-FOREST CORPORATION, | Case No. 13-10361 (MG) |
| Debtor in a Foreign Proceeding | |

**NOTICE OF CLASS ACTION PLAINTIFFS' MOTION TO**
**RECOGNIZE AND ENFORCE ORDER OF ONTARIO SUPERIOR**
**COURT APPROVING DEALERS SETTLEMENT**

**PLEASE TAKE NOTICE** that the undersigned have filed the attached *Motion to Recognize and Enforce Order of Ontario Superior Court Approving Dealers Settlement* (the "Motion").

**PLEASE TAKE NOTICE** that a hearing on the Motion will be held before the Honorable Martin Glenn, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"), Alexander Hamilton Customs House, One Bowling Green, Room 501, New York, New York 10004, on **November 23, 2015 at 11:00 a.m. (Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE THAT** any objections or responses to the Motion must be made in accordance with the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules.  In addition, any such objection or

response must be made in writing, describing the basis therefor, and must be filed electronically

in accordance with General Order M-399 by registered users of the Bankruptcy Court's

electronic case filing system, and by all other parties in interest, on a 3.5 inch disc, preferably in

Portable Document Format (PDF), Word Perfect or any other Windows-based word processing

format, with a hard copy to the Chambers of the Honorable Martin Glenn, United States

Bankruptcy Judge, and served upon (i) Shearman & Sterling LLP, 599 Lexington Avenue, New

York, NY 10022, Attn: Jaculin Aaron, and (ii) Lowenstein Sandler LLP, 1251 Avenue of the

Americas, New York, NY 10020, Attn:  Michael S. Etkin and Andrew Behlmann, no later than

**Monday, November 16, 2015 at 5:00 p.m. (Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that if you do not timely file and serve a written

objection to the relief requested in the Motion, the Bankruptcy Court may deem any opposition

waived, treat the Motion as conceded, and enter an order granting the relief requested in the

Motion without further notice or hearing.


Dated:  November 6, 2015                     **LOWENSTEIN SANDLER LLP**

                                             */s/ Michael S. Etkin*
                                             _____
                                             Michael S. Etkin
                                             Andrew Behlmann
                                             1251 Avenue of the Americas
                                             New York, New York 10022
                                             metkin@lowenstein.com
                                             abehlmann@lowenstein.com

                                             *United States Bankruptcy Counsel*
                                             *for Class Action Plaintiffs*

**Hearing Date:  November 23, 2015 at 11:00 a.m. (Eastern Time)**
**Objection Deadline:  November 16, 2015 at 5:00 p.m. (Eastern Time)**

**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)
Michael S. Etkin
Andrew Behlmann

*United States Bankruptcy Counsel*
 *for Class Action Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| SINO-FOREST CORPORATION, | Case No. 13-10361 (MG) |
| Debtor in a Foreign Proceeding | |

**MOTION TO RECOGNIZE AND ENFORCE ORDER OF ONTARIO SUPERIOR COURT APPROVING DEALERS SETTLEMENT**

# TABLE OF CONTENTS

**Page**

Preliminary Statement ........................................................................................................ 2

Jurisdiction and Venue ...................................................................................................... 5

BACKGROUND ................................................................................................................ 5

    1.    CCAA Proceeding and Plan ..................................................................... 5

    2.    The Dealers Settlement ............................................................................ 8

RELIEF SOUGHT ........................................................................................................... 11

BASIS FOR RELIEF SOUGHT ..................................................................................... 11

ARGUMENT .................................................................................................................... 12

    A.    Recognition and enforcement of the Settlement Approval Order is warranted as "additional assistance" under Section 1507 of the Bankruptcy Code. .................................... 12

    B.    The Requested Relief Does Not Violate Section 1506 of the Bankruptcy Code. ................... 16

MEMORANDUM OF LAW ............................................................................................ 17

CONCLUSION ................................................................................................................. 17

NOTICE ............................................................................................................................ 17

# TABLE OF AUTHORITIES

Page(s)

CASES

*Ad Hoc Group of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*,
    701 F.3d 1031 (5th Cir. 2012), *cert. dismissed* 133 S.Ct 1862 (2013) ....................................12

*In re Atlas Shipping A/S*,
    404 B.R. 726 (Bankr. S.D.N.Y. 2009) ..............................................................................12, 13

*In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*,
    238 B.R. 25 (Bankr. S.D.N.Y. 1999), *aff'd*, 238 B.R. 699 (S.D.N.Y. 2002).
    Bankruptcy ........................................................................................................................13

*Collins v. Oilsands Quest Inc.*,
    484 B.R. 593 (S.D.N.Y. 2012) ........................................................................................12, 14

*In re Cozumel Caribe, S.A. de C.V.*,
    482 B.R. 96 (Bankr. S.D.N.Y. 2012) .....................................................................................13

*In re DBSD N. Am., Inc.*,
    419 B.R. 179 (Bankr. S.D.N.Y. 2009), *rev'd on other grounds,* 634 F.3d 79
    (2d Cir. 2011) ........................................................................................................................15

*In re Ephedra Prods. Liab. Litig.*,
    349 B.R. 333 (S.D.N.Y. 2006) ...............................................................................12, 14, 16

*In re Fairfield Sentry Ltd.*,
    484 B.R. 615 (Bankr. S.D.N.Y. 2013) ...................................................................................12

*Finanz AG Zurich v. Banco Economico S.A.*,
    192 F.3d 240 (2d Cir. 1999) ..................................................................................................13

*Hilton v. Guyot*,
    159 U.S. 113 (1895) ..............................................................................................................14

*J.P. Morgan Chase Bank v. Altos Hornos de Mexico, S.A.*,
    412 F.3d 418 (2d Cir. 2005) ..................................................................................................13

*In re Metcalfe & Mansfield Alternative Invs.*,
    421 B.R. 685 (Bankr. S.D.N.Y. 2010) ...............................................................4, 12, 14, 16

*In re Sino-Forest Corporation*,
    501 B.R. 655 (Bankr. S.D.N.Y. 2013) .......................................................................... passim

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*,
    825 F.2d 709 (2d Cir. 1987) ............................................................................................12, 13

## TABLE OF AUTHORITIES (cont'd)

**Pages**

**STATUTES**

11 U.S.C. § 105 ................................................................................................................... 1, 5, 11

11 U.S.C. § 1501 ........................................................................................................................... 17

11 U.S.C. § 1506 ........................................................................................................................... 16

11 U.S.C. § 1507 ........................................................................................... 1, 5, 11, 12, 14, 16

11 U.S.C. § 1521 ........................................................................................................................... 11

28 U.S.C. §§ 157 and 1334 ........................................................................................................... 5

28 U.S.C. § 157(b)(2)(P) ................................................................................................................ 5

28 U.S.C. §§ 1410(2) and (3) ........................................................................................................ 5

**RULES**

Local Bankruptcy Rule 9013-1 ..................................................................................................... 17

**OTHER AUTHORITIES**

H.R. REP. NO. 109-31(I), at 109 (2005), reprinted in 2005 U.S.C.C.A.N. 88 ........................... 16

Lead plaintiffs (the "Canadian Class Action Plaintiffs") in the class action proceedings pending in the Ontario Superior Court of Justice (the "Ontario Superior Court") under Court File No. CV-11-431153-00CP (the "Canadian Class Action") and lead plaintiffs (the "U.S. Class Action Plaintiffs" and together with the Canadian Class Action Plaintiffs, the "Class Action Plaintiffs") in the class action proceeding pending in the United States District Court for the Southern District of New York styled as *David Leapard, et al. v. Allen T.Y. Chan*, *et al.,* Case No. 1:12-cv-01726 (AT) (the "U.S. Class Action" and together with the Canadian Class Action, the "Class Actions") hereby submit this motion (the "Motion")[1] seeking the entry of an order (the "Settlement Recognition Order") pursuant to sections 105 and 1507 of title 11 of the United States Code (the "Bankruptcy Code"), substantially in the form annexed hereto as **Exhibit 1**, recognizing and enforcing in the United States that certain Order (the "Settlement Approval Order")[2] of the Ontario Superior Court dated October 30, 2015, approving the following two related settlements in the proceeding of Sino-Forest Corporation ("SFC") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "CCAA"), pending in the Ontario Superior Court under Court File No. CV-12-9667-00CL (the "CCAA Proceeding"):

> (a)    the settlement (the "Dealers Settlement") between (i) the Class Action Plaintiffs and (ii) Credit Suisse Securities (Canada) Inc., TD Securities Inc., Dundee Securities Corporation (now known as DWM Securities

---

[1]    The monitor in the CCAA Proceeding (as defined below) consented to approval of the Dealers Settlement by the Ontario Superior Court. The litigation trust (the "Litigation Trust") created pursuant to the Plan (as defined below) opposed approval of the Dealers Settlement in the Ontario Superior Court. As discussed below, the Litigation Trust's objection has been resolved and the Ontario Superior Court has approved the Dealers Settlement.

[2]    A copy of the Settlement Approval Order is annexed to the Etkin Decl. (as defined below) as **Exhibit A**.

Inc.), RBC Dominion Securities Inc., Scotia Capital Inc., CIBC World Markets Inc., Merrill Lynch Canada Inc., Canaccord Financial Ltd., Maison Placements Canada Inc., Credit Suisse Securities (USA) LLC and Merrill Lynch, Pierce, Fenner & Smith Incorporated (successor by merger to Banc of America Securities LLC) (collectively, the "Dealers"), on the terms set forth in the *Minutes of Settlement* annexed to the Etkin Decl. as **Exhibit B** (the "Dealers Settlement MOS"), and

(b)    the settlement (the "Litigation Trust Settlement" and collectively with the Dealers Settlement, the "Settlement") between the Dealers, the Class Action Plaintiffs, and the litigation trust (the "Litigation Trust") created pursuant to SFC's *Plan of Compromise and Reorganization* dated as of December 3, 2012 and approved by the Ontario Superior Court on December 10, 2012 (the "Plan"), on the terms set forth in the *Minutes of Settlement* annexed to the Etkin Decl. as **Exhibit C** (the "Litigation Trust Settlement MOS").

In support of this Motion, the Class Action Plaintiffs submit the *Declaration of Michael S. Etkin* (the "Etkin Decl.") filed herewith and respectfully state as follows:

**PRELIMINARY STATEMENT**

1.    By this Motion, the Class Action Plaintiffs seek the recognition and enforcement of the Settlement Approval Order in the United States. The Settlement approved by the Settlement Approval Order is the fourth settlement approved by the Ontario Superior Court in the context of the Plan.[3] As this Court is aware, the Ontario Superior Court has entered orders

---

[3]    On April 15, 2013, this Court entered the *Order Granting Recognition of Foreign Proceeding, Enforcement of Canadian Orders, and Related Relief* [Docket No. 16] (the "Plan

approving two prior settlements between the Class Action Plaintiffs and various parties, and this Court has subsequently entered orders recognizing and enforcing those orders in the United States.[4]

2.      First, on March 20, 2013, the Ontario Superior Court entered an order approving a settlement between the Class Action Plaintiffs and Ernst & Young (the "E&Y Settlement").  This Court entered an order dated November 26, 2013, recognizing and enforcing in the United States the Ontario Superior Court order approving the E&Y Settlement.  *See In re Sino-Forest Corporation*, 501 B.R. 655 (Bankr. S.D.N.Y. 2013).

3.      Second, on July 25, 2014, at a hearing jointly conducted via videoconference with this Court, the Ontario Superior Court entered an order approving a settlement between the Class Action Plaintiffs and SFC's former chief financial officer, Mr. David Horsley (the "Horsley Settlement").  Immediately thereafter, this Court entered an order recognizing and enforcing in the United States the Ontario Superior Court order approving the Horsley Settlement.

4.      If the conditions set forth in the Dealers Settlement are satisfied, the Dealers will transfer CAD$32,500,000 from an interest-bearing account to the Class Action Plaintiffs for the benefit of claimants in the Class Actions (the "Settlement Fund"), to be distributed pursuant to the Distribution Order (as defined below).[5]  In return, the Class Actions will be dismissed as against the Dealers, and there will be an order forever barring all claims against them in connection with SFC, including claims related to any allegations related to the Class Actions.

---

Recognition Order").  A copy of the Plan and the Plan Sanction Order are attached as Exhibit B to the Plan Recognition Order.

[4]   A third settlement was not conditioned on United States recognition and thus such recognition was not sought).

[5]   This description of the terms of the Dealers Settlement is intended to be summary in nature and is qualified in its entirety by the Dealers Settlement MOS attached to the Etkin Decl. as **Exhibit B**.  Capitalized terms used but not defined herein have the meanings ascribed thereto in the Dealers Settlement MOS.

5.      In addition, on October 26, 2015, the Class Action Plaintiffs reached a settlement resolving the Litigation Trust's objection to approval of the Dealers Settlement.  Pursuant to the Litigation Trust Settlement,[6] the Litigation Trust will receive payments totaling $1,750,000 within thirty days after the effective date of the Dealers Settlement, as discussed more fully below.  The Litigation Trust Settlement will be funded by class counsel (through a reduction of the fees they otherwise would have sought in connection with the Dealers Settlement) and the Dealers, and thus will be economically neutral to class members.

6.      The Dealers Settlement is subject to two primary conditions: (i) entry of the Settlement Approval Order by the Ontario Superior Court, which occurred on October 30, 2015, and (ii) entry of the Settlement Recognition Order by this Court, which the Class Action Plaintiffs seek through this Motion.

7.      Based upon the record established in the Ontario Superior Court in connection with the approval of the Settlement, the Class Action Plaintiffs respectfully submit that this Court should recognize and enforce the Settlement Approval Order in the United States.  The inclusion in the Plan of a framework for the resolution of claims such as those asserted in the Class Actions was an essential component of the compromises embodied in the Plan.  The Settlement was structured to fit within that framework.  Moreover, the relief requested herein is virtually identical to the relief granted in connection with the E&Y Settlement and the Horsley Settlement.  The Class Action Plaintiffs respectfully submit that recognition and enforcement of the Settlement Approval Order is entirely appropriate for the reasons set forth in this Court's opinion and order recognizing and enforcing the E&Y Settlement in the United States and this Court's prior opinion in *In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. 685 (Bankr.

---

[6]   This description of the terms of the Litigation Trust Settlement is intended to be summary in nature and is qualified in its entirety by the Litigation Trust Settlement MOS attached to the Etkin Decl. as **Exhibit C**.

S.D.N.Y. 2010).  Accordingly, and for the reasons set forth more fully below, the Class Action Plaintiffs respectfully request the entry of the Settlement Recognition Order recognizing and enforcing the Settlement Approval Order in the United States.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the "Amended Standing Order of Reference Re: Title 11" of the United States District Court for the Southern District of New York (Preska, C.J.) dated January 31, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

9.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1410(2) and (3).

10.    The statutory predicates for the relief requested herein are sections 105(a) and 1507 of the Bankruptcy Code.

11.    The Settlement expressly authorizes and empowers the Class Action Plaintiffs to apply for the relief requested herein, and on that basis the Class Action Plaintiffs filed this Motion with the support of the Monitor and the Dealers.

## BACKGROUND

*CCAA Proceeding and Plan*

12.    Prior to the commencement of the CCAA Proceeding, SFC was a publicly held company that was the ultimate parent of numerous subsidiaries with forestry operations in the People's Republic of China.  SFC's common shares were traded on the Toronto Stock Exchange and on the over-the-counter market in the United States, among other markets.  In addition, SFC issued five series of notes that were outstanding at the commencement of the CCAA Proceeding and traded in the secondary market.

13.    On June 2, 2011, SFC was the subject of an investor report by Muddy Waters LLC, a short-seller, purporting to reveal fraud at the Company.  In the wake of the report,

SFC's share price plummeted, and the Class Actions were commenced against SFC and the Third Party Defendants (as defined in the Plan), including the Dealers.

14.     The Dealers were various financial institutions that served as underwriters and initial purchasers in one or more of SFC's offerings of shares and notes during the class period. The Class Action Plaintiffs have alleged in the Class Actions that the Dealers failed to conduct a reasonable investigation into SFC in connection with the offering of SFC's securities and that, as a result, SFC's security holders suffered damages when the company collapsed.

15.     On March 30, 2012, SFC commenced the CCAA Proceeding to obtain protection from its creditors, including the Class Action Plaintiffs, under the CCAA.[7] During the course of the proceedings, the parties engaged in extensive negotiations, including a multi-day mediation. While the mediation did not immediately yield the terms of a global settlement, the E&Y Settlement was reached soon after and a framework supporting incremental settlements with Third Party Defendants[8] was established and included in the Plan.  In turn, the Plan was submitted and overwhelmingly approved by creditors, including defendants in the Class Actions.

16.     Section 11.2 of the Plan sets forth the procedure for Third Party Defendants to obtain releases under the Plan in the event that the relevant parties subsequently settle the claims against them.  Specifically, Section 11.2 of the Plan provides a process whereby Named Third Party Defendants (such as the Dealers) can enter into a Named Third Party Settlement and thereby obtain a Named Third Party Defendant Release.  *See* Plan § 11.2(b).

---

[7]     The Class Action Plaintiffs respectfully refer the Court to the *Verified Petition for Recognition of Foreign Proceeding and Related Relief*  [Docket No. 2] commencing this Chapter 15 proceeding for a full description of SFC, the CCAA Proceeding and the circumstances leading to the entry of the Plan Sanction Order.

[8]     Capitalized terms used but not defined in paragraphs 12 through 15 herein have the meaning ascribed to such terms in the Plan.

17.    A Named Third Party Settlement between a Named Third Party Defendant and the Class Action Plaintiffs and/or the Litigation Trust will be given effect in accordance with its terms, subject to (i) the entry of the Plan Sanction Order; (ii) the entry of an order of the Ontario Superior Court approving such settlement; and (iii) the satisfaction of any conditions precedent set forth in the settlement agreement. *See* Plan § 11.2(b). The settlement must also be in a form acceptable to the Monitor and the Litigation Trustee (and, if prior to the Plan Implementation Date, SFC and the ICN). *See* Plan, Definition of "Named Third Party Defendant Settlement."

18.    Pursuant to Section 11.2(b) of the Plan, if the Named Third Party Defendant Settlement contains a release, such "Named Third Party Defendant Release" shall become effective in accordance with the Plan upon the delivery of the Monitor's Named Third Party Settlement Certificate to the Named Third Party Defendant. The Monitor will deliver the Named Third Party Settlement Certificate to the Named Third Party Defendant upon receipt of a certificate from each of the parties to the Named Third Party Defendant Settlement stating that all conditions precedent to the settlement have been satisfied or waived and that any funds have been paid as required by the particular settlement.

19.    Finally, pursuant to Section 11.2(c) of the Plan, upon delivery of the Named Third Party Settlement Certificate to the Named Third Party Defendant, the Causes of Action against the applicable Named Third Party Defendant shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled, barred, and deemed satisfied and extinguished as against such Named Third Party Defendant, to the extent provided by the terms of the applicable Named Third Party Defendant Release (contained in the Named Third Party Settlement with each particular Named Third Party Defendant) and the Plan.

### *The Dealers Settlement*

20.     On November 10, 2014, the Class Action Plaintiffs reached an agreement in

principle on the key terms of the Dealers Settlement, which are as follows:

a.     The Dealers have deposited CDN$32.5 million (the "Class Settlement
Fund"), less notice costs, into an interest-bearing account with a Canadian
bank, to be administered in accordance with further orders of the Ontario
Superior Court.

b.     The Dealers Settlement is conditioned upon, among other things, (i) the
issuance of the Settlement Approval Order by the Ontario Superior Court
and (ii) entry by this Court of the Settlement Recognition Order.

c.     The Dealers Settlement will become effective (the "Settlement Effective
Date") when the Settlement Approval Order and the Settlement
Recognition Order have each (i) been entered and (ii) become final and
non-appealable (or, if appealed, has been upheld on appeal).

d.     Within fifteen days after the Settlement Effective Date, the Class
Settlement Fund will be paid to the Class Action Plaintiffs.

e.     Upon payment of the Class Settlement Fund, the Class Actions shall be
dismissed as against the Dealers.

f.     Certain of the Dealers have agreed to (i) provide the Class Action
Plaintiffs with non-privileged documents and information relevant to
certain common issues related to one of the remaining defendants and (ii)
preserve relevant, non-privileged documents related to that defendant until
the conclusion of the Class Actions.

### *The Litigation Trust Settlement*

21.     The Litigation Trust initially opposed approval of the Dealers Settlement in the

Ontario Superior Court based upon the language of the Plan, which stated that the Named Third

Party Release had to be acceptable to the Litigation Trust.  As a result, the Ontario Superior

Court did not initially approve the Dealers Settlement at the hearing held on May 11, 2015.

22.     Over the next several months, the Class Action Plaintiffs and the Dealers

negotiated with the Litigation Trust to resolve its objection to approval of the Dealers Settlement.

Those discussions culminated in the Litigation Trust Settlement.

23.     Pursuant to the Litigation Trust Settlement, the Litigation Trust will receive payments totalling $1,750,000 within thirty days after the effective date of the Dealers Settlement, consisting of (a) $750,000 to be paid from the Settlement Fund, via a reduction of the fees which class counsel otherwise would have sought, and (b) $1 million to be paid by the Dealers.  In other words, to ensure the distribution to class members will be unaffected by the Litigation Trust Settlement, class counsel reduced its fee request by $750,000.

24.     On October 30, 2015, the Ontario Superior Court entered the Settlement Approval Order annexed to the Etkin Decl. as **Exhibit A**, thereby approving the Dealers Settlement and the Litigation Trust Settlement, and also entered orders (a) approving a claims and distribution protocol (the "Distribution Order"), (b) approving fees for counsel to the Canadian Class Action Plaintiffs and class (the "Canadian Fee Order"), and (c) approving a document production protocol governing the Dealers' preservation and production of documents relevant to the Canadian Class Action (the "Document Production Order").[9]

*Notice of the Dealers Settlement*

25.     On February 25, 2015, the Class Action Plaintiffs filed a motion (the "Service Motion") [Doc. No. 58] in this Court seeking an order approving the proposed manner of service of the notice regarding this Motion and their motion in the Ontario Superior Court for approval of the Dealers Settlement.

26.     On March 12, 2015, this Court entered an order granting the Service Motion (the "U.S. Service Order") [Doc. No. 62].  The Plaintiffs have effectuated service pursuant thereto, as

---

[9]     The Class Action Plaintiffs are not seeking recognition and enforcement of the Distribution Order, the Canadian Fee Order, or the Document Production Order in the United States; however, copies of such orders are annexed to the Etkin Decl. for the Court's information as **Exhibits G, H, and I**, respectively.

set forth in the *Declaration of Garth Myers* dated April 8, 2015 (the "Myers Affidavit"), attached to the Etkin Decl. (together with exhibits) as **Exhibit D**.

27.     In light of the objection by the Litigation Trust to approval of the Dealers Settlement by the Ontario Superior Court, the Class Action Plaintiffs requested, and this court granted, an adjournment *sine die* of the hearing to consider this Motion, originally scheduled for June 9, 2015.  Accordingly, the Class Action Plaintiffs filed a notice of adjournment on this Court's docket on June 5, 2015 (the "Notice of Adjournment") [Doc. No. 65], indicating that if and when the Ontario Superior Court entered an order approving the Dealers Settlement, the Class Action Plaintiffs would (a) seek a new hearing date for this Motion and (b) promptly file this Motion.

28.     In addition to the notices served pursuant to the U.S. Service Order, the Class Action Plaintiffs served (via e-mail, for parties who have provided e-mail addresses) a supplemental notice (the "Supplemental Approval Notice") of the hearing in the Ontario Superior Court to consider approval of the Dealers Settlement on all parties who timely filed objections to approval of the Dealers Settlement in the Ontario Superior Court (the "Objectors"). A copy of the Supplemental Approval Notice is attached to the Etkin Decl. as **Exhibit E**.

29.     Upon filing this Motion, the Class Action Plaintiffs will serve an additional supplemental notice, substantially in the form attached to the Etkin Decl. as **Exhibit F** (the "Supplemental Recognition Notice") upon the Objectors (via e-mail, for parties who have provided e-mail addresses), together with copies of this Motion, the Etkin Decl. (with exhibits), the proposed  Settlement Recognition Order, and the accompanying Notice of Hearing.

30.     The Class Action Plaintiffs are seeking a finding in the Settlement Recognition Order that the notice effectuated pursuant to the U.S. Service Order, together with the Notice of Adjournment, the Supplemental Approval Notice, and the Supplemental Recognition Notice,

provided all potentially affected parties with good and sufficient notice of this Motion under the circumstances.

## RELIEF SOUGHT

31.    By this Motion, the Class Action Plaintiffs seek the entry of the Settlement Recognition Order, in substantially the form submitted herewith, recognizing and enforcing the Settlement Approval Order in the United States.  Entry of the Settlement Recognition Order is a condition precedent to the effectiveness of the Dealers Settlement.  The consummation of the Dealers Settlement will result in the full resolution of the Class Actions with respect to a large number of defendants, and will provide substantial benefits to class members in the Class Actions.

## BASIS FOR RELIEF SOUGHT

32.    The requested recognition and enforcement of the Settlement Approval Order in the United States under Sections 105(a) and 1507 of the Bankruptcy Code[10] is consistent with relief granted in other Chapter 15 cases (and in plenary cases under the Bankruptcy Code) and is necessary to give effect to the comprehensive protocol for such settlements established under the Plan.  The Dealers Settlement was negotiated at arms' length over a number of months, and now has the support of substantially all interested parties, given the Litigation Trust Settlement.

---

[10]    In *Sino Forest*, 501 B.R. 663, Fn. 3, this Court addressed the applicability of Section 1521 of the Bankruptcy Code to virtually identical circumstances and determined that because the requested relief was available under Section 1507, a discussion of Section 1521, and the relief available in this Court in plenary cases, was unnecessary.  Based upon this Court's prior decision and its fundamental similarity to the facts underlying the Motion, the Class Action Plaintiffs believe that the relief requested herein is likewise available under Section 1507 and have not discussed Section 1521 herein.  However, the Class Action Plaintiffs are prepared to supplement their pleadings should the Court require further briefing on that point.

## ARGUMENT

**A.    Recognition and enforcement of the Settlement Approval Order is warranted as "additional assistance" under Section 1507 of the Bankruptcy Code.**

33.    As this Court previously held, in seeking enforcement of release and injunction provisions approved by a Canadian court in a Chapter 15 proceeding, the correct inquiry is whether recognition of the foreign order is an appropriate exercise of comity in a case under Chapter 15. *In re Sino-Forest*, 501 B.R. at 662 (citing *Metcalfe*, 421 B.R. at 696).

34.    Chapter 15 embodies longstanding principles of international comity and cooperation that weigh heavily in favor of the recognition and enforcement of the Settlement Approval Order in the United States. *See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987) ("American courts have long recognized the need to extend comity to foreign bankruptcy proceedings."); *In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009) (Chapter 15 "specifically contemplates that the court should be guided by principles of comity and cooperation with foreign courts in deciding whether to grant the foreign representative additional post-recognition relief."); *Ad Hoc Group of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*, 701 F.3d 1031, 1044 (5th Cir. 2012) ("Central to Chapter 15 is comity."), *cert. dismissed* 133 S.Ct 1862 (2013); *In re Fairfield Sentry Ltd.*, 484 B.R. 615, 626 (Bankr. S.D.N.Y. 2013) ("Chapter 15 emanates from and was designed around this central concept of comity, as evidenced by its primary purpose and deferential framework for international judicial cooperation.").   As courts have recognized, while comity does not demand categorical deference to a foreign proceeding, under these principles "a foreign judgment should generally be accorded comity if its proceedings are 'fair and impartial.'" *Collins v. Oilsands Quest Inc.*, 484 B.R. 593 (S.D.N.Y. 2012) (citing *In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333, 336 (S.D.N.Y. 2006)).

35.    As this Court has held,

"Federal courts generally extend comity whenever the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy." *In re Atlas Shipping A/S*, 404 B.R. 726, 733 (Bankr. S.D.N.Y. 2009) (quoting *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987)).  As the court stated in *J.P. Morgan Chase Bank v. Altos Hornos de Mexico, S.A.*, 412 F.3d 418, 424 (2d Cir. 2005), "deference to the foreign court is appropriate so long as the foreign proceedings are procedurally fair and . . . do not contravene the laws or public policy of the United States."  In analyzing procedural fairness, courts have looked to the following nonexclusive factors:

(1)    Whether creditors of the same class are treated equally in the distribution of assets; (2) whether the liquidators are considered fiduciaries and are held accountable to the court; (3) whether creditors have the rights to submit claims which, if denied, can be submitted to a bankruptcy court for adjudication; (4) whether the liquidators are required to give notice to potential claimants; (5) whether there are provisions for creditors meetings; (6) whether a foreign country's insolvency laws favor its own citizens; (7) whether all assets are marshalled before one body for centralized distribution and (8) whether there are provisions for an automatic stay and for the lifting of such stays to facilitate the centralization of claims.

*Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 249 (2d Cir. 1999); *see also In re Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 114-15 (Bankr. S.D.N.Y. 2012).

*In re Sino-Forest*, 501 B.R. at 662-63.

36.    Further, "when the foreign proceeding is in a sister common law jurisdiction with procedures akin to our own, comity should be extended with less hesitation, there being fewer concerns over the procedural safeguards employed in those foreign proceedings."  *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 238 B.R. 25, 67 (Bankr. S.D.N.Y. 1999) (internal quotations and citations omitted), *aff'd*, 238 B.R. 699 (S.D.N.Y. 2002).    Bankruptcy courts hearing Chapter 15 cases have repeatedly granted comity to orders issued in CCAA proceedings.  *See,*

*e.g.*, *Oilsands Quest Inc.*, 484 B.R. 593;  *Metcalfe* 421 B.R. 685; *In re Ephedra*, 349 B.R. at 336 (citing *Hilton v. Guyot*, 159 U.S. 113 (1895)).

37.    In both *Metcalfe* and *Sino-Forest*, this Court enforced third-party releases in connection with a CCAA proceeding on the basis of comity under Section 1507 of the Bankruptcy Code.  *Sino-Forest*, 501 B.R. at 657; *Metcalfe*, 421 B.R. at 698.

38.    Section 1507 empowers a court to provide "additional assistance" to a foreign representative provided that, "consistent with the principles of comity," such assistance will reasonably assure:  (1) just treatment of all holders of claims against or interests in the debtor's property; (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding; (3) prevention of preferential or fraudulent dispositions of property of the debtor; (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and (5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.  11 U.S.C. § 1507.

39.    The Settlement satisfies all of the relevant factors that must be considered when granting relief under Section 1507.

40.    First, the Dealers Settlement is the product of extensive negotiations between the Dealers and the Class Actions Plaintiffs, including lead plaintiffs in the U.S. Class Action. Further, upon approval of the Settlement Approval Order and the satisfaction of the conditions precedent to the Dealers Settlement, the Dealers will pay CDN$32.5 million to the Class Action Plaintiffs for distribution to Securities Claimants.  There is no suggestion that any preferential or fraudulent disposition of property has been made.  In addition to the substantial cash payment, certain of the Dealers have agreed to take certain specified steps to cooperate with the Class Action Plaintiffs in prosecuting their claims against one of the remaining defendants, which is

anticipated to enhance the recovery from those defendants while also hastening a resolution of those claims and preserving insurance proceeds.

41.     Second, the Dealers Settlement is the subject of near unanimous support by non-insider parties.  *Cf. In re DBSD N. Am., Inc.*, 419 B.R. 179, 217-218 (Bankr. S.D.N.Y. 2009) ("[T]he Second Circuit has held that nondebtor releases are permissible if the affected creditors consent."), *rev'd on other grounds,* 634 F.3d 79 (2d Cir. 2011).   The Plan -- including Article 11.2 thereof, which explicitly contemplates that directors and officers may receive a release in the context of a settlement -- received overwhelming approval from creditors voting in person or by proxy, with 99.96% in value and 98.81% in number of such creditors voting in favor of the Plan.  Notice of the Dealers Settlement was delivered to over 31,000 class members. Counsel to the Class Action Plaintiffs and the class received a total of just 27 objections to approval of the Dealers Settlement by the Ontario Superior Court, 18 of which provided no reason and a number of which provided dubious reasons, which the Ontario Superior Court overruled.

42.     Finally, notice of the Dealers Settlement, the settlement approval hearing in the Ontario Superior Court, and this Motion was provided in accordance with the U.S. Service Order and the January 29, 2015 order of the Ontario Superior Court (the "Canadian Notice Approval Order") approving the form and manner of notice of the Dealers Settlement, the hearing before the Ontario Superior Court to consider approval of the Dealers Settlement, and the hearing before this Court to consider entry of the Settlement Recognition Order.  The U.S. Service Order deemed the notice provided pursuant thereto to be adequate, reasonably calculated to reach all of the SFC's known creditors in the United States, and sufficient under the circumstances.  The Class Action Plaintiffs respectfully submit that such notice, together with the Notice of Adjournment, the Supplemental Approval Notice, and the Supplemental Recognition Notice,

was adequate, reasonably calculated to reach all of the SFC's known creditors and other potentially affected parties in the United States, and sufficient under the circumstances.

43.     As in *Metcalfe* and *Sino-Forest,* the Dealers Settlement, together with the Litigation Trust Settlement, has been approved by the Ontario Superior Court after extensive notice to potentially affected parties.  Indeed, the method of notice provided in *Sino-Forest* was essentially duplicated here.  Accordingly, the Class Action Plaintiffs respectfully submit that recognition and enforcement of the Settlement Approval Order in the United States pursuant to Section 1507 of the Bankruptcy Code is appropriate.

**B.     The Requested Relief Does Not Violate Section 1506 of the Bankruptcy Code.**

44.     Finally, the recognition and enforcement of the Settlement Approval Order does not violate Section 1506 of the Bankruptcy Code, which provides that a court may refuse to take an action governed by Chapter 15 if such "action would be manifestly contrary to the public policy of the United States."  11 U.S.C. § 1506.  The legislative history of Section 1506 makes clear that this exception should be "narrowly interpreted" and is restricted to "the most fundamental policies of the United States."  *In re Ephedra*, 349 B.R. at 336 (citing H.R. REP. NO. 109-31(I), at 109 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 172).

45.     The relief requested by the Motion is consistent or substantially in accordance with applicable standards in plenary cases under the Bankruptcy Code, and thus it cannot be contended that the recognition and enforcement of the Settlement Approval Order violates a fundamental policy of the United States.  Further, there is no question that due process principles would be upheld in approving the Dealers Settlement, as interested parties in the United States and Canada were given notice and the opportunity to raise any objections to the substantive relief requested in the Ontario Superior Court and to the Motion in this Court pursuant to orders approving the form and manner of notice in both jurisdictions.

46.     Finally, granting the requested relief and recognizing and enforcing the Settlement Approval Order in the United States is consistent with United States public policy respecting foreign proceedings as articulated in Section 1501 of the Bankruptcy Code. *See* 11 U.S.C. § 1501.

## MEMORANDUM OF LAW

47.     Because this Motion specifies the rules and statutory provisions upon which it is predicated and the legal authorities that support the requested relief, the Class Action Plaintiffs respectfully request that Local Bankruptcy Rule 9013-1 be deemed satisfied.

## CONCLUSION

48.     For the foregoing reasons, the Class Action Plaintiffs respectfully request that this Court grant the relief requested in the Motion.

## NOTICE

49.     Notice of the Motion was provided in accordance with the U.S. Service Order, as set forth in the Myers Affidavit annexed to the Etkin Decl. as **Exhibit D**. Such notice was also supplemented by the Notice of Adjournment, the Supplemental Approval Notice, and the Supplemental Recognition Notice. The Class Action Plaintiffs respectfully submit that no other or further notice is necessary under the circumstances.

*[ signature page follows ]*

WHEREFORE, the Class Action Plaintiffs respectfully request that this Court grant this Motion and enter a Settlement Recognition Order, substantially in the form annexed hereto as **Exhibit 1**, recognizing and enforcing the Settlement Approval Order in the United States, and granting such other relief as is appropriate under the circumstances.

Dated: New York, New York
      November 6, 2015

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

 /s/  *Michael S. Etkin*
Michael S. Etkin
Andrew Behlmann
1251 Avenue of the Americas
New York, New York 10022
metkin@lowenstein.com
abehlmann@lowenstein.com

*United States Bankruptcy Counsel
 for the Class Action Plaintiffs*