# **EXHIBIT G**

# **DISTRIBUTION ORDER**

Court File No. CV-12-9667-00CL

# ONTARIO
## SUPERIOR COURT OF JUSTICE
## COMMERCIAL LIST

| | | |
|---|---|---|
| THE HONOURABLE | ) | _____, THE _____ DAY |
| REGIONAL SENIOR JUSTICE | ) | |
| MORAWETZ | ) | OF _____, 2015 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED, AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF SINO-FOREST CORPORATION

Court File No.: CV-11-431153-00CP

## ONTARIO
## SUPERIOR COURT OF JUSTICE

BETWEEN:

THE TRUSTEES OF THE LABOURERS' PENSION FUND OF CENTRAL AND EASTERN CANADA, THE TRUSTEES OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 793 PENSION PLAN FOR OPERATING ENGINEERS IN ONTARIO, SJUNDE AP-FONDEN, DAVID GRANT, ROBERT WONG, DAVIS NEW YORK VENTURE FUND, INC. and DAVIS SELECTED ADVISERS L.P.

Plaintiffs

- and -

SINO-FOREST CORPORATION, ERNST & YOUNG LLP, BDO LIMITED (formerly known as BDO MCCABE LO LIMITED), ALLEN T.Y. CHAN, W. JUDSON MARTIN, KAI KIT POON, DAVID J. HORSLEY, WILLIAM E. ARDELL, JAMES P. BOWLAND, JAMES M.E. HYDE, EDMUND MAK, SIMON MURRAY, PETER WANG, GARRY J. WEST, POYRY (BEIJING) CONSULTING COMPANY LIMITED, CREDIT SUISSE SECURITIES (CANADA), INC., TD SECURITIES INC., DUNDEE SECURITIES CORPORATION, RBC DOMINION SECURITIES INC., SCOTIA CAPITAL INC., CIBC WORLD MARKETS INC., MERRILL LYNCH CANADA INC., CANACCORD FINANCIAL LTD., MAISON PLACEMENTS CANADA INC., CREDIT SUISSE SECURITIES (USA) LLC and MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED (successor by merger to Banc of America Securities LLC)

Defendants

Proceeding under the *Class Proceedings Act, 1992*

## ORDER
### (Claims and Distribution Protocol)

**THIS MOTION**, made by the Ad Hoc Committee of Purchasers of the Applicant's Securities, including the plaintiffs in the action commenced against Sino-Forest Corporation ("Sino-Forest") in the Ontario Superior Court of Justice, bearing (Toronto) Court File No. CV-11-431153-00CP (the "Ontario Plaintiffs" and the "Ontario Class Action", respectively) was heard on October 30, 2015, in Toronto, Ontario.

**WHEREAS** on October 30, 2015, this Court approved an order: (a) approving the settlement between the Ad Hoc Committee of Purchasers of the Applicant's Securities and Credit Suisse Securities (Canada) Inc., TD Securities Inc., Dundee Securities Corporation (now known as DWM Securities Inc.), RBC Dominion Securities Inc., Scotia Capital Inc., CIBC World Markets Inc., Merrill Lynch Canada Inc., Canaccord Financial Ltd., Maison Placements Canada Inc., Credit Suisse Securities (USA) LLC and Merrill Lynch, Pierce, Fenner & Smith Incorporated (successor by merger to Banc of America Securities LLC) and Ad Hoc Committee of Purchasers of the Applicant's Securities and Ernst & Young LLP (the "Dealers Settlement"); (b) appointing Koskie Minsky LLP and Siskinds LLP (together "Canadian Class Counsel"), along with insolvency counsel Paliare Roland Rosenberg Rothstein LLP, as counsel for persons that purchased Sino-Forest securities; and (c) directing that Canadian Class Counsel and

insolvency counsel are to establish a process for the allocation and distribution of the net settlement proceeds among securities claimants and that such process shall be approved by this Court (the "Claims and Distribution Protocol);

**AND ON READING** the plaintiffs' motion record, and all supplemental motion records, all objections filed, and on reading such other material filed, and on hearing the submissions of counsel for the plaintiffs, and those other persons present,

1. **THIS COURT ORDERS** that the Claims and Distribution Protocol attached as **Schedule "A"** to this order is hereby approved.

2. **THIS COURT ORDERS** that NPT RicePoint Class Action Services Inc. is hereby authorized to pay out of the settlement trust (a) class counsel fees that are approved by this court; (b) costs of administration of the settlement; and (c) any expenses relating to the notice of the settlement approval hearing, and notice of the hearing to approve the Claims and Distribution Protocol and Class Counsel fees.

3. **THIS COURT ORDERS** that nothing in this order, the materials filed in support thereof or the Claims and Distribution Protocol shall fetter the discretion of any court to determine the damages of the securities claimants at trial or other disposition of an action in respect of the claims for which compensation is available under the Claims and Distribution Protocol.

4.  **THIS COURT ORDERS** that 30 days following the conclusion of the distribution of the settlement fund, Canadian Class Counsel shall report to the Court, on notice to the parties to the Ontario Class Action, (a) the total amount of the compensation fund distributed, and (b) the allocation of that distribution to the categories of claimants listed in the Claims and Distribution Protocol.

_____
Morawetz RSJ.

# SCHEDULE "A"

*Re Sino-Forest Corporation*
Court File No. CV-12-9667-00CL

and

*Trustees of Labourers' Fund v. Sino-Forest Corporation et al.*
Court File No. CV-11-431153-00CP

## DEALERS SETTLEMENT
## CLAIMS AND DISTRIBUTION PROTOCOL
### Distribution of Dealers Compensation Fund to Securities Claimants

1.  The following definitions apply in this Claims and Distribution Protocol:

    (a)  "2013 Notes" means the 5.00% Convertible Senior Notes due 2013.

    (b)  "2014 Notes" means the 10.25% Guaranteed Senior Notes due 2014.

    (c)  "2016 Notes" means the 4.25% Convertible Senior Notes due 2016.

    (d)  "2017 Notes" means the 6.25% Guaranteed Senior Notes due 2017.

    (e)  "ACB" means the adjusted cost base for the purchase of share or notes (as the case may be), inclusive of brokerage commissions.

    (f)  "Allocation System" means the method of determining the Compensable Loss assigned to a claim in order to determine the amount of compensation to be awarded for that claim (as set out below). This is based on each Securities Claimant's estimated losses attributable to misrepresentations in Sino-Forest's offering documents, taking into account risk adjustments to account for the liability risks for different categories of Securities Claimants.

    (g)  "Claim Form" means a written claim in the prescribed form seeking compensation from the Dealers Compensation Fund and an EY Claim Form.

    (h)  "Claimant" means any person making a claim as purporting to be a Securities Claimant or on behalf of a purported Securities Claimant, with proper authority (as determined by the Claims Administrator or Class Counsel).

    (i)  "Claims Administrator" means NPT RicePoint Class Action Services Inc.

    (j)  "Class Actions" has the meaning ascribed to that term in the Plan.

    (k)  "Class Counsel" means Koskie Minsky LLP and Siskinds LLP.

    (l)  "Class Counsel Fees" means the aggregate of the fees and disbursements of Class Counsel, Paliare Roland Rothstein Rosenberg LLP, Kessler, Topaz,Meltzer & Check, LLP and Cohen Millstein Sellers & Toll PLLC (including taxes) as provided in the Dealers Allocation Order.

    (m)  "Class Settlement Fund" has the meaning ascribed to that term in the Dealers Settlement Approval Order.

(n) "Compensable Damages" means the amount of a Claimant's damages for each type of purchase of Securities after accounting for Offset Profits for those purchases.

(o) "Compensable Loss" is the sum of the Claimant's damages after Offset Profits are deducted and risk adjustments applied for each type of purchase.

(p) "Dealers Allocation Order" means the order approving the claims process for the distribution of the Class Settlement Fund.

(q) "Dealers Compensation Fund" means the Class Settlement Fund less Class Counsel Fees, costs of administration of the Settlement Trust (including taxes), and any expenses and taxes relating to the notice of the settlement approval hearing, notice of the fee and allocation hearing and notice of this claims and distribution protocol.

(r) "Dealers Settlement" has the meaning attributed to that term in the Dealers Settlement Approval Order.

(s) "Dealers Settlement Approval Order" means the order of Morawetz J. dated ●, 2015, approving the Dealers Settlement.

(t) "Excluded Claim" means any of the following:

  (i) a claim in respect of a purchase of Securities other than Securities purchased in an Offering; or

  (ii) a claim by or on behalf of any person or entity that is, or previously was, a named defendant to any of the Class Actions, Albert Ip, Alfred C.T. Hung, George Ho and Simon Yeung and their past and present subsidiaries, affiliates officers, directors, senior employees, partners, legal representatives heirs predecessors, successors and assigns, and any individual who is a member of the immediate family of Allen T.Y. Chan a.k.a. Tak Yuen Chan, W. Judson Martin, Kai Kit Poon, David J. Horsley, William E. Ardell, James P. Bowland, James M.E. Hyde, Edmund Mak, Simon Murray, Peter Wang, Garry J. West, Albert Ip, Alfred C.T. Hung, George Ho and Simon Yeung.

(u) "EY Claim Form" means any claim form submitted to the Claims Administrator pursuant to the Order of Justice Morawetz dated January 10, 2014 approving the Plan of Allocation in the Ernst & Young Settlement, as that term is defined in the Plan, where the Claimant confirms to the Claims Administrator Fund in a manner determined by the Claims Administrator that it wishes to seek compensation from the Dealers Compensation.

(v) "FIFO" means the method applied to the holdings of Securities Claimants who made multiple purchases or sales such that sales of securities will be matched, in chronological order, first against securities first purchased.

(w) "Notes" means, collectively, the 2013 Notes, the 2014 Notes, the 2016 Notes and the 2017 Notes.

(x) "Offerings" (each being an "Offering") means:

2534229.1C

    (i)    Distribution of common shares pursuant to the Final Short-Form Prospectus dated June 5, 2007;

    (ii)    Distribution of common shares pursuant to the Final Short-Form Prospectus dated June 1, 2009;

    (iii)    Distribution of common shares pursuant to the Final Short-Form Prospectus dated December 10, 2009;

    (iv)    Distribution of the 2013 Notes pursuant to the Offering Memorandum dated July 17, 2008;

    (v)    Distribution of the 2014 Notes pursuant to the Exchange Offer Memorandum dated June 24, 2009;

    (vi)    Distribution of the 2016 Notes pursuant to the Offering Memorandum dated December 10, 2009; and

    (vii)    Distribution of the 2017 Notes pursuant to the Offering Memorandum dated October 14, 2010.

(y) "Offset Profits" means the total increase in inflation of each Security sold by a Securities Claimant prior to June 2, 2011 where such security was purchased in an Offering. Such inflation for Sino-Forest Securities shall be determined by Frank Torchio of Forensic Economics, in consultation with Class Counsel.

(z) "Ontario Class Action" means the action commenced against Sino-Forest Corporation and others in the Ontario Superior Court of Justice, bearing (Toronto) Court File No. CV-11-431153-00CP.

(aa) "Plan" means the Plan of Compromise and Reorganization of Sino-Forest Corporation, sanctioned and approved pursuant to the Plan Sanction Order of Morawetz J. dated December 10, 2012.

(bb) "Risk Adjusted Damages" mean the Compensable Damages for each type of purchase of securities, after it has been adjusted by a risk adjustment.

(cc) "Risk Adjusted Loss" means the sum of the Risk Adjusted Damages for each type of purchase of securities.

(dd) "Sale Price" means the price at which the Claimant disposed of shares or notes, taking into account any commissions paid in respect of the disposition, such that the Sale Price reflects the economic benefit the Claimant received on disposition.

(ee) "Securities" means common shares, notes or other securities defined in the *Securities Act*, RSO 1990, c. S.5, as amended, or that are securities at law.

(ff) "Securities Claimants" had the meaning ascribed to that term in the Dealers Settlement Approval Order.

(gg) "Settlement Trust" has the meaning ascribed to that term in the Dealers Settlement Approval Order.

(hh) "Shares" means Securities that are common shares.

    (ii)    "US Class Action" means the action commenced against Sino-Forest Corporation and others in the United States District Court (SDNY), bearing Court File No. 1:12-cv-01726-VM.

2.    The Claims Administrator shall distribute the Dealers Compensation Fund as set out below.

**Goal**

3.    The goal is to distribute the Dealers Compensation Fund among Securities Claimants who submit valid and timely claims for Securities purchased pursuant to the Offerings, or any of them, provided, however, that Securities Claimants who have previously submitted a valid Claim Form to the Claims Administrator are not required to submit a new Claim Form.

**Deadline for Claims**

4.    Any person, other than Claimants who previously filed valid claims with the Claims Administrator, who wishes to claim compensation shall deliver to or otherwise provide the Claims Administrator a Claim Form by ●, 2015 or such other date set by the Court. If the Claims Administrator does not receive a Claim Form from a Claimant by the deadline, then the Claimant shall not be eligible for any compensation whatsoever from the Dealers Compensation Fund. Notwithstanding the forgoing, the Administrator shall have the discretion to permit otherwise-valid late claims without further order of the Court.

**Processing Claim Forms**

5.    The Claims Administrator shall review each Claim Form and verify that the Claimant is eligible for compensation, as follows:

    (a)    For a Claimant claiming as a Securities Claimant, the Claims Administrator shall be satisfied that (i) the Claimant is a Securities Claimant; and (ii) the claim is not an Excluded Claim.

    (b)    For a Claimant claiming on behalf of a Securities Claimant or a Securities Claimant's estate, the Claims Administrator shall be satisfied that (i) the Claimant has authority to act on behalf of the Securities Claimant or the Securities Claimant's estate in respect of financial affairs; (ii) the person or estate on whose behalf the claim was submitted is a Securities Claimant; and (iii) the claim is not an Excluded Claim.

2534229.1C

6. The Claims Administrator shall review the Claim Forms and assign the Compensable Loss to the claims prescribed by the Allocation System.

7. The Claims Administrator shall take reasonable measures to verify that the Claimants are eligible for compensation and that the information in the Claim Forms is accurate. The Claims Administrator may make inquiries of the Claimants in the event of any concerns, ambiguities or inconsistencies in the Claim Forms.

**Allocation System and Payment of Dealers Compensation Fund**

8. The Dealers Compensation Fund shall be apportioned as follows:

   (a) 69.23% of the aggregate amount available for distribution in the Dealers Compensation Fund shall be allocated to claims made in respect of purchases of Shares and shall be distributed to the eligible Claimants per the terms set out herein (the "Share Fund"); and

   (b) 30.769% of the aggregate amount available for distribution in the Dealers Compensation Fund shall be allocated to claims made in respect of purchases of the Notes and shall be distributed to the eligible Claimants per the terms set out herein (the "Note Fund").

9. As soon as possible after (i) all timely Claim Forms have been processed; (ii) the time to request a reconsideration for disallowed claims under paragraph 19 has expired; and (iii) all administrative reviews under paragraphs 20-21 have concluded, the Claims Administrator shall determine each Claimant's Risk Adjusted Loss as follows:

   (a) The ACB for each security purchased are determined using FIFO on a per security, per account, basis.

   (b) the Securities purchased are divided into the types of securities described in the chart at paragraph 9(e).

   (c) For each type of purchase of Securities, the damages for those purchases are calculated as follows:

| Time of Sale of Securities[1] | Damages |
|---|---|
| Sold before June 2, 2011 | No damages |
| Sold from June 3 to August 25, 2011 | (#of Securities sold) X (ACB - Sale Price) |
| Sold or held after August 25, 2011 *Shares* | (#of shares sold or held) X (ACB per share - CAD$1.40) |

---

[1] For the purposes of these calculations, in respect of the Notes, each US$1,000 principal amount of the Notes shall be deemed 1 (one) note.

2534229.1C

| | | |
|---|---|---|
| | *2013 Notes* | (#of notes sold or held) X (ACB per note - USD$283) |
| | *2014 Notes* | (#of notes sold or held) X (ACB per note - USD$276.20) |
| | *2016 Notes* | (#of notes sold or held) X (ACB per note - USD$283) |
| | *2017 Notes* | (#of notes sold or held) X (ACB per note - USD$289.80) |

(d) The damages for each type of purchase are reduced by subtracting the Claimant's Offset Profits for those purchases to obtain the Compensable Damages.

(e) The Compensable Damages for each type of purchase are multiplied by the risk adjustment in the following chart to obtain the Risk Adjusted Damages:

| Type of Purchase | Risk Adjustment |
|---|---|
| **A. Share Purchases (Primary Market)** | |
| June 2007 Offering | 0.30 |
| June 2009 and December 2009 Offerings | 1.00 |
| **B. Note Purchases (Primary Market)** | |
| 2013, 2014, 2016, 2017 Notes (Canadian)[2] | 1.00 |
| 2017 Notes (non-Canadian) | 1.00 |
| 2013, 2014 and 2016 Notes (non-Canadian) | 0.01 |
| If CCAA claim filed | 0.50 |

(f) The Compensable Loss is equal to the sum of the Risk Adjusted Damages for each type of purchase.

10. As soon as is practicable thereafter, the Administrator shall:

(a) allocate the Share Fund on a *pro rata* basis based upon each Claimant's Compensable Loss in relation to Shares; and

(b) allocate the Note Fund on a *pro rata* basis based upon each Claimant's Compensable Loss in relation to Notes; and

11. The Claims Administrator shall make payments to the eligible Claimants based on the allocation under paragraphs 9 and 10, subject to the following:

(a) The Claims Administrator shall not make payments to Claimants whose allocation under paragraphs 9 and 10 is less than $5.00. Such amount shall instead be allocated *pro rata* to the other eligible Claimants.

(b) All Claimants, other than class members of the US Class Action that are not also members of the Ontario Class Action, are required to pay 5% of any recovery to Claims Funding International ("CFI"), up to a maximum of $5,000,000 in

---

[2] This is a reference to any primary market note purchase (a) in a distribution in in Canada; or (b) by a person who is, or was at the time of purchase, a resident of Canada.

aggregate, provided the action is resolved prior to the filing of the Plaintiffs' pre-trial conference brief, less any amounts paid or payable to CFI in this action to date (the "CFI Cap"). The Claims Administrator shall reserve 5% of the allocation to Claimants, other than class members of the US Class Action that are not also members of the Ontario Class Actions, for payment to CFI, up to the CFI Cap.

(c) The Claims Administrator shall make payment to a Claimant by either bank transfer or by cheque to the Claimant at the address provided by the Claimant or the last known postal addresses for the Claimant. If, for any reason, a Claimant does not cash a cheque within 6 months after the date of the cheque, the Claimant shall forfeit the right to compensation and the funds shall be distributed in accordance with paragraph 12.

**Remaining Amounts**

12. If there are amounts remaining after payment to Securities Claimants have been made under paragraphs 9 to 11 and all other financial commitments have been met pursuant to the Dealers Allocation Order or in order to implement the Dealers Settlement, then the remaining amount shall be held in the Settlement Trust and paid out for the purposes of future disbursements in the Ontario Class Action and/or the US Class Action.

13. If there has been full and final settlements of the Ontario Class Action and the US Class Action or final judgments against the defendants in those actions (such that there is no prospect of additional amounts being added to the Settlement Trust), then payment of any remaining balance from the Settlement Trust shall be determined by further motion before the Court.

**Completion of Claim Form**

14. If, for any reason, a living Securities Claimant is unable to complete the Claim Form then it may be completed by the Securities Claimant's personal representative or a member of the Securities Claimant's family.

**Irregular Claims**

15. The claims process is intended to be expeditious, cost effective and "user friendly" and to minimize the burden on Securities Claimants. The Claims Administrator shall, in the absence of reasonable grounds to the contrary, assume the Securities Claimants to be acting honestly and in good faith.

2534229.1C

16. Where a Claim Form contains minor omissions or errors, the Claims Administrator shall correct such omissions or errors if the information necessary to correct the error or omission is readily available to the Claims Administrator.

17. The claims process is also intended to prevent fraud and abuse. If, after reviewing any Claim Form, the Claims Administrator believes that the claim contains unintentional errors which would materially exaggerate the Compensable Loss to be awarded to the Claimant, then the Claims Administrator may disallow the claim in its entirety or make such adjustments so that an appropriate Compensable Loss is awarded to the Claimant. If the Claims Administrator believes that the claim is fraudulent or contains intentional errors which would materially exaggerate the Compensable Loss to be awarded to the Claimant, then the Claims Administrator shall disallow the claim in its entirety.

18. Where the Claims Administrator disallows a claim in its entirety, the Claims Administrator shall send to the Claimant at the address provided by the Claimant or the Claimant's last known email or postal address, a notice advising the Claimant that he, she or it may request the Claims Administrator to reconsider its decision. For greater certainty, a Claimant is not entitled to a notice or a review where a claim is allowed but the Claimant disputes the determination of Compensable Loss or his, her or its individual compensation.

19. Any request for reconsideration must be received by the Claims Administrator within 21 days of the date of the notice advising of the disallowance. If no request is received within this time period, the Claimant shall be deemed to have accepted the Claims Administrator's determination and the determination shall be final and not subject to further review by any court or other tribunal.

20. Where a Claimant files a request for reconsideration with the Claims Administrator, the Claims Administrator shall advise Class Counsel of the request and conduct an administrative review of the Claimant's complaint.

21. Following its determination in an administrative review, the Claims Administrator shall advise the Claimant of its determination. In the event the Claims Administrator reverses a disallowance, the Claims Administrator shall send the Claimant at the Claimant's last known postal address, a notice specifying the revision to the Claims Administrator's

2534229.1C

disallowance.

22. The determination of the Claims Administrator in an administrative review is final and is not subject to further review by any court or other tribunal.

23. Data from each Claim Form shall be retained such that a Claimant is not required to file further claim forms in any future settlement or distribution.

24. The failure to file a timely valid Claim Form shall not prejudice any person's ability to file a claim form in any future settlement or distribution.

25. Any matter not referred to above shall be determined by analogy by the Claims Administrator in consultation with Class Counsel.

2534229.1C

Court File No. CV-12-9667-00CL

Court File No. CV-11-431153-00CP

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF A PLAN OF COMPROMISE AND ARRANGEMENTS OF SINO-FOREST CORPORATION

THE TRUSTEES OF THE LABOURERS' PENSION FUND OF CENTRAL    -and- SINO-FOREST CORPORATION, et. al.
AND EASTERN CANADA et. al.

Plaintiffs    Defendants

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE
## COMMERCIAL LIST

Proceeding Commenced at Toronto

### ORDER

**PALIARE ROLAND ROSENBERG ROTHSTEIN LLP**
250 University Avenue, Suite 501
Toronto, ON M5H 3E5
**Ken Rosenberg** (LSUC No. 21102H)
**Massimo Starnino** (LSUC No.41048G) Tel: (416) 646-4300 / Fax: (416) 646-4301

**KOSKIE MINSKY LLP**
900-20 Queen Street West, Box 52 Toronto, ON M5H 3R3
Kirk M. Baert (LSUC No. 309420)
Tel: (416) 595-2117 / Fax: (416) 204-2889
Jonathan Ptak (LSUC No.45773F)
Tel: (416) 595-2149 / Fax: (416) 204-2903

**SISKINDS LLP**
680 Waterloo Street, P.O. Box 2520 London, ON N6A 3V8
**Charles M. Wright** (LSUC No. 36599Q)
Tel: (519) 660-7753 / Fax: (519) 660-7754
**A. Dimitri Lascaris** (LSUC No.50074A)
Tel: (519) 660-7844 / Fax: (519) 660-7845

Lawyers for the Ad Hoc Committee of Purchasers of the Applicant's Securities