# EXHIBIT A

**CITATION:** The Trustees of the Labourers' Pension Fund of Central and Eastern Canada v.
Sino-Forest Corporation, 2015, ONSC 6886
**COURT FILE NO.:** CV-12-9667-00-CL
**DATE:** 2015-11-13

## SUPERIOR COURT OF JUSTICE - ONTARIO

**RE:**           The Trustees of the Labourers' Pension Fund of Central and Eastern Canada, The
Trustees of the International Union of Operating Engineers Local 793 Pension
Plan for Operating Engineers in Ontario, Sjunde AP-Fonden, David Grant and
Robert Wong, Plaintiffs

**AND:**

Sino-Forest Corporation, Ernst and Young LLP, BDO Limited (formerly known
as BDO McCabe Lo Limited) Allen T.Y. Chan, W. Judson Martin, Kai Kat Poon,
David J. Horsley, William E. Ardell, James P. Bowland, James M.E. Hyde,
Edmund Mak, Simon Murray, Peter Wang, Garry J. West, Credit Suisse
Securities (Canada), Inc., TD Securities Inc., Dundee Securities Corporation,
RBC Dominion Securities Inc., Scotia Capital Inc., CIBC World Markets Inc.,
Merrill Lynch Canada Inc., Canaccord Financial Ltd., Maison Placements Canada
Inc., Credit Suisse Securities (USA) LLC and Merrill Lynch, Pierce, Fenner &
Smith Incorporated (successor by merger to Banc of America Securities LLC)

**BEFORE:**    Regional Senior Justice G.B. Morawetz

**COUNSEL:**   *Kirk M. Baert, Jonathan Ptak, Daniel E.H. Brock*, for the Ad Hoc Committee of
Purchasers of the Applicants Securities, including the Representative Plaintiffs in
the Ontario Class Actions

*Bryan McLeese*, for the US Class Action Plaintiffs

*Robert W. Staley, Derek J. Bell and Jonathan Bell*, for the Sino-Forest Litigation
Trust

*Yuxi (Wendy) Sun*, for BDO Limited

*John A. Fabello*, for the Dealers/Underwriters

*Derrick Tay*, for the Monitor, FTI Consulting Canada Inc.

**HEARD:**     October 30, 2015

## ENDORSEMENT

[1]     At the conclusion of the hearing on October 30, 2015, the record was endorsed as
follows:

- Page 2 -

"Five orders granted today:

1.  Settlement Approval;

2.  Claims and Distribution Protocol;

3.  Document Production Protocol;

4.  Approval of Canadian Class Action Counsel Fees; and

5.  Approval of US Class Action Counsel Fees.

    Reasons will follow".

[2]     These are the Reasons.

[3]     This motion was brought to seek approval of a $32.5 million settlement with Credit Suisse Securities (Canada) Inc., TD Securities Inc., Dundee Securities Corporation, RBC Dominion Securities Inc., Scotia Capital Inc., CIBC World Markets Inc., Merrill Lynch Canada Inc., Cannacord Financial Ltd., Maison Placement Canada Inc., Credit Suisse Securities (USA) LLC and Merrill Lynch, Pierce, Fenner & Smith Incorporated (successor by merger to Banc of America Securities LLC) (the "Dealers" and the "Dealers Settlement"), defendants in a class action concerning Sino-Forest Corporation ("Sino-Forest" or "SFC").

[4]     At the outset, there is a technical requirement, namely, as Regional Senior Judge for the Toronto Region, I have to appoint myself to hear this motion, which I do.

[5]     Counsel for the Ad Hoc Committee of the Applicants' securities, including the Representative Plaintiffs in the Ontario Class Action (the "Class Action Plaintiffs") submits that the Dealers Settlement was the product of hard fought and protracted negotiations which were conducted by counsel having extensive experience in securities class actions and CCAA proceedings.  Further, counsel submits that the Dealers Settlement provides a substantial contribution to SFC's Plan of Compromise and Reorganization and provides a significant benefit to SFC's creditors.

[6]     Minutes of Settlement were entered into in late December 2014.

[7]     The Dealers Settlement is to be implemented through Sino-Forest's Plan of Compromise and Reorganization (the "Plan"), which has received court sanction in the Sino-Forest proceedings under the CCAA.

[8]     By way of background, SFC was a forestry company with shares that were traded publically on the Toronto Stock Exchange ("TSX"), on alternative trading venues in Canada, and elsewhere.  The Dealers were various financial institutions that served as underwriters or initial note purchasers in one or more of SFC's offering of shares and notes during the class period.

[9]     The Dealers can be divided in two (2) groups:

- Page 3 -

(a) Credit Suisse, TD, Dundee, RBC, Scotia, CIBC, Merrill, Cannacord and
Maison, served as underwriters in one or more of SFC's public offerings of
shares during the class period (collectively, the "Share Underwriters"); and

(b) TD, Credit Suisse (USA) and Banc of America served as initial purchasers in
one or more of SFC's public offerings of notes during the class period
(collectively, the "Initial Note Purchasers").

[10]     During the class period, SFC raised money pursuant to three note offerings (the "Note
Offerings") and four shares offerings (the "Share Offerings" and collectively, with the Note
Offerings the "Offerings").

[11]     Counsel to the Class Action Plaintiffs referenced that on June 2, 2011, Muddy Waters
Research released a report alleging fraud against SFC and alleging that it "massively exaggerates
its assets".  The release of this report was followed by a dramatic decline in SFC's share price
and the value of SFC's notes also fell in value following the release of the report.

[12]     On August 26, 2011, the Ontario Securities Commission (the "OSC") issued a temporary
Cease Trade order in respect of SFC's securities.  On March 30, 2012, SFC filed for protection
from its creditors under the CCAA and obtained a stay of proceedings against it, its subsidiaries
and directors and officers.  On May 9, 2012 SFC's shares were delisted from the TSX.

[13]     On July 20, 2011, the proposed class proceeding was commenced under the *Class
Proceedings Act*, 1992 (the "CPA"), against SFC, the Dealers and other defendants on behalf of
persons that had purchased SFC securities in the period from March 19, 2007 to June 2, 2011
(the "Ontario Action").

[14]     The Class Action Plaintiffs alleged that SFC misstated its financial statements, overstated
the value of its assets, and concealed material information about its business and operations from
investors in its public filings.

[15]     Other proposed class actions were also commenced in Ontario and parallel actions were
commenced in the Quebec Superior Court and the New York Supreme Court.

[16]     In November 2012, the plaintiffs in the Ontario Action reached a settlement with Ernst &
Young (the "Ernst & Young Settlement").  The framework of the Ernst & Young Settlement was
contained in Article 11.1 of the Plan and was the template for a similar framework for Named
Third Party Defendants contained in Article 11.2 of the Plan.  The Ernst & Young Settlement
was approved on March 20, 2013, a decision which is reported as *Labourers' Pension Fund of
Central and Eastern Canada v. Sino-Forest Corporation*, 2013 ONSC 1078, aff'd Court of
Appeal for Ontario 2013 O.J. No. 3085, with no leave being granted to the Supreme Court of
Canada 2013 SCCA 395.

[17]     In July 2014, this Court also approved a settlement between David Horsley, SFC's
former CFO, the Class Action Plaintiffs and the Litigation Trust (the "Horsley Settlement") as
against Mr. Horsley.  The Horsley Settlement also utilized the framework contained in Article
11.2 of the Plan.

- Page 4 -

[18]    Under the terms of the Dealers' Settlement, the Dealers propose to pay Cdn. $32.5 million (the "Class Settlement Fund") (less $250,000 allocated to Notice Costs).

[19]    The Dealers' Settlement is conditional on, among other things, no part of the $32.5 million Settlement Fund being allocated to the Litigation Trustee, the issuance of an order approving the Settlement (the "Settlement Order") and an order for recognition and enforcement in the United States Bankruptcy Court (the "US Recognition Order").

[20]    In addition, after the close of pleadings in the Ontario Action, Credit Suisse, TD, Dundee and Merrill are to provide the Class Action Plaintiffs with non-privileged documents and information relevant to certified common issues relating to BDO Limited and agree to preserve relevant non-privileged documents relating to BDO Limited until the conclusion of the action.

[21]    The Litigation Trust has not advanced a claim against the Dealers.

[22]    The Dealers' Settlement requires that the Settlement be effected through Article 11.2 of the Plan.  Article 11.2 contains the framework for named third party defendants (such as the Dealers) to enter into a Named Third Party Defendant settlement document and approve a Named Third Party Defendant release, subject to certain conditions and further court approval.

[23]    Although the Litigation Trust advised that the Plan extinguished the claims of the Litigation Trust against the Dealers, the Litigation Trust was not prepared to confirm that the Named Third Party Defendant Release was "acceptable" to it.  This position was disputed by the Class Action Plaintiffs.  This issue was the subject of a threshold decision on this motion, which decision is reported at 2015 ONSC 4004.

[24]    As a result of the threshold decision, further negotiations ensued which ultimately resulted in the Dealers augmenting the settlement proposal by an additional $1 million and Class Action Counsel agreeing to reduce its requested fee by $750,000, with the result that the revised settlement provides for $1.75 million being paid to the Litigation Trustee.  In exchange, the Litigation Trust has now confirmed that the Named Third Party Defendant Release is "acceptable" to it.

[25]    On the return of this motion, no objections were raised with respect to the Dealers Settlement, the Claims and Distribution Protocol and the Document Production Protocol.

[26]    Class Action Counsel is of the view that the Dealers' Settlement is fair, reasonable and in the best interests of Securities Claimants.

[27]    In arriving at this position, Class Action Counsel has taken into consideration the extensive investigations, document review, and the input and opinions of experts, including:

(a)    All of SFC's public disclosure documents and other publically available information with respect to SFC;

(b)    The available trading data for SFC's securities;

- Page 5 -

(c) Non-public documents uploaded by SFC into the Data Room established in the CCAA proceeding for the purpose of the global mediation;

(d) The respective insurance policies of TD, Dundee, RBC and Banc of America;

(e) The insolvency law experts and insurance coverage experts;

(f) The independent damage opinion of Frank C. Torchio, the President of Forensic Economics Inc.;

(g) The input of an expert in standards for practice of underwriters;

(h) The input of Professor Adam C. Pritchard, an expert in US federal securities law;

(i) The input of Professor Patrick Borchers, an expert in New York State law;

(j) Mediation briefs provided by the parties;

(k) Input from US securities counsel, Kessler, Topaz, Meltzer & Check, LLP;

(l) Input from experienced US securities counsel, Cohen & Millstein; and

(m) The evidence accumulated by investigators retained by Class Counsel.

[28]    Notice of the Dealers' Settlement was delivered to over 49,000 Class Members. Counsel provided me with a thematic summary of objections to the Proposed Settlement, Class Counsel's fee and the Claims and Distribution Protocol. A total of 35 objections are referenced in the Summary. None of the objectors appeared at the return of this hearing.

[29]    The Summary is attached as Schedule "A" to these Reasons.

[30]    I am satisfied, having reviewed the Summary, that all of objections have been duly considered by Class Counsel in reaching the Settlement with the Dealers.

[31]    In assessing a Settlement within the CCAA context, the court looks at the following three factors:

(a) Whether the Settlement is fair and reasonable;

(b) Whether it provides substantial benefit to other stakeholders; and

(c) Whether it is consistent with the purpose and spirit of the CCAA

(See *Labourers' Pension Fund, supra*, para. 49).

[32]    In this case, the Dealers Settlement provides for a payment of $32.5 million (not including the augmented amount of $1.75 million referenced above) in settlement of all claims against the Dealers in relation to SFC. In addition, the Dealers are providing cooperation to the

- Page 6 -

Plaintiffs in the continued prosecution of the Ontario Action. Class Action Counsel submits that in all the circumstances, the Dealers' Settlement is a very good settlement and is fair and reasonable and it provides substantial benefit to other stakeholders.

[33]    It is also noted that The Honourable Stephen Goudge, the mediator of the Dealers' Settlement, has also recommended the Settlement. The views expressed by Mr. Goudge are persuasive. The parties exchanged lengthy mediation briefs and participated in two separate mediations before Mr. Goudge. Mr. Goudge was fully apprised of the legal and factual issues between the Ontario Plaintiffs and the Dealers.

[34]    Class Counsel also submits that the Dealers' Release is fair and reasonable and should be approved. Counsel submits that the release is "justified as part of the compromise or arrangement between the Dealers and its creditors and that there is a reasonable connection between the third party claim being compromised in the Plan and the restructuring achieved by the Plan". Class Counsel contends that although the Plan has been sanctioned and implemented, a significant aspect of the Plan is a distribution to SFC's creditors and in order to effect any distribution, the Dealers Release must be approved as part of the Dealers Settlement.

[35]    Article 11.2 of the Plan permitted the Dealers (and other defendants) to be named as Third Party Defendants, and provides the framework for the Dealers Settlement.

[36]    Class Action Counsel submits that the Dealers Settlement created value for stakeholders by facilitating settlements with the defendants and without the addition of such provision, the Plan would have faced opposition from certain stakeholders, as well as potential appeals. Further, the Named Third Party Defendants (of which the Dealers are one) were required to release cross-claims against SFC which assisted in the restructuring.

[37]    Class Counsel also contends that the Dealers' Settlement assists in moving towards the final resolution of all claims related to SFC. Obtaining a contribution from, and eliminating eleven defendants and their counsel allows the plaintiffs and their counsel to focus their efforts and resources on non-settling defendants, and will expedite the adjudication of the claims against those defendants.

[38]    The law relating to the inclusion of a third party release was reviewed in *Labourers' Pension Fund, supra*. I adopt the legal analysis referenced in that decision, and it need not be repeated in this endorsement.

[39]    In my view there is a reasonable connection between the third party claim being compromised to warrant inclusion of the Release. In arriving at this conclusion, I have applied the "nexus test" which requires consideration of the following factors:

    (a) Are the claims to be released rationally related to the purpose of a plan?

    (b) Are the claims to be released necessary for the plan of arrangement?

    (c) Are the parties who have claims released them contributing in a tangible and
       realistic way?

- Page 7 -

(d) Will the plan benefit the debtor and the creditors generally.

(See:  *ATB Financial* v. *Metcalfe & Masfield Alternative Investments II Corp.,*
2008 ONCA 587)

[40]    I accept the submissions of counsel and conclude that the Dealers Settlement is fair and reasonable; provides substantial benefit to the other stakeholders; and is consistent with the purpose and spirit of the CCAA.

[41]    The Dealers Settlement is approved.

[42]    The moving parties also request an order approving the proposed Claims and Distribution Protocol that sets out the process for the allocation and distribution of the net proceeds of the Settlement Fund.

[43]    The Ontario Plaintiffs have proposed a Claims and Distribution Protocol to allocate the net settlement fund among different groups of primary market purchasers of SFC's securities. Counsel contends that the proposed claims and Distribution Protocol is designed to be a streamlined, efficient claims process, which uses information already obtained through the administration of prior settlements, and provides compensation that is based on the strength of each category of claims as against the Dealers.  As noted, there was no opposition to the granting of such order.  In the circumstances, I am satisfied that it is appropriate to approve the Claims and Distribution Protocol.

[44]    I am also satisfied that it is appropriate to approve the Document Production Protocol.

[45]    Turning now to the motion to approve the fees for Class Counsel in Canada – their request is for $4,767,207 in respect of legal fees, $619,736.91 for HST on fees and $404,823.44 for disbursements (inclusive of all applicable taxes on the disbursements).  It is noted that this amount is inclusive of monies to be paid by Canadian Class Counsel to Kessler, Topaz, Meltzner & Check LLP as an agency fee.  I find that the fees and disbursement request was made in accordance with executed retainer agreements between Canadian Class Counsel and the Class Action Plaintiffs.  I also accept that the starting point for the approval of counsel fees in class proceedings is to determine whether the fees and disbursements provided for in the retainer agreement are fair and reasonable, failing which, the court has the discretion to determine the amount owing to Class Counsel for fees and disbursements.

[46]    There are two main factors in these determinations:  First, the risks that Class Counsel assumes; and second, the success achieved.  The issues, in respect of the request for fees, were canvassed, in my previous decision in *Labourers' Pension Fund, supra* and need not be repeated in this endorsement.

[47]    I am satisfied that Counsel did take significant risk in prosecuting this action.

[48]    Having considered the written submissions, and having heard oral submissions and, in the absence of any substantive criticism of the requested fees, I am satisfied the requested fees and disbursements are consistent with the retainer agreement entered into with the Class Action Plaintiffs and are fair and reasonable, and an order shall go approving such fees.

- Page 8 -

[49]    Finally, there is also a motion to approve the fees and disbursements of Cohen Millstein Zellers and Toll, PLLC ("US Class Counsel") in the amount of Cdn. $194,620.00 in respect of legal fees and US $63,699.41 for disbursements (inclusive of all applicable taxes). The fee and disbursement requests have been made in accordance with the Retainer Agreement between US Class Counsel and the lead plaintiffs in the US Class Action, and, as counsel submits in the materials, is consistent with counsel fees approved in other class actions by US and Canadian courts. There was no challenge to the fee requested by the US Class Counsel, and, consistent with my reasons with respect to the fee request of Canadian Class Counsel, I am satisfied that the amount requested by US Class Counsel is fair and reasonable, and it is approved.

[50]    Five court orders reflecting the foregoing have been signed by me.

Regional Senior Justice G.B. Morawetz

**Date:** November 13, 2015

SCHEDULE "A"

## SETTLEMENT, CLASS COUNSEL'S FEE, AND
## CLAIMS AND DISTRIBUTION PROTOCOL
## THEMATIC SUMMARY OF OBJECTIONS

| OBJECTION | # | RESPONSE |
|---|---|---|
| Settlement quantum is insufficient. | 4[1] | These individuals did not have access to the extensive investigations, document review, and input and opinions of experts that led class counsel to reach this settlement with the Dealers. These class members may not be aware of the significant challenges of pursuing claims against underwriters of securities as opposed to the issuer itself. The settlement resulted from an arms-length, hard fought negotiation after extensive investigation. The quantum reflects a very significant recovery for purchasers of Sino-Forest shares in the primary market, and the very significant legal risks associated with the claims of purchasers of Sino-Forest's notes in the primary market. It is the largest settlement with an underwriter syndicate in Canadian history. |
| Would negatively impact class members' returns. | 1[2] | This objection is unclear. The Dealers Settlement would positively impact class members' compensation. |
| Shares purchased 28 years ago are not included. | 1[3] | No Sino-Forest shares were issued 28 years ago. |
| The allegations against Sino-Forest have no merit. | 1[4] | This settlement concerns allegations made against the Dealers. It reflects the evidence available and perceived risks of all parties. |
| The Dealers are negligent. | 1[5] | The settlement agreement reflects the allegations by Sino-Forest's securities holders that the Dealers were negligent and provides significant compensation for their losses. Also see above points regarding settlement quantum. |
| Claims and Distribution Protocol undercompensates individuals who | 1[6] | Canadian class counsel relied on the advice of Frank Torchio, a professional economist of |

---

[1] Henry Deisinger, Kevin and Barbara Knoblauch, Maki Pochara, Gordon Jiang.
[2] Veera Narayana Gundapaneni.
[3] Kenneth Jones.
[4] Qing Yu.
[5] George Bee.
[6] Gordon Jiang.

| | | |
|---|---|---|
| did not sell shares. | | Forensic Economics to develop a formula to calculate losses for securities purchasers. Class counsel believes that the protocol fairly and adequately balances the rights as between class members |
| Administrator should not have discretion to accept late claims. | 1[7] | It would be inequitable to reject a claim that is, for example, a few days late so long as the acceptance of that claim will not delay the claims filing process and ultimate distribution of the settlement amount. In such or similar circumstances, it would be a waste of time and resources to require a person filing a late claims to receive court approval, especially given the cost of such a motion. Accordingly, the most fair and efficient manner of dealing with late claims is to grant the discretion to the administrator to decide whether to allow them. |
| Fees are too high. | 6[8] | The fee request is lower than what the retainer agreement between counsel and the plaintiffs provides, is below the range of fee percentages repeatedly endorsed by courts in Ontario, and represents a reasonable multiplier and percentage given the risk incurred by class counsel and the success achieved. |
| No reason provided | 19[9] | - |

1635186v1

---

[7] Robert Wong.
[8] Scott Beven, Real Danjou, Henry Deisinger, Veera Gundapaneni, Estate of Anni Ocech, Derek Schmuck.
[9] Nina Bode, Walter Burych, Pui Fun Phoebe Chan, Shi Yong Chen, Ian Cunningham, Timothy P. Delesalle, Cindy Hershon, Clare Johnston, Margaret Leung, Emmy Mackenbrock, Ann May, William May, Christopher Milne, Parto Farzanah/Mahmoud Moini, Robert Stock, Vernon Taskey, Ian Toledano, Vernon Taskey